1   STEPHEN E. TAYLOR (SBN 058452)
    JAN J. KLOHONATZ (SBN 111718)
2   TAYLOR & CO. LAW OFFICES
    1050 Marina Village Pkwy., Suite 101
3   Alameda, California 94501
    Telephone: (510) 865-9401
4   Facsimile: (510) 865-9408

5   Attorney for Defendants
    INTEL CORPORATION
6   and JEAN-MARC VERDIELL

7

8                UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  FRANK T. SHUM,                      Case No.: 02 3262 EMC

11       Plaintiff,
                                        NOTICE OF REMOVAL OF
12  v.                                  ACTION UNDER 28 U.S.C. § 1441(b)
                                        (FEDERAL QUESTION)
13  INTEL CORPORATION, JEAN-MARC
    VERDIELL, LIGHTLOGIC, INC., LUMEN
14  INTELLECTUAL PROPERTY SERVICES, INC.,
    MAREK ALBOSZTA, JOHN C. GORMAN,
15  GORMAN & MILLER, and DOES 1 through 100,

16       Defendants.

17

18  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

19       PLEASE TAKE NOTICE that defendants Intel Corporation and Jean-Marc Verdiell hereby

20  remove to this Court the state court action described below.

21       1.   On May 22, 2002, an action was commenced against defendants Intel Corporation and

22  Jean-Marc Verdiell ("the Intel defendants") by way of a First Amended Complaint filed in a case in the

23  Superior Court In and For the County of Alameda, entitled Frank T. Shum v. Intel Corporation, et al.,

24  Case No. 2002-050810 (the "State Action"). The Intel defendants were not named in the initial

25  complaint. A copy of the First Amended Complaint is attached hereto as Exhibit A and a copy of the

26  initial complaint is attached hereto as Exhibit B.

27       2.   The Intel defendants were the first defendants served in the State Action, having been

28  served with a copy of the First Amended Complaint and a summons from the state court on June 10,

                                        1.

TAYLOR & CO.
LAW OFFICES

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (FEDERAL QUESTION)

1    2002. This removal thus is timely under 28 U.S.C. section 1446(b) and Murphy Bros., Inc. v. Michetti

2    Pipe Stringing, Inc., 526 U.S. 344 (1999).  A copy of the summons to each of the Intel defendants is

3    attached hereto as Exhibit C.  All other papers served on the Intel defendants are attached hereto as

4    Exhibit D.

5                                            JURISDICTION

6          3.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C.

7    sections 1331 and 1338(a), and is one which may be removed to this Court by the Intel defendants

8    pursuant to the provisions of 28 U.S.C. section 1441(b), in that at least one of the causes of action in

9    the First Amended Complaint arises under the federal patent laws and confers federal-question

10   jurisdiction.  A cause of action arises under the patent laws of the United States if a complaint

11   establishes either that federal patent law creates one of the causes of action or that the plaintiff's right

12   to relief under one of the causes of action necessarily depends on the resolution of a substantial

13   question of federal patent law.  Christiansen v. Colt Industries Operating Corp., 486 U.S. 800 (1988);

14   Animal Legal Defense Fund v. Quigg, 900 F.2d 195 (9th Cir. 1990).  The Intel defendants submit that

15   at least one -- and indeed all -- of plaintiff's causes of action in the First Amended Complaint

16   necessarily depend on resolution of a substantial question of federal patent law: the issue of

17   inventorship.  Inventorship has been determined to be a substantial question of federal patent law for

18   purposes of conferring removal jurisdiction on the federal courts.  Hunter Douglas Inc. v. Harmonic

19   Design Inc., 153 F.3d 1318 (Fed. Cir. 1998), *overruled in part on other grounds in* Midwest Indus.,

20   Inc. v. Karavan Trailers, Inc., 175 F.3d 1356 (Fed. Cir. 1999); Rustevader Corp. v. George Cowatch,

21   Jr., 842 F.Supp. 171 (W.D. Pa. 1993).

22         4.      Plaintiff's first cause of action alleges fraud and his second cause of action alleges

23   negligent misrepresentation.  The facts allegedly misrepresented to plaintiff were: (a) that defendant

24   Jean-Marc Verdiell ("Verdiell") was a co-inventor of an invention with plaintiff for which a patent

25   application had been filed; (b) that defendant Verdiell had to be added as a co-inventor on the patent

26   application or else the patent would be invalid; and (c) that the patent application would have to be

27   withdrawn unless defendant Verdiell was added as an inventor on the application.  (First Amended

28   Complaint ("FAC") , ¶¶16 and 17.)  In order to prove that these representations were untrue, as

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (FEDERAL QUESTION)

plaintiff is required to in order to prevail on these claims, plaintiff must establish that he is the sole inventor under the federal patent laws and that Verdiell is not an inventor of the inventions at issue. Plaintiff also expressly alleges that the patent application filed on behalf of defendant LightLogic, Inc. ("LightLogic") listing Verdiell as the inventor was fraudulent because plaintiff alleges he is the sole inventor. (FAC, ¶20.)

5.     Similarly, plaintiff's third cause of action, although entitled "Misrepresentation," is essentially a malpractice claim alleging that the advice he received (i.e., the same alleged misrepresentations identified above) was incorrect. (FAC, ¶¶16, 17 and 33.)  Again, in order to prove that the advice was wrong, plaintiff will have to establish inventorship of the inventions at issue.

6.     The fourth cause of action for breach of fiduciary duty and the fifth cause of action entitled "Malpractice" are largely the same -- defendants allegedly owed a fiduciary duty to plaintiff which was breached when defendants prosecuted patent applications which named Verdiell as the inventor of inventions which allegedly were invented solely by plaintiff.  These claims also require that plaintiff prove he is the inventor under the federal patent laws. (FAC, ¶20.)  Otherwise, prosecuting the patent applications on behalf of Verdiell or LightLogic would not constitute a breach of duty to plaintiff.

7.     The sixth cause of action for conversion alleges that the defendants converted intellectual property belonging to plaintiff. (FAC, ¶41.)  Only if plaintiff were the inventor of the patented inventions, however, would plaintiff have any intellectual property to be converted, and plaintiff has expressly alleged that he is the sole inventor of the invention which is the subject of the LightLogic patent application. (FAC, ¶20.)

8.     The seventh cause of action for "Successor Liability" is based on plaintiff's allegations that Intel Corporation knew, or should have known, that the LightLogic technology was in fact created by plaintiff (i.e., he is the inventor), and that the patent status of the technology was therefore incorrect, but nevertheless proceeded to acquire LightLogic to plaintiff's detriment. (FAC, ¶43.)  By his own allegations, plaintiff will also have to prove he is the inventor of the patented technology to prevail on this claim.

## INTRADISTRICT ASSIGNMENT

9.     The State Action was filed in Alameda County Superior Court.  Virtually all of the alleged misconduct in the State Action, however, took place in Santa Clara County and none of the defendants currently resides in Alameda County or resided in Alameda County at the time of the alleged conduct.  Alameda County is within the San Francisco/Oakland Division of the Northern District of California; Santa Clara County is within the San Jose Division.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

10.     Pursuant to Civil Local Rule 3-16, the undersigned certifies that as of this date, other than the named parties, there is no party known to have either: (1) a financial interest (of any kind) in the subject matter in controversy or in a party to the proceeding; or (2) any other kind of interest that could be substantially affected by the outcome of the proceeding.

## JOINDER

11.     All other defendants who have been served with the summons and First Amended Complaint have joined in this Notice of Removal, as evidenced by the joinders of defendants Gorman & Miller and John C. Gorman, and defendants Lumen Intellectual Property Services, Inc. and Marek Alboszta, filed concurrently herewith.  The Intel defendants are informed and believe that Does 1 through 100 are neither real, proper, nor necessary defendants and, in any event, that they have not been served with the summons and complaint or First Amended Complaint.  Accordingly, the unnamed Doe defendants need not join in this Notice of Removal.  Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1213 (9th Cir. 1980) (unknown and Doe defendants need not be joined in petition for removal).  Furthermore, the defendant named "LightLogic, Inc." no longer exists.  This Notice of Removal therefore satisfies the joinder requirements of 28 U.S.C. section 1441(a).

Dated: July 9, 2002                          TAYLOR & CO. LAW OFFICES


By: _____
        Stephen E. Taylor

Attorneys for Defendants
INTEL CORPORATION
and JEAN-MARC VERDIELL

## PROOF OF SERVICE

I am employed in the County of Alameda, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Taylor & Co. Law Offices, 1050 Marina Village Parkway, Suite 101, Alameda, California 94501.

On July 9, 2002, I served a true and correct copy of the document(s) described as:  **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) (FEDERAL QUESTION)** on the following interested parties in this action:

Mr. e. robert (bob) wallach
P.O. Box 2670
San Francisco, CA  94126-2670
Telephone:  415-989-6445
Facsimile:  415-989-3802
**Counsel for Frank T. Shum**

Mr. Mark L. Strombotne
Strombotne Law Firm
5450 Thornwood Dr., Suite H
San Jose, CA 95123
**Counsel for Gorman & Miller
and John C. Gorman**

Mr. R. Stephen Goldstein
Goldstein, Gellman, Melbostad, Gibson & H
LLP
100 Van Ness Avenue, 21st Floor
San Francisco, CA  94102
**Counsel for Lumen Intellectual
Property Services, Inc. and Marek
Alboszta**

[ X ]  **[BY US MAIL, CCP § 1013a(3)]**  I caused the foregoing document(s) to be enclosed in a sealed envelope, with first class postage fully paid, for delivery on the individuals identified above as indicated herein.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing and know that, in the ordinary course of Taylor & Co. Law Office's business practice, the document(s) described above would be deposited with the United States Postal Service on that same day at Alameda, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed to be invalid if the postal cancellation date, or postage meter date, is more than one day after the date of deposit for mailing set forth in this declaration.

