# United States Court of Appeals for the Federal Circuit

2006-1249   *C-02-3262 DLJ*

FRANK T. SHUM

*FILED*
*NOV 19 2007*
*RICHARD W. WIEKING*
*CLERK U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*
*OAKLAND*

Plaintiff-Appellant

v.

INTEL CORPORATION, LIGHTLOGIC, INC.,
and JEAN-MARC VERDIELL,

Defendants-Appellees.

Paul F. Kirsch, Townsend and Townsend and Crew LLP, of San Francisco, California, argued for plaintiff-appellant. With him on the brief were George M. Schwab and Mark T. Jansen.

Stephen E. Taylor, Taylor & Company Law Offices, Inc., of San Francisco, California, argued for defendants-appellees. With him on the brief were Stacey L. Wexler and Tyler G. Newby. Of counsel was Mark A. Lemley, Keker & Van Nest, LLP, of San Francisco, California.

Appealed from: United States District Court for the Northern District of California

Senior Judge D. Lowell Jensen

# United States Court of Appeals for the Federal Circuit

2006-1249

*C-02-3262-DLJ*

FRANK T. SHUM,

Plaintiff-Appellant,

v.

INTEL CORPORATION, LIGHTLOGIC, INC.,
and JEAN-MARC VERDIELL,

Defendants-Appellees.

---

DECIDED: August 24, 2007

---

Before NEWMAN, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and LOURIE, <u>Circuit Judge</u>.

Opinion for the court filed by <u>Circuit Judge</u> LOURIE. Dissenting opinion filed by <u>Senior Circuit Judge</u> FRIEDMAN.

LOURIE, <u>Circuit Judge</u>.

Frank T. Shum appeals from the decision of the United States District Court for the Northern District of California dismissing his claims for correction of inventorship pursuant to 35 U.S.C. § 256 and various state law claims, including fraud, fraudulent concealment, breach of fiduciary duty, and unjust enrichment. Because we conclude that the district court erred in conducting a bench trial on the inventorship claim prior to a jury trial on the state law claims when there were common underlying factual issues,

and erred in dismissing the unjust enrichment claim on the pleadings, we vacate, reverse, and remand.

## BACKGROUND

Shum is an optical engineer who worked for many years in the field of optoelectric packaging technology.[1]   Shum met Jean-Marc Verdiell, who is also an engineer experienced in the field of optoelectronics, while working at Spectra Diode Laboratories, Inc. ("SDL").  In 1996, Shum left SDL to form a company called Radiance Design ("Radiance"), which focused on the development of optoelectronic packaging. Although Verdiell was still employed with SDL, Shum continued to work with him on preparing grant proposals for various optoelectronic packaging projects.   In March 1997, Verdiell resigned from SDL and joined Shum at Radiance.  On April 22, 1997, Shum and Verdiell incorporated Radiance as equal shareholders.  Verdiell was named President and Treasurer, and Shum, Vice President.

On the day of incorporation, Shum filed patent application 08/838,022 (the "'022 patent application"), entitled "Optoelectronic Assembly and Method of Making the Same," on behalf of Radiance.   Shum was named the sole inventor.   During the following months, Shum and Verdiell's relationship deteriorated.  On January 5, 1998, Radiance was dissolved pursuant to a Plan of Liquidation, which granted Shum and Verdiell "equal rights to independently exploit intellectual property developed by the corporation."   The following day, Verdiell filed a patent application on behalf of a company he had formed several months earlier called LightLogic, Inc.  That patent

---

[1] Optoelectronic packages are devices that are "used to transmit light carrying data into fiber optic cable in order to send information at high speeds over fiber optic networks."  Shum v. Intel Corp., No. C-02-3262 (N.D. Cal. June 21, 2005) at 1.

application matured into U.S. Patent 5,977,567 (the "'567 patent") on November 2, 1999. After the issuance of the '567 patent, LightLogic obtained additional patents relating to similar subject matter. In 2001, Intel Corporation ("Intel") acquired LightLogic and all of its intellectual property rights in exchange for $409,000,000 in stock. On May 13, 2001, Shum became aware of Intel's purchase of LightLogic and the existence of the patents in suit.[2]

