STEPHEN E. TAYLOR (SBN 58452)
JESSICA L. GRANT (SBN 178138)
JAYESH HINES-SHAH (SBN 214256)
NICHOLAS G. CAMPINS (SBN 238022)
STEPHEN McG. BUNDY (SBN 253017)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California  94111
Telephone:  (415) 788-8200
Facsimile:   (415) 788-8208
E-mail: staylor@tcolaw.com
E-mail: jgrant@tcolaw.com
E-mail: jhinesshah@tcolaw.com
E-mail: ncampins@tcolaw.com
E-mail: sbundy@tcolaw.com

RAGESH K. TANGRI (SBN 159477)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, California 94111
Telephone:  (415) 391-5400
Facsimile:   (415) 397-7188
E-mail:  rtangri@kvn.com

Attorneys for Defendants INTEL
CORPORATION, LIGHTLOGIC, INC.
and JEAN-MARC VERDIELL

**FILED**

APR – 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FRANK T. SHUM,<br><br>        Plaintiff,<br><br>v.<br><br>INTEL CORPORATION, JEAN-MARC VERDIELL and LIGHTLOGIC, INC.,<br><br>        Defendants. | Case No.: C 02-03262 DLJ (EMC)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT**<br><br>Date:     July 25, 2008<br>Time:     2:00 p.m.<br>Place:    Courtroom 1, 4th Floor<br><br>Honorable D. Lowell Jensen |

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO.  C 02-03262 DLJ (EMC)

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL BACKGROUND ....................................................................... 2

III.   ARGUMENT ...................................................................................................... 3

       A.    LEGAL STANDARD FOR SUMMARY JUDGMENT ......................... 3

       B.    SUMMARY JUDGMENT SHOULD BE GRANTED ON SHUM'S
             UNJUST ENRICHMENT CLAIM ....................................................... 4

             1.   The POL Is A Binding Express Contract Rendering Shum's Unjust
                  Enrichment Claim Against Verdiell Defective as a Matter of Law .............. 4

             2.   The POL Also Renders Shum's Unjust Enrichment Claim Defective
                  as a Matter of Law as to Intel and LightLogic ............................................... 6

             3.   Shum's Unjust Enrichment Claim Must Also Fail Because as a
                  Matter of Law Defendants Were Not "Unjustly Enriched" ........................... 7

       C.    SUMMARY JUDGMENT SHOULD BE GRANTED FOR VERDIELL
             ON SHUM'S BREACH OF CONTRACT CLAIM ................................. 8

       D.    SHUM'S BREACH OF FIDUCIARY DUTY, FRAUD AND
             FRAUDULENT CONCEALMENT CLAIMS FAIL AGAINST ALL
             DEFENDANTS .................................................................................. 10

             1.   Verdiell Did Not Owe Fiduciary Duties to Shum ..................................... 11

                  (a)   Verdiell did not owe fiduciary duties as an equal shareholder
                        and officer of Radiance ................................................................... 11

                  (b)   Verdiell did not owe fiduciary duties as a joint venturer ............... 12

                  (c)   Verdiell did not owe fiduciary duties on any other basis ............... 12

             2.   Shum's Fraud Claims Based on Alleged Misrepresentations by
                  Verdiell Also Fail as a Matter of Law ...................................................... 13

             3.   Shum's Fraud and Fraudulent Concealment Claims Also Fail
                  Because Shum Cannot Demonstrate Reliance ............................................ 14

             4.   Shum Cannot Show Damage Resulting From His Alleged Reliance ......... 17

       E.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
             SHUM'S INVENTORSHIP CLAIMS ................................................. 18

             1.   The Applicable Legal Standard ................................................................. 18

                  (a)   Inventorship of an Issued Patent May Only Be Overcome by
                        Clear and Convincing Evidence ...................................................... 18

i.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO.  C 02-03262 DLJ (EMC)

(b)    The Clear and Convincing Standard Must Be Met With Independent, Corroborating Evidence............................................. 19

(i)    Documentary or Physical Evidence Is Generally Required ........................................................................... 20

(ii)   Corroborating Evidence Must Be Contemporaneous.......... 21

(iii)  Corroborating Evidence Must Be Enabling ....................... 22

(iv)   Corroborating Evidence Must Demonstrate Conception ............................................................................ 23

(c)    Conception Dictates Who is an Inventor........................................... 23

2.    Shum's Inventorship Evidence Is Deficient As A Matter of Law ............. 25

(a)    Shum's Insufficient Evidence Concerning DBC............................ 25

(i)    Verdiell's Conception Evidence Concerning DBC............. 25

(ii)   Shum's Conception Evidence Concerning DBC ................ 26

(b)    Shum's Insufficient Evidence Concerning Dual Enclosure ........... 27

(i)    Verdiell's Conception Evidence Concerning Dual Enclosure.......................................................................... 27

(ii)   Shum's Conception Evidence Concerning Dual Enclosure.......................................................................... 28

(c)    Shum's Insufficient Evidence Concerning Flexure........................ 29

(i)    Verdiell's Conception Evidence........................................... 30

(ii)   Shum's Conception Evidence ............................................. 31

IV.    CONCLUSION .................................................................................................... 33

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO.  C 02-03262 DLJ (EMC)

# **TABLE OF AUTHORITIES**

## **CASES**

*Acromed Corp. v. Sofamor Danek Group, Inc.,*
   253 F.3d 1371 (Fed. Cir. 2001) ................................................................ 24, 25

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
   457 F.3d 1293 (Fed. Cir. 2006) ...................................................................... 22

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ........................................................................................ 3

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
   7 Cal. 4th 503 (1994) ............................................................................... 11, 14

*Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.,*
   501 F.3d 1274 (Fed. Cir. 2007) ...................................................... 22, 28, 32

*Bancroft-Whitney Co. v. Glen,*
   64 Cal. 2d 327 (1966) .................................................................................... 12

*Bd. of Educ. v. Am. Bioscience, Inc.,*
   333 F.3d 1330 (Fed. Cir. 2003) ...................................................................... 18

*Berkla v. Corel Corp.,*
   302 F.3d 909 (9th Cir. 2002) ............................................................................ 4

*BJ Servs. Co. v. Halliburton Energy Servs., Inc.,*
   338 F.3d 1368 (Fed. Cir. 2003) ...................................................................... 21

*Bramalea Cal., Inc. v. Reliable Interiors, Inc.,*
   119 Cal. App. 4th 468 (2004) .......................................................................... 8

*Brown v. Barbacid,*
   276 F.3d 1327 (Fed. Cir. 2002) ................................................................ 19, 21

*Burroughs Wellcome v. Barr Lab, Inc.,*
   40 F.3d 1223 (Fed. Cir. 1994) ...................................................... 19, 21, 22, 33

*Cadlo v. Owens-Illinois, Inc.,*
   125 Cal. App. 4th 513 (2004) ........................................................................ 15

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.,*
   94 Cal. App. 4th 151 (2001) ................................................................... 4, 6, 7

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ........................................................................................ 3

*Checkpoint Systems, Inc. v. All-Tag Sec. S.A.,*
   412 F.3d 1331 (Fed. Cir. 2005) ...................................................................... 20

TAYLOR & CO.
LAW OFFICES, LLP

*Chen v. Bouchard,*
    347 F.3d 1299 (Fed. Cir. 2003) ............................................................ 20

*Chou v. Univ. of Chicago,*
    254 F.3d 1347 (Fed. Cir. 2001) .............................................................. 8

*Coleman v. Dines,*
    754 F.2d 353 (Fed. Cir. 1985) .............................................................. 21

*Colorado v. New Mexico,*
    467 U.S. 310 (1984) ............................................................................ 19

*Cruzan v. Dir., Mo. Dep't of Health,*
    497 U.S. 261 (1990) ............................................................................ 19

*Daewoo Motor Am., Inc. v. Gen. Motors Corp.,*
    459 F.3d 1249 (11th Cir. 2006) .............................................................. 4

*Eli Lilly & Co. v. Aradigm Corp.,*
    376 F.3d 1352 (Fed. Cir. 2004) ............................................................ 18

*E-Pass Techs., Inc. v. 3Com Corp.,*
    2006 U.S. Dist. LEXIS 95914 (N.D. Cal. Mar. 17, 2006),
    *aff'd*, 473 F.3d 1213 (Fed. Cir. 2007) ..................................................... 3

*Erlich v. Menezes,*
    21 Cal. 4th 543 (1999) ......................................................................... 9

*Ethicon, Inc. v. United States Surgical Corp.,*
    135 F.3d 1456 (Fed. Cir. 1998) ..................................................... passim

*Everest Investors 8 v. Whitehall Real Estate Ltd. P'ship XI,*
    100 Cal. App. 4th 1102 (2002) ............................................................ 14

*Fiers v. Revel,*
    984 F.2d 1164 (Fed. Cir. 1993) ............................................................ 24

*Fina Oil & Chem. Co. v. Ewen,*
    123 F.3d 1466 (Fed. Cir. 1997) ..................................................... 23, 25

*GAB Bus. Servs. v. Lindsey & Newsom Claim Servs.,*
    83 Cal. App. 4th 409 (2000) ............................................................... 12

*Garrett Corp. v. United States,*
    422 F.2d 874 (Ct. Cl. 1970) ............................................................... 26

*Genentech, Inc. v. Novo Nordisk A/S,*
    108 F.3d 1361 (Fed. Cir. 1997) ............................................................ 22

*Gerlinger v. Amazon.com, Inc.,*
    311 F. Supp. 2d 838 (N.D. Cal. 2004) ..................................................... 4

*Glenn K. Jackson Inc. v. Roe,*
    273 F.3d 1192 (9th Cir. 2001) ............................................................. 15

iv.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

*Hess v. Advanced Cardiovascular Sys., Inc.,*
   106 F.3d 976 (Fed. Cir. 1997) ............................................................ 18, 23, 29

*Hoop v. Hoop,*
   279 F.3d 1004 (Fed. Cir. 2002) ............................................................ 24

*Huang v. Cal. Inst. of Tech.,*
   72 U.S.P.Q. 2d (BNA) 1161 (C.D. Cal. 2004) ........................................ 21, 24

*Hybritech Inc. v. Monoclonal Antibodies, Inc.,*
   802 F.2d 1367 (Fed. Cir. 1986) ............................................................ 23

*In re Jobes,*
   529 A.2d 434 (N.J. 1987) ...................................................................... 19

*John Tuman & Sons, Inc. v. Basse,*
   113 F.2d 928 (2d Cir. 1940) .................................................................. 15

*Jones v. H. F. Ahmanson & Co.,*
   1 Cal. 3d 93 (1969) .............................................................................. 11

*Kelley v. Price-Macemon, Inc.,*
   992 F.2d 1408 (5th Cir. 1993) ............................................................... 18

*Lance Camper Mfg. Corp. v. Republic Indem. Co. of Am.,*
   44 Cal. App. 4th 194 (1996) .................................................................. 4

*Langston v. Johnson,*
   478 F.2d 915 (D.C. Cir. 1973) ............................................................... 18

*Lectrodryer v. SeoulBank,*
   77 Cal. App. 4th 723 (2000) .................................................................. 7

*Linear Tech. Corp. v. Impala Linear Corp.,*
   379 F.3d 1311 (Fed. Cir. 2004) ......................................................... 20, 22, 27

*Marketel Int'l, Inc. v. Priceline.com,*
   138 F. Supp. 2d 1210 (N.D. Cal. 2001) ................................................ 19

*McBride v. Boughton,*
   123 Cal. App. 4th 379 (2004) ................................................................ 7

*Mirkin v. Wasserman,*
   5 Cal. 4th 1082 (1993) .......................................................................... 15

*Murdock Webbing Co., Inc. v. Dalloz Safety, Inc.,*
   213 F. Supp. 2d 95 (D.R.I. 2002) ......................................................... 23

*Nussbaum v. Weeks,*
   214 Cal. App. 3d 1589 (1989) ............................................................... 11

