1  FOLGER LEVIN & KAHN LLP
Ethan P. Schulman (CSB No. 112466, eschulman@flk.com)
2  Trina D. McAlister (CSB No. 253139, tmcalister@flk.com)
Embarcadero Center West
3  275 Battery Street, 23rd Floor
San Francisco, CA  94111
4  Telephone: (415) 986-2800
Facsimile: (415) 986-2827
5
Attorneys for APRIUS, INC.
6

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      OAKLAND DIVISION

11

| 12  FRANK T. SHUM, | Case No. C 02-3262 DLJ (EMC) |
|---|---|
| 13           Plaintiff, | **NOTICE OF MOTIONS AND MOTIONS BY APRIUS, INC. TO INTERVENE AND TO  DISQUALIFY TOWNSEND AND TOWNSEND AND CREW LLP FROM REPRESENTING PLAINTIFF** |
| 14      v. | |
| 15  INTEL CORPORATION, JEAN-MARC VERDIELL, AND LIGHTLOGIC, INC., | |
| 16           Defendants. | Date:        June 6, 2008 |
| 17 | Time:        2:00 p.m.<br>Place:       Courtroom 1, 4th Floor<br>Judge:       Honorable D. Lowell Jensen |

18

19

20

21

22

23

24

25

26

27

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

1

**TABLE OF CONTENTS**

2

**Page**

3   NOTICE OF MOTION AND MOTIONS OF APRIUS, INC. TO INTERVENE AND TO
        DISQUALIFY TOWNSEND AND TOWNSEND AND CREW LLP FROM
4       REPRESENTING PLAINTIFF ................................................................................ 1

5   QUESTION PRESENTED ............................................................................................ 2

    MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 2
6
        INTRODUCTION ............................................................................................. 2
7
        I.      FACTUAL BACKGROUND .................................................................. 3
8
                A.      Townsend's Representation Of Aprius ....................................... 3
9               B.      Jean-Marc Verdiell Is An Irreplaceable Component Of
                        Aprius's Operations .................................................................... 4
10              C.      Townsend Has Had Extensive Contacts With Mr. Verdiell In His
                        Role As Aprius's Chief Patent Strategist ................................... 4
11              D.      As Shum's Trial Counsel, Townsend Will Inevitably Be Attacking
                        Mr. Verdiell's Credibility And Veracity With Regard To Patenting,
12                      All Contrary to the Interests of Aprius ...................................... 5
                E.      Aprius's Discovery That Townsend Is Acting Adversely To Its
13                      Interests And Its Efforts To Convince Townsend To Withdraw ..... 6

14      II.     APRIUS SHOULD BE GRANTED LEAVE TO INTERVENE FOR THE
                SOLE PURPOSE OF MOVING TO DISQUALIFY TOWNSEND ...................... 7
15
        III.    TOWNSEND MUST BE DISQUALIFIED BECAUSE ITS
16              REPRESENTATION OF SHUM IS DIRECTLY ADVERSE TO THE
                INTERESTS OF APRIUS ....................................................................... 7
17              A.      Aprius And Mr. Verdiell Are A Single Entity For Conflicts
                        Purposes Because There Is A Unity Of Interest Between Them
18                      With Regard To Townsend's Representation Of Shum At Trial ............... 7
                B.      Townsend's Role As Trial Counsel For Shum Is Detrimental To
19                      The Competitive And Economic Interests Of Aprius, And Would
                        Undermine Aprius's Trust And Confidence In Townsend As Its
20                      Patent Counsel ........................................................................ 12
                C.      California Law Prohibits A Law Firm From Acting Adversely To
21                      The Interests Of A Current Client .............................................. 13
                D.      Townsend Cannot Resolve The Conflict By Firing Aprius As A
22                      Client ...................................................................................... 15
23              E.      Townsend's Prior Representation Of Shum In His Appeal To The
                        Federal Circuit Does Not Change The Analysis ......................... 16
24
    CONCLUSION ........................................................................................................... 17
25

26

27

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-i-

APRIUS'S MOT. TO INTERVENE & TO DISQUALIFY
TOWNSEND AND TOWNSEND AND CREW; CASE
NO. C 02-3262 DLJ (EMC)

# TABLE OF AUTHORITIES

| **CASES** | **Page** |
|---|---|

*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton,*
96 Cal. App. 4th 1017 (2002) ...................................................................................... 11, 12

*Anderson v. Eaton,*
211 Cal. 113 (1930) ...................................................................................................... 12, 14

*Arakaki v. Cayetano,*
324 F.3d 1078 (9th Cir. 2003)................................................................................................ 7

*Baxter Diagnostics Inc. v. AVL Scientific Corp.,*
798 F. Supp. 612 (C.D. Cal. 1992).................................................................................... 9, 13

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.,*
264 F. Supp. 2d 914 (N.D. Cal. 2003) ................................................................................ 8, 9

*Committee on Legal Ethics v. Frame,*
433 S.E.2d 579 (W. Va. 1993) ............................................................................................... 9

*Concat LP v. Unilever, PLC,*
350 F. Supp. 2d 796 (N.D. Cal. 2004) ....................................................... 8, 9, 10, 14, 15

*Flatt v. Superior Court,*
9 Cal. 4th 275 (1994) ....................................................................................................... 14, 15

*Hernandez v. Paicius,*
109 Cal. App. 4th 452, (2003) ............................................................................................. 11

*In re California Canners and Growers,*
74 B.R. 336 (N.D. Cal. Bankr. 1987)................................................................................... 16

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft,*
69 Cal. App. 4th 223 (1999) ................................................................................... 8, 9, 10

*Oxford Systems, Inc. v. CellPro, Inc.,*
45 F. Supp. 2d 1055 (W.D. Wash. 1999)............................................................................... 7

*Santa Clara County Counsel Attys. Ass'n v. Woodside,*
7 Cal. 4th 525 (1994) ........................................................................................................... 14

*Teradyne v. Hewlett Packard Co.,*
1991 WL 239940, 20 U.S.P.Q. 2d 1143 (N.D. Cal. 1991) ...................................................... 10

*Truck Ins. Exch. v. Fireman's Fund Ins. Co.,*
Cal. App. 4th 1050 (1992) .................................................................................................... 15

