FOLGER LEVIN & KAHN LLP
Ethan P. Schulman (CSB No. 112466, eschulman@flk.com)
Trina D. McAlister (CSB No. 253139, tmcalister@flk.com)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for APRIUS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FRANK T. SHUM,<br><br>           Plaintiff,<br><br>      v.<br><br>INTEL CORPORATION, JEAN-MARC VERDIELL, AND LIGHTLOGIC, INC.,<br><br>           Defendants. | Case No. C 02-3262 DLJ (EMC)<br><br>**DECLARATION OF JEAN-MARC VERDIELL IN SUPPORT OF MOTIONS BY APRIUS, INC. TO INTERVENE AND TO DISQUALIFY TOWNSEND AND TOWNSEND AND CREW LLP FROM REPRESENTING PLAINTIFF**<br><br>Date:      June 6. 2008<br>Time:     2:00 p.m.<br>Place:    Courtroom 1, 4th Floor<br>Judge:   Honorable D. Lowell Jensen |

I, Jean-Marc Verdiell, declare as follows:

1. I am a co-founder, Director, and Chief Executive Officer of Aprius, Inc. ("Aprius"). I hold a doctorate in Optoelectronics from the University of Paris and the equivalent of a master's degree in Physics and Engineering from the École Polytechnique in Palaiseau, France. I have many years of experience in the optoelectronics industry, including various management, product development and research positions. From April 1997 to January 1998, I was a co-owner with Frank T. Shum ("Shum") of Radiance Design, Inc. Thereafter, I founded LightLogic, Inc. ("LightLogic"), and built that company to the point where it was acquired by Intel Corporation ("Intel") in 2001. Along with LightLogic and Intel, I am a defendant in the above-captioned action brought by Shum. I make this declaration upon personal knowledge and, if called upon to testify, could and would testify competently hereto.

2. This declaration is submitted in support of Aprius's motion to intervene in this action and to disqualify the firm of Townsend and Townsend and Crew LLP ("Townsend") as trial counsel for Shum in this action.

3. Aprius is a privately-held start-up company that was incorporated in Delaware on June 26, 2006. The three founders of Aprius are Marc Epitaux, Peter Kirkpatrick and me. All three founders previously worked together at LightLogic and then later at Intel. Aprius is developing products in the area of high-speed computer interconnects using optoelectronic technology. I invested personally in Aprius, and I am the company's largest common stockholder, owning 38.6% of its common shares. I also took the lead role among the founders in obtaining funding from the initial venture capitalist investors. Finally, as I describe more fully below, I am also Aprius's chief patent strategist and I am listed as an inventor on several patent applications in Aprius's patent portfolio.

4. A key element of Aprius's business strategy is to maximize its return on its intellectual property, especially its patent portfolio. To that end, Aprius took great care in selecting patent counsel. Beginning in June 2006, my cofounders and I conducted lengthy interviews with four or five leading patent firms, before finally selecting Robert Colwell of Townsend as Aprius's patent counsel. Townsend sent me an engagement letter dated August 14,

1  2006, stating that it would "provid[e] advice regarding new technology your firm is developing."
2  I signed that letter on behalf of Aprius.

3  5.  Since 2006, I have worked very closely with Townsend on the development of Aprius' patent portfolio. Townsend has filed 9 patent applications on Aprius's behalf (including two provisional and two foreign patent applications), only one of which has issued. I am listed as an inventor on 3 of those patents. I have had extensive contact with Townsend in connection with those applications, drafting, reviewing and editing them personally. In addition, I conduct a regularly scheduled monthly review of Aprius' patent portfolio and strategy. In those meetings, Peter Kirkpatrick reports on progress, strategy is reviewed and decisions are made. Often, if it is simple enough, information is relayed by Peter Kirkpatrick to Townsend. When the issues are more involved or complex, additional follow up discussions or meetings with Townsend are necessary, and I participate in those sessions.

6.  As is normal in the patenting process, Townsend attorneys and I have had numerous discussions about patent enforcement strategies, including litigation options and how to respond to potential suits by competitors. The day-to-day contact between Townsend and Aprius is primarily with Peter Kirkpatrick, but I am almost always involved in or copied on those communications. As a consequence of these multiple contacts, I believe that Aprius' lawyers at Townsend have a clear sense of my technical and inventive skills, of the way in which I think about and execute patent strategy, and of my personal standards of integrity.

7.  I first became aware that Townsend was taking an active role in this case on March 21, 2008, when Taylor & Company Law Offices, LLP ("Taylor & Company") sent me an update on developments in the case and the proposed schedule for further proceedings. Among other things, that update reported that the Townsend firm had entered an appearance as lead trial counsel for Shum. I immediately advised my counsel at Taylor & Company that Townsend represented Aprius in patent matters. Shortly thereafter I raised the matter of conflict of interest with counsel for Aprius. Prior to March 21, I was not aware that the Townsend firm was acting for Shum against me. I have since become aware that the Townsend firm was listed on Shum's opening and reply briefs in the Federal Circuit appeal and on the Federal Circuit's opinion in that

case, copies of which were forwarded to me by my counsel. At the time I received those documents, I had prevailed on all of Shum's claims in the trial court and was preoccupied with the running of Aprius. Accordingly, I did not pay close attention to the appellate briefs or opinion when I received them, and it did not register that the Townsend firm had come into the case for the appeal. I obviously would not have selected Townsend as Aprius's patent counsel if I had been aware of its representation of Shum.

8. Townsend's continued work for Aprius is very important to the company's intellectual property strategy, which is now at a critical stage. Townsend has recently filed an important series of provisional patent applications on our behalf with the United States Patent and Trademark Office ("PTO"). Additional important strategic steps need to be taken in very short order. To lose Townsend as patent counsel at this stage would significantly slow Aprius's progress and require substantial additional expense to retain new counsel and to bring them up to speed on the relevant legal, technological and business issues. In addition, I am concerned that Townsend's withdrawal might be viewed as a signal to outside observers — including current and potential investors in Aprius — that Townsend's patent lawyers believe the accusations which Shum has leveled at me and my colleagues at Aprius in this action.

9. Townsend's continued prosecution of Shum's claims, if successful, would be very damaging to Aprius. A central element of those claims is that I am not competent as an inventor and that I lied to investors and to the PTO in connection with each of the seven patents-in-suit. Shum's claims also attack the competence and credibility of my co-founder, Marc Epitaux, who is named as an inventor on one of the patents-in-suit, and who has already been subjected to an adversarial deposition in this action seeking to establish that he, too, intentionally misrepresented his status as an inventor to the PTO. Townsend's prosecution of those allegations casts a reputational shadow over Aprius which its own lawyers have good reason to know is wholly unjustified.

10. I believe that my and Mr. Epitaux' reputations as inventors and businessmen are critical to Aprius's success. Our prior success at LightLogic is one of the reasons that I was able to assist in obtaining venture capital financing for Aprius. My reputation is also important to the

success of Aprius' patenting strategy. Were I to be found to have engaged in multiple frauds on the PTO, that finding would make it much more difficult for Aprius to obtain further capital. It could also create substantial difficulties for Aprius in obtaining and enforcing its patent portfolio or interesting investors or purchasers in it, undoing the work which Townsend has already performed on Aprius's behalf.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed this __1__ day of May, 2008, at Sunnyvale, California.

_____
Jean-Marc Verdiell

00001\0113\598977.3