FOLGER LEVIN & KAHN LLP
Ethan P. Schulman (CSB No. 112466, eschulman@flk.com)
Trina D. McAlister (CSB No. 253139, tmcalister@flk.com)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for APRIUS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FRANK T. SHUM,<br><br>        Plaintiff,<br><br>    v.<br><br>INTEL CORPORATION, JEAN-MARC VERDIELL, AND LIGHTLOGIC, INC.,<br><br>        Defendants. | Case No. C 02-3262 DLJ (EMC)<br><br>**DECLARATION OF ETHAN P. SCHULMAN IN SUPPORT OF MOTIONS BY APRIUS, INC. TO INTERVENE AND TO DISQUALIFY TOWNSEND AND TOWNSEND AND CREW LLP FROM REPRESENTING PLAINTIFF**<br><br>Date:     June 6, 2008<br>Time:    2:00 p.m.<br>Place:   Courtroom 1, 4th Floor<br>Judge:  Honorable D. Lowell Jensen |

I, Ethan P. Schulman, declare:

1. I am an attorney admitted to practice in the State of California and before this Court and am of counsel to Folger Levin & Kahn LLP. The facts set forth in this declaration are personally known to me to be true and, if called upon to testify as to the matters contained in this declaration, I could and would competently testify thereto. This declaration is submitted in support of the motions by Aprius, Inc. ("Aprius") to intervene in this action and to disqualify Townsend and Townsend and Crew LLP ("Townsend") from continuing to represent plaintiff Frank T. Shum ("Shum") as trial counsel in this action.

//

2. On April 16, 2008, Aprius's then outside counsel, Pamela Phillips, wrote to James G. Gilliland, Jr. of Townsend regarding Townsend's representation of Shum in this litigation. A true and correct copy of that letter is attached as Exhibit A to this declaration.

3. On April 23, 2008, Guy D. Calladine of Carlson, Calladine & Peterson LLP, Townsend's outside counsel, responded to Ms. Phillips's letter. A true and correct copy of that letter is attached as Exhibit B to this declaration.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed this 2nd day of May, 2008, in San Francisco, California.

/s/
ETHAN P. SCHULMAN

11578\9001\600035.1

# EXHIBIT A



**HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN**

*A Professional Corporation*

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.217.5910
www.howardrice.com

Writer's Information:

Pamela Phillips
Direct: 415.399.7896
pphillips@howardrice.com

April 16, 2008

**VIA E-MAIL**

James G. Gilliland, Jr.
Townsend and Townsend and Crew LLP
Two Embarcadero Center, Eighth Floor
San Francisco, CA 94111-3834

Re: <u>Aprius, Inc.</u>

Dear Mr. Gilliland:

Aprius, Inc. has retained me to assist it in addressing a conflict of interest that your law firm, Townsend and Townsend and Crew ("Townsend"), has with respect to Aprius. I have reviewed your April 2, 2008 letter to Stephen Taylor regarding Townsend's representation of Frank Shum in his federal litigation against Marc Verdiell (the "Shum litigation"). I believe that your letter misses the point of Aprius's objection. Aprius objects to Townsend's representation of Mr. Shum in the Shum litigation because that representation is directly adverse to the interests of Aprius, whom Townsend currently represents. Furthermore, as you must surely know, Townsend has no legal right to attempt to "cure" its conflict by unilaterally firing Aprius as a client.

Townsend is presently representing Aprius in connection with developing and shaping Aprius's patent portfolio and strategy. For example, Townsend has prepared and is prosecuting a number of patent applications for Aprius and Mr. Verdiell, one of which has issued. In doing this work, Townsend's lawyers have worked closely with Mr. Verdiell, who is not only Aprius's CEO, principal shareholder and chief patent strategist, but is also an inventor whom Townsend has named on several of the patent applications Townsend has filed on behalf of Aprius. Mr. Verdiell has also been one of Townsend's key contacts with Aprius.

