FOLGER LEVIN & KAHN LLP
Ethan P. Schulman (CSB No. 112466, eschulman@flk.com)
Trina D. McAlister (CSB No. 253139, tmcalister@flk.com)
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for APRIUS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FRANK T. SHUM,<br><br>        Plaintiff,<br><br>    v.<br><br>INTEL CORPORATION, JEAN-MARC VERDIELL, AND LIGHTLOGIC, INC.,<br><br>        Defendants. | Case No. C 02-3262 DLJ (EMC)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APRIUS, INC.'S MOTION TO INTERVENE AND TO DISQUALIFY TOWNSEND AND TOWNSEND AND CREW FROM REPRESENTING PLAINTIFF**<br><br>Date:     June 6, 2008<br>Time:    2:00 p.m.<br>Place:    Courtroom 1, 4th Floor<br>Judge:   Honorable D. Lowell Jensen |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

    I.    APRIUS'S MOTION TO INTERVENE SHOULD BE GRANTED ..................... 3

        A.    Aprius Has A Significant Protectable Interest In The Duty Of Loyalty Owed It By Townsend. ......................................................... 3

        B.    Aprius's Motion to Intervene is Timely ....................................................... 4

    II.    TOWNSEND SHOULD BE DISQUALIFIED BECAUSE ITS REPESENTATION OF SHUM IS DIRECTLY ADVERSE TO THE INTERESTS OF APRIUS ............................................................................... 6

        A.    The Court's Inquiry Is Governed By The Unity Of Interests Test ............. 7

        B.    Townsend's Role As Shum's Trial Counsel Violates Its Duty Of Loyalty To Aprius, Whose Competitive And Economic Interests Are Inextricably Intertwined With Mr. Verdiell's .................................. 10

        C.    Aprius Did Not Impliedly Waive Its Rights ............................................. 12

            1.    Townsend Bears Principal Responsibility for Any Delay in Identifying the Conflict at Issue ....................................................... 12

            2.    Aprius's Motion Is Not Barred by Extreme Delay ........................ 13

        D.    The Ethical Wall Townsend Proposes Cannot Cure Its Breach Of The Duty Of Loyalty And Is Too Late To Be Effective ............................ 14

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

### CASES

*Aguilar v. Int'l Longshoremen's Union*,
  966 F.2d 443 (9th Cir. 1992) .................................................................................... 2

*Baxter Diagnostics Inc. v. AVL Scientific Corp.*,
  798 F. Supp 612 (C.D. Cal. 1992) ........................................................................... 7

*Brooklyn Navy Yard Cogeneration Partners, L.P. v. Superior Court*,
  60 Cal. App. 4th 248 (1997) .................................................................................... 8

*Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*,
  264 F. Supp. 2d 914  (N.D. Cal. 2003) ................................................. 2, 7, 10, 11, 14

*Concat LP v. Unilever, PLC*,
  350 F. Supp. 2d 796 (N.D. Cal. 2004) ........................................ 7, 8, 9, 11, 12, 14, 15

*Day v. Apoliona*,
  505 F.3d 963 (9th Cir. 2007) ................................................................................... 4

*Flatt v. Superior Court*,
  9 Cal. 4th 275 (1994) .............................................................................................. 9

*Friskit, Inc. v. RealNetworks, Inc.*,
  No. C 03-05085 WWS, 2007 WL 1994204 (N.D. Cal. July 5, 2007) ................... 3, 4

*GATX/Airlog Co. v. Evergreen Intern. Airlines, Inc.*
  8 F. Supp. 2d 1182  (N.D. Cal. 1998) ..................................................................... 3

*Hernandez v. Paicius*,
  109 Cal. App. 4th 452 (2003) ................................................................................ 11

*Image Technical Servs., Inc. v. Eastman Kodak Co.*
  820 F.Supp. 1212 (N.D. Cal. 1993) ....................................................................... 13

*In re Complex Asbestos Litigation*,
  232 Cal. App. 3d 572 (1991) ............................................................................ 13, 14

*Koo v. Rubio's*,
  109 Cal. App. 4th 719 (2003) .................................................................................. 8

*Legal Aid Soc'y v. Dunlop*,
  618 F.2d 48 (9th Cir. 1980) ..................................................................................... 4

*Loomis v. Consolidated Stores Corp.*,
  2000 WL 1229262 (S.D.N.Y. Aug. 29, 2000) ....................................................... 13

*Meehan v. Hopps*,
  144 Cal. App. 2d 284 (1956) ................................................................................... 8

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*,
  69 Cal. App. 4th 223 (1999) ......................................................................... 7, 8, 10

*Oxford Sys., Inc. v. Cellpro, Inc.*
  45 F. Supp. 2d 1055 (W.D. Wash. 1999) ................................................................ 3

*Pinal Creek Group v. Newmont Mining Corp.*,
  352 F. Supp. 2d 1037  (D. Ariz. 2005) .................................................................... 2

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-ii-

REPLY MPA ISO APRIUS'S MOT. TO INTERVENE &
TO DISQUALIFY TOWNSEND FIRM; CASE NO. C 02-
3262 DLJ (EMC)

