1  STEPHEN E. TAYLOR (SBN 58452)
   JESSICA L. GRANT (SBN 178138)
2  JAYESH HINES-SHAH (SBN 214256)
   JONATHAN A. PATCHEN (SBN 237346)
3  TAYLOR & COMPANY LAW OFFICES, LLP
   One Ferry Building, Suite 355
4  San Francisco, California  94111
   Telephone:  (415) 788-8200
5  Facsimile:   (415) 788-8208
   E-mail: staylor@tcolaw.com
6  E-mail: jgrant@tcolaw.com
   E-mail: jhinesshah@tcolaw.com
7  E-mail: jpatchen@tcolaw.com

8  RAGESH K. TANGRI (SBN 159477)
   KEKER & VAN NEST LLP
9  710 Sansome Street
   San Francisco, California  94111
10 Telephone: (415) 391-5400
   Facsimile:  (415) 397-7188
11 E-mail: rtangri@kvn.com

12 Attorneys for Defendants INTEL
   CORPORATION, LIGHTLOGIC, INC.
13 and JEAN-MARC VERDIELL

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16                  OAKLAND DIVISION

17

18 FRANK T. SHUM,                        Case No.: C 02-03262 DLJ (EMC)

19        Plaintiff,                     **REPLY MEMORANDUM OF POINTS
                                         AND AUTHORITIES IN SUPPORT OF
20 v.                                    MOTION OF DEFENDANTS INTEL
                                         CORPORATION, LIGHTLOGIC, INC.
21 INTEL CORPORATION, JEAN-MARC          AND JEAN-MARC VERDIELL FOR
   VERDIELL and LIGHTLOGIC, INC.,        SUMMARY JUDGMENT**
22
          Defendants.
23

24

25

26

27

28

TAYLOR & CO.
LAW OFFICES, LLP

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 2

    A.    THIS MOTION IS TIMELY, PERMITTED BY THE FEDERAL
         CIRCUIT'S MANDATE, AND CONSISTENT WITH PRIOR RULINGS
         OF THIS COURT ...................................................................................... 2

    B.    SUMMARY JUDGMENT SHOULD BE GRANTED  ON SHUM'S
         UNJUST ENRICHMENT CLAIM ............................................................... 5

         1.    Because The POL Encompasses Any Allegedly Unlawful  Patenting
              Of Radiance Intellectual Property, Shum's Quasi Contractual Claim
              For Unjust Enrichment Fails As A Matter Of Law ....................................... 5

         2.    Neither LightLogic Nor Intel Is Properly  Subject To A Claim For
              Unjust Enrichment ....................................................................................... 6

         3.    Because The POL Assigned The Parties Equal Property Rights In
              Patented Radiance Intellectual Property, Defendants Could Not
              Have Received Any Benefit From Being Incorrectly Named As
              Inventor ........................................................................................................ 7

    C.    SUMMARY JUDGMENT SHOULD BE GRANTED ON SHUM'S
         BREACH OF CONTRACT CLAIM ........................................................... 9

    D.    SUMMARY JUDGMENT SHOULD BE GRANTED ON SHUM'S
         BREACH OF FIDUCIARY DUTY CLAIM ............................................... 12

         1.    Under The *Persson* Case, Equal Shareholders In A Closely Held
              Corporation Do Not Owe Each Other Fiduciary Duties ........................... 12

              (i)    There is no evidence the corporate form was
                     disregarded ................................................................... 13

              (ii)    There was no pre-existing joint venture agreement ........... 13

         2.    *City Of Hope* Reinforces The Settled Rule In *Persson* And  Provides
              No Basis For Inferring A Confidential Fiduciary  Relationship
              Between Verdiell And Shum ......................................................................... 14

         3.    Shum's Argument That He Has Standing To Sue For Breach Of
              Fiduciary Duty Is Irrelevant To Whether A Fiduciary Duty Existed .......... 17

    E.    SUMMARY JUDGMENT SHOULD BE GRANTED ON SHUM'S
         FRAUD AND FRAUDULENT CONCEALMENT CLAIMS ............................... 19

         1.    Shum's Fraudulent Concealment Claims Fail Because They Are
              Predicated On The Existence Of A Fiduciary Duty ................................... 19

         2.    Shum's Other Arguments Are Conclusory And Lack Evidentiary

i.

TAYLOR & CO.
LAW OFFICES, LLP

Support ............................................................................................ 20

    (a)    Alboszta Was Not Verdiell's Agent ................................. 20

    (b)    Shum Cannot Show Justifiable Reliance ......................... 22

F.    SUMMARY JUDGMENT SHOULD BE GRANTED  ON SHUM'S INVENTORSHIP CLAIM .................................................................. 23

    1.    Shum Has Failed To Identify Evidence Sufficient To Permit A Reasonable Jury To Conclude, By Clear And Convincing Evidence, That He Was An Inventor ...................................................... 23

    2.    Shum Must Identify Independent Corroborating Evidence Of His Conception ...................................................................... 24

        (a)    The Federal Circuit Has Set Forth Specific, Rigorous Requirements For Determining What Evidence Can Be Corroborative ........................................................... 24

        (b)    Shum's Testimony Cannot Establish That He Created An Allegedly Corroborating Document Or Fill In Gaps In These Documents ................................................................. 25

        (c)    Unwitnessed Documents Are Not Sufficiently Corroborative To Constitute Clear And Convincing Evidence ........................ 25

    3.    To Demonstrate Conception, A Putative Inventor Must Provide Corroborating Evidence That Is  Contemporaneous, Complete And Novel ...................................................................... 26

        (a)    Putative Inventor's Corroborating Evidence Must Be Contemporaneous With Conception ............................... 26

        (b)    A Putative Inventor's Corroborating Evidence Must Disclose The Complete Invention ................................................. 27

        (c)    A Putative Inventor's Corroborating Evidence Must Demonstrate Contribution To A Novel  Element Of The Patents-In-Suit .......................................................... 28

    4.    Shum's Failure To Identify Independent Corroborating Evidence Of Inventorship Entitles Defendants To Judgment As A Matter Of Law ........ 29

        (a)    Shum Cannot Establish That An Issue of Material Fact Exists With Regard To Inventorship Of The DBC Patents............. 30

        (b)    Shum Cannot Establish That An Issue of Material Fact Exists With Regard To Inventorship Of The Flexure Patents......... 31

        (c)    Shum Cannot Establish That An Issue Of Material Fact Exists With Regard To Inventorship Of The Dual Enclosure Patent .............................................................. 34

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

TAYLOR & CO.
LAW OFFICES, LLP

1

III.      CONCLUSION ................................................................................................................. 35

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1

# **TABLE OF AUTHORITIES**

2

3

## **CASES**

4   *Acromed Corp. v. Sofamor Danek Group, Inc.*,
        253 F.3d 1371 (Fed. Cir. 2001) .................................................................. 28

5

6   *Aro Mfg. Co., Inc. v. Convertible Top Replacement Co.*,
        365 U.S. 336 (1961) .............................................................................. 29

7   *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
        501 F.3d 1274 (Fed. Cir. 2007) .................................................................. 32

8

9   *Bancroft-Whitney Co. v. Glen*,
        64 Cal. 2d 327 (1966) ............................................................................ 18

10  *Bank of the West v. Valley Nat'l Bank*,
        41 F. 3d 471 (9th Cir. 1994) .................................................................... 23

11

12  *Berkla v. Corel Corp.*,
        302 F.3d 909 (9th Cir. 2002) ..................................................................... 6

13  *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*,
        40 F.3d 1223 (Fed. Cir. 1994) ............................................................... 28, 29

14

15  *California Med. Ass'n. v. Aetna U.S. Healthcare of Cal., Inc.*,
        94 Cal. App. 4th 151 (2001) ...................................................................... 7

16  *Checkpoint Systems, Inc. v. All-Tag Sec. S.A.*,
        412 F.3d 1331 (Fed. Cir. 2005) .................................................................. 31

17

18  *Chou v. Univ. of Chicago & Arch Development Corp.*,
        254 F.3d 1347 (Fed. Cir. 2001) ................................................................ 8, 9

19  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
        43 Cal. 4th 375 (2008)................................................................... 14, 16, 17

20

21  *Coleman v. Dines*,
        754 F.2d 353 (Fed. Cir. 1985) ........................................................ 27, 31, 33, 34

22  *Colorado v. New Mexico*,
        467 U.S. 310 (1984) .............................................................................. 24

23

24  *Cont'l T.V., Inc. v. G.T.E. Sylvania, Inc.*,
        694 F.2d 1132 (9th Cir. 1982) .................................................................... 3

25  *Cooper v. Goldfarb*,
        154 F.3d 1321 (Fed. Cir. 1998) .................................................................. 24

26

27  *County of Solano v. Vallejo Redevelopment Agency*,
        75 Cal. App. 4th 1262 (1999) .................................................................... 7

28

TAYLOR & CO.
LAW OFFICES, LLP

*Cybor Corp. v. FAS Techs., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998) ............................................................................ 33

*Dynamics Corp. v. Vaughan Co.*,
    449 F.3d 1209 (Fed. Cir. 2006) .............................................................................. 3

*Elsbach v. Mulligan*,
    58 Cal. App. 2d 354 (1943) .................................................................................. 14

*Engel Indus., Inc. v. Lockformer Co.*,
    166 F.3d 1379 (Fed. Cir. 1999) .......................................................................... 2, 3

*E-Pass Techs., Inc. v. 3Com Corp.*,
    2006 U.S. Dist. LEXIS 95914 (N.D. Cal. Mar. 17, 2006) ...................................... 2

*Ethicon, Inc. v. United States Surgical Corp.*,
    135 F.3d 1456 (Fed. Cir. 1998) ................................................................. 8, 25, 32

*Ethicon, Inc. v. United States Surgical Corp.*,
    937 F. Supp. 1015 (D. Conn. 1996)
    *aff'd*, 135 F.3d 1456 (Fed. Cir. 1998) .................................................................. 29

*Exxon Chem. Patents v. Lubrizol Corp.*,
    137 F.3d 1475 (Fed. Cir. 1998) .......................................................................... 2, 3

*Fenn v. Yale University*
    283 F. Supp. 2d 615 (D. Conn 2003) .................................................................... 17

*Fiers v. Revel*,
    984 F.2d 1164 (Fed. Cir. 1993) ............................................................................ 28

*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*,
    148 Cal. App. 4th 937 (2007) .............................................................................. 22

*Gemstar-TV Guide Int'l Inc. v. Int'l Trade Comm'n*,
    383 F.3d 1352 (Fed. Cir. 2004) ...................................................................... 25, 26

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ............................................................................................. 32

*Handgards, Inc. v. Ethicon, Inc.*,
    1986 U.S. Dist. LEXIS 18607 (N.D. Cal. Oct. 24, 1986) ..................................... 14

*Hess v. Advanced Cardiovascular Sys.*,
    106 F.3d 976 (Fed. Cir. 1997) ............................................................................. 34

*Huang v. Cal. Inst. of Tech.*,
    72 U.S.P.Q. 2d (BNA) 1161 (C.D. Cal. 2004) ..................................................... 28

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
    802 F.2d 1367 (Fed. Cir. 1986) ........................................................... 27, 31, 33, 34

*Int'l Nutrition Co. v. Horphag Research Ltd.*,
    257 F.3d 1324 (Fed. Cir. 2001) ............................................................................. 8

v.

