Pages 1 - 22

United States District Court

Northern District of California

Before The Honorable Edward M. Chen

Frank T. Shum,                    )
                                  )
            Plaintiff,            )
                                  )
    vs.                           )          No. C02-3262 DLJ (EMC)
                                  )
Intel Corporation,                )
                                  )
            Defendant.            )
_____)

San Francisco, California
Wednesday, July 16, 2008

**Reporter's Transcript Of Proceedings**

**Appearances**:


For Plaintiff:          Townsend and Townsend and Crew
                        Two Embarcadero Center, Eighth Floor
                        San Francisco, California  94111-3834
                  **By:  Angus MacDonald, Esquire**
                        **Paul Kirsch, Esquire**


For Defendant:          Taylor & Company
                        One Ferry Building, Suite 355
                        San Francisco, California  94111
                  **By:  Stephen E. Taylor, Esquire**
                        **Jayesh Sanatkumar Hines-Shah, Esquire**




*Reported By:*        *Sahar McVickar, RPR, CSR No. 12963*
                      *Official Reporter, U.S. District Court*
                      *For the Northern District of California*

(Computerized Transcription By Eclipse)

1   **Wednesday**, **July** **16**, **2008**                    **10:00 a.m.**

2                   P R O C E E D I N G S

3            **THE CLERK:**  Calling case C02-3262, Shum versus

4   Intel.

5            Counsel, please state your appearances for the

6   record.  Good morning, Your Honor.

7            **MR. MACDONALD:**  Angus MacDonald.  I represent

8   plaintiff, Frank T. Shum.

9            **THE COURT:**  Good morning, Mr. MacDonald.

10           **MR. TAYLOR:**  Good morning, Your Honor.

11           Steven Taylor with Mr. Jayesh Hines-Shah, appearing

12   for the defendants and Intel Corporation.

13           **THE COURT:**  Good morning.

14           Okay, we have on the motion to compel production of

15   documents in response to the fifth and sixth requests for

16   production of documents in the matter.

17           Let me ask you first, Mr. MacDonald, what -- what is

18   it that has been made newly relevant by the -- by the Federal

19   Circuit's reversal.  As you've seen, your opponent argues that

20   all this stuff was relevant, equally relevant before evaluation

21   of the -- of the assets of the patent at issue, et cetera, et

22   cetera, or relevant to a number of causes of action.  And,

23   there was discovery; is there anything new that was not

24   relevant before, but now relevant today as a result of the

25   federal circuit's reversal?

3

1          **MR. MACDONALD:**  Well, Your Honor, as you know, we

2    dispute the assertion by defendants that the scope of

3    discovery, with respect to the unjust enrichment cause of

4    action that was recently reinstated by the Federal Circuit, is

5    limited to newly relevant issues.

6          **THE COURT:**  I know that, and we are going to get

7    there, but I just want to know what is -- is there anything

8    that is made newly relevant as a factual question?

9          **MR. MACDONALD:**  At the very least, the seventh set

10   of requests for production with respect to the Emcore

11   documents.

12          **THE COURT:**  That's the sixth set, isn't it?

13          **MR. MACDONALD:**  Sorry, that is the sixth set.

14          **MR. TAYLOR:**  The first three requests of the sixth

15   set.

16          **THE COURT:**  Okay.  And, that is true, because that

17   is a new transaction.  That may not have been made newly

18   relevant as a result of the -- I mean, I guess it's made newly

19   relevant because now there has been a reversal, and so,

20   intervening transactions obviously were not around to be

21   discovered back then.

22          **MR. MACDONALD:**  Right.

23          **THE COURT:**  So, and I'm with you on that.  I'm kind

24   of interested in the fifth set.

25          **MR. MACDONALD:**  Right.

```
 1              Now, with respect to the fifth set, all we had --

 2    all Shum had was a potential remedy for unjust enrichment.  We

 3    claim that the unjust enrichment cause of action is broader

 4    than the unjust enrichment potential remedy as it relates to

 5    several of Shum's State law claims.

 6              Specifically, we anticipate that the defendants at

 7    trial will argue that unjust enrichment remedy is limited by

 8    the Out-of-Pocket Loss Rule, the so-called Out-of-Pocket Loss

 9    Rule.  Unjust enrichment, the cause of action, the substantive

10    cause of action, has no such limitations, and, therefore, the

11    potential scope of discovery is broader.

12              THE COURT:  So, and you had mentioned in your reply

13    brief that extends to disgorgement rather than just loss of

14    value of the thing, disgorgement or profits as opposed to just

15    the loss of value of the, for instance, the patent in dispute.

16              MR. MACDONALD:  That is correct, with respect to the

17    unjust enrichment cause of action.  As we cited in our reply

18    brief, the County of San Bernardino case clearly holds that,

19    with respect to the cause of action, plaintiff is entitled to a

20    disgorgement of profits.

21              THE COURT:  Now, if that were true, though, seems

22    like 99 percent of your fifth set goes to the value of the

23    patent and the intellectual property.  It goes to the

24    out-of-pocket loss as opposed to profits.

25              I only saw one thing that caught my eye that seems
```

