STEPHEN E. TAYLOR (SBN 58452)
JESSICA L. GRANT (SBN 178138)
JAYESH HINES-SHAH (SBN 214256)
JONATHAN A. PATCHEN (SBN 237346)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California  94111
Telephone:  (415) 788-8200
Facsimile:   (415) 788-8208
E-mail: staylor@tcolaw.com
E-mail: jgrant@tcolaw.com
E-mail: jhinesshah@tcolaw.com
E-mail: jpatchen@tcolaw.com

RAGESH K. TANGRI (SBN 159477)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, California  94111
Telephone: (415) 391-5400
Facsimile:   (415) 397-7188
E-mail: rtangri@kvn.com

Attorneys for Defendants INTEL CORPORATION, LIGHTLOGIC, INC. and JEAN-MARC VERDIELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| FRANK T. SHUM, | Case No.: C 02-03262 DLJ (EMC) |
|---|---|
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PROPOSED CLAIM CONSTRUCTIONS OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL** |
| v. | |
| INTEL CORPORATION, JEAN-MARC VERDIELL and LIGHTLOGIC, INC., | |
| Defendants. | Date:  August 8, 2008<br>Time:  2:00 p.m.<br>Place: Courtroom 1, 4th Floor |
| | Honorable D. Lowell Jensen |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. PATENTS IN ISSUE ..................................................................................................... 1

III. LEGAL STANDARD .................................................................................................... 1

IV. THE COURT SHOULD ADOPT DEFENDANTS' PROPOSED
CONSTRUCTION OF THE TERM "LEG"................................................................... 3

    A. The Court's Prior Order Correctly Construed the Term "Leg" ................................ 3

    B. The Intrinsic and Extrinsic Evidence Uniformly Supports the Defendants'
Proposed Construction of the Term Leg ................................................................... 5

V. CONCLUSION ............................................................................................................. 10

i.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PROPOSED CLAIM CONSTRUCTIONS OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL:
CASE NO. C 02-03262 DLJ (EMC)

# TABLE OF AUTHORITIES

**CASES**

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007) ............................................................................ 3, 8

*Andersen Corp. v. Fiber Composites, LLC*,
    474 F.3d 1361 (Fed. Cir. 2007) ........................................................................... 3, 6

*C.R. Bard, Inc. v. United States Surg. Corp.*,
    388 F.3d 858 (Fed. Cir. 2004) ............................................................................ 3, 8

*Cybor Corp. v. FAS Techs., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998) ............................................................................. 3

*Flex-Rest, LLC v. Steelcase, Inc.*,
    455 F.3d 1351 (Fed. Cir. 2006) ............................................................................. 8

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*,
    302 F.3d 1352 (Fed. Cir. 2002) ............................................................................. 2

*Laitram Corp. v. Morehouse Industries, Inc.*,
    143 F.3d 1456 (Fed. Cir. 1998) ............................................................................. 3

*Mangosoft, Inc. v. Oracle Corp.*,
    525 F.3d 1327 (Fed. Cir. 2008) ............................................................................. 2

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) .............................................................................................. 3

*Medrad, Inc. v. MRI Devices Corp.*,
    401 F.3d 1313 (Fed. Cir. 2005) ............................................................................. 2

*Microsoft Corp. v. Multi-Tech Sys.*, Inc.,
    357 F.3d 1340 (Fed. Cir. 2004) ............................................................................. 3

*Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.*,
    363 F.3d 1306 (Fed. Cir. 2004) ............................................................................. 8

*Nystrom v. TREX Co.*,
    424 F.3d 1136 (Fed. Cir. 2005) .......................................................................... 2, 8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................................... passim

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998) ............................................................................. 2

*Ventana Med. Sys. v. Biogenex Labs., Inc.*,
    473 F.3d 1173 (Fed. Cir. 2006) ............................................................................................ 2

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ........................................................................................ 1, 2

**OTHER AUTHORITIES**

*American Heritage Dictionary of the English Language*
    (3d ed. 1992) ......................................................................................................................... 9

*Random House Webster's Unabridged Dictionary*
    (2d ed. 1998) ......................................................................................................................... 9

*Webster's New World Dictionary of American English*
    (3d ed. 1988) ....................................................................................................................... 10

iii.

