Pages 1 - 15

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, MAGISTRATE JUDGE

| | |
|---|---|
| FRANK T. SHUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. C 02-3262 DLJ (EMC) |
| ) | |
| INTEL CORPORATION, JEAN-MARC ) | |
| VERDIELL, and LIGHTLOGIC, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

San Francisco, California
Wednesday, July 23, 2008

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

| | |
|---|---|
| For Plaintiff: | Townsend and Townsend and Crew LLP |
| | Two Embarcadero Center |
| | Eighth Floor |
| | San Francisco, California  94111-3834 |
| BY: | ANGUS M. MACDONALD, ESQ. |
| | PAUL KIRSCH, ESQ. |
| | |
| For Defendants: | Taylor & Company |
| | One Ferry Building |
| | Suite 355 |
| | San Francisco, California  94111 |
| BY: | STEPHEN E. TAYLOR, ESQ. |
| | JAYESH HINES-SHAH, ESQ. |
| | |
| Reported By: | BELLE BALL, CSR, RMR, CRR |
| | Official Reporter |

1   **WEDNESDAY, JULY 23, 2008**

2                                                           **10:43 A.M.**

3                       **P R O C E E D I N G S**

4           **THE CLERK:**  Calling Case C-02-3262, Shum versus

5   Intel.  Counsel, please come to the podium and state your names

6   for the Record.

7           **MR. MACDONALD:**  Good morning, Your Honor.  Angus

8   MacDonald on behalf of Plaintiff, Frank Shum.  Nice to see you

9   again.

10          **THE COURT:**  Good to see you, Mr. MacDonald.

11          **MR. TAYLOR:**  Good morning, Your Honor.  Stephen

12  Taylor of Taylor & Company, here with Mr. Jayesh Hines-Shah,

13  and also Catherine Dunbar, who is the senior paralegal in our

14  office.

15          **THE COURT:**  Great.  Thank you, Mr. Taylor.

16          All right, I've received, I think, all of the

17  correspondence.  I just got, I think, your sort of reply about

18  45 minutes ago or half an hour ago, Mr. MacDonald.  And I've

19  looked at what you all have filed and proposed.

20          And, let me give you my views, and then I'll hear any

21  comments.

22          I'm inclined to say that the -- the letter proposal

23  of the modified proposed category from Mr. Taylor's office, not

24  as additionally modified by the proposed amended order but as

25  in its raw form, with the four categories there, is the

1  appropriate scope.  It's sort of what I had in mind when I said
2  we should narrow the scope.
3          I've read Mr. MacDonald's responses, and I agree
4  that, you know, to limit to post-acquisition in Intel is -- is
5  too narrowing, but I don't agree with the rest.
6          I think in terms of patent-in-suit -- it doesn't say,
7  you know, "patent-in-suit as referenced by a specific number."
8  I think "patent-in-suit," I interpret it as broad enough to
9  encompass various ways it might be described.  And, and so, you
10 know, maybe phraseology could be enhanced a bit, but I don't
11 see that.
12         But I also agree that -- you know, I don't think we
13 have to put the word "financial value."  If there's some,
14 really, kind of valuation that is discussed, expressly, whether
15 it's in terms of communications, or internal accounting
16 documents, or third-party appraisals, I do think that's fair
17 game.  And that's why I agree with the way it is originally
18 phrased.
19         But, I'll take comments in that regard.
20         **MR. MACDONALD:**  Well, Your Honor, what about the Shum
21 and Radiance issue?  We have in our proposed order
22 communications with respect to Shum and Radiance.
23         And as you know, Defendants object to the inclusion
24 of Shum or Radiance, which I think is improper, considering the
25 broad scope of unjust enrichment.

