Volume 1

Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MAGISTRATE JUDGE EDWARD M. CHEN

| | |
|---|---|
| FRANK T. SHUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) NO. C 02-3262 DLJ (EMC) |
| | ) |
| INTEL CORPORATION, JEAN-MARC | ) |
| VERDIELL, and LIGHTLOGIC, INC., | ) |
| | ) San Francisco, California |
| Defendants. | ) Thursday |
| | ) August 21, 2008 |
| _____ | ) 10:32 a.m. |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**     Townsend and Townsend and Crew, LLP
                       Two Embarcadero Center, 8th Floor
                       San Francisco, California  94111-3834
                       (415) 576-0200
                       (415) 576-0300 (fax)
                  **BY:  ANGUS MACDONALD**

**For Defendant:**     Taylor & Company Law Offices, LLP
                       One Ferry Building, Suite 355
                       San Francisco, CA  94111
                       (415) 788-8200
                       (415) 788-8208 (fax)
                  **BY:  STEPHEN E. TAYLOR**
                       **JAYESH HINES-SHAH**
                       **JESSICA L. GRANT**

**Reported By:  Lydia Zinn, CSR #9223, RPR**
              **Official Reporter - U.S. District Court**

```
 1          THE CLERK:  Calling civil case C. 02-3262, Shum

 2  versus Intel.

 3          Appearances, please, counsel.

 4          MR. MAC DONALD:  Good morning, your Honor.

 5  Angus MacDonald, for plaintiff Frank Shum.

 6          THE COURT:  All right, Mr. MacDonald.

 7          MR. TAYLOR:  Good morning, your Honor.  Steve Taylor,

 8  appearing for the defendants, together with Jessica Grant from

 9  my office, and also Jay Hines-Shah.

10          THE COURT:  All right.  Good morning.

11          MR. TAYLOR:  I'm fine.  Thank you.

12          THE COURT:  Let me ask why -- whether the dispute, as

13  you all have framed it in the joint letter, is a very useful

14  way of resolving this.

15          I thought what we were going to do is permit another

16  round of depositions based on the new documents, but the

17  questions would have to be anchored to the new documents, and

18  perhaps, you know, things that sort of flow directly from the

19  more recent production.  To try to take it another step and

20  say, "Well, we're going to limit topics in such a way, and

21  slice it fairly finely between 1A, 1B, 1C, 1D" -- it seems to

22  me I'm not sure why that's useful.

23          Why can't we just proceed with saying you can ask

24  questions, but the questions have to be anchored to the

25  documents?
```

1          **MR. MAC DONALD:**  Your Honor, that is fully

2    plaintiff's position in this.  In our August 4th letter after

3    the telephonic conference with your clerk, that's exactly what

4    we proposed to defendants, is that we limit depositions to the

5    documents that were recently produced, as well as issues that

6    reasonably flow from these documents.

7          **THE COURT:**  Seems to me that's the area where we

8    might get into a dispute, is what reasonably flows or not.  You

9    know, for instance, if you're -- and I don't know what these

10   documents say, but there's a dispute about, you know, whether

11   you can ask about the total consideration paid for the

12   acquisition by Intel.  If these documents pertain to that

13   directly, even though this scenario that had been gone into

14   before, this document talks about -- I don't see the problem.

15         On the other hand, if you start launching into it and

16   getting into more general questions that aren't tied to the

17   document, then I think that's a problem.

18         **MR. MAC DONALD:**  I agree, your Honor.

19         **THE COURT:**  Is that -- am I missing something here,

20   or --

21         **MR. TAYLOR:**  Well, your Honor, we have agreed.  And

22   it's actually going to happen on Tuesday to produce -- Intel

23   will produce two witnesses for 30(b)(6) deposition.  And

24   they'll be testifying about the key topics that are in these

25   new documents.

1          We do have some disagreements preliminarily about how

2   broad those topics are.  And you can see that in our Exhibit A.

3          **THE COURT:**  Mm-hm.

4        **MR. TAYLOR:**  I think the issue -- and we can talk

5   about that, and are prepared to.  I think the issue that's more

6   important, from our standpoint, is having agreed -- and we're

7   trying to compromise every way we can.  And Mr. MacDonald has

8   compromised some as well, to get to where we can chose this

9   discovery, because we want to keep this trial date, and we want

10  to get this done.

