**United States District Court**
For the Northern District of California

1

2
 Frank T. Shum,     )

3
        Plaintiff, )

4
     v.      )

5
 Intel Corp., et al.,    )  No. C-02-03262-DLJ

6
       Defendants. )  **ORDER**

7
 _____)

8
  On July 25, 2008, the Court heard argument on Defendants'

9
 motions for summary judgment.  Stephen E. Taylor appeared on

10
 behalf of Defendants Intel Corporation (Intel), LightLogic,

11
 Inc. (LightLogic), and Jean-Marc Verdiell (Verdiell).  Paul F.

12
 Kirsch appeared on behalf of Frank Shum (Shum).  Having

13
 considered the arguments of counsel, the papers submitted, the

14
 applicable law, and the record in this case, the Court GRANTS

15
 Defendants' motion in part and DENIES in part.

16
        **I. BACKGROUND**

17
 <u>A.</u> <u>Factual Background</u>

18
  Shum and Verdiell are optical engineers.  They met in 1994

19
 when both worked at a company called SDL Technologies (SDL), a

20
 manufacturer of lasers and laser diodes.  At the time, they

21
 discussed their respective ideas for the design and the

22
 construction of optoelectronic devices, as well as the

23
 possibility of forming a separate company of their own to

24
 further explore these ideas.  Verdiell already had his own

25
 company, named aCADian, which was an optoelectronic software

26
 company.

27
  In June of 1996, Shum left SDL and formed a sole

28
 proprietorship named Radiance Design, Inc. (Radiance), with the

**United States District Court**

For the Northern District of California

1  goal of developing optoelectronic devices.  Radiance submitted

2  a number of proposals for government funding of its ideas: on

3  July 2, 1996, a pre-proposal to the Army; on August 25, 1996, a

4  similar proposal to NASA; and on December 2, 1996, another

5  proposal to the Army.  Each proposal was signed by Shum.

6  Although Verdiell remained employed at SDL, he worked with Shum

7  in the preparation of these proposals.  At the suggestion of

8  Verdiell, Lumen Intellectual Property Services (Lumen), a

9  patent firm, was engaged and began work on a patent application

10 for Radiance.

11     In April 1997, Verdiell left SDL technologies and on April

12 22, 1997, Radiance Design Inc. was incorporated with Verdiell

13 as President and Treasurer and Shum as Vice President and

14 Secretary, and with each of them as the only, equal,

15 shareholders.  At the time of incorporation Shum assigned his

16 invention and patent application rights to Radiance.  On the

17 same day, a patent application related to optoelectronic

18 technology was filed on behalf of Radiance.  Marek Alboszta

19 (Alboszta), of Lumen, prepared this patent application, which

20 named Shum as the sole inventor.

21     While the patent application filed in April was pending,

22 Verdiell informed Alboszta that he was an inventor of the

23 subject matter covered by the patent.  Shum states that

24 Alboszta informed him of this new information from Verdiell and

25 stated, to Shum, that if Verdiell is an inventor the

26 application must be withdrawn.  Subsequently, Radiance withdrew

27 the pending application on November 17, 1997.

28

**United States District Court**
For the Northern District of California

At about this time, the relationship between Shum and Verdiell deteriorated. Both Shum and Verdiell hired lawyers to negotiate the dissolution of Radiance and a Plan of Liquidation (POL) was drafted. During the dissolution negotiations, Verdiell was represented by John C. Gorman, an attorney and partner of the Gorman & Miller law firm. Shum was represented by the Coudert Brothers law firm.

A Plan of Liquidation was agreed upon and executed on January 5, 1998. Radiance was dissolved as of that date. The day after the dissolution took effect, Albostza filed a patent application, which covered the same optoelectronic technology as the withdrawn patent application. This patent application named Verdiell as the sole inventor, and indicated that the patent was assigned to LightLogic, a company newly formed by Verdiell. Verdiell had formed LightLogic, without notice to Shum, three days before the original patent application was withdrawn in November 1997. Based on this application, United States Patent No. 5,977,567 ('567) was issued on November 2, 1999, listing Verdiell as the sole inventor. After Radiance was dissolved, over the next several years, LightLogic obtained six additional patents (United States Patent Nos. 6,376,268 ('268); 6,207,950 ('950); 6,586,726 ('6726); 6,227,724 ('724); 6,585,427 ('427); and 6,252,726 ('2726)). Each patent named Verdiell as the sole inventor.

