STEPHEN E. TAYLOR (SBN 58452)
JESSICA L. GRANT (SBN 178138)
JAYESH HINES-SHAH (SBN 214256)
JONATHAN A. PATCHEN (SBN 237346)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
E-mail: staylor@tcolaw.com
E-mail: jgrant@tcolaw.com
E-mail: jhinesshah@tcolaw.com
E-mail: jpatchen@tcolaw.com

RAGESH K. TANGRI (SBN 159477)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, California 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
E-mail: rtangri@kvn.com

Attorneys for Defendants INTEL
CORPORATION, LIGHTLOGIC, INC.
and JEAN-MARC VERDIELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FRANK T. SHUM, <br><br> Plaintiff, <br><br> v. <br><br> INTEL CORPORATION, JEAN-MARC VERDIELL and LIGHTLOGIC, INC., <br><br> Defendants. | Case No.: C 02-03262 DLJ (EMC) <br><br> **OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** <br><br> Date: October 8, 2008 <br> Time: 10:30 a.m. <br> Place: Courtroom C, 15th Floor <br> San Francisco Division <br><br> Magistrate Judge Edward M. Chen |

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 1 |
| | A. | DEFENDANTS' PRODUCTION OF DOCUMENTS | 1 |
| | B. | SHUM'S DEPOSITION OF VERDIELL | 2 |
| | C. | INTEL'S PRODUCTION OF ITS PRIVILEGE LOG | 3 |
| | D. | THE PARTIES' MEET AND CONFER PROCESS CONCERNING OTHER VERDIELL PRESENTATIONS AND INTEL'S PRIVILEGE LOG | 4 |
| II. | ARGUMENT | | 5 |
| | A. | SHUM FAILS TO DEMONSTRATE THAT INTEL HAS IN FACT WITHHELD ANY RESPONSIVE PRESENTATIONS, OR THAT ANY SUCH PRESENTATIONS WOULD NOT BE WHOLLY CUMULATIVE OF THOSE ALREADY PRODUCED | 5 |
| | B. | INTEL IS NOT WITHHOLDING ANY E-MAIL ATTACHMENTS | 7 |
| | C. | INTEL'S COMMUNICATIONS WITH COUNSEL CONCERNING LEGAL ASPECTS OF A BUSINESS ACQUISITION ARE CLEARLY PRIVILEGED | 7 |
| III. | CONCLUSION | | 11 |

Taylor & Co.
Law Offices, LLP

i.

OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

# TABLE OF AUTHORITIES

**CASES**

*In re CV Therapeutics, Inc. Sec. Litig.*,
   No. C-03-3709 SI (EMC), 2006 U.S. Dist. LEXIS 41568 (N.D. Cal. June 16, 2006)8, 10, 11

*In re Grand Jury Subpoena (Torf)*,
   357 F.3d 900 (9th Cir. 2003) ................................................................................................ 11

*Leonen v. Johns-Manville Corp.*,
   135 F.R.D. 94 (D.N.J. 1990) ................................................................................................... 8

*Louisiana Mun. Police Employees Retirement Sys. v. Sealed Air Corp.*,
   No. 03-CV-4372 (DMC), 2008 U.S. Dist. LEXIS 61676 (D.N.J. Aug. 12, 2008) ................ 8

*Lyondell-Citgo Refining, LP v. Petroleos de Venezuala, S.A.*,
   No. 02 Civ. 0795 (CBM), 2004 U.S. Dist. LEXIS 26076 (S.D.N.Y. Dec. 29, 2004) ......... 10

*Neuder v. Battelle Pacific Northwest Nat'l Lab.*,
   194 F.R.D. 289 (D.D.C. 2000) ............................................................................................. 10

*United States Postal Service v. Phelps Dodge Refining Corp.*,
   852 F. Supp. 156 (E.D.N.Y. 1994) ....................................................................................... 10

*Visa U.S.A. Inc. v. First Data Corp.*,
   No. C-02-1786 JSW (EMC), 2004 U.S. Dist. LEXIS 17117 (N.D. Cal. Aug. 23, 2004) ..... 8

**RULES**

Fed. R. Civ. P. 26(b)(1)(C) & (C)(i) ............................................................................................ 7

Fed. R. Civ. P. 34 ........................................................................................................................ 3

Fed. R. Civ. P. 34(b)(2)(E)(i) ...................................................................................................... 3

ii.

