TOWNSEND AND TOWNSEND AND CREW LLP
MARK T. JANSEN (State Bar No. 114896)
PAUL F. KIRSCH (State Bar No. 127446)
ANGUS M. MacDONALD (State Bar No. 212526)
TALI L. ALBAN (State Bar No. 233694)
Two Embarcadero Center, Eighth Floor
San Francisco, California 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: mtjansen@townsend.com, pkirsch@townsend.com
ammacdonald@townsend.com, tlalban@townsend.com

Attorneys for Plaintiff FRANK T. SHUM

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FRANK T. SHUM,<br><br>    Plaintiff,<br><br>  v.<br><br>INTEL CORPORATION, JEAN-MARC VERDIELL, and LIGHTLOGIC, INC.,<br><br>    Defendants. | Case No.   C02-3262 DLJ (EMC)<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Date:      October 8, 2008<br>Time:      10:30 a.m.<br>Mag. Judge:   Hon. Edward M. Chen<br>Courtroom:   C, 15th Floor |

**REDACTED VERSION**

(UNREDACTED VERSION SUBMITTED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER)

## I. DEFENDANTS' LATE PRODUCTIONS VIOLATE THE COURT'S AUGUST 8, 2008 ORDER

Only a few weeks before trial, Defendants continue to produce highly relevant documents (on September 9, 18 and 26, 2008) that have been improperly withheld for years. These documents demonstrate that, contrary to Defendants' position throughout this litigation, Intel considered the technology disclosed in the patents at issue as a critical factor in its acquisition of LightLogic. Defendants' eve-of-trial productions, which contain documents directly relevant to Shum's unjust enrichment claim, have substantially prejudiced Shum's right to obtain full discovery in advance of trial as they were provided only *after* fact depositions took place in late August and early September, *after* Shum served his expert reports on September 2, and *after* Shum had to prod Defendants to remove documents off their concededly erroneous privilege log. Moreover, these late productions violate Judge Jensen's August 8, 2008 Order regarding discovery deadlines. To put Shum's motion to compel (and Defendants' opposition) in the proper context, it is necessary to briefly summarize the chronology of Defendants' most recent late productions, which continue to trickle in after Shum filed his motion to compel.

On August 8, 2008, pursuant to stipulation, Judge Jensen ordered: "*Defendants are to complete their document production by August 15, 2008.*" Docket No. 626, at 2 (emphasis added), attached as Exhibit 1 to the Reply Declaration of Angus M. MacDonald ("MacDonald Reply Decl."). The purpose of this stipulation, which was requested by Defendants, was to provide Shum with <u>all</u> of the documents produced by Defendants *before* the fact depositions that took place in late August and early September and *before* Shum's expert reports were served on September 2, 2008. (MacDonald Reply Decl., ¶ 2.)

On September 9 – twenty-five days after the August 15 deadline ordered by the Court – Defendants produced almost 300 pages of new documents. (MacDonald Reply Decl., ¶ 4.)

On September 10 – more than two weeks after the depositions of Intel's Rule 30(b)(6) witnesses – Defendants produced their long-awaited privilege log. (MacDonald Reply Decl., ¶ 5.) This log was served more than three months after Defendants began producing documents on June 4, 2008. (*See id.*) Shum's counsel had repeatedly asked for Defendants to supply their privilege log since June. (*See id.*)

On September 16, after reviewing Defendants' privilege log, Shum's counsel wrote a letter to

1  Defendants, alerting them of various problematic entries in their log. (MacDonald Reply Decl., ¶ 6.)

2  On September 18 – one day before Shum's deadline to file his motion to compel – Defendants
3  responded to Shum's letter and conceded that some of Defendants' privilege log entries were incorrect.
4  (MacDonald Reply Decl., ¶ 7.) Defendants produced additional documents, including several
5  documents highly relevant to one of the core issues in the case: the value of the Radiance technology
6  to Intel. One such document is Intel's comparison of the advantages of acquiring LightLogic (code
7  name: "Licorice") over another company ███████████████████████. According to
8  Intel's own due diligence document, ███████████ appeared to have more significantly advantages
9  than LightLogic, except for one critical aspect: ███████████████████████████
10 █████, which is the technology disclosed in several of the patents-in-suit. (*See id.*, Ex. 2.) Another
11 document refers to LightLogic's ███████████████ and demonstrates the need of Intel executives
12 to make the case that for Intel's $409 million acquisition of LightLogic, the successor-in-interest to
13 Radiance. (*See id.*, Ex. 4. at INT 0015437.) Apparently, LightLogic's ███████████████ made the
14 case.