[   ]  **[BY FACSIMILE, CCP § 1013(e)]**  I caused the foregoing document(s) to be transmitted by facsimile to the offices of the addressees indicated above at the facsimile numbers

1   listed for each addressee served.  Upon completion of said facsimile transmission, the transmitting

2   machine issued a transmission report showing that the transmission was complete and without error.

3       **[   ]   [BY OVERNIGHT DELIVERY, CCP § 1013(d)]**  I caused delivery of the

4   document(s) listed above to be effected by overnight mail, by placing true and correct copies in

5   separate envelopes for each addressee shown above, with the name and address of the person served

6   shown on the envelope, and by sealing the envelope and placing it for collection.  Delivery fees were

7   paid or provided for in accordance with the ordinary business practices of Taylor & Co. Law Offices.

8       **[ X ]   [BY PERSONAL SERVICE, CCP § 1011(a)]**   I caused the foregoing document(s)

9   to be served by hand on the following individual(s) as indicated on the "Declaration of Personal

10  Service" attached hereto as <u>Exhibit A</u>.  The person who delivered a true and correct copy of such

11  document(s) to the person(s) identified below is identified in <u>Exhibit A</u> attached hereto.

Mr. Jeffrey W. Shopoff
One Sansome Street, Suite 1050
San Francisco, CA 94104-4445
Telephone:  415-984-9607
Facsimile:  415-398-5584
**Counsel for Frank T. Shum**

16      I declare under penalty of perjury, under the laws of the State of California, that the foregoing

17  is true and correct.  Executed this 9th day of July, 2002, at Alameda, California.

_____
Kellie B. Mickelson

**EXHIBIT "A"**

**TO CERTIFICATE OF SERVICE**

I, the undersigned, declare as follows:

I am a resident of the State of California, over the age of 18 years, and not a party to the within action.  My business address is set forth beneath my signature herein.  On July 9, 2002, I served the document(s) described as:

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)**
**(FEDERAL QUESTION)**

by personally delivering a true and correct copy of the document(s) described above to:

Mr. Jeffrey W. Shopoff
One Sansome Street, Suite 1050
San Francisco, CA  94104-4445
Telephone:  415-984-9607
Facsimile:  415-398-5584
**Counsel for Frank T. Shum**

I declare under penalty of perjury, under the laws of the State of California, that on the date set forth in this declaration I served the document(s) described in this declaration on the person identified above.  Executed on this 9th day of July, 2002.

| Name: | Toshi's Legal Connection |
|-------|--------------------------|
| Address: | 3701 Sacramento Street, Suite 269 |
| | San Francisco, CA  94118 |

TAYLOR & CO.
LAW OFFICES

NOTICE OF REMOVAL OF ACTION UNDER 28 7.S.C. § 1441(b) FEDERAL QUESTION

Exhibit A

1   e. robert (bob) wallach, (Bar No. 29078)
    Lawyer-Counselor
2   Law offices of e. robert (bob) wallach, P.C.
    P.O. Box 2670
3   San Francisco, CA 94126-2670
    Telephone: (415) 989-6445
4   Facsimile:  (415) 989-3802

5   JEFFREY W. SHOPOFF (Bar No. 46278)
    One Sansome Street, Suite 1050
6   San Francisco, California 94104-4445
    Telephone:  (415) 984-9607
7   Facsimile:  (415) 398-5584

8   Attorneys for Plaintiff
    FRANK T. SHUM

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                   FOR THE COUNTY OF ALAMEDA

12                      UNLIMITED JURISDICTION

13

14   FRANK T. SHUM,                  )   CASE NO. 2002-050810
                                     )
15              Plaintiff,           )   FIRST AMENDED COMPLAINT FOR
                                     )   FRAUD, MALPRACTICE, NEGLIGENT
16        v.                         )   MISREPRESENTATION, BREACH OF
                                     )   FIDUCIARY DUTY, CONVERSION
17   INTEL CORPORATION, JEAN-MARC    )   SUCCESSOR LIABILITY
     VERDIELL, LIGHTLOGIC, INC.,     )
18   LUMEN INTELLECTUAL PROPERTY     )
     SERVICES, INC., MAREK ALBOSZTA, )
19   JOHN C. GORMAN, GORMAN &        )
     MILLER, and DOES 1 through 100, )
20                                   )
                Defendants.          )
21   _____)

22
             Plaintiff alleges:
23
                          THE PARTIES
24
        1.   Plaintiff Frank T. Shum ("Mr. Shum") is an
25
     individual whose profession is inventor and is an engineer by
26
     training and education.  He is the principal co-founder and
27
     provider of unique and valuable technology in the field of
28
     optoelectronic packaging, which was an asset of a company called

PRINTED ON
RECYCLED PAPER

ENDORSED
FILED
ALAMEDA COUNTY

MAY 2 2 2002

CLERK OF THE SUPERIOR COURT
By Dorothy Duckett, Deputy

SHUM/1ST AM COMPLAINT 05/22/02

FIRST AMENDED COMPLAINT FOR FRAUD

1  Radiance Design, Inc. ("Radiance"), which dissolved on January 5,

2  1998 as a result of the conflict with and failure to perform by

3  the Defendant Verdiell.

4      2.    Defendant Jean-Marc Verdiell ("Verdiell") is an

5  individual who, through fraud and deceit, misappropriated the

6  optoelectronic technology invented by Plaintiff Shum, and used

7  that technology to establish a start-up company LightLogic, Inc.

8      3.    Defendant LightLogic, Inc., is or was a corporation

9  formed by Defendant Verdiell for the purpose of carrying out his

10 fraud upon Plaintiff, and for wrongfully misappropriating and

11 exploiting Plaintiff's ideas and inventions.

12     4.    Defendant Intel Corporation supplies the computing

13 and communications industries with chips, boards, systems and

14 software building blocks that are the "ingredients" of computers,

15 servers, and networking and communication products.  Intel's

16 corporate mission is to be the preeminent building block supplier

17 to the world wide Internet economy.  To further its mission,

18 Intel corporation acquired LightLogic, Inc. in May 2001, for

19 Intel common stock worth Four Hundred Nine Million dollars

20 ($409,000,000), for the purpose of acquiring the optoelectronic

21 technology which had been invented by Mr. Shum, and

22 misappropriated by Verdiell and LightLogic.

23     5.    Defendant Lumen Intellectual Property Services, Inc.

24 by and through its President, Defendant Marek Alboszta ("Lumen"),

25 is a Patent Agent charged with the fiduciary responsibility of

26 providing competent, lawful guidance to Plaintiff Mr. Shum in the

27 application for and compliance with all lawful requirements of an

28 application for a U.S. Patent.

-2-

6.   Defendant John C. Gorman ("Gorman") is an attorney licensed to practice in the State of California, a member/partner of the law firm of Defendant Gorman & Miller and, at all times relevant herein, acted as attorney for Lumen and Alboszta when he was aware that each of those Defendants was acting on behalf of Plaintiff Frank Shum and engaged in the performance of patent application responsibilities on his behalf.  Simultaneously, Defendant Gorman represented the Defendant Jean-Marc Verdiell with knowledge that Verdiell's interests were adverse to those of Mr. Shum.  Gorman was privy to confidential information unbeknownst to Mr. Shum which Mr. Gorman independently utilized in a manner adverse to Mr. Shum and beneficial to the Defendants Lumen, Alboszta and Verdiell.

7.   Defendant Gorman & Miller is a partnership or other business entity engaged in the practice of law in California. Defendant Gorman is a member/partner of Gorman & Miller, and Gorman & Miller is liable for the acts of Gorman alleged herein.

8.   The true names and capacities, whether individual, corporate, associate or otherwise of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names; Plaintiff further alleges that each of said fictitious Defendants is in some manner responsible for the acts and occurrences hereinafter set forth. Plaintiff will amend this Complaint to show their true names and capacities when same are ascertained, as well as the manner in which each fictitious Defendant is responsible.

9.   Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants

FIRST AMENDED COMPLAINT FOR FRAUD

1   was the agent, servant, employee, officer, director, managing

2   agent and/or joint venturer of each of the remaining Defendants,

3   and in doing the things hereinafter alleged, was acting within

4   the course and scope of this agency, service, employment,

5   management and/or joint venture.

6       10.  As a direct and/or proximate result of the acts of

7   the Defendants and each of them as set forth hereinabove

8   Plaintiff has suffered economic and personal damages as herein

9   alleged.

10          FACTS COMMON TO ALL CAUSES OF ACTION

11      11.  Mr. Shum formed Radiance as a sole proprietorship

12   in 1996 for the specific purpose of providing a consulting entity

13   for Mr. Shum's expertise and for the purpose of allowing Mr. Shum

14   to independently develop ideas, concepts, and products which were

15   innovative, unique and essential to the optoelectronic packaging

16   industry.