Shum initiated the instant lawsuit after learning of Intel's acquisition of LightLogic. In his complaint, Shum made the following allegations that are relevant to this appeal. According to Shum, Verdiell had engaged in fraudulent conduct by misappropriating the technology developed by Shum at Radiance. During the pendency of Shum's '022 patent application, Verdiell informed Marek Alboszta, the patent agent who prosecuted that patent application on behalf of Shum, that he was an inventor of the subject matter described in Shum's patent application. In response, Alboszta informed Shum that Verdiell would have to be added as an inventor on the application; otherwise the patent would be invalid. Verdiell ultimately instructed Alboszta to abandon the patent application, which he did on November 17, 1997.

Although Shum and Verdiell were business partners, Verdiell did not inform Shum that he had incorporated LightLogic three days prior to the abandonment of the '022 patent application. Shum further alleged that Verdiell formed LightLogic as a vehicle for filing patent applications based on technology developed at Radiance. Shum asserts that that included the patent application that Verdiell filed one day after

---

[2]     The patents in suit include U.S. Patents 5,977,567, 6,376,268, 6,207,950, 6,227,724, 6,586,726, 6,585,427, and 6,252,726. Verdiell is a named inventor on all of those patents.

the dissolution of Radiance, which, according to Shum, is virtually identical to Shum's abandoned '022 patent application.  In other words, Shum claims that Verdiell filed an application solely in Verdiell's name that is virtually identical to that Shum had filed in his name, but that Verdiell had instructed be abandoned.  Additionally, Shum alleged that Verdiell engaged in other questionable activity, including transferring bank accounts so that Radiance's funds were under Verdiell's sole control, excluding Shum from meetings with Radiance investors, removing Shum's name as "principal investigator" from government contracts with Radiance, and withholding critical information from Shum.

On May 13, 2002, Shum filed a complaint against numerous defendants, including Verdiell, LightLogic, and Intel ("appellees") in state court alleging fraud, unjust enrichment, and other state law tort claims.  On July 9, 2002, the case was removed to federal court.  Appellees moved to dismiss the complaint, which the court granted.  On December 19, 2002, Shum filed a second amended complaint.   The amended complaint added a cause of action for correction of inventorship under 35 U.S.C. § 256, in addition to the state law claims.  Appellees moved to dismiss the second amended complaint, which the court granted in part and denied in part on March 25, 2003.  The court dismissed Shum's unjust enrichment claim on the pleadings, but allowed Shum to proceed with his inventorship, fraud, fraudulent concealment, breach of fiduciary duty, and breach of contract claims.  On February 13, 2004, appellees moved for summary judgment and to bifurcate the trial.  On April 27, 2004, the district court denied the summary judgment motions, but granted the motion to bifurcate the inventorship and

state law claims. The court ordered that the inventorship cause of action be tried to the court before the state law claims were tried to a jury.

The bench trial on the correction of inventorship issue commenced on January 10, 2005. On June 21, 2005, the court issued an order stating that Shum had not met his burden of proving by clear and convincing evidence that he was an inventor on any of the patents at issue. Appellees then filed renewed motions for summary judgment on the remaining state law claims. The court granted summary judgment and entered judgment in their favor on January 12, 2006.

Shum timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

On appeal, Shum argues that under Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959), the district court's decision to bifurcate the claims and to conduct a bench trial on the inventorship issue prior to a jury trial on the state law claims violated his constitutional right to a jury. According to Shum, his inventorship claim and state law claims share common factual issues that are "inextricably intertwined," and thus a jury trial should have preceded a bench trial. Shum further argues that the court committed numerous errors in reaching its conclusions with regard to the inventorship determination. Additionally, Shum asserts that summary judgment should not have been granted on the state law claims because the court's erroneous inventorship decision had a dispositive impact on those claims, and also because the district court committed numerous errors in reaching its decision.