*Oakland Raiders v. Nat'l Football League,*
   131 Cal. App. 4th 621 (2005) ............................................................. 11, 12

v.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

*Pacesetter Homes, Inc. v. Brodkin*,
    5 Cal. App. 3d 206 (1970)................................................................. 13

*Pannu v. Iolab Corp.*,
    155 F.3d 1344 (Fed. Cir. 1998).................................................. 22, 24

*Paracor Fin., Inc. v. GE Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996)............................................................. 4

*Pastoria v. Nationwide Ins.*,
    112 Cal. App. 4th 1490 (2003)................................................... 11, 13

*Patent Scaffolding Co. v. William Simpson Constr. Co.*,
    256 Cal. App. 2d 506 (1967)............................................................. 9

*Persson v. Smart Inventions, Inc.*,
    125 Cal. App. 4th 1141 (2005)............................................. 11, 12, 13

*Price v. Symsek*,
    988 F.2d 1187 (Fed. Cir. 1993)............................................. 19, 21, 22

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*,
    264 F.3d 1344 (Fed. Cir. 2001)................................................... passim

*Seal-Flex, Inc. v. W.R. Dougherty & Assocs.*,
    179 F. Supp. 2d 735 (E.D. Mich. 2002)........................................... 20

*Singh v. Brake*,
    317 F.3d 1334 (Fed. Cir. 2002)........................................ 20, 23, 26, 28

*Sonoma Foods, Inc. v. Sonoma Cheese Factory LLC*,
    2007 U.S. Dist. LEXIS 56032 (N.D. Cal. July 23, 2007)................... 11

*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*,
    101 Cal. App. 4th 1038 (2002)......................................................... 9

*Stansfield v. Starkey*,
    220 Cal. App. 3d 59 (1990)............................................................. 10

*Std. Mfg. Co. v. United States*,
    25 Cl. Ct. 1 (1991)......................................................................... 19

*Stern v. Tr. of Columbia Univ.*,
    434 F.3d 1375 (Fed. Cir. 2006)................................................... 20, 32

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987)............................................................. 3

*Tavory v. NTP, Inc.*,
    495 F. Supp. 2d 531 (E.D. Va. 2007)............................................... 23

*Transocean Offshore Deepwater Drilling, Inc. v. Globalsantafe Corp.*,
    443 F. Supp. 2d 836, 857 (S.D. Tex. 2006) ..................................... 21

vi.

TAYLOR & CO.
LAW OFFICES, LLP

*Trovan, Ltd. v. Sokymat SA,*
   299 F.3d 1292 (Fed. Cir. 2002) .................................................................... 20, 24

*United States v. O'Connell,*
   890 F.2d 563 (1st Cir. 1989) ................................................................................ 18

*Univ. of Colo. Found. v. Am. Cyanamid,*
   196 F.3d 1366 (Fed. Cir. 1999) ........................................................................... 18

*Unjian v. Berman,*
   208 Cal. App. 3d 881 (1989) ................................................................................ 16

*Victor Valley Transit Auth. v. Workers' Comp. Appeals Bd.,*
   83 Cal. App. 4th 1068 (2000) .............................................................................. 12

*Wal-Noon Corp. v. Hill,*
   45 Cal. App. 3d 605 (1975) .................................................................................... 4

*Woodland Trust v. Flowertree Nursery, Inc.,*
   148 F.3d 1368 (Fed. Cir. 1998) ................................................................. 20, 21, 22

*Wool v. Tandem Computers, Inc.,*
   818 F.2d 1433 (9th Cir. 1987) ................................................................................ 3

## **STATUTES**

35 U.S.C. § 100 .................................................................................................... 7

35 U.S.C. § 102 .................................................................................................... 9

35 U.S.C. § 116 .................................................................................................... 8

35 U.S.C. § 256 .................................................................................................. 18

35 U.S.C. § 261 .................................................................................................. 15

35 U.S.C. § 262 .................................................................................................. 15

35 U.S.C. § 282 .................................................................................................. 18

35 U.S.C. §§ 261, 262, 281 .................................................................................. 7

Cal. Civ. Code § 1710(3) .................................................................................... 10

Cal. Civ. Code § 3300 .......................................................................................... 9

Cal. Civ. Code § 3301 .......................................................................................... 9

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

**OTHER AUTHORITIES**

1 Witkin, *Summary of California Law, Contracts*, § 1016 (10th ed. 2005) ..................................... 8

1 Witkin, *Summary of California Law, Contracts*, § 1020 (10th ed. 2005) ..................................... 6

5 Witkin, *Summary of California Law, Torts*, § 803 (10th ed. 2005) ............................................ 15

5 Witkin, *Summary of California Law, Torts*, § 816 (10th ed. 2005) ............................................ 17

Restatement of Restitution § 106 ......................................................................................... 6


**RULES**

Fed. R. Civ. P. 56(c) ............................................................................................................ 3

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO.  C 02-03262 DLJ (EMC)

# I.   **INTRODUCTION**

Defendants Intel Corporation, LightLogic, Inc. and Jean-Marc Verdiell ("Verdiell") submit this motion for summary judgment on all of plaintiff Frank T. Shum's ("Shum") claims. Those claims fall into two groups. First, Shum claims that although Verdiell is listed as an inventor on all seven patents-in-suit, Shum rather than Verdiell is the true inventor, and inventorship should be corrected on all the patents under 35 U.S.C. § 256. Second, Shum asserts that defendants are liable to Shum on various state law claims, including unjust enrichment, fraud, fraudulent concealment, breach of fiduciary duty and breach of contract.

Based on the undisputed facts in the record, the applicable legal standards and this Court's prior ruling construing the Plan of Liquidation ("POL"), none of Shum's state law claims can survive summary judgment. The POL comprehensively governs the relationship between Verdiell and Shum regarding any intellectual property ("IP") that resulted from their brief business relationship at Radiance Design, Inc. ("Radiance"). For that reason alone, Shum's claim for unjust enrichment is obviated because no claim in quasi-contract may proceed in the presence of an express contract governing the same subject matter. Moreover, the applicable terms of that contract – which this Court has definitively construed – mean that Shum can show neither breach nor damage as a matter of law. The POL grants Shum and Verdiell independent rights to exploit Radiance IP. Shum had the right to file any patent applications he thought he should file at any time, but Shum voluntarily declined to do so. Thus, Shum could show no injury even were he able to show that he should have been named as an inventor. Nor can Shum show that Verdiell owed him a fiduciary duty: both were equal shareholders in Radiance, both served as officers of the corporation, and neither undertook a fiduciary duty to the other. Similarly, Shum can show no fraudulent statement on which he could, or did, reasonably rely. He cannot show that any statements made to the United States Patent and Trademark Office ("PTO") were false, and Shum has no legal rights to recover for any allegedly false statement made to third parties.

Shum's claims under Section 256 are equally untenable. The law requires Shum to prove his claim by clear and convincing evidence and to submit far more than his own testimony to carry

1.

TAYLOR & CO.
LAW OFFICES, LLP

1   that burden.  Shum must proffer a contemporaneous, independently authenticated, enabling

2   disclosure showing that he conceived of the claimed invention before Verdiell.  Based on the

3   documents Shum was forced by the Court to produce following the first round of summary

4   judgment motions in this case, and based on Shum's own identification of the best evidence

5   supporting his inventorship challenge, the record now demonstrates that Shum has no proper

6   corroborating evidence to support his claims that he is an inventor of any of the patents in suit.

7   Accordingly, Shum lacks sufficient evidence to proceed to a jury on his Section 256 claim under

8   the applicable legal standards.

9        This Court should grant summary judgment against Shum, and in favor of Intel,

10  LightLogic and Verdiell, on all of Shum's claims.

11            II.    **PROCEDURAL BACKGROUND**

12       Defendants Intel Corporation ("Intel"), LightLogic, Inc. ("LightLogic") and Verdiell

13  initially moved for summary judgment on Shum's non-inventorship claims, resulting in this

14  Court's Order of April 27, 2004.  Following a bench trial on inventorship in January 2005,

15  defendants moved for summary judgment on the remaining causes of action against all defendants

16  for fraud, against Verdiell and LightLogic alone for fraudulent concealment, and against Verdiell

17  alone for breach of fiduciary duty and breach of contract.  The second summary judgment motion

18  resulted in this Court's Order, dated January 12, 2006, granting the motion as to Shum's

19  remaining causes of action and entering judgment in favor of all defendants.  The Court of

20  Appeals for the Federal Circuit reversed this Court's decision to first try the issue of inventorship

21  to the court and this Court's decision dismissing Shum's unjust enrichment cause of action for

22  failure to state a claim upon which relief could be granted.  It therefore vacated this Court's prior

23  factual findings on inventorship, its summary judgment order of January 12, 2006, and its March

24  25, 2003 order dismissing plaintiff's claim for unjust enrichment.

25       Defendants now bring this motion for summary judgment on all causes of action in Shum's

26  operative Fourth Amended Complaint, including Shum's claim for unjust enrichment.  Nothing in

27  the mandate of the Court of Appeals bars this motion.  That mandate encompasses only those

28

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO.  C 02-03262 DLJ (EMC)

1    issues of law or fact that were appealed to and actually or necessarily decided by the Court of

2    Appeals. *See E-Pass Techs., Inc. v. 3Com Corp.*, 2006 U.S. Dist. LEXIS 95914, (N.D. Cal. Mar.

3    17, 2006), *aff'd*, 473 F.3d 1213, 1218 (Fed. Cir. 2007). Many of the issues raised by this motion –

4    such as the sufficiency of the evidence to support Shum's unjust enrichment and inventorship

5    claims as a matter of law – have not previously been presented to or ruled upon by this Court.

6    Others were decided by this Court, but not appealed. None were addressed by the Court of

7    Appeals.

8    **III.   ARGUMENT**

9    **A.   LEGAL STANDARD FOR SUMMARY JUDGMENT**

10         Summary judgment is appropriate when it is demonstrated that there exists "no genuine

11    issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

12    Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In attempting to

13    establish the existence of a factual dispute, the opposing party must demonstrate that the fact in

14    contention is material, i.e., a fact that might affect the outcome of the suit under the governing law

15    (*see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec.*

16    *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is genuine, i.e., the

17    evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Wool*

18    *v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

19         Evidence that is "merely colorable" and is not "significantly probative" is insufficient even

20    to satisfy the preponderance standard. *Anderson*, 477 U.S. at 249-50. However, it is well

21    established that where a heightened standard of proof governs the claims at issue, a court must

22    take that heightened standard into consideration when deciding a motion for summary judgment.

23    *Id.* at 254 ("the judge must view the evidence presented through the prism of the substantive

24    evidentiary burden"). Where the clear and convincing standard is applicable, a non-moving party

25    cannot survive summary judgment by presenting facts sufficient to satisfy the preponderance of

26    the evidence standard. *Id.* at 255-56.

27    ///

28

3.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

**B.    SUMMARY JUDGMENT SHOULD BE GRANTED ON SHUM'S UNJUST ENRICHMENT CLAIM**

**1.    The POL Is A Binding Express Contract Rendering Shum's Unjust Enrichment Claim Against Verdiell Defective as a Matter of Law**

Under California law, there can be no cause of action for unjust enrichment if the alleged misconduct involves a subject matter within the scope of an express contract. *See Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001) ("[A] quasi-contract action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights."); *accord Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605 (1975); *Lance Camper Mfg. Corp. v. Republic Indem. Co. of Am.*, 44 Cal. App. 4th 194, 203 (1996); *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002); *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1260 (11th Cir. 2006); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004).[1]   The rationale for this rule is that "where the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability and to withdraw from one party benefits for which he has bargained and to which he is entitled." *Wal-Noon Corp.*, 45 Cal. App. 3d at 613.   The POL is a binding express contract that comprehensively regulates Verdiell's and Shum's legal rights and obligations in all Radiance IP.  Declaration of Stephen E. Taylor in Support of Motion for Summary Judgment by Defendants Intel Corporation, LightLogic, Inc. and Jean-Marc Verdiell ("Taylor Decl."), ¶ 3, Exh. 1.  Because Shum's unjust enrichment cause of action is based solely on Verdiell's alleged misuse of Radiance IP, it is barred.  While Shum may be able to allege a cause of action for breach of contract against Verdiell, he cannot maintain a separate cause of action for unjust enrichment.