*Unified Sewerage Agency v. Jelco Inc.,*
646 F.2d 1339 (9th Cir. 1981)................................................................................................ 14

## STATUTES AND RULES

Federal Rules of Civil Procedure
24.......................................................................................................................................... 7

## OTHER AUTHORITIES

ABA Standing Comm. on Ethics and Prof'l Resp., Formal Op. 92-367, ABA/BNA
Lawyers' Manual on Professional Conduct § 1001: 149 (1993) ........................................... 11

Vapnek et al., *California Practice Guide:*
*Professional Responsibility* ¶3:187 (Rutter 2007) ............................................................... 14

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-ii-

APRIUS'S MOT. TO INTERVENE & TO DISQUALIFY
TOWNSEND AND TOWNSEND AND CREW; CASE
NO. C 02-3262 DLJ (EMC)

**NOTICE OF MOTION AND MOTIONS OF APRIUS, INC. TO INTERVENE AND TO DISQUALIFY TOWNSEND AND TOWNSEND AND CREW LLP FROM REPRESENTING PLAINTIFF**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 6, 2008, at 2:00 p.m. in Courtroom 1 of the above-entitled Court, located at 1301 Clay Street, Oakland, California 94612, before the Honorable D. Lowell Jensen, Aprius, Inc. ("Aprius") will move this Court for an order permitting it to intervene in this action for the sole purpose of moving to disqualify the law firm of Townsend and Townsend and Crew LLP ("Townsend") from representing plaintiff Frank T. Shum ("Shum") in this action, and for an order disqualifying Townsend from representing Shum in this action.

The motion to intervene is made pursuant to Rule 24 of the Federal Rules of Civil Procedure on the grounds that Aprius has an interest relating to Townsend's representation of plaintiff in this action, and is so situated that such representation may as a practical matter impair or impede Aprius's ability to protect that interest, and that the existing parties to the action do not adequately represent that interest. Aprius's interest is in vindicating the duties of loyalty and confidentiality owed to it by Townsend, which is Aprius's current patent counsel. Townsend's continued representation of Shum in this action may impair or impede Aprius's ability to protect that interest because the defendants in the action include Jean-Marc Verdiell -- Aprius's founder, Chief Executive Officer, principal stockholder, and director -- against whom Shum has asserted claims against Verdiell for breach of fiduciary duty, fraud, fraudulent concealment, breach of contract and unjust enrichment; and because in prosecuting those claims, Townsend is likely to call Mr. Verdiell as an adverse witness and otherwise take positions adverse to Aprius's interests. The existing parties do not adequately represent Aprius's interest in vindicating the duties owed to it by Townsend, its current counsel.

The motion to disqualify is made pursuant to Local Rule 11-4(a)(1), the California Rules of Professional Conduct, and the Court's inherent power to disqualify counsel, on the grounds that without Aprius's informed written consent, Townsend, Aprius's current patent counsel, has at the same time accepted as a client Shum, the plaintiff in this action, whose interest in this action is adverse to Aprius's interests.

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

APRIUS'S MOT. TO INTERVENE & TO DISQUALIFY
TOWNSEND AND TOWNSEND AND CREW; CASE
NO. C 02-3262 DLJ (EMC)

1    These motions will be based upon this Notice of Motions and Motions, the accompanying

2    Memorandum of Points and Authorities and Declarations of Jean-Marc Verdiell, Stephen E.

3    Taylor and Ethan P. Schulman filed concurrently herewith, the pleadings, records and files in this

4    action, and such other and further written and oral evidence as may be presented in connection

5    with the hearing on these Motions.

6

7    Dated: May _____, 2008                         FOLGER LEVIN & KAHN LLP

8

9                                                   Ethan P. Schulman
                                                    Attorneys for APRIUS, INC.

10

11                              **QUESTION PRESENTED**

12        Whether Townsend and Townsend and Crew LLP, Aprius's current patent counsel, should

13   be disqualified from representing plaintiff Frank Shum in this action against Jean-Marc Verdiell,

14   Aprius's founder, CEO, principal stockholder and director, on the ground that such representation

15   is adverse to Aprius's interests and therefore violates Townsend's duties of loyalty and

16   confidentiality to Aprius.

17                      **MEMORANDUM OF POINTS AND AUTHORITIES**

18                                  **INTRODUCTION**

19        By this motion, Aprius Inc. ("Aprius") respectfully requests that this Court disqualify the

20   law firm of Townsend and Townsend and Crew LLP ("Townsend") from representing plaintiff in

21   this action. Townsend has been Aprius's patent counsel since August 2006, and is deeply

22   involved in developing Aprius's patent portfolio and overall patent strategy.  In doing that work,

23   Townsend has worked closely with Aprius's Chief Executive Officer, Jean-Marc Verdiell, who is

24   a defendant in this action.

25        Townsend recently substituted into this case as lead trial counsel for plaintiff Frank Shum.

26   In that role Townsend will be seeking to demonstrate that while employed at LightLogic, Inc.

27   ("LightLogic"), Mr. Verdiell fraudulently claimed sole inventorship of seven patents that were

28   actually invented by Shum, succeeded in misleading both the United States Patent and Trademark

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-2-

APRIUS'S  MOT. TO INTERVENE & TO DISQUALIFY
TOWNSEND AND  TOWNSEND AND CREW; CASE
NO. C 02-3262 DLJ (EMC)

1 Office ("PTO") and the investors who backed LightLogic, and therefore owes Shum hundreds of

2 millions of dollars in damages. In so doing, Townsend will be attacking one of Aprius's key

3 assets. Mr. Verdiell is not just the Chief Executive Officer of Aprius, he is also: (a) its founder,

4 principal stockholder, director, and lead fundraiser; (b) its Acting Chief Technology Officer and

5 chief patent strategist; and (c) a key inventor of several of the inventions that Aprius is in the

6 process of patenting — with Townsend's assistance. Yet Townsend will attempt to establish at

7 trial that Mr. Verdiell misled the PTO and others, and that his prior patent portfolio, indeed his

8 entire prior business, was founded on those alleged misrepresentations. That position obviously

9 threatens direct harm to Townsend's attorney-client relationship with Aprius. It also threatens

10 direct injury to Aprius's economic interests, both by hampering the prosecution and defense of

11 the patent portfolio that Townsend has been helping Aprius to build and by threatening Aprius's

12 access to additional investment capital. This proposed representation is unseemly and prohibited

13 by California law. Townsend must be disqualified to prevent it from acting adversely to Aprius's

14 economic and other interests.