As you must know by now, the crux of the Shum litigation is to attack and undermine Mr. Verdiell, who is one of Aprius's key assets. Aprius is shocked at your blithe assertion, and completely unfounded speculation, that the Shum litigation is somehow actually beneficial to Aprius's interests. That statement alone is improperly hostile to Aprius, a current client of Townsend. Moreover, your statement is plainly contrary to the facts: Aprius's business and economic interests are inextricably intertwined and aligned with those of Mr. Verdiell. In working with Mr. Verdiell to protect Aprius's intellectual property, Townsend's patent prosecutors must believe in and vouch for Mr. Verdiell's integrity, credibility and truthfulness, particularly with respect to filings with the PTO. The same is also true when Townsend is called

upon to advise Aprius's Board of Directors regarding Aprius's intellectual property. In light of this, it is entirely inappropriate and unseemly for other Townsend lawyers to be litigating a lawsuit against Mr. Verdiell in which Townsend will be asserting that Mr. Verdiell is guilty of "patent fraud," or that he was somehow dishonest with investors or with the Patent Office. Such conduct is detrimental to Aprius.

Your offer to have Townsend terminate its representation of Aprius is not an acceptable remedy for resolving this conflict — it is legally prohibited and harmful to Aprius, which very much wants to continue using Townsend's valuable services. Aprius believes that Mr. Colwell is extremely talented and critical to helping Aprius execute its business plan. Aprius has invested substantial sums educating Townsend about its technology and patent strategy, and Townsend has several patent applications pending for Aprius. It would harm Aprius' interests were Townsend to now drop Aprius as a client. Because Aprius wishes to continue its valuable relationship with Townsend, Aprius does not consent to Townsend being adverse to Aprius.

If Townsend resolves the conflict by promptly withdrawing from the Shum litigation, and immediately furnishes a declaration attesting to the fact that Townsend has not conveyed to Mr. Shum or to Mr. Shum's other counsel any secrets or confidences that Townsend obtained from Aprius in the course of representing Aprius, we can assure you that Aprius will take not take any steps to disqualify your co-counsel based on an imputation of the conflict.

We would appreciate hearing your response to this letter by Friday, April 17. Of course, do not hesitate to call me if you have any questions.

Very truly yours,

*Pamela Phillips*

Pamela Phillips

# EXHIBIT B



**CARLSON, CALLADINE & PETERSON LLP**   *Offices in San Francisco and Los Angeles*

353 Sacramento Street ▪ 16th Floor ▪ San Francisco, CA 94111 ▪ Tel: 415.391.3911 ▪ Fax: 415.391.3898 ▪ www.ccplaw.com

*Guy D. Calladine, Partner*
*Direct: 415.391.8140*
*gcalladine@ccplaw.com*

April 23, 2008

OUR FILE NO.: 199-002

**VIA HAND DELIVERY**

Pamela Phillips, Esq.
Howard Rice Nemerovski Canady Falk & Rabkin
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111

    Re:    *Aprius, Inc.*

Dear Pam:

This responds to your letter of April 16, 2008, and follows our telephone conversation on Monday past.

First, we address the issue of your continued representation in light of your earlier involvement in the *Shum* litigation. In that regard, we have discussed the issues in detail with Mr. Gregory Cavallo, and as a result, respectfully request that you withdraw from further involvement in this matter. While he has considerable respect for your professionalism, Mr. Cavallo is adamant that you are in a clear conflict situation and your current representation is improper. Your prior engagement could not have been more directly related to the *Shum* action: you essentially wrote a brief for Mr. Shum's benefit and use in opposing an important motion filed by Mr. Verdiell and his lawyer, Mr. Taylor.

It is clear that you are now working with Mr. Verdiell and Mr. Taylor – you have effectively switched sides in the <u>same</u> litigation. Regardless of whether the client in your mind was Shopoff & Cavallo or Mr. Shum, Mr. Shum was the known and intended beneficiary of your engagement. The demands made by Aprius, through you, if met, would have substantial prejudice to Mr. Shum (and Mr. Cavallo). As such, your current engagement clearly qualifies as an adverse representation. Moreover, Mr. Cavallo is adamant that you were the recipient of substantial confidential information and work product that presumptively will be used to the detriment of Mr. Shum in the pending litigation. For all these reasons, we request that if Aprius intends to continue to press these matters, it secure alternate counsel.