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*River West v. Nickel*,
  188 Cal. App. 3d 1297 (1987)......................................................................................... 13, 14

*State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1428
  (1999) ...................................................................................................................................... 2

*Teradyne v. Hewlett Packard Co.*,
  1991 WL 239940, 20 U.S.P.Q. 2d 1143 (N.D. Cal. 1991) ................................................. 7, 10

*Unified Sewerage Agency v. Jelco Inc.*,
  646 F.2d 1339 (9th Cir. 1981)................................................................................................ 11

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ........................................................................................... 3, 4, 6

*United States v. Carpenter*,
  298 F.3d 1122 (9th Cir. 2002) .................................................................................................. 4

*Visa U.S.A., Inc. v. First Data Corp.*,
  241 F. Supp. 2d 1100 (N.D. Cal. 2003) ................................................................................... 9

*Western Continental Operating Co. v. Natural Gas Corp.*,
  212 Cal. App. 3d 752 (1989)............................................................................................ 13, 14

*Yniguez v. Arizona*,
  939 F. 2d 727 (9th Cir. 1991).................................................................................................... 4

**OTHER AUTHORITIES**

P. Vapnek, M. Tuft, E. Peck & H. Wiener,
  *California Practice Guide*: *Professional Responsibility (The Rutter Group 2008)*
  ¶4:26..........................................................................................................................................12
  ¶4:31.6.......................................................................................................................................14

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-iii-   REPLY MPA ISO APRIUS'S MOT. TO INTERVENE &
TO DISQUALIFY TOWNSEND FIRM; CASE NO. C 02-
3262 DLJ (EMC)

## INTRODUCTION

This motion poses the question whether the law firm of Townsend and Townsend and Crew LLP ("Townsend"), while serving as patent counsel to Aprius, Inc. ("Aprius"), a closely-held startup corporation, may simultaneously prosecute this action against Aprius's founder, CEO, Chief Technology Officer and principal shareholder, Jean-Marc Verdiell ("Verdiell")—an action in which Townsend, on behalf of Plaintiff Frank Shum ("Shum"), is charging Verdiell with defrauding the U.S. Patent and Trademark Office ("PTO") and third parties, intends to call Verdiell as an adverse witness, and is seeking to recover potentially hundreds of millions of dollars in damages from Verdiell personally. Under settled law defining an attorney's duty of loyalty to an existing client such as Aprius, the answer to that question must be no. The law cannot possibly permit a law firm to prosecute an action against a key officer, director and shareholder of its corporate client, when doing so will require that the firm seek to demonstrate, through cross-examination and otherwise, the officer's lack of honesty and integrity with regard to the very subject matter area on which the firm is advising the client. The need for disqualification is still more compelling when, as here, an adverse result in that action threatens the client company with serious financial and reputational consequences.

Shum grounds his opposition to Aprius's motion to disqualify Townsend from representing Shum in this action ("Opp.") on three principal themes. *First*, Shum twice asserts—once in response to Aprius's motion for leave to intervene, and again in opposition to its motion to disqualify—that Aprius has unreasonably delayed in bringing the issue to the Court's attention. However, the undisputed record establishes that Aprius brought this motion promptly after discovering Townsend's conflict of interest in late February 2008, shortly after Townsend first filed a notice of appearance as Shum's trial counsel of record. As a result, Shum's claims of untimeliness or implied waiver must be rejected. *See* Parts I(B) & II(C)(2), *infra*.

*Second*, Shum asserts that this motion asks this Court to "undertake an unprecedented expansion of conflicts of interest law" (Opp. at 2), effectively insisting that its duty of loyalty to a corporate client cannot preclude it from taking any adverse position it chooses against key

Folger Levin &
Kahn LLP
Attorneys At Law

-1-

REPLY MPA ISO APRIUS'S MOT. TO INTERVENE &
TO DISQUALIFY TOWNSEND FIRM; CASE NO. C 02-
3262 DLJ (EMC)

officers, directors or shareholders of the client,. However, Shum's position is based on an outmoded alter ego test that has been rejected by subsequent California and federal courts, including a uniform body of authority in this District; it depends on the contention that a recent decision of this Court presenting closely related issues was wrongly decided; it rests on an untenable distinction between individual and corporate constituents of a client corporation; and it confuses the key distinctions between the duties of loyalty and confidentiality and the corresponding tests for conflicts presented by concurrent and successive representation. *See* Parts II(A) and (B), *infra*.

*Third*, Shum repeatedly accuses Aprius of having filed this motion solely for tactical reasons, going so far as to insinuate that the timing of the motion is "patently suspicious" and hinting darkly that the motion must have been orchestrated – and paid for – by Mr. Verdiell and the other defendants. Opp. at 2, 11, 13 & n.5, 23. Aprius vigorously denies Shum's unsupported allegations. In fact, the equities on this motion rest with Aprius, and to the extent that any involved party bears responsibility for delay, it is Townsend, which failed in its professional obligation to identify the conflict that gives rise to this motion. *See* Part II(C)(1), *infra.* The courts have recognized that while disqualification motions carry the potential for tactical abuse, they also safeguard important interests. But in cases like this, where the equities favor the injured client, "'the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar.'" *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003) (quoting *State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1428 (1999)).[1]

---

[1] We are concurrently filing evidentiary objections to the declaration of Mark L. Tuft filed by Shum with its opposition papers on the ground that it consists exclusively of conclusions and opinions on issues of law, which are not a proper subject for expert testimony but instead are properly reserved for decision by the Court. *See, e.g., Aguilar v. Int'l Longshoremen's Union*, 966 F.2d 443, 447 (9th Cir. 1992) (matters of law are for the court's determination, not that of an expert witness); *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042 (D. Ariz. 2005) ("federal courts typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case").