1  *Kelley v. Price-Macemon, Inc.*,
        992 F.2d 1408 (5th Cir. 1993) ............................................................... 4
2
3  *Kridl v. McCormick*,
        105 F.3d 1446 (Fed. Cir. 1997) ............................................................ 25

4  *Lacotte v. Thomas*,
        758 F.2d 611 (Fed. Cir. 1985) .............................................................. 35
5
6  *Laitram Corp. v. NEC Corp.*,
        115 F.3d 947 (Fed. Cir. 1997) ................................................................ 2

7  *Linear Tech. Corp. v. Impala Linear Corp.*,
        379 F.3d 1311 (Fed. Cir. 2004) ...................................................... passim
8
9  *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*,
        266 F.3d 1358 (Fed. Cir. 2001) ............................................................ 35

10  *Marable v. Nitchman*,
        2007 U.S. App. LEXIS 29741 (9th Cir. Dec. 26, 2007) ....................... 4
11
12  *Markman v. Westview Instruments, Inc.*,
        52 F.3d 967 (Fed. Cir. 1995) ................................................................ 33

13  *Medichem, S.A. v. Rolabo, S.L.*,
        437 F.3d 1157 (Fed. Cir. 2006) ................................................ 25, 32, 33
14
15  *Minidoka Irrigation Dist. v. DOI*,
        406 F.3d 567 (9th Cir. 2005) .................................................................. 4

16  *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*,
        210 F.3d 1099 (9th Cir. 2000) ................................................................ 2
17
18  *Oswald Mach. & Equip. v. Yip*,
        10 Cal. App. 4th 1238 (1992) ............................................................... 21

19  *P&G v. Teva Pharm. USA, Inc.*,
        536 F. Supp. 2d 476 (D. Del. 2008) ..................................................... 25
20
21  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
        96 F.3d 1151 (9th Cir. 1996) .................................................................. 5

22  *Parvin v. Davis Oil Co.*,
        655 F.2d 901 (9th Cir. 1979) ................................................................ 14
23
24  *Persson v Smart Inventions, Inc.*,
        125 Cal. App. 4th 1141 (2005) ...................................................... passim

25  *Phillips v. AWH Corp.*,
        415 F.3d 1303 (Fed. Cir. 2005) ............................................................ 33
26
27  *Price v. Symsek*,
        988 F.2d 1187 (Fed. Cir. 1993) .................................................. 24, 25, 27

28

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

*Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.,*
   762 F.2d 557 (7th Cir. 1985) ................................................................ 3

*Quanta Computer, Inc. v. LG Electronics, Inc.,*
   2008 U.S. LEXIS 4702 (U.S. June 9, 2008) ...................................... 29

*Reese v. Hurst,*
   661 F.2d 1222 (C.C.P.A. 1981) .......................................................... 24

*Richelle L. v. Roman Catholic Archbishop of San Francisco,*
   106 Cal. App. 4th 257 (2003) ............................................................. 16

*Sabasta v. Buckaroos, Inc.,*
   507 F. Supp. 2d 986 (S.D. Iowa 2007) ............................................... 24

*Sales v. State Farm Fire & Cas. Co.,*
   902 F.2d 933 (11th Cir. 1990) .............................................................. 3

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.,*
   264 F.3d 1344 (Fed. Cir. 2001) .......................................................... 24

*Sewall v. Walters,*
   21 F.3d 411 (Fed. Cir. 1994) .............................................................. 27

*Seymour v. Hull & Moreland Engineering,*
   605 F.2d 1105 (9th Cir. 1979) ............................................................ 13

*Singh v. Brake,*
   222 F.3d 1362 (Fed. Cir. 2000) .......................................................... 27

*Singh v. Brake,*
   317 F.3d 1334 (Fed. Cir. 2002) ....................................... 28, 31, 33, 35

*Stern v. Trs. of Columbia Univ.,*
   434 F.3d 1375 (Fed. Cir. 2006) .......................................................... 26

*Stevens v. Marco,*
   147 Cal. App. 2d 357 (1956) .............................................................. 15

*Sutter v. General Petroleum Corp.,*
   28 Cal. 2d. 525 (1946) ....................................................................... 18

*Troost v. Estate of Deboer,*
   155 Cal. App. 3d 289 (1984) .............................................................. 21

*United States v. O'Connell,*
   890 F. 2d 563 (1st Cir. 1989) ............................................................... 4

*Wal-Noon Corp. v. Hill,*
   45 Cal. App. 3d 605 (1975) .................................................................. 5

*Whitney v. Wurtz,*
   2007 U.S. Dist. LEXIS 40000 (N.D. Cal. June 1, 2007) ................... 13

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

**STATUTES AND REGULATIONS**

37 C.F.R. § 1.56 ................................................................................................. 14

Cal. Civ. Code § 1710(3) .................................................................................. 19

Cal. Civ. Code §§ 2299-2300 ........................................................................... 20

**RULES**

Fed R. Evid 56(e) .............................................................................................. 4

Fed. R. Evid. 408(a)(2) ..................................................................................... 11

Fed. R. Evid. 801-804 ....................................................................................... 12

Fed. R. Evid. 802 .............................................................................................. 11

**OTHER AUTHORITIES**

R.C. Faber, *Landis on Mechanics of Patent Claim Drafting* § 3:4 .................. 30

TAYLOR & CO.
LAW OFFICES, LLP

1

## I.  <u>INTRODUCTION</u>

2      Defendants Jean-Marc Verdiell, LightLogic, Inc., and Intel Corporation submit this reply

3   in support of their motion for summary judgment.  A major thrust of Frank Shum's response to the

4   motion is to avoid the merits by claiming the motion is purportedly untimely or barred by prior

5   rulings of the Federal Circuit or this Court.  As defendants demonstrate briefly below, and address

6   more fully in response to Shum's separate Motion to Strike, nothing decided by the Federal

7   Circuit bars any aspect of this motion.  To the contrary, the motion is timely and consistent with

8   this Court's prior rulings.  On some claims, this Court has never considered a prior motion for

9   summary judgment.  On all claims, the motion relies upon new law or new evidence that was

10  unavailable to defendants at the time of the prior rulings.  Defendants are clearly entitled to

11  present that law and evidence to the Court, which individually and collectively provide ample

12  reason for this Court to grant summary judgment.

13      Shum's opposition fails to establish any material issue of fact with respect to any of his

14  state law claims.  Shum's own arguments and admissions confirm that the Plan of Liquidation

15  ("POL") is an express contract that governs the subject matter of the parties' dispute and bars his

16  unjust enrichment claim.[1]  Moreover, Shum's argument that defendants were unjustly enriched is

17  directly contrary to his *own* interpretation of the POL and to controlling law establishing that

18  defendants received no economic benefit from their alleged wrongful conduct.  Plaintiff's breach

19  of contract claim similarly fails because he has no admissible evidence on the fact of injury and

20  damage.  With respect to his claims for breach of fiduciary duty and fraudulent concealment,

21  controlling authority defeats those claims as a matter of law.  Finally, Shum's fraud claim fails for

22  lack of evidence showing any agency on the part of the third party alleged to have made untruthful

23  representations or any justifiable reliance on the part of the person who heard them.  Shum's state

24  law claims are the only legal claims in the case.  Accordingly, their dismissal will eliminate any

25  basis under the Seventh Amendment for a jury trial.  In the unlikely event that any of Shum's

---

[1] The POL is attached as Exhibit 3 to the Declaration of Stephen E. Taylor in support of the opening memorandum in support of defendants' motion for summary judgment.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

TAYLOR & CO.
LAW OFFICES, LLP

1  equitable inventorship claims survive summary judgment, they would be tried by this Court.

2       To defeat defendants' motion on inventorship, Shum has the burden of producing evidence

3  of conception sufficient to permit the trier of fact to find his inventorship by clear and convincing

4  evidence.  Shum's opposition fails to do so with respect to any patent in issue.  Much of Shum's

5  evidence of conception consists merely of his own self-serving testimony or self-authenticated

6  documents and thus fails the most basic requirement of independent corroboration.  More

7  significantly, the few documents which Shum can independently authenticate do not support his

8  claims because they fail to meet one or more of the requirements that corroborating evidence be

9  complete, contemporaneous, and disclose important inventive elements of the patents-in-suit.

10       Faced with a properly supported summary judgment motion, the burden was on Shum to

11  demonstrate the existence of a material issue of fact with respect to each element of his claims on

12  which summary judgment was sought.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,* 210 F.3d

13  1099, 1103, 1107 (9th Cir. 2000).  Because Shum has not met that burden with respect to any of

14  his state or federal claims, defendants' motion for summary judgment must be granted.

15        **II.**    **ARGUMENT**

16  **A.**    **THIS MOTION IS TIMELY, PERMITTED BY THE FEDERAL CIRCUIT'S
   MANDATE, AND CONSISTENT WITH PRIOR RULINGS OF THIS
17  COURT**

18       Defendants fully address Shum's challenge to the propriety and timeliness of this motion

19  in their separately filed Opposition to Shum's Motion to Strike.  Two general issues, however, are

20  worthy of brief mention here.  First, this motion is completely consistent with the Federal Circuit's

21  mandate.  The scope of that mandate extends only to those issues the Court actually decided, either

22  expressly or by necessary implication.[2]  The basic issue raised by this motion is whether plaintiff

23  can meet his burden of proof at trial on each of his claims in this case.  Nothing in the Federal

---

25  [2] *See E-Pass Techs., Inc. v. 3Com Corp.*, 2006 U.S. Dist. LEXIS 95914 (N.D. Cal. Mar. 17, 2006), *aff'd*,
26  473 F.3d 1213, 1218 (Fed. Cir. 2007); *accord Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382-
   83 (Fed. Cir. 1999); *Exxon Chem. Patents v. Lubrizol Corp.,* 137 F.3d 1475, 1478 (Fed. Cir. 1998); *Laitram*
27  *Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997).

28

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1   Circuit's mandate speaks to that issue.  In fact, the Federal Circuit could not have determined the

2   sufficiency of the evidence supporting Shum's inventorship or unjust enrichment claims, since

3   those questions had not been previously raised or decided in this Court.[3]  While the issue of

4   evidentiary sufficiency was briefed in connection with this Court's entry of summary judgment on

5   Shum's other state law claims, the Federal Circuit did not address it, either expressly or by

6   necessary implication.  In these circumstances, when an appellate court has remanded the case for

7   further proceedings, including a possible trial, the law is clear that a motion for summary

8   judgment, if otherwise proper, is consistent with the terms of the remand and should be granted.[4]

9        Second, this motion is timely and is not barred by any prior rulings of this Court.  This

10  Court has not previously ruled on the sufficiency of the evidence supporting Shum's inventorship

11  or unjust enrichment claims.  Indeed, because Shum's unjust enrichment cause of action was

12  initially dismissed, this is the first opportunity defendants have had to seek summary judgment on

13  that claim.  While the Court denied summary judgment on Shum's other state law claims in 2004,

14  since that time there have been important changes in the relevant law and available evidence

15  bearing on the propriety of summary judgment with respect to every single one of Shum's claims:

16  •   In 2005 and 2008, California courts handed down important controlling decisions

17      establishing the lack of merit in Shum's breach of fiduciary duty and fraudulent

18      concealment claims.

19  •   Between the close of briefing on summary judgment in March 2004 and the close

20      of fact discovery in October 2004 (prior to the bench trial), Shum produced 19

21      gigabytes of electronic data – the entirety of his electronic production.  Shum also

22      produced 7,816 pages of hard copy documents, more than 30% of his hard copy

23  _____

24  [3] *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1220 (Fed. Cir. 2006); *Engel Indus.*, 166 F.3d at
    1383; *Lubrizol Corp.*, 137 F.3d at 1484.

25
    [4] *Cont'l T.V., Inc. v. G.T.E. Sylvania, Inc.*, 694 F.2d 1132, 1135-36 (9th Cir. 1982); *Sales v. State Farm
26  Fire & Cas. Co.*, 902 F.2d 933, 935 (11th Cir. 1990); *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*,
    762 F.2d 557, 559-60 (7th Cir. 1985).  In such cases, summary judgment is viewed as providing the non
27  moving party with "the functional equivalent of a new trial."  *Publisher's Res.*, 762 F.2d at 559.

28
                                                                3.

TAYLOR & CO.
LAW OFFICES, LLP

production.  Much of this material was produced only after fierce resistance by Shum and pursuant to court order.  Based largely upon this late production, defendants took an additional 14 depositions (20 days of testimony) from Shum and other non-party, non-expert witnesses whose existence was disclosed for the first time by Shum's tardy document production.  Shum's failure to produce documents prior to completion of the prior summary judgment briefing in March 2004 resulted in four separate motions to compel by defendants and the entry of numerous orders by Magistrate Judge Chen, including the imposition of sanctions based on a finding that Shum had engaged in "bad faith delay" in failing to produce documents.

- In January 2005, this Court conducted an eight day inventorship trial which produced significant new testimony from Shum and others.[5]

As more fully addressed in defendants' Opposition to Plaintiff's Motion to Strike, every one of Shum's federal and state claims is refuted by this new law and new evidence, none of which was available to defendants at the time of this Court's April 27, 2004 Summary Judgment Order [Docket Item No. 201].  The availability of new controlling legal authority and new evidence indisputably constitutes a basis for reevaluating the denial of a summary judgment motion under the discretionary law of the case doctrine.  *See Marable v. Nitchman*, 2007 U.S. App. LEXIS 29741 at *14 n.11 (9th Cir. Dec. 26, 2007); *Minidoka Irrigation Dist. v. DOI*, 406 F.3d 567, 573 (9th Cir. 2005).

///

---

[5] Relying on evidence admitted in the first inventorship trial in support of this motion is clearly proper.  The fact that a retrial may be required on issues of inventorship has no bearing on the question of whether evidence admitted at an earlier trial can be used in support of summary judgment.  Testimony and other evidence from a prior trial, subject to cross-examination and appropriate objections, satisfy the criteria of relevance, personal knowledge and potential admissibility established by Federal Rule of Civil Procedure 56(e) – indeed, they do so more fully than the affidavits customarily used to satisfy that Rule.  The fact that certain legal findings made following the first trial have been vacated on appeal is simply irrelevant.  *See Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408 (5th Cir. 1993); *United States v. O'Connell*, 890 F. 2d 563 (1st Cir. 1989).