1    to go more to profits, and that has to do with potential

2    royalty rates, analysis of royalty rates, and that sort of

3    thing.  Things that go to the value of the -- and the

4    valuation, whether it's third party or first party's evaluation

5    of the patents at issue or the intellectual property really go

6    to the out-of-pocket, which has been at issue all along.

7         **MR. MACDONALD:**  Well, that's -- that's if you are

8    just comparing the damages with respect to unjust enrichment

9    cause of action versus the potential remedy for unjust

10   enrichment as a damages theory.

11              Unjust enrichment, as you know, Your Honor, relates

12   to a unjust retention of a benefit.  Here, Shum is asserting

13   the unjust retention was of the intellectual property that

14   LightLogic acquired and then sold to Intel.

15        **THE COURT:**  But, the value of that intellectual

16   property was at issue then and is at issue now, equally at

17   issue back then.

18        **MR. MACDONALD:**  Well, Your Honor, defendants on all

19   of these claims in the earlier discovery objected on relevance

20   to all of these claims, presumably because there was not an

21   unjust enrichment cause of action.

22        **THE COURT:**  But, they did produce some documentation

23   narrower than you had wanted or your predecessor had wanted.

24        **MR. MACDONALD:**  They produced some documents, that's

25   correct, but not nearly as much as what they are withholding

 1   currently.

 2          **THE COURT:**  Let me ask, is it clear that -- seems

 3   like I'm not going to be able to resolve this factual dispute

 4   because there doesn't seem to be a transcript of the CMC.  But,

 5   at the case management conference, I'm hearing two different

 6   things in term of what Judge Jensen had in mind when he ordered

 7   that discovery be reopened, that he would or would not be

 8   limited to sort of newly made relevant material.

 9          **MR. MACDONALD:**  And, Your Honor, there are two

10   orders to that effect that says merely unjust enrichment

11   discovery is open until July 28th, 2008.

12          If defendants had a problem with these two status

13   conference orders, I think the proper remedy would have been to

14   ask for clarification with Judge Jensen as to the proper scope

15   of that discovery.

16          **THE COURT:**  Let me ask you Mr. Taylor, what about

17   that?  You are asking me to take notice and make some kind of

18   credibility determination based on two competing affidavits,

19   but there is no transcript; there is nothing in the order that

20   indicates any express limitation.

21          **MR. TAYLOR:**  Well, what we have in the order is a

22   scheduling order and a period during which unjust enrichment

23   fact discovery can take place.

24          What we told Judge Jensen, and I put this in my

25   declaration, and I think it's consistent with the way Judge

1   Jensen has approached the entire case, he said, Counsel, and

2   this is at the first CMC, does the reversal of my decision on

3   this unjust enrichment cause of action and bringing it back, do

4   we need to do discovery on that?  And, we said to him we are

5   not sure, we don't think so, but we would need to see what

6   discovery they want to propound to see what the new issue is.

7   And, he said fine.  And, we said we are not objecting to

8   setting a time period.

9          Without seeing their discovery, to be quite candid

10  with Your Honor, we felt that it was somewhat audacious for us

11  to say we want to shut them down; they can't serve a single

12  thing, they can't even try.  But, we did alert him to the fact

13  that we don't object to the period, but there may be and will

14  likely be a dispute as to whether the reversal of this cause of

15  action actually gives rise to a new issue.  They say it does;

16  we dispute whether it does, or we may when we see their

17  discovery.  And, it's at that point, he said, fine, then that

18  dispute would go to Your Honor.

19          **THE COURT:**  Okay, but I have a competing affidavit

20  that is -- that takes issue with that statement.

21          Is that right?

22          **MR. MACDONALD:**  Well, actually, I don't hear

23  anything that actually conflicts with our declaration.