## I. INTRODUCTION

The only term for which the parties have been unable to agree on a construction is "leg," as used in the four so-called "flexure" patents. Defendants' proposed definition of that term – which this Court previously adopted – includes an element of verticality, which better comports with the term's plain meaning, the patent specifications and prosecution histories, and the extrinsic evidence.[1]

## II. PATENTS IN ISSUE

Four of the patents-in-suit cover various inventions relating to "flexures." *See* U.S. Patent Nos. 6,207,950 (the "'950 Patent"), 6,227,724 (the "'724 Patent"), 6,586,726 (the "'6,726 Patent") and 6,585,427 (the "'427 Patent"). A flexure is a device that flexes or bends. The flexures in these patents are used as part of an optoelectronic package, a device used to transmit light carrying data into a fiber optic cable in order to send information at high speeds over fiber optic networks. In these patents, the flexure is typically used as a mount for an optical fiber whose output is to be aligned with another optical device as part of the overall package. The flexure inventions were intended to provide solutions to the problem of achieving precise three dimensional alignment, at lower cost, when building an optoelectronic module through an automated process.

## III. LEGAL STANDARD

The following principles of claim construction govern this dispute.

*Hierarchy:* The intrinsic evidence is to be considered first, starting with the claim language itself, then the specification, followed by the prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-17 (Fed. Cir. 2005) (en banc); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Extrinsic evidence such as dictionaries, prior art, and expert

---

[1] The parties have reached agreement on the definition of twelve other terms, but disagree on whether those definitions should be included in any jury instructions. In the Joint List of Proposed Constructions [Docket No. 595] the parties have eliminated terms that could be commonly understood, such as "body," but maintained those terms that are technical or whose specific meaning in the patents would not be clear to a jury, such as "fiduciary" and "via." Defendants believe that instructions regarding the parties' stipulated constructions by the parties of these twelve other terms would thus be helpful to the jury.

1.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PROPOSED CLAIM CONSTRUCTIONS OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL:
CASE NO. C 02-03262 DLJ (EMC)

and inventor testimony also may be consulted when appropriate. *See Phillips*, 415 F.3d at 1317-18; *Vitronics*, 90 F.3d at 1584 n.6.

*Claim Language and Contextual Construction:* Claim terms are generally given their ordinary and customary meaning. *Ventana Med. Sys. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1180 (Fed. Cir. 2006) (quotation omitted). The "ordinary meaning" of a claim term is "its meaning to the ordinary artisan after reading the entire patent." *Phillips*, 415 F.3d at 1321. That meaning may be so readily apparent as to coincide with the commonly accepted meaning of the word. *Id.* at 1314. If not, the court "must look at the ordinary meaning in the context of the written description and the prosecution history." *Id*. at 1313 (quoting *Medrad, Inc. v. MRI Devices Corp.,* 401 F.3d 1313, 1319 (Fed. Cir. 2005)). Consistent with the hierarchy described above, dictionaries are not prohibited as aids to construction "so long as the ultimate construction given to the claims in question is grounded in the intrinsic evidence and not based upon definitions considered in the abstract." *Mangosoft, Inc. v. Oracle Corp.*, 525 F.3d 1327, 1330 (Fed. Cir. 2008).

*The Specification:* The Federal Circuit has often emphasized that the specification "is the single best guide to the meaning of a disputed term." *See, e.g., Phillips*, 415 F.3d at 1321; *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1360 (Fed. Cir. 2002), *Vitronics*, 90 F.3d at 1582. Claim interpretation requires "a full understanding of what the inventors actually invented and intended to envelop with the claim. The [correct] construction [is the one] that stays true to the claim language and most naturally aligns with the patent's description of the invention." *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

*Prosecution History:* The applicant's exchanges with the patent examiner can illuminate the scope of the invention that the applicant is claiming, and that the examiner finds patentable. *Nystrom v. TREX Co.*, 424 F.3d 1136, 1144 (Fed. Cir. 2005) (inventor's statements to patent examiner in arguing against an obviousness rejection reflected his "consistent use of the term board to refer to wood decking materials cut from a log"); *C.R. Bard, Inc. v. United States Surg.*

2.