Belle Ball, CSR, RMR, CRR   (415) 373-2529
Official Reporter, U. S. District Court

1          **THE COURT:**  Well, but if you're getting everything
2     that -- all communication, including e-mails, that reference
3     the value of the patent-in-suit, and of course this would
4     encompass any correspondence with Shum or with Radiance, so now
5     you are talking about correspondence, for instance, with
6     Mr. Shum that don't reference or relate to valuation.
7          And how does that -- how is that relevant to the
8     narrow scope -- now, remember, we're dealing with the
9     parameters set forth by Judge Jensen.
10         **MR. MACDONALD:**  Your Honor, any communications
11    relating to either Shum or Radiance within Defendants'
12    possession is most likely going to be pertinent to the
13    ownership and inventorship issues, which is the heart of the
14    unjust enrichment claim, since we claim that they improperly --
15    Defendants improperly obtained exclusive ownership and
16    inventorship rights to the patents.
17         And further, Your Honor, with respect to a burdensome
18    claim, we just don't think there is really any burden claim
19    here.  There has been no declaration or any affidavit showing
20    any sort of burden.
21         And I just don't think there's going to be any
22    documents -- that many documents that reference Shum or
23    Radiance, especially considering that these are all going to
24    relate, probably, to the ownership or inventorship, and
25    questions about the ownership or inventorship.

1         And we would like to see what Intel or what
2    LightLogic or Verdiell are talking about when they refer to
3    Shum or Radiance.
4         **THE COURT:**  All right.  Mr. Taylor, what about that?
5    And I understand this is a redo, and the scope of the redo is
6    somewhat limited, but there is relevance here, right?
7         **MR. TAYLOR:**  This should be helpful, Your Honor.  We
8    produced everything that related to Shum up to the close of
9    discovery before.
10        **THE COURT:**  So there's nothing more to produce, you
11   are saying.
12        **MR. TAYLOR:**  And that's been produced, okay.  So
13   everything through the close of discovery that related to
14   Mr. Shum and was responsive to other requests, we have searched
15   and produced.  So that's been produced.
16        We have -- not new issues, as Your Honor knows our
17   positions, but a new transaction.  So in the EMCORE
18   transaction, we also have searched for anything that relates to
19   Shum or anything that relates to Radiance.
20        To do more than that, in light of these other
21   requests that cover the -- would require us really to search
22   everything that has happened since the close of discovery in
23   2006, that mentions Shum.  And there's a piece of litigation
24   that mentions Shum.
25        Every time this piece of litigation's mentioned

1  anywhere at Intel, it's going to be Shum versus Intel.
2          **THE COURT:**  But you are saying as of 2006, all
3  documents which would be responsive to a request that -- as so
4  phrased that would include Shum and Radiance have been
5  produced, as of --
6          **MR. TAYLOR:**  That's correct.
7          Is that correct?
8          **MS. DUNBAR:**  (Inaudible)
9          **MR. TAYLOR:**  Yes.
10         **THE COURT:**  Well, if they can verify that, then
11 that's a moot point.
12         **MR. MACDONALD:**  I suppose, Your Honor, as to the
13 communications pre-2006.  But I have to say, Your Honor,
14 there's hardly any e-mails or any communications that have been
15 produced to date, period.
16         **THE COURT:**  Well, that's another problem.  If you
17 think that they are withholding things or not making a complete
18 production, that -- that's a different issue.
19         **MR. MACDONALD:**  Well, Your Honor, Defendants have
20 now -- Intel has now produced 9,775 pages of documents, 8,500
21 of which were produced just in the last couple of days.
22         That only represents three boxes of documents.  Of
23 those 9,775 pages, there are 46 e-mails that have been
24 produced.
25         I just don't buy it, Your Honor.

1           **THE COURT:**  Well, that's a different question.  If
2  you feel that with respect to documents as represented and
3  being responsive to a request have not been fully produced, you
4  know, you have your usual remedies here.
5           My -- the issue before me is the scope of your
6  request for production of documents post-Judge Jensen's order,
7  and that's what we are dealing with.
8           So, at this juncture, with the representation that
9  all the Shum and Radiance documents have been produced as of
10 the close -- the original close of discovery in 2006, and you
11 have additionally searched in the EMCORE context, you can
12 verify that in your further response, that that's been done.
13          You know, that would be their position.  If you feel
14 that there's -- that's not complete, not accurate, you have
15 whatever remedies you have.
16          **MR. MACDONALD:**  Well, for clarification purposes, has
17 the search involved e-mails?  Has the search by the Defendant
18 involved e-mails referencing Shum and Radiance, and have those
19 documents been produced?
20          Just for clarification, all right?
21          **THE COURT:**  Can you --
22          **MR. TAYLOR:**  Let me make sure that I'm being
23 completely accurate.  Let me just -- if I may confer with
24 Ms. Dunbar.
25          **THE COURT:**  Yep.