11         I think our big issue, and the issue we'd like to

12  take our time with, your Honor, today is:  we don't think,

13  taking your Honor's guidance, tying the potential deposition

14  testimony to the documents, that there's any grounds to be

15  taking a deposition of Mr. Verdiell, who is the principal

16  defendant.  And if your Honor has any questions about that, we

17  would like to address that, because it's an important issue to

18  us.

19        **THE COURT:**  All right.  Well, let's -- I'm going to

20  assume that you all will be able to find your way through on

21  the Intel stuff, the 30(b)(6), along the lines we've talked

22  about.  So let's focus on the Verdiell deposition.

23        **MR. TAYLOR:**  And if I may, your Honor, Ms. Grant and

24  Mr. Hines-Shah have really done the meet-and-confer on this.

25  And I've asked Ms. Grant if she would just walk your Honor

1   through -- and take just a few minutes, I think -- the

2   documents that they say they want to examine Mr. Verdiell on,

3   because I think it makes it clear that with these 30(b)(6)

4   depositions, everybody wants to take the deposition of the

5   plaintiff on the eve of trial, or the defendant, and reopen,

6   and reopen.  And we think there are no grounds here,

7   your Honor.  And it's an important thing not to do.  So would

8   it be okay if Ms. Grant just walks through those documents with

9   you?

10          **THE COURT:**  Certainly.

11          **MS. GRANT:**  Thank you, your Honor.

12          **THE COURT:**  We're talking about on this table here,

13   for instance, there seem to be four documents in regard to

14   topic number one from Mr. Verdiell.  Is that what we're talking

15   about?

16          **MS. GRANT:**  And -- right.  And some of these

17   documents make more than one appearance in the columns.  And I

18   think once you actually look at the document -- and I can

19   briefly walk you through them -- it will become clear that

20   these are either old documents that were produced prior to

21   discovery cutoff, or they're simply not relevant to the patents

22   in suit or in unjust enrichment, which is the overarching

23   reason we're here.

24          The unjust-enrichment claim was reinstated by the

25   Federal Circuit and then Judge Jensen.  And discovery was

1  opened as to unjust enrichment.  And those were the documents

2  that we produced.

3          The first document is entitled, "Company Disclosure

4  Schedule."  And it has a Bates number of 005281.  And,

5  your Honor, this document was actually produced to Mr. Shum on

6  August 5th, 2004.  So this is not a new document.

7          I think the plaintiff pointed out:  well, it had a

8  Brobeck, Phleger & Harrison Bates number before, because we

9  actually got it from Brobeck; but nevertheless, it was

10 produced.  This exact same document was produced prior to the

11 discovery cutoff.

12         **THE COURT:**  So you're saying -5281 through -5381 was

13 previously produced?

14         **MS. GRANT:**  Yes, -5281 through -5381.

15         **THE COURT:**  Do you disagree with that, Mr. MacDonald?

16         **MR. MAC DONALD:**  I don't disagree it was produced in

17 2004.

18         What I do contest is that it was produced months and

19 months and months after the three-day deposition of Verdiell,

20 and at least four months after the two 30(b)(6) depositions

21 that occurred back in March and January of 2004.

22         We -- those documents were not produced prior to the

23 depositions of Verdiell or the 30(b)(6) depositions.

24         **THE COURT:**  All right, but you had a remedy back

25 then.  That was to move to compel.  Do something about it, and

1  complain about it.

2         The door has since been closed.  As you know, this

3  case had been up and down the Federal Circuit.  Now we're back,

4  and the door is only open for the limited purpose that

5  Judge Jensen allowed, and in light of new documents.

6         So the fact that maybe they should have been produced

7  earlier, you didn't have a chance to examine Mr. Verdiell on

8  that -- you had a remedy back then.  That door's closed.

9         **MR. MAC DONALD:**  Can I add one other thing,

10 your Honor?

11        **THE COURT:**  Yeah.

12        **MR. MAC DONALD:**  There were at least two drafts of

13 the company disclosure schedule which had never been produced

14 just recently produced last week, Friday.