These seven patents cover three separate areas of optoelectronic technology. The first area can be referred to as "Dual Enclosure" technology and involves only a single

3

**United States District Court**
For the Northern District of California

patent – the '2726 patent.  This invention describes an optoelectronic package which is comprised of two separate enclosures designed to regulate the temperature within the package in a cost-efficient manner.  The second technology group is referred to by the parties as "Direct Bonded Copper" or "Step" technology and two patents, '567 and '268, are involved.  These patents disclose an optoelectronic package consisting of a substrate made of an insulating ceramic material, and a layer of copper that is bonded to this substrate.  The third technology group is called "Flexure" technology and four patents, '950, '724, '427, and '6726, are involved.  These inventions address the problem of precisely aligning a laser diode and an optical fiber during an automated fiber-optic assembly process, and of keeping the two components aligned during use.

Shum contends that he was an inventor or co-inventor of the subject matter claimed by these seven patents while he and Verdiell worked together at Radiance.

In June 2001, Defendant Intel Corporation (Intel) acquired LightLogic along with the rights to the '567 patent and the six additional patents issued to LightLogic.

A more detailed description of this history is contained in the previous Orders of the Court filed in this case.

B.   Procedural History

In 2001, Shum filed his original complaint in this action in California state court, and then filed a first amended

4

**United States District Court**
For the Northern District of California

complaint in state court in May 2002.  The first amended complaint was brought against Intel, Verdiell, Lumen, Alboszta, and Gorman, and contained numerous state causes of action, essentially based on fraud related claims.

On July 9, 2002, Intel removed the case to federal district court.

On December 19, 2002, Shum filed a second amended complaint in this Court.  This complaint essentially repleaded the original state causes of action and added a federal cause of action for Correction of Patent Inventorship pursuant to 35 U.S.C. § 256.

On January 21, 2003, Intel and Verdiell filed a motion to dismiss the second amended complaint.  This Court entered an Order on March 25, 2003, granting in part and denying in part Defendants' motion to dismiss.  Among the dismissed claims was a claim under California State Law for Unjust Enrichment.  The Court dismissed this claim on the basis that it was duplicative of the causes of action for fraud.

On April 15, 2003, Shum filed a third amended complaint.

On April 27, 2004, the Court issued an Order as to the third amended complaint denying Defendants' summary judgment motions, recognizing that all of Shum's state law causes of action were primarily based on the unresolved allegation that Verdiell was not the sole true inventor of the patented technology.  After a hearing on the matter, the Court decided to bifurcate the inventorship issue from the other claims of the complaint, and ordered that the § 256 trial should proceed

5

United States District Court

For the Northern District of California

1    first.

2        A bench trial, at which Shum contended that there should

3    be a correction of inventorship as to multiple claims of the

4    seven patents, began on January 10, 2005 and concluded on

5    January 24, 2005.  An order setting forth the Court's findings

6    of fact and conclusions of law was issued on June 21, 2005.

7    The Court concluded that Shum did not meet his burden to show

8    that he was the inventor or co-inventor of any of the patent

9    claims at issue and denied any correction of inventorship.

10        On January 12, 2006, the Court issued an Order as to a

11   fourth amended complaint granting Defendants' summary judgment

12   motions, concluding inter alia that, in light of the Court's

13   findings that Shum was not an inventor of any of the claims of

14   the patents at issue, a jury could not reasonably find for Shum

15   on any of the state law causes of action.

16        Shum appealed, and on November 19, 2007, the United States

17   Court of Appeals for the Federal Circuit reversed the

18   inventorship ruling of June 21, 2005 as well as the January 12,

19   2006, summary judgment ruling.  The Federal Circuit held that,

20   because the issue of inventorship was integral to the factual

21   basis of the state law claims, it had to be decided by a jury

22   pursuant to the Seventh Amendment.  The Court of Appeals

23   additionally reversed the Court's March 25, 2003, dismissal of

24   Shum's unjust enrichment claim, holding that under California

25   law the unjust enrichment claim constituted a separate cause of

26   action, not duplicative of the other causes of action.  The

27   relevant previous orders were vacated and the case was remanded

28                                  6

1    to this Court.

2        Jury trial, pursuant to the mandate of the Federal

3    Circuit, is currently scheduled for November 3, 2008.  On April

4    4, 2008, Defendants moved for summary judgment on all the

5    above-listed claims.

6

7                        **II. LEGAL STANDARD**

8    A.    Summary Judgment

9        The Federal Rules of Civil Procedure provide for summary

10   adjudication when "the pleadings, depositions, answers to

11   interrogatories, and admissions on file, together with the

12   affidavits, if any, show that there is no genuine issue as to

13   any material fact and that the party is entitled to a judgment

14   as a matter of law."  Fed. R. Civ. P. 56(e).

15       Procedural matters not unique to patent law are decided by

16   applying the law of the relevant regional circuit.  See

17   Transmatic, Inc. v. Gulton Indus., Inc., 53 F.3d 1270, 1278

18   (Fed. Cir. 1995).