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

# I. INTRODUCTION

On the eve of trial, plaintiff Frank T. Shum ("Shum") once again moves – without adequately meeting and conferring – to compel further production of documents. Shum distorts the facts relating to his contention that defendant Intel Corporation ("Intel") is improperly withholding documents. First, Shum has no basis for his new demand for the production of additional documents authored by defendant Jean-Marc Verdiell ("Verdiell"), particularly when only one of the presentations produced by defendants refers to the patents-in-suit, and *none* refers either to Shum or Radiance Design, Inc., but rather to optoelectronic packaging technology more generally. Shum also mischaracterizes the recent deposition testimony of Verdiell and cannot adequately explain why he needs any such presentations to prove his unjust enrichment claim. Second, Shum failed even to meet and confer concerning his contention that defendants are withholding attachments to three e-mails – a misconception that could have been resolved by a simple telephone call or e-mail. Finally, Shum has no support in fact or in law for his contention that documents corresponding with Intel's privilege log entry Nos. 698, 699, 700, 701, 702 and 703, relating to the 2001 acquisition of LightLogic, and which were withheld or redacted on the basis of privilege, are not "legal" in nature. The Court should not countenance yet another attempt by Shum to "even the score" for his own past abuse of the discovery process and consequent waiver of privilege. Therefore his motion to compel should be denied.

# II. BACKGROUND

## A. DEFENDANTS' PRODUCTION OF DOCUMENTS

Shum served his Fifth, Sixth and Seventh Sets of Requests for Production of Documents (comprised of 33 individual requests) to Intel and Verdiell on March 26, 2008, April 21, 2008 and June 16, 2008 respectively. Declaration of Jayesh Hines-Shah ("Hines-Shah Decl."), ¶ 4. Defendants objected to the overbroad and duplicative requests in the Fifth and Sixth Set of Requests for Production (many repeating word-for-word requests propounded by Shum in 2003 and 2004). In orders issued on July 16 and July 24, 2008, this Court ordered that defendants need only respond to a limited subset of Shum's requests. For purposes of Shum's present Motion, the

1.

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

two pertinent categories of responsive documents are as follows:

> (1) Communications -- including e-mails and memoranda -- referencing the value of LightLogic's patents-in-suit; and
>
> (2) Valuations and due diligence (and back-up documentation thereto) that have not already been produced relating to or referencing LightLogic's patents-in-suit that were generated by Intel, LightLogic, or third parties.

July 24, 2008 Order (Hines-Shah Decl., Ex. 1), at p. 1. Between July 18 and August 15, 2008, Intel produced approximately 14,000 pages of documents responsive to these and other categories of information. Hines-Shah Decl. ¶¶ 6-9.

### B.  SHUM'S DEPOSITION OF VERDIELL

On July 11, 2008, Shum noticed the depositions of Intel and Verdiell. Defendants moved for a protective order concerning these depositions. In response, this Court narrowed the scope of Verdiell's deposition to testimony concerning (1) certain Intel presentations purportedly authored by Verdiell, and (2) the consideration Verdiell received from Intel. September 4, 2008 Order (Hines-Shah Decl., Ex. 2), at p. 2.

At his deposition on September 12, 2008, Verdiell was questioned extensively concerning three presentations that were produced by Intel in discovery. *See* INT0010843-INT0010870; INT0014111-INT0014166; INT0014167-INT0014192 (reviewed by the Court at the hearing on August 21, 2008). When asked about other presentations he prepared while at Intel, Verdiell testified as follows:



Q. ▮
A. ▮

\* \* \*

Q. ▮
A. ▮
Q. ▮
A. ▮

\* \* \*

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

1  Q.
2  A.
3
4
5           * * *
6  Q.
7  A.
8
9
10



11 Hines-Shah Decl., Ex. 3, at pp. 52:18-21, 53:14-20, 54:6-14 and 55:20-56:9. At no time did

12 Shum's counsel ask Verdiell whether any of these presentations related not just to *LightLogic*, but

13 to "the *value* of LightLogic's *patents-in-suit*." July 24, 2008 Order (Hines-Shah Decl., Ex. 1), at

14 p. 1 (emphasis added).

### C. INTEL'S PRODUCTION OF ITS PRIVILEGE LOG

On September 10, 2008, less than two months after the Court's first order compelling defendants to collect, review and produce documents, and only 1 day after the production of the last large groups of documents,[1] Intel served on Shum a privilege log consisting of 710 entries. Hines-Shah Decl., ¶ 16. This log was prepared in accordance with Fed. R. Civ. P. 34, which mandates that documents be produced "as they are kept in the usual course of business." Fed. R. Civ. P. 34(b)(2)(E)(i). At Shum's request, Intel produced two days later a copy of the privilege log with the entries sorted in chronological order. Hines-Shah Decl., ¶ 17.