15 One week after Shum filed his motion to compel, on September 26, Defendants produced even
16 more documents (223 pages) that they again conceded were erroneously withheld on their privilege
17 log. (MacDonald Reply Decl., ¶ 9, Ex. 3.) These documents were, in part, the subject of Shum's
18 motion to compel and include more highly relevant information. For example, there was a six-page
19 Intel due diligence document highlighting what advantages LightLogic's patented technology would
20 bring to Intel. Intel specifically linked LightLogic's ███████████████████████████████
21 ███████████████████████████████████████████████████████████████████████
22 ███████ (*See id*, ¶ 10, Ex. 4 at INT 0015437.)

23 These late productions violate Judge Jensen's August 8, 2008 Order and constitute sanctionable
24 conduct. *See, e.g., Cusano v. Klein*, 1999 WL 34834524, at *5-6 (C.D. Cal. Apr. 13, 1999) (ordering
25 that plaintiff could not use late-produced documents for any purpose because of prejudice caused by
26 such delayed production); *AAIpharma, Inc. v. Kremers Urban Development Co.*, 2006 WL 3096026, at
27 *5 (S.D.N.Y. Oct. 31, 2006) ("the failure to comply with *any* court-issued discovery order can trigger
28 Rule 37 sanctions") (internal quotation marks omitted).

Moreover, these late productions have created substantial prejudice in Shum's preparation for trial. *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) ("failure to provide documents and information in a timely fashion prejudiced the ability of Exxon and VECO to prepare their case for trial"); *Cusano*, 1999 WL 34834524, at *7 ("plaintiff's repeated failure to produce court-ordered or authorized discovery in a timely manner caused great delay and expense to defendants ... [and] generally prejudiced their 'ability to prepare their case for trial'"). Specifically, Shum should have had the opportunity to receive and review all responsive documents (particularly those that should have been produced pursuant to a Court order) before the fact depositions in August and September, to depose all witnesses based on all relevant information and documents, and to have Shum's experts consider these documents in their reports, which were due September 2. Instead, Shum now must fight over documents that should have been produced years ago – and, at the minimum, over six weeks ago – and to follow up and take whatever additional action is required with regard to those documents.

## II. VERDIELL'S PRESENTATIONS SHOULD BE PRODUCED

In its September 4, 2008 Order, this Court allowed Shum to re-depose defendant Jean-Marc Verdiell on the basis of three presentations he authored at Intel covering the patented subject matter in suit. *See* Sept. 4, 2008 Order (Docket No. 643). At his deposition, Verdiell revealed that, during his five-year tenure at Intel, he authored "many, many, many, many" other presentations similar to the ones at-issue in his deposition. (Declaration of Tali Alban in Support of Motion to Compel ("Alban Decl."), Ex. E at 52-55.) At the very minimum, these presentations are relevant as to Intel's unjust enrichment, and specifically how Intel unjustly received benefits from the patents and the technology disclosed in those patents (which Intel acquired from Verdiell and his company, LightLogic, Inc.) even though the patented technology was invented and/or owned by Shum – as will be proven at trial.

Defendants fail to provide any reasonable justification as to why they produced some of the Verdiell-authored presentations discussing the patents and/or patented technology, but not the others. Instead, Defendants nakedly assert that the withheld presentations are "wholly cumulative of the discovery Shum has already received." (Opp'n at 7:7.) That excuse is plainly lacking. The fact that Defendants produced three presentations by Verdiell does not make production of the other, different Verdiell-authored presentations unreasonably cumulative. *See Klein v. AIG Trading Group Inc.*, 228

F.R.D. 418, 424 (D. Conn. 2005) ("Further, that extensive reserve data has been produced does not mean that the production of more is not required. The court finds that the discovery sought is not 'unreasonably cumulative or duplicative'").

Defendants also argue that "there is no basis whatsoever for Shum to contend in his brief that any of these presentations would be responsive to the Court's July 24, 2008 Order." (Opp'n at 6:10-11.) Setting aside the obvious fact that Shum does not have the benefit of seeing these withheld presentations, Defendants take an unduly restrictive of what was ordered by the Court. As Defendants correctly concede, this Court rejected Defendants' proposed limitation that "value" must be "financial." (Opp'n at 5-6.) Indeed, within the context of unjust enrichment,[1] the term "benefit" (synonymous with "value") means "any type of advantage." *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1662 (1992). Therefore, Shum is entitled to discover what "benefits" or "advantages" were obtained by Intel through the patented technology, as disclosed in Verdiell's presentations. Further, Defendants indicate that two of the three presentations did not specifically reference the "value" of LightLogic's patent-in-suit, yet were produced "to avoid any question that defendants were in compliance with the July 24, 2008 Order." (Opp'n at 7:3-4.) That rationale should apply with equal force to the "many, many, many, many" presentations they are currently withholding.