17      12.  While operating Radiance as his sole proprietorship,

18   Mr. Shum invented certain "packaging" and "flexure technology" in

19   the field of optoelectronics resulting from his extensive

20   educational background and work experience in the field of

21   optoelectronics.  The "flexure technology" permits the automated

22   alignment of the optical fibers in the assembly of optoelectronic

23   components, thus greatly reducing the cost of manufacture and the

24   size of the product.  These inventions were witnessed by

25   Defendant Verdiell.

26      13.  At the express invitation of Mr. Shum, the Defendant

27   Verdiell was invited to become an equal partner in Radiance, as

28   an incorporated entity, at no cost to Verdiell, with the specific

PRINTED ON
RECYCLED PAPER

SHUM/1ST AM COMPLAINT 05/22/02                    **FIRST AMENDED COMPLAINT FOR FRAUD**

1    intention that Verdiell would conscientiously devote
2    substantially all of his full-time intellectual and professional
3    efforts to further the success of Radiance in the development of
4    the highly valuable, uniquely innovative technology which had
5    been conceived and invented by Mr. Shum.  On April 21, 1997,
6    Mr. Shum and Verdiell incorporated Radiance as 50/50 owners.
7    Verdiell was made conversant of Mr. Shum's efforts and
8    accomplishments by Mr. Shum who believed that Verdiell was
9    sincerely interested in facilitating the development and
10   marketing of this unique contribution invented by Mr. Shum and
11   was qualified to implement those goals through private fund
12   raising and other expertise.  As a demonstration of Mr. Shum's
13   complete belief in the integrity and commitment of Verdiell, Mr.
14   Shum assigned his invention and his rights to Application No.
15   08/838,022 on April 21, 1997, simultaneously with the
16   incorporation of Radiance, of which Verdiell was a 50-50 owner by
17   suggestion and agreement of Mr. Shum.
18        14.  Verdiell had a pre-existing relationship with Lumens
19   and Alboszta.  Mr. Shum was without experience in the process of
20   applying for a patent and relied upon the good faith, counsel and
21   guidance of Verdiell who introduced Mr. Shum to Defendants Lumens
22   and Alboszta for the purpose of having Mr. Shum hire Lumens and
23   Alboszta as patent agents for his invention.  Verdiell presented,
24   represented and conceded that Mr. Shum was the sole inventor.
25   Shortly after this introduction, Lumens and Alboszta filed patent
26   Application No. 08/838,022 on behalf of Radiance, as the assignee
27   of the invention, and listing Mr. Shum as the sole inventor.
28        15.  As a result of the failure of Defendant Verdiell to

PRINTED ON
RECYCLED PAPER

SHUM/1ST AM COMPLAINT 05/22/02

FIRST AMENDED COMPLAINT FOR FRAUD

1   perform his responsibilities as promised in the furtherance of

2   the purpose of Radiance, and increasing interpersonal hostility

3   directed by Defendant Verdiell toward Mr. Shum, the relationship

4   between Mr. Shum and Verdiell deteriorated.  Ultimately, on

5   January 5, 1998, Radiance was dissolved according to a Plan of

6   Liquidation, which included the following provision:

7           "Verdiell and Shum shall have equal rights to
              independently exploit intellectual property

8           developed by the corporation."

9   In the negotiations leading to, and the negotiation of the Plan

10  of Liquidation, Verdiell was represented by Defendant Gorman as

11  Verdiell's attorney.  Gorman was also attorney for Lumens and

12  Alboszta and Plaintiff alleges, upon information and belief,

13  believing the allegations to be true, was privy to confidential

14  information relating to Mr. Shum, on whose behalf Defendants

15  Lumens and Alboszta were acting in the capacity of a fiduciary

16  agent and negligently, carelessly and/or intentionally allowed

17  confidential information to be utilized in a manner adverse to

18  Mr. Shum while Gorman was counsel to Lumens and Alboszta, who

19  were required to act protectively of Mr. Shum, simultaneous to

20  Gorman's representation of Verdiell, whose interests Gorman knew,

21  or should have known in the exercise of due care, to have been

22  adverse to Mr. Shum.

23       16.  As Mr. Shum and Verdiell were negotiating the

24  dissolution of Radiance, Alboszta, acting as president of Lumens,

25  took it upon himself to inform Mr. Shum that Verdiell was a co-

26  inventor who should have been listed on the patent, and that

27  Lumens could not proceed to further prosecute the patent unless

28  Verdiell agreed to be added as a co-inventor, that the patent was

-6-

1   invalid and Mr. Shum had no alternative but to withdraw the

2   patent.  This representation, intended to be beneficial to

3   Verdiell and made to Mr. Shum with the knowledge of Defendants

4   Gorman and Verdiell was contrary to law, false, and,

5   fraudulently, negligently, carelessly  and intentionally engaged

6   in conduct designed to deprive Mr. Shum of the principal asset of

7   Radiance and of the fruits of his extensive creative and

8   intellectual efforts, all to Mr. Shum's personal, economic,

9   mental and emotional detriment.  Defendants Lumens, Alboszta,

10  Verdiell and Gorman knew, and in the exercise of their fiduciary

11  and professional duties, should have known, that the

12  representation was fraudulent, false, misleading, contrary to

13  law, and designed to cause irreparable and substantial financial,

14  economic, personal and emotional injury to Mr. Shum herein.

15          17.  Defendant Alboszta, on behalf of Lumens,

16  represented, misrepresented that the only way the patent could be

17  made viable by Mr. Shum was to add the Defendant Verdiell as a

18  co-inventor, although Defendant Alboszta knew, and in the

19  exercise of his fiduciary and professional responsibilities

20  should have known, that such status for Verdiell was contrary to

21  fact, untrue and fraudulent.  Plaintiff herein alleges, upon

22  information and belief, believing the allegations to be true,

23  that the Defendants and each of them were aware that the

24  representations of patent invalidity were false, fraudulent and

25  contrary to law and that the requirement to add Verdiell to make

26  the patent valid was false, fraudulent, and contrary to law.

27          18.  Thereupon, Verdiell stated he was willing to add his

28  name to the patent application, but only if Shum gave up all

-7-

1   interest in the invention, which Mr. Shum refused to do.

2   Verdiell thereupon instructed Lumens to abandon the application,

3   and on November 17, 1996, Lumens filed abandonment of the

4   application with the USPTO, thus negligently, carelessly and/or

5   intentionally causing irreparable and substantial economic,

6   financial, emotional and personal harm and injury to Plaintiff.

7        19.  At the same time as Alboszta's misrepresentation,

8   and just three days before the abandonment was filed, Verdiell,

9   and, on information and belief, his attorney Gorman, secretly

10  incorporated a new company called "LightLogic, Inc." on

11  November 14, 1997.  Defendant Gorman knew, or in the exercise of

12  due care should have known, that LightLogic, Inc. was

13  incorporated for the purpose of depriving Mr. Shum of the

14  benefits of his extensive and creative intellectual effort, was

15  adverse to his economic, financial, emotional and personal

16  interests and would cause Mr. Shum extensive, irreparable damage.

17        20.  Radiance was dissolved on January 5, 1998.  The very

18  next day, January 6, 1998, Defendants filed a new patent

19  application, in deliberate and direct succession and virtually

20  identical to the abandoned application and with substantially

21  identical patent claims.  This application listed Verdiell as the

22  sole inventor.  Defendants knew or should have known, from their

23  dealings just months before with Radiance, Shum and Verdiell,

24  that Mr. Shum was the sole inventor, and that this application

25  was fraudulent and in violation of Mr. Shum's rights, patent law,

26  and the Plan of Liquidation.

27        21.  The formation of LightLogic by Defendants, and the

28  subsequent filing of patent applications on behalf of LightLogic

1  by Defendants, were each a fraud upon Plaintiff, and intended by

2  Defendants to deprive Plaintiff of the value of Mr. Shum's

3  inventions and the benefits of the Radiance Plan of Liquidation.

4      22.  Thereafter, LightLogic was acquired by Intel

5  Corporation specifically for the assets it possessed which were

6  the technology invented by Mr. Shum.  Plaintiff are informed and

7  believe and, upon such information and belief, allege that Intel

8  Corporation knew, or in the exercise of due diligence and

9  reasonable care, should have known that the technology claimed by

10  LightLogic was, in fact, the technology created by Mr. Shum.

11  Plaintiff are informed and believe and upon such information and

12  belief allege that Intel Corporation acquired LightLogic with

13  knowledge that the patent status of the technology invented by

14  Mr. Shum, and which formed the predicate of LightLogic's

15  acquisition, was flawed but proceeded nonetheless in concert with

16  LightLogic in an effort to secure control of Mr. Shum's

17  technology and invention to his detriment as hereinabove set

18  forth.  As corporate successor in interest to LightLogic, Intel

19  is legally responsible for the wrongful conduct and consequences

20  of LightLogic's actions and inactions, as well as those of Intel

21  itself.

22      23.  Intel's purpose in acquiring LightLogic and

23  Mr. Shum's technology, and the value of Mr. Shum's technology to

24  Intel have been acknowledged by Intel through statements of its

25  corporate officer, Executive Vice President Sean M. Maloney.