Appellees respond that the court did not err in holding a bench trial on the inventorship issue first because the inventorship claim and the state law claims do not

share common underlying factual issues.  As such, appellees assert that the rule set forth in Beacon Theatres is not implicated.  Defendants further assert that the court did not err in concluding that Shum was not an inventor on any of the patents in suit. Lastly, defendants contend that the court properly granted summary judgment on the state law claims.

A.     Seventh Amendment Right to a Jury Trial

We first address Shum's arguments concerning his right to a jury trial.  A trial court's decision to bifurcate a trial is reviewed for an abuse of discretion.   Danjaq v. Sony, 263 F.3d 942, 961-62 (9th Cir. 2001).  A court has broad discretion with regard to trial management.  Federal Rule of Civil Procedure 42(b) provides:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim . . . always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed. R. Civ. P. 42(b) (emphasis added).   As the rule acknowledges, the court's discretion is not without limits.  When deciding whether issues should be separately tried, trial courts must ensure that a litigant's constitutional right to a jury is preserved. "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Dimick v. Schiedt, 293 U.S. 474, 486 (1935).

In Beacon Theatres, the Supreme Court addressed the importance of the order in which legal and equitable claims are to be tried in one suit.  While recognizing that "the same court may try both legal and equitable causes in the same action," the

Supreme Court held that "only under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims." Id. at 508, 510-11. The Court concluded that the trial court erred by conducting a bench trial on the equitable claim at issue, thereby precluding a jury trial on the legal claims, when the equitable claim resolved factual issues that were "common" to the legal claims. Thus, under Supreme Court precedent, when legal claims involve factual issues that are "common with those upon which [the] claim to equitable relief is based, the legal claims involved in the action must be determined prior to any final court determination of [the] equitable claims." Dairy Queen, Inc. v. Wood, 369 U.S. 469, 479 (1962). Accordingly, in order to resolve the issue presented to us, we must determine whether this case involves both equitable and legal claims, and if so, whether those claims share common factual issues.

We agree with Shum that this case does involve both equitable and legal claims, that his inventorship claim and at least one of his state law claims share common facts, and thus that he was improperly denied a jury trial on the facts underlying his state law claims. With respect to the first inquiry, namely, whether this case involves both equitable and legal claims, that issue is largely undisputed by the parties. A correction for inventorship claim under section 256 creates a cause of action in federal courts that authorizes a district court to resolve inventorship disputes over issued patents. MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1570 (Fed. Cir. 1989). At oral argument, the parties agreed that an action for correction of inventorship under § 256, standing alone, is an equitable claim to which no right to a jury trial attaches.

Additionally, the parties do not dispute that Shum's asserted state law claims are legal claims to which Shum would be entitled to a jury determination.

We next consider whether Shum's equitable claim and any of the asserted legal claims share common factual issues. With regard to the correction of inventorship claim under § 256, "the critical question for joint conception is who conceived, as that term is used in the patent law, the subject matter of the claims at issue." Ethicon v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998). "Conception is the touchstone of inventorship, and each joint inventor must generally contribute to the conception of the invention." Board of Educ. ex rel. Bd. of Trustees of Fla. State Univ. v. Am. Bioscience, Inc., 333 F.3d 1330, 1337-38 (Fed. Cir. 2003) (internal quotations omitted). "Conception is the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed. Cir. 1986). As such, in order to prove that he is an inventor of the claimed inventions, Shum was required to demonstrate that he conceived the inventions. Id. at 1338. Thus, the facts surrounding the inventorship claim concern the degree of Shum's inventive contribution to the claimed inventions, which necessarily include, inter alia, when and where the claimed inventions were conceived, and by whom.

With regard to Shum's state law claims, the record demonstrates that Shum asserted a general fraud claim. In order to establish fraud under California law, one must prove "a representation, usually of fact, which is false, knowledge of its falsity, intent to defraud, justifiable reliance upon the misrepresentation, and damage resulting from that justifiable reliance." Stansfield v. Starkey, 220 Cal. App. 3d 59, 72-73 (Cal.