---

[1]   The Court previously stated that unjust enrichment may be available as a remedy for fraudulent concealment and breach of contract actions. *See* March 25, 2003 Motion to Dismiss Order, at p. 44;  April 27, 2004 Summary Judgment Order, at pp. 25-26 (addressing Verdiell's damages).  This motion for summary judgment is limited to Shum's unjust enrichment cause of action, and does not address the Court's previous rulings regarding the availability of unjust enrichment as a remedy in fraud and breach of contract actions.

4.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

1    And as discussed in Section III.C., *infra*, Shum cannot maintain his cause of action for breach of

2    contract as a matter of law because he cannot show actionable damages.

3          This Court's April 27, 2004 Summary Judgment Order confirms that the POL

4    comprehensively governs the scope of Shum's and Verdiell's ownership rights and the ways in

5    which they both may exploit Radiance IP, including patenting activity.  In interpreting Section

6    2(d)(iii) of the POL ("Verdiell and Shum shall have equal rights to independently exploit the

7    intellectual property developed by the corporation"), for example, the Court found that "Verdiell

8    and Shum were entitled to patent any intellectual property which had previously been the property

9    of Radiance."  April 27, 2004 Summary Judgment Order, at p. 22.  The Court also held that the

10   POL regulates the terms of the competition between the parties, interpreting Section 3 of the POL

11   to release the parties from any duty to account to one another for their exploitation of Radiance IP.

12   *See id.* at p. 21.  Consistent with the Court's construction, the POL extensively regulates Shum's

13   and Verdiell's ownership rights of Radiance IP, the ways in which they can exploit it, and the

14   terms of competition between the parties.

15         Every unjust enrichment allegation in the Second Amended Complaint ("SAC") hinges on

16   Shum's alleged deprivation of his rights to exploit Radiance IP, a subject that is comprehensively

17   regulated by the POL.  For example, in his principal causation paragraph, Shum alleges that

18   "plaintiff Frank Shum has been economically and emotionally damaged by virtue of being

19   deprived of his lawful interest in the 'packaging' and 'flexure technology.'"  SAC at ¶ 32.  The

20   remaining general allegations are similarly directed toward showing that Shum was allegedly

21   deprived of his lawful interest in Radiance IP.  *See, e.g., id.* at ¶¶ 20, 31, 33.  The subject matter of

22   Shum's specific unjust enrichment allegations also concerns the exploitation of Radiance IP.  *Id.*

23   at ¶¶ 67, 68.[2]  Thus, it is clear that Shum's unjust enrichment allegations fall within the subject

24

25   [2]  Though the Fourth Amended Complaint contains no unjust enrichment cause of action, its analogous
     allegations again concern the exploitation of Radiance IP and other matters within the subject matter of the
26   POL.  *Id.* at ¶ 28 ("plaintiff Frank Shum has been economically and emotionally damaged by virtue of
     being deprived of his lawful interest in the 'packaging' and 'flexure technology' which was the impetus
27   and motivation for the acquisition."); *see also id. at* ¶¶ 26, 27, 29.  The Fourth Amended Complaint also
     (footnote continued)
28
                                                        5.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1  matter regulated by the express terms of the POL.

2       The POL is a binding, express contract that was freely, fairly and voluntarily bargained for

3  with the advice of counsel.  It would be inequitable to force Verdiell to defend against an equitable

4  action in contravention of the parties' bargained-for exchange regarding the same subject matter.

5  Shum therefore cannot maintain a separate cause of action against Verdiell for unjust enrichment,

6  and summary judgment should be granted.

7            2.       **The POL Also Renders Shum's Unjust Enrichment
                       Claim Defective as a Matter of Law as to Intel and LightLogic**

8       Because an unjust enrichment cause of action cannot be maintained against a party to a

9  binding, express contract for actions within the scope of that contract, it follows that such a cause

10 of action cannot be maintained against third parties who *incidentally* receive benefits as a

11 consequence of that alleged conduct.  *See Cal. Med. Ass'n*, 94 Cal. App. 4th at 174; *see also* 1

12 Witkin, *Summary of California Law, Contracts,* § 1020 (10th ed. 2005); Restatement of

13 Restitution § 106 (same).

14      *California Medical Association* is illustrative.  That case involved a physicians'

15 association, CMA, suing as assignee of claims by member physicians ("Physicians") against

16 insolvent intermediary corporations ("Intermediaries") who allegedly breached their contract with

17 the Physicians.  CMA brought an unjust enrichment action against health care service plans

18 ("Plans") for payments owed by the breaching Intermediaries on the theory that the Plans were

19 unjustly enriched by the Physicians having provided services to their enrollees.  Because the

20 Physicians' express contract was with the Intermediaries, however, the court held that such an

21 unjust enrichment action could not be maintained against the Plans.  The court reasoned that "any

22 benefit conferred upon defendants by Physicians was simply an incident to Physicians'

23 performance of their own obligations to Intermediaries under the Intermediary-Physician

24

25 contains allegations of fraudulent inducement to enter into the POL. *See, e.g., id.* at ¶¶ 17, 18.  These

26 allegations are irrelevant, however.  The Court dismissed Shum's rescission cause of action and denied a
   rescission remedy for his fraud cause of action due to laches.  *See* March 25, 2003 Motion to Dismiss

27 Order, at pp. 25-27.

28
                                                        6.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1  Agreements." *Cal. Med. Ass'n*, 94 Cal. App. 4th at 174.

2      LightLogic and Intel stand in the same position as the Plans in *California Medical*

3  *Association*. Like the plaintiff assignors in *California Medical Association*, Shum's only

4  contractual relationship regarding Radiance IP was with an intermediary, Verdiell. *See* April 27,

5  2004 Summary Judgment Order, at pp. 21-22. As in *California Medical Association*, any benefit

6  conferred upon LightLogic and Intel was simply a consequence of the express contract between

7  Shum and Verdiell, and the parties' rights and obligations under that contract. As a matter of law,

8  therefore, Shum cannot maintain a separate unjust enrichment cause of action against Intel and

9  LightLogic and summary judgment is warranted.

10           **3.    Shum's Unjust Enrichment Claim Must Also Fail Because**
              **as a Matter of Law Defendants Were Not "Unjustly Enriched"**

11

12      As discussed in Section III.B.1, *supra*, the Court's construction of the POL establishes that

13  the parties have equal rights in any Radiance IP, including the right to patent it. Those contractual

14  rights extend to all forms of exploitation, and the parties are free to compete with each other

15  without any duty to account to the other. In substance then, the POL establishes that the parties

16  are co-owners of all Radiance IP, including patentable IP. As co-owners, Shum and Verdiell have

17  all economically valuable property rights that accrue to a patentee. *See* 35 U.S.C. § 100(d) ("The

18  word 'patentee' includes not only the patentee to whom the patent was issued but also the

19  successors in title to the patentee."). These include the rights to non-exclusively license the IP, to

20  assign their rights to others, to jointly sue for infringement, and all other rights associated with

21  personal property allowed under federal patent law. *See* 35 U.S.C. §§ 261, 262, 281.

22      Because Shum and defendants are co-owners with equal rights to exploit Radiance IP –

23  regardless of who invented the Radiance IP – an allegedly incorrect designation of inventorship

24  cannot unjustly enrich defendants as a matter of law. Under California law, unjust enrichment

25  requires "receipt of a benefit" and the "unjust retention of the benefit at the expense of another."

26  *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000); *see also McBride v. Boughton*, 123

27  Cal. App. 4th 379, 389 (2004); 1 Witkin, *Summary of California Law, Contracts*, § 1016 (10th ed.

28

7.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1  2005).  Shum must therefore establish that defendants' alleged exploitation of Radiance IP

2  unjustly benefited them.

3      Shum cannot demonstrate that any of the defendants were unjustly benefited.  *See Chou v.*

4  *Univ. of Chicago*, 254 F.3d 1347 (Fed. Cir. 2001).  In *Chou,* the plaintiff sued defendants, the

5  University of Chicago and its assignee, for unjust enrichment because they profited from a patent

6  that incorrectly omitted plaintiff Chou as inventor.  However, Chou had an express contract with

7  the University that superseded the inventor ownership rule, *see* 35 U.S.C. § 116, and required her

8  to assign any patent rights she might have to the University.  Under Illinois law, the Court held

9  that the existence of the express contract (and a state law to the same effect) precluded Chou's

10  unjust enrichment cause of action because, as owners of the patent, the University and its assignee

11  would have had the same economic rights to the inventions, *whether or not Chou was a named*

12  *inventor.  Id.* at 1353-54, 1363-64.

13      Like the defendants in *Chou*, Verdiell and his subsequent assignees, LightLogic and Intel,

14  had rights pursuant to an express contract that superseded the inventor ownership rule.

15  Defendants would have had the same rights to the inventions, and thus the same economic benefit

16  from them, even if Shum had been named as inventor.  As a matter of law, defendants could not

17  have unjustly benefitted from failing to name Shum as an inventor.  Nor would such a benefit have

18  been at Shum's "expense," since the very same contract gave Shum co-ownership rights that could

19  not be diminished by Verdiell's filing of a patent.  Accordingly, because Shum's unjust

20  enrichment action is based merely on alleged patenting with incorrect inventorship, and because

21  the POL governs the parties' economic rights, summary judgment should be granted for

22  defendants.

23  **C.    SUMMARY JUDGMENT SHOULD BE GRANTED FOR
VERDIELL ON SHUM'S BREACH OF CONTRACT CLAIM**

24

25      "A breach of contract is not actionable without damage."  *Bramalea Cal., Inc. v. Reliable*

26  *Interiors, Inc.*, 119 Cal. App. 4th 468, 473 (2004).  To show actionable damages, a plaintiff must

27  demonstrate the claimed damages were proximately caused by the defendant's breach.  In doing

28

8.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1   so, a plaintiff is limited to those damages which were proximately caused by the *specific* breach

2   for which relief is sought. *See St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins.*

3   *Co.*, 101 Cal. App. 4th 1038, 1060-61 (2002); *see also Patent Scaffolding Co. v. William Simpson*

4   *Constr. Co.*, 256 Cal. App. 2d 506, 511 (1967) (same). Actionable damages are further limited to

5   those within the contemplation of, or reasonably foreseeable by, the parties when the contract was

6   made. *See Erlich v. Menezes*, 21 Cal. 4th 543, 550 (1999); Cal. Civ. Code § 3300. "No damages

7   can be recovered for a breach of contract which are not clearly ascertainable in both their nature

8   and origin." Cal. Civ. Code § 3301. To withstand summary judgment, Shum must show actual

9   damages proximately caused by a specific breach of the POL that are both reasonably foreseeable

10  and clearly ascertainable.

11      Here, Shum's breach of contract claim is predicated on Verdiell's alleged improper

12  patenting of Radiance IP in violation of Section 2(d)(iii) of the POL. Thus, to prevail, Shum must

13  show actual, reasonably foreseeable and clearly ascertainable damages proximately caused by

14  Verdiell's breach of Section 2(d)(iii) of the POL, as that term was construed by the Court. *See*

15  April 27, 2004 Summary Judgment Order, at p. 22; Section II.B.1, *supra*. The uncontroverted

16  evidence shows the exact opposite: Shum could not have been damaged by Verdiell's patenting of

17  Radiance IP.

18      Shum is a co-owner of the patented IP and has the same rights he would have had if he was

19  the patentee. A valid patent filed by Verdiell would have *augmented* Shum's rights by saving the

20  Radiance IP from falling into the public domain – a point Shum has admitted. Taylor Decl., ¶ 5,

21  Exh 3 at pp. 536:7-537:3; pp. 527:10-528:10. Shum also conceded that Verdiell could have

22  published the Radiance IP in the public domain and, had Verdiell chosen to do so, Shum would

23  have had no cause of action against him. *Id.* at pp. 527:10-528:10. Conversely, if Verdiell's

24  patenting of Radiance IP is found by this Court to have been improper, the patents would be

25  invalid and unenforceable and, at worst, Shum would be in the same position he would have been

26  had Verdiell never patented any Radiance IP. *See* 35 U.S.C. § 102(f).