15 **I.    FACTUAL BACKGROUND**

16     **A.    Townsend's Representation Of Aprius.**

17     Aprius is a privately-held start-up company that was incorporated in Delaware on June 26,

18 2006. Declaration of Jean-Marc Verdiell ("Verdiell Decl.") ¶3. Aprius is developing products in

19 the area of high-speed computer interconnects using optoelectronic technology. *Id.* A key

20 element of Aprius's business strategy is to maximize its return on its intellectual property,

21 especially its patent portfolio. *Id.* ¶4. Townsend has represented Aprius as patent counsel since

22 August 14, 2006. *Id.* Aprius has worked very closely with Townsend on the development of

23 Aprius's patent portfolio, and Townsend has filed 9 patent applications on Aprius's behalf, one of

24 which has issued. *Id.* ¶5.

25     Aprius does not wish to lose Townsend's valuable services as its patent counsel.

26 Townsend's continued work for Aprius is very important to the company's intellectual property

27 strategy, which is now at a critical stage. *Id.* ¶8. Townsend has recently filed an important series

28 of provisional patent applications for Aprius with the PTO. *Id.* Townsend needs to take

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-3-

APRIUS'S MOT. TO INTERVENE & TO DISQUALIFY
TOWNSEND AND TOWNSEND AND CREW; CASE
NO. C 02-3262 DLJ (EMC)

1    additional important strategic steps in very short order. *Id.* To lose Townsend as patent counsel

2    at this stage would significantly slow Aprius's progress and would require Aprius to incur

3    substantial additional expense to retain new counsel and bring them up to speed on the relevant

4    legal, technological and business issues. *Id.*

5         **B.    Jean-Marc Verdiell Is An Irreplaceable Component Of Aprius's Operations.**

6         Mr. Verdiell is Aprius's Chief Executive Officer, its acting Chief Technology Officer, one

7    of its three founders and the largest holder of its common shares. Verdiell Decl. ¶1. Mr.

8    Verdiell took the lead role among the founders in obtaining funding for Aprius from its initial

9    venture capitalist investors. *Id.* ¶3. Mr. Verdiell is also Aprius's chief patent strategist and is

10   listed as an inventor on three patent applications in Aprius's patent portfolio. *Id.* ¶¶3, 5, 6. Mr.

11   Verdiell's reputation as an inventor and a businessman is critical to Aprius's success and its

12   ability to attract investors and capital. *Id.* ¶10.

13        **C.    Townsend Has Had Extensive Contacts With Mr. Verdiell In His Role As**
          **Aprius's Chief Patent Strategist.**
14

15        Beginning in June 2006, Mr. Verdiell and Aprius's other two founders conducted lengthy

16   interviews with four or five leading firms before finally selecting Robert Colwell of Townsend as

17   Aprius's patent counsel. Verdiell Decl. ¶4. Mr. Verdiell signed the retention agreement with

18   Townsend. *Id.* Since August 2006, Mr. Verdiell has worked very closely with Townsend on the

19   development of Aprius's patent portfolio. *Id.* ¶5. Mr. Verdiell has consulted extensively with

20   Townsend in connection with the 9 patent applications Townsend has filed on Aprius's behalf;

21   Mr. Verdiell participated personally in drafting, reviewing and editing those applications. *Id.* Mr.

22   Verdiell also regularly reviews Aprius's patent portfolio and strategy with Townsend, and is

23   involved in or monitors day-to-day correspondence between Aprius and Townsend concerning

24   patent matters. *Id.* Mr. Verdiell and Townsend's attorneys have had numerous discussions about

25   patent enforcement strategies, including litigation options and how to respond to suits by

26   competitors. *Id.* ¶6. As a consequence of these multiple contacts, Aprius's lawyers at Townsend

27   have a clear sense of Mr. Verdiell's technical and inventive skills, the way he thinks about and

28   executes patent strategy, his attitudes about and approach to litigation, and his personal standards

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-4-

APRIUS'S  MOT. TO INTERVENE & TO DISQUALIFY
TOWNSEND AND  TOWNSEND AND CREW; CASE
NO. C 02-3262 DLJ (EMC)

1    of integrity.  *Id.*

2    **D.    As Shum's Trial Counsel, Townsend Will Inevitably Be Attacking Mr.
          Verdiell's Credibility And Veracity With Regard To Patenting, All Contrary
3          to the Interests of Aprius.**

4          Shum's key allegations are that Mr. Verdiell: (1) fraudulently passed himself off to

5    investors and the PTO as the sole inventor of seven patents in the area of optoelectronic

6    technology that Shum now claims to have developed; (2) formed LightLogic to exploit that

7    misappropriated technology; and (3) sold LightLogic to Intel at an enormous profit.  Fourth

8    Amended Complaint ¶¶2-4, 13-17, 21-23, 30.  [Docket No. 194]  Shum seeks correction of

9    inventorship on the seven patents to reflect Shum as the inventor, and at least $409 million in

10   damages for fraud, breach of fiduciary duty and unjust enrichment.  *Id.; see also* Second

11   Amended Complaint ¶¶66-69 [Docket No. 52]  (unjust enrichment claim; reinstated by Federal

12   Circuit).

13         After a five-week bench trial, this Court has already ruled in Mr. Verdiell's favor on all

14   issues.  Given the nature of the claims, Townsend will necessarily focus on Mr. Verdiell's

15   patenting behavior, the same area for which Townsend provides legal advice to Aprius.  At trial,

16   Townsend will:

17         •    attempt to establish that Mr. Verdiell misled the PTO;

18         •    attack Mr. Verdiell's competence as an inventor;

19         •    assert that Mr. Verdiell misled investors and the PTO in connection with the

20              LightLogic patents; and

21         •    cross-examine Mr. Verdiell by trying to impugn his veracity and credibility.