Second, while in light of the above, the ensuing comments are now more appropriate for consideration by other counsel, we disagree with your assertion in the concluding paragraphs of your letter that Townsend is legally prohibited from withdrawing if this matter is not resolved promptly through a voluntary withdrawal from the Shum case. Your reliance on the so-called "hot potato" rule is misplaced. That rule applies when an attorney abandons one client prematurely as a pretense to avoid concurrent representation in favor of a new and more favored client. *Flatt v. Superior Court*, 9 Cal.4th 275, 288-89 (1994). Here, Townsend represented Mr. Shum first. The *Flatt* court actually recognized

152479_1

Pamela Phillips, Esq.
April 23, 2008
Page 2

that double disqualification is not universally required in the case of late discovered conflicts, particularly where one of the two clients would be severely prejudiced. *Flatt*, 9 Cal.4th 290, N.6. Unlike Shum, Aprius retained Townsend at a time at which its purported alter ego, Mr. Verdiell, was on clear notice that the firm was adverse counsel in the Shum litigation. Given those facts, it is ironic that Aprius claims Townsend is legally prohibited from terminating the relationship with Aprius. If anything, the authority Aprius raises as a sword actually prohibits Townsend from acceding to Aprius's demand that the firm abandon Shum.

Moreover, barring a prompt agreement allowing for concurrent representation, Townsend is permitted, if not required, to withdraw from the representation of Aprius. Thus, the courts have recognized that a current engagement may be terminated when the client makes adverse claims or demands during the relationship. *E.g., Whiting v. Lacara*, 187 F.3d 317, 323 (2d Cir. 1999); *Douglas v. U.S.*, 488 A.2d 121, 137 (D.C. App. 1985); *Bailey v. Martz*, 488 N.E. 2d 176, 724-25 (Ind. 1986). As the court discussed in *Douglas*, there is simply no way an attorney can continue to exercise the independent judgment that is ethically required when such adversity arises in the relationship. *Douglas*, 488 A.2d at 136-37.

By raising this unsupported vicarious conflict, Aprius has placed Townsend in exactly such an untenable position and the status quo cannot go on indefinitely. Aprius must either concede it has raised an unsupported conflict or Townsend will be forced to reassess the status.

On a more fundamental level, we challenge you to provide any relevant legal authority or factual support for its position that the prosecution of the underlying action constitutes grounds for disqualification. Here, Townsend is prosecuting a liability claim involving conduct that <u>pre-dated</u> the very formation of Aprius by many years. By definition, a dispute among other entities and persons that preceded the very formation of Aprius cannot involve its business affairs. Aprius will have no liability exposure if Shum prevails.

The notion that Verdiell and Aprius should be treated as alter egos for the purposes of the duty of loyalty is completely at odds with CRPC Rule 3-600. That rule emphasizes the organization <u>alone</u> is the client, and that any engagement that would include assumption of such a duty to an officer, director or shareholder would present conflicts and require a conflict waiver by the entity. Yet you urge that Townsend should protect Mr. Verdiell for the sake of the entity.

Townsend disputes that its voluntary withdrawal from the case would, in any event, satisfy its obligations to Aprius under Rule 3-600(a), especially if Mr. Verdiell has had any say in raising the conflict, which we suspect he has, as oral and written communications prior to your appearance have come from counsel of record for Mr. Verdiell. If Mr. Verdiell engaged in pre-formation conduct that may impair the interests of the corporation, then there is a direct conflict between the entity and Mr. Verdiell, and disinterested officers, directors and counsel should be evaluating how

Pamela Phillips, Esq.
April 23, 2008
Page 3

to protect the entity. Townsend is not willing to be co-opted into the fiction of collapsing the identity of the corporation and Mr. Verdiell, under Mr. Verdiell's direction, on the pretense of "protecting" the entity from a litigation in which it has absolutely no direct or indirect economic stake. Indeed, to do so would potentially breach fiduciary duties to the entity under Rule 3-600(a). And, if your firm has been nominally retained by Aprius, but in fact is taking directives from the collapsed Aprius/Verdiell alter ego, Townsend questions Aprius's purported demands as authoritative on the same grounds.

In the rare instances where courts have protected non-clients, the interests of the client and non-client were substantially identical and special circumstances, such as to clear jeopardy to confidences, were involved. An example might be representation related to a joint liability arising out of Mr. Verdiell's activities on behalf of the corporation, at least if no breach of fiduciary duty to the organization were involved. Aprius is completely immune from liabilities arising out of Mr. Verdiell's pre-formation conduct. Moreover, the relationship between Townsend and Aprius has involved limited contact with Mr. Verdiell; the vast majority of Mr. Colwell's contacts have been with other Aprius representatives.