## I. APRIUS'S MOTION TO INTERVENE SHOULD BE GRANTED.

Aprius sought leave to intervene as of right under Fed. R. Civ. P. 24(a)(2) for the limited purpose of enabling it to move to disqualify Townsend. Where an applicant seeks to intervene as of right, it must "demonstrate that (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (internal quotation and citation omitted). In determining whether intervention is appropriate, courts are guided primarily by practical and equitable considerations, and "the requirements for intervention are broadly interpreted in favor of intervention." *Id.*

As this Court and others have recognized, intervention is the appropriate procedural means for a non-party client to seek to vindicate its interest in preserving an attorney-client relationship free from disqualifying conflicts, because the parties to the action do not necessarily share the same interest. *Friskit, Inc. v. RealNetworks, Inc.*, No. C 03-05085 WWS, 2007 WL 1994204, at *1 (N.D. Cal. July 5, 2007) (Schwarzer, J.) (granting non-party's motion to intervene for limited purpose of moving for disqualification of law firm); *Oxford Sys., Inc. v. Cellpro, Inc.*, 45 F. Supp. 2d 1055, 1058 (W.D. Wash. 1999) (same); *GATX/Airlog Co. v. Evergreen Intern. Airlines, Inc.*, 8 F. Supp. 2d 1182, 1184 (N.D. Cal. 1998) (Orrick, J.) (granting plaintiff bank's unopposed motion to intervene in all related cases for purposes of disqualifying law firm). Shum does not even mention that authority. Instead, Shum contends that Aprius purportedly lacks any "significant protectable interest" that would warrant intervention and that the motion is not timely. Opp. at 7-10. Neither argument has merit.

### A. Aprius Has A Significant Protectable Interest In The Duty Of Loyalty Owed It By Townsend.

"An applicant for intervention has a significantly protectable interest if the interest is protected by law and there is a relationship between the legally protected interest and the plaintiff's claims." *Alisal*, 370 F.3d at 919. Here, Aprius has a protectable interest—an interest

protected by law—in vindicating its entitlement to legal representation free of conflicts. This Court has recognized that the preservation of counsel's duty of loyalty is a protectable interest for purposes of intervention. *See, e.g., Friskit*, 2007 WL 1994204, at *1 ("[Movant] asserts a protectable interest in the duty of loyalty owed him by [his counsel], and that his own financial interests are at stake in this litigation").

### B. Aprius's Motion to Intervene is Timely.

Shum argues that Aprius's motion to intervene should be denied on the ground that it is untimely. Opp. at 7-10. However, timeliness "is a flexible concept," and the "mere lapse of time, without more, is not necessarily a bar to intervention." *Alisal*, 370 F.3d at 921. Courts examine all the circumstances of the case to determine whether a motion to intervene is timely. *Legal Aid Soc'y v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980). Specifically, any delay in filing is excusable if the party did not know or have reason to know that the litigation could adversely affect its interests. *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (quoting *Alisal*, 370 F.3d at 923); *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (finding motion to intervene timely where proposed intervenors "acted as soon as they had notice that the proposed settlement was contrary to their interests").[2]

On the undisputed record before the Court, that standard is readily met here. Aprius filed its motion to intervene promptly after it learned that Townsend intended to appear as trial counsel for Shum in this action against its founder and CEO, Mr. Verdiell. Despite Shum's unfounded attacks on the adequacy of Aprius's showing and on Mr. Verdiell's veracity (Opp. at 8-9),[3] that

---

[2] Indeed, under the Ninth Circuit's liberal standard governing intervention, it is proper to grant a motion to intervene even if it could have been filed earlier. *See, e.g., Day*, 505 F.3d at 966 (affirming order granting motion to intervene in two-year-old proceedings "even though [nonparty] could have and should have intervened earlier"); *Yniguez v. Arizona*, 939 F. 2d 727, 735 (9th Cir. 1991) (finding post-judgment motion to intervene was timely even though nonparty could have filed earlier).