4.

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

1

**B.    SUMMARY JUDGMENT SHOULD BE GRANTED
ON SHUM'S UNJUST ENRICHMENT CLAIM**

2

3

**1.    Because The POL Encompasses Any Allegedly Unlawful
Patenting Of Radiance Intellectual Property, Shum's Quasi
Contractual Claim For Unjust Enrichment Fails As A Matter Of Law**

4

5    Shum concedes that (1) under California law, a claim for unjust enrichment will not lie if

6    the parties' dispute is governed by an express agreement covering the "same subject matter,

7    existing at the same time," and (2) the POL is an express agreement defining the parties' rights in

8    Radiance technology.  *See* Plaintiff's May 23, 2008 Opposition Memorandum ("Opp. Mem.") at

9    26 (citing *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975)). Notwithstanding this

10   concession, Shum nevertheless argues that claims for unlawful patenting of Radiance technology

11   are not part of the "subject matter" of the POL and do not exist "at the same time" as the claims

12   governed by the agreement.[6]  Both arguments fail as a matter of law.

13   The POL regulates both the general subject matter of this dispute and the specific issue of

14   allegedly unlawful patenting.  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167

15   (9th Cir. 1996).  With respect to general subject matter of patenting activity, this Court held in

16   2004 that "[t]he filing of patent applications to protect Radiance intellectual property is a business

17   opportunity" within the meaning of the provision of the POL allowing Verdiell and Shum to

18   "pursue any and all such other business activities as they desire . . . even if they take, or attempt to

19   take, a business opportunity that the Corporation could itself have pursued."  *See* April 27, 2004

20   Summary Judgment Order at 21.

21   The plain language of the POL covers the specific subject matter of this suit – alleged

22   unlawful patenting of Radiance technology.  Among other things, such alleged conduct is clearly

23   an "attempt to take" a "business opportunity that [Radiance] could itself have pursued" and a

24   potential violation of the provision in the POL granting the parties "equal rights to independently

25   exploit" Radiance technology.  Indeed, in opposing summary judgment in 2004, Shum adopted

26

27   [6] Shum's contention that the POL "was *not* 'fairly' entered into" (Opp. Mem. at 27 n.20) is meritless.  *See* Section II.E.1 and note 22, *infra*.

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

this view, arguing clearly and expressly:

- that "fraudulent and inaccurate patent applications . . . constitute breaches of the POL," and in particular of the "equal rights" provision thereof (2004 MSJ Opp. at 12) [Docket Item No. 170];

- that "[d]efendants breached the contract by submitting and securing a patent that interferes with Frank's ability to market and use the technology under the exploitation provision in the POL . . ." (*Id.* at 23); and

- that the POL governs both any "subsequent act by Mr. Verdiell which disrupts those equal rights" and the "illicit gains due to those fraudulent patents." (*Id.* at 15).

In response, the Court clearly recognized and accepted Shum's interpretation of the POL, including in particular Shum's contentions that the "equal rights" provision of the POL may be violated both by an allegedly unlawful failure to "recognize Shum's status as an inventor on . . . patent applications filed with the PTO," and by Verdiell's having "fraudulently" represented himself to be "the sole inventor of the patented technology." *See* April 27, 2004 Summary Judgment Order at 24, 25. Because the plain language of the POL, a valid and enforceable express contract, directly regulates the precise conduct that is the subject of Shum's unjust enrichment claim, it is barred as a matter of law. *See Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002).

### 2. Neither LightLogic Nor Intel Is Properly Subject To A Claim For Unjust Enrichment

The fact that the POL bars an unjust enrichment claim against Verdiell necessarily implies that such claims are also barred against those whose rights in former Radiance intellectual property derive from Verdiell. The purpose of the POL, after all, was to give each party "equal rights" to pursue, independently and aggressively, the business opportunities flowing from the Radiance intellectual property. That pursuit necessarily called for new entities and new investors. As a practical matter, then, the regime of open competition contemplated in the POL could only

6.

1    succeed if its benefits were also available to those entities and investors.

2            For that reason, *California Medical Association v. Aetna U.S. Healthcare of California,*

3    *Inc.*, 94 Cal. App. 4th 151 (2001), is squarely on point.  Here, as in that case, Shum is bound by

4    negotiated contractual provisions defining rights and remedies against the other contracting party.

5    Here, as there, the successful implementation of those provisions depends on restricting the

6    plaintiff's remedies to the breaching party, without drawing in third parties who may incidentally

7    have benefited from that breach.[7]  As a result, plaintiff's unjust enrichment cause of action against

8    LightLogic and Intel is barred as a matter of law.

9            **3.     Because The POL Assigned The Parties Equal Property Rights In
                     Patented Radiance Intellectual Property, Defendants Could Not Have
10                    Received Any Benefit From Being Incorrectly Named As Inventor**

11           Defendants' opening memorandum demonstrates that because the "equal rights" provision

12   of the POL has the legal effect of making Shum and Verdiell *co-owners* of any patented Radiance

13   technology, any unlawful failure to name Shum on any patent based on Radiance technology

14   could not, as a matter of law, confer any actionable benefit upon the person claiming inventorship.

15           Although Shum characterizes this interpretation of the POL as "disingenuous," he does not

16   offer a competing interpretation.  *See* Opp. Mem. at 30.  Indeed, Shum himself has expressed

17   precisely the same understanding in testimony given subsequent to the entry of the Court's 2004

18   Summary Judgment Order:

19           Q:  BY MR. TANGRI:  I'm sorry.  Why did you believe that adding yourself as an
                 inventor while leaving Marc on as a co-inventor would get you exactly the
20               same rights as having yourself named as the sole inventor?

21   _____

22   [7]  *County of Solano v. Vallejo Redevelopment Agency*, 75 Cal. App. 4th 1262 (1999), does not support
     Shum's claim.  In *County of Solano*, the court simply considered whether defendant City, a non-party to a
23   contract, had received a "benefit" as a consequence of another defendant's breach.  Significantly, the court
     did not consider whether the contract was intended to preclude an unjust enrichment claim against the City.
24   *Id.* at 1275-79.  That decision is further distinguishable because the court found that the City effectively had
     controlled and orchestrated another defendant's decision to enter the contract and "intended" that defendant
25   assume the obligation sued upon.  *Id.* at 1279-80.  Thus, the availability of an unjust enrichment action
     against the City was not only consistent with the contract, but effectively contemplated by it.  Here, Shum
26   cannot maintain that LightLogic and Intel – nonparties to the POL – orchestrated Verdiell's decision to
     enter into the POL, that either of them intended that Verdiell assume his obligations under the POL, or that
27   having either of them respond in unjust enrichment would be consistent with the contract's purpose.

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

MR. BARRY:  It looks like it calls for a legal conclusion.  I mean, if the witness is capable of answering it, go ahead.

Q:  BY MR. TANGRI:  He just said he believed it, so I'm trying to ask him why he thinks it.

A.  During the Radiance days I had believed I was the sole inventor to a patent application, but at the same time as part of the plan of liquidation, I had agreed to share the technology with Marc whether I, you know, even though I was the sole inventor.  So I had already agreed to – as part of the plan of liquidation to share the ownership with Marc, so whether I was sole inventor or co-inventor did not give me any more rights.

Q:  If you were named the sole inventor, would it give him fewer rights?

A:  An ownership-wise, no.

*See* Declaration of Jayesh Hines-Shah in Support of Defendants' Summary Judgment Motion Reply Brief ("Hines-Shah Decl."), ¶ 3, Exh. 1 (F. Shum Depo. (11/1/04) at 766:10-767:5).

This uncontested understanding of the POL undercuts and eliminates any factual basis for Shum's argument that Verdiell wrongfully benefited from "the right to exclude others from making, using, offering for sale or selling the invention through the United States."  Opp. Mem. at 30.  As Shum's own testimony confirms, given the allocation of property rights in the POL, neither Shum nor Verdiell ever had or could have exercised the unilateral right to exclude under the disputed patents.  *See Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324 (Fed. Cir. 2001); *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998).[8]

Given this interpretation of the terms of the POL, *Chou v. Univ. of Chicago & Arch Development Corp.*, 254 F.3d 1347, 1353-54, 1363-64 (Fed. Cir. 2001), is dispositive on the question of whether persons in defendants' position can be unjustly enriched by failing to name an inventor.  There, as here, plaintiff claimed that defendants were unjustly enriched as a

---

[8] The ownership regime created by the POL, in which neither party had the right to exclude the other from exercising or licensing rights under the Radiance patents, is in sharp contrast with the facts of *University of Colorado Foundation v. American Cyanamid Co.*, 342 F.3d 1298 (Fed. Cir. 2003).  In *American Cyanamid*, the defendant both unilaterally claimed and unilaterally exercised the right to exclude other competitors from the marketplace, resulting in the benefit of substantially increased profits attributable to the exercise of that right.  Under the POL neither party to the agreement could ever have had the kind of rights that American Cyanamid claimed and exercised.

8.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

TAYLOR & CO.
LAW OFFICES, LLP

1   consequence of the failure to name her as an inventor or co-inventor on a patent.  There, as here,

2   two defendants, the University and Aviron, had a contract with the plaintiff which gave them

3   defined ownership rights in the patent, without regard to the attribution of inventorship.  Given

4   these preexisting contractually assigned ownership rights, the court held that:

> [B]oth the University and Aviron would have had the same rights to the
> inventions and thus the same enrichment from them even if Chou had been named
> as an inventor. The district court did not err, therefore, in dismissing her claim for
> unjust enrichment against Aviron, and Chou is not entitled to have the district
> court reinstate that claim against the University.

8   *Chou v. Univ. of Chicago*, 254 F.3d at 1363-64.[9]  Shum stands in precisely the same position as

9   Chou.  Regardless of whether Verdiell or Shum are found to be inventors of the disputed patents,

10  their rights as co-owners under those patents – including any rights to exclude – will not change.

11  Shum's inventorship status is therefore wholly irrelevant to the respective economic rights of the

12  parties, and no unjust enrichment could have resulted from any alleged failure to name him as an

13  inventor.[10]

14      **C.    SUMMARY JUDGMENT SHOULD BE GRANTED**
15             **ON SHUM'S BREACH OF CONTRACT CLAIM**

16          The only actionable breach claimed by Shum is a violation of Section 2(d)(iii) of the POL,

17  which grants Shum "equal rights" to exploit all Radiance technology.  *See* April 27, 2004

18  _____

19  [9] Shum's principal substantive response to *Chou* is to assert, incorrectly, that "the Federal Circuit . . .
    actually reinstated the unjust enrichment cause of action against the University."  Opp. Mem. at 30 n.28.

20  The Federal Circuit did just the opposite, as reflected in the language quoted from the Court's opinion
    above.

21  [10]  This legal conclusion moots Shum's request, pursuant to Rule 56(f), to defer summary judgment

22  because unjust enrichment discovery is continuing.  Opp. Mem. at 40; MacDonald Decl., ¶¶ 60-65.  Here,
    as in the case of the dismissal of plaintiff's claim in *Chou*, such discovery would be futile because the

23  defendants would have had the "same rights . . . and thus the same enrichment," however inventorship was
    attributed.  This Court previously held that Shum could pursue unjust enrichment remedies for fraudulent

24  concealment and breach of contract, despite the dismissal of his substantive claim for unjust enrichment
    (March 25, 2003 Motion to Dismiss Order at p. 44; April 27, 2004 Summary Judgment Order, at pp. 25-

25  26).  But the conclusion that, given the ownership structure created by the POL, defendants could not as a
    matter of law have been unjustly enriched by failing to name Shum as an inventor means that defendants

26  are also necessarily entitled to partial summary judgment barring parallel unjust enrichment remedies for
    breach of contract and fraudulent concealment, even if the underlying substantive claims survive this

27  motion for summary judgment.

28

9.

TAYLOR & CO.
LAW OFFICES, LLP

Summary Judgment Order at 22; Section II.A.3, *supra*.  By its clear terms, that provision can only be construed to be breached when a party to the POL engages in conduct which prevents the other party from exercising its own equal rights to the technology.  As Shum explained to Verdiell during the negotiation of the POL, "we each have equal rights to all IP *and cannot prevent the other person from using it in any way.*"  Hines-Shah Decl., ¶ 10, Exh. 7 (emphasis added).[11] Consistent with this interpretation, Shum previously argued to this Court that the "equal rights" provision is violated when one party's conduct interferes with the other party's "ability to market and use the technology."  2004 MSJ Opp. at 23.  Accordingly, absent conduct that prevents the other party from exploiting Radiance technology, a claim under the POL will not lie.  Because Shum presents no admissible, relevant evidence sufficient to raise a genuine issue of material fact as to whether Verdiell's alleged actions prevented Shum from exercising his equal rights or in any way or resulted in any actual damages, summary judgment must be granted on the breach of contract claim.[12]

It is undisputed that Shum made no affirmative effort to exploit his rights in the Radiance technology between mid-1998, when he abandoned his own efforts to develop and market the Radiance technology, and mid-2001, when he learned of Intel's acquisition of the technology. Hines-Shah Decl., ¶ 3, Exh. 1 (F. Shum Depo. (11/2/2004), p. 924:18-22.)  Since Shum made no effort to exercise his contractual rights during that period, nothing that Verdiell did can be said to have interfered with Shum's exercise of those rights during that period.  Faced with this critical

---

[11] The broader statement of Shum's goals for the transaction from which this statement is drawn is as follows:

> "… I don't want to haggle over who invented what at what time.  This only puts more ties on each of us.  We will never agree on this matter and only leads to more problems in the future .... So let's just say we each have equal rights to all IP and cannot prevent the other person from using it in any way."