24          What I've heard Mr. Taylor say is that he expressed

25  his reservations to Judge Jensen regarding the potential scope

1  of discovery, but I never heard, actually, Mr. Taylor saying

2  that Judge Jensen specifically ordered that it would just be

3  limited to new factual issues.  To the contrary, I think

4  Mr. Taylor just reaffirmed what is in our declarations, that

5  all Judge Jensen said was to the extent there is a dispute, it

6  will go to Your Honor.

7          *THE COURT:*  Well, at this juncture, I have what I

8  have, at this point.  And, I got to go with what the written

9  record is.

10         *MR. TAYLOR:*  I think it's significant that the judge

11  did not say will reopen, try to define the issues.  He left

12  that specifically to you.  And, maybe we should have done

13  something different with you.  To be honest with you, we felt

14  to go to the judge and say shut down discovery and don't even

15  allow it, without having anything served would have been

16  inappropriate, and I don't think he would have granted it.

17         *THE COURT:*  Well, let me ask you, what about on my

18  factual question, what is your response to their reply brief

19  that says there is a factual difference or legal/factual

20  difference that the issue of profits, not just valuation of the

21  thing wrongly allegedly obtained, but any profits therefrom is

22  now made certainly more relevant than previously?

23         *MR. TAYLOR:*  Well, Your Honor, they get to that

24  issue by saying the we may argue something, and that, if we may

25  argue that, then maybe it would be irrelevant.

1    The determination, here, is easy.  We know what

2  position prior counsel took.  And, if I may, Your Honor, if I

3  may hand to you an excerpt from an important opposition to a

4  motion for summary judgment filed by Mr. Shum after the unjust

5  enrichment claim had been dismissed?

6    And, there is a section here that goes on for a full

7  five pages talking about unjust enrichment, how it's available

8  in this case, what their definition of relevance is.  And, even

9  the very first sentence of section C on page 25 states

10  "Defendants unjustly profited from their fraudulent patenting

11  of Radiance technology," and then, goes on to state exactly

12  what the plaintiff thinks the scope of the unjust enrichment

13  remedy is.  It includes fraud; it includes fraudulent

14  concealment; it includes everything that the defendants

15  obtained.

16    This is the issue that they defined.  And, what we

17  were saying in our discussions with the Court and also or meet

18  and confer discussions with opposing counsel, show us a new

19  issue, something that is new, that is tied to unjust

20  enrichment, and we will consider the discovery.

21    **THE COURT:**  Does this brief argue that as part of

22  the unjust enrichment remedy for fraudulent conduct, that a

23  disgorgement of profits as well as the out-of-pocket is

24  available -- is encompassed within the scope of that remedy?

25  Does it address that issue?

1              **MR. TAYLOR:**  I think it does, Your Honor.  If you

2     look at page 29, the first full paragraph at the bottom of the

3     page:  "Where there is unjust enrichment claim, Frank is

4     seeking only defendant's ill-gotten gains as resulting from its

5     fraudulent of exclusivity.

6              I mean, I have to read it more carefully -- there

7     was never a question that what Mr. Shum was looking for, in

8     this case -- and, in fact, Mr. Shum, if Your Honor will

9     probably recall, testified that he didn't know what

10    Mr. Verdiell was doing, and that nothing Mr. Verdiell did

11    affected him.

12             So, the only claim in this case has essentially been

13    an unjust enrichment claim from day one.  It was only once

14    Mr. Shum learned that Mr. Verdiell had sold his company to

15    Intel, and had sold it for a large amount of money, that

16    Mr. Shum came forward and said that money, some of that money

17    and every other gain that Mr. Verdiell or that Intel got from

18    these so-called "fraudulently procured patents" is at issue in

19    this case.  It was a key issue in the case, maybe the main

20    issue.  So we said, fine, so remedy has been in the case from

21    the beginning.  Discovery has been done on the remedy;

22    substantial discovery was done on the remedy.

23             If I may, I would like to present Your Honor with

24    just one additional document that shows in just category form

25    some of the discovery and categories of discovery and documents

 1  that we produced on unjust enrichment, in this case, because it

 2  was such a focus of where the plaintiffs were coming from with

 3  respect to their damages.

 4      **THE COURT:**  Let me ask you, Mr. MacDonald, what

 5  about, essentially, Mr. Taylor's pointing out that even the

 6  disgorgement of profits seem to have been at issue in the first

 7  round, and, therefore, this is not anything, quote, "new"?