*Corp.*, 388 F.3d 858, 866-69 (Fed. Cir. 2004); *Microsoft Corp. v. Multi-Tech Sys.*, Inc., 357 F.3d 1340, 1347 (Fed. Cir. 2004).  Moreover, when, as is true here for the '724 and '950 (and the '6,726 and '427) Patents, two patents stem from the same parent application and use the same claim term – the prosecution histories of both are relevant to understanding the term across both patents.  *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1368 (Fed. Cir. 2007); *Laitram Corp. v. Morehouse Industries, Inc.,* 143 F.3d 1456, 1460 n.2 (Fed. Cir. 1998).

***Extrinsic Evidence:***  In interpreting claim terms that are ambiguous, a court may refer to extrinsic evidence such as definitions contained in general or technical dictionaries.  *Phillips*, 415 F.3d at 1317-18.  A court is not "barred from considering any particular sources," nor is it "required to analyze sources in any specific sequence, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence."  *Id*. at 1324; *see also Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 809 n.2 (Fed. Cir. 2007) (finding no error in district court's consulting a dictionary at the outset of the interpretive process).

### IV.   THE COURT SHOULD ADOPT DEFENDANTS' PROPOSED CONSTRUCTION OF THE TERM "LEG"

| Defendants' Proposal | Shum's Proposal |
|---|---|
| An appendage to the body of the flexure which extends downward, supporting the structure above it | An appendage of the flexure that supports the flexure |

**A.   The Court's Prior Order Correctly Construed the Term "Leg"**

In the prior inventorship trial, the Court addressed the proper construction of the term "leg" as used in the flexure patents.[2]  Plaintiff contended that the term "leg" meant "a branch or extended part of the flexure."  Defendants, consistent with their present position, contended that "leg" meant "an appendage that extends downward from the flexure and supports the body in an

---

[2] Claim construction is an issue of law, not fact.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998).

3.

elevated state." The Court applied two basic principles of construction: (1) "words used in a claim are given their ordinary meaning unless the context, specifications, or file history indicate that a different meaning should apply," and (2) "the construction must stay true to the claim language and naturally align with the patent's description of the invention and with what the inventor intended to envelop with the claim." June 21, 2005 Order at 70-71. The Court relied in part on the ordinary meaning of the term "leg" as encompassing the concept of "support," and found that "an appendage that is planar can not offer any support." *Id.* at 71. The Court also found that the language of the claims supported the defendants' construction because it required "the legs to spread farther apart when pressure is applied to the body of the device," something that could not occur if the legs were aligned in the same plane as the body of the flexure. *Id.* at 71-72. The Court also noted that the "spring region" contemplated by the patent "would have no function if the overall structure is planar." *Id.* at 72. Finally, the Court noted that two figures in the specification for the '724 patent depicted non-planar flexures, and that the written description of one of the figures referred to it as "*before planarization*." *Id.* Based upon this reasoning, the Court construed the term "leg" to mean "an appendage to the body of the flexure which extends downward, supporting the structure above it." *Id.* at 73.

The Court's prior construction of the term "leg" was correct, both in its result and in its application of the principles of construction outlined above. In particular, the Court's interpretive method is fully consistent with the Federal Circuit's subsequent *Phillips* decision. The *Phillips* court expressly approves the use of extrinsic evidence, like dictionaries, "considered in the context of the intrinsic evidence." *Id.* at 1319. In connection with this Court's prior construction, the defendants expressly argued for the use of "the hierarchy of sources for claim construction" approved in *Phillips*, and for the importance of interpreting claim language in light of "the context, the specification or the file history." *See* Defendants' Post-Trial Brief [Docket No. 408] at 21:8, 14-15. As the above-quoted language of the Court's order makes clear, the Court adopted that analytic approach (June 21, 2005 Order at 70-71), relied upon much of the intrinsic evidence cited below, and expressly noted the basic harmony of intrinsic and extrinsic sources. The use and

4.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PROPOSED CLAIM CONSTRUCTIONS OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL:
CASE NO. C 02-03262 DLJ (EMC)

weighting of intrinsic and extrinsic interpretive sources in this Court's prior decision is thus fully consistent with the *Phillips* decision.