1                    (Off-the-Record discussion)
2              **MR. TAYLOR:**  So, our last supplemental production,
3      Your Honor, prior to the close of discovery, was I think in
4      2004.  October, 2004.  And as of that date -- and discovery
5      closed in 2006.
6              As of that date, October -- what was the date,
7      Catherine?
8              **MS. DUNBAR:**  October 26th.
9              **MR. TAYLOR:**  October 26th, 2004, we searched and
10     produced everything that related to Shum, e-mail or otherwise.
11             Not surprisingly, Your Honor, there was a tremendous
12     amount that was privileged.  And we provided logs for all the
13     privileged communication that related to Mr. Shum.
14             In addition to that, we have searched, and produced
15     everything in the EMCORE transaction that relates to Mr. Shum
16     or Radiance.
17             And, if I may, Your Honor, we tried -- I'll just say
18     this.  We tried as hard as we could, in our side of this letter
19     and these boxes, to come up with a pragmatic, practical
20     proposal, as Your Honor suggested.
21             It is important to realize that the only unjust
22     enrichment issue in this case relates to the allegedly
23     fraudulent inventorship of seven patents.  That's what the
24     unjust enrichment claim addresses.  And just that.
25             So, if we can comply with -- trying to be pragmatic

1    at this stage in balancing the various rights and burdens, we
2    tried to go as far as we could with what the Plaintiff
3    suggested, and come up with what we thought was an acceptable
4    compromise that would provide them with the information that
5    they wanted.
6         And I think we've done that, in our letter.
7         **THE COURT:** What's the burden, with respect to a
8    further search?
9         It would seem to me, just from a layperson's point of
10   view, that it wouldn't be hard to do a digital search if you
11   have the key word "Frank Shum" or "Radiance Design" for
12   post-October 26, 2004. What's the burden?
13        **MR. TAYLOR:** What would we do, for example, about
14   communications in the company that relate to this litigation,
15   or my communications with Intel about this case?
16        **THE COURT:** All right. I mean, you can agree and
17   stipulate that anything having to do with this litigation,
18   without having to do a privilege log, anything to do with the
19   litigation could be categorized -- I mean, you could reach that
20   stipulation. Often counsel do, rather than having to produce a
21   privilege log of every single communication with trial counsel.
22   I think that's a reasonable approach.
23        But I'm talking about any underlying transaction
24   that's not. Is there -- maybe there aren't very many
25   documents. I don't know. But, I'm not hearing what the burden

1  would be in that regard.
2         **MR. TAYLOR:**  Well, Your Honor, I guess I have two
3  issues.  One is I don't exactly know what the burden will be,
4  to run through all of Intel, to run another search on Shum.
5  And I'm not sure it could be limited to just a particular point
6  in time.
7         My biggest issue is if -- is what would be the
8  relevance of running a search on Shum to determine what the
9  valuation of these patents is, to determine whether there was
10 any unjust enrichment based on Intel's having allegedly falsely
11 claimed exclusivity of these patents?  That's the only issue.
12        This is not a reopening.  This is not a redo of
13 discovery on Shum or Verdiell or Radiance.  It's, to the extent
14 it should be anything, I think, a redo on was there any value
15 placed on these patents.
16        And part of the difficulty is, is that the patents
17 were not specifically valued when they came into Intel, and
18 they weren't -- in the EMCORE transaction they were included,
19 and then they were excluded, with no change in the value.
20        So, in some ways, we are searching and searching for
21 what is a negative, because --
22        **THE COURT:**  The short answer, though, is it may or
23 may not relate to the question of inventorship, which goes to
24 the question of fraud, which goes to the question of unjust
25 enrichment.  So, I don't see a failure of relevance here.