15        And there is relevant language in there about the

16 disclosure of the ownership of the patents in suit that

17 directly relates to the unjust enrichment.

18        **THE COURT:**  I want to know.  Out of all these -- and

19 maybe I don't need to go through every single one.  I just want

20 to know which ones were previously produced.

21        I'm just going to cross those out, and let's talk

22 about the ones that are newly produced, and why you think that

23 should not be the basis of a further deposition.

24        **MS. GRANT:**  Thank you, your Honor.

25        One point is -- he's incorrect.  Dr. Verdiell was

1   actually deposed on this very topic.  The disclosures he made

2   to Intel -- that's Exhibit B and C to our joint letter brief.

3   And that's why we included that.  We anticipated that argument

4   from Mr. Young.

5             This is sort of along the same lines, your Honor.

6   It's Bates number -2928 through -2937.  And then the exact same

7   document is produced again and cited again by Shum:  -4920

8   through -4926.  This document is entitled, "Share Release

9   Agreement."  This also was produced to Mr. Shum on August 5th,

10  2004.

11            Dr. Verdiell was deposed on this topic in 2003.

12  Prior counsel asked Mr. Verdiell a series of questions.  How

13  many Intel shares did you obtain as a result of the

14  acquisition?

15            He testified approximately 2 million.

16            Mr. Wallach asked him:  well, when did the shares

17  invest?

18            He estimated over four years.  He said it was in the

19  agreement.

20            So they clearly deposed him on this topic.  There is

21  nothing new.

22            And, I might add, your Honor, it was the plaintiff's

23  suggestion -- strategic decision to depose Dr. Verdiell right

24  off the bat.  They wanted him before he could have any

25  documents produced.  That was their strategic decision.  They

1  obviously knew that documents were going to be produced over

2  the coming years.

3         **THE COURT:**  All right.  Well, the fact that this was

4  previously produced -- I don't need any more on it.

5         **MS. GRANT:**  Okay.

6         **THE COURT:**  Let's go to the next one.

7         **MS. GRANT:**  The next one, your Honor, is entitled --

8  Bates number -17 through -31.

9         **THE COURT:**  Yeah.

10        **MS. GRANT:**  It is entitled, "Corning, Incorporated."

11  This is basically the topic of the offers, other than Intel,

12  Corning, and Alcatel, that were made.

13        **THE COURT:**  Right.

14        **MS. GRANT:**  First of all, although this document is a

15  new document, your Honor, our 30(b)(6) witness, Mr. Sivakumar,

16  was actually previously deposed regarding the Corning and

17  Alcatel offers.  So this is something that -- although this

18  document, in and of itself, is new, the fact that there was an

19  offer made by Corning and Alcatel was extensively covered with

20  Mr. Sivakumar.  And that's why we put in that deposition

21  transcript for you, your Honor.

22        **THE COURT:**  This document itself was not a subject in

23  that deposition?

24        **MS. GRANT:**  This document -- it wasn't.  The terms of

25  the offer, the amount of the offer -- and I will point out,

1  your Honor, this document is not addressed to Mr. Verdiell.

2  It's addressed to LightLogic's CEO, who actually handled the

3  negotiations.

4        And I can represent to this Court that we showed this

5  document to Dr. Verdiell this week.  He had never seen it

6  before.  And the person who actually handled this transaction

7  on behalf of LightLogic was not Dr. Verdiell.  It was the CEO

8  and J.P. Morgan, the investment banker.  So he has no

9  knowledge.  We are happy to submit a declaration to that

10  extent, but to reopen and subject him to another deposition --

11  we don't think there's good cause.

12        **THE COURT:**  All right.  So let me sum it up.

13        In this case, this is a document that is new, and

14  normally would be subject to further discovery, and examination

15  of the proper deponent.

16        The question is:  who's the proper deponent?

17        And you're telling me that this document has nothing

18  to do with Verdiell.  He's never seen it before.  What could be

19  asked of him?

20        **MS. GRANT:**  Correct.

21        **THE COURT:**  That's my question to you.

22        **MR. MAC DONALD:**  To the extent that Mr. Verdiell has

23  no knowledge of a particular document, then his deposition will

24  be necessarily short.