19       In a motion for summary judgment, initially it is the

20   moving party's burden to establish that there is "no genuine

21   issue of material fact and that the moving party is entitled to

22   judgment as a matter of law."  Fed. R. Civ. P. 56; British

23   Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

24   Subsequently, "[i]f the party moving for summary judgment meets

25   its initial burden of identifying for the court those portions

26   of the materials on file that it believes demonstrate the

27   absence of any genuine issues of material fact," the burden of

28                                 7

United States District Court

For the Northern District of California

1   production then shifts so that "the non-moving party must set

2   forth, by affidavit or as otherwise provided in Rule 56,

3   'specific facts showing that there is a genuine issue for

4   trial.'"   T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors

5   Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp.

6   v. Catrett, 477 U.S. 317 (1986)); Kaiser Cement Corp. v.

7   Fischbach & Moore, Inc., 793 F.2d 1100, 1103-04 (9th Cir.

8   1986).

9        Under Rule 56(f), where further discovery is necessary to

10   enable a party to present evidence necessary to meet that

11   party's burden, the court may defer ruling on the motion until

12   such evidence has been obtained and presented to the Court.

13        Where the "clear and convincing" evidence requirement

14   applies, the trial judge's summary judgment inquiry as to

15   whether a genuine issue exists will be whether the evidence

16   presented is such that a jury applying that evidentiary

17   standard could reasonably find for either the plaintiff or the

18   defendant.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255

19   (1986).

20        A court is generally precluded from reconsidering an issue

21   previously decided by the same court, or a higher court in the

22   identical case.   Securities Investor Prot. Corp. v. Vigman, 74

23   F.3d 932, 937 (9th Cir. 1996).   For the law of the case

24   doctrine to apply, the issue in question must have been decided

25   explicitly or by necessary implication in the previous

26   disposition.   Id.   However, a party cannot revisit theories

27   that it raises but abandons, and by the same token, a party

28                                  8

**United States District Court**
For the Northern District of California

1    cannot offer up successively different legal or factual

2    theories that could have been presented in a prior request for

3    review.  Id.

4

5    B.    Breach of Fiduciary Duty

6         Before a person can be found to owe a fiduciary duty to

7    another, the factual circumstances attendant to their

8    relationship must show that he knowingly undertook to act on

9    behalf and for the benefit of the other person, or that the

10   relationship itself is one which imposes that undertaking as a

11   matter of law, such as guardian and ward, trustee and

12   beneficiary, principal and agent, or attorney and client.

13   Comm. on Children's Television, Inc. v. General Foods Corp., 35

14   Cal. 3d 197, 221 (1983); Richelle L. v. Roman Catholic

15   Archbishop, 106 Cal. App. 4th 257, 271 (2003).

16        In numerous cases California courts have rejected attempts

17   to extend fiduciary obligations to relationships where the

18   imposition of such an affirmative duty is deemed to be

19   unwarranted.  For instance, no fiduciary relationship was found

20   to exist as between the following: (1) an attorney and his co-

21   counsel under the theory that the former's malpractice in the

22   handling of a mutual client's case caused damage to co-counsel

23   in the loss of fees; (2) one shareholder and another

24   shareholder by virtue of the fact that they were former

25   partners in an entity that was later incorporated; (3) an

26   unmarried cohabitant and his cohabitant concerning the

27   operation of the former's business; (4) a movie distributor and

28                                    9

**United States District Court**
For the Northern District of California

movie producers under a distribution contract; (5) a homeowner's association and the buyer of an individual unit (with respect to disclosure of known construction defects); (6) a trade union and a union member (apart from the union's duty of fair representation); (7) a bank and its borrowers; (8) a corporation and its bondholders; (9) a clearing broker and an investment broker's customer; (10) an insurer and its insured; and (11) a manufacturer and an authorized dealer. <u>Oakland Raiders v. Nat'l Football League</u>, 131 Cal. App. 4th 621, 633 (2005) (internal case citations omitted).

Unless a fiduciary relationship exists, there can be no breach of fiduciary duty. <u>See</u>, <u>e.g.</u>, <u>id.</u> at 634. Under California law, equal shareholders in a corporation do not owe one another a fiduciary duty merely by virtue of that relationship. <u>Persson v. Smart Inventions, Inc.</u>, 125 Cal. App. 4th 1141, 1156-59 (2005). This is the case even if the equal shareholders also serve as directors and officers of the corporation. <u>Id.</u> at 1147.

C.   <u>Fraudulent Concealment</u>

Fraudulent concealment is "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead by want of communication of that fact." Cal. Civ. Code § 1710(3). A duty to disclose normally arises only where there exists a fiduciary or confidential relationship between the parties or where other special circumstances require a disclosure. <u>Warner Constr.</u>

10

1   Corp. v. Los Angeles, 2 Cal. 3d 285, 294 (1970).

2

3   D.   Inventorship

4        A patent is invalid if more or less than the true

5   inventors are named.  Jamesbury Corp. v. United States, 518

6   F.2d 1384, 1395 (Ct. Cl. 1975).  Because of the presumption

7   that a patent is valid, under 35 U.S.C. § 282, there is a

8   parallel presumption that the named inventors on a patent are

9   the true and only inventors.  As a result, a party seeking to

10  change the existing inventorship has a burden to prove by clear

11  and convincing evidence the existence of an inventorship

12  contribution to any of the patent claims.  Bd. of Educ. v. Am.