///

///

///

---

[1] Intel produced 304 pages of additional documents on August 23, 2008 and September 9, 2008. *See* Hines-Shah Decl., ¶¶ 11-12.

3.
OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

TAYLOR & CO.
LAW OFFICES, LLP

### D. THE PARTIES' MEET AND CONFER PROCESS CONCERNING OTHER VERDIELL PRESENTATIONS AND INTEL'S PRIVILEGE LOG

Pursuant to the parties' agreement allowing Shum's counsel 7 court days to challenge the adequacy of Intel's privilege log,[2] on September 16, 2008, Shum's counsel sent a letter identifying 114 documents that Shum contended were not privileged. Hines-Shah Decl., Ex. 6. In addition to the arguments repeated in the instant Motion, Shum also raised certain frivolous arguments concerning the timing of Intel's production of its privilege log, and a possible "waiver" by Intel of the privilege with respect to more than 600 documents relating to Intel's 2007 sale of the telecom portion of its Optical Platform Division to EMCORE Corporation.

Counsel for Intel re-reviewed the 114 documents and determined that three of them (privilege log entry Nos. 706, 707 and 708) were not privileged, that five entries (Nos. 699-703) could be produced in redacted form to remove the privileged information, and that the descriptions of four other documents (reflected in privilege log entry Nos. 704, 705, 709 and 710) should more clearly indicate that those draft documents were subject to "Legal Review." Hines-Shah Decl., ¶ 20. Counsel for Intel revised the privilege log to address all of these changes. On September 18, 2008, Intel produced an amended privilege log and the documents that had been removed from the log (or redacted), together with a response to Shum's meet-and-confer letter. Hines-Shah Decl., Ex. 7.[3]

Later on September 18, 2008, counsel for the parties met and conferred in person. At no time during the meet and confer or before filing the instant Motion did Shum's counsel raise any issue with respect to the seven documents produced on September 18. Hines-Shah Decl., ¶ 23. Had Shum's counsel bothered to discuss documents INT0015355-INT0015356, INT0015357-INT0015359 or INT0015360, they would have been informed that the first document contained no

---

[2] Hines-Shah Decl., Ex. 5.

[3] Although the revised privilege log dated September 18, 2008 still contained an entry for document No. 706, that document was in fact determined to be non-privileged and was produced to plaintiff on September 18 (Control Nos. INT0015355-INT0015356).

4.

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

attachment, that the attachment to the second document was inadvertently omitted, and that the attachments to the third document duplicated documents Intel had already produced. Hines-Shah Decl., ¶ 24. Now that Intel has again produced these documents, together with their extant attachments (*see* Hines-Shah Decl., ¶ 25), Shum has no basis for contending that Intel is withholding responsive documents.

Finally, after reviewing the instant Motion, Intel re-reviewed the disputed privilege log entries and determined that the documents associated with privilege log entry Nos. 704, 705, 709 and 710 should be produced. Those documents were produced on September 26, 2008, at INT0015371-INT0015593. Hines-Shah Decl., ¶ 25. Therefore the only items still in dispute are the documents described in Intel's privilege log entry Nos. 698-703.[4]

## II. ARGUMENT

### A. SHUM FAILS TO DEMONSTRATE THAT INTEL HAS IN FACT WITHHELD ANY RESPONSIVE PRESENTATIONS, OR THAT ANY SUCH PRESENTATIONS WOULD NOT BE WHOLLY CUMULATIVE OF THOSE ALREADY PRODUCED

This Court's instructions in its Orders of July 16 and July 24, 2008 were quite clear. Intel was under no obligation to search for "all presentations" authored by Verdiell. Nor was it obligated to search for "all opto-electronics presentations" – or even "all opto-electronics presentations *concerning LightLogic technology*" authored by Verdiell. The reason is simple. This is a case about the inventorship of the seven patents-in-suit, and Shum's purported damages and defendants' purported unjust enrichment stemming from those patents. Thus, the Court ordered defendants to search for and produce a narrow category of documents "referencing the *value* of LightLogic's patents-in-suit." July 24, 2008 Order (Hines-Shah Decl., Ex. 1), at 1 (emphasis added).