"The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998); *see also 3Com Corp. v. D-Link Systems, Inc.*, 2007 WL 949596,*4 (N.D. Cal. March 27, 2007) ("D-Link cannot dispose of its discovery obligations on its own by unilaterally calculating the time period to which it believes plaintiff is entitled to recover damages."). Here, Defendants cannot meet this burden by summarily pronouncing these Verdiell presentations as non-responsive, cumulative or irrelevant to Shum's unjust enrichment claim. *See, e.g., Jones v. Deutsche Bank AG*, 2006 WL 648369, at *2-3 (N.D. Cal. March 10, 2006) ("Even if Deutsche Bank thinks Jones' allegations are wrong, discovery to test the truth of Jones' allegations is

---

[1] The elements of an unjust enrichment cause of action are "receipt of a benefit" and "unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 ( 2000).

appropriate....[I]t is not for Deutsche Bank unilaterally to make the factual and legal determination that the other tax shelters were separate, or to refuse to produce documents on that basis."); *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 652-53 (N.D. Cal. 2004) (compelling patent infringer to produce documents relating to licensing under patents that were not in-suit because such documents were relevant to damages).

Should the Court order production of these withheld presentations, Shum is also entitled to re-depose Verdiell for a limited time with regard to the presentations. *See Boston Scientific Corp. v. Cordis Corp.*, 2004 WL 1945643, at *2 (N.D. Cal. Sept. 1, 2004); *Fresenius Medical Care Holdings, Inc. v. Roxane Labs., Inc.*, 2007 WL 764302, at *4 (S.D. Ohio Mar. 9, 2007) (granting motion to re-depose witness based on production of additional documents); *Heller Healthcare Finance, Inc. v. Boyes*, 2002 WL 1558337, at *1 (N.D. Tex. July 15, 2002) (granting motion to re-depose deponent based on the subsequent discovery of documents that were not produced at the time of the first deposition).

### III. DEFENDANTS SHOULD PRODUCE THEIR REDACTED DOCUMENTS

#### A. Defendants Have Failed To Show that The Redacted Documents Are Privileged

Defendants make much of the fact that Intel in-house corporate attorneys were recipients on the redacted documents. However, Defendants fail to acknowledge that it took *three* attempts in this latest round of meeting and conferring, correspondence and motion-writing in order for Defendants to produce critically important documents that were incorrectly withheld on the same basis – i.e., that an Intel corporate attorney was listed as one of the recipients. Each time Defendants were pushed (by Shum's letters or the filing of a motion to compel), a few more highly relevant, responsive documents trickled in. For example, after their late-production of their privilege log, Plaintiff's counsel wrote to Defendants, alerting them to entries that claimed privilege for apparently non-privileged documents. (MacDonald Reply Decl., ¶ 6.) In response, on September 18, just hours before both parties' counsel were to meet and confer, and one day before Shum's deadline to file a motion to compel, Defendants produced several key documents. (*See, e.g.*, MacDonald Reply Decl., ¶ 8 & Ex. 2.) This production included redacted documents relating to Intel's due diligence of the LightLogic acquisition and relate directly to the issue of Intel's unjust enrichment. Having failed to reach an agreement during the meet