26  Mr. Maloney is the corporate Executive Vice President and the

27  General Manager of the Intel Communications Group, which includes

28  the LightLogic operations.  In an article published online by EE

PRINTED ON
RECYCLED PAPER

SHUM/1ST AM COMPLAINT :05/22/02                    FIRST AMENDED COMPLAINT FOR FRAUD

1    Times on March 28, 2002, Mr. Maloney is quoted as stating:

2            "LightLogic already has begun shipping an OC-192
             and 10-Gbit/s Ethernet module that's one-fifth the
3            price of competing products, thanks to
             LightLogic's patented method for computer-assisted
4            fiber alignment."

5    Mr. Maloney's statement describes Mr. Shum's invention, which was

6    misappropriated by Verdiell and LightLogic, and purchased by

7    Intel.

8            24.  At all times herein alleged, Defendants and each of

9    them owed to Plaintiff a continuing obligation arising from their

10   fiduciary and legal relationship with Plaintiff which Defendants,

11   and each of them, individually and jointly, breached by conduct,

12   actions, and inactions of which Plaintiff was unaware at the time

13   of the occurrence.  Because of the continuing trust and

14   confidence Plaintiff reposed in Defendants, and each of them, and

15   was entitled to rely upon as a result of the fiduciary and legal

16   requirements imposed by law upon Defendants, and each of them,

17   Plaintiff was unable to discover, prevented from discovering, and

18   unaware of the facts upon which these claims of wrongful conduct

19   by Defendants are alleged.

20           25.  The primary Intellectual Property asset of

21   LightLogic was and is a direct result and evolution of the

22   "packaging" and "flexure technology" which resulted from the

23   creative genius of the Plaintiff Frank Shum.  The Defendants, and

24   each of them, and especially the Defendants Verdiell and

25   LightLogic knew, or in the exercise of due care should have known

26   that the intellectual property of LightLogic was identical to,

27   derivative from and designed to perform the specific purposes and

28   make the specific contributions to optoelectronic communications

PRINTED ON
RECYCLED PAPER

-10-

FIRST AMENDED COMPLAINT FOR FRAUD

1  as did the "packaging" and "flexure technology" of the Plaintiff

2  Frank Shum.

3       26.   Plaintiff is informed and believes, and upon such

4  information and belief alleges, believing the allegations to be

5  true, that the Defendants, and each of them, at the time of the

6  acquisition of LightLogic, possessed knowledge of the creative

7  origin of the intellectual property of LightLogic, including, but

8  not limited to, the fact of the Plaintiff Frank Shum's

9  intellectual and creative inspiration of the concept of

10 "packaging" and "flexure technology"; the existence and

11 dissolution of Radiance including, but not limited to, the

12 Application for Patent No. 08/838,022, the withdrawal of the

13 Application and the circumstances surrounding the withdrawal as

14 set forth above; the filing by Defendants of subsequent patent

15 applications which were the result of the creative genius of

16 Plaintiff Frank Shum; the conduct, misconduct, representations,

17 misrepresentations, fraudulent, careless and negligent conduct of

18 the Defendants and each of them, individually and jointly as it

19 related to their relationship with the Plaintiff Frank Shum.

20 And, further that the Defendants and each of them, negligently

21 and carelessly, fraudulently and wrongfully engaged in customary

22 and required actions of due diligence prior to the acquisition of

23 the Defendant LightLogic by the Defendant Intel, which, in the

24 exercise of ordinary care and caution did, would, should and is

25 required to elicit the facts surrounding the pivotal creative

26 role of the Plaintiff Frank Shum in the creation of the

27 "packaging" and "flexure technology." Defendants and each of

28 them, jointly, individually, and acting concurrently, discovered,

1  failed to discover, negligently and carelessly, fraudulently and

2  wrongfully the role of the Plaintiff Frank Shum in the creation

3  of the "packaging" and "flexure technology" with the intent and

4  purpose of depriving the Plaintiff Frank Shum of the lawful

5  interests he possesses in the technology known as "packaging" and

6  "flexure technology."

7      27.  As a direct and proximate result of the acts,

8  failure to act, negligence, carelessness, fraudulent and wrongful

9  conduct of the Defendants and each of them, individually,

10  severally, and in concurrence one with the other, Plaintiff Frank

11  Shum has been economically and emotionally damaged by virtue of

12  being deprived of his lawful interest in the "packaging" and

13  "flexure technology" which was the impetus and motivation for the

14  acquisition of the Defendant LightLogic by the Defendant Intel

15  and the basis upon which the Defendant Intel valued the

16  acquisition.

17                    **FIRST CAUSE OF ACTION**

18                        (<u>Fraud</u>)

19      28.  Plaintiff hereby alleges and incorporates by

20  reference each and every allegation contained in all paragraphs

21  above, inclusive, as though fully set forth in detail herein.

22      29.  Defendants knew the statements to be false and

23  intended that Plaintiff rely on them.  Plaintiff did so rely, and

24  was damaged thereby.

25                   **SECOND CAUSE OF ACTION**

26                   (<u>Negligent Misrepresentation</u>)

27      30.  Plaintiff hereby realleges and incorporates by

28  reference each and every allegation contained in all paragraphs

                              -12-

PRINTED ON
RECYCLED PAPER

1   above, inclusive, as though fully set forth in detail herein.

2        31.  Defendants made the statements alleged in paragraphs

3   above negligently and without reasonable ground for believing

4   them to be true.  They made said statements for the purpose of

5   inducing Mr. Shum to withdraw, or consent to the withdrawal of,

6   the Radiance patent application, but for which Mr. Shum would not

7   have consented to the withdrawal.  Mr. Shum relied on the

8   statements and was damaged as a result.

9                        THIRD CAUSE OF ACTION

10                        (Misrepresentation)

11       32.  Plaintiff hereby realleges and incorporates by

12  reference each and every allegation contained in all paragraphs

13  above, inclusive, as though fully set forth in detail herein.

14       33.  As patent agents licensed by the USPTO, Alboszta and

15  Lumens have the same duties and obligations in rendering advice

16  concerning patents as does an attorney.  They owed a duty to

17  Mr. Shum to use ordinary care in the prosecution of the Shum

18  patent application.  In performing the acts recited above,

19  Alboszta and Lumens failed to use ordinary care.

20       34.  As a result of the acts of Defendants, Plaintiff has

21  been damaged in an amount to be proven at trial.

22                        FOURTH CAUSE OF ACTION

23                        (Breach of Fiduciary Duty)

24       35.  Plaintiff hereby realleges and incorporates by

25  reference each and every allegation contained in all paragraphs

26  above, inclusive, as though fully set forth in detail herein.

27       36.  Alboszta and Lumens owed a fiduciary duty to

28  Mr. Shum commencing with his initial engagement of them prior to

FIRST AMENDED COMPLAINT FOR FRAUD

the incorporation of Radiance and Mr. Shum's assignment of the patent to Radiance.  The fiduciary duty continued throughout the course of events alleged herein.  This fiduciary duty includes the obligation to avoid any conflict of interest, and "the highest duty of honesty and loyalty."  Alboszta and Lumens violated this fiduciary duty when, beginning in 1998, they prosecuted applications for the same invention on behalf of Verdiell and LightLogic in violation of the interests and rights of Mr. Shum.

37.   The actions of Defendants, and each of them, in breaching their fiduciary duties, in aiding other Defendants in breaching their fiduciary duties to Plaintiff, have caused Plaintiff damage in amount to be proven at trial.

### FIFTH CAUSE OF ACTION

#### (Malpractice)

38.   Plaintiff hereby realleges and incorporates by reference each and every allegation contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

39.   In prosecuting the application on behalf of Verdiell and LightLogic in 1998, Defendants Alboszta and Lumens had a continuing duty to their client, Mr. Shum, not to act against his interest.  In the exercise of ordinary care, Lumens and Alboszta knew or should have known that the 1998 applications were in violation of Mr. Shum's interests.

### SIXTH CAUSE OF ACTION

#### (Conversion)

40.   Plaintiff hereby realleges and incorporates by reference each and every allegation contained in all paragraphs

-14-

FIRST AMENDED COMPLAINT FOR FRAUD

1    above, inclusive, as though fully set forth in detail herein.

2       41.   The acts of Defendants, and each of them, constitute

3    a conversion of the intellectual property belonging to Plaintiff

4    Shum.

5                 **SEVENTH CAUSE OF ACTION**

6                 (<u>Successor Liability</u>)

7       42.   Plaintiff hereby realleges and incorporates by

8    reference each and every allegation contained in all paragraphs

9    above, inclusive, as though fully set forth in detail herein.

10       43.   Thereafter, LightLogic was acquired by Intel

11    Corporation expressly for the assets it possessed which were the

12    technology invented by Mr. Shum.   Plaintiff is informed and

13    believes and, upon such information and belief, alleges that

14    Intel Corporation knew, or in the exercise of due diligence and

15    reasonable care, should have known that the technology claimed by

16    LightLogic was, in fact, the technology created by Mr. Shum.

17    Plaintiff is informed and believes and upon such information and

18    belief alleges that Intel Corporation acquired LightLogic with

19    knowledge that the patent status of the technology invented by

20    Mr. Shum, and which formed the predicate of the LightLogic

21    acquisition, was flawed, but proceeded nonetheless in concert

22    with LightLogic in an effort to secure control of Mr. Shum's

23    technology and invention to his detriment as hereinabove set

24    forth.