Ct. App. 1990). Here, Shum's fraud claim was based, in part, on his assertion that Verdiell made misrepresentations to the Patent and Trademark Office and third parties that he was the sole inventor of the patents in suit. Indeed, appellees even acknowledge in their brief that "Shum's fraud-based claims were originally focused on the allegation that Verdiell lied about being the true inventor of the subject technology." Appellees Br. at 61. Thus, the alleged misrepresentations involve Verdiell's statements that he was the sole inventor of the patents in suit. As such, in order to prove his fraud claim, Shum would have been required to prove the falsity of that representation by establishing, at the very least, that Verdiell did not solely conceive the inventions. Indeed, a showing that Shum was a joint inventor, if not the sole inventor, of the claimed inventions proves such falsity. In this regard, the critical question regarding the fraud claim again centers on conception. Thus, the facts relating to the fraud claim, namely, Shum's alleged contribution to the claimed invention, are common, if not identical, to the facts underlying the inventorship claim.

Notably, both the trial court and the appellees acknowledge the commonality between the two claims at various points in the record. In its bifurcation order, the court noted that:

> Like the majority of Shum's claims, an action for fraud against Verdiell chiefly relies on the factual determination of inventorship. If Verdiell was not an inventor of the patent applied for, he misrepresented his status as an inventor, caused Shum to withdraw the patent based on that misrepresentation, and subsequently filed a fraudulent patent listing himself as the sole inventor. Thus, the factual issue of inventorship is a central issue in the determination of fraud.

Moreover, appellees admit in their brief, "[o]nce the district court decided that Verdiell, and not Shum, had truly invented the technology, th[e] fraud claims were eviscerated."

Appellees also contend that "[i]f this Court affirms the district court's inventorship ruling, Shum's arguments that Verdiell misrepresented or concealed the true inventor of the technology necessarily fail." Thus, the record underscores that Shum's inventorship claim is "inextricably intertwined" with at least one of his state law claims.

We disagree with appellees' assertion that the trial court's decision must be upheld in light of Ethicon v. U.S. Surgical Corp., 135 F.3d 1456 (Fed. Cir. 1998). Appellees argue that Ethicon presented nearly identical procedural circumstances, and thus that our holding in that case, in which we upheld the trial court's decision to hold an extensive hearing on the asserted inventorship claim prior to a trial on infringement, should be applied here. That case, however, differs substantively from this one. While a § 256 cause of action was the equitable claim at issue in Ethicon, the legal claim involved infringement. Unlike a claim for fraud that is premised on an allegation that the named inventor misrepresented that he was the sole inventor, a claim for infringement does not share common factual issues with a claim for inventorship. A claim for infringement requires factual determinations regarding whether an accused product falls within the scope of a claim. In contrast, as discussed above, an inventorship claim concerns the identity of the person(s) who conceived the invention. Thus, Ethicon is distinguishable from this case.

For similar reasons, appellees' reliance on our decisions in Gardco Manufacturing, Inc. v. Herst Lighting Co, 820 F.2d 1209 (Fed. Cir. 1987), and Agfa Corp. v. Creo Products, Inc., 451 F.3d 1366 (Fed. Cir. 2006), is likewise misplaced. In Gardco, we held that the district court did not abuse its discretion in trying an inequitable conduct claim prior to a jury trial on the validity and infringement causes of

action. In sustaining the court's decision, we held that "the conduct-of-the-applicant-in-the-PTO issue raised in the nonjury trial and the separated infringement/validity issues are distinct and without commonality either as claims or in relation to the underlying fact issues." Gardco, 820 F.2d at 1213. We found that the district court "explicitly refused to make any findings relating to the patentability of the claimed invention, in view of the undisclosed art or otherwise, and made no finding on infringement." Id. As such, we held that the rule set forth in Beacon Theaters did not apply. Similarly, in Agfa, we upheld the district court's decision to hold a bench trial on inequitable conduct prior to a jury trial on infringement and validity. We concluded that while inequitable conduct and validity questions "overlap in the consideration of some aspects of the same relevant evidence, they do not involve a common issue." Agfa, 451 F.3d at 1372. Because the legal claims in Gardco and Agfa likewise involved infringement and validity, rather than fraud based on mispresentations relating to inventorship, those cases do not control.