27      Moreover, Shum was never prevented from exploiting all of his Radiance IP rights under

28

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1   the POL, notwithstanding any alleged unlawful patenting.  There is no evidence that Shum's

2   exploitation of Radiance IP was ever hindered by the existence of the patents.  To the contrary,

3   Shum testified in deposition that the POL gave both Shum and Verdiell equal access to any

4   patents obtained on Radiance technology, and equal rights to independently sell all of the

5   Radiance technology with no liability to the other person.  Taylor Decl., ¶ 5, Exh. 3 at pp. 537:21-

6   541:9.  Shum also stated that he was not even aware of the patents' existence until May 13, 2001.

7   *See* Fourth Amended Complaint at ¶ 30; Taylor Decl., ¶ 4, Exh. 2 at pp. 219:5-223:12.  Shum

8   could have filed his own patent applications on whatever IP he thought he had invented, but he

9   chose not to do so.  Taylor Decl., ¶ 5, Exh. 3 at p. 537:7-10.

10        Because Shum cannot show actual damage, the Court should grant summary judgment in

11   Verdiell's favor on Shum's breach of contract claim.

12   **D.   SHUM'S BREACH OF FIDUCIARY DUTY, FRAUD AND**
       **FRAUDULENT CONCEALMENT CLAIMS FAIL AGAINST**
13   **ALL DEFENDANTS**

14        To establish a claim of fraud under California law, a plaintiff is required to prove the

15   defendant made a false representation of a material fact with intent to defraud.  *See, e.g., Stansfield*

16   *v. Starkey*, 220 Cal. App. 3d 59, 72 (1990).  Fraudulent concealment is "[t]he suppression of a

17   fact, by one who is bound to disclose it, or who gives information of other facts which are likely to

18   mislead by want of communication of that fact."  Cal. Civ. Code § 1710(3).  Thus, to prevail on

19   his fraud claims against Verdiell, LightLogic and Intel, or his fraudulent concealment claims

20   against Verdiell and LightLogic, Shum must prove that each defendant made a false representation

21   to him, or concealed a material fact under circumstances requiring that defendant to disclose that

22   fact.[3]

23        Shum alleges that defendants committed fraud by failing to disclose information.  Without

24   a *duty* to disclose, however, none of the defendants can be held liable for fraud claims premised on

25   failing to disclose information.  *See* Cal. Civ. Code § 1710(3); *Pastoria v. Nationwide Ins.*, 112

26   ───────────────

27   [3]  Shum's fraudulent concealment claim was dismissed as to Intel, without leave to amend, in the Court's
     March 25, 2003 Order.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1   Cal. App. 4th 1490, 1499 (2003) ("The general rule is that even if material facts were known to

2   one party and not the other, the failure to disclose the facts is usually not actionable fraud absent a

3   fiduciary relationship giving rise to a duty to disclose."); *Nussbaum v. Weeks*, 214 Cal. App. 3d

4   1589, 1594 (1989) (same).  No such duty to disclose existed as to any of the defendants here.

5   Shum's breach of fiduciary duty claim against Verdiell fails for the same reason – there was no

6   fiduciary duty running from Verdiell to Shum by virtue of their relationship at Radiance.

7           To the extent that Shum bases his fraud, fraudulent concealment, or any other tort claims

8   on allegations that Verdiell failed to comply with the terms of the POL, those claims fail as a

9   matter of law because "[c]onduct amounting to a breach of contract becomes tortious only when it

10  also violates an independent duty arising from principles of tort law." *Applied Equip. Corp. v.*

11  *Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994).

12                    **1.      Verdiell Did Not Owe Fiduciary Duties to Shum**

13                            **(a)      Verdiell did not owe fiduciary duties as**
                                     **an equal shareholder and officer of Radiance**

14

15          The Court decides the existence of a fiduciary relationship as a matter of law.  If no such

16  relationship exists, there can be no breach of fiduciary duties. *See, e.g.*, *Oakland Raiders v.  Nat'l*

17  *Football League*, 131 Cal. App. 4th 621, 634 (2005); *Sonoma Foods, Inc. v. Sonoma Cheese*

18  *Factory LLC*, 2007 U.S. Dist. LEXIS 56032 (N.D. Cal. July 23, 2007).  Under California law,

19  equal shareholders in a corporation do not owe one another a fiduciary duty merely by virtue of

20  that relationship. *See Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1156-59 (2005)

21  (holding that the trial court had erred in finding that one 50% shareholder in a corporation owed

22  the other a fiduciary duty).  Indeed, the only circumstance in which California law recognizes a

23  fiduciary duty running directly from one shareholder to another, based on their co-shareholder

24  relationship, is where there is a majority shareholder or shareholder block that would otherwise be

25  in a position to exercise that majority voting power to the detriment of minority shareholders. *See*

26  *Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 108 (1969).  Here, there was no majority or

27  controlling shareholder, as evidenced by the impasse that resulted in the dissolution of Radiance.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO.  C 02-03262 DLJ (EMC)

1       Nor is the ruling in *Persson* contradicted by cases brought on behalf of the corporation

2   itself, to which an officer admittedly owes a fiduciary duty. *See, e.g., Oakland Raiders*, 131 Cal.

3   App. 4th at 634; *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 345 (1966). Shum would use

4   some sleight of hand to extend a fiduciary duty *to the corporation* to an equal shareholder, despite

5   the clear rule from *Persson*, but there is no legal basis for that extension.

6             **(b)**    **Verdiell did not owe fiduciary duties as a joint venturer**

7       Shum's alternative contention, that a fiduciary duty existed because he and Verdiell

8   allegedly were joint venturers, is also incorrect as a matter of law. The *Persson* case expressly

9   holds that any rights as partners or joint venturers are extinguished upon incorporation:[4]

> 10   [A]fter a partnership is incorporated, the rights or obligations which partners
>        can enforce against each other no longer exist. In the absence of a pre-
> 11   incorporation agreement or evidence the corporate form was disregarded,
>        shareholders in a duly formed corporation operating in accordance with legal
> 12   requirements do not become de facto partners, and thereby acquire fiduciary
>        duties to each other, simply because they earn the same salary and refer to each
> 13   other for convenience as partners. They have the rights and obligations of
>        shareholders, not partners . . . .

15   125 Cal. App. 4th at 1159. There is no evidence that Radiance was anything but a valid

16   corporation, so Verdiell could owe no duties to Shum as a joint venturer. Because Verdiell and

17   Shum were not engaged in a joint venture, no corresponding fiduciary duties can apply.

18             **(c)**    **Verdiell did not owe fiduciary duties on any other basis**

19       Shum also attempts to create a fiduciary duty by insinuating that Verdiell was the

20   "dominant party" to Shum's "servient party" and that Verdiell had superior knowledge, power, or

21   control. The type of fiduciary duty to which Shum alludes requires a particular vulnerability on

22   the part of one party, such as advanced age, youth, lack of education, or weakness of mind.

23   *Persson*, 125 Cal. App. 4th at 1161-62. It does not apply to negotiations between two equal

24   shareholders, particularly where, as here, both were represented by counsel. Taylor Decl., ¶ 4,

25   Exh. 2 at p. 208:11-17; Decl. at ¶ 5, Exh. 3 at p. 497:16-24. Just as the court in *Persson* could find

---

[4] Joint ventures and partnerships are virtually identical. *Victor Valley Transit Auth. v. Workers' Comp. Appeals Bd.*, 83 Cal. App. 4th 1068 (2000).

TAYLOR & CO.
LAW OFFICES, LLP

1   no "vulnerability" in negotiations between the defendant (who was the corporate President and

2   equal shareholder in charge of day-to-day operations) and the plaintiff (a corporate officer in

3   charge of product development), there is no "vulnerability" of Shum under the very similar

4   relationship here. *Persson*, 125 Cal. App. 4th at 1147, 1162.

5        Shum cannot convert a claim that he trusted Verdiell (or that he did not trust him) into a

6   fiduciary duty, and he has not demonstrated any particular vulnerability on his part. *See id.* at

7   1161. Neither can Shum claim that Verdiell's business acumen gave him "superior knowledge"

8   that created a fiduciary duty. *See Pacesetter Homes, Inc. v. Brodkin*, 5 Cal. App. 3d 206, 212

9   (1970) ("'Superior knowledge' in the context of fraudulent misrepresentation has become a term

10   of art. It contemplates more than the possession by one party to a bargain of a greater acumen

11   than is possessed by the other party."). Shum simply has not shown any evidence to support his

12   bare allegations of a "dominant-servient" relationship.

13        Because no fiduciary duty ever existed, Verdiell cannot be held liable for breach of

14   fiduciary duty to Shum, or for any fraud or fraudulent concealment claims against Verdiell based

15   on an alleged failure to disclose. *Pastoria,* 112 Cal. App. 4th at 1499 ("The general rule is that

16   even if material facts were known to one party and not the other, the failure to disclose the facts is

17   usually not actionable fraud absent a fiduciary relationship giving rise to a duty to disclose.").

18   Because Verdiell had no fiduciary duty, LightLogic also had no duty to disclose. As to any

19   allegation that Intel owed an independent duty to prevent or disclose any alleged fraud by Verdiell

20   or LightLogic, there is no factual or legal basis for Shum's assertion of such a duty. Shum has

21   sued Intel for fraud as the successor to LightLogic, so his claims fail against Intel for the same

22   reasons they fail against Verdiell and LightLogic.

   **2.   Shum's Fraud Claims Based on Alleged
          Misrepresentations by Verdiell Also Fail as a Matter of Law**

23

24        Shum also alleges he was deceived by statements made by Marek Alboszta and Lumen

25   Intellectual Property Services, Inc. ("Lumen") concerning the Radiance patent application.

26

27

28

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

1   According to Shum, Alboszta falsely told him that the application had to be withdrawn.  Alboszta

2   and Lumen are no longer parties to this case.[5]  The fact that Alboszta, as a patent agent, made

3   representations to Radiance, his client, that the Radiance patent application needed to be

4   withdrawn cannot be attributed to Verdiell.  If this was a misrepresentation of law, it was only

5   actionable because Alboszta, as a patent agent to Radiance, possessed superior knowledge

6   regarding patent application procedures.  *See* April 27, 2004 Order, at p. 12.

7        Because Verdiell did not have the patent agent's duty, if any, that Alboszta owed to Shum

8   through Alboszta's agency relationship with Radiance, Verdiell cannot be held liable for

9   Alboszta's statements or actions in withdrawing the patent.  Allegations of "conspiracy" cannot

10  create an independent duty, and without an independent duty, Verdiell cannot be held liable for the

11  actions of his alleged "co-conspirator."  *Applied Equip. Corp.*, 7 Cal. 4th at 511, 514 ("Conspiracy

12  is not an independent tort; it cannot create a duty or abrogate an immunity."); *Everest Investors 8*

13  *v. Whitehall Real Estate Ltd. P'ship XI*, 100 Cal. App. 4th 1102, 1106 (2002) ("By its nature, tort

14  liability arising from a conspiracy presupposes that the conspirator is legally capable of

15  committing the tort – that he owes a duty to the plaintiff recognized by law and is potentially

16  subject to liability for the breach of that duty.").  Alboszta's actions were potentially tortious only

17  because of his duty as a patent agent with superior knowledge.  Because Verdiell himself did not

18  have that duty, he cannot, as a matter of law, be held responsible for Alboszta's actions.