22   Although Aprius has no reason to believe that Townsend will succeed in its efforts, such conduct

23   is unseemly and clearly adverse to Aprius's economic interests.  Townsend's efforts to undermine

24   Mr. Verdiell's credibility as an inventor of optoelectronic patents could make it more difficult for

25   Aprius to raise further capital, and could even create difficulties for Aprius in obtaining and

26   enforcing its patent portfolio.  Verdiell Decl. ¶¶8-10.

27         Contrast Townsend's conduct in this case to the work it has done and is currently doing

28   for Aprius.  As Aprius's counsel, one of Townsend's objectives is to take Mr. Verdiell's

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-5-                    APRIUS'S  MOT. TO INTERVENE & TO DISQUALIFY
                              TOWNSEND AND  TOWNSEND AND CREW; CASE
                                          NO. C 02-3262 DLJ (EMC)

1   inventions and turn them into important legal rights for Aprius.  In filing patent applications for

2   Aprius, Townsend has undertaken a professional obligation to support and defend the credibility

3   of those applications, including the credibility of Mr. Verdiell as a named inventor, patent

4   draftsman and chief patent strategist.  However, in this litigation, Townsend's goal is to show that

5   Mr. Verdiell is not credible in those roles, and indeed that he affirmatively defrauded the PTO.

6       **E.     Aprius's Discovery That Townsend Is Acting Adversely To Its Interests And
            Its Efforts To Convince Townsend To Withdraw.**

7

8       Following the issuance of the Federal Circuit's mandate on November 13, 2007, the Court

9   set an in person status conference for December 12, 2007.  Declaration of Stephen E. Taylor

10  ("Taylor Decl.") ¶2.  Plaintiff's counsel thereafter contacted the Court to move the status

11  conference date, without consultation with defense counsel, and took the status conference off-

12  calendar.  *Id.* ¶3 & Ex. A.  Thereafter, Verdiell's counsel communicated with Mr. wallach and

13  members of the Shopoff & Cavallo firm on numerous occasions in December 2007 and January

14  2008 in an attempt to work with Mr. wallach's changing schedule and to agree upon a date for the

15  initial status conference.  *Id.*  ¶¶3-7 & Exs. A-D.

16      On February 5, 2008, Paul Kirsch of Townsend filed a notice of substitution of counsel,

17  stating that Townsend would be appearing as lead trial counsel for Shum.  *Id.* ¶9 & Ex. E.  Taylor

18  & Company Law Offices represents Mr. Verdiell in this lawsuit.  At the time that Taylor &

19  Company received Townsend's notice of appearance, it did not know that Townsend represented

20  Aprius on patent matters.  *Id.* ¶11.

21      On March 21, 2008, Taylor & Company sent Mr. Verdiell an update on developments in

22  this litigation, which, among other things, reported that Townsend had entered an appearance as

23  lead trial counsel for Shum.  Verdiell Decl. ¶7.  Mr. Verdiell immediately alerted Taylor & Co. to

24  the fact that Townsend represented Aprius in patent matters.  *Id.*  Shortly thereafter, Taylor &

25  Company raised the matter of the conflict of interest with counsel for Aprius.  *Id.*

26      On March 28, 2008, Stephen Taylor of Taylor & Co. wrote to Mr. Kirsch to suggest that

27  Townsend's representation of Aprius created a conflict that disqualified Townsend from acting as

28  trial counsel in the Shum matter.  Taylor Decl. ¶12 & Ex. F.  On April 2, 2008, James Gilliland of

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-6-

1    Townsend replied to Taylor's March 28 letter, and informed Taylor that Townsend did not

2    believe that a conflict existed. *Id.* ¶13 & Ex. G.[1] Gilliland further indicated that Townsend

3    would be willing to fire Aprius as a client in order to resolve Aprius's concerns. *Id.*

4          Aprius then retained counsel to assist it in convincing Townsend to withdraw from this

5    litigation. On April 16, 2008, Aprius's outside counsel wrote to Gilliland to explain how

6    Townsend's representation of Shum in this litigation is directly adverse to Aprius's interests.

7    Declaration of Ethan P. Schulman ("Schulman Decl.") ¶2 & Ex. A. Aprius's outside counsel

8    asked Townsend to voluntarily withdraw from its representation of Shum in this action. *Id.*

9    Townsend has declined to withdraw. *Id.* Ex. B.

10   **II.   APRIUS SHOULD BE GRANTED LEAVE TO INTERVENE FOR THE SOLE
          PURPOSE OF MOVING TO DISQUALIFY TOWNSEND.**
11

12         Aprius should be granted leave to intervene for the sole purpose of moving to disqualify

13   Townsend. Such limited intervention is appropriate because Aprius otherwise has no means of

14   vindicating its interest in ensuring that Townsend not violate its duties of loyalty and

15   confidentiality to Aprius, its client, an interest which the parties to the action do not share. Fed.

16   R. Civ. P. 24; *see Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (stating that Rule 24

17   is liberally construed); *Oxford Systems, Inc. v. CellPro, Inc.*, 45 F. Supp. 2d 1055, 1058 (W.D.

18   Wash. 1999) (nonparty intervened in securities fraud action for the sole purpose of moving to

19   disqualify law firm, which had represented it in prior patent suit).

20   **III.  TOWNSEND MUST BE DISQUALIFIED BECAUSE ITS REPRESENTATION OF
          SHUM IS DIRECTLY ADVERSE TO THE INTERESTS OF APRIUS.**
21

22         **A.    Aprius And Mr. Verdiell Are A Single Entity For Conflicts Purposes Because
                There Is A Unity Of Interest Between Them With Regard To Townsend's
                Representation Of Shum At Trial.**
23

     Townsend refuses to withdraw from its representation of Shum in this action based on its
24
     contention that it represents Aprius, not Mr. Verdiell. But that argument has no merit in the
25

26         [1]Deplorably, Mr. Gilliland asserted that Mr. Verdiell's statement that he had learned of the
     conflict for the first time on March 21, 2008 was "very hard to credit." Taylor Decl., Ex. G at 1.
27   Townsend's expression of disbelief in Mr. Verdiell's explanation is a vivid illustration of the
     conflict position in which it finds itself.