That liability for wrongdoing, beyond the pale of Mr. Verdiell's corporate capacity, may have the indirect and speculative adverse consequences you cite, clearly falls short of a unity of interest. Rather, if Mr. Verdiell's pre and extra corporate conduct is so potentially embarrassing that Aprius risks injury by mere association, the interests of the parties are *adverse*. Again, Townsend cannot accede to demands, orchestrated by Mr. Verdiell or other interested parties, that in and of themselves could constitute a violation of Rule 3-600.

Thus, the position you have taken of asserting conflicts based on an indirect economic impact, here, a stigma based on the legal liabilities of an officer, has no support. Given the economic interrelationships of the business community, such an "effects test" would be wholly unworkable and lead to absurd consequences. It has been rejected outright by California courts. *Brooklyn Navy Yard Cogeneration Partners, L.P. v. Superior Court*, 60 Cal.App. 4th 248, 256 (1997). Rather, disqualification might be authorized in the case of adverse representation involving non-clients only if there is *both* an actual or potential adverse impact on the client and a breach of the client's *"legitimate expectations"* based on the duty of loyalty. *Id.* at 256, quoting, *Flatt v. Superior Court*, 9 Cal.4th 275, 284 (1994). Expecting a law firm to withdraw from a case against an officer that the firm was prosecuting *before* the company retained the firm is plainly an illegitimate stretch, especially where there is no nexus whatever between the engagements. A purported duty of loyalty predicated on ignoring the separation between the organization and one of its constituents in violation of Rule 3-600, and protecting multiple parties with different interests without a conflict waiver, manifestly violates public policy.

Again, if you or alternate counsel who can appropriately handle this matter without conflicts believe there are facts and legal authority we have overlooked, Townsend will consider them, and we urge they be provided. But Townsend categorically rejects that it has a duty to abandon an existing client to avoid reputational injury to one of Aprius's

152479_1

Pamela Phillips, Esq.
April 23, 2008
Page 4

officers. That is the only basis for a conflict discussed in your letter, and it is plainly not a plausible application of the duty of loyalty.

Finally, if Aprius would otherwise insist on pressing this dubious conflict, we believe it should reconsider in light of the equities and competing hardships of this case. At best, the court will recognize this is a "thrust upon" conflict. As already noted, the Supreme Court acknowledged in *Flatt* that belatedly discovered and/or raised conflicts should be treated differently, and double disqualification is not required. The courts have more leeway in resolving these types of conflicts.

But it is equally true that the courts will not as readily come to the aid of those who have sat on their rights or belatedly raised conflicts for tactical reasons. *Maintenance Network of Southern California v. Blue Cross of Southern California*, 202 Cal.App. 3d 1043, 1063-65 (1988).

Townsend would not have agreed to withdraw from the *Shum* litigation based on some previously undisclosed Aprius policy of prohibiting its counsel from suing its officers and directors on matters unrelated to Aprius. Moreover, Mr. Verdiell's counsel knew Townsend was counsel of record for Shum as of June, 2006. If that knowledge is not automatically imputed to Verdiell, the court will recognize that he was in the best possible position to detect the purported conflict as least by the time his alleged alter ego hired the firm. Moreover, the decision to raise the conflict in early 2008 and only after the appeal had been successfully prosecuted smacks of questionable tactics. Even if the court can get beyond subjective suspicion on the tardiness of the demand, it will readily recognize the prejudice to Shum in having to replace Townsend after a period of 2 years and the substantial investment of time involved in learning the file and preparing for the second trial.

On these facts, we believe under a best-case scenario for Aprius, the court would order some form of walling off, which is already being accomplished by Townsend as a courtesy to Aprius. But it is equally possible that Aprius will be required to retain new counsel based on invited error, the brevity of its relationship with Townsend, the fungibility of the work involved, and the weakness of the purported conflict claim.

For all of the above reasons, Townsend requests that Aprius withdraw its disqualification demand.

Very truly yours,

*[signature]*

Guy D. Calladine

GDC/EFD/wl

cc: Client

152479_1