[3] Townsend again insinuates that Mr. Verdiell is not telling the truth, asserting that his sworn declaration not to have learned until recently of its involvement in this litigation is "implausible." Opp. at 9. As we observed in our moving papers (Mot. at 7 n.1), we are dismayed by Townsend's willingness to call its own client's CEO a liar. That accusation is an unfortunate illustration of the perverse incentives created by Townsend's own failure to uncover and prevent the conflict of interest from which it now suffers.

uncontested showing establishes the following:

Townsend has been Aprius's patent counsel since August 2006. Verdiell Decl. ¶4; Colwell Decl. ¶2. Townsend did not represent Shum when this case was first filed and tried. The firm first agreed to represent Shum on appeal in June 2006. Kirsch Decl. ¶. That agreement gave it a further "option to represent Mr. Shum in retrial of this case" were Shum to succeed on appeal (*id.*), but Townsend did not exercise that option and commence representing Shum in this court until it filed a notice of appearance as Shum's trial counsel on February 5, 2008, nearly three months after the Federal Circuit's mandate issued. *Id.* ¶9; Taylor Decl. ¶¶2, 9. Defendants' counsel Stephen E. Taylor first learned about Townsend's involvement as trial counsel in this action from that notice; in the preceding months he had dealt exclusively with Mr. Shum's previous trial counsel in matters relating to proceedings following remand. Taylor Decl. ¶¶3-8, 11. As Townsend admits, its notice was filed pursuant to General Order 45, which provides that "[a] Notice of Appearance should be filed whenever counsel joins a case." N.D. Cal., Gen'l Order 45(IV)(C)(1). Kirsch Decl. ¶9. Thus, before February 5, 2008, Aprius had no reason to know that Townsend was joining the case as trial counsel for Shum in this Court.

As soon as Mr. Verdiell was informed of Townsend's appearance, on March 21, 2008, he promptly advised his counsel that Townsend represented Aprius in patent matters, and shortly thereafter raised the conflict issue with Aprius's counsel. Verdiell Decl. ¶7. Defendants' counsel wrote to Townsend concerning that issue just one week later, on March 28, 2008. Taylor Decl. ¶12 & Ex. F. Although Shum insists that Mr. Verdiell's declaration is "conspicuously silent" on his understanding of Townsend's role before that date (Opp. at 9), in fact it unequivocally addresses that very issue: "Prior to March 21, [2008], I was not aware that the Townsend firm was acting for Shum against me." Verdiell Decl. ¶7; *see also* Taylor Decl., Ex. F at 1 ("Mr. Verdiell learned for the first time on March 21, 2008 that your firm will be acting as trial counsel in this case").

Shum's intemperate attacks on Mr. Verdiell for not having learned of Townsend's role on the prior appeal (Opp. at 9) overlook his entirely understandable explanation: Although Mr. Verdiell received from his counsel copies of the appellate briefs and the Federal Circuit's opinion

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-5-

REPLY MPA ISO APRIUS'S MOT. TO INTERVENE &
TO DISQUALIFY TOWNSEND FIRM; CASE NO. C 02-
3262 DLJ (EMC)

listing the Townsend firm, he did not pay close attention to them because at the time, he had prevailed on all of Shum's claims in the trial court and was preoccupied with the running of Aprius. Verdiell Decl. ¶7. Accordingly, he had no reason to scrutinize them closely, and "it did not register" with him that the Townsend firm had substituted in as appellate counsel. *Id.* Had Mr. Verdiell been aware of Townsend's representation of Shum, he would not have selected Townsend as Aprius's patent counsel. *Id.* Likewise, because Mr. Verdiell's counsel in this action did not know that Townsend had been acting as Aprius's patent counsel, they had no reason to know that Townsend's representation of Shum on appeal presented a conflicts issue. Taylor Decl. ¶ 11. For that reason, there was no reason to flag Townsend's involvement as an issue for Mr. Verdiell. In short, Mr. Verdiell did not have notice of the conflict posed by Townsend's representation of Shum until the firm filed its notice of substitution of counsel on February 5, 2008.[4]

## II. TOWNSEND SHOULD BE DISQUALIFIED BECAUSE ITS REPESENTATION OF SHUM IS DIRECTLY ADVERSE TO THE INTERESTS OF APRIUS.

Shum appears to concede, as of course he must, that the California Rules of Professional Conduct would preclude Townsend from simultaneously representing Aprius as its patent counsel and at the same time representing another client whose interests were adverse to those of Aprius. *See* Opp. at 14. It insists, however, that because the adverse party in this action is Mr. Verdiell individually rather than Aprius, neither the Rules nor California conflicts law places any restraint

---

[4]*Alisal*, on which Shum relies for its argument that Aprius had constructive notice of Townsend's conflict (Opp. at 8), does not compel a different result. In that case, the Ninth Circuit affirmed the District Court's finding that a nonparty judgment creditor's attempt to intervene was untimely where the nonparty did not present any explanation to the District Court for its delay in waiting to intervene until the proceedings were four years old, just one week before motions for partial summary judgment and a bench trial were scheduled to commence. *See* 370 F.3d at 921. There was "no evidence that [the nonparty judgment creditor] was unaware of the proceedings." *Id.* at 922. To the contrary, the record showed that it "was keenly aware of the litigation throughout its lifespan," and indeed it alleged in its own complaint in intervention that it had "frequently communicated" with counsel for the creditor about the status of the litigation. *Id.* at 922-23. Here, in contrast, there is no evidence that Aprius was "keenly aware" of the Shum proceedings or their potential effects on it; to the contrary, the undisputed evidence is that Mr. Verdiell, its CEO, was unaware until very recently of Townsend's prior role. Thus, Aprius did not seek to intervene earlier than it did for the simple reason that it neither knew nor had reason to know that Townsend was representing Shum against Mr. Verdiell in this Court.