Hines-Shah Decl., ¶ 10, Exh. 7.

[12] Shum confusingly states in opposition that he may maintain a breach of contract action against "defendants."  *See* Opp. Mem. at 31-32.  In fact, Shum's breach of contract action is only alleged against Verdiell and no other Defendant is named.  *See* Fourth Amended Complaint at p. 12 [Docket Item No. 294].

10.

TAYLOR & CO.
LAW OFFICES, LLP

1   undisputed fact, Shum offers three types of evidence in an attempt to show a breach leading to

2   actual damages:  (1) patents and patent assignments; (2) statements regarding Intel's alleged

3   failure to certify that Verdiell is a co-owner of the Radiance technology, and Shum's alleged

4   resulting failure to obtain marketing assistance; and (3) Verdiell's withdrawal of the Radiance

5   DBC patent application.

6        The patents and patent assignments, standing alone, cannot have prevented Shum from

7   taking any action, since he was not aware of any of them until 2001 and since they could not, as a

8   matter of law, have impaired his ownership rights under the POL.  S*ee* MacDonald Decl., Exhibits

9   LL - TT.

10       With respect to Intel's alleged refusal to certify that Shum was a co-owner of Radiance

11  technology, the alleged statements are irrelevant because they have no tendency to prove the

12  contested proposition.  The alleged refusal of Intel, a non-party to the POL, to confirm Shum's

13  interpretation of the POL – particularly in the context of a contested negotiation concerning

14  Shum's concededly massive demands for compensation from Intel – simply is not evidence of a

15  breach of the POL by Verdiell.[13]  Moreover, any such statements were made in compromise

16  negotiations relating to Shum's potential claims and, hence, are inadmissible on that ground as

17  well.  *See* Fed. R. Evid. 408(a)(2); Shum Decl., ¶ 18; Hines-Shah Decl., ¶¶ 3, 11, Exh. 1 (F. Shum

18  Depo. (11/14/2003), pp. 531:24-532-24), Exh. 8.

19       The record is also devoid of any evidence that Intel's alleged refusal to confirm the terms

20  of the POL prevented Shum from exploiting his legal rights in such a way as to cause him any

21  form of actionable damage.  Shum asserts that Robertson Stephens executives told him that a

22  written confirmation of his rights was required to obtain assistance in marketing – but he offers no

23  *admissible evidence* on that score.  *See* Shum Decl., ¶¶ 17-18, Exh. X.  The alleged statements by

24  the Robertson Stephens representatives are being offered for the truth of the matter asserted – *i.e.*

---

[13]  Intel's alleged statements are inadmissible hearsay as to Verdiell.  *See* Shum Decl., ¶ 18; Fed. R. Evid. 802.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

TAYLOR & CO.
LAW OFFICES, LLP

1   that written confirmation was in fact required to obtain marketing assistance – and were

2   purportedly made by an available non-party.  No exception to the rule against hearsay applies, and

3   the statements are inadmissible.  *See* Fed. R. Evid. 801-804.  Moreover, even were it true, and

4   supported by admissible evidence, that Robertson Stephens felt that Shum needed *more than the*

5   *Plan of Liquidation itself*, that would not mean that Verdiell, or Intel, breached the POL.  Nor

6   would it create a material issue as to whether Verdiell interfered with Shum's "equal rights" under

7   the POL because the Robertson Stephens statements – even if admissible – do not tend to show

8   that anything defendants did altered Shum's rights.  Finally, it is undisputed that other than the

9   purported meeting with Robertson Stephens, Shum took no further action after mid-2001 to

10   exploit his rights in the Radiance technology.  Hines-Shah Decl., ¶ 3, Exh. 1 (F. Shum Depo.

11   (11/14/03), pp. 454:15-455:5; 456:2-4; 457:11-18; 458:15-16; 459:11-18).

12         Lastly, Shum's claim that his rights under the POL were violated because "Verdiell

13   ordered the [Radiance DBC patent] application withdrawn," also fails to raise a material issue of

14   fact.  Opp. Mem. at 32.  As Shum states in his Fourth Amended Complaint, the Radiance DBC

15   patent application was withdrawn on November 17, 1997, more than one month *before* the POL

16   was signed on January 5, 1998.  Fourth Amended Complaint, ¶¶ 16-17 [Docket Item No. 294];

17   Taylor Decl., ¶ 5, Exh. 3, at ¶ 7).  As a result, the withdrawal could not, as a matter of law, have

18   resulted in a breach of the fully integrated POL.

19       **D.**     **SUMMARY JUDGMENT SHOULD BE GRANTED ON**

20              **SHUM'S BREACH OF FIDUCIARY DUTY CLAIM**

21           **1.**     **Under The *Persson* Case, Equal Shareholders In A Closely Held**
                  **Corporation Do Not Owe Each Other Fiduciary Duties**

22         It is well-settled in California that equal shareholders do not owe each other a fiduciary

23   duty, and that the absence of such a fiduciary duty can be decided as a matter of law.  *Persson v*

24   *Smart Inventions, Inc.,* 125 Cal. App. 4th 1141, 1156, 1159 (2005).  There are two limited

25   exceptions to this rule: (1) where there is evidence that the corporate form was disregarded (so that

26   the parties were in fact operating as a partnership or joint venture), or (2) where there are pre-

27   incorporation agreements among partners or joint venturers and substantial justice requires that the

28

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1   parties be treated in accordance with a pre-incorporation agreement.  *Persson*, 125 Cal. App. 4th at

2   1156.  Neither exception applies to this case.

3                               **(i)      There is no evidence the corporate form was disregarded**

4           In a footnote, Shum devotes two sentences to his claim that the Court should disregard the

5   corporate entity because Radiance allegedly failed to hold regular board meetings and failed to

6   issue stock.  Opp. Mem at 36 n.36.  This weak attempt to "pierce the corporate veil" is without

7   merit.  As Shum acknowledges, "Radiance was only in existence as a corporate entity for a few

8   months."  *Id.*  During this time, Radiance did indeed observe corporate formalities and act as a

9   corporation, as the existence of the POL and the related incorporation and dissolution

10  documentation establish.  It is also untrue that Radiance failed to issue stock.  Shum's own

11  evidence shows that in an Action by the Board of Directors dated May 6, 1997, the corporation

12  issued shares of common stock to Verdiell and Shum.  *See* MacDonald Decl., Exh. Q.  Moreover,

13  even if during Radiance's short life span there was some informality (or even "carelessness") with

14  regard to corporate procedure, such conduct does not constitute sufficient evidence to disregard

15  the corporate form.  *Whitney v. Wurtz*, 2007 U.S. Dist. LEXIS 40000 at *21 (N.D. Cal. June 1,

16  2007) (failure to register, lack of shareholder meetings and inadequate minutes of board meetings

17  did not amount to more than "carelessness" and was insufficient to raise a genuine dispute about

18  the corporate form); *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1112 (9th Cir.

19  1979) (excusing "a degree of informality" in the absence of "more serious forms of abuse" such as

20  commingling).

21                              **(ii)      There was no pre-existing joint venture agreement**

22          *Persson* makes it clear that any prior "joint venture" or "partnership" that might have

23  existed is normally extinguished upon incorporation.  *Persson*, 125 Cal. App. 4th at 1159.  Here,

24  there was no pre-existing partnership or joint ventureship that could have continued to exist after

25  incorporation – Verdiell and Shum were not in business together until Shum convinced Verdiell to

26  join his pre-existing *sole proprietorship* by forming a corporation.  Shum Decl., ¶¶ 7, 10.

27  *Compare Persson,* 125 Cal. App. 4th at 1156 (parties were in a formal partnership before

28

                                                  13.

TAYLOR & CO.
LAW OFFICES, LLP

1  incorporation).[14]

2       Nowhere in his argument does Shum meet his demanding burden to demonstrate that the

3  pre-incorporation relationship between Shum and Verdiell was the "rare situation" where a joint

4  venture can be found "in the absence of a written joint venture agreement" that is clear and

5  unambiguous.[15]  *Handgards, Inc. v. Ethicon, Inc.*, 1986 U.S. Dist. LEXIS 18607 at *4, *8 (N.D.

6  Cal. Oct. 24, 1986) (deciding the absence of a joint venture on summary judgment).  Shum's

7  allegedly "abundant evidence" consists of two emails where Verdiell refers to himself and Shum

8  as "we."  Opp. Mem. at 35:7-10.  Other than that, all Shum does is repeatedly refer to the term

9  "joint inventor" throughout his argument.  Unfortunately for Shum, the alliterative and

10 homophonic properties of the terms "joint venture" and "joint inventor" do not a fiduciary duty

11 make, and his attempt to create that relationship fails as a matter of law.[16]

12           **2.    *City Of Hope* Reinforces The Settled Rule In *Persson* And**
               **Provides No Basis For Inferring A Confidential Fiduciary**
13             **Relationship Between Verdiell And Shum**

14      In an attempt to circumvent the clear rule of law in *Persson*, Shum argues that Verdiell

15 nevertheless owed a fiduciary duty based upon a confidential relationship between them.  This

16 argument rests primarily on a gross mischaracterization of the California Supreme Court's recent

17 ruling in *City of Hope National Medical Center v. Genentech, Inc.*, 43 Cal. 4th 375, 389 (2008).

18 Shum suggests that *City of Hope* held that whether a fiduciary duty arises from an agreement to

19

20 _____

21 [14] The lone case cited by Shum is easily distinguished because it involved a corporate entity formed "for the express purpose" of carrying out a pre-existing joint ventureship agreement.  *Elsbach v. Mulligan*, 58 Cal. App. 2d 354, 359 (1943).

22 [15] To establish the existence of a joint venture in California, there must be evidence showing: "(1) a
23 community of interest among the parties; (2) a sharing of profits and losses; (3) an 'equal right' or a 'right in some measure' to direct and control the conduct of each other and of the enterprise; and (4) a fiduciary
24 relationship between or among the parties."  *Id.* at *4 (citing *Parvin v. Davis Oil Co.,* 655 F.2d 901, 904 (9th Cir. 1979)).

25 [16] Citing to 37 C.F.R. § 1.56 regarding the duty of candor and good faith required of patent filers *to the*
26 *PTO* does not create a fiduciary relationship between Verdiell and Shum, nor does it create a joint venture agreement.  Opp. Mem. at 35 n.34.  Shum cites no caselaw relating 37 C.F.R. § 1.56 to an alleged fiduciary
27 duty, even between co-inventors, because there is none.  His actual argument is that Verdiell and Shum were joint venturers, a claim the evidence and caselaw refutes.

28

                                          14.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1  commercialize intellectual property is invariably a question of fact, and that in so holding the

2  Supreme Court disapproved *Persson*.  Opp. Mem. at 32:10-14.  Both of these suggestions are

3  false.

4         In *City of Hope*, the Supreme Court reversed a jury verdict for punitive damages in favor

5  of plaintiff, holding that *as a matter of law* a fiduciary relationship is "not necessarily created

6  when a party, in return for royalties, entrusts a secret idea of another to develop, patent and

7  commercially develop."  This holding rejected as overbroad the suggestion in Shum's principal

8  authority, *Stevens v. Marco*, 147 Cal. App. 2d 357 (1956), that a fiduciary duty arises when one

9  party, in exchange for royalty payments, entrusts a secret invention to another party to develop,

10  patent and market.  In reaching this result, the Supreme Court cited *Persson* with approval in

11  support of its view that fiduciary obligations generally arise only when it has been shown that

12  "one party's vulnerability is so substantial as to give rise to equitable concerns underlying the

13  protection afforded by the law governing fiduciaries."  43 Cal. 4th at 389 (citing *Persson*, 125 Cal.