 8      **MR. MACDONALD:**  Well, Your Honor, then my question

 9  to Mr. Taylor is why weren't the documents produced then?

10      **THE COURT:**  Well, and his response is going to be

11  they produced what they thought they were obligated to produce.

12  It was up to you to bring a motion to compel if your

13  predecessor wasn't satisfied with that.  And, having rested on

14  that, even though you had a clear argument for relevance, et

15  cetera, et cetera, discovery closed, the day is done, and this

16  is not a chance to redo.

17      **MR. MACDONALD:**  Right, Your Honor, but discovery is,

18  as you know, open with respect to unjust enrichment.  I don't

19  think there's anything --

20      **THE COURT:**  Which brings us back to our first

21  question.

22      **MR. MACDONALD:**  And, I don't think there is anything

23  untimely with respect to our fifth or sixth set of requests for

24  production.

25      **THE COURT:**  Well, let me ask this:  At the end of

 1    day, you know, the good cause standard under Rule 16, whether

 2    it applies to whether you reopen discovery or whether it

 3    applies to an ambiguous reopening of discovery and our trying

 4    to determine the proper scope, I think, is an appropriate

 5    yardstick here.

 6            And, the good cause analysis under Rule 16 focuses,

 7    number one, on the diligence of the party, which is seeking

 8    discovery and why they didn't seek it earlier, or why they

 9    didn't get it earlier.  And, that is the main point that the

10    defendants are making.

11            On the other hand, the degree of prejudice, to the

12    party opposing the discovery, is a relevant consideration.  And

13    so, my question to you, Mr. Taylor, is what -- provided, for

14    instance, that the scope of discovery is narrowed, as was

15    suggested, I think, in some of the correspondence by

16    Mr. MacDonald's firm, how many -- what is the burden here?

17    What's -- I understand there is prejudice and that you would

18    rather not reopen discovery, and, any time you give discovery,

19    it's to your disadvantage, but, is there some huge burden if it

20    is -- if the scope of discovery is narrowed along the lines

21    that it was suggested some of the meet and confer.

22            *MR. TAYLOR:*  We made a proposal, a compromise

23    proposal, that we think provided what we understood to be the

24    key documents that the plaintiff wanted.  What the plaintiff's

25    discovery requests asks for is a complete, and I mean complete,

1    redo of unjust enrichment discovery in this case.  They are not

2    narrowing; they are not willing to narrow it.  They said they

3    are not going to retract a single one.

4         I prepared a proposed order for this hearing that

5    sets forth a compromise proposal that would be sufficient, that

6    tries to deal with the import of the transaction, and tries to

7    deal with some limited rational production, but I must admit,

8    Your Honor, it is based on our position that all of this

9    discovery, just as Your Honor identified, was available, was

10   sought, was given.  There were these two enormous 30(b)(6)

11   depositions taken where defendants got to analyze everything

12   about what Intel was proceeding.

13        I'm trying to proceed, and, I think, Intel and

14   Verdiell are trying to be as productive as possible to come up

15   with some sort of compromise proposal.  We were about to

16   produce Emcore documents, and the motion to compel was filed

17   before we even had a chance, really, to meet and confer.  But,

18   be that as it may, we continued to meet and confer while these

19   proceedings were going on.  I think we have an arrangement to

20   produce --

21        **THE COURT:**  Here is what we are going to do:  We are

22   going to continue that meet-and-confer under the auspices of

23   this hearing with the following comments from the bench that I

24   would like you to consider in your further meet-and-confer:

25   You know, this is one where there is discretion, obviously,

1   vested in the courts.  And, whether to allow discovery on

2   remand, reopen it or not, given the ambiguity and the silence

3   in Judge Jensen's order expressly limiting the scope of

4   discovery to those newly made relevant documents which -- which

5   are occasioned by the reversal, which could have been one way

6   of slicing it, but I don't see that, and I'm not willing to

7   make that assumption, here, without something expressed on the

8   face of the order, I do think that some discovery would be

9   allowed.

10          I also think that the original requests were way too

11  broad.  And I'll just give you a hint:  When I look at your

12  reply brief, Mr. MacDonald, and you list sort of eight things

13  that they didn't produce --

14          **MR. MACDONALD:**  Correct.