Finally, nothing in the Federal Circuit's decision to vacate the inventorship order based on the Seventh Amendment's right to a jury trial casts any doubt upon the correctness of the Court's prior construction of the term "leg." Because issues of claim construction are questions of law that are not tried to a jury, the Seventh Amendment holding casts no doubt whatsoever on this Court's reasoning. Moreover, Shum's appellate briefs in the Federal Circuit expressly argued that this Court's construction of leg should be reversed on the basis of *Phillips*. Although the claim construction issue was distinct from the Seventh Amendment issue and capable of being reviewed *de novo*, the Federal Circuit declined to address this issue. Accordingly, nothing that has occurred since this Court's prior construction of the term "leg" provides any ground for departing from that construction.

**B. The Intrinsic and Extrinsic Evidence Uniformly Supports the Defendants' Proposed Construction of the Term Leg**

The meaning of the term "leg" as used in the patents is an appendage extending downward from a body that props the body up, like the leg of a chair, a table or an animal. Shum's proposed construction – unlike the version he proffered in 2005 – does not dispute the necessity that a leg provide "support," but nevertheless entirely ignores the distinctly non-planar and vertical element of a leg. Instead, his definition implies that a "leg" may support something suspended over a chasm by resting flatly on either side of the chasm. But a leg extends downward; a plank bridging a gap does not. Moreover, the claim language in all four patents expressly or implicitly describe contact between the legs of the flexure and a "substrate" or a "floor," thereby indicating that the flexure is above the surface on which it sits. Exh. A ['950 Patent] claim 1; Exh. B ['724 Patent] claims 1, 5, 7, 10, 11, 12; Exh. E ['6,726 Patent] claims 1, 5; Exh. C ['427 Patent] claim 1, 20, 25.[3]

The specification and the plain meaning of the term leg both require verticality. ***Every***

---

[3] References to "Exh." are to Exhibits to the Declaration of Jayesh Hines-Shah, filed herewith.

5.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PROPOSED CLAIM CONSTRUCTIONS OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL:
CASE NO. C 02-03262 DLJ (EMC)

figure in the '724 and '950 Patents that displays a flexure in a fashion that allows one to determine its elevation (Figs. 1, 3A, 4A, 5A, 5B, 6, and 7) shows a non-planar flexure. Exh. B ['724 Patent]; Exh. A ['950 Patent]. For example, a comparison of Figures 3A and 3B in the '950 Patent with Figures 4A and 4B shows the element of verticality in action. In Figures 3A and 3B, the fiber (22) attached to the flexure (24) is above the axis of the receiving component (16). Figures 4A and 4B then illustrate the operation of the removable positioning tool (52), which according to the specification, when "lowered" onto the bridge (30) of the flexure, causes the spring regions (28 and 29) of the flexure to bend, thus "caus[ing] legs 26 and 27 to spread apart and axis BC to lower into alignment to axis OA, as shown on FIG. 4B":



These depictions, which are repeated in the '724 and '6,726 Patents, show that the legs extend downward from the flexure. The resulting depiction of the alignment process would make no sense – indeed would be physically impossible – in the absence of verticality.[4]

---

[4] The absence of the phrase "spreading apart" in the *claims* of the '950 Patent does not suggest a contrary conclusion. As discussed above, the "spreading apart" process is expressly described in the specification of that patent, confirming the plain meaning of the term "leg." Exh. A ['950 Patent] 7:49-54. Moreover, the prosecution history of the '950 Patent must be read together with that of the '724 Patent to interpret the meaning of "leg," particularly where these patents are related and the applications are in fact filed on the same day. *See Andersen*, 474 F.3d at 1374 (footnote continued)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PROPOSED CLAIM CONSTRUCTIONS OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL:
CASE NO. C 02-03262 DLJ (EMC)

Likewise, *every* embodiment disclosed in the text of the specification of the '724 Patent that uses a flexure uses an elevated (i.e., vertical) flexure, wherein the legs support the body above the substrate, and alignment is achieved by pressing down on the flexure.  Exh. B ['724 Patent] at 3:65-4:4 and 7:4-10 (flexure is etched or stamped, then *bent*, producing legs); 1:59-61; 4:5-10 (flexure in unflexed state holds optical component *above* optical plane of package, then is pressed downward into alignment); 5:15-16 (one embodiment of Fig. 1 using elevated flexure); 6:17-19 (alternative embodiment also using elevated flexure); 6:63-67 (one embodiment of flexure alignment device and method showing legs providing elevation for flexure); 7:1-4 (alternative embodiment also showing legs providing elevation for flexure); 7:29-34 (optical axis of flexure higher than optical axis of diode); 7:37-38 (tool applies pressure to top of flexure); 8:12-16 (alternative embodiment of flexure with legs supporting flexure in elevated state); 8:34-35 (alternative embodiments of package showing flexure with legs supporting it in elevated state); 8:60-63 (another alternative embodiment of package showing elevated flexure).[5]