1                    The question is whether the probative value and the
2      likely burden of that search is justified, given that there was
3      already a thorough search, at least as represented, that goes
4      all the way up to October 26, '04.
5                    And let me ask you, Mr. MacDonald, what do you expect
6      to find -- you know, this case was filed in 2002, right?
7              **MR. MACDONALD:**  Correct.
8              **THE COURT:**  And this transaction occurred, most of
9      the transaction, you know, before that.
10                   What might you -- other than valuation stuff, in
11     terms of reference to Frank Shum and Radiance Design, not part
12     of the litigation process, --
13             **MR. MACDONALD:**  Right.
14             **THE COURT:**  -- what would you expect to find?  Why do
15     you think this would be fruitful?
16             **MR. MACDONALD:**  Your Honor, if there are internal
17     e-mails within Intel touting the intellectual property of
18     LightLogic, which was the successor to Radiance, a company
19     founded by Frank Shum --
20             **THE COURT:**  That would be covered by the way I
21     proposed.  That's a communication referencing the value of
22     LightLogic.
23             **MR. MACDONALD:**  Okay.  And furthermore, if there are
24     communications that relate to this inventorship and ownership
25     issue, which as, Your Honor, you correctly point out --

```
 1              THE COURT:  What is the likelihood of that occurring
 2   outside of a litigation context?  Given that this suit was
 3   filed by 2002, two years before the last supplemental
 4   production.
 5              MR. MACDONALD:  It would be nice, Your Honor, to know
 6   what the potential scope or potential universe of documents
 7   are.  I haven't heard Mr. Taylor discuss that he's actually
 8   already searched for these documents, to see what the burden
 9   is.
10              THE COURT:  All right, here's what we are going to
11   do.  I'm going to indicate and order that the documents, that
12   the -- that the proposed production be exactly as set forth in
13   the letter -- not the proposed order, set forth in the
14   July 22nd letter from Mr. Taylor.
15              I'm going to order you to meet and confer with regard
16   to whether you can work out some kind of compromise on that
17   last little piece, which is Frank Shum, Radiance Design.
18              And part of that will be -- maybe you can find out,
19   Mr. Taylor, just how difficult this might be.  Maybe -- maybe
20   there is some kind of word search that could be done very
21   quickly or -- you know, so that the burden is minimal.  And
22   maybe there's, as one might suspect, not much there anyway.
23              We are talking about post-production, post-October-4
24   production.  And you've already done the EMCORE, so the
25   universe may be -- but I want you guys meet and confer.
```

Belle Ball, CSR, RMR, CRR   (415) 373-2529
Official Reporter, U. S. District Court

1                On the other hand, if it turns out to be a huge
2   burden, you know, I want you guys to talk about that.
3                **MR. TAYLOR:**  We'll work with Counsel on that, Your
4   Honor.
5                **THE COURT:**  Okay.  If you can't work it out, I'm sure
6   I'll receive another joint letter.  Otherwise, I'm going to
7   assume that this is resolved.
8                **MR. MACDONALD:**  Your Honor, one last issue.  Are you
9   going to indicate the timing of the production with respect to
10  the category --
11               **THE COURT:**  I was hoping you guys could work that
12  out, as well.
13               **MR. MACDONALD:**  The reason why I ask, Your Honor, is
14  that we are preparing a close of discovery, and we have this
15  issue with respect to depositions.
16               And in light of the substantial amount of documents
17  that have been produced over the last five days, --
18               **THE COURT:**  All right.
19               **MR. TAYLOR:**  May we meet and confer on that also?  I
20  mean, everybody has an interest in getting it done as quickly
21  as possible.
22               **THE COURT:**  Why don't you do that.  Again, submit to
23  me if you have a dispute.
24               But, I will keep in mind that -- you know, I want to
25  comply with Judge Jensen's order, and I think everybody needs

1   to, and keep that in mind.
2           So, I am anticipating a fairly expedited schedule in
3   that regard.
4           **MR. TAYLOR:**  Thank Your Honor.
5           **MR. MACDONALD:**  Thank you, Your Honor.
6           **THE COURT:**  Great.  Thanks.
7                   (Proceedings concluded)

Belle Ball, CSR, RMR, CRR   (415) 373-2529
Official Reporter, U. S. District Court

**CERTIFICATE OF REPORTER**

     I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 02-3262 DLJ (EMC), Shum v. Intel, et al., were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

     The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

     _____/S/ Belle Ball_____

     Belle Ball, CSR 8785, CRR, RMR

     Thursday, July 24, 2008