25        I'd like to just actually, if I may, cut to the

1  chase.

2           **THE COURT:**  Mm-hm.

3           **MR. MAC DONALD:**  To the extent that there are

4  documents produced prior to 2008, we won't ask Mr. Verdiell

5  about.

6           This letter -- my August 7th letter -- that outlines

7  the topics was before a substantial production of over 5,200

8  pages of documents.  They were produced, as I mentioned,

9  your Honor, last Friday.  That document -- that production

10  contains dozens and dozens of documents that either are

11  authored by Mr. Verdiell which we've never seen before -- and I

12  have copies of some of these documents as exemplars for you and

13  Ms. Grant, if you'd like to see it, your Honor:  documents that

14  refer or relate to Mr. Verdiell; documents -- e-mails to

15  Mr. Verdiell or where Mr. Verdiell is cc'd on that we've never

16  seen before.

17          **THE COURT:**  All right.  Let me take that as a given

18  for a moment.

19          You're saying there are some documents post this

20  August 7th letter that are newly produced -- not produced in

21  '03/'04 -- that do pertain or went to Mr. Verdiell, and

22  presumably he may have seen, and therefore, he could comment

23  upon?

24          **MR. MAC DONALD:**  For example, your Honor, yes,

25  correct.  These three presentations, all authored by

1    Mr. Verdiell, have never been produced to Mr. Shum.  They were

2    just produced Friday, August 10th.

3              **MS. GRANT:**  I'm happy to talk about those

4    presentations, your Honor.  The photographs and diagrams were

5    actually produced in documents that Dr. Verdiell was questioned

6    about in his 2003 deposition.

7              More to the point, there's not a single thing in

8    there about the patents, the valuation of the patents, which,

9    of course, means there's nothing in there at all about unjust

10   enrichment.  And again, that's the context that we're supposed

11   to be in in this new discovery.

12             So, your Honor, the first presentation that they

13   identified is an -- actually, a document from Dan Sweeney.  It

14   was created -- created by an Intel employee named Dan Sweeney;

15   wasn't even -- has nothing to do with Dr. Verdiell.  His name's

16   no longer in there.

17             Although there are LightLogic slides, you will notice

18   that these are the same slides that appear over and over and

19   over again in every single one of the presentations.  This

20   entire stack, your Honor, was produced to Mr. Shum in 2004,

21   before the discovery cutoff.

22             These two (indicating) that have these same diagrams,

23   all they say is -- they talk about flexure.  They just show the

24   flexure.

25             Okay.  I just want to give you an example of what

1   we're talking about.  This is another document that

2   Dr. Verdiell was deposed about.

3        **THE COURT:**  Hold on.  Are you saying that all the

4   documents that Mr. MacDonald's referring to have already, in

5   essence, been previously produced?

6        **MS. GRANT:**  Yes.  They either contain photographs,

7   diagrams of the flexure or the technology at issue, or a simple

8   three- or four-word description of the flexure.

9        All of them were produced; reproduced, basically, in

10  documents that were either provided to Mr. Shum in 2003 and

11  about which Dr. Verdiell already testified about, or they were

12  produced to Mr. Shum in 2004 before the discovery cutoff.

13       I mean, every one --

14       **THE COURT:**  In other words, nothing new?

15       **MS. GRANT:**  Nothing new, your Honor.

16       **MR. MAC DONALD:**  I disagree, your Honor.  I disagree.

17       I mean, if we want to go literally page by page,

18  she's not actually holding any of the documents that I'm

19  holding.

20       **MS. GRANT:**  Yes, I am.

21       **THE COURT:**  All right.  Hold on.  Give me an example,

22  Mr. MacDonald, of a document you say is not -- does not bear

23  substantial redundancy to documents previously produced.

24  What's your best document?

25       **MR. MAC DONALD:**  Okay.  Well, I'll maybe give you

1    three.  Here's one document.

2            THE COURT:  What's it called?

3            MR. MAC DONALD:  It's called, "10GB/S Transponders at

4    Intel."  And I have copies for Ms. Grant and for your Honor, if

5    you'd like to see them.

6            THE COURT:  Why don't you give her the copy, and give

7    me a copy, and use it as an example?