13  Bioscience, Inc., 333 F.3d 1330, 1337 (Fed. Cir. 2003).

14       To meet the clear and convincing burden of proof, alleged

15  co-inventors must prove their contribution to the conception

16  with more than their own testimony respecting the facts

17  surrounding a claim of inventorship.  Price v. Symsek, 988 F.2d

18  1187, 1194 (Fed. Cir. 1993).  Relevant corroborating evidence

19  generally takes the form of physical evidence, or oral

20  testimony of someone other than the alleged inventor.  Trovan,

21  Ltd. v. Sokymat SA, Irori, 299 F.3d 1292, 1302-03 (Fed. Cir.

22  2002).

23

24  E.   Unjust Enrichment

25       Under California law, unjust enrichment can be the basis

26  of a right to restitution or quasi-contractual recovery.  Cal.

27  Med. Ass'n v. Aetna U.S. Healthcare of Cal., 94 Cal. App. 4th

28                              11

**United States District Court**
For the Northern District of California

151, 171 n.23 (2001).  Where one obtains a benefit which he may
not justly retain, he is unjustly enriched.  <u>Id</u>.  The quasi-
contract, or contract "implied in law," is an obligation
created by the law without regard to the intention of the
parties, and is designed to restore the aggrieved party to his
former position by return of the thing or its equivalent in
money.  <u>Id</u>.  However, the mere fact that a person obtains a
benefit from another is not of itself sufficient to require
that person to make restitution therefor.  <u>Id</u>. (citing 1
Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 91, ¶¶
122-23).  Thus, even when a person has received a benefit from
another, he is required to make restitution only if the
circumstances of its receipt or retention are such that, as
between the two persons, it is unjust for him to retain it.
<u>Id</u>. (citing <u>Ghirardo v. Antonioli</u>, 14 Cal. 4th 39, 51 (1996)).
As a matter of law, a quasi-contract action for unjust
enrichment does not lie where an express binding agreement
exists and defines the parties' rights.  <u>Id</u>. at 172.

**F.   <u>Fraud</u>**

Under California law, the elements of fraud are the
following: (1) a misrepresentation (false representation,
concealment, or nondisclosure) of a material fact, (2) made
with knowledge of its falsity, (3) with intent to defraud, (4)
justifiable reliance upon the misrepresentation, and (5) damage
resulting from that justifiable reliance.  Cal. Civ. Code §
1709; <u>see</u> <u>also</u> <u>Stansfield v. Starkey</u>, 220 Cal. App. 3d 59, 72-

12

1    73 (1990); <u>Robinson Helicopter Co., Inc. v. Dana Corp.</u>, 34 Cal.

2    4th 979, 990 (2004).

3

4    <u>G.</u>    <u>Breach of Contract</u>

5          Under California law, a contract must be interpreted to

6    give effect to the mutual intention of the parties at the time

7    of entering the contract.  Cal. Civ. Code § 1636.  In order to

8    ascertain intention, the language of a contract governs its

9    interpretation, if the language is clear and explicit and does

10   not involve an absurdity.  Cal. Civ. Code § 1638.  When a

11   contract has been reduced to writing, the intention of the

12   parties is to be ascertained from the writing alone.  Cal. Civ.

13   Code § 1639.  The words of a contract are to be understood in

14   their ordinary and popular sense.  Cal. Civ. Code § 1644.

15         Extrinsic evidence may be admitted if it serves to prove a

16   meaning to which the contract is reasonably susceptible.

17   <u>Powers v. Dickson, Carlson & Campillo</u>, 54 Cal. App. 4th 1102,

18   1111 (1997).  If the court decides, after considering the

19   extrinsic evidence, that the language of the contract is

20   reasonably susceptible to the interpretation urged on the basis

21   of that evidence, the evidence is admitted as evidence to aid

22   in interpreting the contract.  <u>Id.</u>  Thus, "[t]he test of

23   admissibility of extrinsic evidence to explain the meaning of a

24   written instrument is not whether it appears to the court to be

25   plain and unambiguous on its face, but whether the offered

26   evidence is relevant to prove a meaning to which the language

27   of the instrument is reasonably susceptible." <u>Pac. Gas & Elec.</u>

28
                                    13

<div style="writing-mode: vertical-rl">**United States District Court**  For the Northern District of California</div>

1   Co. v. G. W. Thomas Drayage & Rigging Co. Inc., 69 Cal. 2d 33,

2   37 (1968).