The Court's July 24 Order expressly rejected defendants' proposed limitation that any such

---

[4] Shum's Proposed Order does not specifically seek production of unredacted versions of the documents reflected in entry Nos. 699-703, which were produced at INT0015361-INT0015370. Intel nonetheless addresses these documents because Shum's Motion appears to challenge the foundation for these redactions. (Shum Corrected Mem. at pp. 3:1:10, 6:7-22.)

5.

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

documents must reference the "financial" value of the patents-in-suit. Therefore Intel produced many documents – e.g., due diligence materials, analyst reports, post-acquisition summaries, and technological presentations – that while not expressly valuing the patents-in-suit, arguably could be read to address the level of importance (i.e., the "value") of the underlying technology. Shum, rather than accepting Intel's substantial production at face value, inexplicably infers a nefarious plot is afoot to withhold the information it seeks (and which Shum has been advised repeatedly does not exist). But Shum's evidence of such a plot founders at even the most basic level.

As an initial matter, at no time during Verdiell's deposition did Shum's counsel ever ask the witness whether any of his other presentations referred specifically to the patents-in-suit, to Radiance Design, Inc., or to Shum. Thus there is no basis whatsoever for Shum to contend in his brief that *any* of these presentations would be responsive to this Court's July 24, 2008 Order. Shum's brief disingenuously puts into Verdiell's mouth the phrase "the technology covered by the patents-in-suit" (Shum Corrected Mem. at pp. 3:28-4:1), despite the lack of any testimony from Verdiell concerning the patented technology – as opposed to optoelectronics more generally.[5] Moreover, the one presentation identifying four of the patents-in-suit did *not* discuss the underlying technology, but simply listed these patents – as part of Verdiell's curriculum vitae and background – as "some" of the patents on which Verdiell appeared as an inventor. Hines-Shah Decl., Ex. 4 (Verdiell Depo., Ex. 3) **[Lodged Under Seal]**, at 3.

Moreover, Shum cannot connect or otherwise relate the allegedly "withheld" presentations by Verdiell to the issue of inventorship or Shum's unjust enrichment claim. It is not enough for Shum to restate the Court's previous observation that Verdiell may be questioned about certain newly-produced documents "given the undisputed similarity between the LightLogic presentations and the Intel presentations." Hines-Shah Decl., Ex. 2, at 2. First, Intel has produced the non-privileged documents in its possession, custody or control that were collected and determined to

---

[5] Shum's brief also fails to include the testimony given by Verdiell in which he testifies that he *does not* have an understanding as to what is meant when Mr. MacDonald refers generally to "the patents-in-suit." Hines-Shah Decl., Ex. 3, pp. 74:25-75:5.

6.

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

be responsive to the July 24, 2008 Order.  As defendants informed Shum's counsel, two of the three presentations at issue make no reference whatsoever to "the *value* of LightLogic's patents-in-suit," but were produced to avoid any question that defendants were in compliance with the July 24, 2008 Order.  Second, Shum makes not even the faintest suggestion of what he expects to find in additional presentations (to the extent any exist), or why – in the context of a patent inventorship dispute where Shum claims that Verdiell and others were unjustly enriched – such presentations would not be wholly cumulative of the discovery Shum has already received.  *See* Fed. R. Civ. P. 26(b)(1)(C) & (C)(i) (stating that a court "*must* limit the . . . extent of discovery allowed by these rules" if "the discovery sought is unreasonably cumulative or duplicative").

### B.  INTEL IS NOT WITHHOLDING ANY E-MAIL ATTACHMENTS

As discussed above, Shum never adequately met and conferred concerning the 16 pages of documents Intel produced on September 18, 2008, and specifically the three documents produced at INT0015355-INT0015356, INT0015357-INT0015359 and INT0015360.  Had Shum's counsel bothered to do so, they would have been informed that the first document contained no attachment, the attachment to the second document was inadvertently omitted, and that the analyst reports discussed in INT0015360 had been produced in January 2004 (Control Nos. INT0000314-INT0000335 and INT0000336-INT0000352).  Hines-Shah Decl., ¶ 24.  A simple phone call or e-mail would have resolved the issue.[6]

### C.  INTEL'S COMMUNICATIONS WITH COUNSEL CONCERNING LEGAL ASPECTS OF A BUSINESS ACQUISITION ARE CLEARLY PRIVILEGED

Finally, concerning the remaining six documents that Shum contends are improperly redacted or withheld, Shum devotes significant portions of his brief in an effort to establish the obvious point that communications with counsel are privileged only with respect to "legal" matters.  But nowhere does Shum cite any authority for the proposition that lawyers' analysis of potential legal problems associated with a potential acquisition and its draft merger agreement is

---

[6] To avoid any doubt whatsoever in the matter, defendants have *again* produced the documents in question, together with their attachments, at INT0015371-INT0015593.  Hines-Shah Decl., ¶ 25.