1   and confer, Shum filed his motion to compel on September 19 and then days later, on September 26,
2   Defendants produced a highly relevant document, in which Intel touts LightLogic's ▮▮▮▮▮
3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (MacDonald Reply Decl., Ex. 4 (INT 0015436 and INT00 15437,
5   respectively).) These documents strike at the core of Shum's unjust enrichment claims against
6   LightLogic and Intel, and their initial inclusion on Intel's privilege log raises considerable questions as
7   to the remaining documents on Intel's privilege log.
8       Defendants correctly note that the Ninth Circuit applies the "because of" test to determine
9   whether "dual purpose" documents may be privileged. Opp'n at 8 (citing *In re CV Therapeutics, Inc.*
10  *Sec. Litig.*, No. C-03-3709 SI (EMC), 2006 WL 1699536, at *2-6 (N.D. Cal. June 16, 2006)). In
11  applying this test, "the Court must consider the totality of the circumstances, looking to the nature of
12  the document and the factual situation of the particular case." *CV Therapeutics*, 2006 WL 1699536, at
13  *3 (internal quotations omitted). Additionally, the Court should also consider whether a
14  communication explicitly sought legal advice and the "breadth of the recipient list in assessing the
15  centrality of potential legal advice generated by the communication." *Id.* at *4. The withheld
16  documents at issue in *CV Therapeutics*, cited by the Defendants, were dual purpose documents, many
17  of which were widely distributed both to business personnel and to legal counsel. *Id.* The defendant
18  submitted a declaration from its general counsel stating that it was "a common practice" at CVT for
19  non-legal personnel to impliedly seek legal review by copying attorneys on communications. *Id.* This
20  Court found that "[t]aken to its logical limit, [this] would imply that every document, no matter how
21  dominant its business purpose or how tangential legal counsel's role, would be shielded under the
22  attorney-client privilege so long as a copy was circulated to legal counsel. This is not the law." *Id.*
23      Nevertheless, this Court found that many of the documents in question, mostly drafts sent to or
24  from the legal department, were privileged. *Id.* at 5-6. There were exceptions, however. The Court
25  held that the defendants had not demonstrated that a request for legal advice was central to multiple
26  emails, including some containing drafts manuscripts for review or draft letters to editors concerning
27  defendants' products. *Id.* at *9-10.
28      Like the defendants in *CV Therapeutics*, Defendants here have submitted a declaration from in-

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS
CASE NO.C02-3262 DLJ (EMC)                                                                              6

house counsel at Intel, stating that "Communications within Intel concerning potential transactions frequently include both lawyers and non-lawyers." (Decl. of Suzan A. Miller in Support of Intel Corporation's Opposition to Plaintiff's Motion to Compel Production of Documents ("Miller Decl.") at ¶ 3.) According to the Miller Declaration, such a system "simplifies communication and allows all members of the team to track the status of unresolved issues . . . . " *Id.* Although Intel attempts to further explain that the redactions constitute legal advice (*id.* at ¶ 5), applying the very "because of" test mentioned by Defendants demonstrates the impropriety of the redactions.

First, the documents in question are corporate due diligence reports. As is evidenced by the content of the unredacted portions of the documents, they were prepared for a business purpose – i.e., to facilitate Intel's $409 million acquisition of LightLogic. Also evident from the face of the documents is that no explicit request for legal advice was made. Rather, these were daily reports concerning the status of Intel's investigations of LightLogic for the purpose of merger. Finally, these reports were authored by business personnel and were broadcasted to approximately thirty recipients. (Alban Decl., ¶ 5, Ex. D at INT 0015363.) Given the circumstances surrounding the documents at Entry Nos. 699-703, a request for legal advice was not central to all or part of the documents in question.[2]

**B. Defendants Waived Any Privilege By Putting At Issue Intel's Due Diligence With Regard To LightLogic**

Even if Defendants had met their burden and had shown that the documents are properly redacted, Defendants have waived the privilege by putting at issue Intel's due diligence of LightLogic (including arguably privileged communications) in issue. A central issue in this case is whether Intel knew about Shum's ownership rights in the Radiance technology at the time it was considering acquiring LightLogic. In support of its initial claim that it did not know of Shum's rights (and that

---

[2] Defendants cite *Louisiana Municipal Police Employees Retirement System v. Sealed Air Corporation*, No. 03-CV-4372 (DMC), 2008 WL 3821799, at *3-8 (D.N.J. Aug. 12, 2008), for the proposition that courts have held upheld the extension of privilege to due diligence reports where legal advice was sought. (Opp'n at 8.) That case is factually distinguishable. In that case, the communications were prepared by or for the acquirer's counsel, which is not the case here. Further, the documents were prepared solely for a legal purpose: a legal analysis of the acquirer's potential liability. *Sealed Air*, 2008 WL 3821799, at *6-8.

Shum did not have any rights to the Radiance intellectual property), Intel produced in early 2004 some due diligence documents relating to the acquisition of LightLogic. Like the documents at Entry Nos. 699-703, these earlier produced documents mention whether there were any relating to the pending merger. (*See* MacDonald Reply Decl., Ex. 5 at INT 0000161).) These initial documents show no flags were raised with respect to the intellectual property in question. Now, apparently, Defendants have changed their story and are claiming that Intel was aware all along of Shum's co-ownership rights in the Radiance intellectual property. These latest due diligence documents contain redactions that may elucidate further what Intel did or did not know at the time.