25       44.   Through the exercise of due care and diligence the

26    Defendant Intel should have discovered all pertinent, essential

27    and relevant factors affecting the valuation of the acquisition

28    of LightLogic, including the creation of the "packaging" and

1    "flexure technology."   The Defendant Intel's actual knowledge of

2    the acts of the remaining Defendants and each of them, as herein

3    set forth, is not fully known to the Plaintiff, and Plaintiff

4    alleges upon information and belief that the actions, inactions

5    and conduct of the Defendant Intel substantially and proximately

6    contributed to the deprivation and damages sustained by the

7    Plaintiff Frank Shum by actions, inaction, and conduct, which

8    Plaintiff pleads in the alternative to have been careless and

9    negligent, intentional and wrongful.   Plaintiff prays leave to

10   amend this Complaint to further specify the allegations against

11   the Defendants and each of them as evidence is adduced.

12        WHEREFORE, Plaintiff prays judgment against Defendants

13   and each of them, on each Cause of Action herein, as follows:

14        1.    For damages in a sum to be proven at trial;

15        2.    For interest on said sums from the earliest time

16   permitted by law until the date of judgment;

17        3.    For punitive and exemplary damages in excess of the

18   amount Intel paid for LightLogic, $409,000,000.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

PRINTED ON
RECYCLED PAPER

SHUM/1ST AM COMPLAINT 05/22/02

FIRST AMENDED COMPLAINT FOR FRAUD

1        4.    For costs of suit herein incurred; and

2        5.    For such other and further relief as the Court may

3 deem proper.

4

5 DATED:  May 22, 2002

6 e. robert (bob) wallach        JEFFREY W. SHOPOFF

7

8

9 Attorney for Plaintiff       Attorney for Plaintiff
Frank T.  Shum            Frank T. Shum

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR FRAUD

Exhibit B

1   e. robert (bob) wallach, (Bar No. 29078)
    Lawyer-Counselor
2   Law offices of e. robert (bob) wallach, P.C.
    P.O. Box 2670
3   San Francisco, CA 94126-2670
    Telephone: (415) 989-6445
4   Facsimile:  (415) 989-3802

5   JEFFREY W. SHOPOFF (Bar No. 46278)
    One Sansome Street, Suite 1050
6   San Francisco, California 94104-4445
    Telephone:  (415) 984-9607
7   Facsimile:  (415) 398-5584

8   Attorneys for Plaintiffs

9

10               SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                    FOR THE COUNTY OF ALAMEDA

12                       UNLIMITED JURISDICTION

13

14  FRANK T. SHUM and LUMINANCE,     )   CASE NO. **2002-050810**
    LLC,                             )
15                                   )   **COMPLAINT FOR MALPRACTICE,**
                                     )   **NEGLIGENT MISREPRESENTATION,**
               Plaintiffs,           )   **BREACH OF FIDUCIARY DUTY,**
16                                   )   **SUCCESSOR LIABILITY**
         v.                          )
17                                   )
    JEAN-MARC VERDIELL, LUMEN        )
18  INTELLECTUAL PROPERTY SERVICES,  )
    INC., MAREK ALBOSZTA, JOHN C.    )
19  GORMAN, GORMAN & MILLER, and     )
    DOES 1 through 100, ___          )
20  _____      )
               Defendants.           )
21  _____)

22

23        Plaintiffs allege:

24        1.   Plaintiff Frank T. Shum ("Mr. Shum") is a resident

25  of Santa Clara County whose profession is inventor and is an

26  engineer by training and education.  He is the principal

27  co-founder and provider of unique and valuable technology in the

28  field of optoelectronic packaging, which was an asset of a

FILED
ALAMEDA COUNTY

MAY 1 3 2002

CLERK OF THE SUPERIOR COURT
By _____
                        Deputy

**SUMMONS ISSUED**

PRINTED ON
RECYCLED PAPER

COMPLAINT 5-13-02.WPD 05 13 02

1   company called Radiance Design, Inc. ("Radiance"), which

2   dissolved on January 5, 1998 as a result of the conflict with and

3   failure to perform by the defendant Verdiell.

4          2.    Defendant Lumen Intellectual Property Services, Inc.

5   by and through its President, defendant Marek Alboszta("Lumen"),

6   is a Patent Agent charged with the fiduciary responsibility of

7   providing competent, lawful guidance to plaintiff Mr. Shum in the

8   application for and compliance with all lawful requirements of an

9   application for a U.S. Patent.

10         3.    Defendant John C. Gorman ("Gorman") is an attorney

11  licensed to practice in the State of California, a member/partner

12  of the law firm of defendant Miller and Gorman, Third Company,

13  and, at all times relevant herein, acted as attorney for Lumen

14  and Alboszta when he was aware that each of those defendants was

15  acting on behalf of plaintiff Frank Shum and engaged in the

16  performance of patent application responsibilities on his behalf.

17  Simultaneously, defendant Gorman represented the defendant

18  Jean-Marc Verdiell with knowledge that Verdiell's interests were

19  adverse to those of Mr. Shum.  Gorman was privy to confidential

20  information unbeknownst to Mr. Shum which Mr. Gorman

21  independently utilized in a manner adverse to Mr. Shum and

22  beneficial to the defendants Lumen, Alboszta and Verdiell.

23         4.    Defendant Gorman & Miller is a partnership or other

24  business entity engaged in the practice of law in California.

25  Defendant Gorman is a member of Gorman & Miller, and Gorman &

26  Miller is liable for the acts of Gorman alleged herein.

27         5.    The true names and capacities, whether individual,

28  corporate, associate or otherwise of defendants DOES 1 through

PRINTED ON
RECYCLED PAPER

COMPLAINT 5-13-02.WPD 05 13/02                           **COMPLAINT**

1   100, inclusive, are unknown to plaintiffs who therefore sue said

2   defendants by such fictitious names; plaintiffs further allege

3   that each of said fictitious defendants is in some manner

4   responsible for the acts and occurrences hereinafter set forth.

5   Plaintiff will amend this Complaint to show their true names and

6   capacities when same are ascertained, as well as the manner in

7   which each fictitious defendant is responsible.

8       6.   Plaintiff is informed and believes and thereon

9   alleges that at all times herein mentioned each of the defendants

10   was the agent, servant, employee, officer, director, managing

11   agent and/or joint venturer of each of the remaining defendants,

12   and in doing the things hereinafter alleged, was acting within

13   the course and scope of this agency, service, employment,

14   management and/or joint venture.

15       7.   As a direct and/or proximate result of the acts of

16   the defendants and each of them as set forth hereinabove

17   plaintiffs and each of them, individually and severally, have

18   suffered economic and personal damages as herein alleged.

19       8.   Mr. Shum formed Radiance as a sole proprietorship

20   in 1996 for the specific purpose of providing a consulting entity

21   for Mr. Shum's expertise and for the purpose of allowing Mr. Shum

22   to independently develop ideas, concepts, and products which were

23   innovative, unique and essential to the optoelectronic packaging

24   industry.  At the express invitation of Mr. Shum, the defendant

25   Verdiell was invited to become an equal partner in Radiance, as

26   an incorporated entity, at no cost to Verdiell, with the specific

27   intention that Verdiell would conscientiously devote

28   substantially all of his full-time intellectual and professional

-3-

efforts to further the success of Radiance in the development of a highly valuable, uniquely innovative technology which had been conceived and invented by Mr. Shum.  On April 21, 1997, Mr. Shum and Verdiell incorporated Radiance as 50/50 owners.

9.   Mr. Shum is the inventor of certain "flexure technology" in the field of optoelectronic packaging resulting from his extensive educational background and work experience in the field of optoelectronics.  Verdiell was made conversant of Mr. Shum's efforts and accomplishments by Mr. Shum who believed that Verdiell was sincerely interested in facilitating the development and marketing of this unique contribution invented by Mr. Shum and was qualified to implement those goals through private fund raising and other expertise.  As a demonstration of Mr. Shum's complete belief in the integrity and commitment of Verdiell, Mr. Shum assigned his invention and his rights to Application No. 08/838,022 on April 21, 1997, simultaneously with the incorporation of Radiance, of which Verdiell was a 50-50% partner by suggestion and agreement of Mr. Shum.

10.   Verdiell had a pre-existing relationship with Lumens and Alboszta.  Mr. Shum was without experience in the process of applying for a patent and relied upon the good faith, counsel and guidance of Verdiell who introduced Mr. Shum to defendants Lumens and Alboszta for the purpose of having Mr. Shum hire Lumens and Alboszta as patent agents for his invention.  Verdiell presented, represented and conceded that Mr. Shum was the sole inventor. Shortly after this introduction, Lumens and Alboszta filed patent Application No. 08/838,022 on behalf of Radiance, as the assignee of the invention, and listing Mr. Shum as the sole inventor.

PRINTED ON
RECYCLED PAPER

COMPLAINT 5-13-02.WPD 05/13/02                    **COMPLAINT**

11.  As a result of the failure of defendant Verdiell to perform his responsibilities as promised in the furtherance of the purpose of Radiance, and increasing interpersonal hostility directed by defendant Verdiell toward Mr. Shum, the relationship between Mr. Shum and Verdiell deteriorated.  Ultimately, on January 5, 1998, Radiance was dissolved according to a Plan of Liquidation, which included the following provision:

> "Verdiell and Shum shall have equal rights to
> independently exploit intellectual property
> developed by the corporation."