We thus conclude that commonality exists between the factual issues underlying the inventorship and fraud claims. While Shum would not be entitled to a jury trial on the § 256 inventorship claim standing alone, given the co-pendency of the asserted fraud claim, a jury should determine the facts regarding inventorship. Accordingly, the court's decision to try the inventorship claim before a jury trial on the state law claim ran afoul of the Seventh Amendment, and thus was an abuse of discretion. See Cabinet Vision v. Cabnetware, 129 F.3d 595, 600 (Fed. Cir. 1997) (holding that the court's equitable determination was constrained by the Seventh Amendment when there was commonality between the facts underlying an inequitable conduct claim and a Walker Process counterclaim). Because Shum was improperly denied a jury trial on legal

issues, the case must be remanded for a trial before a jury. See Lytle v. Household Mfg., Inc., 494 U.S. 545, 553 (1990) (noting that a new trial is required when a trial court erroneously resolves an equitable claim prior to resolution of a legal claim).

B.    Unjust Enrichment

Shum separately appeals the district court's dismissal on the pleadings of his unjust enrichment claim. Prior to the bench trial on inventorship, the court dismissed Shum's claim for unjust enrichment after concluding that it was "merely duplicative and dependent" upon the fraudulent concealment claims. Shum argues that the elements of an unjust enrichment claim are different from those of fraudulent concealment under California law, and thus that he was improperly denied an opportunity to prove that claim. Appellees respond that the claim was correctly dismissed because unjust enrichment is not recognized under California law as a separate cause of action. Moreover, appellees argue that an unjust enrichment claim must be dismissed when it is based on another failed cause of action.

Under California law, unjust enrichment claims can exist as a separate cause of action when "the claim is grounded in equitable principles of restitution." Hirsch v. Bank of Am., 107 Cal. App. 4th 708, 721-22 (Cal. Ct. App. 2003); Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082 (N.D. Cal. 2006). In his second amended complaint, Shum alleged that appellees "were unjustly enriched by the false exclusivity of the patent and the patent application." Shum sought to recover, "in equity, all amounts which unjustly enriched defendants" at his expense. Thus, Shum sought restitution based on a theory of unjust enrichment and should have been able to litigate his claim. Moreover, the elements of a fraudulent concealment claim and an unjust enrichment

claim differ.[3]  As such, the court's dismissal of the claim on the basis that it was "merely duplicative" of the fraudulent concealment claim, without further elaboration, cannot be sustained.  Accordingly, we conclude that the court erred in dismissing Shum's unjust enrichment claim on the pleadings.

## CONCLUSION

For the foregoing reasons, we vacate the district court's determination on the inventorship claim and its grant of summary judgment on the remaining state law claims, reverse the court's dismissal of the unjust enrichment claim, and remand the case for further proceedings consistent with this opinion.

## VACATED, REVERSED, AND REMANDED

---

[3]     The elements of an unjust enrichment claim are "receipt of a benefit and unjust retention of the benefit at the expense of another." Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000).   In contrast, the elements of a fraudulent concealment claim are: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." Hahn v. Mirda, 147 Cal. App. 4th 740, 748 (Cal. Ct. App. 2007).

# United States Court of Appeals for the Federal Circuit

2006-1249

FRANK T. SHUM,

Plaintiff-Appellant,

v.

INTEL CORPORATION, LIGHTLOGIC, INC.,
and JEAN-MARC VERDIELL,

Defendants-Appellees.

FRIEDMAN, <u>Senior Circuit Judge</u>, dissenting.