19       Moreover, as demonstrated in section III.E.2(a), *infra*, as a matter of law Shum cannot

20  dispute that Verdiell was at least an inventor of the DBC patent claims.  As such, the decision to

21  withdraw the Radiance patent application, in an attempt to protect the intellectual property of

22  Radiance, was a correct decision and cannot be the basis for a fraud claim.

### 3.   Shum's Fraud and Fraudulent Concealment Claims Also Fail Because Shum Cannot Demonstrate Reliance

A defendant is liable only to those particular persons to whom he made a

---

[5]  Shum's causes of action against Lumen and Alboszta were dismissed by this Court with prejudice pursuant to Rule 41(a)(2) on June 14, 2004.  Taylor Decl., ¶ 6, Exh. 4.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

1   misrepresentation, intending that those persons act in reliance on it.  5 Witkin, *Summary of*

2   *California Law, Torts*, § 803 (10th ed. 2005).  The absence of reliance can be decided on summary

3   judgment where, as here, the facts are undisputed.  *See e.g., Glenn K. Jackson Inc. v. Roe*, 273

4   F.3d 1192, 1201 (9th Cir. 2001) (affirming summary judgment and stating that plaintiff's

5   "'feelings' were not sufficient to create a genuine issue of fact regarding justifiable reliance").

6   Shum's claims that Verdiell and LightLogic failed to disclose Shum's ownership or inventorship

7   rights to third parties, i.e., the PTO and LightLogic's investors, cannot support a claim on behalf

8   of Shum.  Regardless of whether there was a duty to disclose ownership or inventorship to the

9   PTO or to investors, an alleged failure of a duty to disclose to third parties does not demonstrate

10  any intent to induce a particular act of *Shum*.[6]

11      More importantly, Shum has not shown that he actually relied on any of the purported

12  misrepresentations or omissions allegedly made to third parties.  *See, e.g., Mirkin v. Wasserman*, 5

13  Cal. 4th 1082, 1088 (1993) ("It is settled that a plaintiff, to state a cause of action for deceit based

14  on a misrepresentation, must plead that he or she actually relied on the misrepresentation.").

15  Shum must show that the alleged misrepresentation was an "immediate cause" of his conduct.

16  *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) ("Actual reliance occurs when

17  the defendant's misrepresentation is an immediate cause of the plaintiff's conduct, altering his

18  legal relations, and when, absent such representation, the plaintiff would not, in all reasonable

19  probability, have entered into the transaction.").

20      Shum's own writings and deposition testimony show that he did not rely on the

21  defendants' conduct.  Shum declared in a September 8, 1997 memorandum that he had lost trust in

22  Verdiell and confirmed in his deposition that this memorandum accurately reflected his feelings at

23

---

24  [6] There is clearly no duty to disclose ownership to the PTO.  *See* 35 U.S.C. § 261; *John Tuman & Sons,*
    *Inc. v. Basse*, 113 F.2d 928, 928-29 (2d Cir. 1940) (demonstrating that Congress amended section 261 to

25  eliminate a recordation requirement); *see also* 35 U.S.C. § 262 (providing that joint owners of patents are
    not required to make any accounting to other owners).  Also, as has been extensively briefed in this

26  litigation, the Plan of Liquidation did not create a duty to record *any* patent interests with the PTO, and
    gave Verdiell and Shum the right to pursue any and all business opportunities (which necessarily would

27  include communicating with investors) without any accounting to the other party.

28

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO.  C 02-03262 DLJ (EMC)

1  the time.  Taylor Decl., ¶ 4, Exh. 2 at pp. 27:9-28:17; Decl. at ¶ 7, Exh. 5.  Shum also testified that

2  he never regained his trust in Verdiell during the dissolution negotiations.  Taylor Decl., ¶ 4, Exh.

3  2 at p. 28:18-29:12.  Shum unequivocally testified that he knew he was the sole inventor of the

4  technology and that the law protected him regardless of what Verdiell ultimately would do.

5  Taylor Decl., ¶ 5, Exh. 3 at p. 613:6-13.

6        Because Shum lost trust in his business associate and allegedly believed he was the sole

7  inventor of the technology, it is unreasonable for him to now claim reliance – particularly when

8  Shum primarily argues that he relied on Verdiell's *silence*.  *Cf. Unjian v. Berman*, 208 Cal. App.

9  3d 881, 886-88 (1989) (discussing that in a doctor-patient relationship, which is fiduciary in

10  nature, a patient's claim that he relied on the doctor is undermined by evidence that the patient lost

11  trust in the doctor).  Shum knew throughout the Radiance dissolution negotiations that Verdiell

12  intended to pursue business opportunities based on Radiance IP, that Verdiell believed he was an

13  inventor of technology in the Radiance patent application, and that Verdiell refused to sign any

14  dissolution document that contained language that would explicitly deny Verdiell the right to file a

15  patent on the Radiance technology.  Taylor Decl., ¶ 4, Exh. 2 at pp. 111:1-12, 116:11-117:20;

16  Decl. at ¶ 5, Exh. 3 at p. 612:8-21.  Shum's knowledge of these facts precludes any legitimate

17  claim of reasonable or actual reliance.

18        Regarding defendants' conduct after signing the POL, Shum testified that nothing Verdiell

19  or LightLogic did after approving the POL affected his conduct in any way.  After January 5,

20  1998, Shum took whatever action he did with respect to the Radiance technology independent of

21  Verdiell.  Taylor Decl., ¶ 5, Exh. 3 at p. 479:9-19.  Shum also acknowledged that neither he nor

22  Verdiell had an obligation to inform the other of any of their activities once the POL was approved

23  on January 5, 1998.  Taylor Decl., ¶ 4, Exh. 2 at pp. 173:12-174:2.  It is neither justifiable nor

24  reasonable for Shum to claim that he did not believe Verdiell would exercise his rights under the

25  POL, and even less reasonable now to claim that he was somehow entitled to rely on that belief as

26  the "immediate cause" of his inaction.

27  ///

28

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO.  C 02-03262 DLJ (EMC)

1

### 4.   Shum Cannot Show Damage Resulting From His Alleged Reliance

2          Finally, a plaintiff must suffer damage resulting from reliance on the misrepresentation. 5

3   Witkin, *Summary of California Law, Torts*, § 816 (10th ed. 2005).  For the same reasons identified

4   in Section III.C, *supra*, Shum cannot prove that he suffered any damage based on his fraud

5   allegations any better then he can prove damages for his breach of contract claim.

6          As previously discussed, the POL grants both parties "equal rights to independently exploit

7   the intellectual property developed by the Corporation."  The Court interpreted this contract

8   provision to mean there were no restrictions on Verdiell's or Shum's right to patent Radiance IP.

9   *See* Order of April 27, 2004, at pp. 21-22.  Moreover, Shum testified that the POL gave both Shum

10  and Verdiell equal access to any patents obtained on Radiance technology, and equal rights to

11  independently sell all of the Radiance technology with no liability to the other person.  Taylor

12  Decl., ¶ 5, Exh. 3 at pp. 537:21-541:9.  In fact, Shum acknowledged that by patenting Radiance

13  technology, Verdiell protected Shum's alleged inventions from the public domain.  *Id.* at pp.

14  536:7-537:3; 527:10-528:10.  According to Shum, the POL gave Verdiell the right to publish the

15  technology, and had Verdiell chosen to do so, Shum would have had no cause of action against

16  him.  *Id.* at pp. 527:10-528:10.  Thus, it does not matter that Shum now claims he believed

17  Verdiell did not plan to patent or profit from the Radiance IP.  Shum's own hopes, frustrations or

18  fears cannot substitute for evidence to prove his fraud-based claims.  The clear language of the

19  POL, in addition to Shum's own activities as described above, make it impossible for Shum to

20  show either justifiable reliance or damage.  Accordingly, none of Shum's claims for fraud or

21  fraudulent concealment can survive summary judgment.

22         As to LightLogic, Shum does not even attempt to articulate a legal basis for holding

23  LightLogic liable for fraud, much less present evidence to support his claim.  Similarly, because

24  Shum's fraud claim against Intel is based solely on successor liability, for which there is an equal

25  absence of evidence – Shum's fraud claim must fall against Intel as well.  Shum simply cannot

26  establish the elements of fraud, fraudulent concealment or breach of fiduciary duty against any of

27  the defendants and all of these claims must fail as a matter of law.

28

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

E.   **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON SHUM'S INVENTORSHIP CLAIMS**

Defendants move for summary judgment on inventorship given the substantial number of documents Shum was forced by court order to produce after defendants filed their 2004 motions for summary judgment, as well as the voluminous evidence in the record as a result of the 2005 bench trial.  Indeed, the testimony at trial, which this Court is permitted to consider on this motion, unequivocally confirms that there is no sufficient legal basis on which Shum's claim for correction of inventorship, either as a sole or joint inventor, can survive.  *See, e.g., Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1415 n.12 (5th Cir. 1993) (affirming district court's reliance on prior trial testimony in deciding motion for summary judgment); *see also United States v. O'Connell*, 890 F.2d 563, 567 (1st Cir. 1989) (same); *Langston v. Johnson*, 478 F.2d 915, 918 n.17 (D.C. Cir. 1973) (same).

1.   **The Applicable Legal Standard**

(a)   **Inventorship of an Issued Patent May Only Be Overcome by Clear and Convincing Evidence**

As a matter of federal law, the inventors named in an issued patent are presumed to be the true and sole inventors.  *See* 35 U.S.C. § 282; *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).  The inventorship standard applies both to claims for correction of inventorship under 35 U.S.C. § 256 (*Ethicon*, 135 F.3d at 1460-61), and to claims under state law.  *Univ. of Colo. Found. v. Am. Cyanamid*, 196 F.3d 1366, 1372 (Fed. Cir. 1999) ("the field of federal patent law preempts any state law that purports to define rights based on inventorship").  A putative inventor's burden in challenging the statutory presumption is "a heavy one."  *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997).  Because of the significant temptation for one who worked with an inventor to reconstruct in his favor the nature and extent of his contribution, the alleged inventor is required to produce clear and convincing evidence that he or she conceived of the subject matter contained in the patent claims at issue.  *See id.*; *see also Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1366-67 (Fed. Cir. 2004); *Bd. of Educ. v. Am. Bioscience, Inc.*, 333 F.3d 1330, 1337 (Fed. Cir. 2003); *Burroughs Wellcome v. Barr*

18.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

1 | *Lab, Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).

2 |      The Supreme Court has defined clear and convincing evidence as evidence "so clear, direct

3 | and weighty and convincing as to enable the factfinder to come to a clear conviction, without

4 | hesitancy, of the truth of the precise facts in issue." *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S.

5 | 261, 285 (1990) (quoting *In re Jobes*, 529 A.2d 434, 441 (N.J. 1987). This standard is met only

6 | when the evidence presented creates "an abiding conviction that the truth" of the factual assertions

7 | is "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984); *Price v. Symsek*, 988

8 | F.2d 1187, 1191 (Fed. Cir. 1993).

9 |         **(b)**     **The Clear and Convincing Standard Must Be**
**Met With Independent, Corroborating Evidence**

10 |

11 |      An alleged inventor must not only satisfy the substantive requirement of proving

12 | conception by clear and convincing evidence, but also must meet the evidentiary requirement of

13 | providing corroborating evidence of his or her claims. *See Sandt Tech., Ltd. v. Resco Metal &*

14 | *Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001). As the "burden of proof of an inventor's

15 | alleged conception and reduction to practice is a heavy one," the alleged inventor must provide

16 | "full corroboration by *other than* the inventor's own self-serving testimony or records." *Std. Mfg.*

17 | *Co. v. United States*, 25 Cl. Ct. 1, 66 n.47 (1991) (emphasis added); *see also Sandt Tech.*, 264 F.3d

18 | at 1350-51; *Marketel Int'l, Inc. v. Priceline.com*, 138 F. Supp. 2d 1210, 1213-16 (N.D. Cal. 2001).