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

APRIUS'S MOT. TO INTERVENE & TO DISQUALIFY
                                                    TOWNSEND AND TOWNSEND AND CREW; CASE
                                                    NO. C 02-3262 DLJ (EMC)

1    situation before the Court.  California law does not allow a law firm to undertake representation

2    adverse to someone who is an *affiliate* of a firm client where the non-client affiliate and the client

3    share a "unity of interests" such that they should be considered to be a single entity for conflicts

4    purposes.  *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co*., 264 F. Supp. 2d 914,

5    920-24 (N.D. Cal. 2003) ("*Argonaut*"); *Morrison Knudsen Corp. v. Hancock, Rothert &*

6    *Bunshoft*, 69 Cal. App. 4th 223, 238-53 (1999); *see also Concat LP v. Unilever, PLC*, 350 F.

7    Supp. 2d 796, 818-19 (N.D. Cal. 2004).  One key question for a unity of interest analysis is

8    whether a law firm's acceptance of a representation adverse to the non-client affiliate "reasonably

9    diminishes the [client's] 'level of confidence and trust in [that] counsel.'"  *Argonaut*, 264 F. Supp.

10   2d at 922.

11        In *Argonaut*, the law firm represented an insurance company, and wanted to be adverse to

12   the corporate parent of the insurance company.  The court disqualified the law firm from doing so

13   because:  (1) the financial impact of the litigation against the parent would directly affect the

14   subsidiary and (2) there was nearly complete overlap between the management and claims staff of

15   the parent and the subsidiary.  *Id.* at 922-24.  The court found this latter fact especially significant

16   because, since the parent and subsidiary had the same management and the same people handling

17   claims, "from the standpoint of the law's concern for client's 'confidence and trust in counsel,'

18   here there is, for all practical purposes, but *one* client on both sides of [the ultimately disqualified

19   law firm's] representation."  *Id.* at 924 (citation omitted).

20        In *Morrison Knudsen*, a law firm had previously represented a construction company on

21   various matters.  The law firm also had a continuing engagement with the insurance underwriters

22   for that construction company to monitor the work other law firms did as they defended the

23   construction company from third-party claims.  While that monitoring work was ongoing, the law

24   firm sought to be adverse to a subsidiary of the construction company. The trial court disqualified

25   the law firm from being adverse to the subsidiary, and the Court of Appeal affirmed, even though

26   the law firm had never represented the subsidiary.  *Morrison Knudsen*, 69 Cal. App. 4th at 226-

27   27.  The *Morrison Knudsen* panel expressly rejected the idea that corporate affiliates need to be

28   alter egos in order for a unity of interest to be exist.  *Id.* at 248.  Instead the court focused on the

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-8-

1   "practical consequences of the attorney's relationship with the corporate family" and opined that

2   disqualification is called for where "that relationship may give the attorney a significant practical

3   advantage in a case against an affiliate." *Id.* at 253. Among the factors that the court identified as

4   supporting disqualification based on a unity of interest analysis were: (1) the fact that the law

5   firm could have gained insight into the non-client subsidiary's litigation philosophy from the

6   firm's prior work with the client parent corporation; (2) the existence of overlapping personnel

7   between the client parent and the non-client subsidiary, which might lead to the parent's

8   personnel being called as witnesses; and (3) the possibility that the law firm received confidential

9   information during its involvement in the parent's legal affairs that would be relevant to the issues

10   in the litigation against the subsidiary. *Id.* at 245-48.

11        *Concat* establishes that the unity of interest analysis is not limited just to "corporate"

12   affiliates, but also extends to close relationships between corporate entities and their individual

13   constituents, such as officers, directors and shareholders. In *Concat*, the district court disqualified

14   a law firm from being adverse to Concat, a limited partnership, because the law firm had

15   performed estate planning work for Concat's managing partner (Winchell), who held a significant

16   ownership interest in Concat and had invented some of its intellectual property. The district court

17   concluded that Concat, a non-client, had standing to disqualify the law firm that represented

18   Winchell, because the interests of Concat and Winchell were so closely aligned and intertwined

19   that the representation adverse to Concat was in substance adverse to Winchell as well. The

20   Court found that because of Winchell's leading role in the company, his affairs were "inextricably

21   intertwined with the [company's] business and financial affairs." 350 F. Supp. 2d at 819; *see also*

22   *Baxter Diagnostics Inc. v. AVL Scientific Corp.*, 798 F. Supp. 612, 616 (C.D. Cal. 1992) (parent

23   company and subsidiary "inextricably intertwined" for conflicts purposes where the "injury to its

24   holding company surely flow[ed] to [the subsidiary]").[2]

25

26       [2] Other jurisdictions also recognize that the overlapping interests of individuals and affiliated organizations can justify treating action adverse to one as adverse to the other. *E.g.,*
27   *Committee on Legal Ethics v. Frame*, 433 S.E.2d 579, 581-84 (W. Va. 1993) (attorney who represented corporation's controlling shareholder individually could not act adversely to corporation in unrelated litigation in which shareholder appeared as a witness and was cross-
28   (Continued…)

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-9-

APRIUS'S  MOT. TO INTERVENE & TO DISQUALIFY
TOWNSEND AND  TOWNSEND AND CREW; CASE
NO. C 02-3262 DLJ (EMC)

1    Here, the relationship between Aprius and Mr. Verdiell shares virtually all of the

2    characteristics that *Argonaut, Morrison Knudsen* and *Concat* found to establish a unity of interest.

3    *First*, there is substantial overlap between Aprius's management team and the Aprius "affiliate"

4    — Mr. Verdiell.  As *Argonaut* recognized, a client cannot be expected to maintain trust and

5    confidence in its law firm when that law firm takes a position adverse to that client's affiliate and

6    the very same people manage both the client and the affiliate.  *Argonaut*, 264 F. Supp. 2d at 924.

7    Here, it would be unthinkable that Aprius could maintain trust and confidence in the Townsend

8    firm's patent counsel when other attorneys from that firm are attacking the patenting skills and

9    veracity of Aprius's CEO, acting CTO, and chief patent strategist, who plays a dominant role in

10   Aprius's relationship with Townsend.  Townsend's undivided duty of loyalty to Aprius simply

11   does not permit it to destroy its professional relationship with Aprius by attacking Aprius

12   personnel who are key to that relationship.  Indeed, there is authority in this district that this

13   overlap, standing alone, is sufficient to require Townsend's disqualification.  *Teradyne v. Hewlett*

14   *Packard Co.*, 1991 WL 239940, 20 U.S.P.Q. 2d 1143, 1146 (N.D. Cal. 1991) (finding that the

15   nonclient corporation's "control and supervision of the legal affairs" of its client affiliate

16   "represents a significant identity of legal interest" and therefore justifies treating them as a single

17   client for conflict purposes).