1  on its representation in this action. The issue presented by this motion, therefore, is whether
2  Aprius and Mr. Verdiell should be treated as the same "client" for conflicts purposes. Shum's
3  position on that issue is inconsistent with California law, and conflates two very different
4  concepts: the duty of loyalty and the duty of confidentiality.

**A. The Court's Inquiry Is Governed By The Unity Of Interests Test.**

As we showed in our moving papers, California law precludes a law firm from undertaking representation adverse to a non-client *affiliate* of a firm client where the non-client affiliate and the client share a "unity of interests" such that they should be considered to be a single entity for conflicts purposes. Mot. at 7-9, citing *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223, 238-53 (1999). This unity of interests test ensures that the interests protected by a lawyer's duty of loyalty to a corporate client are protected by precluding the lawyer from taking actions adverse to affiliates of the client. Where a unity of interests has been demonstrated, courts in this District and elsewhere have not hesitated to disqualify counsel who undertake concurrent representation adverse to affiliates of their corporate clients. *See, e.g., Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 818-19 (N.D. Cal. 2004) (disqualifying firm from representing defendants in patent inventorship dispute where firm concurrently provided estate planning advice to managing partner of defendant limited partnership); *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 920-24 (N.D. Cal. 2003) (disqualifying firm from representing plaintiff in action against insurance company where firm concurrently represented company's subsidiary); *Baxter Diagnostics Inc. v. AVL Scientific Corp.*, 798 F. Supp 612, 616 (C.D. Cal. 1992) (disqualifying attorneys who had previously represented parent company of plaintiff from representing defendants in patent infringement action); *Teradyne v. Hewlett Packard Co.*, 1991 WL 239940, 20 U.S.P.Q. 2d 1143, 1146 (N.D. Cal. 1991) (disqualifying firms from representing plaintiff in patent infringement action where firms concurrently represented defendant's subsidiary and benefit plans).

Shum offers several inconsistent responses. *First*, Shum observes that when an attorney represents an organization (such as a corporation), the client is considered to be the organization

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-7-

REPLY MPA ISO APRIUS'S MOT. TO INTERVENE &
TO DISQUALIFY TOWNSEND FIRM; CASE NO. C 02-
3262 DLJ (EMC)

1  itself, not its individual officers or directors. Opp. at 12-14. From this uncontested principle
2  Shum jumps to the irrelevant point that Townsend "could freely sue Mr. Verdiell on Aprius'
3  behalf if he had exposed Aprius . . . to liability for fraudulent conduct." *Id.* at 13. But that point,
4  and the case authority Shum cites, relate to an entirely different situation: where the corporation
5  sues its own officers or shareholders for breach of fiduciary duty or other misconduct *adverse to*
6  *the corporation's interests*. *See id.* at 12-13 (citing *Koo v. Rubio's*, 109 Cal. App. 4th 719 (2003)
7  and *Meehan v. Hopps*, 144 Cal. App. 2d 284, 291-92 (1956)). No such claim or litigation
8  between Aprius and Mr. Verdiell is presented here. To the contrary, that would be the exact
9  *opposite* of the situation presented here: Aprius's showing establishes that its financial and
10 reputational interests are inextricably intertwined with, and dependent upon, Mr. Verdiell's. *See*
11 Mot. at 4; Verdiell Decl. ¶¶1, 3, 10. In short, Shum's hypothetical addresses the situation where
12 the corporation and its officer have *diverging* interests; the issue before this Court is when they
13 should be considered to have a *unity* of interests for conflicts purposes.

14     *Second*, Shum relies upon the narrow "alter ego" test adopted by the Court of Appeal in
15 *Brooklyn Navy Yard Cogeneration Partners, L.P. v. Superior Court*, 60 Cal. App. 4th 248 (1997).
16 Opp. at 15-16. However, *Brooklyn Navy Yard* was decided before *Morrison Knudsen*, which
17 after an extensive discussion of bar opinions, district court decisions and other authorities adopted
18 the broader unity of interests test. 69 Cal. App. 4th at 240-48. *Morrison Knudsen* expressly
19 declined to follow *Brooklyn Navy Yard* and criticized its use of the alter ego test, noting that it
20 was not developed to deal with conflicts issues and involves considerations that may have little or
21 no relationship to conflicts issues. *Id.* at 248-52. All courts to have addressed the issue since,
22 including a number of decisions in this District, have followed *Morrison Knudsen*; none has
23 followed *Brooklyn Navy Yard*.

24     *Third*, Shum appears to argue that even if the "unity of interests" principle applies as
25 between client corporations and their non-client corporate affiliates, it does not apply when the
26 non-client affiliate is an individual. Opp. at 12-13, 18. He offers no authority for this
27 proposition, and as noted in our moving papers, both common sense and the *Concat* decision
28 support a contrary view. It is true, of course, that *Concat* involved unity of interests between a

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-8-

REPLY MPA ISO APRIUS'S MOT. TO INTERVENE &
TO DISQUALIFY TOWNSEND FIRM; CASE NO. C 02-
3262 DLJ (EMC)

1  non-client entity and a client individual, while this case involves unity of interests between a non-
2  client individual and a client entity. But that is a distinction without a logical foundation:
3  whenever there is adversity to a non-client, and a sufficient unity of interests exists between that
4  non-client and the lawyer's client, then the adversity to the client that the rule prohibits has been
5  established and disqualification is required.