14  App. 4th at 1161), and then held that City of Hope had "not made such a showing."  *Id.*[17]  Thus,

15  *City of Hope* is a decision that limits, rather than expands, the range of circumstances in which it is

16  appropriate to infer the existence of a confidential relationship, and strengthens, rather than

17  weakens, the argument for deciding the issue as a matter of law here.[18]

18

---

19  [17]  *City of Hope* cited *Nelson v. Abraham,* 29 Cal. 2d 745 (1947) and *Universal Sales Corp. v. Cal. Press*
20  *Mfg. Co.*, 20 Cal. 2d 751 (1942), not to state that fiduciary duty cannot be decided as a matter of law, but to
explain that fiduciary duties grounded in a confidential relationship may be based on the factual
21  circumstances.  *City of Hope*, 43 Cal. 4th at 391-92.  When the facts establish that the necessary
vulnerability is absent, as is the case here, no fiduciary duty exists as a matter of law.  *See Persson*, 125
22  Cal. App. 4th at 1156.

23  [18]  The other cases Shum cites to argue that fiduciary duty is a question of fact that can never be decided on
motion for summary judgment simply do not state what he claims.  *See Celador Int'l Ltd. v. Walt Disney*
24  *Co.*, 347 F. Supp. 2d 846, 854 (C.D. Cal. 2004) (deciding a motion to dismiss and nowhere stating that joint
venture is a jury question); *Weiner v. Fleischman*, 54 Cal. 3d 476, 482 (1991) (commenting only on the
25  burden of proof, not whether it must go to the jury); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1580-81
(1994) (stating that where a contract to perform billing and collection services giving evidence of agency
26  exists, there was sufficient evidence to present the jury with the question of whether a fiduciary relationship
existed); *Richelle L. v. Roman Catholic Archbishop of San Francisco*, 106 Cal. App. 4th 257, 272 n.6
27  (2003) (noting in footnote that a confidential relationship is a question of fact without regard to entry of
summary judgment).

28

15.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

It is clear that Shum, like the plaintiffs in *Persson* and *City of Hope*, cannot demonstrate the vulnerability that "is the necessary predicate of a confidential relation, and [that] the law treats…as absolutely essential." *Persson,* 125 Cal. App. 4th at 1161; *City of Hope*, 43 Cal. 4th at 389; *Richelle L. v. Roman Catholic Archbishop of San Francisco*, 106 Cal. App. 4th 257, 273 (2003). This is true whether vulnerability is measured by competence, trust, or bargaining power.

**Competence:** "The vulnerability that is the necessary predicate of a confidential relation … usually arises from advanced age, youth, lack of education, weakness of mind, grief, sickness, or some other incapacity." *Persson*, 125 Cal. 4th at 1162 (quotation omitted).[19] In *Persson*, which is factually analogous to the present case, the court "reject[ed] the notion that a confidential relationship may arise, in the course of arms-length buyout negotiations between two equal shareholders of a corporate enterprise, both of whom are represented by counsel and accountants, simply because one undertakes to 'paint [the other person] the truest picture possible of where the company is right now,' and the other person relies on him to do so. Indeed, this is the antithesis of situations in which confidential relations give rise to fiduciary obligations." *Persson*, 125 Cal. App. 4th at 1162; *see also City of Hope*, 43 Cal. 4th at 389.

**Trust:** In *City of Hope*, the plaintiff claimed that it reposed trust in Genentech. 43 Cal. 4th at 389. In *Persson*, the plaintiff argued that his trust in his business partner's promise to tell him everything about the current state of the business was sufficient to create the necessary vulnerability. *Persson*, 125 Cal. App. 4th at 1161-62. In both cases, the courts found that this factor did not support a finding of fiduciary duty, because if it did then all or almost all contracts would give rise to fiduciary duties. *City of Hope*, 43 Cal. 4th at 389; *Persson*, 125 Cal. App. 4th at 1161. Here, of course, the argument based upon trust is much weaker even than in *Persson*, because no similar promise to tell everything was made and because Shum admits he had previously lost trust in Verdiell. Taylor Decl., ¶ 4, Exh. 2 at pp. 27:9-29:12; Decl. at ¶ 7, Exh. 5.

---

[19] In contrast, Shum's own declaration devotes the first two pages to highlighting his education, scientific accomplishments, knowledge of the optoelectronic industry, and familiarity with patents – facts that completely contradict his conclusory and unsupported claim of "vulnerability." Shum Decl., ¶¶ 1–5.

TAYLOR & CO.
LAW OFFICES, LLP

1    ***Bargaining Power***:  The Court in *City of Hope* stated that a party's ability to exploit a

2    disparity in bargaining power, even if demonstrated, would not necessarily create a fiduciary

3    relationship.  43 Cal. 4th at 389.  Here, however, the evidentiary record confirms that Shum had

4    equal bargaining power with Verdiell and that Shum himself proposed some of the key provisions

5    contained in the POL.  Hines-Shah Decl., ¶¶ 11-15, Exhs. 9-13.

6         In the face of this incontestable evidence that he was not vulnerable in any way that might

7    have given rise to a fiduciary duty, Shum's further argument that the parties' Confidentiality

8    Agreement created a "confidential relationship" amounts to nothing more than a play on words.  A

9    confidentiality agreement is not, *ipso facto*, a confidential fiduciary relationship.  If it were, then

10   parties to the mutual provisions of a confidentiality agreement would both be "vulnerable."

11   Creating such a reciprocal fiduciary duty makes no sense.  Confidentiality agreements are

12   commonplace in arms-length business transactions.  Shum's argument would convert all of these

13   arms-length relationships into fiduciary relationships, in violation of the policy to the contrary

14   expressed in *Persson* and *City of Hope*.[20]  43 Cal. 4th at 389.  Shum's further contention that the

15   Confidentiality Agreement survived the dissolution of Radiance is false by his own admission.[21]

16   ### 3.    Shum's Argument That He Has Standing To Sue For Breach Of Fiduciary Duty Is Irrelevant To Whether A Fiduciary Duty Existed

18        Shum argues that this Court already held he has standing to sue for a breach of fiduciary

---

20   [20] Shum's reliance on *Fenn v. Yale University* is equally misplaced.  Opp. Mem. at 33:7-15.  That case, decided under Connecticut law, ascribed "superiority and influence" to a Nobel Prize-winning professor that required Yale to rely on him as a fiduciary to provide information needed for government grants.  283 F. Supp. 2d 615, 632 (D. Conn. 2003).  Unlike California, which has clearly defined fiduciary relationships, Connecticut allows for fiduciary duties to be decided on a case-by-case basis.  *See id.*  This made their relationship different from a typical employer-employee relationship.  *Id.*  Verdiell and Shum had no such disparity evidencing vulnerability, and pointing to the Confidentiality Agreements does not create one.

24   [21] *See* Hines-Shah Decl., Exh. 1 (Shum Depo. 133:4-134:5); Exh. 1 (Shum Depo. 527:10-528:13).  The Agreements were executed in May 1997, *after* the incorporation of Radiance, and thus are not pre-incorporation joint venture agreements.  Shum Decl., ¶ 11, Exhs. I and J; *Persson*, 125 Cal. App. 4th at 1159.  Shum's reference to *ViChip Corp. v. Lee*, 438 F. Supp. 2d 1087 (N.D. Cal. 2006) is a similar red herring.  It was not the confidentiality provision in Lee's employment agreement that created his fiduciary duty; it was the fact that Lee specifically entered into a joint venture agreement.  *See id.* at 1090.  ViChip was created as a vehicle to fulfill the goals of the joint venture agreement.  *Id.*

28

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

duty cause of action that belongs to Radiance.  Opp. Mem. at 33:1-6.  This argument confuses *standing* to sue with the question of whether a fiduciary duty actually exists.  Relying on *Sutter v. General Petroleum Corp.*, 28 Cal. 2d. 525 (1946), this Court held in its March 25, 2003 Order Denying Defendants' Motion to Dismiss that although Shum bases his breach of fiduciary duty claim upon the conduct of a third party which injured the corporation, the injury alleged by Shum is specific to him as an individual.  "Because the alleged wrong is personal and exclusive to plaintiff, he has standing to bring this breach of fiduciary duty claim."  *See* March 25, 2003 Order at 24-25 [Docket Item No. 71].  The fact that the Court recognized that Shum has standing to pursue a claim does not mean, as Shum erroneously implies, the Court held that he can prove that Verdiell owes Shum a fiduciary duty.

As discussed above, Verdiell did not owe Shum a fiduciary duty.  Moreover, even assuming *arguendo* that Shum could establish the existence of such a duty, Verdiell did not breach any fiduciary duty to Shum.  Although Shum argues that Verdiell breached a fiduciary duty by exploring pre-dissolution investment opportunities, nothing prohibits corporate officers from preparing to compete.  *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 346 n.10 (1966).  Shum himself engaged in the exact same behavior he complains of by making preparations to establish a new company (Luminance) prior to and during the dissolution of Radiance Designs.  Shum prepared several drafts of business plans for his new company and was working to send it to outside parties for review, all before the POL was completed and *without* disclosing his plans to compete to Verdiell.  Hines-Shah Decl., ¶¶ 16-19, Exhs. 14-17.  Accordingly, a fiduciary duty did not exist as a matter of law and summary judgment should be granted as to Shum's breach of fiduciary duty claim.

///

///

///

///

///

18.

TAYLOR & CO.
LAW OFFICES, LLP

E.   **SUMMARY JUDGMENT SHOULD BE GRANTED ON SHUM'S FRAUD AND FRAUDULENT CONCEALMENT CLAIMS**

1.   **Shum's Fraudulent Concealment Claims Fail Because They Are Predicated On The Existence Of A Fiduciary Duty**

Shum concedes that his fraudulent concealment claims are entirely dependent on the existence of a fiduciary duty. Opp. Mem. at 37:11-17. Accordingly, without the existence of a fiduciary duty, Verdiell has no duty to disclose any facts to Shum, and plaintiff's fraudulent concealment claims necessarily fail. Cal. Civ. Code § 1710(3).[22]

In an attempt to stave off summary judgment, Shum argues that although a fiduciary duty may not exist between equal shareholders of a corporation, Verdiell supposedly undertook an affirmative duty of disclosure when he allegedly made "half-truth" statements to Shum during the Radiance dissolution. Shum's evidence, however, fails to show that Verdiell made any statements of the kind necessary to create an affirmative duty to disclose material information to Shum. Unlike the defendant in *Persson*, Verdiell did not make representations to Shum to "paint the truest picture possible of where the company is right now," nor did Verdiell undertake any extensive analyses of the corporation and its circumstances to present to Shum. *Persson*, 125 Cal. App. 4th at 1165. Shum's *only* evidence of an undertaking to make a full disclosure consists of (1) a one-page handwritten list of Radiance inventory that was to be divided between Verdiell and Shum at the time of the dissolution, and (2) a statement by Verdiell that after the dissolution Shum would have "equal rights" to the Radiance intellectual property – which he *does* have, according to both the POL and this Court. *See* April 27, 2004 Summary Judgment Order at 21-23; Opp. Mem. at 38 n.39. This evidence is consistent with the undisputed fact that the parties intended an equal division of Radiance property, but it has no tendency to establish that Verdiell undertook any affirmative duty to make a full disclosure to Shum.

///

---

[22] To the extent Shum is arguing that the POL is unenforceable due to alleged fraudulent inducement, this is an unacknowledged and unsupported effort to revisit the Court's denial of a rescission remedy for Shum's fraud cause of action. *See* Opening Mem. at 5-6 n.2.

2.      **Shum's Other Arguments Are Conclusory And Lack Evidentiary Support**

The remainder of Shum's arguments regarding his fraud claims consists of conclusory statements with no facts to support his assorted theories.

(a)      **Alboszta Was Not Verdiell's Agent**

Shum claims Verdiell is liable for fraud because he allegedly made false statements "through his agent, Alboszta" and that "it was Verdiell, not Alboszta who ordered the withdrawal of the patent application." Opp. Mem. at 39:9-13. This argument fails because Shum has not submitted any evidence from which it could be reasonably inferred that Alboszta was Verdiell's agent, or that Verdiell "ordered" the Radiance patent application to be withdrawn.

To make Alboszta an agent of Verdiell, Shum must show either that Verdiell actually employed Alboszta as his agent for the purpose of making statements about the withdrawal of the Radiance patent application (actual agency) or that Verdiell conducted himself in a manner that would lead third parties to think Alboszta was his agent for this purpose (ostensible agency). Cal. Civ. Code §§ 2299-2300. Shum does not proffer a single fact in support of his conclusory allegation of agency.