15          **THE COURT:**  There are some things that jump out at

16  me that I just think are too broad.  Especially, given the

17  good-cause standard here, that you are frankly treading on

18  slightly thin ice because, I think, the Court could, in its

19  discretion, say this is all old stuff and I'm not going to let

20  you do that.  But I'm not going to do that.  But, I am going to

21  make you narrow it.

22          So, when you ask for, for instance, number 4,

23  "Intel's strategic planning documents in the OptoElectronics

24  Communication Arts market" -- too broad.

25          "Value that Intel placed on technology in

1   intellectual property of LightLogic's competitors"; I

2   understand that there is some relevance, but that is getting --

3   that's, like, secondary, tertiary.

4           "Documents that LightLogic received from and

5   provided to other potential investors"; again, that is several

6   steps removed.

7           I understand you would like to have every document,

8   under the sun, that could lead to some valuation, but, I think,

9   that if there are some more sort of high-level priority

10  documents that are more directly relevant --

11          *MR. MACDONALD:*  Your Honor, can I speak to that real

12  briefly?

13          *THE COURT:*  Yeah.

14          *MR. MACDONALD:*  If you look at the first three items

15  on page 9 of our reply brief, I think that is what you are

16  reading, and compare it to the document that Mr. Taylor just

17  provided, which appears to be an index of the categories of

18  documents they have produced, defendants produced, if you look,

19  it's all just LightLogic documents.

20          What we specifically asked for and tailored in the

21  first three items are the Intel documents, the Intel

22  post-closing documents, the post-closing from the LightLogic

23  merger, which we have just not received documents for.  And,

24  that's what the fifth set really goes to.

25          *THE COURT:*  And this is a discreet universe of

1   documents that can be easily found?

2           *MR. MACDONALD:*  It's the accounting and tax

3   documents, primarily, as well as the -- whatever documents are

4   in their possession with respect to the Ernst & Young

5   documents, which was their auditor for the LightLogic merger.

6           *MR. TAYLOR:*  Two quick comments.

7           *THE COURT:*  Yeah.

8           *MR. TAYLOR:*  First of all, and Mr. McGee *(sic)*

9   hasn't had a chance to look at this -- Angus hasn't had a

10  chance to look at this, excuse me.

11          But the first nine bullets on this list are

12  LightLogic.  "Licorice" is a code name for this project within

13  Intel, so the remainder of this document, both pages, is

14  primarily Intel documentation, including every report that was

15  ever delivered to the Intel directors or senior management

16  about how they perceived this project, the value of it, why

17  they did it, how much money they expected to make, and

18  everything else.

19          Having said that, the categories of documents that

20  we are discussing, like post-acquisition purchase price

21  allocation documents and something that would help them get

22  transparency into those numbers, we can work with them.  That

23  is one of the things I have offered to work with them on, and

24  I'm happy to do that.

25          *THE COURT:*  I think I would like you all to meet and

```
 1   confer in our conference room or in the hallway, if you would
 2   like, to see if you can work something out.  That is my -- I
 3   mean, you know these documents better than I do, so I'm not
 4   going to venture too far into any level of specificity and get
 5   myself in trouble.
 6           But, the main gist is that, under the good cause
 7   analysis here, I think that the defendants have a very good
 8   claim for -- on the diligence argument.  On the other hand, if
 9   it's not extremely burdensome, if it's doable and if it's
10   relevant, and it does seem relevant, in the interest of moving
11   things along and full disclosure, I'm inclined to, if push came
12   to shove, to give you some of those core documents that are --
13   that would give you some direct information or very probative
14   information with respect to valuation.
15           And also, you did ask in number 8 about royalty
16   rates or that sort of thing; I'm not exactly sure what you are
17   referring to, but that is the kind of thing that might go to
18   the disgorgement of profits issue that I could see being
19   relevant.
20           But, the three that I mentioned, which are, I think,
21   are two or three rings out, I mean, that's just -- it's broad
22   and it's not directly probative.  So, I'm weighing the
23   probative value versus the burden, here.  And maybe, you guys,
24   with that guidance, will work it out.
25           With respect to number 6, I will say that is a
```

1    little different.  There, the diligence is -- I can't hold that

2    against the plaintiff because it's a new transaction.  I

3    understand that the -- transactionally, that the defendant's

4    position is that the price change did not change, even though

5    the intellectual property in question was removed from the

6    portfolio, or whatever it was.

7            On the other hand, I don't think it's fair to say,

8    well, that ends the inquiry.  There may be some discussions,

9    some other internal documents, backup documents.  I do take a

10   broader view of relevance there in traditional discovery.