Similarly, the specification of the '427 Patent includes multiple embodiments of the flexure, each of which constitutes an elevated (vertical) flexure wherein the body is supported above the substrate by legs.  Exh. C ['427 Patent], Figs. 1-4; 6-29 (all showing alternative embodiments of flexures, all of which are elevated by legs); 1:49-57 (distinguishing prior art in which legs do not spread); 1:67-2:3 and 2:18-22 (distinguishing prior art that does not allow for vertical adjustment by means of top-down pressure); 3:39-62; 5:35-47; 5:54-59.

In summary, all the visual and written evidence in the patent relates to an elevated flexure. Neither the specification nor the figures in it support Shum's proposed construction that "leg" is

---

(interpreting the prosecution history of related patents as supporting a limitation not expressly contained in the claims).  As discussed below, the prosecution history of the '724 Patent makes clear that downward pressure on the flexure, causing the legs to spread apart, was a key inventive element.  *See* Exh. D (BSTZ 0004604).

[5]  The same is true of the '950 and '6,726 Patents.  *See* Exh. A ['950 Patent] at 3:65-4:4 and 7:5-12; 4:5-10; 5:16-17; 6:18-20; 6:64-7:1; 7:2-4; 7:29-34; 7:38-39; 8:12-16; 8:34-35; 8:60-63; Exh. E ['6,726 Patent] at 4:4-10 and 7:9-16; 4:11-16; 5:22-23; 6:23-25; 7:1-5; 7:6-8; 7:34-39; 7:42-43; 8:16-20; 8:38-39; 8-63-66.

7.

an appendage that simply "supports the flexure." Every element of the specification strongly confirms the evident plain meaning of the contested term, creating a mutually reinforcing case for defendants' construction that is much stronger than those where the Federal Circuit has previously approved the use of the patent specification as an aid to interpretation of claim language. *Compare Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1361 (Fed. Cir. 2006) (claim language on its face did not require that the sidewall extend in any particular direction, but given the invention's purpose as explained in the specification only a sidewall that went up could have been intended); *Nystrom*, 424 F.3d at 1143-44 (construing "board" to be limited, in relevant part, to "wood cut from a log," where the patent's specification consistently discussed wood flooring materials and consistently used the term "board" to refer to wood cut from logs); *C.R. Bard*, 388 F.3d at 860, 863-66 (determining that the claimed hernia plug included a pleated surface, as the specification, including all descriptions and drawings, consistently described the claimed plug as having pleats); *Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1310-11 (Fed. Cir. 2004) (construing narrowly the term "hydrosol" because the specification used it only in the context of a pharmaceutical preparation).[6]

The patent prosecution history also establishes that verticality was central to the functional role of the legs in the flexure patents and shows that the two interrelated innovations that the flexure inventions added to the prior art are (1) the ability to achieve vertical alignment by translating downward pressure on the flexure into horizontal movement of the legs of the flexure,

---

[6] This is not a case like *Acumed*, where the contested element is present in only a single preferred embodiment of the claim. 483 F.3d at 807. In *Acumed*, the question was whether a claim describing "transverse" holes crossing an object was limited to holes arranged in a line "perpendicular" to the axis of the object. The term "perpendicular" – and figures showing a perpendicular arrangement of the holes – appeared only in a single preferred embodiment. In addition, even within the description of the preferred embodiment, the specification described the holes as both "transverse" and "perpendicular," effectively demonstrating that the former did not imply the latter. *Id.* at 807-09. Here, in contrast, the contested concept of verticality is implied in the use of the term "leg." Just as important, the element of verticality appears not ambiguously in a single preferred embodiment of the patent, but repeatedly and without ambiguity in every drawing and verbal description of every embodiment using a flexure in each patent.