8            MS. GRANT:  I already have it.

9            THE CLERK:  (Indicating).

10           THE COURT:  All right.  What does that have to do

11   with the unjust-enrichment issue?

12           MR. MAC DONALD:  Your Honor, the technology that was

13   used at LightLogic, and then acquired by Intel -- and it's this

14   patented technology at issue in the unjust-enrichment cause of

15   action -- is highlighted throughout this particular document.

16   I'll turn your attention, your Honor, to the page Bates number

17   0014182.  They are pictures of the flexures, which is directly

18   at issue.

19           And, of course, your Honor, there have been other

20   pictures of flexures that were asked about in Mr. Verdiell's

21   deposition, but this was while he was at LightLogic.

22           These are Intel-labeled flexures.  I'd like to know

23   what -- you know, are these flexures exactly the same thing

24   that Mr. Verdiell was doing at LightLogic?  Are they different?

25   How are they different?

1       **MS. GRANT:**  That was easily asked of him in his

2   deposition.  He talked about that already.  The fact that the

3   exact same product, instead of a LightLogic label, now has an

4   Intel label doesn't change anything, your Honor.

5       Let me answer his question directly.  The photograph

6   that he just talked to you about right here (indicating) --

7       **THE COURT:**  That's 182?

8       **MS. GRANT:**  Right.  Here it is (indicating) on

9   Plaintiff's Exhibit 14 to Verdiell's deposition.

10      **THE COURT:**  I might be looking at something

11  different.  Are you looking at -14182, or did I miss the --

12  what's the number?

13      **MR. MAC DONALD:**  -14182, your Honor.  It's this

14  picture.

15      **THE COURT:**  Okay.  It's five objects.

16      **MS. GRANT:**  Will you find that one for me

17  (indicating)?

18      Anyway, it's the same flexure.  This flexure,

19  your Honor, is the exact same picture.  There's just five of

20  them in that one photograph.

21      I know that there is an old document that has that

22  exact picture.  On page 3 of the document that Counsel was

23  looking at -- the new document -- it -- I want to show you,

24  your Honor --

25      **THE COURT:**  Well, how -- I'm confused.  What is --

1   what you just showed me -- how is that the same as what he just

2   called out?

3           MS. GRANT:  It's the same flexure, your Honor.

4           MR. MAC DONALD:  Your Honor, I see five different

5   flexures on the picture.

6           THE COURT:  What's the significance of that?  What --

7   would you ask differently?

8           MR. MAC DONALD:  Were these -- all five -- created at

9   Intel?  What came from LightLogic, and what was an

10  Intel-specific flexure?

11          THE COURT:  And those pictures that you had, Counsel,

12  were Intel or not Intel photos?

13          MS. GRANT:  Excuse me, your Honor.  It's a butterfly

14  package.  It's not even a flexure.

15          THE COURT:  What is it?  Is it Intel?

16          MS. GRANT:  This is something that I think is

17  important.  And, first of all, I'd --

18          THE COURT:  Well, I'd like you to answer my question

19  first.  The one that you showed me that you said is the same as

20  the five --

21          MS. GRANT:  It says LightLogic, your Honor.

22          If we're going to take a step back, good cause to

23  reopen a deposition here or subject him to another one -- the

24  fact that the only difference is that it has a LightLogic label

25  versus an Intel label, and the fact that when Dr. Verdiell was

1  deposed, he was deposed while he was at Intel -- they asked him

2  questions about what technology was used.  Your Honor, these

3  same presentations were used in his deposition.  So they

4  already had these same photographs.

5          And more importantly, your Honor, I don't think there

6  is good cause to subject him to another deposition, because he

7  wants to ask, well, this has an Intel label on the same exact

8  product when he was at Intel in 2003, when he was deposed, and

9  these exact same slides were actually attached as exhibits to

10 his deposition.  And he was asked about --

11         **THE COURT:**  When you say "exact same slides," are you

12 saying the exact same slide that shows Intel on it?

13         **MS. GRANT:**  Yes --

14         **MR. MAC DONALD:**  Your Honor, that was just one

15 example.  I think the next --

16         **THE COURT:**  What's the relevance the fact that it has

17 "Intel" on it, instead of "LightLogic"?