3

4                 **III.   SUMMARY JUDGMENT MOTION**

5      Because the Federal Circuit vacated both the 2005 § 256

6   bench trial and the 2006 summary judgment order, the case is

7   essentially reset to its status in April of 2004, when the

8   Court denied summary judgment and bifurcated the § 256 cause of

9   action.  Given this state of the record, Shum contends that any

10   summary judgment motion at this time is improper as it is

11   simply a reconsideration of an existing summary judgment order

12   without establishing the required grounds for such a

13   reconsideration.  The Court does not agree.  Some matters have

14   never been considered – for example, the unjust enrichment

15   claim has been reinstated without ever being part of a summary

16   judgment proceeding.  Some matters have been vacated although

17   they have always been separate from inventorship issues – for

18   example, the question of any fiduciary relationship between

19   Shum and Verdiell.  In any event, the Court believes that given

20   the history of the case a full pre-trial review by way of a

21   summary judgment hearing is warranted.

22

23   A.   Breach of Fiduciary Duty

24      In its order of March 25, 2003, the Court addressed the

25   issue of Shum's standing to sue for a breach of fiduciary duty.

26   The Court concluded that "the alleged wrong is personal and

27   exclusive" to Shum as the sole stockholder (other than

28                        14

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

Veridell) of Radiance, to whom Verdiell owed multiple duties as its president.  On that basis, the Court held that Shum had standing and denied Verdiell's motion to dismiss at that pleading stage.

Subsequent to that order, the Court of Appeal of California issued its decision in <u>Persson v. Smart Inventions, Inc.</u>, 125 Cal. App. 4th 1141 (2005).  In <u>Persson</u>, the partners, Persson and Nokes, in the business of selling consumer products, incorporated their business with both of them as fifty percent shareholders, directors, and officers.  <u>Id.</u> at 1147.  After some success, their business fell off as well as their personal relationship, and they both hired lawyers to assist them in terminating their relationship.  <u>Id.</u> at 1147-48. Nokes proceeded to buy out Persson and remained in business. <u>Id.</u> at 1149.  The day the buyout was executed Nokes began an advertising campaign for a new product which he had never disclosed to Persson, even though he had represented to Persson that he would "paint" him a true picture of the state of the company at the time the buyout was being considered.  <u>Id.</u> at 1148-49.  Nokes made millions on the new product and Persson sued him for fraud and breach of fiduciary duty.  <u>Id.</u> at 1149-50.  Nokes was found liable for both at trial and awarded damages.  <u>Id.</u> at 1150-51.  The trial court found that Nokes owed Persson a fiduciary duty on two theories: (1) there was still a de facto partnership, and (2) Nokes had voluntarily assumed such a duty in connection with the purchase of Persson's shares.  <u>Id.</u> at 1151.  The California appellate court

15

**United States District Court**
For the Northern District of California

found that as a matter of law neither ground supported a finding of the existence of a fiduciary duty.  <u>Id.</u> at 1156. The court then reversed the fiduciary duty verdict and affirmed the fraud verdict.  <u>Id.</u> at 1178.

The appellate court held that partners do owe fiduciary duties to one another, but after incorporation they have the regular obligations of shareholders, not of partners, as there is no fiduciary duty between them at that time.  <u>See</u> <u>id.</u> at 1159.  The appellate court further held that although a fiduciary relationship may not exist based upon the legal relationship of the partners, one may exist based on the factual circumstances of their relationship.  <u>Id.</u> at 1159-62. California recognizes that reposing trust and confidence in another who is cognizant of that fact may support a confidential relationship, but that is not the same as a fiduciary relationship.  <u>Id.</u> at 1160-61.  The court stated that in order to find a fiduciary relationship the "essential elements" are: "1) The vulnerability of one party to the other which 2) results in the empowerment of the stronger party by the weaker which 3) empowerment has been solicited or accepted by the stronger party and 4) prevents the weaker party from effectively protecting itself."  <u>Id.</u> at 1161.

The <u>Persson</u> court also recognized that the existence of a confidential relationship generating a fiduciary duty is a question of fact, but that there was no evidence of the "necessary predicate" of vulnerability and reversed the trial court finding that a fiduciary relationship existed.  <u>Id.</u> at

16

United States District Court
For the Northern District of California

1   1161-62.  In its January 12, 2006 order, this Court analyzed

2   the Persson decision and found: that as to the Shum-Verdiell

3   dissolution, the facts were not distinguishable from those in

4   Persson; that the evidence in this case does not establish that

5   Shum was vulnerable or incapacitated; that Verdiell owed no

6   fiduciary duty to Shum; and granted summary judgment to

7   Verdiell.  This judgment was vacated and remanded by the

8   Federal Circuit, but that reversal was based on jury trial

9   Seventh Amendment grounds, and there was no discussion of the

10  fiduciary duty issue, which is clearly independent of the

11  Seventh Amendment issue.  In these circumstances it may be

12  contended that this matter has already been resolved, but this

13  Court has decided that all the summary judgment issues should

14  again be considered.