7.

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

merely "business" advice. On the contrary, the relevant authority on these issues points the other way – as defendants indicated in their September 18, 2008 meet and confer letter to Shum's counsel.

Although it is undisputed that the attorney-client privilege does not extend to communications that are "business" rather than "legal" in nature, courts will find that the privilege should be upheld when "the communication is designed to meet problems which can fairly be characterized as predominately legal." *Leonen v. Johns-Manville Corp.*, 135 F.R.D. 94, 99 (D.N.J. 1990). Moreover, the Ninth Circuit appears to have refined this test, such that legal discussion need not "predominate," but rather the privilege is available for documents containing legal and business advice whenever the document is prepared "*because* legal advice was sought." *Visa U.S.A. Inc. v. First Data Corp.*, No. C-02-1786 JSW (EMC), 2004 U.S. Dist. LEXIS 17117, *27 (N.D. Cal. Aug. 23, 2004); *see also In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI (EMC), 2006 U.S. Dist. LEXIS 41568, *10 (N.D. Cal. June 16, 2006) ("the Court applies the 'because of' test to dual purpose documents for which Defendants claim attorney-client privilege").

In a business transaction where attorneys for the acquiring party conduct due diligence to determine the status of *legal* issues concerning the target, courts have held this activity to be within the attorney-client privilege. *See Louisiana Mun. Police Employees Retirement Sys. v. Sealed Air Corp.*, No. 03-CV-4372 (DMC), 2008 U.S. Dist. LEXIS 61676, *15-20 (D.N.J. Aug. 12, 2008) (upholding privilege for acquirer's due diligence of target concerning potential liability). "That legal issues may present themselves, and the need for legal advice may arise, in the context of a business transaction does not make the advice sought any less legal in nature." *Id.* at *19.

Here, Shum questions the legal nature of counsel's communications for the following documents:

- Entry No. 698 – a March 13, 2001 "Confidential communication from counsel for the purpose of providing legal advice regarding draft merger agreement in pending deal." This document was prepared by Intel in-house counsel, sent to one outside lawyer representing Intel, three Intel lawyers, and three Intel non-lawyers. It was also copied to two outside lawyers representing Intel.

8.

- Entry No. 699 – a March 12, 2001 "E-mail communication regarding daily due diligence report for the Licorice transaction -- REDACTED to eliminate privileged communications concerning the status of the legal review and evaluation of the Licorice transaction." This document was prepared by an Intel non-lawyer following a daily meeting involving both lawyers and non-lawyers regarding a variety of business and legal due diligence issues, and was sent to one outside lawyer representing Intel, three Intel lawyers, and thirty-one Intel non-lawyers who were part of the Intel acquisition team.
- Entry No. 700 – a March 13, 2001 e-mail prepared for the same purpose and sent to the same distribution list as entry No. 699.
- Entry No. 701 – a March 15, 2001 e-mail prepared for the same purpose and sent to the same distribution list as entry No. 699.
- Entry No. 702 – a March 15, 2001 e-mail prepared for the same purpose and sent to the same distribution list as entry No. 699.
- Entry No. 703 – a March 19, 2001 e-mail prepared for the same purpose and sent to the same distribution list as entry No. 699.

Shum erroneously contends that the foregoing documents are uniformly business documents, and that the presence of non-lawyers on these communications undermines the privileged nature of these documents. (Shum Corrected Mem. at pp. 6:7-7:1.) Neither argument has merit. First, the redacted due diligence reports make clear that Intel reviewed numerous functional questions about the potential LightLogic acquisition and integration of that business. By contrast, the *legal* due diligence was undertaken by Intel lawyers in an effort to provide legal advice to Intel concerning matters that may arise in connection with the LightLogic acquisition. *See* Declaration of Suzan A. Miller in Opposition to Motion to Compel, ¶¶ 2-5 (explaining that legal due diligence and analysis of proposed deal terms were circulated to Intel lawyers for a legal purpose, and that such communications often included both lawyers and non-lawyers to simplify communication regarding unresolved issues); *see also* Hines-Shah Decl., Ex. 8 (Declaration of Gerald D. Haynes dated Nov. 29, 2004), ¶ 4 (explaining in similar context that Intel's Legal and Government Affairs ("LGA") Group communicated concerning business transactions of Intel only "for the purpose and in the context of providing legal advice regarding those transactions," and not to make business decisions). It would frustrate the purpose of the attorney-client privilege to require that legal communications regarding a transaction be walled off from business

9.

OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

TAYLOR & CO.
LAW OFFICES, LLP

communications regarding the same transaction. Miller Decl., ¶ 3. *Cf. Upjohn v. United States*, 449 U.S. 383, 392 (1981) (rejecting a narrow construction of the privilege that "makes it difficult for corporate attorneys to formulate sound advice when their client is faced with a specific legal problem").

Second, the fact that some of the documents in dispute were distributed to more non-lawyers than lawyers does not automatically vitiate their privileged status. *See, e.g., In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 428 (N.D. Ill. 2006) (upholding privilege for legal advice redacted from memorandum circulated from one non-lawyer to eleven non-lawyers, on which one in-house lawyer was copied); *see also In re CV Therapeutics, Inc*, 2006 U.S. Dist. LEXIS 41568, *14 (upholding privilege for draft documents "circulated to both legal counsel and non-lawyer recipients" in the "context of seeking FDA approval, an inherently legal process"). This is especially true when lawyers and non-lawyers need to be informed rapidly of developments. Miller Decl., ¶ 3. Here, Intel's due diligence of LightLogic moved along very quickly, from a term sheet executed in February 2001 to an agreement signed on March 25, 2001.

The case law cited by Shum is inapposite. In *Neuder v. Battelle Pacific Northwest Nat'l Lab.*, 194 F.R.D. 289 (D.D.C. 2000), in-house counsel was a voting member of a personnel action review committee responsible for determining whether to terminate an employee. The court correctly determined that there was no dual purpose legal and business advice being rendered, where counsel was acting entirely in a non-legal capacity. *Id.* at 293-95. And *United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156 (E.D.N.Y. 1994) is distinguishable because it involved comments of attorneys primarily on "documents prepared by scientific consultants," for which the attorneys' comments "were not substantive and consisted mainly of editorial comments or inserts providing factual background." *Id.* at 162. Here, by contrast, Intel's privilege log entries clearly indicate that the lawyers were commenting on strategy and potential legal issues in connection with the potential acquisition of LightLogic.

Finally, *Lyondell-Citgo Refining, LP v. Petroleos de Venezuala, S.A.*, No. 02 Civ. 0795 (CBM), 2004 U.S. Dist. LEXIS 26076 (S.D.N.Y. Dec. 29, 2004) contains no analysis whatsoever of the number of non-attorney recipients of a purportedly privileged communication, or the reason

10.

TAYLOR & CO.
LAW OFFICES, LLP

OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

why they were included on the communication.[7] This very general factor is insufficient to defeat the privilege, where this Court "must consider 'the totality of the circumstances,' looking to the nature of the document and the factual situation of the particular case." *In re CV Therapeutics, Inc*, 2006 U.S. Dist. LEXIS 41568, *11 (quoting *In re Grand Jury Subpoena (Torf)*, 357 F.3d 900, 908 (9th Cir. 2003)). Based on the descriptions provided by Intel – the adequacy of which Shum does not challenge – this Court has more than sufficient information to determine that documents described at entry Nos. 699, 700, 701, 702 and 703 were properly redacted, and that the document described in entry No. 698 was properly withheld on the basis of the attorney-client privilege.

### III. CONCLUSION

Because Shum has no basis to contend that Intel is withholding non-duplicative documents authored by Verdiell that bear on the issues in this case, because Intel has produced all extant attachments to the three e-mails identified by Shum, and because Intel has adequately described the basis for the attorney-client privileged underlying the redaction or withholding of the six remaining documents, the Court should deny Shum's motion to compel production of further documents from Intel.

Dated: September 29, 2008

Respectfully submitted,

TAYLOR & COMPANY LAW OFFICES, LLP

By: ____/s/ Jayesh Hines-Shah____
Jayesh Hines-Shah
Attorneys for Defendants INTEL CORPORATION, LIGHTLOGIC, INC. and JEAN-MARC VERDIELL

---

[7] This decision is dicta because it turned in part on the court's "supplemental concern about the possible applicability of the crime or fraud exception to the attorney-client privilege." *Id.* at *6-7.

11.
OPPOSITION OF DEFENDANT INTEL CORPORATION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS: CASE NO. C 02-03262 DLJ (EMC)

TAYLOR & CO.
LAW OFFICES, LLP