*Government Guarantee Fund of the Republic of Finland v. Hyatt Corporation* is on point. 177 F.R.D. 336 (D.V.I. 1997). There, in support of its opposition to plaintiffs' motion for summary judgment, defendant Hyatt Corporation ("Hyatt") filed an affidavit by Shindler, the senior vice president of a division of Hyatt who had been an attorney prior to taking the management position. *Id.* at 341. Hyatt made it clear, however, that in his managerial role Shindler was a "business person" and not an attorney. *Id.* at 341 n.5. The plaintiffs sought discovery of documents underlying Shindler's declaration but Hyatt refused to produce them on the grounds that the documents were privileged because Shindler was also an attorney. *Id.* at 340-343. In ordering the production of the disputed documents, the court found that the declaration "ranged far and struck at the heart of the conflict between the parties." *Id.* at 342. The court further found that Shindler was acting in his corporate officer capacity and as such, held that "Hyatt cannot use an officer and active player in it's [sic] relationship with the [plaintiffs] to put forth facts supporting its opposition and then deny access to his letters and other communications with him on these same subjects . . . . " *Id.*

Likewise, here, the due diligence documents go to the heart of the dispute of Shum's claims. Defendants have put Intel's (arguably privileged) due diligence communications at issue by producing only those reports that supported their initial contentions. They may not now withhold on privilege grounds those that do not support their current contentions. Accordingly, Defendants should either produce the unredacted documents, or be precluded from relying on any "due diligence" analyses for any purpose at trial.

/ / /

### C. Defendants' Unfair Discovery Tactics Merit Waiver And Further Sanctions

Defendants have also waived the privilege with regard to the documents at Entry Nos. 699-703 due to their improper conduct during discovery.[3] Defendants have repeatedly failed to produce relevant, responsive and critical documents, misrepresenting their non-existence and then feigning inadvertence. (*See* MacDonald Decl., ¶¶ 4-10.) Repeated failures to produce key documents can hardly be called inadvertent. Defendants' attempt to "cure" their discovery mishaps by their late production of key documents "does not eliminate all the harm from [their] original non-production." *AAIpharma*, 2006 WL 3096026, at *4.

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants . . . Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues . . . ." *Burlington Northern & Santa Fe Ry. v. United States Dist. Ct.*, 408 F.3d 1142, 1148-49 (9th Cir. 2005) (internal quotations omitted). When faced with litigants who abuse the discovery process, courts do not hesitate to impose sanctions, including the finding of subject matter waiver with regard to improperly withheld or late-produced documents and monetary sanctions. *See, e.g., Medora v. San Francisco,* No. C 06-0558 EDL, 2007 WL 2221069, at * 1-2 (N.D. Cal. Aug. 2, 2007) (excluding late-produced documents and witnesses not properly disclosed in initial disclosures); *Cusano*, 1999 WL 34834524, at *5 ("Plaintiff cannot sandbag the Court and defendants. Good cause appearing therefor, Plaintiff cannot use the additional documents he produced to defendants [late]."); *Burlington Northern*, 408 F.3d at 1150 (upholding district court's order compelling the production of documents where Burlington had untimely asserted a privilege and substantively changed the log after it had produced it); *Hyatt Corporation*, 177 F.R.D. at 343 (finding that, in addition to the subject matter waiver, Hyatt had waived privilege because of its "pervasive obstruction of discovery in this litigation . . . "). Accordingly, Shum respectfully requests that Defendants be compelled to produce the redacted documents, if for no other reason articulated above, as a sanction for their conduct. Also, because of

---

[3] Defendants' reference to Shum's "eve of trial" motion is disingenuous at best. Had Defendants not produced their privilege log and highly relevant documents so close to trial, a motion to compel (if necessary) would have come earlier.

their late document productions, Plaintiff has been precluded from deposing the authors, recipients and other witnesses knowledgeable about the facts contained in these late-produced documents. Accordingly, Plaintiff respectfully requests that it be allowed to depose these witnesses at Defendants' expense.

## IV.   CONCLUSION

For the foregoing reasons, Shum requests an Order requiring Defendants to: (1) produce all Verdiell's presentations authored at Intel referencing or relating to LightLogic and/or the technology covered by the patents-in-suit; (2) make Verdiell available for deposition regarding these additional presentations; (3) produce the redacted documents in their entirety; and (4) make available all necessary deponents (including Rule 30(b)(6) witnesses, if necessary) to testify about all documents produced after the August 15, 2008 Court-ordered deadline.

DATED:  October 2, 2008                    Respectfully submitted,

TOWNSEND AND TOWNSEND AND CREW LLP


By: _/s/Angus M. MacDonald_____
    ANGUS M. MACDONALD

Attorneys for Plaintiff FRANK T. SHUM

61535765 v1