In the negotiations leading to, and the negotiation of the Plan of Liquidation, Verdiell was represented by defendant Gorman as Verdiell's attorney.  Gorman was also attorney for Lumens and Alboszta and plaintiffs allege, upon information and belief, believing the allegations to be true, was privy to confidential information relating to Mr. Shum, on whose behalf defendants Lumens and Alboszta were acting in the capacity of a fiduciary agent and negligently, carelessly and/or intentionally allowed confidential information to be utilized in a manner adverse to Mr. Shum while Gorman was counsel to Lumens and Alboszta, who were required to act protectively of Mr. Shum, simultaneous to Gorman's representation of Verdiell, whose interests Gorman knew, or should have known in the exercise of due care, to have been adverse to Mr. Shum.

12.  As Mr. Shum and Verdiell were negotiating the dissolution of Radiance, Alboszta, acting as president of Lumens, took it upon himself to inform Mr. Shum that Verdiell was a co-inventor who should have been listed on the patent, and that

-5-

1  Lumens could not proceed to further prosecute the patent unless

2  Verdiell agreed to be added as a co-inventor, that the patent was

3  invalid and Mr. Shum had no alternative but to withdraw the

4  patent.  This representation, intended to be beneficial to

5  Verdiell and made to Mr. Shum with the knowledge of defendants

6  Gorman and Verdiell was contrary to law, false, and,

7  fraudulently, negligently, carelessly  and intentionally engaged

8  in conduct designed to deprive Mr. Shum of the principal asset of

9  Radiance and of the fruits of his extensive creative and

10  intellectual efforts, all to Mr. Shum's personal, economic,

11  mental and emotional detriment.  Defendants Lumens, Alboszta,

12  Verdiell and Gorman knew, and in the exercise of their fiduciary

13  and professional duties, should have known, that the

14  representation was fraudulent, false, misleading, contrary to

15  law, and designed to cause irreparable and substantial financial,

16  economic, personal and emotional injury to Mr. Shum and

17  plaintiffs herein.

18       13.  Defendant Alboszta, on behalf of Lumens,

19  represented, misrepresented that the only way the patent could be

20  made viable by Mr. Shum was to add the defendant Verdiell as a

21  co-inventor, although defendant Alboszta knew, and in the

22  exercise of his fiduciary and professional responsibilities

23  should have known, that such status for Verdiell was contrary to

24  fact, untrue and fraudulent.  Plaintiffs herein allege, upon

25  information and belief, believing the allegations to be true,

26  that the defendants and each of them were aware that the

27  representations of patent invalidity were false, fraudulent and

28  contrary to law and that the requirement to add Verdiell to make

-6-

1   the patent valid was false, fraudulent, and contrary to law.

2        14.   Thereupon, Verdiell stated he was willing to add his

3   name to the patent application, but only if Shum gave up all

4   interest in the invention, which Mr. Shum refused to do.

5   Verdiell thereupon instructed Lumens to abandon the application,

6   and on November 17, 1996, Lumens filed abandonment of the

7   application with the PTO, thus negligently, carelessly and/or

8   intentionally causing irreparable and substantial economic,

9   financial, emotional and personal harm and injury to plaintiffs

10  and each of them, individually and jointly.

11       15.   At the same time as Alboszta's misrepresentation,

12  and just three days before the abandonment was filed, Verdiell,

13  and, on information and belief, his attorney Gorman, secretly

14  incorporated a new company called "LightLogic, Inc." on

15  November 14, 1997.  Defendant Gorman knew, or in the exercise of

16  due care should have known, that LightLogic, Inc. was

17  incorporated for the purpose of depriving Mr. Shum of the

18  benefits of his extensive and creative intellectual effort, was

19  adverse to his economic, financial, emotional and personal

20  interests and would cause Mr. Shum extensive, irreparable damage.

21       16.   As alleged in para. 11 above, Radiance was dissolved

22  on January 5, 1998.  The very next day, January 6, 1998, filed a

23  new patent application, in deliberate and direct succession to

24  virtually identical to the abandoned application and with

25  substantially identical patent claims.  This application listed

26  Verdiell as the sole inventor.  Defendants knew or should have

27  known, from their dealings just months before with Radiance, Shum

28  and Verdiell, that Mr. Shum was the sole inventor, and that this

-7-

1   application was fraudulent and in violation of Mr. Shum's rights,

2   patent law, and the Plan of Liquidation.

3       17.   The formation of LightLogic by defendants, and the

4   subsequent filing of patent applications on behalf of LightLogic

5   by defendants, were each a fraud upon plaintiffs, and intended by

6   defendants to deprive plaintiffs of the value of Mr. Shum's

7   inventions and the benefits of the Radiance Dissolution

8   Agreement.

9       18.   Thereafter, LightLogic was acquired by Intel

10  Corporation expressly for the asset it possessed which was the

11  technology invented by Mr. Shum.  Plaintiffs are informed and

12  believe and, upon such information and belief, allege that Intel

13  Corporation knew, or in the exercise of due diligence and

14  reasonable care, should have known that the technology claimed by

15  LightLogic was, in fact, the technology created by Mr. Shum.

16  Plaintiffs are informed and believe and upon such information and

17  belief allege that the Intel Corporation acquired LightLogic with

18  knowledge that the patent status of the technology invented by

19  Mr. Shum, and which formed the predicate of LightLogic's

20  acquisition, was flawed but proceeded nonetheless in concert with

21  LightLogic in an effort to secure control of Mr. Shum's

22  technology and invention to his detriment as hereinabove set

23  forth.  As corporate successor in interest to LightLogic, Intel

24  is legally responsible for the wrongful conduct and consequences

25  of lightLogic's actions and inactions, as well as those of Intel

26  itself.

27      19.   At all times herein alleged, defendants and each of

28  them owed to plaintiffs, individually and jointly, a continuing

1. obligation arising from their fiduciary and legal relationship
2. with plaintiffs which defendants, and each of them, individually
3. and jointly, breached by conduct, actions, and inactions of which
4. plaintiffs, and each of them, were unaware at the time of the
5. occurrence.   Because of the continuing trust and confidence
6. plaintiffs, and each of them, reposed in defendants and each of
7. them, and were entitled to rely upon as a result of the fiduciary
8. and legal requirements imposed by law upon defendants and each of
9. them, plaintiffs and each of them, individually and jointly, were
10. unable to discover, prevented from discovering, and unaware of
11. the facts upon which these claims of wrongful conduct by
12. defendants are alleged.

### FIRST CAUSE OF ACTION

### (Malpractice)

15.    20.   Plaintiffs hereby reallege and incorporate by
16. reference each and every allegation contained in all paragraphs
17. above, inclusive, as though fully set forth in detail herein.
18.    21.   As patent agents licensed by the U.S.P.T.O.,
19. Alboszta and Lumens have the same duties and obligations in
20. rendering advice concerning patents as does an attorney.   They
21. owed a duty to Radiance and Shum to use ordinary care in the
22. prosecution of the Shum patent application.   In performing the
23. acts recited above, Alboszta and Lumens failed to use ordinary
24. care.
25.    22.   As a result of the acts of defendants, plaintiffs
26. have been damaged in an amount to be proven at trial.
27. ///
28. ///

PRINTED ON
RECYCLED PAPER

**COMPLAINT**

### SECOND CAUSE OF ACTION

#### (Negligent Misrepresentation)

23.   Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

24.   Defendants made the statements alleged in paragraphs 11 through 14 above, negligently and without reasonable ground for believing them to be true.  They made said statements for the purpose of inducing Mr. Shum to withdraw, or consent to the withdrawal of, the Radiance patent application.  That Mr. Shum would not have consented to the withdrawal.  Mr. Shum relied on the statements and plaintiffs were damaged as a result.

### THIRD CAUSE OF ACTION

#### (Fraud)

25.   Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

26.   Defendants knew the statements to be false and intended that plaintiffs rely on them.  Plaintiffs did so rely, and were damaged thereby.

### FOURTH CAUSE OF ACTION

#### (Breach of Fiduciary Duty)

27.   Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in all paragraphs above, inclusive, as though fully set forth in detail herein.

28.   Alboszta and Lumens owed a fiduciary duty to Mr. Shum commencing with his initial engagement of them prior to the incorporation of Radiance and Mr. Shum's assignment of the

-10-

1   patent to Radiance.   The fiduciary duty continued throughout the

2   course of events alleged herein.   This fiduciary duty includes

3   the obligation to avoid any conflict of interest, and "the

4   highest duty of honesty and loyalty."   Alboszta and Lumens

5   violated this fiduciary duty when, beginning in 1998, they

6   prosecuted applications for the same invention(s) on behalf of

7   Verdiell and LightLogic in violation of the interests and rights

8   of Shum.

9       29.   The actions of defendants, and each of them, in

10   breaching their fiduciary duties, in aiding other defendants in

11   breaching their fiduciary duties to plaintiffs, have caused

12   plaintiffs damage in amount to be proven at trial.