In my view, the district court's bifurcation of the federal inventorship issue and the state-law claims followed by the bench trial of the inventorship claim, did not deny Shum his Seventh Amendment right to trial by jury of the state-law claims or constitute an abuse of discretion by the trial court.

The Seventh Amendment guarantees the right to jury trial "[i]n Suits at common law."

> "[t]he right of trial by jury thus preserved is the right which existed under the English common law when the Amendment was adopted." <u>Baltimore & Carolina Line, Inc. v. Redman,</u> 295 U.S. 654, 657 (1935). In keeping with our longstanding adherence to this 'historical test,' Wofram, The Constitutional History of the Seventh Amendment, 57 Minn. L. Rev. 639, 640-643 (1973), we ask, first, whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was, <u>see</u>, <u>e.g.</u>, <u>Tull v. United States</u>, 481 U.S. 412, 417 (1987). If the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791.

> As to the first issue, going to the character of the cause of action, "[t]he form of our analysis is familiar. 'First we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.'"

Markman v. Westview Instruments, Inc., 517 U.S. 370, 376-77 (1996).

I know of no authority—and the parties have cited none—showing that at the end of the 18th century, a suit could have been maintained in England to correct the inventorship shown on an issued patent or, if such a suit were permissible, it would have been tried before a jury. It follows that if Shum's attempt to correct inventorship under 35 U.S.C. § 256 had been his only claim in this case, he would not have been entitled to a jury trial of that issue. The question, therefore, is whether Shum was entitled to a jury trial because he combined that claim with state-law claims that concededly would have been tried before a jury. Unlike the court, in the circumstances of this case I answer that question "no."

The state law claims—breach of fiduciary duty, fraud and fraudulent concealment—were related to and dependent upon, but significantly different from, his misstatement-of-inventorship-claim. The state law claims were predicated upon Shum's contention that the patent had misstated the inventorship of the patented device by not listing him as the inventor. If Shum's inventorship claim failed, that failure also would undermine his state-law claims. On the other hand, if he had prevailed in the inventorship claim that would not automatically have established his state law claims. He still would have been required to establish, in a jury trial, the additional elements of those claims. In other words, although the inventorship claim was an essential element

of the state-law claims, the latter were separate and different claims that included additional elements not present in the inventorship claim.

Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959), upon which the court's decision is grounded, involved critical distinctions from the present case and, in my view, does not support or justify the court's conclusion that Shum was entitled to a jury trial on his inventorship claim.

Beacon Theatres involved a dispute between two motion picture theatres over the validity of contracts under which film distributors had given one of the theatres, Fox, the exclusive right to show "first run" pictures in the geographic area. Another theatre in the area, Beacon, informed Fox that it considered Fox's contracts to violate the antitrust laws. Fox then filed suit seeking a declaratory judgment that its contracts did not violate the antitrust laws and an injunction against Beacon's filing an antitrust claim against it. Beacon responded with an answer and a counterclaim that Fox's contracts violated the antitrust laws and seeking treble damages.    Beacon sought a jury trial on its contentions.  Id. at 503 (footnote omitted).

The district court denied a jury trial, ruling that the "issues raised" by Fox's complaint were "essentially equitable" and "it directed that these issues be tried to the court before jury determination of the validity of the charges of antitrust violations made in the counterclaim and cross-claim." Id.

The Supreme Court held that Beacon was entitled to a jury trial of its antitrust claims against Fox, and that the court of appeals had erroneously refused to issue a writ of mandamus requiring that result.  The Court stated that "if Beacon would have been entitled to a jury trial in a treble damage suit against Fox it cannot be deprived of that

right merely because Fox took advantage of the availability of declaratory relief to sue Beacon first.  Since the right to trial by jury applies to treble damage suits under the antitrust laws, and is, in fact, an essential part of the congressional plan for making competition rather than monopoly the rule of trade," "the Sherman and Clayton Act issues on which Fox sought a declaration were essentially jury questions."  Id. at 504 (internal citation omitted).  It further stated that "only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims."  Id. at 509-10 (footnote and citation omitted).