19 | Thus, the inventor's testimony, standing alone, is "insufficient to prove conception . . . ." *Price*,

20 | 988 F.2d at 1194 (internal quotations and citation omitted). Moreover, "an inventor's own

21 | *unwitnessed* documentation does not corroborate an inventor's testimony about inventive facts."

22 | *Brown v. Barbacid*, 276 F.3d 1327, 1335 (Fed. Cir. 2002) (emphasis added).

23 |      The possibility that the putative inventor's credibility could be in issue under the "rule of

24 | reason" standard does not constitute a basis to deny summary judgment because only "*necessary*"

25 | credibility determinations are required. *Ethicon*, 135 F.3d at 1464. Where sufficient

26 | corroborating evidence is lacking, summary judgment is appropriate, and the factfinder need not

27 | weigh credibility. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1329 (Fed. Cir.

28 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

1  2004) (affirming summary judgment for lack of corroboration); *see also Seal-Flex, Inc. v. W.R.*

2  *Dougherty & Assocs.*, 179 F. Supp. 2d 735, 740 (E.D. Mich. 2002) ("Because a court determines

3  the sufficiency of corroborative evidence as a matter of law under the rule of reason, such a

4  determination is well-suited for summary judgment.").  Summary judgment is appropriate where

5  "no reasonable juror could find that [an] inventorship claim was corroborated." *Linear Tech.*

6  *Corp.*, 379 F.3d at 1329.

**(i)      Documentary or Physical Evidence
Is Generally Required**

9       The "most reliable proof" of corroboration is documentary or physical evidence made

10  contemporaneously with the inventive process, although oral testimony from independent

11  witnesses and circumstantial evidence may also offer corroboration. *Trovan, Ltd. v. Sokymat SA*,

12  299 F.3d 1292, 1302 (Fed. Cir. 2002); *Sandt Tech.*, 264 F.3d at 1350-51.  "'The law has long

13  looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent

14  other evidence that corroborates that testimony.'" *Checkpoint Systems, Inc. v. All-Tag Sec. S.A.*,

15  412 F.3d 1331, 1339 (Fed. Cir. 2005) (citation omitted).  In *Woodland Trust v. Flowertree*

16  *Nursery, Inc.*, 148 F.3d 1368 (Fed. Cir. 1998), the court reversed a judgment for the alleged junior

17  inventor based on the testimony of interested parties and specifically "t[ook] note of the absence

18  of any physical record to support the oral evidence." *Id.* at 1373.

19       Not all documentary or physical evidence is sufficient to corroborate an inventor's claim,

20  however.  The Federal Circuit has held that "regardless of the[ir] contents . . ., unwitnessed

21  laboratory notebooks on their own are insufficient to support [a] claim of co-inventorship." *Stern*

22  *v. Tr. of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006); *see also Chen v. Bouchard*, 347

23  F.3d 1299, 1311 (Fed. Cir. 2003) (affirming order in interference action where "no witness who

24  signed any of Dr. Chen's or any other involved researchers' notebooks testified in this proceeding,

25  and all of the information within those notebooks therefore remains uncorroborated").

26  Unwitnessed notations in documents do not provide sufficient corroboration to allow a would-be

27  inventor to prevail. *See Singh v. Brake*, 317 F.3d 1334, 1342 (Fed. Cir. 2002) (decided under the

28

20.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

1   more lenient preponderance standard). Undated or unwitnessed photographs are plainly

2   insufficient. *Woodland Trust*, 148 F.3d at 1373 (agreeing with lower court that undated

3   photographs did not corroborate claim); *cf. Sandt Tech.*, 264 F.3d at 1352 (photographs

4   corroborated claim when dated and witnessed).

5          Finally, while corroboration is not necessary to establish "what a physical exhibit . . .

6   includes" (*Price v. Symsek*, 988 F.2d 1187, 1195-96 (Fed. Cir. 1993)), an unwitnessed document

7   cannot "single-handedly corroborate" the alleged inventor's testimony. *Brown*, 276 F.3d at 1335.

8   The requirement of corroborating evidence independent of the putative inventor's testimony

9   extends to unwitnessed documents precisely because of the temptation to reconstruct his or her

10  state of mind – whether through testimony or subsequently prepared documents. *See Transocean*

11  *Offshore Deepwater Drilling, Inc. v. Globalsantafe Corp.*, 443 F. Supp. 2d 836, 857 (S.D. Tex.

12  2006) (granting summary judgment in part because plaintiff could not corroborate claim with

13  "undisclosed and unwitnessed drawings"); *Huang v. Cal. Inst. of Tech.*, 72 U.S.P.Q. 2d (BNA)

14  1161, 1178-79 (C.D. Cal. 2004) ("The bulk of the evidence that Dr. Huang offered to support his

15  testimony that the idea of chemically tagging DNA was his were pages from his unwitnessed

16  laboratory notes. This evidence is insufficiently independent of Dr. Huang be [sic] useful in

17  corroborating his testimony.").

18          **(ii)      Corroborating Evidence Must Be Contemporaneous**

19          Whatever form the corroborating evidence takes, however, the putative inventor's

20  corroborating evidence must amount to "evidence of a *contemporaneous* disclosure that would

21  enable one skilled in the art to make the invention." *BJ Servs. Co. v. Halliburton Energy Servs.,*

22  *Inc.*, 338 F.3d 1368, 1373 (Fed. Cir. 2003) (emphasis added); *see also Burroughs Wellcome*, 40

23  F.3d at 1228 ("Because [conception] is a mental act, courts require corroborating evidence of a

24  contemporaneous disclosure that would enable one skilled in the art to make the invention.");

25  *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985) ("Conception must be proved by

26  corroborating evidence which shows that the inventor disclosed to others his completed thought

27  expressed in such clear terms as to enable those skilled in the art to make the invention.") (internal

28

21.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1    quotations and citations omitted).

2      "Often contemporaneous documents prepared by a putative inventor serve to corroborate

3    an inventor's testimony." *Ethicon*, 135 F.3d at 1461 (citing *Price*, 988 F.2d at 1195-96).  Undated

4    documents, however, cannot corroborate testimony.  *Woodland Trust*, 148 F.3d at 1373 (noting

5    that lower court properly refused to rely on "two undated photographs").[7]  Documents written

6    after the date of conception are likewise insufficient to serve as corroborating evidence.  *See*

7    *Linear Tech. Corp.*, 379 F.3d at 1329 (finding postdated drawings to be of "questionable value" in

8    inventorship case); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 n.2 (Fed. Cir. 1998) (rejecting

9    invalidity argument based on competitor's conception allegedly occurring one month after the

10   named inventor's conception).

11       **(iii) Corroborating Evidence Must Be Enabling**

12     Corroborating evidence also must be of a disclosure "that would enable one skilled in the

13   art to make the invention."  *Burroughs Wellcome*, 40 F.3d at 1228.  A putative inventor may

14   demonstrate enablement "even if some 'routine experimentation is required in order to practice a

15   claimed invention, but . . . such experimentation must not be 'undue.'"  *Amgen Inc. v. Hoechst*

16   *Marion Roussel, Inc.*, 457 F.3d 1293, 1306 (Fed. Cir. 2006).  Enablement is a question of law

17   based on underlying facts, and is appropriately the subject of a motion for summary judgment.

18   *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1281 (Fed. Cir. 2007).  Although a

19   disclosure may omit "minor details," when it does not disclose "any specific starting material or of

20   any of the conditions under which a process can be carried out, undue experimentation is

21   required."  *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997); *see also*

22   *Auto. Techs. Int'l*, 501 F.3d at 1284 ("Given that side impact sensing was a new field and that

23   there were no electronic sensors in existence that would detect side impact crashes, it was

24

25   _____

26   [7] An undated document may be corroborative if it is accompanied by *third party* testimony confirming that
     the document is contemporaneous.  *See Sandt*, 264 F.3d at 1352 (third party's affidavit confirmed that

27   undated photographs represented the technology conceived by alleged inventor, and that technology was
     offered for sale more than four years before named inventor filed his patent).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO.  C 02-03262 DLJ (EMC)

1  especially important for the specification to discuss how an electronic sensor would operate to

2  detect side impacts and to provide details of its construction."). Accordingly, evidence may

3  corroborate the claim of a putative inventor only if it is enabling.

4                                   **(iv)**     **Corroborating Evidence Must Demonstrate Conception**

5         Finally, as discussed more fully below, evidence corroborates a putative inventor's claim

6  only if it establishes that he or she conceived of at least an important or a necessary element or

7  claim. *See Hess*, 106 F. 3d at 980. Corroborating evidence must do more than express a problem.

8  It must "provide the *solution*." *Singh*, 317 F.3d at 1341 (emphasis added). A sketch that shows a

9  *different* method than the one ultimately described in the patent cannot be relied upon to

10  corroborate a claim of inventorship. *Ethicon*, 135 F.3d at 1463; *Tavory v. NTP, Inc.*, 495 F. Supp.

11  2d. 531, 540 (E.D. Va. 2007) (finding that alleged inventor did not demonstrate corroboration

12  based on his wireless communication device that was "technologically distinct" from the patented

13  device).

14                                 **(c)**     **Conception Dictates Who is an Inventor**

15         In an inventorship dispute, the dispositive question is "who conceived . . . the subject

16  matter of the claims at issue." *Ethicon*, 135 F.3d at 1460. Conception is "the formation in the

17  mind of the inventor, of a definite and permanent idea of the complete and operative invention, as

18  it is hereafter to be applied in practice." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d

19  1367, 1376 (Fed. Cir. 1986). To qualify as a joint inventor, one "must contribute in some

20  significant manner to the conception of the invention." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d

21  1466, 1473 (Fed. Cir. 1997). "To constitute joint inventorship, both individuals' work must rise to

22  the level of inventorship and each inventor's contribution must contain the necessary element of

23  conception." *Murdock Webbing Co., Inc. v. Dalloz Safety, Inc.*, 213 F. Supp. 2d 95, 102 (D.R.I.

24  2002) (citing *Ethicon*, 135 F.3d at 1460).

25         To be credited with invention, a joint inventor must (1) contribute to conception or

26  reduction to practice in some significant manner, (2) make a contribution that is not insignificant

27  in quality when measured against the full invention, and (3) do more than merely explain well

28

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO.  C 02-03262 DLJ (EMC)

1  known concepts or the current state of the art.  *See Pannu*, 155 F.3d at 1351.[8]  "To be significant,

2  an alleged co-inventor's contribution must render the results of the collaboration patentable."

3  *Huang*, 72 U.S.P.Q. 2d at 1177; *see also Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d

4  1371, 1379-81 (Fed. Cir. 2001).  For that reason, collaboration is a necessary, but never sufficient

5  element for finding joint inventorship.  Inventors "may solicit the assistance of others when

6  perfecting the invention without 'losing' any patent rights."  *Trovan*, 299 F.3d at 1302; *see also*

7  *Hoop v. Hoop*, 279 F.3d 1004, 1007 (Fed. Cir. 2002).

8        With regard to combination patents – i.e., those that cover novel combinations of prior art

9  elements – the corroborating evidence required of a putative joint inventor is particularly high, as

10  the putative inventor must present evidence showing that he or she was the one who conceived of

11  the aspects of the claimed combination that rendered that combination patentable.  For instance, in

12  *Acromed*, the putative inventor claimed to have conceived of the patented combination of elements

13  for a medical device, but his sole inventorship claim was defeated by his failure to present

14  corroborating evidence verifying his conception of that combination.  *Acromed*, 253 F.3d at 1380.

15  Alternatively, the putative inventor argued that he was entitled to joint inventorship, based on his

16  contribution of a particular element of the combination invention, which even the named inventor

17  agreed was the putative inventor's idea.  The court also rejected that argument, however,

18  determining that "arcuate recesses" already existed in the prior art and hence could not be

19  inventive in and of themselves, and that the prosecution history did not indicate the addition of the

20  "arcuate recesses" rendered the invention patentable.  *Id.* at 1380-81.