18   The risk of harm to the attorney-client relationship here is greater than in either *Argonaut*

19   or *Teradyne*, because client personnel in charge of the attorney-client relationship will be forced

20   to act as witnesses and subjected to hostile cross examination in litigation against the non-client

21   affiliate.  *See Morrison Knudsen*, 69 Cal. App. 4th at 247 (noting that possibility as a factor

22   weighing in favor of disqualification).  Here, Mr. Verdiell's appearance as a witness is a

23   *certainty*, as is the fact that he will be cross-examined on topics related to patenting strategy and

24   actions before the PTO.[3]  The fact that a Townsend lawyer is aggressively cross-examining

25   examined; court rejected attorneys' position that "there was no conflict of interest because their
     firm had sued the corporate entity rather than [the shareholder] personally").

26

27   [3]This is likely also true of another Aprius founder, Marc Epitaux, who was also listed as
     an inventor on one of the LightLogic patents and has been deposed in the Shum Litigation.
     Verdiell Decl. ¶9.

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-10-

APRIUS'S  MOT. TO INTERVENE & TO DISQUALIFY
TOWNSEND AND  TOWNSEND AND CREW; CASE
NO. C 02-3262 DLJ (EMC)

1    Aprius's chief client contact with Townsend in an effort to undermine his credibility and status as

2    an inventor will necessarily damage Aprius's confidence in Townsend.  Such conduct cannot

3    possibly be consistent with Townsend's undivided duty of loyalty to Aprius.  *See, e.g.,*

4    *Hernandez v. Paicius*, 109 Cal. App. 4th 452, 466-67 (2003) ("The spectacle of an attorney

5    skewering her own client on the witness stand in the interest of defending another client demeans

6    the integrity of the legal profession and undermines confidence in the attorney-client

7    relationship").[4]

8         *Second*, the financial impact of the *Shum* litigation on Aprius is direct and significant

9    because Mr. Verdiell is critical to Aprius's future in at least three ways — as a key officer and

10   manager, as a technologist and patent strategist, and as a fundraiser.  Because Aprius's fate is so

11   tied to Mr. Verdiell's reputation, Townsend's attacks on Mr. Verdiell's competence, veracity and

12   credibility, especially with regard to patents and patenting strategy, are tantamount to Townsend

13   attacking the credibility of Aprius's core assets, thereby threatening to impair both the viability of

14   its patent portfolio and its access to capital.

15        *Third*, courts do not allow attorneys to accept representation adverse to the affiliates of

16   their current clients where the attorneys may have gained information in the course of

17   representing their current client that could be used against the affiliate.  Regardless of the

18   attorneys' best intentions, the law says that they should not put themselves in a position where

19   they are tempted to use information gained from a client to gain a practical advantage against an

20   affiliate of that client.  *See, e.g., American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*,

21   96 Cal. App. 4th 1017, 1043 (2002) (rules of professional conduct exist to prevent clients from

22   being placed in a position where their attorney is the arbiter of what information can be used in

23

24        [4]The ABA Standing Committee on Ethics and Professional Responsibility has expressed
the view that such a situation almost invariably will give rise to a disqualifying conflict:  "A
25   lawyer who in the course of representing a client examines another client as an adverse witness in
a matter unrelated to the lawyer's representation of the other client, or conducts third party
26   discovery of the client in such a matter, will likely face a conflict that is disqualifying in the
absence of appropriate client consent.  Any such disqualification will also be imputed to other
27   lawyers in the lawyer's firm."  Formal Op. 92-367, ABA/BNA Lawyers' Manual on Professional
Conduct § 1001: 149 (1993).

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

                              -11-          APRIUS'S  MOT. TO INTERVENE & TO DISQUALIFY
                                            TOWNSEND AND  TOWNSEND AND CREW; CASE
                                            NO. C 02-3262 DLJ (EMC)

1    situations where a conflict may arise).[5]

2         In their role as Aprius's patent counsel, Townsend's attorneys have worked extensively

3    with Mr. Verdiell, Townsend's litigation adversary.  Those attorneys have had the opportunity to

4    closely observe not only Mr. Verdiell's skill as an inventor, his patenting practices, and his

5    personal integrity – all central issues in the Shum case – but also his demeanor and reactions to

6    questioning.  Verdiell Decl. ¶¶5-6.  This information would be invaluable to Townsend's

7    litigation attorneys in their preparation for trial and the cross-examination of Mr. Verdiell.  It

8    would be unfair to both Aprius and Mr. Verdiell – and would certainly destroy Aprius's faith in

9    Townsend as its patent counsel – if Townsend had the opportunity to use this intelligence

10   gathered in the course of its representation of Aprius against Mr. Verdiell.  It is a violation of

11   Townsend's professional duties to put itself in a position where it could be tempted to do so.

12   **B.    Townsend's Role As Trial Counsel For Shum Is Detrimental To The
         Competitive And Economic Interests Of Aprius, And Would Undermine**
13       **Aprius's Trust And Confidence In Townsend As Its Patent Counsel.**

14        It is hard to imagine a representation more adverse to Aprius than Townsend's

15   representation of Shum in this lawsuit.  The crux of Shum's claims are his allegations that Mr.

16   Verdiell is not competent as an inventor and that Mr. Verdiell purposely misled investors and the

17   PTO by claiming to be the inventor of technology that Shum now alleges he invented.

18   Accordingly, Townsend's prosecution of Shum's claims will inevitably hinge on attacking the

19   credibility and veracity of Mr. Verdiell — Aprius's founder, Chief Executive Officer and chief

20   patent strategist — with regard to patenting strategy, *the very same subject matter for which*

21   *Townsend currently provides services.*

22        Mr. Verdiell's reputation is critical to Aprius's success — he is a key Aprius executive,

23   and the source of much of Aprius's intellectual property.  Verdiell Decl. ¶10.  Aprius does not

24

25        [5]*American Airlines* notes that the rules against adverse representations are "designed not
     alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the
26   honest practitioner from putting himself in a position where he may be required to choose
     between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to
27   enforce to their full extent the rights of the interest which he should alone represent."  *American
     Airlines*, 96 Cal. App. 4th at 1043 (quoting *Anderson v. Eaton,* 211 Cal. 113, 116 (1930)).