6  *Fourth,* Shum argues broadly that in applying the unity of interests test, direct adversity
7  "ordinarily" cannot be established through business relationships or economic effects, but only
8  through "potential misuse of confidential client communications on the very same subject matter
9  at issue in the dispute with the non-client." Opp. at 16. However, Shum's argument confuses the
10 distinct interests protected by the duties of loyalty and confidentiality, and the corresponding tests
11 for concurrent and successive representation. The leading California case on the duty of loyalty
12 (which Shum does not mention) identifies two separate interests underlying the prohibition on
13 conflicts of interest and two "distinct tests to determine the circumstances in which each applies."
14 *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994). Where the potential conflict arises from the
15 successive representation of clients, "the courts have recognized that the chief fiduciary value
16 jeopardized is that of client *confidentiality.*" *Id.* Thus, a *former* client that seeks to have its
17 former attorney disqualified from serving as counsel in litigation adverse to its interests must
18 demonstrate a "substantial relationship" between the subjects of the two representations. *Id.*
19 In contrast, where (as here) the attorney's potentially conflicting representations are
20 *simultaneous*, "[b]oth the interest implicated and the governing test are different." *Id.* at 284.
21 "The primary value at stake in cases of simultaneous or dual representation is the attorney's
22 duty—and the client's legitimate expectation—of *loyalty*, rather than confidentiality." *Id.* In
23 evaluating conflicts claims in such cases, a "more stringent" test than the substantial relationship
24 test applies and the "rule of disqualification . . . is a *per se* or "automatic" one. *Id.* (citations
25 omitted); *see also, e.g., Concat*, 350 F. Supp. 2d at 819 (conflicts arising from concurrent
26 representation are subject to a "much stricter standard"); *Visa U.S.A., Inc. v. First Data Corp.*,
27 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (presumption in concurrent representation cases that
28 duty of loyalty has been breached). Consistent with this view, decisions in this District have

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-9-

REPLY MPA ISO APRIUS'S MOT. TO INTERVENE &
TO DISQUALIFY TOWNSEND FIRM; CASE NO. C 02-
3262 DLJ (EMC)

disqualified lawyers from concurrent representations under the "unity of interests" test without any showing that the two matters were related in ways giving rise to a risk of disclosure of confidences. *Argonaut, supra; Teradyne, supra.*

**B. Townsend's Role As Shum's Trial Counsel Violates Its Duty Of Loyalty To Aprius, Whose Competitive And Economic Interests Are Inextricably Intertwined With Mr. Verdiell's.**

The application of the unity of interests test here turns on the factors identified in *Morrison Knudsen* and other cases. Those factors include, among others,[5] (1) whether one affiliate controls the other's legal affairs (*Morrison Knudsen*, 69 Cal. App. 4th at 246-47); (2) whether the two "affiliates" (here, Aprius and Mr. Verdiell) have "integrated operations and management personnel" (*id.* at 246; *Argonaut*, 264 F. Supp. 2d at 923-24); (3) whether there is risk that the non-client affiliate's personnel could be called as witnesses in the dispute involving the client (69 Cal. App. 4th at 247); and (4) whether the litigation is likely to have a direct adverse financial impact upon the non-client affiliate because the affiliates' financial prospects are "closely linked." *Argonaut*, 264 F. Supp. 2d at 923. The ultimate question is whether there is a sufficient unity of interest between Aprius and Mr. Verdiell such that Townsend's representation of Shum in the instant action "reasonably diminishes the 'level of confidence and trust in counsel' held by" Aprius. *Id.* at 922.[6]

Shum does not seriously contest that several of these factors are present here. *First*, there is obviously a substantial overlap between Aprius's management team and Mr. Verdiell, Aprius's "affiliate." "This is significant because from the standpoint of the law's concern for [the] client's 'confidence and trust in counsel,' here there is, for all practical purposes, but *one* client on both

---

[5] Contrary to Shum's apparent view (Opp. at 17-19), these factors are not exclusive, nor is any particular factor required. As the *Morrison Knudsen* court observed, "[t]he 'unity of interests' test will continue to develop on a case-by-case basis, and take more definite and useful shape in the process." 69 Cal. App. 4th at 253.

[6] Shum attacks this Court's decision in *Argonaut*, asserting that it is inconsistent with California law and derived its test "out of thin air." Opp. at 19-21. However, that discussion misunderstands *Argonaut*, which merely held that the unity of interests test should not be applied in a vacuum, but rather in light of the interests served by an attorney's duty of loyalty. *Argonaut*, 264 F. Supp. 2d at 922. That is also a complete response to Shum's baseless suggestion (Opp. at 19) that we are proposing an "appearance of impropriety" standard for disqualification of counsel.

1  sides of [Townsend's] representation." *Argonaut*, 264 F. Supp. 2d at 924 (citation omitted).