To the contrary, the undisputed evidence clearly establishes that Alboszta was the agent of *Radiance*. Alboszta testified that: (1) Radiance was his client; (2) Radiance paid his fees; (3) Alboszta was retained by both Shum and Verdiell to act as Radiance's patent agent; (4) Alboszta met with Shum several times to work on preparing the Radiance patent application; (5) both Shum and Verdiell instructed Alboszta to assign patent rights to Radiance; (6) Alboszta provided Radiance with all documents generated in connection with the patent application; and (7) when Alboszta discovered that the inventor(s) of the inventions in the Radiance patent application may have been incorrectly identified, he sought an explanation from *both* Shum and Verdiell and requested that *both* Shum and Verdiell provide him with clear instructions about how to proceed. *See* Hines-Shah Decl., ¶ 5, Exh. 3 (M. Alboszta (11/19/2003), pp. 54:8-55:17; 57:25-58:5). This undisputed evidence is confirmed by Shum's *own* testimony in which he admits Alboszta was

20.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

TAYLOR & CO.
LAW OFFICES, LLP

hired by Radiance to prosecute the patent application at issue and was working on behalf of Radiance (*see* Hines-Shah Decl., ¶ 3, Exh. 1 (F. Shum (11/14/2003), pp. 556:14-23), and by Shum's admission that he agreed with Alboszta that the Radiance patent application should be withdrawn.  *See* Hines-Shah Decl., ¶ 20, Exh. 18.)[23]

The undisputed evidence clearly establishes that Alboszta was *Radiance's* agent and that he provided patent advice to *Radiance*.  Shum's complete failure to offer a single fact to contradict this evidence is fatal to his attempt to attribute Alboszta's allegedly "fraudulent" patent advice to Verdiell.  *See Troost v. Estate of Deboer*, 155 Cal. App. 3d 289, 299 (1984) ("[I]f the essential facts are not in conflict the question of the legal relations arising therefrom is a question of law.") (quotation omitted); *Oswald Mach. & Equip. v. Yip*, 10 Cal. App. 4th 1238, 1247 (1992) ("[T]he burden of proof rests on the party asserting the [agency] relationship.")

The only "evidence" Shum offers to show agency is a citation to Alboszta's deposition which Shum claims shows that Verdiell "ordered" the withdrawal of the patent application.  Opp. Mem. at 39:13.  In context, however, this testimony has no tendency to establish that Alboszta was acting for Verdiell, rather than Radiance.  The cited testimony establishes that Alboszta made his own determination that the patent should be withdrawn and then discussed the possibility of withdrawal with both Verdiell and Shum.  *See* Hines-Shah Decl., ¶ 5, Exh. 3 (M. Alboszta (11/19/2003), pp. 59:6-62:11).  There also is no dispute that both Shum and Verdiell agreed that the Radiance patent should be withdrawn, ratifying Alboszta's actions on behalf of Radiance.  *See* Hines-Shah Decl., ¶ 3, Exh. 1 (F. Shum Depo. (11/14/2003), pp. 555:18–556:13); *see also* ¶ 20, Exh. 18.  There is simply nothing in the cited testimony sufficient to establish a triable issue of fact that Alboszta acted as an agent for Verdiell.

Finally, as with his breach of duty arguments, Shum misstates the law by claiming that the existence of an agency relationship "is one more question of fact for the jury."  Opp. Mem. at

---

[23]  *See also* May 11, 2002 email from B. Wallach to V. Shum stating that "Marek was an agent of Frank." Hines-Shah Decl., ¶ 21, Exh. 19.

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

39:17-18.  Where, as here, the material facts are not in dispute, agency can – and should – be decided as a matter of law.  *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.,* 148 Cal. App. 4th 937, 965 (2007).[24]

### (b)  Shum Cannot Show Justifiable Reliance

Shum asserts, in conclusory fashion, that the evidence establishes that he actually and justifiably relied upon Alboszta's statement.  Opp. Mem. at 39.  But Shum proffers no evidence to support that claim.  The only alleged misrepresentation Shum identifies is that Verdiell, through his purported agent Alboszta, misrepresented that the Radiance patent application needed to be withdrawn.[25]  Shum's failure of proof leaves wholly unanswered critical and undisputed admissions showing both that Shum did not rely and could not reasonably have relied upon Alboszta's alleged statement in deciding whether to approve of the withdrawal of the Radiance patent, including:

• Shum always believed he was the sole inventor and, hence, never accepted the central factual premise for Alboszta's advice that the patent had to be withdrawn.

• Shum admitted that he "had agreed with Marc [Verdiell] early, even *before* his conversation with Marek [Alboszta] to refile the patent."  *See* Hines-Shah Decl., ¶ 3, Exh. 1 (F. Shum Depo. (11/14/2003), p. 555:18-24) (emphasis added).

• Shum sought advice from his *own* attorneys at Coudert Brothers, both *before* and *after* Alboszta's statement, on the issues related to the dissolution of Radiance, *including* the withdrawal of the patent application.  In fact, documents disclosed after the Court's first summary judgment order in 2004 show that one of the provisions included by Coudert Brothers in a November 5, 1997 draft agreement between Shum and Verdiell expressly states that Shum and

---

[24] In a throwaway sentence, Shum states that LightLogic and Intel are not "innocent bystanders" and, without explanation, argues that both companies are liable under the doctrine of *respondeat superior* for Verdiell's alleged "continuing fraud."  Opp. Mem. at 40:10-12.  Based on his failure to cite any law or facts in support of his conclusory statement, Shum has conceded that there is no factual or legal basis for holding LightLogic or Intel liable for fraud or fraudulent concealment.

[25] As discussed above, Verdiell cannot be liable for the advice rendered by Alboszta since Alboszta was the agent of Radiance, not Verdiell.

22.

TAYLOR & CO.
LAW OFFICES, LLP

1   Verdiell would promptly withdraw the patent application at issue.  *See* Hines-Shah Decl., ¶¶ 22-

2   24, Exhs. 20-22.  Because Shum had already consulted independent legal counsel on the precise

3   issues raised by Alboszta's statement before it was made, and because Shum continued to do so

4   after it was made, it is not possible that Shum ever relied on Alboszta's statement concerning

5   withdrawal of the Radiance patent application, much less *justifiably* relied on that statement.

6          Because Shum has proffered no evidence showing actual or reasonable reliance, and since

7   both are essential element of a claim for fraud, Shum's claim for fraud fails as a matter of law.[26]

8   **F.     SUMMARY JUDGMENT SHOULD BE GRANTED**
        **ON SHUM'S INVENTORSHIP CLAIM**
9

10          In an effort to stave off summary judgment on his inventorship claim, Shum misstates both

11   the legal standard for corroboration of evidence of conception and the factual record of Shum's

12   purported contributions to the patents-in-suit.  Shum supports his claim of inventorship primarily

13   with the same "evidence" that defendants demonstrated in their opening brief is insufficient as a

14   matter of law.  Shum's "new" facts come primarily from (1) the declaration of Professor Wayne F.

15   Knox purporting to illustrate evidence of Shum's conception in a hodge-podge of documents; and

16   (2) Shum's misleading contentions that Verdiell "admitted" Shum was the inventor of the

17   technology in the patents-in-suit.  None of this evidence is sufficient to establish a genuine issue

18   that Shum can demonstrate, by clear and convincing evidence, his conception of any of the claims

19   of the patents-in-suit.

20          **1.     Shum Has Failed To Identify Evidence Sufficient To**
                **Permit A Reasonable Jury To Conclude, By Clear And**
21              **Convincing Evidence, That He Was An Inventor**

22          Shum does not contest the substantive burden he faces in demonstrating inventorship.  The

23   clear and convincing standard requires that a putative inventor's evidence create "an abiding

24   conviction that the truth" of his factual assertions be "highly probable."  Opening Mem. at 19:6-7

25

26   _____

27   [26] *See Bank of the West v. Valley Nat'l Bank*, 41 F. 3d 471, 477 (9th Cir. 1994) (listing the elements of
     fraud, including "justifiable reliance").

28

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1  (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984); *Price v. Symsek*, 988 F.2d 1187,

2  1191 (Fed. Cir. 1993)).  Viewed through the prism of this standard, Shum's uncorroborated

3  testimony, conclusory expert opinion and so-called "admissions" cannot bear the significant

4  probative weight he would have the Court ascribe them.

2.   **Shum Must Identify Independent Corroborating Evidence Of His Conception**

(a)   **The Federal Circuit Has Set Forth Specific, Rigorous Requirements For Determining What Evidence Can Be Corroborative**

9      Shum overlooks the Federal Circuit's "considerable guidance on the standards by which to

10  judge whether or not an inventor's testimony has been sufficiently corroborated."  *Sandt Tech.,*

11  *Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001).  Even under the "rule

12  of reason" analysis, the alleged inventor must provide "independent corroboration" consisting of

13  independent testimony or "evidence of surrounding facts and circumstances independent of

14  information received from the inventor."  *Reese v. Hurst*, 661 F.2d 1222, 1225 (C.C.P.A. 1981);

15  *Cooper v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998) (finding independent corroboration of

16  reduction to practice where he "does not depend solely on statements or writings by the inventor

17  himself").  It is unavailing for Shum to describe corroboration as "a question of fact" or

18  "fundamentally one about credibility."  Opp. Mem. at 11:5-6.  In fact, the case Shum cites

19  undermines this contention: "There is no doubt that [the putative inventor] has presented

20  corroborative evidence of its claim of prior reduction to practice.  The fighting issue, however, is

21  whether the nature of the corroborative evidence is . . . so lacking, as a matter of law, to warrant

22  summary judgment in favor of Plaintiff."  *Sabasta v. Buckaroos, Inc.*, 507 F. Supp. 2d 986, 998

23  (S.D. Iowa 2007).  Here, not only must the Court determine whether Shum has corroborating

24  evidence, it must also inquire into the nature of Shum's evidence.  If Shum's evidence is lacking

25  when viewed through the prism of the "clear and convincing standard," the Court must grant

26  summary judgment for defendants.

27

28

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

1

          **(b)**      **Shum's Testimony Cannot Establish That He Created An Allegedly Corroborating Document Or Fill In Gaps In These Documents**

2

3        It is clear from the foregoing authorities that Shum's testimony cannot independently

4  establish his own conception.  Nor can Shum's testimony establish that he created an allegedly

5  corroborating document.  *See Ethicon*, 135 F.3d at 1464 ("However, the junior party lacked

6  corroborating evidence *that it was he who had created the drawings* because the third party could

7  not attribute the drawings to him.") (emphasis added) (citing *Price v. Symsek*, 988 F.2d 1187,

8  1196 (Fed. Cir. 1993)).[27]  The Federal Circuit also has held that a putative inventor's testimony

9  "cannot fill in . . . gaps in the product disclosure documents to establish whether [he] contributed

10  to the subject matter of the invention."  *Gemstar-TV Guide Int'l Inc. v. Int'l Trade Comm'n*, 383

11  F.3d 1352, 1383 (Fed. Cir. 2004).

12

          **(c)**      **Unwitnessed Documents Are Not Sufficiently Corroborative To Constitute Clear And Convincing Evidence**

13

14        Defendants have recited the Federal Circuit's exacting requirements for corroborative

15  evidence.  Opening Mem. at 19:11-21:17.  When faced with the fact that much of his documentary

16  evidence is unwitnessed and therefore of little or no value, Shum responds only that these

17  documents do not require corroboration and "may be afforded more corroborative weight" in a

18  dispute over conception.  Opp. Mem. at 12:21-22.  But Shum cannot legitimately contend that his

19  unwitnessed documentary evidence provides "full" or "independent" corroboration sufficient to

20  establish his conception.  Although Shum notes that unwitnessed documents may be admissible

21  (Opp. Mem. at 12:6), he ignores that the cases he cites actually hold that such documents are

22  accorded "*minimum corroborative value*."  *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1172

23  (Fed. Cir. 2006) (emphasis added); *P&G v. Teva Pharm. USA, Inc.*, 536 F. Supp. 2d 476, 491 (D.

24  Del. 2008) (same).  In contrast to cases where notebooks are deemed corroborating because they

25  are dated and witnessed, *cf. Kridl v. McCormick*, 105 F.3d 1446, 1450 (Fed. Cir. 1997) (notebook

26

27  [27]  As defendants previously demonstrated, *Ethicon* represents the opposite scenario from the instant case. There, the parties *agreed* that the putative inventor made the sketches.  Opening Mem. at 28:26-28.

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)

1   entry "includes each feature of the count and is consistent with the other evidence"), unwitnessed

2   notebooks and other documents created by the putative inventor generally are not corroborative.

3   *Stern v. Trs. of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006) ("regardless of the[ir]

4   contents . . ., unwitnessed laboratory notebooks on their own are insufficient to support [a] claim

5   of co-inventorship").

6        Whether taken individually or collectively, the evidence must be sufficiently corroborative

7   that it satisfies the clear and convincing standard.  *Cf. Gemstar*, 383 F.3d at 1383 ("Thus, even

8   taken collectively, [the alleged inventor's] own testimony, technical background, and the

9   ambiguous product disclosure documents fail to establish [the alleged inventor's] co-inventorship

10  of the '121 patent by facts supported by clear and convincing evidence."); *Linear Tech.*, 379 F.3d

11  at 1329 (affirming summary judgment where "no reasonable juror could find that Vinsant's

12  inventorship claim was corroborated").