11           **MR. TAYLOR:**  And, we've agreed with Your Honor and

12   decided we should just should produce on that transaction a

13   significant volume of documents.

14           **THE COURT:**  Good, good.  Thank you.

15           **MR. MACDONALD:**  Your Honor, if I can just add; with

16   respect to Mr. Taylor's representation that they have been

17   willing to produce these documents, it's with the proviso that

18   we could never -- before even they could search for these

19   documents, we would never file a motion to compel.

20           **THE COURT:**  Yeah, all right, we are here now.

21           **MR. MACDONALD:**  Right.

22           **THE COURT:**  And I'm asking you guys to meet and

23   confer.

24           Nobody is going to waive any rights.  I mean, you

25   meet and confer, you try and produce the documents.  If, at

1  some point, somebody feels, you know, that they are not getting

2  the document, obviously, you are free to come back here for

3  further clarification, or whatever.

4          **MR. MACDONALD:**  And one other thing, Your Honor.

5          With respect to burden or overbreadth, as far as I

6  can tell from their opposition brief, they've pretty much

7  waived those objections.  I don't see them arguing anywhere

8  that there's some undue burden.

9          **THE COURT:**  They didn't make that objection,

10  specifically.  On the other hand, I think it is relevant under

11  the good-cause analysis that I'm going to apply under Rule 16.

12  And, that analysis does encompass some agree of burden,

13  although I understand, that if you normally don't raise that,

14  that is waived in a technical sense.

15          Frankly, I'm trying to exalt -- not exalt form or

16  substance here in giving everybody a bit of a break.  I just

17  want to reach a result that makes sense.  What it boils down to

18  is that you are going to be entitled to some discovery on five,

19  and probably broader discovery on 6.  And, I would like you

20  guys to work out the details.

21          So, since you are all here, I'm sure you have a

22  little time before lunch.

23          **MR. TAYLOR:**  We do.

24          Your Honor, how would you like us to report back or

25  get back with the Court on the level of success that we have

1   achieved?

2            **THE COURT:**  Betty, you may give them your number.

3            **THE CLERK:**  Sure.

4            **THE COURT:**  Contact Betty.

5            And, I'll be around.

6            **MR. TAYLOR:**  Okay.

7            **THE COURT:**  Before you leave, I would like to know

8    whether you guys have worked it out or not, and, if not, you

9    know, what it is that needs to be resolved.

10           **MR. MACDONALD:**  And, Your Honor, I'm very optimistic

11   that we will be able to work something out.

12           Timing might be an issue with respect to we have a

13   claim -- we have a July 28th fact discovery cutoff.  And we

14   have noticed some depositions, and we would like to get the

15   documents before -- before the depositions occur.  So there is

16   a potential issue here.

17           **THE COURT:**  Well, I assume that will be part of your

18   discussion.  Now, if you need to extend that a bit -- what's

19   the next thing happening?

20           **MR. TAYLOR:**  There is a November trial date in this

21   case, which is why I really do believe Judge Jensen said if

22   there is something new that is limited, you need to get it.

23   And, we'll work on that, and we'll provide it.

24           And, we are going to offer to provide core documents

25   in a short time.

1          **THE COURT:**  All right.

2          **MR. TAYLOR:**  We are not interested in continuing and

3    extending this discovery cutoff.

4          **THE COURT:**  Good.  That is what I was going to

5    suggest.  Let's see if you can guys can work out both the

6    timing as well as the substance of this in that they are kind

7    of interrelated.  So, why don't you see if you can work that

8    out.  If you can't, I'm here.

9          **MR. MACDONALD:**  Okay.

10         Thank you very much, Your Honor.

11         **THE COURT:**  All right, thank you.

12         **THE CLERK:**  Court is adjourned.

13                    **(Proceedings adjourned at 10:51 a.m.)**

14

15                          **---oOo---**

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATE OF REPORTER</u>

   I, Sahar McVickar, Official Court Reporter for the
United States Court, Northern District of California, hereby
certify that the foregoing proceedings were reported by me, a
certified shorthand reporter, and were thereafter transcribed
under my direction into typewriting; that the foregoing is a
full, complete and true record of said proceedings as bound by
me at the time of filing.  The validity of the reporter's
certification of said transcript may be void upon disassembly
and/or removal from the court file.


        <u>/s/ Sahar McVickar</u>

      Sahar McVickar, RPR, CSR No. 12963

        July 18, 2008