8.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PROPOSED CLAIM CONSTRUCTIONS OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL:
CASE NO. C 02-03262 DLJ (EMC)

and (2) the ability to maintain the vertical alignment thus achieved by affixing the legs of the flexure to the substrate in their modified position.  *See* Exh. F (BSTZ 0004565, BSTZ 0004568) (showing, for the '724 Patent, the examiner's initial rejection of independent claim 7); BSTZ 0004588-90 (Verdiell's amendment of claims 1 and 7, indicating that the removable positioning tool causes the legs the flexure "to spread further apart"); BSTZ 0004596-97 (Verdiell's remark noting that the structures indicated in the prior art do not disclose downward pressure on the flexure causing its legs to spread further apart); BSTZ 0004602-04) (examiner approving the invention on the basis of the amendments).

The logical predicate for the foregoing exchange is the understanding that the legs of the flexure would, in their unflexed state, elevate the body of the flexure from the substrate, and at a level higher than the optical axis of the diode.  Indeed, without some element of verticality, downward pressure could not have translated to horizontal movement of the legs of the flexure along the substrate or floor on which they rested.  The exchanges with regard to the '950 and '6,726 Patents emphasized that a mere superficial resemblance in structure to devices in the prior art such as a "clip," a "lens holder" and an "H-shaped body" were immaterial to the novelty of the claimed invention, because it was clear that those prior art devices did not translate downward pressure into horizontal movement, were not intended to solve the same problem as the flexure invention, and could not do so in the same way.  *See* Exh. G (BSTZ 0003826-27, BSTZ 0003831); Exh. H (BSTZ 0005684-86, BSTZ 0005695-97, BSTZ 0005699-700, BSTZ 0005707-08); Exh. I (describing generic "lens holder" in prior art).

Dictionary definitions confirm that a person skilled in the art would interpret the term "leg" as extending downwards.  For example, *Random House Webster's Unabridged Dictionary* (2d ed. 1998) defines leg as "1. either of the two lower limbs of a biped, [such] as a human being, or any of the paired limbs of an animal, arthropod, etc., that support and move the body."  *See* Exh. J.  The *American Heritage Dictionary of the English Language* (3d ed. 1992) similarly defines leg as "1.a. A limb or appendage of an animal, used for locomotion or support" and "2. A supporting part resembling a leg in shape or function."  *See* Exh. K; *see also* Exh. L (*Webster's*

9.

*New World Dictionary of American English* (3d ed. 1988)) ("1 one of the parts of the body by means of which animals move or walk").

These examples uniformly reflect the common sense understanding that a "leg" performs its support function by extending downward from a body or structure to which it is attached. The fact that a leg may sometimes extend upward or sideways is irrelevant. The legs of a table that has been flipped onto its top may point upward, and the folded legs of a bridge table sideways, but they perform their function of providing support to the body only when extended downward. So, too, with the term "leg" as used in the flexure patents.

## V. CONCLUSION

Shum's proposed construction of the term "leg" has no support in the claims, specifications, file history or extrinsic evidence. The Court should adopt defendants' proposed definition of the contested term "leg."

Dated: July 18, 2008                    Respectfully submitted,

                                        KEKER & VAN NEST LLP


                                        By:     /s/ Ragesh K. Tangri
                                                Ragesh K. Tangri
                                        Attorneys for Defendants INTEL CORPORATION, LIGHTLOGIC, INC. and JEAN-MARC VERDIELL

10.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PROPOSED CLAIM CONSTRUCTIONS OF DEFENDANTS INTEL CORPORATION, LIGHTLOGIC, INC. AND JEAN-MARC VERDIELL:
CASE NO. C 02-03262 DLJ (EMC)

I, Jayesh Hines-Shah, am the ECF User whose identification and password are being used to file Defendants' Memorandum of Points and Authorities in Support of Proposed Claim Constructions.  I hereby attest that Ragesh K. Tangri has concurred in this filing.

Dated: July 18, 2008          TAYLOR & COMPANY LAW OFFICES, LLP

By:     /s/ Jayesh Hines-Shah
         Jayesh Hines-Shah

Attorneys for Defendants INTEL CORPORATION, LIGHTLOGIC, INC. and JEAN-MARC VERDIELL

11.