18         **MR. MAC DONALD:**  I'd like to know, for example, just

19 why -- what was the purpose of this presentation?  Who did he

20 present it to?  What is he presenting?  What technology came

21 from LightLogic?  What technology was something that was

22 invented or created at Intel?

23         I think all of this, your Honor, is highly relevant

24 areas of discovery.

25         **MS. GRANT:**  Your Honor, here is the butterfly

1   photographs.  This is an old document that was produced prior

2   to 2004.

3              When he had the picture of the five flexure -- or

4   butterfly packages, this is exactly what we're talking about.

5   So instead of having five of them on a slide, there are three

6   of them.

7              And the important thing is, obviously, when Intel

8   acquired this technology, they acquired this very product.  So

9   it's not going to have a LightLogic number on it anymore.  It's

10  not going to have a LightLogic label.  It's going to have an

11  Intel label.

12             And to really --

13        THE COURT:  What about the fact that this

14  presentation -- this general package -- is "10GB/S Transponders

15  at Intel"?

16        MS. GRANT:  Your Honor, this is an old document.  It

17  was produced in 2004.  You can see it says quasi-planar

18  optoelectronic packaging applications to 10GB/S transponders.

19  That is the product.  It was the only product in existence when

20  LightLogic was acquired.

21        THE COURT:  Well, the product name in there -- but

22  isn't the significance of this set of documents that it shows

23  there was some kind of a PowerPoint presentation or some kind

24  of presentation made?

25        MS. GRANT:  There were many, many PowerPoint

1   presentations that LightLogic did.  And these slides that you

2   see in the Intel presentations were basically copied,

3   reproduced -- whatever way you want to talk about it -- from

4   these old LightLogic presentations, and just put into an Intel

5   PowerPoint.  It's the exact same product.  It's the exact same

6   technology about -- which Dr. Verdiell testified to in 2003.

7   There's nothing new here.

8           **THE COURT:**  Do you dispute that factually?

9           **MR. MAC DONALD:**  I -- well, that's part of the issue

10  of what's discoverable, your Honor.

11          Did Mr. Verdiell simply just reproduce this and put

12  it right into his Intel presentation, slap on an Intel logo

13  onto the flexures of the butterfly package?

14          **THE COURT:**  And if he did, what's the relevance to

15  this case, to the unjust enrichment?

16          **MR. MAC DONALD:**  It goes to Intel's own unjust

17  enrichment; that this technology, we assert, your Honor, has

18  been unjustly taken from Frank Shum.  And if Intel is

19  practicing the exact same technology that was used at

20  LightLogic, which was a part of the Radiance technology, which

21  is what -- the company Mr. Verdiell and Mr. Shum co-owned -- I

22  think that's highly relevant to the unjust-enrichment claim.

23          **MS. GRANT:**  Your Honor, we don't dispute that Intel

24  purchased LightLogic, and in doing so, acquired the LightLogic

25  products and technology.

1          Simply having a deposition to say, "Oh, is this slide

2    that's now on an Intel PowerPoint -- did that originate from a

3    LightLogic slide" -- I mean, that is not good cause,

4    your Honor.  I would submit it's not even cause.

5          **THE COURT:**  Have you sat down and tried to -- if

6    those facts are stipulated to or clear -- have you, as one

7    alternative, met and conferred and talked about maybe

8    stipulating to certain facts, and obviating the deposition?

9          **MS. GRANT:**  He's never proposed that, your Honor.

10   I'd be willing to talk about that or submit a declaration that

11   Dr. Verdiell can simply say some of these PowerPoint

12   presentations from Intel weren't even prepared by Dr. Verdiell.

13   Slides were taken from old LightLogic presentations, and merely

14   reproduced; but your Honor, I think it's -- no one is disputing

15   in this trial that Intel acquired the products and technology.

16   I still don't see how simply having an Intel PowerPoint

17   presentation, as opposed to a LightLogic slide, has anything to

18   do with the patents in suit; more importantly, the value of the

19   patents in suit, the value of the technology, which, of course,

20   is the unjust-enrichment claim.