15       Shum contends that the argument by Verdiell, that as a

16  matter of law he did not owe Shum a fiduciary duty, has been

17  rejected by a recent decision of the California Supreme Court.

18  Shum argues that City of Hope National Medical Center v.

19  Genentech, Inc., 43 Cal. 4th 375 (2008) stands for the

20  proposition that whether a fiduciary duty arose in an agreement

21  to commercialize intellectual property was a question of fact,

22  with the result that the issue of fiduciary duty in this case

23  should be a question of fact to be submitted to the jury.  City

24  of Hope had an agreement with Genentech entrusting their

25  intellectual property in certain inventions to be developed,

26  patented, and marketed by Genentech in return for royalties.

27  City of Hope, 43 Cal. 4th at 380-85.  City of Hope sued

28                              17

United States District Court

For the Northern District of California

1  Genentech on the theory that Genentech owed them a fiduciary

2  duty and breached it.  <u>Id.</u> at 385.  A jury agreed with City of

3  Hope and awarded them compensatory damages and $200 million in

4  punitive damages.  <u>Id.</u>  The jury had been instructed that a

5  fiduciary duty is created when a party entrusts its secret

6  ideas to another to be developed in return for royalties.  <u>Id.</u>

7  at 387.  The Supreme Court held that this instruction was

8  erroneous as those facts do not necessarily create a fiduciary

9  duty.  As that was the only thesis relied upon by City of Hope

10  to create a fiduciary duty, the Supreme Court found that the

11  fiduciary duty and damage awards based upon that verdict must

12  be set aside.  <u>Id.</u> at 392.  Any suggestion by Shum that <u>City of</u>

13  <u>Hope</u> rejects <u>Persson</u> in any way is not correct.  Actually, <u>City</u>

14  <u>of Hope</u> cites <u>Persson</u> as existing California precedent

15  consistent with its decision in <u>City of Hope</u>.  <u>Id.</u> at 388.  In

16  addition, any suggestion by Shum that either <u>Persson</u> or <u>City of</u>

17  <u>Hope</u> hold that the issue of fiduciary duty must invariably be

18  submitted to a jury is also incorrect.  In both of those cases

19  jury verdicts finding fiduciary duty were set aside as a matter

20  of law without remanding them for jury consideration.  <u>See id.</u>

21  at 399; <u>Persson</u>, 125 Cal. App. 4th at 1178.

22       Upon its further consideration of the undisputed facts and

23  the present state of California law, the Court again finds this

24  is a case where there is no showing that the legal relationship

25  of the parties creates a fiduciary duty, and that it is also a

26  case where there is no showing that the factual relationship of

27  the parties creates such a duty.  The Court finds that this

28

**United States District Court**
For the Northern District of California

case falls squarely within the California law stated in Persson, and that the California Supreme Court accepts the continued vitality of that law in its City of Hope decision. Verdiell does not owe a fiduciary duty to Shum as the evidence proffered by Shum is insufficient to permit a factual finding of vulnerability or incapacity on the part of Shum, which is required by California law in order to create a factually based fiduciary duty.

Shum also claims that his fiduciary duty claim can be supported by the fact that Verdiell breached his duty to Radiance, the corporation in which he was an officer and director. In its March 25, 2003 order, the Court denied Verdiell's motion to dismiss this claim, holding that Shum's claim was for an injury personal and exclusive to him, giving him standing to sue. This order had to do with the sufficiency of the pleadings in the case, and had nothing to do with the sufficiency of the evidence to support the existence of a fiduciary duty or the breach of any such duty. As already stated, Shum and Verdiell were the only officers, directors, and owners of Radiance during its existence. Radiance was dissolved when the Plan of Liquidation was executed on January 5, 1998. Verdiell's subsequent conduct of the prosecution of the seven patents before the PTO was done at a time Radiance did not exist. Shum complains of Verdiell's plans and activities as to LightLogic which took place before Radiance was dissolved. But plans and activities to dissolve and compete with an existing business, even though undertaken by an

19

**United States District Court**

For the Northern District of California

officer or director of the business, do not, of themselves, constitute a breach of any fiduciary duty the officer or director may owe to that business.  It may be noted that it appears that Shum also engaged in similar undisclosed plans and activities to form a competing business of his own, which he called Luminance, before Radiance was dissolved.

In sum, the Court finds that on the circumstances in this case that Verdiell does not owe any fiduciary duty to Shum, or that Verdiell has breached any fiduciary duty to Radiance, and that summary judgment should be granted to Verdiell on this claim.