### FIFTH CAUSE OF ACTION

#### (Malpractice)

15       30.   Plaintiffs hereby reallege and incorporate by

16   reference each and every allegation contained in all paragraphs

17   above, inclusive, as though fully set forth in detail herein.

18       31.   In prosecuting applications on behalf of Verdiell

19   and Shum in 1998, defendants Alboszta and Lumens continuing duty

20   to their client, Mr. Shum, not to act against his interest.   In

21   the exercise of ordinary care, Lumens and Alboszta knew or should

22   have known that the 1998 applications were in violation of Shum's

23   interests.

### SIXTH CAUSE OF ACTION

#### (Successor Liability)

26       32.   Plaintiffs hereby reallege and incorporate by

27   reference each and every allegation contained in all paragraphs

28   above, inclusive, as though fully set forth in detail herein.

PRINTED ON
RECYCLED PAPER

COMPLAINT 5-13-02.WPD 05/13/02                    **COMPLAINT**

33. Thereafter, LightLogic was acquired by Intel Corporation expressly for the asset it possessed which was the technology invented by Mr. Shum. Plaintiffs are informed and believe and, upon such information and belief, allege that Intel Corporation knew, or in the exercise of due diligence and reasonable care, should have known that the technology claimed by LightLogic was, in fact, the technology created by Mr. Shum. Plaintiffs are informed and believe and upon such information and belief allege that the Intel Corporation acquired LightLogic with knowledge that the patent status of the technology invented by Mr. Shum, and which formed the predicate of LightLogic's acquisition, was flawed but proceeded nonetheless in concert with LightLogic in an effort to secure control of Mr. Shum's technology and invention to his detriment as hereinabove set forth.

WHEREFORE, plaintiff prays judgment against defendants and each of them, on each Cause of Action herein, as follows:

1. For damages in a sum to be proven at trial;

2. For interest on said sums from the earliest time permitted by law until the date of judgment;

3. For punitive and exemplary damages in the amount of $20,000,000;

4. For costs of suit herein incurred; and

///
///
///
///

PRINTED ON
RECYCLED PAPER

-12-

    5.   For such other and further relief as the Court may
deem proper.


DATED:   May 13, 2002          e. robert (bob) wallach
                               JEFFREY W. SHOPOFF


                               By: _____

                               Attorneys for Plaintiffs
                               Frank T.   Shum and Luminance, LLC

-13-

COMPLAINT 5-13-02.WPD 05/13/02              **COMPLAINT**

PRINTED ON
RECYCLED PAPER

RECYCLED PAPER MADE FROM 30% POST CONSUMER CONTENT

Exhibit C

# SUMMONS
ON FIRST AMENDED COMPLAINT
*(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*

INTEL CORPORATION, JEAN-MARC VERDIELL, LIGHTLOGIC, INC., LUMEN INTELLECTUAL PROPERTY SERVICES, INC., MAREK ALBOSZTA, JOHN C. GORMAN, GORMAN & MILLER, and DOES 1 THROUGH 100,

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(A Ud. le está demandando)*

FRANK T. SHUM

You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court.

A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case.

If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

*Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.*

*Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.*

*Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosasde su propiedad sin aviso adicional por parte de la corte.*

*Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).*

| The name and address of the court is: *(El nombre y dirección de la corte es)* | CASE NUMBER *(Número del Caso)* |
|---|---|
| SUPERIOR COURT OF THE STATE OF CALIFORNIA County of Alameda 1225 Fallen Street Oakland, CA   94612 | 2002-050810 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*

e. robert (bob) wallach, Bar No. 29078)   [415] 989-6445
P.O. Box 2670/155 Jackson St., #602, San Francisco
CA 94126-2670
Jeffrey W. Shopoff, Bar No. 46278      [415] 984-9607
One Sansome St., #1050, San Francisco, CA  94104-4445

DATE: MAY 2 2 2002
*(Fecha)*

Clerk, by DOROTHY DUCKETT , Deputy
*(Actuario)*                        *(Delegado)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☑ on behalf of *(specify)*: *INTEL CORPORATION*

under: ☑ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (individual)
☐ other:

4. ☑ by personal delivery on *(date)*: 6/10/02

Form Adopted by Rule 982
Judicial Council of California
982(a)(9) [Rev. January 1, 1984]
Mandatory Form

**(See reverse for Proof of Service)**
**SUMMONS**

Legal Solutions Plus

CCP 412.20

# SUMMONS ON FIRST AMENDED COMPLAINT
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*

INTEL CORPORATION, JEAN-MARC VERDIELL, LIGHTLOGIC,
INC., LUMEN INTELLECTUAL PROPERTY SERVICES, INC.,
MAREK ALBOSZTA, JOHN C. GORMAN, GORMAN & MILLER,
and DOES 1 THROUGH 100,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(A Ud. le está demandando)*
FRANK T. SHUM

| | |
|---|---|
| You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court. | *Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.* |
| A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case. | *Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.* |
| If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court. | *Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosasde su propiedad sin aviso adicional por parte de la corte.* |
| There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). | *Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).* |

The name and address of the court is: *(El nombre y dirección de la corte es)*

SUPERIOR COURT OF THE STATE OF CALIFORNIA
County of Alameda
1225 Fallen Street
Oakland, CA   94612

**CASE NUMBER** *(Número del Caso)*
2002-050810

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*

e. robert (bob) wallach, Bar No. 29078)  [415] 989-6445
P.O. Box 2670/155 Jackson St., #602, San Francisco
CA 94126-2670
Jeffrey W. Shopoff, Bar No. 46278       [415] 984-9607
One Sansome St., #1050, San Francisco, CA  94104-4445

DATE:
*(Fecha)*   **MAY 2 2 2002**

Clerk, by DOROTHY DUCKETT
*(Actuario)*
, Deputy
*(Delegado)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☑ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☑ on behalf of *(specify)*: *JEAN-MARC VERDIELL*

under: ☐ CCP 416.10 (corporation)
☐ CCP 416.20 (defunct corporation)
☐ CCP 416.40 (association or partnership)
☐ other:

☐ CCP 416.60 (minor)
☐ CCP 416.70 (conservatee)
☑ CCP 416.90 (individual)

4. ☐ by personal delivery on *(date)*:

Form Adopted by Rule 982
Judicial Council of California
982(a)(9) [Rev. January 1, 1984]
Mandatory Form

*(See reverse for Proof of Service)*
**SUMMONS**

Legal
Solutions
Plus

CCP 412.20

Exhibit D

## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION PACKAGE
### Effective July 2, 2001

**Instructions to Plaintiff / Cross-Complainant**

> In all general civil cases filed in the trial courts after June 30, 2001, the plaintiff
> is required to serve a copy of this ADR information package on each defendant.

California Rules of Court. Rule 1590.1 (Excerpt)

(a) Each court shall make available to the plaintiff, at the time of filing of
the complaint, an ADR information package that includes, at a minimum, all
of the following:

(1) General information about the potential advantages and
disadvantages of ADR and descriptions of the principal ADR
processes . . .

(2) Information about the ADR programs available in that court . . .

(3) In counties that are participating in the Dispute Resolution
Programs Act (DRPA), information about the availability of local
dispute resolution programs funded under the DRPA . . .

(4) An ADR stipulation form that parties may use to stipulate to the
use of an ADR process.

(b) The plaintiff shall serve a copy of the ADR information package on
each defendant along with the complaint. Cross-complainants shall
serve a copy of the ADR information package on any new parties to the
action along with the cross-complaint.

# GENERAL INFORMATION ABOUT ADR

## Introduction to Alternative Dispute Resolution

Did you know that most civil lawsuits settle without a trial? And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (also called ADR). The most common forms of ADR are mediation, arbitration, and neutral evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. In mediation, for example, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through court-connected and community dispute resolution programs and private neutrals.

## Advantages of Alternative Dispute Resolution

ADR can have a number of advantages over a lawsuit:

- **ADR can be speedier.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- **ADR can save money.** Court costs, attorney fees, and expert witness fees can be saved.

- **ADR can permit more participation.** With ADR, the parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- **ADR can be flexible.** The parties can choose the ADR process that is best for them.

- **ADR can be cooperative.** In mediation, for example, the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- **ADR can reduce stress.** There are fewer, if any, court appearances. And because ADR can be speedier, cheaper, and can create an atmosphere in which the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads. For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute instead of filing a lawsuit. Even when a lawsuit has been filed, ADR can be used before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of Alternative Dispute Resolution

ADR may not be suitable for every dispute.

If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure and review for legal error by an appellate court.

There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

The neutral may charge a fee for his or her services.

dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitations. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# Three Common Types of Alternative Dispute Resolution

This section describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

## Mediation

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved; the parties do.

Mediation is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how they each see things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or has unequal bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

## Arbitration

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records) rather than by testimony.

There are two kinds of arbitration in California: (1) Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and is normally binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. (2) "Judicial arbitration" takes place within the court process and is not binding unless the parties agree at the outset to be bound. A party to this kind of arbitration who does not like a judicial arbitration award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to decide on the outcome of their dispute themselves.

## Neutral Evaluation

In evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments and makes an evaluation of the case. Each party gets a chance to present his or her side and hear the other side. This may lead to a settlement or at least help the parties prepare to resolve the dispute later on. If the neutral evaluation does not resolve the dispute, the parties may go to court or try another form of ADR.

Neutral evaluation, like mediation, can come early in the dispute and save time and money.