In Beacon Theatres the legal issues in both the declaratory judgment complaint and the counterclaim apparently were the same:  the validity of Fox's first-run exclusivity contracts under the antitrust laws.  The district court's resolution of that claim in Fox's declaratory judgment suit would determine the result in Beacon's treble damage antitrust counterclaim and thereby deny Beacon the jury trial that the Supreme Court apparently ruled it was entitled to on that issue.  Id. at 504.  The reason for that result was that Fox filed its declaratory judgment suit before Beacon filed its counterclaim.  If Beacon had filed first, presumably it would have had a jury trial on the antitrust claim.  The Supreme Court refused to permit such an arbitrary result.  As noted, it stated "if Beacon would have been entitled to a jury trial in a treble damage suit against Fox it cannot be deprived of that right merely because Fox took advantage of the availability of declaratory relief to sue Beacon first."  Id.

In the present case, in contrast, the state law claims, although dependent on the inventorship claim, involved a number of other issues that were independent of that claim. Thus, the district court's decision on the inventorship claim might or might not be dispositive of the state law claims. Moreover, Shum was responsible for the loss of a jury trial on the state law claims: had he not added the inventorship claim, as he did in his first amended complaint after the state-law-claims case originally filed in state court had been removed to federal court, he could have had a jury trial on those claims.

In Beacon Theatres the district court's decision itself to try the antitrust issue, which otherwise would have been tried to a jury, reflected the form in which that claim was first asserted: as a request for a declaratory judgment and for an injunction, which were traditional suits in equity, without regard to the substantive claims involved. In the present case, in contrast, the inventorship claim under section 256 itself was an equitable claim that would not be tried to a jury.

These critical differences between the present case and Beacon Theatres suggest that this court here has not given sufficient weight to the district court's discretion to determine whether to bifurcate issues for trial before the court and before the jury. "Under Rule 42(b) [Fed. R. Civ. P. 42(b)], a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1212 (Fed. Cir. 1987).

Three years after Beacon Theatres, the Supreme Court addressed a similar issue in Dairy Queen, Inc. v. Wood, 369 U.S. 522 (1962). The case involved a contract under which the petitioner agreed to pay the respondents over a period of time a stated

sum for the exclusive use in specified geographic areas of the trademark "Dairy Queen" that the respondent owned.   When the petitioner allegedly failed to make such payments, the respondents sued it in the district court for breach of contract and trademark infringement.  Respondent sought an accounting and injunctive relief.

The petitioner denied the allegations, alleged respondent had violated the antitrust laws and sought a jury trial.  The district court struck the jury trial demand, on the alternative grounds that the action was "purely equitable" or, if not, that the "legal issues" were "'incidental' to equitable issues."  369 U.S. at 470.

The Supreme Court held that the court of appeals should have granted mandamus to overturn the district court's refusal to permit a jury trial.  The Court applied the "holding in <u>Beacon Theatres</u> . . . that where both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.'"  <u>Id.</u> at 472-73 (footnote omitted).   Ruling that respondents' "claim for a money judgment is a claim wholly legal in its nature however the complaint is construed," <u>id.</u> at 477, the Court "conclude[d] that

> the district judge erred in refusing to grant petitioner's demand for a trial by jury on the factual issues related to the question of whether there has been a breach of contract. Since these issues are common with those upon which respondents' claim to equitable relief is based, the legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims.

<u>Id.</u> at 479 (footnote omitted).

The differences between the present case and <u>Dairy Queen</u> are similar to those involving <u>Beacon Theatres</u>. In <u>Dairy Queen</u>, the critical issue in both parties' claims was the same: whether the petitioner had breached the trademark licensing agreement – a legal issue subject to jury trial. The denial of a jury trial resulted not from the nature of the claim, but from the form in which it was asserted.