21        Thus, to prevail in his inventorship challenge based on any asserted patent claim, Shum

22  must either present clear, convincing and corroborated evidence that (1) he, alone, conceived of

23  _____

24  [8]  A contribution in a significant manner to the reduction to practice of an invention can make one a joint
inventor *only* in those unusual cases – distinguishable from this case – where conception and reduction to

25  practice take place simultaneously.  For example, the conception of a DNA sequence coding for a specific
protein (the conception) can only occur through successful experimentation (the reduction to practice).  *See*

26  *Fiers v. Revel*, 984 F.2d 1164, 1168-69 (Fed. Cir. 1993).  Ordinarily, even where an individual completely
reduces to practice the invention of another, he does not become a joint inventor.  *See Ethicon*, 135 F.3d at

27  1465.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1   every aspect of the claimed invention; or (2) he contributed to the conception of a joint invention

2   those aspects that rendered that invention patentable.[9]  As demonstrated below, Shum is unable to

3   satisfy the substantive and evidentiary requirements that would support either theory.

4                  **2.      Shum's Inventorship Evidence Is Deficient As A Matter of Law**

5                         **(a)     Shum's Insufficient Evidence Concerning DBC**

6       Shum claims to be the inventor or co-inventor of the concept of using direct bonded copper

7   ("DBC") material in the optoelectronic packaging devices that are the subject of the '567 and '268

8   Patents.[10]  Taylor Decl. ¶ 8, Exh. 6; Decl. at ¶ 9, Exh. 7.  As an initial matter, two of the

9   documents proffered by Shum fail to corroborate either claim because they do not disclose the

10  claimed invention.  The remaining documents postdate Verdiell's conception evidence, and

11  therefore are insufficient as a matter of law to corroborate Shum's claims.

12                         **(i)     Verdiell's Conception Evidence Concerning DBC**

13      The evidence establishes that the essential new element of the DBC patents – describing

14  the bond between the metal layer and the substrate such that the substrate constrained the metal

15  layer and the metal layer inherited the coefficient of thermal expansion ("CTE") of the substrate –

16  is precisely what Verdiell added to the prior art in May 1996.  Taylor Decl., ¶ 13, Exh. 11 at pp.

17  764:19-765:2.  Verdiell testified without contradiction that he conceived of using the DBC

18  material in an optoelectronic packaging device coincident with his attendance in late May 1996 at

19  the ECTC Conference in Florida, where he observed a Brush-Wellman sample of a copper layer

20  bonded to a ceramic substrate.  Taylor Decl., ¶ 14, Exh. 12 at pp. 995:2-998:9, 1002:10-1007:3;

21  Decl. ¶ 16, Exh. 14 at pp. 1410:4-1413:8.  Verdiell drew sketches of his ideas for implementation

22  of an optoelectronic package using the DBC material on May 31, 1996.  Taylor Decl., ¶ 17, Exh.

---

23

24  [9] Sole inventorship is established only when the challenger proves that he or she conceived of the entire invention.  *Fina*, 123 F.3d at 1473.  Joint inventorship is proven only where the evidence establishes that the challenger conceived of the aspect of the final invention that made it patentable.  *Acromed*, 253 F.3d at

25  1380-81.

26  [10] Although Shum has referred to the inventions in these patents as "step technology" rather than DBC (Taylor Decl., ¶ 11, Exh. 9 at p. 340:3-9), step technology was in the prior art in 1996.  (Taylor Decl., ¶ 13,

27  Exh. 11 at p. 761:15-21.)

28

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO.  C 02-03262 DLJ (EMC)

1   15 at MV 24728.  Accordingly, Shum is required to identify evidence that predates Verdiell's

2   conception evidence in order to corroborate Shum's claims of either sole or co-inventorship.

3   Shum cannot do so.

4                    **(ii)      Shum's Conception Evidence Concerning DBC**

5           Shum all but admits that Verdiell conceived of using the DBC technology, referring to it as

6   "*your* copper on BeO substrate" idea.  Taylor Decl., ¶ 18, Exh. 16 at p. 8 (emphasis added).  In the

7   face of this admission and Verdiell's conception evidence, Shum has proffered documents that are

8   plainly insufficient to corroborate his inventorship claim.  First, Shum's Record of Invention that

9   he signed on October 5, 1994 (the "October 1994 ROI") focuses on achieving "vertical alignment"

10  through one of "[m]any techniques," including metalizing and soldering into place the bottom

11  surface of a lens and using gravity to pull the lens against the facet surface of the laser diode.

12  Taylor Decl., ¶ 19, Exh. 17 at FS2298.  There is no mention of DBC anywhere in Shum's October

13  1994 ROI, and Shum has admitted that the ROI did not disclose an insulating substrate or that the

14  CTE of the metal layer is constrained by the substrate.  Taylor Decl., ¶ 11, Exh. 9 at p. 344:2-5.

15  Second, the April 15, 1996 aCADian Technologies pre-proposal to the U.S. Army describes low-

16  cost assembly techniques for single mode fiber positioning, and refers only peripherally to

17  "temperature cycling."  Taylor Decl., ¶ 20, Exh. 18 at FS1439.  As Shum freely admits, nowhere

18  does this document discuss the metal layer's dissipation of heat, or its being directly bonded to the

19  substrate.  Taylor Decl., ¶ 11, Exh. 9 at pp. 358:19-365:12.

20          Moreover, the foregoing two documents offered by Shum as evidence of his invention only

21  describe a problem.  They do *not* propose a specific solution, let alone the same one described in

22  the issued patents.  Therefore neither of these documents can corroborate Shum's inventorship

23  claims.  *Cf. Garrett Corp. v. United States*, 422 F.2d 874, 881 (Ct. Cl. 1970) ("Joint invention

24  connotes collaboration of effort to produce a complete and operative invention.  One who merely

25  suggests an idea of a result to be accomplished, rather than means of accomplishing it, is not a

26  joint inventor."); *see also Singh*, 317 F.3d at 1341 (finding evidence not to be corroborative

27  because "[e]ven if the entry expressed the problem, it did not provide the solution.").  Shum's own

28

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO.  C 02-03262 DLJ (EMC)

1  expert witness, Professor Wayne Knox, has admitted that, with the exception of the substrate's

2  constraint on the metal layer and the metal layer's inheritance of the substrate's CTE, all the other

3  elements of the DBC patents were well known, and thus prior art, by 1996.  Taylor Decl., ¶ 13,

4  Exh. 11 at pp. 760:5-766:4.

5        Shum's remaining evidence postdates Verdiell's conception evidence and is insufficient as

6  a matter of law.  The July 2, 1996 proposal to the Army postdates Verdiell's conception evidence.

7  Taylor Decl., ¶ 21, Exh. 19.  *Linear Tech. Corp.*, 379 F.3d at 1329 (finding postdated drawings to

8  be of "questionable value").  Shum's signature on this proposal is similarly insufficient to

9  establish a genuine issue of material fact that he can demonstrate, by clear and convincing

10  evidence, he is the sole inventor or even a co-inventor of the DBC technology.  As discussed

11  above, in an early draft of this proposal (which postdates the aCADian pre-proposal), Shum inserts

12  a comment in the draft requesting that Verdiell "elaborate" on the fabrication process and

13  specifically "your [Verdiell's] copper on BeO substrate" idea.  Taylor Decl., ¶ 18, Exh. 16, at p. 8.

14  A later draft of the Army Proposal described this innovation as "a novel copper/ceramic composite

15  substrate."  Taylor Decl., ¶ 22, Exh. 20, at p. 1.  Shum's contemporaneous admissions undermine

16  any possible value of the July 2, 1996 Proposal.

17          **(b)    Shum's Insufficient Evidence Concerning Dual Enclosure**

18        Shum also claims to be the inventor or co-inventor of the dual enclosure packaging design

19  that is described in the '2,726 Patent.  Taylor Decl., ¶ 23, Exh. 21.  Again, the documents

20  proffered by Shum fail to corroborate this claim.  Shum's argument rests on his uncorroborated

21  testimony that he prepared a series of drawings that evidence his conception of this invention in

22  1996.  Because Shum's testimony cannot satisfy the rule of reason, there is no evidence to support

23  his inventorship claim.

24          **(i)    Verdiell's Conception Evidence**
               **Concerning Dual Enclosure**

25

26        In August 1997, Verdiell, after first identifying the thermal control problem common to all

27  optoelectronic packaging devices and then considering intermediate ideas for solutions to the

28  problem, conceived of a dual enclosure method to dissipate the heat buildup.  Taylor Decl., ¶ 15,

27.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1   Exh. 13 at pp. 1116:5-1117:21.  Contemporaneous documents demonstrate how Verdiell

2   memorialized his conception of this invention no later than September 1997.  *See* Taylor Decl.

3   ¶ 24, Exh. 22 at MV1201 (referring to "mak[ing] a plastic butterfly around it" on September 20,

4   1997); Decl. at ¶ 25, Exh. 23 at MV1214 (referring to "Double enclosure" on October 1, 1997).

**(ii)    Shum's Conception Evidence Concerning Dual Enclosure**

5

6

7       By contrast, Shum's documentary evidence cannot demonstrate his earlier conception of

    the dual enclosure.  First, there can be little doubt that Shum's so-called "cost analysis" represents

8   nothing more than a "parts list," which is insufficient to corroborate Shum's inventorship claim.

9   Taylor Decl., ¶ 26, Exh. 24.  *See, e.g.*, *Singh*, 317 F.3d at 1342 (holding that plaintiff's order for a

10  24-nucleotide sequence was insufficient to demonstrate conception).  A parts list is not

11  corroborative because it does not demonstrate the alleged inventor's intent.  Shum's parts list does

12  not disclose any elements of the '2,726 Patent.  Although this list uses the term "second lid," it

13  does not disclose how a second lid would be used and therefore cannot corroborate Shum's

14  alleged conception.  Moreover, Shum's parts list is not sufficiently detailed and does not

15  adequately specify conditions for a person skilled in the art.  Therefore it is not enabling as a

16  matter of law.  *See Auto. Techs. Int'l*, 501 F.3d at 1284.

17       Shum's December 19, 1997 CAD drawing (Taylor Decl., ¶ 27, Exh. 25) and December 27,

18  1997 business plan (Taylor Decl., ¶ 28, Exh. 26) are also easily rejected.  Both documents postdate

19  Verdiell's conception of the dual enclosure method and therefore cannot corroborate Shum's

20  inventorship claim.

21       Finally, Shum's testimony – as opposed to that of a third party – is incapable of

22  corroborating the undated drawings that were marked as Trial Exhibit 562.  Taylor Decl., ¶ 29,

23  Exh. 27.  *Cf. Sandt*, 264 F.3d at 1352 (third party affidavit could corroborate undated

24  photographs).  The lack of corroboration regarding these drawings makes this case very different

25  than *Ethicon*, where an inventorship dispute also focused on sketches.  There, the parties *agreed*

26  that the alleged inventor "made the sketches," and the dispute was solely over whether he

27  "conceived of the material in the sketches or merely drew what [the named inventor] conceived."

28
                                           28.

TAYLOR & CO.
LAW OFFICES, LLP

1   135 F.3d at 1464.  Here, by contrast, the issue is whether *Shum* drafted these sketches.  Both

2   Verdiell and third party witness Marek Alboszta have testified that Shum did not draw the

3   sketches, and that the sketches did not depict a dual enclosure packaging device.  Taylor Decl.,

4   ¶ 15, Exh. 13 at pp. 1120:3-1126:10, 1238:11-1239:16.  Viewed through the prism of the

5   substantive corroboration requirement, Shum's uncorroborated testimony that he drew the

6   sketches in Trial Exhibit 562 (Taylor Decl., Exh. 27; ¶ 11, Exh. 9 at pp. 272:25-273:20; Decl. at

7   ¶ 12, Exh. 10 at pp. 492:5-493:16, 496:11-17) simply cannot create a genuine issue of material

8   fact that he drew the sketches, much less that he drew them in August 1996.