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-12-

APRIUS'S  MOT. TO INTERVENE & TO DISQUALIFY
TOWNSEND AND  TOWNSEND AND CREW; CASE
NO. C 02-3262 DLJ (EMC)

1  want its patent counsel to take any action that could undermine Mr. Verdiell's reputation as an

2  inventor. Townsend's attempt to show that Mr. Verdiell was dishonest in his patenting for

3  LightLogic would be especially damaging to Aprius given the importance to Aprius's future of

4  patents where Mr. Verdiell is an inventor or has overseen the claims drafting. Townsend's efforts

5  in this litigation, if successful, could cast doubt over all of Aprius's patents and pending patent

6  applications. Mr. Verdiell's reputation and goodwill in the investment community, both

7  important assets to Aprius, are derived both from his personal integrity and his past success in

8  developing LightLogic and selling it to Intel. Townsend's attacks on his reputation and goodwill

9  would be detrimental to Aprius.

10  Townsend's representation of Shum raises other problems for Aprius as well. *First,* Marc

11  Epitaux, another Aprius founder, is also implicated in Shum's claims because he is listed as an

12  inventor on one of the LightLogic patents. Verdiell Decl. ¶9. Epitaux has already been subjected

13  to an adversarial deposition seeking to establish that he, too, intentionally misrepresented his

14  status as an inventor to the PTO. *Id.*

15  *Second,* Mr. Verdiell is certain to be, and Mr. Epitaux is likely to be, a witness at the

16  retrial of the Shum claims, and will thus be subject to cross-examination by Townsend as trial

17  counsel. The prospect of a law firm cross-examining key executives of one of its current clients

18  in an attempt to undermine their credibility should be anathema, especially where the subject of

19  the cross-examination (such as the patenting practices at issue in the Shum claims) is directly

20  relevant to the firm's representation of that second client.[6]

21      **C.    California Law Prohibits A Law Firm From Acting Adversely To The Interests Of A Current Client.**

22

23  "The most fundamental quality of the attorney-client relationship is the absolute and

24

25  [6]Consider also that Townsend's own patent attorneys are, through their representation of Aprius, in an excellent position to testify as to Verdiell's skill and integrity as an inventor and patent strategist. If Verdiell calls them as witnesses to testify to his credibility, how will they be able to do so without violating Townsend's duty of undivided loyalty to either Aprius or Shum? *Cf. Baxter Diagnostics Inc.*, 798 F. Supp. at 616 (attorneys for defendants who had previously represented plaintiff's parent company were disqualified where*, inter alia*, "a real possibility" existed that attorneys would be called to testify).

26

27

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-13-

APRIUS'S MOT. TO INTERVENE & TO DISQUALIFY TOWNSEND AND TOWNSEND AND CREW; CASE NO. C 02-3262 DLJ (EMC)

1   complete fidelity owed by the attorney to his or her client." Vapnek et al., *California Practice*

2   *Guide: Professional Responsibility* ¶3:187 (Rutter 2007). "It is . . . an attorney's duty to *protect*

3   *his client in every possible way*, and it is a violation of that duty for him to assume a position

4   *adverse or antagonistic* to his client without the latter's free and intelligent consent . . . By virtue

5   of this rule an attorney is precluded from assuming *any relation* which would prevent him from

6   *devoting his entire energies to his client's interests*." *Santa Clara County Counsel Attys. Ass'n v.*

7   *Woodside*, 7 Cal. 4th 525, 548 (1994) (quoting *Anderson v. Eaton*, 211 Cal. 113, 116 (1930))

8   (emphasis added).

9          Because of a lawyer's duty of undivided loyalty to his clients, California courts have

10   adopted a strict *per se* rule of disqualification in cases where attorneys act adversely to a current

11   client.  The prohibition against adversity to a current client applies whether or not the matter

12   adverse to the current client is related to the matters on which the attorney represents that client.

13   *Concat*, 350 F. Supp. at 815; *see also Flatt v. Superior Court*, 9 Cal. 4th 275, 284 (1994) (holding

14   that "[e]ven though the simultaneous representations may have *nothing* in common, and there is

15   *no* risk that confidences to which counsel is a party in the one case have any relation to the other

16   matter, disqualification may nevertheless be *required*").  Indeed, in all but a few instances, the

17   rule of disqualification for adversity to a current client is a *per se* or "automatic" one. *Unified*

18   *Sewerage Agency v. Jelco Inc.*, 646 F.2d 1339, 1345 (9th Cir. 1981) (holding that disqualification

19   of a law firm based upon representation of a client in a lawsuit against an existing client requires

20   no showing of specific "adverse effect" resulting from such representation).  The rationale for this

21   rule is that clients would lose trust and confidence in their attorneys were they to find them as

22   adversaries in other matters:  a client "cannot long be expected to sustain the level of confidence

23   and trust in counsel that is one of the foundations of the professional relationship" if that counsel

24   undertakes to represent a litigation adversary of the client, even on a wholly unrelated matter.

25   *Flatt*, 9 Cal. 4th at 285.  For the reasons discussed above, Townsend's representation of Shum in

26   this litigation, which is adverse to Aprius and Mr. Verdiell, fits precisely into the *per se* rule of

27   disqualification.

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

APRIUS'S  MOT. TO INTERVENE & TO DISQUALIFY
TOWNSEND AND  TOWNSEND AND CREW; CASE
NO. C 02-3262 DLJ (EMC)

1

**D.     Townsend Cannot Resolve The Conflict By Firing Aprius As A Client.**

2

When Townsend's violation of its duty of loyalty to Aprius was brought to Townsend's

3

attention, Townsend offered to withdraw from its representation of Aprius.  But a breach of the

4

duty of loyalty to an existing client cannot be cured by the expedient of withdrawing from the

5

representation of that client. *Flatt*, 9 Cal. 4th at 288 (discussing the so-called "hot potato" rule);

6

*see also Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1057 (1992) (same).