2  *Second*, Shum never denies that he intends to call Mr. Verdiell and quite possibly also Mr.
3  Epitaux, another Aprius founder who has been deposed in this litigation, as adverse witnesses,
4  and that his claims depend squarely upon attacking Mr. Verdiell's integrity and veracity as an
5  inventor and businessman. That Townsend intends, on behalf of one client, to launch such a
6  frontal attack on the key representatives of a second client, in and of itself, warrants its
7  disqualification. *See Hernandez v. Paicius*, 109 Cal. App. 4th 452, 466 (2003) (where counsel's
8  representation "required her to create a record impeaching her other client's professional
9  reputation and credibility," counsel "engaged in an egregious and shocking breach of her duty of
10 loyalty"). Shum's lengthy papers are silent as to this central point.

11 *Third*, there is a distinct likelihood that this litigation against Mr. Verdiell will have a
12 "direct" adverse effect on Aprius. Aprius made an undisputed factual showing in its moving
13 papers that Townsend's duty of loyalty to Aprius necessarily must extend to Mr. Verdiell, its
14 founder, CEO and Chief Technology Officer, because the company's economic and competitive
15 interests are so closely dependent upon Mr. Verdiell, and because of the likely adverse effects on
16 Aprius's reputation and financial prospects of a ruling against Mr. Verdiell in this case. *See* Mot.
17 at 1-2, 12-13; Verdiell Decl. ¶¶9-10. Shum belittles this factual showing, arguing that the Court
18 should disregard it because Aprius did not submit a declaration from "an investment banker or
19 venture fund manager" as to the possible effect of a fraud judgment against Mr. Verdiell, which it
20 asserts confidently would not affect Aprius one whit. Opp. at 10. However, the duty of loyalty is
21 meant to protect more than clients' strictly economic interests, but also is intended to ensure the
22 attorney's exercise of his independent professional judgment, and no showing of a specific
23 "adverse effect" resulting from an adverse representation need be made. *Unified Sewerage*
24 *Agency v. Jelco Inc.*, 646 F.2d 1339, 1345 (9th Cir. 1981). In any event, there is ample basis in
25 the undisputed factual showing Aprius made in its moving papers to conclude that Aprius's
26 interests are "inextricably intertwined" with Mr. Verdiell's. *See Concat*, 350 F. Supp. 2d at 819
27 (individual managing partner's affairs were "inextricably intertwined with the [company's]
28 business and financial matters").

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-11-

REPLY MPA ISO APRIUS'S MOT. TO INTERVENE &
TO DISQUALIFY TOWNSEND FIRM; CASE NO. C 02-
3262 DLJ (EMC)

### C. Aprius Did Not Impliedly Waive Its Rights.

Toward the end of his opposition, Shum briefly reprises his delay argument, arguing that Aprius has impliedly waived any right to complain because of its purported unreasonable delay in raising the conflicts issue. Opp. at 24. That argument is easily dismissed, as it again is based on the inaccurate factual assumption that Aprius deliberately sat on its rights.

#### 1. Townsend Bears Principal Responsibility for Any Delay in Identifying the Conflict at Issue.

Shum's papers are silent on this point, but it is not seriously disputed that Townsend bears primary responsibility for the conflict of interest that gives rise to this motion. According to Mr. Kirsch, Shum's lead lawyer at the firm, Townsend first agreed to represent Shum on appeal in this action on June 1, 2006 (Kirsch Decl. ¶2), just two months before it became Aprius's patent counsel in August 2006. In February 2008, Townsend filed a notice of substitution of trial counsel. Townsend's submissions concede that at no point during that nearly two-year period did either Shum's litigation lawyers or Aprius's patent lawyers ever realize the existence of any conflict of interest. Kirsch Decl. ¶14; Colwell Decl. ¶8.

Had Townsend performed an adequate conflicts check, it would have revealed that Mr. Kirsch, Shum's lead lawyer, was suing the very same corporate executive, Mr. Verdiell, whom his partner Mr. Colwell was advising on Aprius's intellectual property issues. *See Concat*, 350 F. Supp. 2d at 821 ("[law firm] should have checked for a potential conflict before agreeing to undertake representation of [defendant]. It is at least arguable that, had they done so with sufficient thoroughness, they would have discovered" the conflict). This conclusion is strongly supported by the treatise co-authored by Shum's legal ethics expert, Mark Tuft. *See* P. Vapnek, M. Tuft, E. Peck & H. Wiener, *California Practice Guide: Professional Responsibility* ¶4:26 (TRG 2008) ("At a minimum," a law firm's conflicts-check system should contain not only the names of represented clients, but also, among others, "names of principal officers and directors" and of "key witnesses" in litigation matters).