13          **3.      To Demonstrate Conception, A Putative Inventor**
                       **Must Provide Corroborating Evidence That Is**
14                     **Contemporaneous, Complete And Novel**

15              **(a)     Putative Inventor's Corroborating Evidence**
                          **Must Be Contemporaneous With Conception**
16

17       Documents postdating the named inventor's conception are not sufficiently corroborative.

18  *Linear Tech.*, 379 F.3d at 1329 (trial court properly rejected documents created "years after

19  [putative inventor] allegedly conceived of the current reversal circuitry at Teledyne").  Shum's

20  sole response to this argument is to suggest that timing is irrelevant when the putative inventor

21  claims to have collaborated with the named inventor.  Opp. Mem. at 15:1-3.  But Shum's

22  purported distinction between priority and originality is unavailing.

23       The *Sewall* case simply does not hold that the date of conception is irrelevant in joint

24  inventorship cases.  There, the issue was the novelty of the putative inventor's contribution to an

25  apparatus for back projecting data from a CT scanner.  The putative inventor admitted that he

26  simply implemented the inventor's design on a chip, and "did not independently conceive the

27  subject matter" of the patent, but only aided the inventor.  *Sewall v. Walters*, 21 F.3d 411 (Fed.

28

26.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1    Cir. 1994).

2         Where, as here, the putative inventor claims to have conceived of the idea disclosed in the

3    patent, evidence of conception must be both original and contemporaneous.  *See, e.g.*, *Price*, 988

4    F.2d at 1190 (stating that to prove derivation, or that "the patentee did not 'invent' the subject

5    matter . . . because the patentee derived the invention from another," "the person attacking the

6    patent must establish *prior conception* of the claimed subject matter and communication of the

7    conception to the adverse claimant") (emphasis added).  Otherwise, party could claim to be a joint

8    inventor simply by claiming to be the true author of a writing that discloses the invention, and

9    relying on that document as "corroboration" of his conception.  This is not what the Federal

10   Circuit's corroboration requirement means.  *See Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir.

11   1985) ("It is insufficient to argue, without offering independent corroboration of the particular

12   source of the invention, that one who attains a definite and permanent idea of the complete and

13   operative invention – after the document is completed – is necessarily the inventor.").

14   Accordingly, contemporaneous evidence is required.

                        **(b)     A Putative Inventor's Corroborating Evidence**
15                               **Must Disclose The Complete Invention**

16

17        A putative inventor's evidence must disclose the complete invention in order to

18   corroborate a claim of inventorship.  Shum argues that because "conception" is not the same as

19   "enablement," he need not corroborate his inventorship claim with enabling evidence.  Opp. Mem.

20   at 13:9-11.  But Shum fundamentally misinterprets the doctrine of conception, which requires "the

21   formation in the mind of the inventor, of a definite and permanent idea of the complete and

22   operative invention, as it is hereafter to be applied in practice."  *Hybritech Inc. v. Monoclonal*

23   *Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986).  The requirement of a "complete and

24   operative invention" is significant.  It is well-settled that "[a] conception must encompass all

25   limitations of the claimed invention."  *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000).

26        Although proof of conception is not necessarily proof of enablement, the law requires

27   corroboration of all elements of the invention, in such a way that the invention could be created

28

                                        27.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1   without undue experimentation.  The Federal Circuit's opinion in *Burroughs Wellcome Co. v.*

2   *Barr Laboratories, Inc.*, 40 F.3d 1223 (Fed. Cir. 1994) – the very decision cited by Shum – could

3   not be clearer about this requirement.  The court summarized the existing law as follows:

> Conception is complete only when the idea is so clearly defined in
> the inventor's mind that only ordinary skill would be necessary to
> reduce the invention to practice, without extensive research or
> experimentation.  Because it is a mental act, courts require
> corroborating evidence of a contemporaneous disclosure that
> would enable one skilled in the art to make the invention.

8   *Id.* at 1228 (citations omitted).  The court went on to note that "the enabling disclosure does

9   suffice in this case to confirm that the inventors had concluded the mental part of the inventive

10  process."  *Id.* at 1231; *see also Fiers v. Revel*, 984 F.2d 1164, 1169 (Fed. Cir. 1993) ("While one

11  does not need to have carried out one's invention before filing a patent application, one does need

12  to be able to describe that invention with particularity.").

13          Moreover, documents that are inconclusive or fail to provide a solution are not

14  corroborative.  *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311 (Fed. Cir. 2004) ("The

15  notebook diagram is inconclusive of what circuitry Vinsant may have developed while at

16  Teledyne, and thus fails to corroborate Vinsant's claim."); *Singh v. Brake*, 317 F.3d 1334, 1341

17  (Fed. Cir. 2002) ("Even if the entry expressed the problem, it did not provide the solution"); *id.* at

18  1342 (documents that merely state a goal to be achieved are insufficient evidence of conception).

19  As a matter of law, therefore, evidence that fails to disclose the complete invention – in a way that

20  solves, not merely describes, a problem – cannot corroborate a putative inventor's claim to have

21  conceived of the subject matter of the patents-in-suit.

22                    **(c)      A Putative Inventor's Corroborating Evidence**
                                **Must Demonstrate Contribution To A Novel**
23                              **Element Of The Patents-In-Suit**

24          A putative inventor's evidence must demonstrate contribution to the invention's novelty to

25  be sufficiently corroborative.  *See* Opening Mem. at 24:1-4 (citing *Acromed Corp. v. Sofamor*

26  *Danek Group, Inc.*, 253 F.3d 1371, 1380-81 (Fed. Cir. 2001); *Huang v. Cal. Inst. of Tech.*, 72

27  U.S.P.Q. 2d (BNA) 1161 (C.D. Cal. 2004)).  Shum responds by mischaracterizing the law of key

28

                                            28.

1  or novel inventive elements.  The language Shum cites from *Aro Manufacturing Co., Inc. v.*

2  *Convertible Top Replacement Co.*, 365 U.S. 336 (1961), cannot be squared with the recent

3  Supreme Court decision in *Quanta Computer, Inc. v. LG Electronics, Inc.*, 2008 U.S. LEXIS 4702

4  (U.S. June 9, 2008) which expressly limited *Aro Manufacturing* to cases in which "the

5  combination itself is the *only* inventive aspect of the patent." *Id.* at *31 (emphasis added).[28]

6  Where the inventive part of the patent is in the patent's design and method, it is entirely

7  appropriate for the court to evaluate the "essential features" of the patent. *Id.* at 15, 16.[29]

8  Moreover, the court's consideration of documents as corroborating evidence first requires that the

9  documents "reflect an inventive contribution." *Ethicon, Inc. v. United States Surgical Corp.*, 937

10  F. Supp. 1015, 1034-35 (D. Conn. 1996), *aff'd*, 135 F.3d 1456 (Fed. Cir. 1998).  A "contribution"

11  to the invention that merely adds known technology is not a contribution to the *invention*, even

12  though known technology is one element of the patent claims.

### 4.   Shum's Failure To Identify Independent Corroborating Evidence Of Inventorship Entitles Defendants To Judgment As A Matter Of Law

15  Shum's opposition and supporting declarations fail to rebut the fundamental infirmities of

16  his evidence purporting to corroborate conception.  Each document on which Shum relies lacks

17  either completeness, a witness, contemporaneous creation, or a disclosure of important elements of

18  the claims of the patents-in-suit.

19  ///

20  ///

---

[28]  Shum further misapprehends the *Acromed* case, which fully supports the patentability of the patents-in-suit based on Verdiell's conception of using an atomic bond such that the in-plane coefficient of thermal expansion of the copper metal layer is constrained by the ceramic substrate.  It is this concept, not simply the use of "DBC material" made by Brush-Wellman that Verdiell contends is inventive.  Opp. Mem. at 14:18-28, 22:18-19; Hines-Shah Decl., ¶ 8, Exh. 6 (T. Koch (1/20/2005), Tr. 1367:5-1368:24.)  On the contrary, it is Shum's purported reliance on the prior art of step technology that lacks novelty under *Acromed*.  *See* section VI.D.1(a), *infra*.

[29]  Shum contends that defendants rely on a theory of the "gist" of the patents-in-suit.  However, the word "gist" nowhere appears in the Motion.  To the extent Shum is complaining that defendants discuss the "idea" underlying the invention, that approach is entirely correct and the Federal Circuit has often used the same terminology.  *See, e.g., Burroughs Wellcome*, 40 F.3d at 1228.

29.

TAYLOR & CO.
LAW OFFICES, LLP

1          **(a)**      **Shum Cannot Establish That An Issue of Material Fact Exists**

2                           **With Regard To Inventorship Of The DBC Patents**

3          In a brief that uses the word "admission" no less than ten times, it is telling that Shum

4    provides no response to his documentary admission in mid-1996 (which was not produced to

5    defendants until June 2004) concerning "*your* [Verdiell's] copper on BeO substrate" idea.  Taylor

6    Decl., ¶ 18, Exh. 16, at p. 8.  Given this admission, Shum cannot rely on the wording of claim 59

7    of the later-drafted (and abandoned) Radiance patent application to demonstrate his conception of

8    the technology described in the DBC patents.

9          Moreover, there is no single *independent* piece of evidence that contemporaneously

10   corroborates Shum's conception.[30]  For example, Professor Knox has admitted that he has no

11   basis, other than Shum's testimony, for contending that *Shum* conceived of claim 59 of the

12   abandoned Radiance patent application.  Hines-Shah Decl., ¶ 6, Exh. 4 (W. Knox (1/13/2005), Tr.

13   768:10-772:6.)  Knox further admitted that, with the exception of the substrate's constraint on the

14   metal layer and the metal layer's inheritance of the substrate's CTE, all the other elements of the

15   DBC patents were well known, and thus prior art, by 1996.[31]

16         The insufficient corroboration afforded by Shum's other evidence – his October 5, 1994

17

---

18   [30] Nor can Shum rely on the Declaration of Professor Wayne H. Knox, which cites to more than 30 pages

19   of his November 2004 Report without identifying a single specific piece of evidence that corroborates
     Shum's conception.  For example, Knox states that Shum "explicitly laid out the concept of in-plane CTE

20   matching," but cites a variety of documents dating from July 1996 to May 1997.  Knox Decl., Exh. A at pp.
     21, 22.  As defendants have previously demonstrated, Verdiell's conception dates to May 1996, rendering

21   Shum's evidence insufficient as a matter of law.  Opening Mem. at 25:13-26:3.

22   [31] Shum instead minimizes the importance of the DBC material and argues that it "is *not* even specifically
     claimed in the Step patent."  Opp. Mem. at 22:19.  But claim 1 of the '567 Patent clearly refers to "a metal

23   layer bonded to said planar surface" such that "the in-plane coefficient of thermal expansion (CTE) of said
     metal layer is constrained by said insulating substrate."  Taylor Decl., ¶ 8, Exh. 6 at p. 15.  The decision not

24   to refer in this claim to the specific metal and insulating substrate material is irrelevant, particularly because
     patents are typically drafted to obtain broad coverage by not naming specific materials unless required.

25   *See, e.g.*, R.C. Faber, *Landis on Mechanics of Patent Claim Drafting* § 3:4 (workpiece or environmental
     element "should not be claimed in a manner suggesting that it is one of the elements of the invention

26   claimed").  Professor Knox himself acknowledged that he was unaware until this case of *any* devices for
     which the insulating substrate constrained the in-plane CTE of the metal layer.  Taylor Decl., ¶ 13, Exh. 11

27   at pp. 764:9-25.

28

**TAYLOR & CO.**
LAW OFFICES, LLP

1    ROI and the April 1996 aCADian pre-proposal to ARPA – was addressed in defendants' opening

2    memorandum.  Opening Mem. at 26:8-27:16.  It is not enough that Shum claims the earlier

3    documents disclose "much of the subject matter specifically claimed in the Step patents."  Opp.

4    Mem. at 22:13-14.  Shum's supporting evidence fails to set forth facts creating a genuine issue

5    that these documents (1) disclose the "complete and operative invention," *cf. Hybritech*, 802 F.2d

6    at 1376, (2) "provide the solution" disclosed in the '567 Patent, *cf. Singh*, 317 F.3d at 1341, (3) or

7    demonstrate that Shum's alleged contribution of step technology was a novel element of the DBC

8    patents.  *Cf. Acromed*, 253 F.3d at 1380-81.  Setting aside Shum's admission of Verdiell's

9    conception, the completed July 1996 Army proposal postdates that conception.  Therefore, this

10   document does not independently corroborate Shum's claim of conception.  *See Linear Tech.*

11   *Corp.*, 379 F.3d at 1329 (finding postdated drawings to be of "questionable value"); *see also*

12   *Coleman*, 754 F.2d at 360.