21          Simply saying -- he'd like to say, "Well, I'd like

22   to see how you made this slide," or if it's from this slide --

23   that does not lead to unjust enrichment, your Honor.

24          **THE COURT:**  The last word.

25          **MR. MAC DONALD:**  Your Honor, I'm not saying that the

1  only source of this deposition's going to be just asking what

2  slide came from a LightLogic presentation.

3        I think there are many, many, many documents.  I've

4  pointed to several.  There are at least six in the package that

5  I gave you, including three presentations authored by

6  Mr. Verdiell.

7        To the extent that Ms. Grant says that there's

8  nothing with reference to the patents, I disagree.  This is

9  another Mr. Verdiell presentation, October 10, 2001, Bates

10  labeled 0010843.  And the third page, 0010845, references the

11  patents, and then goes on and talks about the patented

12  technology.  This is while he was at Intel.  Just produced on

13  Friday.

14        **THE COURT:**  Here's what I'm going to do.  I'm going

15  to ask you all to meet and confer and talk about ways -- to the

16  extent, number one, that there are documents that have already

17  been produced, let me make this clear.  The principle is:  too

18  late on those.  And -- but I mean the actual documents; not

19  similar photographs, or one that had an Intel versus a

20  LightLogic label.  I'm talking about the exact same documents.

21  Those are off the table.

22        Number two:  to the extent there are new documents,

23  I'm going to want to know -- and I think the parties will have

24  to discuss, you know -- what is the relevance of the particular

25  questioning that you want to ask.  And can that be obviated by

1  declaration or a stipulation?  Because maybe there's not much

2  dispute here.

3          Now if in the end you can't resolve it, I will want

4  to know from you, Mr. MacDonald, exactly what documents that

5  you want to ask about, and what is it that you want to get in

6  your questioning, and how does that relate to the narrow scope

7  of discovery that Judge Whyte has allowed here, which is unjust

8  enrichment; not just, you know, anything.

9          And I will say if you can demonstrate that -- and

10 this will, you know, guide you in your discussions -- the fact

11 that it may be somewhat duplicative, that this is covering

12 ground that had been discussed in a deposition before, to the

13 extent that there are some new documents, and -- and they bear

14 on some questions that have relevance to the scope of discovery

15 that had been prescribed by Judge Whyte, I'm inclined to allow

16 it.  It may be a short deposition, but in view of the

17 significance of this case, I would be inclined to allow it if

18 that showing is made.

19          And I would not, frankly, be that sympathetic to what

20 we discussed.  Generally, this -- he's been deposed on the

21 valuation before, et cetera, et cetera.  If there are truly new

22 documents that have some relevance, I think those are grounds

23 for discussions that will guide you; but as far as any

24 documents have been produced, too late.

25          Okay?

1      **MS. GRANT:**  One other thing with the Intel

2   depositions for next week:  the time limitation.  I don't think

3   we're too far apart in terms of our meet-and-confer.  We had

4   proposed three hours for each witness, which would be a total

5   of six hours for the Intel p.m.k.  They are proposing four

6   hours for the two witnesses, which would be eight, which, of

7   course, would exceed the seven hours permissible.  We think

8   that three hours is sufficient per each witness.

9      **MR. MAC DONALD:**  May I propose a compromise,

10  your Honor?  Four hours for the allocation/accounting witness,

11  and three hours for the M correlated witness.

12     **THE COURT:**  I'm inclined to say seven hours is sort

13  of the guidelines in the rules.  If you want to, allocate it

14  whatever way you want.  I think seven hours is a fair measuring

15  stick.

16     And if you exceed that, you'd have to show good

17  cause.  I'm hearing seven hours is a fair aggregate number.

18     **MS. GRANT:**  Thank you, your Honor.

19     **MR. MAC DONALD:**  Thank you, your Honor.

20     **THE COURT:**  Great.  Thanks.

21     (At 11:00 a.m. the proceedings were adjourned.)

22                    -   -   -   -

23

24

25

## <u>CERTIFICATE OF REPORTER</u>

I, LYDIA ZINN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 02-3262-DLJ (EMC), Shum v. Intel, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

/s/ Lydia Zinn, CSR 9223, RPR

Friday, August 22, 2008