B.   Fraudulent Concealment

Shum supports this cause of action by his contention that Verdiell had a duty to disclose to Shum, as a stockholder in Radiance, for whom Verdiell was President, that he was forming LightLogic, a competitor corporation.  Shum's claim is based on the fact that Verdiell did not disclose his actions in competition with Radiance, despite his duty, and Shum was consequently defrauded because he relied, to his detriment, on Verdiell's non-disclosure.

The Court finds that Verdiell had no duty to disclose any potentially harmful facts to Shum.  The undisputed facts support the conclusion that Verdiell had no fiduciary duty, as discussed above, nor any duty created by the POL, nor any duty, in the arms-length negotiations in which the parties were engaged at the time, to notify Shum of Verdiell's intent to

20

United States District Court
For the Northern District of California

1   compete.   Without a duty to disclose the detrimental facts at

2   issue, Shum cannot sustain a cause of action for fraudulent

3   concealment.   Under the circumstances, the Court must grant

4   Verdiell's motion for summary judgment on Shum's cause of

5   action for fraudulent concealment.

6

7   C.   Inventorship

8       Each of the seven patents at issue in this case has

9   multiple claims and has been issued to Defendant Verdiell as

10  the sole inventor.   Each claim is considered to be a separate

11  invention.   Shum contends that he is "at least a joint

12  inventor" of these patents.   The "at least" language leaves

13  open the possibility that Shum is contending that he is the

14  sole inventor of these patents, which would require him to

15  prove that Verdiell is <u>not</u> the inventor of the patents issued

16  to him.   The Court will visit this issue after first

17  considering the joint inventorship issue.

18      To be a joint inventor, one must "(1) contribute in some

19  significant manner to the conception or reduction to practice

20  of the invention, (2) make a contribution to the claimed

21  invention that is not insignificant in quality, when that

22  contribution is measured against the dimension of the full

23  invention, and (3) do more than merely explain to the real

24  inventors well-known concepts and/or the current state of the

25  art."   <u>Pannu v. Iolab Corp.</u>, 155 F.3d 1344, 1351 (Fed. Cir.

26  1998).   The testimony of one who claims to be a joint inventor

27  is not, of itself, sufficient to prove any such fact – it must

28                              21

United States District Court
For the Northern District of California

be corroborated.  <u>Price</u>, 988 F.2d at 1194.  In order to prove

such a fact, the proponent's burden is to meet the standard of

proof of clear and convincing evidence.  <u>Am. Bioscience</u>, 333

F.3d at 1337.  In order to meet the challenge of summary

judgment the proponent of joint inventorship status must

identify relevant, admissible evidence sufficient to meet that

burden.  <u>See</u> Fed. R. Civ. P. 56(e)(1).  It is important,

however, that a Court in its assessment of any such identified

evidence in relation to a summary judgment motion is not

permitted to make any credibility or weight of evidence

determinations.  <u>See</u> <u>Liberty Lobby</u>, 477 U.S. at 255.

The question of whether or not any person has made an

inventive contribution to any patent claim is a mixed question

of fact and law.  Shum has identified an evidentiary mix of his

own testimony and asserted corroboration in the form of Lab

notebooks, drawings (CAD and otherwise), admissions of

Verdiell, and other materials which he contends are sufficient

to establish his inventive contribution to claims of the

patents.  Defendant contends that this mix, for various

reasons, is not sufficient to clear the threshold hurdle of

Rule 56 of the Federal Civil Rules, and permit the case to be

presented to a fact finder.  The Court must disagree.

Defendant's argument necessarily requires the Court to make

prohibited credibility and weight determinations.  The Court

made such determinations in the § 256 bench trial, where it was

obligated to make such determinations in order to apply the law

and find the facts, but the Court cannot make such

22

United States District Court
For the Northern District of California

1    determinations in deciding this summary judgment motion.   In

2    point of fact, the essential rationale for the Federal

3    Circuit's decision to set aside the § 256 trial was to require

4    that these questions must be decided by a jury.   Accordingly,

5    the Court will deny Defendant's motion, which would prevent

6    Shum from presenting his joint inventorship claims to a jury.

7         The question of sole inventorship, however, requires Shum

8    to prove that Verdiell was not "at least" a joint inventor of

9    that invention.   It appears that this issue may well be raised

10   at a trial of this case.   However, the issue has not been

11   briefed or argued by the parties, and it is not ripe for any

12   summary judgment decision by this Court and must be treated as

13   any other factual trial issue.

14

15   D.    Unjust Enrichment

16        Under California law, the elements of the tort of unjust

17   enrichment are, (1) receipt of a benefit and (2) unjust

18   retention of the benefit at the expense of another.

19   Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000).