Neutral evaluation is most effective when a party has an unrealistic view of the dispute, when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Neutral evaluation may not be a good idea when it is too soon to tell what the case is worth or if the dispute is about something besides money, like a neighbor playing loud music late at night.

## Other Types of Alternative Dispute Resolution

ere are several other types of ADR besides mediation, arbitration, and neutral evaluation. Some of these are conciliation, settlement conferences, fact-finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR methods. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering.

Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge.

You may wish to seek the advice of an attorney about your legal rights and other matters relating to the dispute.

## Help Finding an Alternative Dispute Resolution Program (Mediation) in Your Community

To locate a dispute resolution program or private neutral in your community:

- **Visit the California Department of Consumer Affairs' Web site.** The Department of Consumer Affairs (also called the DCA) has posted a list of conflict resolution programs throughout the state. The list can be found at http://www.dca.ca.gov/r_r/mediati1.htm

  You can also call the Department of Consumer Affairs, Consumer Information Center, at 800-952-5210.

- **Contact your county's small claims court legal advisor.** You can find a list of small claims legal advisors for most counties in the Small Claims Court section of this Self-Help Center.

- **Contact your local bar association.** You can find a list of local bar associations in California on the State Bar Web site at http://www.calbar.org/2lin/2bar.htm.

  If you cannot find a bar association for your area on the State Bar Web site, check the yellow pages of your telephone book under "Associations."

- **Look in the yellow pages** of your telephone book under "Arbitrators" or "Mediators."

- **Automotive Repair, Smog Check:** The California Bureau of Automotive Repair (also known as BAR) offers a free mediation service for consumers who are dissatisfied with an auto repair or a smog check, or who dispute an invoice for such services. BAR registers and regulates California automotive repair facilities and licenses smog, lamp, and brake inspection stations. Learn more at http://smogcheck.ca.gov/smogweb/geninfo/otherinfo/mediation.htm or call 800-952-5210.

- **Burglar Alarm Companies, Cemetery/Funeral, Electronic and Appliance Repair, Firearms/Baton Training Facilities/Instructors, Home Furnishings and Thermal Insulation, Locksmith Companies, Private Investigators, Private Patrol Operators, Repossession Agencies, Security Guards:** The California Department of Consumer Affairs offers a complaint mediation program for all consumer complaints filed against California businesses regulated in the areas of: cemetery and funeral, electronic and appliance repair, home furnishings and thermal insulation, and security and investigative services. Learn more at http://www.complainthelp.dca.ca.gov or call 800-952-5210.

- **Attorney Fees:** The State Bar of California administers a mandatory fee arbitration program to resolve attorney fee disputes between lawyers and their clients. The program is an informal, low-cost forum and is mandatory for a lawyer if a client requests it. Mediation of attorney fees disputes may also be available in some areas of California. Learn more at http://www.calbar.org/2bar/3arb/3arbndx.htm or call 415-538-2020.

ecent years, a number of California courts have established programs for ADR. Your court clerk can tell you whether your local court offers an ADR program.

## DISPUTE RESOLUTION PROGRAMS IN ALAMEDA COUNTY

**Alameda County Bar Association, ADR Placement Service**
360 22nd Street, Suite 800, Oakland, CA 94612
Phone:893-7160
Provides civil dispute resolution alternatives countywide, offering disputants the opportunity to select an alternative dispute resolution (ADR) provider from a pool of experienced professionals. Program recruits, trains, and evaluates qualified ADR providers, places civil cases with ADR providers for resolution and settlement, and educates local citizens, consumer groups, businesses, schools, lawyers, and judges on the benefits of ADR.

**Mediation Resolution Services**
22227 Redwood Road, Castro Valley, CA 94546
Phone:733-4940
Provides mediation for neighbor-to-neighbor disputes in Central and South County, receiving and responding to referrals from the courts, schools, organizations and public protection providers to help resolve disputes between neighbors, students, tenants and landlords, merchants and consumers, and employees and employers.

**Berkeley Dispute Resolution Service**
1769 Alcatraz Avenue, Berkeley, CA 94703
Phone:428-1811
Services the Berkeley-Albany area. Provides mediation between neighbors, roommates, family members, business partners, etc. Mediates construction permit disputes referred from administrative hearings and works collaboratively with law enforcement, schools and the judicial system.

**Conciliation Forums of Oakland**
672 Preservation Park Way, Oakland, CA 94612
Phone:763-2117
Provides services in Oakland-Piedmont-Emeryville, Alameda, Berkeley-Albany, San Leandro, Hayward and Castro Valley. Services include educating the public about the fundamentals of conflict resolution, referring individuals to other social service agencies, and distributing a training manual on conflict resolution. Multi-lingual services provided.

**Catholic Charities, Victim Offender Reconciliation Program (VORP)**
433 Jefferson Street, Oakland, CA 94607
Phone:768-3100
Program mediators facilitate an intensive intervention for victims and juvenile offenders referred by the Probation Department. Mediators are responsible for mediation sessions involving the youth, victim and family members to work towards a mutually agreeable restitution agreement. Also provide free workshops in anger management and mediation.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA 94550
Phone:(925)373-1035
Provides services in Tri-Valley for all of Alameda County. Program goals are to increase the number of court cases resolved, mediating small claims cases four days per week, and training youth in listening and conflict resolution skills.

**Arts Arbitration and Mediation Services**
Fort Mason Center C-255, San Francisco, CA 94123
Phone:(415)775-7200 x764
This program increases the resolution of arts related disputes such as artistic control, ownership of intellectual property, lit for work performed or produced and contract issues, through the use of alternative dispute resolution. It also increases the capacity to provide services for counseling, conciliation and administration of mediation, arbitration and meeting facilitation.

# ALAMEDA COUNTY SUPERIOR COURT
## ADR PROGRAM

**ADR Program Administrator**

Pursuant to California Rule of Court 1580.3, the presiding judge of the Superior Court of California, County of Alameda has designated Arthur Sims, Clerk-Executive Officer, to serve as ADR program administrator.

A Plaintiff may elect, the parties may stipulate or a judge may refer a case to Judicial Arbitration. The Judicial Arbitration Program Coordinator may be contacted at (510) 670-6646.

**The Judicial Arbitration Process**

    Appointment of Arbitrator (must be appointed within 30 days after referral per *CRC 1605*).
    ⇒ Parties mailed list of five names from which to select. (List mailed within 5-10 business days after receipt of referral).

    ⇒ Each party may reject one of the names listed (10 calendar days per *CRC 1605a*)

    ⇒ The administrator randomly appoints the arbitrators from the names remaining on the list. If only one remains then is deemed appointed.

    Assignment of Case *(CRC 1605a(4))*
    ⇒ Within 15 days of notice of the appointment, the arbitrator shall contact parties in writing about time, date, and place of the hearing. The parties shall receive at least 30 days notice prior to the hearing.

    Hearings *(CRC 1611)*
    ⇒ Shall be scheduled so as to be completed not less than 35 days nor more than 90 days from the date the arbitrator was assigned. For good cause shown, the case may be continued an additional 90 days by the Case Management Judge.

    Award of Arbitrator *(CRC 1615b & c)*
    ⇒ Arbitrator must file an award within 10 days after conclusion of the arbitration hearing. The court may allow 20 additional days upon application of arbitrator is cases of unusual length or complexity.

    ⇒ Within 30 days of the filing of the award the parties may file a Request for Trial de Novo. The clerk shall enter the award as a judgment after 30 days provided a Trial de Novo has not been filed.

    Return of Case to Court
    ⇒ Upon Filing of Trial de Novo the action is returned to Case Management Judge for further proceedings. *(CRC 1616 & Local Rule 6.4)*

    ⇒ If Trial de Novo is not filed then judgment is entered and the Case Management Judge is notified *(CRC 1615c & Local Rule 6.6)*

    ⇒ If parties indicate a settlement then case is returned to Case Management Judge and case is continued 45 days for an Order to Show Cause RE filing a dismissal. *(Local Rule 6.6)*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| | | |
|---|---|---|
| Allen E. Broussard Justice Center<br>600 Washington Street, Oakland, CA 94707 | Berkeley Courthouse<br>2000 Center Street, Berkeley, CA 94704 | Berkeley Courthouse<br>2120 Martin Luther King, Jr. Way, Berkeley 94704 |
| Fremont Hall of Justice<br>39439 Paseo Padre Parkway, Fremont, CA 94538 | Gale/Schenone Hall of Justice<br>5672 Stoneridge Drive, Pleasanton, CA 94588 | George E. McDonald Hall of Justice<br>2233 Shoreline Drive, Alameda, CA 94501 |
| Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | René C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | Wiley W. Manuel Courthouse<br>661 Washington Street, Oakland, CA 94607 |

Plaintiff

vs.

Case No.: _____

**STIPULATION FOR ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Defendant

The parties by and through their attorneys of record hereby stipulate to submit the within

controversy to the following Alternative Dispute Resolution process:

_____

_____

_____

### ORDER

The foregoing stipulation having been read and considered, and good cause appearing, now therefore,

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the matter be set for Order to Show Cause Hearing RE:

Dismissal on _____ at _____ a.m./p.m. in Department _____

Dated: _____

_____

JUDGE OF THE SUPERIOR COURT

.(SEAL)