Despite the broad language in <u>Beacon Theatres</u>, the Supreme Court subsequently recognized the authority of a trial court in other circumstances to determine preliminary issues that could have a dispositive impact upon the other issues in the case that a jury would decide. Thus, in <u>Katchen v. Landy</u>, 382 U.S. 323 (1966), the issue was "whether a bankruptcy court has summary jurisdiction to order the surrender of voidable preferences asserted and proved by the trustee in response to a claim filed by the creditor who received the preferences." 382 U.S. at 325. The Court held that such summary action by the bankruptcy court would not violate the creditor's Seventh Amendment right to a jury trial. The Court stated that a court may first resolve an "equitable claim even though the results might be dispositive of the issue involved in [a] legal claim. . . ." <u>Id.</u> at 339-40; <u>see also</u>, <u>Parkland Hosiery Company v. Shore</u>, 439 U.S. 322 (1979), stating that <u>Beacon Theatres</u> had "enunciated no more than a general prudential rule" and that "an equitable determination can have collateral-estoppel effect in a subsequent legal action and that this estoppel does not violate the Seventh Amendment," <u>id.</u> at 334-35.

The Supreme Court's most recent case dealing with the Seventh Amendment right to jury trial in patent cases was <u>Markman, supra</u>. There a jury had found infringement based upon its interpretation of a disputed term in the patent claims. The

district court, however, then granted judgment as a matter of law in favor of the defendant, based on the court's own interpretation of the claim, and this court affirmed. The Supreme Court began its opinion as follows:

> The question here is whether the interpretation of a so-called patent claim, the portion of the patent document that defines the scope of the patentee's rights, is a matter of law reserved entirely for the court, or subject to a Seventh Amendment guarantee that a jury will determine the meaning of any disputed term of art about which expert testimony is offered. We hold that the construction of a patent, including terms of art within its claim, is exclusively within the province of the court.

Id. at 372.

Noting that "there is no dispute that infringement cases today must be tried to a jury as their predecessors were more than two centuries ago," id. at 377, the Court discussed in some detail the conduct of English patent litigation in the latter part of the 18th-century, id. at 378-83. It concluded that at that time English juries did not construe patent documents. It further held that giving the court exclusive authority to interpret patent claims was consistent with precedent, id. at 384-88, that the judge was "in a better position" to construe the patent than the jury, id. at 390, and that "the importance of uniformity in the treatment of a given patent" was "an independent reason to allocate all issues of construction to the court," id. at 390.

In its discussion of the applicability of the Seventh Amendment jury trial right to the interpretation of patent claims, the Supreme Court did not even mention the possibility that giving the court exclusive jurisdiction to perform that function might impinge upon the patentee's right to a jury trial on infringement. It did not discuss or even cite Beacon Theatres. Such silence seems to suggest that the Court did not

believe that allocating the interpretation of patent claims to the court raised any problems relating to the right of jury trial on the infringement issue.

The same conclusion follows, I believe, with regard to the Seventh Amendment right to jury trial in the present case. There is a striking parallel between the situations in <u>Markman</u> and here, since in both cases resolution of a threshold issue by the court might be dispositive of the remaining issues that were to be tried by the jury. The two cases cannot properly be distinguished on the ground that in <u>Markman</u> the two issues both related to patents, whereas in the present case only the inventorship issue did.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By Christy Thompson   Date: 11/14/07

2006-1249                                    9

# United States Court of Appeals for the Federal Circuit

2006-1249

FRANK T. SHUM,

Plaintiff-Appellant,

v.

INTEL CORPORATION, LIGHTLOGIC, INC.,
and JEAN-MARC VERDIELL,

Defendants-Appellees.

# Judgment

ON APPEAL from the     UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

in CASE NO(S).     02-CV-3262

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

### VACATED, REVERSED, AND REMANDED

ENTERED BY ORDER OF THE COURT

DATED **AUG 2 4 2007**

Jan Horbaly, Clerk

ISSUED AS A MANDATE: NOV 1 3 2007

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By: _____ Date: 11/14/07