9        The reason the law requires documentary evidence is that the testimony of the putative

10   inventor is not sufficiently reliable.  *See Hess*, 106 F.3d at 980.  The sketches Shum allegedly

11   drew on Exhibit 562, by themselves, corroborate nothing, because on their face they bear no

12   indication that they were drawn by Shum.  That critical, missing piece cannot be supplied by

13   Shum's testimony, because the inadequacy of his testimony – as a matter of law – is the whole

14   reason a corroborating document is required in the first place.  *Cf. Sandt Tech.*, 264 F.3d at 1350-

15   51; *Transocean*, 443 F. Supp. 2d at 857.  To allow Shum's testimony to be the only evidence to

16   establish that he created the document, and then to allow the document to be the only evidence to

17   corroborate Shum's testimony that he conceived of the claimed invention, is, ultimately, nothing

18   more than allowing Shum's testimony to corroborate Shum's testimony.  Such a result would

19   vitiate the requirement of "corroboration by other than the inventor's own self-serving testimony

20   or records."  Because Shum's testimony about these sketches cannot corroborate his inventorship

21   claim as a matter of law, there is no credibility determination for the Court to make.  *Ethicon*, 135

22   F.3d at 1464.  Based on the lack of any corroborating evidence, summary judgment is therefore

23   warranted on Shum's inventorship claim for the '2,726 Patent.

       **(c)**    **Shum's Insufficient Evidence Concerning Flexure**

24        Shum claims to be the inventor or co-inventor of the flexure technology described and

29.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO.  C 02-03262 DLJ (EMC)

1   embodied in the '950, '724, '6,726 and '427 Patents.[11]   Taylor Decl., ¶ 30, Exh. 28; ¶ 31, Exh. 29;

2   ¶ 32, Exh. 30; ¶ 33, Exh. 31.  All the documents proffered by Shum, save one, merit only cursory

3   consideration because they postdate Verdiell's conception evidence.  The remaining document

4   fails to discuss many of the key elements of the flexure technology disclosed in these patents and

5   therefore fails to corroborate Shum's claims as a matter of law.

6          The invention embodied in the '950, '724, '6,726 and '427 Patents involves mounting an

7   optical fiber on the body of a flexure, with the fiber to be aligned with a laser diode separately

8   mounted on the substrate (or floor) of the packaging device.  The fiber is aligned horizontally with

9   the diode by sliding the flexure from side to side on the substrate, and achieves vertical alignment

10  by exerting pressure on the flexure until the fiber and diode are aligned, causing the legs of the

11  flexure to spread apart on the substrate.  The legs are then fixed in their new positions to maintain

12  the exact alignment of the optical fiber.

13                          **(i)      Verdiell's Conception Evidence**

14         The documents and testimony of Verdiell and third party witnesses establish that Verdiell

15  conceived of using a multi-legged flexure in an optoelectronic packaging device in April and May

16  of 1997.  In March of 1997, Verdiell was working on flexure technology that would address

17  alignment of the diode and fiber in two planes in a manner that could be automated in the

18  manufacturing process.  Taylor Decl., ¶ 14, Exh. 12 at pp. 1043:3-1048:12.

19         On April 17, 1997, Verdiell made a record of invention (the "April 1997 ROI") –

20  witnessed by Shum – that discloses all of the elements of Claim 1 of the '950 Patent, Claim 1 of

21  the '724 Patent, and Claims 1, 5, 9 and 10 of the '6,726 Patent.  Taylor Decl., ¶ 15, Exh. 13 at pp.

22  1077:6-1079:14, 1080:11-1081:13, 1084:19-1086:25, 1087:17-1088:18, 1090:4-1091:7;  Decl. at

23  ────────────────────

24  [11] Although the Court has established a schedule for construction of claims and terms generally in this
     action, it need not await this process to establish the meaning of the claim term "leg" as that term is used in
25  these patents.  The Court has before it the parties' numerous submissions on the specification and
     prosecution history that establish the meaning of "leg."  The uncontradicted testimony and exhibits
26  establish conclusively that "leg" means an appendage which extends downward from the body of the
     flexure, supporting the flexure in an elevated state.  Accordingly, the Court may rely on this construction of
27  "leg" in evaluating the sufficiency of Shum's evidence of inventorship.

28                                                    30.

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1 ¶ 14, Exh. 12 at pp. 1057:3-1058:10; Decl. at ¶ 16, Exh. 14 at pp. 1482:9-1483:17; Decl. at ¶¶ 35

2 & 36, Exhs. 33 & 34.

3       Finally, Verdiell conceived of additional characteristics of the flexure patents in a May

4 1997 meeting with Shum and Les Duman.  Duman, a third-party witness involved in the sale and

5 design of custom components and parts, testified about Verdiell's interest in a spring device called

6 a "spider," which had multiple legs that could "slide" or spread apart when downward pressure

7 was applied.  Taylor Decl., ¶ 13, Exh. 11 at pp. 639:20-640:9, 643:18-24, 667:4-25; Decl. at ¶ 37,

8 Exh. 35.  Verdiell and Duman discussed how the sliding behavior of the spider could be

9 incorporated into an alignment device capable of holding an optical fiber.  Taylor Decl., ¶ 13, Exh.

10 11 at p. 650:14-17.)  Following this meeting, Verdiell incorporated into the preliminary flexure

11 design the characteristics of multiple pairs of legs and the ability to achieve alignment by the

12 application of downward pressure.  Taylor Decl., ¶ 38, Exh. 36.

13                    **(ii)     Shum's Conception Evidence**

14       Shum's purported evidence is insufficient to corroborate his claims of inventorship

15 concerning the flexure patents.  The majority of Shum's evidence clearly postdates Verdiell's

16 conception.  As a matter of law these documents cannot corroborate Shum's inventorship claim.[12]

17       •     Shum's CAD drawings completed on May 12, 1997 (Taylor Decl., ¶¶ 39-42, Exhs.

18 37 (at FS 0080), 38–40) do not corroborate his inventorship claims.  Verdiell's April 1997 ROI

19 had already disclosed an elevated flexure with legs.  Shum's drawings, although purportedly about

20 the feasibility of an elevated flexure (Taylor Decl., ¶ 10, Exh. 8 at p. 155:1-7) do not show legs or

21 spring regions.  Shum testified that he completed additional CAD drawings later in 1997.  (Taylor

22 Decl., ¶¶ 43 & 44, Exhs. 41 & 42; Decl. at ¶ 10, Exh. 8 at pp. 194:17-195:4; Decl. at ¶ 11, Exh. 9

23 at p. 228:1-10.)  While these drawings may resemble certain aspects of the patented flexures, all of

24 them *post*-date Verdiell's April 1997 ROI and other conception evidence.  Moreover, none of

25 _____

26 [12]  Moreover, the documents offered as evidence of Shum's invention only describe a problem.  They do

27 *not* propose a specific solution, let alone the same one described in the issued patents, and thus cannot
corroborate Shum's inventorship claims.

28

TAYLOR & CO.
LAW OFFICES, LLP

1   these drawings demonstrate who conceived of the inventions they purport to depict or embody.

2         •    Shum's undated sketch on the back of a presentation by Unitek cannot corroborate

3   Shum's claim because it is unsigned, undated and unwitnessed. Taylor Decl., ¶ 45, Exh. 43.

4   Moreover, it is not enabling as a matter of law and does not clearly disclose the flexure described

5   in the patents – *i.e.*, involving a laser diode, a substrate, and attached legs – as opposed to a

6   generic bent device. *Cf. Auto. Techs. Int'l*, 501 F.3d at 1284. At any rate, Shum testified that he

7   created the sketch on May 15, 1997 (Taylor Decl., ¶ 10, Exh. 8 at pp. 178:20-182:23), nearly one

8   month after Verdiell's April 1997 ROI.

9         •    Shum's prototype of a Radiance flexure (Taylor Decl., ¶ 44, Exh. 42) was created

10   in late 1997, nearly eight months after Shum signed and witnessed Verdiell's April 1997 ROI.

11   Taylor Decl., ¶ 10, Exh. 8 at pp. 208:22-209:6, 213:25-214:8. As a result, this prototype cannot

12   corroborate Shum's inventorship claim as a matter of law.

13        In the end, Shum relies on only one document – his Record of Invention dated March 17,

14   1997 (the "March 1997 ROI") that clearly predates Verdiell's conception in April and May

15   1997.[13] Taylor Decl., ¶ 46, Exh. 44. Shum testified, however, that none of the following key

16   elements of the '950, '724, '6,726 and '427 Patents was explicitly discussed or disclosed in his

17   March 1997 ROI: (a) legs, (b) spring regions, (c) a body on the flexure, (d) the flexure being in an

18   elevated position, (e) pressure applied to the flexure causing the legs to spread apart, (f) rear legs,

19   (g) any specific means of attaching the flexure to the substrate in a permanently aligned position,

20   once initial alignment was achieved, or (h) laser welding. Taylor Decl., ¶ 12, Exh. 10 at pp.

21   446:13-448:25, 452:17-453:8; Decl. at ¶ 46, Exh. 44. The March 1997 ROI is not enabling as a

22   matter of law and cannot support Shum's inventorship claim.

23        Shum's inventorship argument receives no assistance from his claim that it is possible to

24

25   ————————————————

26   [13] In support of his claims concerning the '427 Patent, Shum relies on calculations dated April 10, 1997
contained in his laboratory notebook (Taylor Decl., ¶ 47, Exh. 45), but these unwitnessed calculations are

27   plainly insufficient to serve as corroborating evidence. *See Stern v. Tr. of Columbia Univ.*, 434 F.3d at
1378.

28

TAYLOR & CO.
LAW OFFICES, LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL
CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1    use gravity or otherwise manipulate a model based on the March 1997 ROI to move its

2    appendages closer together under certain circumstances.  (Taylor Decl., ¶ 10, Exh. 8 at pp. 66:15-

3    69:13, 69:19-71:14, 150:13-151:3.)  This movement is simply not depicted in Shum's March 1997

4    ROI and therefore is of no value in determining whether Shum invented the flexure technology

5    described in the patents.[14]

6           With no evidence to corroborate any of Shum's inventorship claims regarding the DBC,

7    dual enclosure, and flexure inventions described and embodied in the '567, '268, '2,726, '950,

8    '724, '6,726 and '427 Patents, summary judgment on each of these claims is warranted.

9                            **IV.    CONCLUSION**

10           Because Shum's unjust enrichment claim is barred by the POL, because Verdiell owed

11   Shum no fiduciary duty, and because Shum cannot show actionable damages, all of his common

12   law claims fail as a matter of law.  Furthermore, because Shum cannot demonstrate by clear and

13   convincing evidence that he was either the sole inventor or a co-inventor of the '567, '268, '950,

14   '724, '6,726, '427 and '2,726 Patents, and the evidence on which Shum relies fails to satisfy the

15   legal standards for corroboration and enablement, Shum's inventorship claims also founder.

16   Accordingly, Verdiell, LightLogic and Intel respectfully request that this Court enter summary

17   judgment in their favor.

18   Dated: April 4, 2008                Respectfully submitted,

19                                       TAYLOR & COMPANY LAW OFFICES, LLP

20

21                                       By: _____

22                                              Stephen E. Taylor

23                                       Attorneys for Defendants INTEL CORPORATION,
                                         LIGHTLOGIC, INC. and JEAN-MARC VERDIELL

24

25

26   [14] In addition, it would require undue experimentation with this model to achieve alignment in the "X" and
     "Y" axes.  Therefore it would *not* "enable someone skilled in the art to make the invention."  *Burroughs*

27   *Wellcome*, 40 F.3d at 1228.

28
                                            33.

TAYLOR & CO.
LAW OFFICES, LLP