7

If the contrary were true, attorneys could simply abandon one client in favor of a more lucrative

8

second client when that second client sought to engage them in a matter adverse to the first

9

client's interests.  Moreover, withdrawal could not cure the breach of the duty of loyalty here,

10

because even if Aprius were to become a former client, Townsend's attacks on Mr. Verdiell

11

would continue to have a potential adverse effect upon Aprius's present patent portfolio, in effect

12

undermining the work that Townsend has already been paid for performing for Aprius.  Such a

13

disqualifying conflict between two clients requires that the firm be disqualified from continuing

14

to act for Shum in this action.[7]

15

Despite Townsend's ill-considered attempt to represent Shum at trial against one of

16

Aprius's senior executives, Aprius still wishes to retain Townsend as its patent counsel.  Aprius

17

has worked closely with Townsend on patent matters for nearly two years, and has invested

18

significant time and resources in developing a patent strategy, in which Townsend is an important

19

partner.  Aprius's patent strategy is at a critical stage, and losing Townsend as patent counsel at

20

this time would cause delays and/or reputational damage that would be highly detrimental to

21

Aprius's business.  However, Aprius cannot stand idly by while Townsend takes positions

22

detrimental to Aprius's interests in the Shum litigation, and therefore seeks Townsend's

23

disqualification.

24

25

26

27

[7]Likewise, the creation of an ethical wall between the lawyers working on the two matters, as Townsend has proposed, "cannot . . . cure a law firm's breach of its duty of loyalty to its client."  *Concat*, 350 F. Supp. 2d at 822 (citation omitted).

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-15-

APRIUS'S  MOT. TO INTERVENE & TO DISQUALIFY
TOWNSEND AND  TOWNSEND AND CREW; CASE
NO. C 02-3262 DLJ (EMC)

**E.     Townsend's Prior Representation Of Shum In His Appeal To The Federal Circuit Does Not Change The Analysis.**

After Shum appealed this Court's trial decisions to the Federal Circuit, Townsend substituted into the appeal to represent Shum on the appeal in June 2006.  However, Mr. Verdiell did not become aware that Townsend was representing Shum until much later — on March 21, 2008.  Verdiell Decl. ¶7.  The reason for this delayed discovery is that, once Mr. Mr. Verdiell prevailed on all of Shum's claims in the trial court, he thought that the litigation was essentially over for his purposes, and he turned his attention to running Aprius.  *Id.*  At some point, Taylor and Co. forwarded Shum's briefs in the Federal Circuit appeal to Mr. Verdiell, as well as the Court of Appeals' opinion.  Although the briefs and opinion listed Townsend as counsel, Taylor & Co. did not draw attention to that fact (and had no reason to do so).  Mr. Verdiell, preoccupied with Aprius, simply did not pay attention to who was listed as counsel on the appellate briefs and opinion when he received them.  As a result, Mr. Verdiell did not notice that Mr. Shum had new counsel for the appeal.  *Id.*

The Federal Circuit remanded the case to this court in August 2007.  The mandate issued on November 13, 2007.  Multiple communications with Shum's trial counsel of record, Gregory S. Cavallo and e. robert wallach, occurred in December 2007 and January 2008 regarding delays in scheduling (and re-scheduling) a status conference due to Mr. wallach's unavailability.  Taylor Decl. ¶¶3-7 & Exs. A-D.  Townsend did not substitute into the case as Mr. Shum's trial counsel until February 5, 2008.  As noted above, Mr. Verdiell was told about Townsend's substitution into the case on March 21, 2008, at which point he immediately objected on behalf of Aprius.  Aprius's objection to Townsend's appearance as trial counsel against Mr. Verdiell is timely.

Townsend appears to believe that the conflict created by representing Shum at trial is excused because it began representing Shum in his *appeal* before Aprius signed its retention letter.  Townsend is wrong.  The California case law does not support a rule that when two clients have well-developed relationships with a firm, only the first client in the door is entitled to the duty of loyalty.  *See, e.g., In re California Canners and Growers*, 74 B.R. 336, 339, 342-45 (N.D. Cal. Bankr. 1987) (firm that had represented first client since 1957 disqualified from representing

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-16-

APRIUS'S  MOT. TO INTERVENE & TO DISQUALIFY
TOWNSEND AND  TOWNSEND AND CREW; CASE
NO. C 02-3262 DLJ (EMC)

1 first client in a matter adverse to a second client, though second client did not retain the firm until

2 1985, after the firm's representation adverse to the second client had already begun).  Indeed, a

3 rule excusing a breach of loyalty to an existing client on the basis of temporal priority would give

4 the lawyers whose greed or professional errors created the conflict carte blanche to betray and

5 discharge the second client, however great the client's investment in the firm, gutting the so-

6 called "hot potato" rule.  Aprius has spent two years educating Townsend about its intellectual

7 property and business model and Townsend has done considerable work for Aprius on matters

8 absolutely central to Aprius's fortunes.  Aprius would be immensely prejudiced if it were forced

9 to retain new patent counsel at this critical point in the development of its patent portfolio.[8]

10                                       **CONCLUSION**

11         For the reasons set forth above, the Court should grant Aprius's motion and disqualify

12 Townsend from acting as trial counsel for Frank Shum in the above-captioned litigation.  If

13 Townsend certifies to this Court that it has not shared its knowledge about Mr. Verdiell with its

14 co-counsel, Aprius does not seek the disqualification of said co-counsel.

15 Dated: May 2, 2008                                FOLGER LEVIN & KAHN LLP

16

17                                            _____/s/_____
                                             Ethan P. Schulman
18                                           Attorneys for APRIUS, INC.

19

20 11578\9001\599161.4

21

22

23

24         [8]Moreover, even if a strict rule of temporal priority did exist and were applicable here, the
25 relevant question would be when Townsend was first retained as trial counsel, rather than
   appellate counsel.  Given the nearly three-month lapse of time between the issuance of the
26 Federal Circuit's mandate and Townsend's entry of its appearance as trial counsel, and the active
   role taken during that period by Shum's other co-counsel, there is good reason to believe that
27 Aprius's retention of Townsend as patent counsel preceded Shum's retention of Townsend as
   counsel for the retrial of his claims.

28