**2.     Aprius's Motion Is Not Barred by Extreme Delay.**

"Delay will not necessarily result in the denial of a disqualification motion; the delay and the ensuing prejudice must be *extreme*." *Western Continental Operating Co. v. Natural Gas Corp.*, 212 Cal. App. 3d 752, 764 (1989) (emphasis added; citation omitted); *accord, Image Technical Servs., Inc. v. Eastman Kodak Co.,* 820 F.Supp. 1212, 1217 (N.D. Cal. 1993). If the party opposing the motion can show prima facie evidence of unreasonable delay, the burden shifts back to the party seeking disqualification to justify the delay. *Western Continental,* 212 Cal. App. 3d. at 763-64. The test turns on the client's actual (and not constructive) knowledge of the conflict: "the court must initially determine *when the former client became aware of the attorney's potential conflict*. Whether there was diligence in making the motion for disqualification depends upon establishing that knowledge." *River West v. Nickel*, 188 Cal. App. 3d 1297, 1311 (1987) (emphasis added).[7]

Even a substantial delay in moving to disqualify may be justified if the moving party required a reasonable period of time to fully consider the conflict, so long as the resulting delay was not "extreme or unreasonable." Thus, in *Western Continental Operating Co.*, the defendant waited more than one year after being served with the complaint before moving to disqualify plaintiff's counsel, which had previously represented defendant in a substantially related matter. Although defendant had the same general counsel in both matters, and therefore had actual knowledge of the conflict early on, the court accepted defendant's explanation that the conflicting prior representation issue was not fully considered until outside defense counsel was retained for the action. 212 Cal. App. 3d at 764; *see also In re Complex Asbestos Litigation*, 232 Cal. App. 3d

---

[7] Even if Mr. Verdiell were deemed to have been on constructive notice of Townsend's prior involvement as appellate counsel, that would not be sufficient to give rise to an implied waiver. *See Loomis v. Consolidated Stores Corp.*, 2000 WL 1229262 (S.D.N.Y. Aug. 29, 2000) at *5 (although moving party's president was "an experienced businessman, this does not necessarily mean he would understand the legal significance of [law firm's] prior representation of his company") (corporation's motion to disqualify counsel filed one and one half years into the litigation was not untimely, although corporation knew of its prior representation by plaintiff's counsel all along). *See also Image Technical Servs.,* 820 F. Supp. at 1218 (client's awareness of firm's conflicting representation on appeal would not bar conflict challenge to firm's later announced decision to participate in the action at the district court level).

572, 599 (1991) (six-month delay following actual knowledge of conflict did not cause "extreme prejudice"); *cf. River West*, 188 Cal. App. 3d at 1311 (client's "knowledge of the conflict well over three years before" filing motion to disqualify leads to finding of implied waiver).

Precisely the same result follows here. Aprius first became aware of Townsend's conflict when Townsend filed its notice of substitution as trial counsel to Shum in February 2008. Aprius then promptly sought to resolve that issue informally and, when that effort failed, brought the instant motion. That delay was neither "extreme" nor "unreasonable." *See also Argonaut*, 264 F. Supp. 2d at 925 (motion brought "a few weeks" after conflicted counsel took the case and after unsuccessful request for withdrawal). Nor will it cause "extreme prejudice" to Shum. While disqualifying Townsend may cause Shum to lose the services of "knowledgeable counsel of [his] choice," it would not necessarily require him to retain new counsel, since several lawyers who participated extensively in earlier proceedings remain as counsel of record. To the extent that the disqualification results in some additional expense and delay, these are the "client interests implicated by any disqualification motion," and "not the type of prejudice" contemplated by the *Western Continental Operating Co*. decision. *In re Complex Asbestos Litigation*, 232 Cal. App. 3d at 599-600.

### D. The Ethical Wall Townsend Proposes Cannot Cure Its Breach Of The Duty Of Loyalty And Is Too Late To Be Effective.

Townsend contends that although not required to do so, it has created an ethical wall between the attorneys representing Shum in this action and Aprius's patent attorneys, and it argues that measure should be sufficient to protect Aprius's interests. Opp. at 6; Kirsch Decl. ¶15; Colwell Decl. ¶9. But that remedy is too little and far too late. As this Court squarely held in rejecting an identical argument in *Concat*, such measures are legally insufficient because they are aimed only at preserving confidentiality and cannot cure a firm's breach of its duty of loyalty. *Concat,* 350 F. Supp. 2d at 821-22 ("Because the measures taken by [the law firm] were directed only to the preservation of confidentiality and failed to address the issue of client loyalty, they were an ineffective response to the conflict in which the firm found itself embroiled"); *see also California Practice Guide: Professional Responsibility* ¶4:31.6 (screening procedures and ethical

1 walls are "*irrelevant*" in concurrent representation cases) (emphasis added). Moreover, even
2 when such walls can prevent a conflict, they must be promptly implemented in order to be
3 effective. *Id.*

4 Townsend's proposal to adopt an ethical wall is directed only to prevent a breach of
5 confidentiality, and does nothing to cure its breach of the duty of loyalty. Moreover, it apparently
6 was not implemented until some time after late March 2008, when Townsend says it first learned
7 of the conflict. That was about two months after Townsend filed its substitution of counsel and, it
8 says, began devoting substantial amounts of time to the case, and nearly two years after
9 Townsend's first involvement in the case on appeal. "It was thus too late to be effective."
10 *Concat*, 350 F. Supp. 2d at 822.

## CONCLUSION

For the foregoing reasons, the Court should disqualify Townsend from acting as trial counsel for Frank Shum in this action.

Dated: May 23, 2008                                    FOLGER LEVIN & KAHN LLP

                                                       /s/ Ethan P. Schulman
                                                       Ethan P. Schulman
                                                       Attorneys for APRIUS, INC.

11578\9001\603104.2