13          Finally, Shum cannot avoid summary judgment by referring to *Checkpoint Systems, Inc. v.*

14   *All-Tag Sec. S.A.*, 412 F.3d 1331 (Fed. Cir. 2005), and Verdiell's statement in an October 13, 1996

15   email that the abandoned Radiance patent "belongs to" Shum.  Shum Decl., Exh. M.  This

16   statement simply does not relate to the conception of the DBC technology.  Moreover, Verdiell's

17   generic statement bears no weight given Shum's earlier admission to Verdiell that the specific

18   concept of using the DBC technology was "*your*" idea.  And as previously demonstrated, Verdiell

19   removed the technology belonging to Shum before filing the '567 Patent.  Therefore, the Court

20   should rule as a matter of law that Shum has failed to provide corroborating evidence sufficient to

21   raise an issue of material fact that he was an inventor of the technology in the '567 and '268

22   Patents.

23                    **(b)      Shum Cannot Establish That An Issue of Material Fact Exists**
                                **With Regard To Inventorship Of The Flexure Patents**
24

25          Defendants already established the evidentiary support for Verdiell's conception of the

26   flexure technology described and embodied in the '950, '724, '6,726 and '427 Patents.  Aside

27   from Shum's spurious claim that Verdiell "admitted" he did not invent the technology, as

28

                                                         31.

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1    discussed below, Shum offers no independent, corroborative support for his own conception.

2         Professor Knox's criticism of Verdiell's evidence of prior conception (Knox Decl., ¶¶ 21-

3    24), as described in the first April 17, 1997 ROI (Exhibit 4-A), is unavailing.  To offer admissible

4    opinion, an expert must provide "a solid factual basis" for his opinion on inventorship.  *Medichem*,

5    437 F.3d at 1167; *Ethicon*, 135 F.3d at 1464.  Professor Knox's declaration, to the extent it

6    purports to contradict Verdiell's evidence of conception, is conclusory and flatly insufficient.[32]

7         Moreover, Professor Knox's eyeball comparison of sketches – from the first April 17, 1997

8    ROI (Exhibit 4-A) and an *alternate embodiment* of the '950 Patent – to opine that the former

9    contains a "spring leaf" rather than a flexure, is at best speculative.  Knox Decl., ¶20; *cf. Gen.*

10   *Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997):  "nothing . . . requires a district court to admit

11   opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court

12   may conclude that there is simply too great an analytical gap between the data and the opinion

13   proffered."  Without any basis, other than his own apparent intuition, Professor Knox's declaration

14   cannot be credited.  *Cf. Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1284-85

15   (Fed. Cir. 2007) (affirming summary judgment of invalidity despite conclusion of party's expert

16   that no undue experimentation was required, where the expert "failed to provide any detail

17   regarding why no experimentation was necessary").

18        The lack of corroboration from Shum's other evidence – his March 17, 1997 ROI, his

19   Unitek sketch, his CAD drawings, and his April 10, 1997 laboratory notebook entry – was

20   addressed in Defendants' opening brief.  Opening Mem. at 31:17-32:12 & n.13.  First, Shum's

21   CAD drawings and prototype postdate Verdiell's evidence of conception and therefore do not

22   corroborate Shum's claim of conception.  *See Linear Tech. Corp.*, 379 F.3d at 1329; *see also*

---

[32]  The court in *Medichem* took pains to emphasize the basis for that expert's opinion.  437 F.3d at 1167.
There is no similar basis in Knox's declaration and exhibits for his conclusion.  Moreover, these criticisms
are beside the point.  Verdiell testified that all fiber attachments "involve a positioning tool" or "gripper
tool" to grab the fiber that is being aligned.  Hines-Shah Decl., ¶ 4, Ex. 2 (M. Verdiell (1/19/05), Tr.
1083:1-14).  Verdiell further testified that he conceptualized locking vertical movement and made the
package compatible with a single mode fiber after his and Shum's May 1997 meeting with Les Duman.
Hines-Shah Decl., ¶ 7, Ex. 5 (M. Verdiell (1/18/2005), Tr. 1059:7-24; 1063:7-1065:21).

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1   *Coleman*, 754 F.2d at 360.  Second, Shum's supporting evidence fails to set forth facts creating a

2   genuine issue that his April 10, 1997 laboratory notebook entry, May 17, 1997 ROI, May 1997

3   CAD drawings (whose creation date could not be verified until they were produced in electronic

4   form in 2004) and undated Unitek sketch (1) disclose the "complete and operative invention," *cf.*

5   *Hybritech*, 802 F.2d at 1376, or (2) "provide the solution" disclosed in the '950 Patent, *cf. Singh*,

6   317 F.3d at 1341.  Third, the unwitnessed laboratory notebook entry and undated and unwitnessed

7   Unitek sketch are insufficiently corroborative.  Cf. *Medichem*, 437 F.3d at 1172.

8         Verdiell's so-called "admission" that Shum created certain drawings does not relate to

9   conception of the flexure technology.  Shum's drawing of a micro-pivot flexure does not

10  demonstrate conception of the patents-in-suit because it does not contain "legs."  The Court has

11  already determined as a matter of law that the term "leg" in the flexure claims refers to "an

12  appendage to the body of the flexure which extends downward, supporting the structure above it."

13  Order of June 21, 2005 at 73.[33]  Verdiell stated in his deposition that Shum invented the micro-

14  pivot implementation shown in Figure 2 of Shum's March 17, 1997 ROI, but went on to testify

15  that this implementation is *not* claimed in the LightLogic patents.  Hines-Shah Decl., ¶ 4, Exh. 2

16  (M. Verdiell Depo. (10/15/2003), p. 129:8-10.)  Shum rests his entire argument on Professor

17  Knox's opinion contradicting Verdiell, and purporting to create an issue of fact.  Opp. Mem. at 16:

18  4-18 & n.13.  But Knox's interpretation of the vertical motion offered by Shum's "planar" flexure

19  is contradicted by the Court's construction of the term "leg."  Further, Knox admitted that the

20  vertical motion depicted in Shum's Figure 2 is simply not convenient.  Hines-Shah Decl., ¶ 6, Exh.

21  _____

22  [33] The legal basis and rationale for this ruling are unaffected by the Federal Circuit's mandate.  It is well-
    settled that claim construction is an issue of law, not fact.  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448,

23  1456 (Fed. Cir. 1998); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976-79 (Fed. Cir.
    1995) (en banc), *aff'd*, 517 U.S. 370, 390 (1996).  The Court's construction of the claim term "leg" in the

24  flexure patents was therefore not addressed, either expressly or by necessary implication, in the Federal
    Circuit's decision.  Moreover, the Court's construction of "leg" properly construed the term in light of the

25  patents, including their specifications.  *See* Order of June 21, 2005 at 70-73 [Docket Item No. 412].  This
    construction is fully consistent with the Federal Circuit's ruling in *Phillips v. AWH Corp.*, 415 F.3d 1303,

26  1317 (Fed. Cir. 2005) (en banc) (stating that it is "entirely appropriate for the court, when conducting claim
    construction, to rely *heavily* on the written designation for guidance as to the meaning of the claims")

27  (emphasis added).

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1    4 (W. Knox (1/13/2005), Tr. 781:19-784:23.)[34]  Therefore, the undisputed evidence demonstrates

2    no issue of material fact.

3         Finally, Verdiell's so-called "admission" in his deposition concerning "joint" ideas in the

4    second April 17, 1997 ROI (Exhibit 4-B) does not relate to conception of the flexure technology.

5    Verdiell testified in his deposition that "It was pretty clear cut what were my inventions."

6    MacDonald Decl., Ex. F at 93:16-17.[35]  Moreover, Shum, having been aware of Verdiell's

7    testimony from attending his deposition, *admitted* at his own deposition that the flexure-related

8    ideas in the second April 17, 1997 ROI (Exhibit 4-B) were not his.  Hines-Shah Decl., ¶ 3, Exh. 1

9    (F. Shum Depo. (11/14/2003), pp. 451:2-14, 452:2-6; Exh. 23.)

10

11        **(c)**      **Shum Cannot Establish That An Issue Of Material Fact Exists With Regard To Inventorship Of The Dual Enclosure Patent**

12         Defendants already addressed the lack of corroboration of Shum's evidence – his

13    September 29, 1997 "parts list," his December 19, 1997 CAD drawing, and his December 27,

14    1997 business plan – in their opening brief.  Opening Mem. at 28:6-20.[36]  First, Shum's CAD

15    drawings and business plan postdate Verdiell's evidence of conception and therefore do not

16    corroborate Shum's claim of conception.  *See Linear Tech. Corp.*, 379 F.3d at 1329; *see also*

17    *Coleman*, 754 F.2d at 360.  Second, Shum fails to set forth facts creating a genuine issue that his

18    "parts list" (1) discloses the "complete and operative invention," *cf. Hybritech*, 802 F.2d at 1376,

19

---

20   [34]  Further off the mark is the contention that Verdiell, by acknowledging that Shum created certain CAD

21   drawings, has made an "admission" tantamount to Shum's joint conception.  Opp. Mem. at 17:23-18:1.
Whether Shum created a particular drawing is immaterial where the drawing postdates Verdiell's

22   conception.  *See* Opening Mem. at 31:21-32:1.

23   [35]  Verdiell promptly corrected the misstatement in the deposition transcript upon reviewing the reporter's
draft.  *See* Hines-Shah Decl., ¶ 7, Exh. 5 (M. Verdiell (1/19/2005), Tr. 1163:14-1164:8].  As the Federal

24   Circuit concluded when faced with a similar contention by a putative inventor, it is insufficient to rely on
"snippets" of the inventor's testimony in which the inventor allegedly "conceded that [plaintiff] was

25   responsible for significant portions of the invention."  *Hess v. Advanced Cardiovascular Sys.*, 106 F.3d
976, 981 (Fed. Cir. 1997).  Here, too, Verdiell's statements "cannot bear the weight [plaintiff] gives them."

26   *Id.*

27   [36]  Notably, Shum does not address the undated drawings contained in trial exhibit 562.  Taylor Decl., ¶ 29,
Exh. 27.

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

1   or (2) "provide[s] the solution" disclosed in the '2,726 Patent, *cf. Singh*, 317 F.3d at 1341.[37]

2   Finally, Verdiell's statement in his deposition concerning the second April 17, 1997 ROI

3   (Exhibit 4-B) is not an admission, and at any rate does not relate to the *conception* of the dual

4   enclosure technology.  As with the above evidence, Shum fails to fails to set forth facts creating a

5   genuine issue that this ROI (1) discloses the "complete and operative invention" or (2) "provide[s]

6   the solution" disclosed in the '2,726 Patent.  For the reasons stated above, Shum's evidence is

7   insufficient to raise an issue of material fact that he was an inventor of the technology in the

8   '2,726 Patent.

### III.   CONCLUSION

10   For the reasons set forth above, defendants Intel Corporation, LightLogic, Inc. and Jean-

11   Marc Verdiell respectfully request that this Court enter summary judgment in their favor on all of

12   the causes of action set forth in plaintiff Frank Shum's Fourth Amended Complaint and the unjust

13   enrichment cause of action in Shum's Second Amended Complaint.

14

15   Dated: June 27, 2008                 Respectfully submitted,

16                                        TAYLOR & COMPANY LAW OFFICES, LLP

17

18                                        By:  _____/s/ Stephen E. Taylor_____

19                                                  Stephen E. Taylor

20                                        Attorneys for Defendants INTEL
                                          CORPORATION, LIGHTLOGIC, INC.
21                                        and JEAN-MARC VERDIELL

22

23

24

25   _____

26   [37] Shum's reliance on "circumstantial evidence" caselaw is inapposite.  In both of the cases cited by Shum
     there was an independent witness to testify about the putative inventor's receipt of the materials.  *See Loral*
27   *Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 266 F.3d 1358, 1364 (Fed. Cir. 2001); *Lacotte v. Thomas*,
     758 F.2d 611, 613 (Fed. Cir. 1985).

28

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS
INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT:
CASE NO. C 02-03262 DLJ (EMC)

I, Jayesh Hines-Shah, am the ECF User whose identification and password are being used to file Defendants' Reply Memorandum of Points and Authorities In Support of Motion for Summary Judgment.  I hereby attest that Stephen E. Taylor has concurred in this filing.

Dated: June 27, 2008                    TAYLOR & COMPANY LAW OFFICES, LLP


                                        By:  _____ /s/ Jayesh Hines-Shah _____
                                                        Jayesh Hines-Shah

                                        Attorneys for Defendants INTEL CORPORATION,
                                        LIGHTLOGIC, INC. and JEAN-MARC VERDIELL

TAYLOR & CO.
LAW OFFICES, LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL FOR SUMMARY JUDGMENT: CASE NO. C 02-03262 DLJ (EMC)