20   Shum claims that when Verdiell was paid by Intel for its June

21   2001 purchase of LightLogic and the rights to the seven

22   patents, he obtained a benefit based on the patent rights of

23   Shum and that retention of that benefit is unjust.

24        Under California law a claim for unjust enrichment will

25   not lie if there is an express agreement between the parties

26   which covers the "same subject matter, existing at the same

27   time."   Wal-Noon Corp. v. Hill, 45 Cal. App. 3d 605, 613-14

28

                                  23

United States District Court

For the Northern District of California

1   (1975).  Defendants claim that the POL accepted by the parties

2   in this case is such an agreement and that the unjust

3   enrichment claim can not be sustained.  Defendants point out

4   that the POL permits each party to exploit the Radiance

5   intellectual property by obtaining patents on the technology.

6   Shum responds that although that may be true, the POL does not

7   permit Verdiell to unlawfully obtain a patent by omitting the

8   "true inventor," which in turn means that the unjust enrichment

9   claim and the POL do not cover the same subject matter.  It

10  appears to the Court that Shum has the better of this argument.

11  It is at least clear that the POL does not authorize Verdiell

12  to obtain a patent on optoelectronic technology inventions that

13  were invented by Shum and not by Verdiell.

14       Defendants also argue that there is no unjust enrichment

15  as the POL makes Shum and Verdiell "co-owners" of the Radiance

16  Technology, and that means that Shum retains all of his

17  economically valuable rights as a patentee.  This argument has

18  essentially the same flaw as the "same subject matter" argument

19  already discussed.  The Court does not believe that Defendant

20  has established that the rights of a "co-owner" under the POL

21  are co-extensive with the established rights of a patentee.

22  The fact that the Federal Circuit restored this claim after it

23  had been dismissed by this Court does not mean that it is not

24  subject to summary judgment proceedings, however, for the

25  reasons stated, it does not appear that a grant of summary

26  judgment is warranted as to this claim.

27

28
                                   24

**United States District Court**
For the Northern District of California

E.     Fraud

The Federal Circuit decision has essentially re-set this case to its status immediately before the inventorship trial. At that time the Court had considered and denied Defendant's motion for summary judgment on Shum's fraud claims in its April 2004 order.   The allegations of misrepresentations and material omissions that Shum relies upon now are essentially the same as he relied upon in 2004.   Similarly, the evidentiary support he relies upon now is essentially the same as that considered by this Court in 2004.   There is one significant difference in the fact that this Court in its present order has decided that Verdiell does not owe any fiduciary duty to Shum.   That decision applies, of course, to the fraud claim asserted by Shum, and he cannot rely upon the assertion of any such duty to support his fraud claim.   However, that circumstance does not resolve the fraud claim as there are remaining allegations and evidentiary support which do not depend upon the existence of a fiduciary duty.

Fraud cases by their nature require the fact finder to determine the state of mind of both the asserted victim and the accused offender.   Does the offender have the necessary scienter and intent to defraud?   Does the victim act in reliance on the alleged misrepresentations?   Some questions of fact are more difficult than others, and a state of mind as a question of fact, generally falls on the higher end of difficulty.   Given the standards for summary judgment, it is frequently true that these cases are not amenable to resolution

25

United States District Court

For the Northern District of California

1   by summary judgment.  As it was in 2004, this is the finding of

2   the Court at this time.  Summary judgment on the fraud cause of

3   action is denied.

4

5   F.   Breach of Contract

6        In its April 2004 order, this Court denied Defendant's

7   motion for summary judgment on this cause of action.  In the

8   course of pre-trial consideration of the contract, the Court

9   has made several rulings on the meaning of terms of the

10  contract.  The Court has not been presented with any new

11  evidence or argument that would lead it to change any of these

12  rulings – they remain as law of the case.  Nothing in these

13  rulings, however, serves to resolve the summary judgment issue.

14  It appears to the Court that, as was the case in April 2004,

15  inasmuch as the proffered evidence and the legal arguments are

16  essentially the same now as they were then, the same ruling is

17  called for – that summary judgment is denied.

18       Defendants do offer one argument that was not specifically

19  considered in 2004.  Defendants argue that in addition to the

20  issue of breach, there is insufficient evidence to permit the

21  jury to consider the issue of damages, if liability is

22  established.  Here again, the Court believes that the

23  prohibition on credibility and weight findings by the Court at

24  this summary judgment stage requires the Court to deny the

25  motion.

26

27

28                                    26

**United States District Court**
For the Northern District of California

1

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for summary judgment in part, and DENIES it in part.  As to each cause of action the Court finds as follows:

Breach of Fiduciary Duty - Summary Judgment is GRANTED.

Fraudulent Concealment - Summary Judgment is GRANTED.

Inventorship - Summary Judgment is DENIED.

Unjust Enrichment - Summary Judgment is DENIED.

Fraud - Summary Judgment is DENIED.

Breach of Contract - Summary Judgment is DENIED.


IT IS SO ORDERED


Dated:    September 26, 2008

D. Lowell Jensen
United States District Judge

27