UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA          *ORIGINAL*

BEFORE THE HONORABLE D. LOWELL JENSEN, JUDGE

| | | |
|---|---|---|
| FRANK T. SHUM, | ) | **JURY TRIAL** |
| | ) | |
| PLAINTIFF, | ) | **VOLUME 1** |
| | ) | |
| VS. | ) | NO. C 02-3262 DLJ |
| | ) | |
| INTEL CORPORATION, | ) | |
| JEAN-MARC VERDIELL AND | ) | **PAGES 1 - 205** |
| LIGHTLOGIC, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | OAKLAND, CALIFORNIA |
| _____ | ) | THURSDAY, NOVEMBER 13, 2008 |

<u>**TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES**</u>:

FOR PLAINTIFF:          TOWNSEND AND TOWNSEND AND CREW LLP
                        TWO EMBARCADERO CENTER, EIGHTH FLOOR
                        SAN FRANCISCO, CALIFORNIA  94111-3834
                  BY:   MARK T. JANSEN,
                        PAUL F. KIRSCH, ATTORNEYS AT LAW


FOR DEFENDANTS:         TAYLOR & CO. LAW OFFICES
                        ONE FERRY BUILDING SUITE 355
                        SAN FRANCISCO, CALIFORNIA  94111
                  BY:   STEPHEN E. TAYLOR
                        JESSICA GRANT, ATTORNEYS AT LAW

                        KEKER & VAN NEST
                        710 SANSOME STREET
                        SAN FRANCISCO, CALIFORNIA  94111-1704
                  BY:   RAGESH K. TANGRI, ATTORNEYS AT LAW


REPORTED BY:            RAYNEE H. MERCADO, CSR NO. 8258
                        DIANE E. SKILLMAN, CSR NO. 4909

```
 1   THURSDAY, NOVEMBER 13, 2008                         9:46 A.M.

 2                    P R O C E E D I N G S

 3           THE CLERK:  REMAIN SEATED, COURT IS IN SESSION, COME

 4   TO ORDER.

 5           (THE FOLLOWING PROCEEDINGS WERE HEARD IN THE

 6   PRESENCE OF THE JURY VENIRE:)

 7           THE COURT:  GOOD MORNING, LADIES AND GENTLEMEN.  I'M

 8   ABOUT TO SELECT A JURY TO TRY A CIVIL CASE IN THE COURT.  AND

 9   IN ORDER TO DO THAT, WE'RE GOING TO ASK PEOPLE TO COME UP AS

10   PROSPECTIVE JURORS AND BE SEATED AND WE'LL ASK SOME QUESTIONS.

11           THE PURPOSE OF THAT IS NOT TO PRY PARTICULARLY BUT

12   TO SEE IF THERE'S ANY REASON FOR THIS PARTICULAR CASE YOU WOULD

13   NOT BE ABLE TO SERVE.  AND SO FIRST WE'RE GOING TO DO IS ASK

14   YOU TO RISE, PLEASE, NOW AND BE SWORN.

15                    (JUROR VENIRE SWORN.)

16           THE CLERK:  PLEASE BE SEATED.

17           THE COURT:  NOW WE'RE GOING TO CALL SOME NAMES, AND

18   IF YOUR NAME'S CALLED, LIKE YOU TO COME UP AND TAKE A SEAT IN

19   THE JURY BOX.

20           WOULD THE FIRST PERSON WHOSE NAME IS CALLED, PLEASE

21   SIT IN THE BACK UP HERE AT THIS FRONT END, AND THEN WE'LL HAVE

22   EIGHT PEOPLE IN THE BACK ROW, AND THEN WE'LL START IN ON THE

23   SECOND ROW, WE'LL GET EIGHT PEOPLE THERE, AND THEN WE'LL START

24   IN ON SOME QUESTIONS AND TELL YOU ABOUT THE CASE.  SO IF YOUR

25   NAME'S CALLED, PLEASE COME UP AND TAKE A SEAT.
```

```
1              THE CLERK:  ANA ALBAYEROS.  THE LAST NAME IS

2    A-L-B-A-Y-E-R-O-S.

3              JEANETTE KUNELI, K-U-N-E-L-I.

4              SERIFAT ANIMASHAUN, A-N-I-M-A-S-H-A-U-N.

5              TERRY ALEXANDER, A-L-E-X-A-N-D-E-E-R.

6              ROBERT LIND, L-I-N-D.

7              MICHAEL DEGUZMAN, D-E-G-U-Z-M-A-N.

8              KEVIN MUROTSUNE, THE LAST NAME IS M-U-R-O-T-S-U-N-E.

9    MAYBE YOU COULD SAY YOUR LAST NAME.

10             PROSPECTIVE JUROR:  MUROTSUNE.

11             THE CLERK:  OKAY.  THANK YOU.

12             SALLY DURGAN, D-U-R-G-A-N.  AND IF YOU'LL TAKE THAT

13   SEAT DOWN BELOW IN THE BACK THERE.

14             GAGANDEEP KAUR, K-A-U-R.

15             IMELDA BALASBAS, B-A-L-A-S-B-A-S.

16             JAMES FABIAN, F-A-B-I-A-N.

17             JOHN MCGREGOR, M-C-G-R-E-G-O-R.

18             RANDY YEE, Y-E-E.

19             SUSAN KEETON, K-E-E-T-O-N.

20             ELLEN RIABOFF, R-I-A-B-O-F-F.

21             CHERYL FORSTER, F-O-R-S-T-E-R.

22             THE COURT:  ALL RIGHT.  NOW, LET ME GIVE YOU A --

23   MORE OF A DESCRIPTION ABOUT THE CASE.  ONE OF THE THINGS WE

24   WANT TO DO IS FIND OUT WHETHER ANY OF YOU KNOW ANYTHING ABOUT

25   IT OR ANY OF THE PARTIES THAT ARE INVOLVED IN THE PROCEEDING.
```

1          LET ME GIVE YOU A DESCRIPTION NOW THAT'S A BRIEF

2    DESCRIPTION OF THE MATTER BEFORE US NOW.  AS I SAID, THIS IS A

3    CIVIL CASE, AND THE NAME OF THE PLAINTIFF IN THIS CASE IS FRANK

4    SHUM.  THE NAME OF THE DEFENDANTS ARE JEAN-MARC VERDIELL, AND

5    THEN THERE ARE TWO BUSINESSES, THE INTEL CORPORATION AND A

6    BUSINESS KNOWN AS LIGHTLOGIC.

7          NOW, SHUM AND VERDIELL ARE OPTOELECTRONIC ENGINEERS

8    WHO WORKED IN THE FIELD OF FIBER OPTICS AND TELECOMMUNICATIONS.

9    IN APRIL OF 1997, THEY FORMED A CORPORATION WHICH WAS CALLED

10   RADIANCE DESIGN.  THAT COMPANY WAS DISSOLVED BY AGREEMENT OF

11   THE PARTIES IN JANUARY OF 1998.

12         NOW, THEREAFTER, AFTER THAT TIME, VERDIELL FILED AND

13   OBTAINED SEVEN DIFFERENT PATENTS RELATED TO OPTOELECTRONIC

14   TECHNOLOGY WHICH WERE OWNED BY A COMPANY HE HAD FORMED CALLED

15   LIGHTLOGIC.  IN JUNE 2001, VERDIELL SOLD LIGHTLOGIC AND ITS

16   PATENTS TO INTEL CORPORATION.

17         NOW, SHUM HAS NOW FILED THIS LAWSUIT WHICH CLAIMS

18   THAT HE WAS DEFRAUDED BY THE DEFENDANTS, THAT THERE WAS A

19   BREACH OF CONTRACT COMMITTED, AND THAT THE DEFENDANTS HAVE BEEN

20   UNJUSTLY ENRICHED UNDER CALIFORNIA LAW.

21         NOW, SHUM ALSO CONTENDS THAT HE WAS EITHER THE SOLE

22   OR JOINT INVENTOR ON EACH OF THE SEVEN PATENTS AND THE PATENTS

23   SHOULD BE AMENDED TO SHOW HIS INVENTORSHIP.

24         NOW, THE DEFENDANTS DENY ANY LIABILITY TO MR. SHUM.

25         LET ME FIRST ASK THE PARTIES IF COUNSEL WOULD

```
1    INTRODUCE THEMSELVES AND THEIR CLIENTS, PLEASE.

2              MR. KIRSCH:  GOOD MORNING.  MY NAME IS PAUL KIRSCH.

3    THIS IS MY CLIENT FRANK SHUM.  AND TOGETHER WITH ME TODAY IS

4    TRACY FARRELL AND MARK JANSEN.

5              MR. TAYLOR:  GOOD MORNING, LADIES AND GENTLEMEN.

6    I'M STEVE TAYLOR.  MY CLIENT IS JEAN-MARC VERDIELL, AND I'M

7    JOINED TODAY BY MS. JESSICA GRANT, RAGESH TANGRI AND MS. KAREN

8    JO KOONAN.

9              THE COURT:  OKAY.

10             LET ME SAY A FEW MORE WORDS ABOUT THE LOGISTICS OF

11   THE MATTER.  WE ANTICIPATE THAT THE TRIAL WILL TAKE BETWEEN

12   FOUR AND FIVE WEEKS.  THE TRIAL WILL COMPLETE BY AT LEAST THE

13   WEEK OF DECEMBER 15.

14             NOW, IN TRIAL, WE'RE IN TRIAL FOUR DAYS A WEEK.  I

15   HAVE FRIDAYS SET ASIDE TO DO OTHER MATTERS, AND SO THE -- THE

16   TRIAL, THIS TRIAL WOULD BE ON MONDAY, TUESDAY, WEDNESDAY, AND

17   THURSDAY.  AND WE -- WE'D LIKE TO HAVE A SIX-HOUR DAY.  WE

18   START AT 9:00 O'CLOCK.  WE GO TO 12:00, AND THEN WE GO FROM

19   1:00 TO 4:00.  AND THEN WE'RE OFF.  SO THAT'S THE PROJECTED

20   TRIAL -- TRIAL DAY.

21             NOW, OBVIOUSLY, GIVEN THE TIME SEQUENCE, WE WOULD

22   OBVIOUSLY NOT BE HERE ON THANKSGIVING.  YOU UNDERSTAND THAT.

23   SO WE WOULDN'T BE HERE THEN BUT WOULD BE TRIAL ON THE OTHER

24   DAYS THAT I HAVE NOW TALKED ABOUT.

25             NOW, LET ME GIVE YOU THE NAMES OF SOME PEOPLE THAT
```

1   COULD BE INVOLVED IN THIS CASE.  AND I'M GOING TO READ THE

2   NAMES TO YOU.  THIS DOESN'T MEAN THEY'RE ALL GOING TO BE CALLED

3   AS WITNESSES.  THIS MEANS THAT THEY'RE POTENTIAL WITNESSES.  WE

4   WANT TO KNOW WHETHER OR NOT YOU KNOW ANY OF THESE PEOPLE.

5        LET ME READ THESE NAMES TO YOU AS POTENTIAL

6   WITNESSES.  FRANK SHUM, JEAN-MARC VERDIELL, MAREK ALBOSZTA,

7   GREG BALDRIDGE, HERBERT CHEN, WAYNE KNOX, NANCI PALMINTERE,

8   MICHAEL RICCI, ELLA SHUM, RAMAMURTHY SIVAKUMAR, DREW SMITH,

9   WILLIAM SOLARI, GARY WISEMAN, BOB ZONA, LES DUMAN, JOHN GORMAN,

10  JOSEPH MASON, MARK EPITAUX, TOM MADER, JOHN STOCKHOLM, BRUCE

11  GRAHAM, CHRISTOPHER SCHAPE, BRIAN NAPPER, JIM TIMMINS, REMY

12  AUBERT, SEAN MALONEY, MELVIN JAGER, WILLIAM -- OR NO, EXCUSE

13  ME -- MICHAEL LASINSKI, D. PAUL REGAN, JENKIN RICHARD, VICTOR

14  SHUM, TIFFANY SILVA, D. ANTHONY STELLIGA, CHARLES WILLHOIT,

15  PHILLIP WORLAND, JONAS WEBJORN, JOSH LERNER, THOMAS KOCH, RANDY

16  HEYLER, YUNG-CHEN LEE.

17        NOW, THOSE ARE NAMES OF POTENTIAL WITNESSES IN THIS

18  CASE THAT WE'LL FIND OUT ABOUT.

19        ALL RIGHT.  LET ME ASK SOME QUESTIONS THEN OF THE

20  INDIVIDUAL JURORS.  NOW, I'D ASK YOU AS WE GO ALONG, PAY

21  ATTENTION TO THIS PROCESS AS IT'S GOING ON IF YOU'RE IN THE

22  AUDIENCE BECAUSE YOU MAY FIND YOURSELF CALLED UPON TO COME UP

23  AND TAKE A SEAT AS A POTENTIAL JUROR AND BE FACED WITH THE SAME

24  QUESTIONS.  SO YOU MIGHT THINK ABOUT THAT AS WE GO ALONG.

25        LET ME START IN, THEN, WITH MS. ALBAYEROS.

1          **PROSPECTIVE JUROR:**  YES.

2          **THE COURT:**  LET ME ASK YOU WHERE YOU LIVE.  NOW, I

3  DON'T MEAN YOUR STREET ADDRESS.  I JUST MEAN YOUR COMMUNITY

4  WHERE YOU LIVE.

5          **PROSPECTIVE JUROR:**  LIVERMORE.

6          **THE COURT:**  LIVERMORE?

7          **PROSPECTIVE JUROR:**  YES.

8          **THE COURT:**  HAS THAT BEEN FOR ABOUT THE LAST TEN

9  YEARS?

10          **PROSPECTIVE JUROR:**  ABOUT SEVEN.

11          **THE COURT:**  OKAY.  AND WHERE WERE YOU BEFORE THAT?

12          **PROSPECTIVE JUROR:**  PLEASANTON.

13          **THE COURT:**  OKAY.  COULD I ASK YOUR OCCUPATION.

14          **PROSPECTIVE JUROR:**  RIGHT NOW I'M UNEMPLOYED.

15          **THE COURT:**  WHAT DO YOU DO?

16          **PROSPECTIVE JUROR:**  I'M USUALLY -- DO A CUSTOMER

17  SERVICE OR ADMINISTRATIVE --

18          **THE COURT:**  AND WHO HAVE YOU WORKED FOR?

19          **PROSPECTIVE JUROR:**  SBC, NOW AT&T.

20          **THE COURT:**  RIGHT.

21          **PROSPECTIVE JUROR:**  I TOOK EARLY RETIREMENT FROM

22  THEM.

23          **THE COURT:**  OKAY.

24          **PROSPECTIVE JUROR:**  AND I WORK FOR OFFICIAL PAYMENTS

25  CORPORATION.  THAT WAS MY LAST JOB.

1              **THE COURT:**  OKAY.  WHAT DID YOU DO FOR THEM?

2              **PROSPECTIVE JUROR:**  CUSTOMER SERVICE --

3              **THE COURT:**  OKAY.

4              **PROSPECTIVE JUROR:**  -- REPRESENTATIVE.

5              **THE COURT:**  ALL RIGHT.  COULD I ASK YOUR EDUCATIONAL

6    BACKGROUND.

7              **PROSPECTIVE JUROR:**  HIGH SCHOOL.

8              **THE COURT:**  AND MAY I ASK THE OCCUPATION OF MEMBERS

9    OF YOUR IMMEDIATE FAMILY.

10             **PROSPECTIVE JUROR:**  THEY'RE -- LIKE, MY DAUGHTERS

11   ARE IN MEDICAL ASSISTANCE, AND MY SON IS IN MANAGEMENT AT

12   SHERMAN WILLIAMS.

13             **THE COURT:**  OKAY.  ALL RIGHT.  AND NOW CUSTOMER

14   SERVICE, YOU HEARD ME DESCRIBE THIS CASE NOW AND THE PARTIES.

15   HAVE YOU EVER HEARD ABOUT THIS CASE BEFORE YOU GOT HERE TO

16   COURT?

17             **PROSPECTIVE JUROR:**  NO.

18             **THE COURT:**  AS YOU SIT HERE, YOU KNOW NOTHING

19   ABOUT --

20             **PROSPECTIVE JUROR:**  NO.

21             **THE COURT:**  AND THE PARTIES THAT I HAVE DESCRIBED

22   AND THE NAMES, DO YOU KNOW ANY OF THOSE?

23             **PROSPECTIVE JUROR:**  NO, I DON'T.

24             **THE COURT:**  OKAY.

25             NOW, HAVE YOU EVER BEEN A JUROR YOURSELF IN AN

```
1    OCCASION BEFORE?

2              PROSPECTIVE JUROR:  I HAVE A LONG TIME AGO IN

3    TORRANCE, CALIFORNIA.

4              THE COURT:  OKAY.

5              PROSPECTIVE JUROR:  I USED TO LIVE IN

6    SOUTHERN CALIFORNIA.

7              THE COURT:  OKAY.  WHAT KIND OF A CASE WAS IT?

8              PROSPECTIVE JUROR:  THAT WAS A CRIMINAL CASE.

9              THE COURT:  ALL RIGHT.  AND DID YOU SERVE AND RETURN

10   A VERDICT?

11             PROSPECTIVE JUROR:  NO.  THE --

12             THE COURT:  IT DIDN'T COMPLETE.

13             PROSPECTIVE JUROR:  NO, THE PERSON ACCUSED LEFT THE

14   COUNTRY.

15             THE COURT:  OKAY.

16                  (LAUGHTER.)

17             THE COURT:  COMPLETED THE CASE, YEAH.

18                  (LAUGHTER.)

19             THE COURT:  ALL RIGHT.

20        ALL RIGHT.  NOW, IF YOU SERVE IN THIS CASE AS A

21   JUROR -- YOU KNOW IN THAT CASE YOU WERE ASKED TO BE A JUDGE OF

22   FACTS.  NOW, AS YOU SIT THERE NOW, YOU DON'T KNOW ANYTHING

23   ABOUT THE CASE.

24             PROSPECTIVE JUROR:  RIGHT, NO.

25             THE COURT:  AND IN ORDER TO BE A JUDGE OF FACTS,
```

1    THERE'S GOING TO HAVE TO BE EVIDENCE PRESENTED TO YOU,

2    WITNESSES WILL TESTIFY, DOCUMENTS WILL BE INTRODUCED, THAT SORT

3    OF THING.  AND IT'S UP TO YOU TO NOW, FROM THAT EVIDENCE, MAKE

4    A DECISION AS TO WHAT THE FACTS ARE IN THIS CASE.

5              YOU UNDERSTAND THAT?

6              **PROSPECTIVE JUROR:**  RIGHT.

7              **THE COURT:**  BUT IT'S ALSO VERY, VERY IMPORTANT THAT

8    ALTHOUGH YOU COME HERE WITH EXPERIENCES, EVERYBODY HAS THEIR

9    OWN EXPERIENCES, THEIR OWN BACKGROUND, NONE OF THAT CAN BE USED

10   BY YOU AS A JUROR.  YOU HAVE TO EXCLUDE THAT FROM YOUR

11   CONSIDERATIONS AND DECIDE THE CASE SOLELY UPON WHAT'S

12   INTRODUCED IN THE COURTROOM.

13             YOU UNDERSTAND THAT?

14             **PROSPECTIVE JUROR:**  YES.

15             **THE COURT:**  AND SO YOU HAVE TO RULE OUT ANY

16   EXPERIENCES YOU'VE HAD, AS I SAID, AND THEN YOU AND ALL THE

17   OTHER JURORS HAVE TO MAKE A DECISION ON THE SAME EVIDENCE, AND

18   THAT WILL BE THE SAME THINGS THAT YOU'VE ALL HEARD IN THE

19   COURTROOM.  AND YOU HAVE TO EXCLUDE FROM YOUR CONSIDERATION

20   ANYTHING THAT'S OUTSIDE THAT.

21             WILL YOU BE ABLE TO DO THAT?

22             **PROSPECTIVE JUROR:**  YES.

23             **THE COURT:**  NOW, I WILL BE THE ONE WHO GIVES YOU THE

24   LAW.  I WILL DEFINE THE LEGAL PRINCIPLES THAT HAVE TO BE

25   APPLIED BY YOU, AND AS A JUROR, IT'S YOUR OBLIGATION TO ACCEPT

1   AND FOLLOW THOSE RULES OF LAW.

2           YOU UNDERSTAND THAT.

3           **PROSPECTIVE JUROR:**  YES.

4           **THE COURT:**  EVEN IF YOU DON'T AGREE WITH THEM, YOU

5   HAVE TO ACCEPT THEM BECAUSE THAT'S THE RULE OF LAW THAT APPLIES

6   IN THIS COURTROOM.  YOU UNDERSTAND THAT.

7           **PROSPECTIVE JUROR:**  RIGHT.

8           **THE COURT:**  ALL RIGHT.  AND SO WE EXPECT THAT YOU,

9   AS A JUROR, WOULD LISTEN TO THE FACTS AS THEY'RE INTRODUCED,

10  THAT IS THE EVIDENCE THAT'S INTRODUCED, MAKE FACTUAL DECISIONS

11  AND THEN APPLY THAT TO THE LEGAL CONTEXT THAT I'VE GIVEN YOU.

12          NOW, AS YOU'VE HEARD ME DESCRIBE IS THAT LEGAL

13  CONTEXT WILL INCLUDE SOME THINGS THAT I THINK YOU'RE PROBABLY

14  NOT FAMILIAR WITH.  IT WILL INCLUDE PATENT LAW, FOR EXAMPLE.

15          **PROSPECTIVE JUROR:**  THAT'S TRUE.

16          **THE COURT:**  YOU UNDERSTAND THAT.

17          **PROSPECTIVE JUROR:**  UM-HMM.

18          **THE COURT:**  AND IT WILL INCLUDE THINGS THAT --

19  CAUSES OF ACTION BROUGHT BY MR. SHUM.  YOU UNDERSTAND THAT, THE

20  LEGAL PRINCIPLES THERE.

21          **PROSPECTIVE JUROR:**  YEAH.

22          **THE COURT:**  AND IT WILL BE UP TO YOU TO APPLY THOSE

23  RULES OF LAW.  DO YOU BELIEVE YOU'LL BE ABLE TO DO THAT?

24          **PROSPECTIVE JUROR:**  YES.

25          **THE COURT:**  NOW, IS THERE ANYONE IN YOUR FAMILY OR A

1    CLOSE FRIEND OR RELATIVE WHO HAS SOME KIND OF A CONNECTION WITH

2    THE HIGH-TECH INDUSTRY?  BY THAT, I MEAN TELECOMMUNICATIONS.

3    YOU HEARD ME DESCRIBE FIBER OPTICS.  ANYTHING OF THAT NATURE,

4    AND CLEARLY ANYTHING TO DO WITH INTEL CORPORATION OR A BUSINESS

5    CALLED LIGHTLOGIC.

6              DO YOU KNOW ANYBODY IN YOUR FAMILY, CLOSE FRIENDS OR

7    RELATIVE, ANY CONNECTION TO THAT?

8              **PROSPECTIVE JUROR:**  NO.

9              **THE COURT:**  IS THERE ANYBODY IN YOUR FAMILY WHO HAS

10   ANY KIND OF CONNECTION WITH WHAT IS CALLED THE VENTURE CAPITAL

11   INDUSTRY, THAT IS, PEOPLE WHO PROVIDE FUNDS FOR THESE KINDS OF

12   PEOPLE TO WORK WITH?

13             **PROSPECTIVE JUROR:**  NO.

14             **THE COURT:**  YOU HAVE ANY KIND OF CONNECTION WITH

15   THAT?

16             **PROSPECTIVE JUROR:**  NO.

17             **THE COURT:**  ALL RIGHT.  AND IS THERE ANYBODY IN THE

18   FAMILY OR CLOSE FRIEND OR RELATIVE WHO HAS ANY CONNECTION WITH

19   ANY BUSINESS OR ANY PERSONAL EXPERIENCE WITH THINGS LIKE

20   PATENTS OR COPYRIGHTS, TRADEMARKS, ANYTHING OF THAT NATURE?

21             **PROSPECTIVE JUROR:**  NO.

22             **THE COURT:**  NOTHING IN YOUR BACKGROUND.

23             **PROSPECTIVE JUROR:**  NO.

24             **THE COURT:**  NOW, HAVE YOU EVER BEEN INVOLVED IN

25   RUNNING A BUSINESS OF YOUR OWN?

| | |
|---|---|
| 1 | **PROSPECTIVE JUROR:**  I DON'T KNOW IF SELLING MARY KAY |
| 2 | WOULD BE CONSIDERED -- |
| 3 | **THE COURT:**  OKAY.  YES. |
| 4 | **PROSPECTIVE JUROR:**  -- SMALL BUSINESS, BUT -- |
| 5 | **THE COURT:**  SO YOU RAN THAT KIND OF FUNCTION.  HOW |
| 6 | LONG DID YOU DO THAT? |
| 7 | **PROSPECTIVE JUROR:**  I DID THAT FOR ABOUT 13 YEARS. |
| 8 | **THE COURT:**  OKAY.  DID YOU HAVE ANYBODY WORK FOR |
| 9 | YOU? |
| 10 | **PROSPECTIVE JUROR:**  NO. |
| 11 | **THE COURT:**  OKAY. |
| 12 | AND WAS THERE ANYTHING THAT DEVELOPED IN THAT WHERE |
| 13 | IT LED TO ANY KIND OF LAWSUITS, OR WERE YOU EVER INVOLVED IN A |
| 14 | LAWSUIT YOURSELF? |
| 15 | **PROSPECTIVE JUROR:**  NO. |
| 16 | **THE COURT:**  ALL RIGHT.  SO YOU'VE NEVER BEEN |
| 17 | INVOLVED IN ANYTHING LIKE THAT. |
| 18 | **PROSPECTIVE JUROR:**  NO.  NOT INVOLVED. |
| 19 | **THE COURT:**  ALL RIGHT. |
| 20 | AND YOU'VE HEARD ME DESCRIBE THE NATURE OF THIS |
| 21 | LAWSUIT NOW IN TERMS OF WHAT'S INVOLVED.  DO YOU REACT TO THAT |
| 22 | IN ANY WAY THAT SAYS, WELL, I DON'T THINK THAT I COULD SERVE IN |
| 23 | A CASE LIKE THAT? |
| 24 | **PROSPECTIVE JUROR:**  ONLY 'CAUSE I WORK FOR SBC AND I |
| 25 | KNOW ABOUT A LITTLE BIT ABOUT THE TELECOMMUNICATIONS. |

```
 1              THE COURT:  OKAY.

 2              PROSPECTIVE JUROR:  I DON'T KNOW.  IT JUST KIND OF

 3    RINGS A BELL.

 4              THE COURT:  ALL RIGHT.  WELL, WE MIGHT GO OVER THAT

 5    A LITTLE BIT BECAUSE AS I SAID, YOU HAVE EXPERIENCES, AND YOU

 6    MAY HAVE LEARNED THINGS, AND YOU MAY -- YOU MAY -- IN THE

 7    COURSE OF THE TRIAL, YOU MAY COME ACROSS THINGS THAT ARE AREAS

 8    WHERE YOU'VE HAD EXPERIENCES BEFORE.

 9              PROSPECTIVE JUROR:  RIGHT.

10              THE COURT:  AND THAT'S WHERE IT'S VERY IMPORTANT

11    THAT YOU SAY, "ALL RIGHT.  THAT'S NOT WHAT I USE."

12              PROSPECTIVE JUROR:  RIGHT.

13              THE COURT:  YOU JUST EXCLUDE THAT.  YOU UNDERSTAND

14    THAT.

15              SO IT'S GOOD FOR YOU TO HAVE THE BACKGROUND, BUT YOU

16    HAVE TO NOW SAY WHATEVER I LEARNED THERE, IT DOESN'T APPLY.

17              PROSPECTIVE JUROR:  RIGHT.

18              THE COURT:  IT DOESN'T APPLY TO WHAT I LEARNED HERE.

19    THAT'S WHAT YOU WOULD DO.

20              PROSPECTIVE JUROR:  EXACTLY.

21              THE COURT:  NOW, ONE OF THE THINGS THAT HAPPENS IN

22    CIVIL LAWSUITS IS THE SUBJECT MATTER OF THE AWARD OF DAMAGES

23    COULD COME UP.  YOU UNDERSTAND THAT.

24              PROSPECTIVE JUROR:  YES.

25              THE COURT:  WOULD THAT BOTHER YOU?  WOULD YOU BE
```

1    ABLE TO DEAL WITH THAT LIKE ANY OTHER THING IN A LAWSUIT?

2                **PROSPECTIVE JUROR:**  RIGHT.  NO, IT WOULDN'T BOTHER

3    ME.

4                **THE COURT:**  IT'S JUST SOMETHING THAT IS A PART OF

5    YOUR RESPONSIBILITY AS A JUROR.

6                **PROSPECTIVE JUROR:**  RIGHT.

7                **THE COURT:**  IS THAT THE WAY YOU LOOK AT IT?

8                **PROSPECTIVE JUROR:**  YES.

9                **THE COURT:**  NOW, ONE OTHER THING THAT IS VERY CLEAR

10   AND I THINK EVERYBODY ACCEPTS AND UNDERSTANDS THIS, BUT IT'S A

11   GOOD IDEA TO REMIND OURSELVES THAT YOU MAY NOT MAKE ANY

12   DECISION IN THIS LAWSUIT, ANY DECISION WHATSOEVER WHICH YOU

13   BASE UPON RACE OR ETHNIC ORIGIN.  YOU UNDERSTAND THAT.

14               **PROSPECTIVE JUROR:**  YES.

15               **THE COURT:**  AND YOU'D MAKE YOUR COMMITMENT TO NOT

16   MAKE ANY SUCH DECISIONS?

17               **PROSPECTIVE JUROR:**  RIGHT.  RIGHT.

18               **THE COURT:**  NOW, AS YOU THINK ABOUT THE PROSPECTIVE

19   SERVICE, THEN, ON A CASE LIKE THIS, IS THERE ANYTHING THAT

20   LEADS YOU TO BELIEVE YOU WOULDN'T BE ABLE TO SERVE HERE AND BE

21   FAIR AND IMPARTIAL IN SERVICE?

22               **PROSPECTIVE JUROR:**  WHEN IT COMES TO SERVICE ALL

23   THAT AND FINE.  I DO HAVE JUST ANOTHER -- THIS IS SOMETHING

24   PERSONAL, CONDITION THAT I HAVE.

25               **THE COURT:**  SURE.

| | |
|---|---|
| 1 | **PROSPECTIVE JUROR:** IT'S MENIERE'S, AND IT CAUSES ME |
| 2 | TO HAVE VERTIGO -- |
| 3 | **THE COURT:** OKAY. |
| 4 | **PROSPECTIVE JUROR:** -- UNEXPECTEDLY. AND I DO HAVE |
| 5 | TO BE AWAY FOR A WHILE, SO JUST SO YOU KNOW. |
| 6 | **THE COURT:** WHEN YOU SAY "AWAY FOR A WHILE" -- |
| 7 | **PROSPECTIVE JUROR:** RECOVERY. |
| 8 | **THE COURT:** -- WHAT KIND OF TIMING WOULD BE -- |
| 9 | **PROSPECTIVE JUROR:** LIKE AN HOUR. |
| 10 | **THE COURT:** HOUR OR SOMETHING LIKE THAT? |
| 11 | **PROSPECTIVE JUROR:** YEAH. |
| 12 | **THE COURT:** YOU HAVE TO HAVE SOME TIME TO -- |
| 13 | **PROSPECTIVE JUROR:** RIGHT, TO COME BACK. |
| 14 | **THE COURT:** DOES IT HAPPEN ON ANY FREQUENCY? |
| 15 | **PROSPECTIVE JUROR:** IT DOES. LATELY IT'S BEEN |
| 16 | HAPPENING 'CAUSE OF STRESS AND ANXIETY. |
| 17 | **THE COURT:** SO IT'S THERE, BUT THIS IS SOMETHING |
| 18 | THAT YOU COULD DEAL WITH IN TERMS OF WHEN IT HAPPENS, YOU HAVE |
| 19 | TO TAKE A LITTLE TIME OFF. |
| 20 | **PROSPECTIVE JUROR:** EXACTLY. I DO HAVE -- |
| 21 | **THE COURT:** THAT WOULD BE WHAT HAPPENS. OTHER THAN |
| 22 | THAT, YOU'D BE ABLE TO SERVE. |
| 23 | **PROSPECTIVE JUROR:** RIGHT. UM-HMM. |
| 24 | **THE COURT:** OKAY. GOOD. OKAY. WELL, THANK YOU |
| 25 | VERY MUCH. |

 1              **PROSPECTIVE JUROR:**  YOU'RE WELCOME, YOUR HONOR.

 2          **THE COURT:**  MS. KUNELI?

 3          **PROSPECTIVE JUROR:**  YES.

 4          **THE COURT:**  MAY I ASK YOUR RESIDENCE, PLEASE.

 5          **PROSPECTIVE JUROR:**  I LIVE IN LIVERMORE.

 6          **THE COURT:**  MAY I ASK YOUR OCCUPATION.

 7          **PROSPECTIVE JUROR:**  I'M A PRESCHOOL TEACHER AND

 8   FULL-TIME COLLEGE STUDENT AT CAL STATE EAST BAY.

 9          **THE COURT:**  WHAT LEVEL DO YOU TEACH?

10          **PROSPECTIVE JUROR:**  I TEACH FOUR-YEAR-OLDS.

11          **THE COURT:**  FOUR-YEAR-OLDS.  YEAH, ALL RIGHT.

12          **PROSPECTIVE JUROR:**  THAT'S MY SPECIALTY.

13          **THE COURT:**  OKAY.

14          HAVE YOU HAD ANY OTHER EMPLOYMENT OUTSIDE TEACHING?

15          **PROSPECTIVE JUROR:**  I WORKED AS A MORTGAGE CLERK

16   ABOUT 14, 15 YEARS AGO.  MY HUSBAND -- WE WERE STATIONED IN

17   ITALY.  I WORKED IN THE NAVY EXCHANGE.

18          **THE COURT:**  UH-HUH.  WHO DID YOU WORK FOR WHEN YOU

19   DID MORTGAGE WORK?

20          **PROSPECTIVE JUROR:**  I DON'T EVEN KNOW IF THE COMPANY

21   EVEN EXISTS ANYMORE.  IT'S -- THEY WENT BY EXPRESS AMERICA, BUT

22   THEY WERE SOMETHING ELSE BEFORE THAT.

23          **THE COURT:**  ALL RIGHT.  WHAT DID YOU DO FOR THEM?

24          **PROSPECTIVE JUROR:**  MOSTLY JUST FILING AND

25   RECEPTIONIST DUTY AND RAN AROUND.

1          **THE COURT:**  OKAY.  OKAY.

2              AND YOUR HUSBAND'S OCCUPATION?

3          **PROSPECTIVE JUROR:**  MY HUSBAND'S OCCUPATION, HE'S A

4    ELECTRONIC SUPERVISOR AT ADVANCED LIGHT SOURCE AT

5    U.C. BERKELEY.

6          **THE COURT:**  OKAY.  THAT'S WHAT HE DOES NOW.

7          **PROSPECTIVE JUROR:**  THAT'S WHAT HE DOES NOW.

8          **THE COURT:**  DID HE HAVE OTHER EMPLOYMENT BEFORE?

9          **PROSPECTIVE JUROR:**  HE WAS IN THE U. S. NAVY.  HE

10   WAS A CHIEF.  HE RETIRED ABOUT SIX YEARS AGO.

11         **THE COURT:**  OKAY.  NOW, HAVE YOU HEARD ABOUT THIS

12   CASE BEFORE YOU GOT HERE TO COURT?

13         **PROSPECTIVE JUROR:**  NO, I HAVE NOT.

14         **THE COURT:**  AND DO YOU KNOW ANY OF THE PARTIES THAT

15   ARE INVOLVED IN THE MATTER?

16         **PROSPECTIVE JUROR:**  NO, I DO NOT.

17         **THE COURT:**  NOW, HAVE YOU EVER SERVED AS A TRIAL

18   JUROR?

19         **PROSPECTIVE JUROR:**  NO.

20         **THE COURT:**  NOW, YOU HEARD ME DESCRIBE THE TASKS AND

21   THE OBLIGATIONS OF THE TRIAL -- OF THE TRIAL JUROR, AND THAT IS

22   THAT WE EXPECT YOU TO BE A JUDGE.  WE EXPECT YOU TO BE A JUDGE

23   ABOUT FACTS THAT YOU DO NOT KNOW AT THIS TIME.

24             YOU UNDERSTAND THAT.

25         **PROSPECTIVE JUROR:**  CORRECT.

1      **THE COURT:**  AND WE WILL HAVE A TRIAL WHERE THERE

2   WILL BE EVIDENCE INTRODUCED AT THE TRIAL, PEOPLE WILL TESTIFY,

3   THERE'LL BE DOCUMENTS, THAT SORT OF THING, AND IT WILL BE BE UP

4   TO YOU FROM THAT EVIDENCE THAT'S INTRODUCED IN THE COURTROOM TO

5   DECIDE UPON THE FACTS IN THIS CASE.

6          DO YOU UNDERSTAND?

7      **PROSPECTIVE JUROR:**  (NODS HEAD.)

8      **THE COURT:**  AND IT'S ALSO VERY IMPORTANT THAT ALL OF

9   THESE BACKGROUNDS, ALL THIS EXPERIENCE YOU'VE HAD IS -- YOU

10  HAVE TO LEAVE THAT BEHIND IN THE SENSE THAT ANYTHING THAT

11  HAPPENED THERE IS NOT EVIDENCE IN THIS CASE.

12          AND YOU UNDERSTAND THAT.

13     **PROSPECTIVE JUROR:**  YES, I DO.

14     **THE COURT:**  AND YOU MUST SAY TO YOURSELF, "I WILL

15  DECIDE THIS CASE JUST LIKE MY FELLOW JURORS, AND I'LL DO IT ON

16  THE BASIS OF WHAT I HEAR IN THE COURTROOM AND UPON THAT ALONE."

17          YOU UNDERSTAND THAT.

18     **PROSPECTIVE JUROR:**  YES.

19     **THE COURT:**  YOU'LL BE ABLE TO DO THAT.

20     **PROSPECTIVE JUROR:**  I DON'T KNOW IF I CAN DO THAT

21  RIGHT NOW.  I HAVE -- LIKE I SAID, I'M A FULL-TIME COLLEGE

22  STUDENT.  ABOUT SIX WEEKS AGO, MY FATHER PASSED AWAY, AND I'LL

23  BE -- IN A COUPLE WEEKS FROM NOW, I'LL BE DOING FINALS AT CAL

24  STATE EAST BAY.

25     **THE COURT:**  OKAY.  WELL, THAT'S SOMETHING WE NEED TO

1    KNOW.  I MEAN, THAT'S OBVIOUSLY SOMETHING THAT HAPPENS.  I TOLD

2    YOU ABOUT THE TRIAL.  AND THERE ARE PARTICULAR CIRCUMSTANCES

3    THAT PEOPLE MAY HAVE THAT THEY REALLY CAN'T SERVE.  THEY MAY BE

4    WILLING TO SERVE ON SOME OTHER CASE IN ANOTHER CASE BUT CAN'T

5    DO IT IN THIS ONE.

6             **PROSPECTIVE JUROR:**  RIGHT.  I WOULD LOVE TO.

7             **THE COURT:**  YOU HAVE SCHEDULED FINAL EXAMINATIONS,

8    AND IF YOU DON'T TAKE THOSE, YOU LOSE THE CREDIT OF THE COURSE

9    YOU'RE TAKING.

10            **PROSPECTIVE JUROR:**  YES.

11            **THE COURT:**  WHICH IS SOMETHING YOU DON'T WANT TO DO.

12            **PROSPECTIVE JUROR:**  THAT'S RIGHT.  PLUS I'M ALSO IN

13   A PROGRAM THROUGH ALAMEDA COUNTY --

14            **THE COURT:**  ALL RIGHT.  CIRCUMSTANCES LIKE THAT, I

15   THINK, WOULD BE SUCH THAT YOU COULD BE EXCUSED.  YOU CAN BE

16   EXCUSED WHEN THERE ARE EXTRAORDINARY SITUATIONS, AND WE DON'T

17   WANT TO INTERRUPT WITH YOUR -- STOP YOUR EDUCATION, SO WE'LL

18   ALLOW YOU TO BE EXCUSED NOW, MS. KUNELI.

19            **PROSPECTIVE JUROR:**  THANK YOU VERY MUCH.

20            **THE COURT:**  YOU CAN GO BACK TO THE JURY COMMISSIONER

21   IF YOU WOULD, PLEASE, AND REPORT BACK TO THEM.  THANK YOU.

22            **PROSPECTIVE JUROR:**  THANK YOU.

23            **THE CLERK:**  CAROL MEIER, M-E-I-E-R.

24                 (PAUSE IN THE PROCEEDINGS.)

25            **THE COURT:**  MS. MEIER, COULD I ASK YOUR RESIDENCE,

1    PLEASE.

2              **PROSPECTIVE JUROR:**  YES.  OAKLAND.

3              **THE COURT:**  AND HOW LONG HAVE YOU BEEN THERE?

4              **PROSPECTIVE JUROR:**  TWENTY-FIVE YEARS.

5              **THE COURT:**  OKAY.  COULD I ASK YOUR OCCUPATION.

6              **PROSPECTIVE JUROR:**  I WORK FOR A SMALL NON-PROFIT IN

7    SAN FRANCISCO, AND I DO EVENTS PLANNING, ADMINISTRATIVE WORK.

8              **THE COURT:**  HOW LONG HAVE YOU DONE THAT?

9              **PROSPECTIVE JUROR:**  ABOUT FIVE YEARS.

10             **THE COURT:**  WHAT KIND OF EMPLOYMENT DID YOU HAVE

11   BEFORE THAT?

12             **PROSPECTIVE JUROR:**  I'M RETIRED FROM SBC/AT&T.

13             **THE COURT:**  OKAY.  AND MAY I ASK YOUR EDUCATIONAL

14   BACKGROUND.

15             **PROSPECTIVE JUROR:**  YES, I HAVE A DEGREE IN

16   JOURNALISM.

17             **THE COURT:**  ALL RIGHT.  AND MAY I ASK THE OCCUPATION

18   OF MEMBERS OF YOUR IMMEDIATE FAMILY.

19             **PROSPECTIVE JUROR:**  MY HUSBAND IS A PHOTOGRAPHER.

20   HE ALSO DOES I.T. SUPPORT WORK.

21             **THE COURT:**  OKAY.

22             AND WHO DOES HE WORK FOR?

23             **PROSPECTIVE JUROR:**  FREELANCE.

24             **THE COURT:**  HOW LONG HAS HE DONE THAT?

25             **PROSPECTIVE JUROR:**  OH, PROBABLY 15 YEARS.

```
 1                    THE COURT:  OKAY.

 2                    NOW, DID YOU HEAR ME DESCRIBE THIS CASE AND THE

 3   PARTIES INVOLVED --

 4                    PROSPECTIVE JUROR:  YES.

 5                    THE COURT:  -- SOMETHING ABOUT IT.

 6                    PROSPECTIVE JUROR:  YES.

 7                    THE COURT:  DO YOU KNOW ANYTHING ABOUT THIS CASE AS

 8   YOU SIT THERE?

 9                    PROSPECTIVE JUROR:  NO, I -- NO.

10                    THE COURT:  YOU'VE NEVER HEARD OF THIS AND YOU DON'T

11   KNOW ANYTHING ABOUT IT.

12                    PROSPECTIVE JUROR:  NO.

13                    THE COURT:  YOU DON'T KNOW ANY OF THE PARTIES THAT

14   ARE INVOLVED --

15                    PROSPECTIVE JUROR:  NO.

16                    THE COURT:  -- THAT WE DESCRIBED.

17                    ALL RIGHT.  HAVE YOU BEEN A TRIAL JUROR YOURSELF?

18                    PROSPECTIVE JUROR:  YES, MANY YEARS AGO.

19                    THE COURT:  AND WHAT KIND OF A CASE?  WHAT ABOUT

20   THAT CASE.

21                    PROSPECTIVE JUROR:  IT WAS A CASE, SAN FRANCISCO, I

22   BELIEVE ALSO FEDERAL COURT.  IT HAD TO DO WITH DRAFT

23   RESISTANCE.

24                    THE COURT:  OKAY.  DID YOU SERVE --

25                    PROSPECTIVE JUROR:  YES.
```

1          **THE COURT:**  -- AND DELIBERATE AND RETURN A VERDICT?

2          **PROSPECTIVE JUROR:**  YES.  YES.

3          **THE COURT:**  IS THERE ANYTHING ABOUT THAT EXPERIENCE

4    THAT WOULD CARRY OVER TO THIS CASE?

5          **PROSPECTIVE JUROR:**  JUST THAT FACT IT WAS A JURY.

6    THE -- SERVING ON A JURY, THE SAME EXPERIENCE, BUT IT WASN'T

7    CIVIL.  IT WASN'T A CIVIL CASE.

8          **THE COURT:**  RIGHT.  I UNDERSTAND.  RIGHT.

9          AND YOU UNDERSTAND, OF COURSE, THAT THAT CASE HAS

10   NOTHING TO DO WITH THIS CASE.

11         **PROSPECTIVE JUROR:**  YES, OF COURSE.  OF COURSE.

12         **THE COURT:**  AND AS A JUROR, YOU'D HAVE THE SAME KIND

13   OF TASK IN THIS CASE, IS TO DECIDE UPON THE FACTS AND THE

14   EVIDENCE THAT YOU HEAR IN THIS COURTROOM.

15         YOU UNDERSTAND THAT.

16         **PROSPECTIVE JUROR:**  YES, I DO.

17         **THE COURT:**  AND YOU MUST EXCLUDE THE -- ANY KIND OF

18   KNOWLEDGE YOU GAINED, OUTSIDE EXPERIENCES YOU'VE HAD OUTSIDE.

19   THEY ARE NOT PART OF THIS CASE.

20         YOU UNDERSTAND THAT.

21         **PROSPECTIVE JUROR:**  YES, I UNDERSTAND.

22         **THE COURT:**  WOULD YOU BE ABLE TO DO THAT IN THIS

23   CASE?

24         **PROSPECTIVE JUROR:**  YES, I THINK SO.

25         **THE COURT:**  AND THEN I WILL GIVE YOU THE LEGAL

1   CONSTRUCT FOR YOUR DELIBERATIONS, AND IT'S UP TO YOU TO ACCEPT

2   AND FOLLOW THAT.  CAN YOU DO THAT?

3            **PROSPECTIVE JUROR:**  YES, I BELIEVE SO.

4            **THE COURT:**  LET ME ASK YOU WHETHER THERE ARE ANYONE

5   IN THE FAMILY, CLOSE FRIEND OR RELATIVE, WHO HAS SOME KIND OF

6   CONNECTION WITH THE HIGH-TECH INDUSTRY THAT I DESCRIBED,

7   TELECOMMUNICATIONS, COMPUTERS, FIBER OPTICS, THAT SORT OF

8   THING.

9            **PROSPECTIVE JUROR:**  WELL, I KNOW PEOPLE WHO WORK --

10  AND I'VE KNOWN PEOPLE WHO HAVE WORKED AT INTEL AT SOME POINT

11  BUT NOT FAMILY MEMBERS, FRIENDS.

12           **THE COURT:**  ALL RIGHT.  AND WHAT KIND OF A

13  FRIENDSHIP WAS IT?  I MEAN, IT COULD BE CLOSE, IT COULD BE

14  WHATEVER.

15           **PROSPECTIVE JUROR:**  OH.  ONE CLOSE FRIEND WORKED FOR

16  INTEL FOR A COUPLE OF YEARS.

17           **THE COURT:**  AND WHEN WAS THAT, DO YOU KNOW?

18           **PROSPECTIVE JUROR:**  THIS WOULD GO BACK TO THE

19  EARLY -- EARLY 2000, 2001.

20           **THE COURT:**  ALL RIGHT.

21           **PROSPECTIVE JUROR:**  BUT I DON'T REALLY KNOW WHAT SHE

22  DID EXACTLY FOR THEM, BUT SHE DID WORK FOR INTEL.

23           **THE COURT:**  ALL RIGHT.  THE THING THAT COMES UP WHEN

24  YOU HAVE SOMETHING LIKE THAT AND YOU REALIZE INTEL IS A -- A

25  PARTY IN THIS CASE, DO YOU HAVE TO -- THIS IS ONE OF THESE

1   SORTS OF THINGS WHEN YOU SAY THERE'S EXPERIENCE, THERE'S

2   SOMETHING OUTSIDE THE COURTROOM, THAT DOESN'T HAVE ANYTHING TO

3   DO WITH MY DELIBERATIONS --

4               **PROSPECTIVE JUROR:**  RIGHT.

5               **THE COURT:**  -- IS THE WAY YOU'D LOOK AT THIS?

6               **PROSPECTIVE JUROR:**  RIGHT.  THERE WOULD --

7               **THE COURT:**  YOU --

8                    (SIMULTANEOUS COLLOQUY.)

9               **PROSPECTIVE JUROR:**  THERE'S NO CONNECTION BETWEEN

10  THE TWO.

11              **THE COURT:**  YOUR OBLIGATION TO MAKE UP YOUR OWN MIND

12  ABOUT WHAT HAPPENED IN THIS CASE, NOT ABOUT ANYBODY ELSE, AND

13  THAT'S THE WAY YOU WOULD APPROACH IT; IS THAT CORRECT?

14              **PROSPECTIVE JUROR:**  YES.  YES.

15              **THE COURT:**  ALL RIGHT.  SO YOU'D BE ABLE TO SIT IN

16  THE CASE REGARDLESS OF THAT FRIENDSHIP AND BE FAIR AND

17  IMPARTIAL TO ALL PARTIES INCLUDING INTEL.

18              **PROSPECTIVE JUROR:**  YES, I THINK SO.

19              **THE COURT:**  NOW, IS THERE ANYBODY IN THE -- CLOSE

20  FRIEND OR RELATIVE THAT HAD ANYTHING TO DO WITH THE WORLD OF

21  PATENTS AND TRADEMARKS AND COPYRIGHTS, THAT SORT OF THING.

22              **PROSPECTIVE JUROR:**  NOT -- NO, NOT THAT I CAN THINK

23  OF.

24              **THE COURT:**  ANYBODY HAVE ANYTHING TO DO WITH THE

25  INDUSTRY INVOLVING VENTURE CAPITAL AND FUNDING OF BUSINESSES?

```
 1                    PROSPECTIVE JUROR:  I HAVE A FRIEND INVOLVED RIGHT

 2   NOW IN A STARTUP, AND HE'S INVOLVED WITH SOME VENTURE

 3   CAPITALISTS.

 4                    THE COURT:  OKAY.

 5                    PROSPECTIVE JUROR:  BUT -- I DON'T KNOW THEM

 6   DIRECTLY, BUT I KNOW MY FRIEND IS INVOLVED IN THE STARTUP.

 7                    THE COURT:  DO YOU KNOW WHAT KIND OF A -- THE

 8   TECHNOLOGY OR THE BUSINESS AREA THAT HE'S INVOLVED IN?

 9                    PROSPECTIVE JUROR:  IT HAS TO DO WITH BATTERIES FOR

10   AUTOMOBILES.

11                    THE COURT:  OKAY.  AND THAT'S THE ONLY ONE WHO WOULD

12   HAVE THAT KIND OF A CONNECTION --

13                    PROSPECTIVE JUROR:  YES.

14                    THE COURT:  -- THAT YOU KNOW OF?

15                    PROSPECTIVE JUROR:  YES.  THAT'S --

16                    THE COURT:  ALL RIGHT.  HAVE YOU EVER RUN A BUSINESS

17   YOURSELF OR ANYBODY IN THE FAMILY RUN A BUSINESS YOURSELF?

18                    PROSPECTIVE JUROR:  NO.

19                    THE COURT:  OKAY.  AND HAVE YOU EVER BEEN INVOLVED

20   IN ANY KIND OF LAWSUIT OR A DISPUTE ABOUT CONTRACTS OR LAWSUIT

21   OF ANY KIND?

22                    PROSPECTIVE JUROR:  NO.

23                    THE COURT:  OKAY.

24                    THE NATURE OF THIS CASE INVOLVES A CIVIL CASE, AND

25   IS THERE ANYTHING ABOUT WHAT I DESCRIBED ABOUT THE -- THE CASE
```

1    SO FAR THAT WOULD LEAD YOU TO BELIEVE THAT THIS IS THE KIND OF

2    CASE YOU COULDN'T SIT IN?

3             **PROSPECTIVE JUROR:**  NO.

4             **THE COURT:**  AND IT INVOLVES A SUBJECT MATTER OF AN

5    AWARD OF DAMAGES, AND YOU'D BE ABLE TO SIT IN THAT KIND OF A

6    CASE AND DECIDE IT FAIRLY AND IMPARTIALLY, YOU BELIEVE?

7             **PROSPECTIVE JUROR:**  YES, I THINK SO.

8             **THE COURT:**  OKAY.  AGAIN, WOULD YOU GIVE US YOUR

9    COMMITMENT THAT IF YOU SERVE IN THIS CASE, YOU'D MAKE NO

10   DECISION WHICH YOU BASE UPON RACE OR ETHNIC ORIGIN?

11            **PROSPECTIVE JUROR:**  YES.  NO, OF COURSE.

12            **THE COURT:**  GOOD.  OKAY.

13            AS YOU REFLECT UPON IT, THEN, IS THERE ANY REASON

14   THAT YOU CAN THINK OF WHY YOU WOULD NOT BE ABLE TO SERVE IN THE

15   MATTER AND BE FAIR AND IMPARTIAL IN YOUR SERVICE?

16            **PROSPECTIVE JUROR:**  THERE'S NO REASON.

17            **THE COURT:**  THANK YOU VERY MUCH.

18            **PROSPECTIVE JUROR:**  YOU'RE WELCOME.

19            **THE COURT:**  AND THIS IS MS. ANIMASHAUN.

20            **PROSPECTIVE JUROR:**  YES, SIR.

21            **THE COURT:**  MAY I ASK YOUR RESIDENCE, PLEASE.

22            **PROSPECTIVE JUROR:**  RICHMOND.

23            **THE COURT:**  AND HOW LONG HAVE YOU BEEN THERE?

24            **PROSPECTIVE JUROR:**  NINETEEN YEARS.

25            **THE COURT:**  AND MAY I HAVE YOUR OCCUPATION?

1          **PROSPECTIVE JUROR:**  I'M DIRECTER OF REHAB.

2          **THE COURT:**  I'M SORRY.

3          **PROSPECTIVE JUROR:**  DIRECTOR OF REHAB.

4          **THE COURT:**  OKAY.  AND WHO DO YOU WORK FOR?

5          **PROSPECTIVE JUROR:**  I WORK FOR TELECARE CORPORATION.

6          **THE COURT:**  AND HOW LONG HAVE YOU DONE THAT?

7          **PROSPECTIVE JUROR:**  NINETEEN YEARS.

8          **THE COURT:**  ALL RIGHT.  AND COULD I ASK YOUR

9     EDUCATIONAL BACKGROUND.

10         **PROSPECTIVE JUROR:**  I HAVE A MASTER DEGREE IN

11    THERAPEUTIC RECREATION.

12         **THE COURT:**  AND COULD I ASK THE OCCUPATION OF

13    MEMBERS OF YOUR IMMEDIATE FAMILY.

14         **PROSPECTIVE JUROR:**  MY HUSBAND IS A -- HE HAS HIS

15    OWN BUSINESS, A TOOL -- TOOL COMPANY.

16         **THE COURT:**  AND -- AND HOW LONG HAS HE DONE THAT?

17         **PROSPECTIVE JUROR:**  ABOUT FIVE YEARS.

18         **THE COURT:**  AND WHAT DID HE DO BEFORE THAT TIME?

19         **PROSPECTIVE JUROR:**  SECURITY.

20         **THE COURT:**  AND WHO DID HE WORK FOR THEN?

21         **PROSPECTIVE JUROR:**  HE WORKED FOR FEDERAL BUILDING

22    HERE, AS A MATTER OF FACT.

23         **THE COURT:**  OKAY.  OKAY.

24         NOW, YOU HEARD ME DESCRIBE THIS CASE.  HAVE YOU EVER

25    HEARD ABOUT IT BEFORE?

```
1                 PROSPECTIVE JUROR:  NO.

2                 THE COURT:  SO YOU DON'T KNOW ANYTHING ABOUT THE

3      CASE OR ABOUT ANY OF THE PARTIES INVOLVED IN THE CASE.

4                 PROSPECTIVE JUROR:  NO.

5                 THE COURT:  IS THAT RIGHT?

6                 AND HAVE YOU BEEN A JUROR BEFORE?

7                 PROSPECTIVE JUROR:  YES.

8                 THE COURT:  WHAT KIND OF A CASE AND WHEN WAS THAT?

9                 PROSPECTIVE JUROR:  IT'S A CRIMINAL.

10                THE COURT:  AND WHEN DID THAT TAKE PLACE?

11                PROSPECTIVE JUROR:  MARTINEZ.

12                THE COURT:  AND ABOUT HOW LONG AGO WAS IT?

13                PROSPECTIVE JUROR:  ABOUT FIVE YEARS AGO.

14                THE COURT:  DID YOU SERVE ON THE CASE, AND DID THE

15     JURY RETURN A VERDICT?

16                PROSPECTIVE JUROR:  NO, I DIDN'T.  I LEFT THE

17     COUNTRY.

18                THE COURT:  OKAY.  IS THERE ANYTHING ABOUT THAT CASE

19     THAT WOULD AFFECT THIS CASE AT ALL?

20                PROSPECTIVE JUROR:  NO.

21                THE COURT:  YOU UNDERSTAND THAT AS A JUROR, IT'S UP

22     TO YOU TO DECIDE THE FACTS, BUT YOU CAN ONLY DO THAT ON WHAT

23     YOU LEARNED ABOUT IN THE COURTROOM.

24                PROSPECTIVE JUROR:  YES.

25                THE COURT:  YOU UNDERSTAND THAT.
```

1           **PROSPECTIVE JUROR:**  YES.

2           **THE COURT:**  AND YOU MUST EXCLUDE ANY EXPERIENCES OR

3     ANY KNOWLEDGE THAT YOU GAIN OUTSIDE THE COURTROOM IN MAKING

4     YOUR DECISION HERE.

5           **PROSPECTIVE JUROR:**  YES.

6           **THE COURT:**  CAN YOU DO THAT?

7           **PROSPECTIVE JUROR:**  YES.

8           **THE COURT:**  NOW, I WILL GIVE YOU THE RULES OF LAW

9     THAT APPLY IN THIS CASE TO ALL THE QUESTIONS THAT COME UP IN

10    THE CASE.  AND YOU MUST ACCEPT AND FOLLOW THOSE RULES.  WILL

11    YOU BE ABLE TO DO THAT?

12          **PROSPECTIVE JUROR:**  YES, SIR.

13          **THE COURT:**  IS THERE ANYBODY IN YOUR FAMILY OR CLOSE

14    FRIEND OR RELATIVE WHO HAS A CONNECTION TO THE HIGH-TECH

15    INDUSTRY?

16          **PROSPECTIVE JUROR:**  NO.

17          **THE COURT:**  OKAY.

18          ANYBODY WHO HAS A CONNECTION TO VENTURE CAPITAL

19    FUNDING, THAT SORT OF THING?

20          **PROSPECTIVE JUROR:**  NO.

21          **THE COURT:**  AND ANYBODY WHO HAVE ANY KIND OF

22    EXPERIENCE OR CONNECTION TO THE BUSINESS OF GETTING PATENTS OR

23    TRADEMARKS OR COPYRIGHTS, THAT KIND OF THING?

24          **PROSPECTIVE JUROR:**  NO.

25          **THE COURT:**  ALL RIGHT.

```
 1                    HAVE YOU RUN A BUSINESS YOURSELF OR IN YOUR FAMILY,

 2     YOUR HUSBAND?

 3               PROSPECTIVE JUROR:  JUST MY HUSBAND.

 4          THE COURT:  AND WHAT -- DOES HE HAVE EMPLOYEES WHO

 5     WORK FOR HIM?

 6               PROSPECTIVE JUROR:  NO.

 7          THE COURT:  ALL RIGHT.  SO IT'S HIS BUSINESS.

 8               PROSPECTIVE JUROR:  UM-HMM.

 9          THE COURT:  AND HE RUNS THAT BUSINESS.

10          HAS HE EVER HAD ANY DISPUTES ABOUT CONTRACTS OR ANY

11     OF HIS BUSINESS -- BUSINESS WORK?

12               PROSPECTIVE JUROR:  NO.

13          THE COURT:  HAVE YOU EVER BEEN INVOLVED IN A LAWSUIT

14     YOURSELF?

15               PROSPECTIVE JUROR:  NO.

16          THE COURT:  IS THERE ANYTHING ABOUT THE NATURE OF

17     THIS CASE THAT WOULD AFFECT YOUR ABILITY TO SERVE ON THE MATTER

18     AT ALL?

19               PROSPECTIVE JUROR:  NO.

20          THE COURT:  YOU WOULD LISTEN TO THE WHOLE CASE AND

21     YOU'D DECIDE WHAT IT IS REGARDLESS OF WHAT IT IS, IF IT HAD

22     SOMETHING TO DO WITH DAMAGES OR SOMETHING LIKE THAT?

23               PROSPECTIVE JUROR:  YES.

24          THE COURT:  YOU WOULD FOLLOW THE LAW AND APPLY IT TO

25     THE FACTS THAT YOU FIND; IS THAT RIGHT?
```

```
1              PROSPECTIVE JUROR:  YES.

2              THE COURT:  OKAY.

3              WOULD YOU GIVE US YOUR COMMITMENT THAT IF YOU SERVE

4  ON THIS CASE AS A JUROR, YOU WILL MAKE NO DECISION WHICH YOU

5  BASE UPON RACE OR ETHNIC ORIGIN?

6              PROSPECTIVE JUROR:  CORRECT.

7              THE COURT:  IS THERE ANY REASON THAT OCCURS TO YOU

8  WHY YOU WOULD NOT BE ABLE TO SERVE IN THE MATTER AND BE FAIR

9  AND IMPARTIAL IN YOUR SERVICE?

10             PROSPECTIVE JUROR:  YES, BECAUSE THIS IS A VERY

11 BUSINESS (SIC) TIME FOR ME AT MY JOB.  AS THE DIRECTOR, I HAVE

12 TO DO A LOT OF FUND RAISING TO RAISE MONEY FOR CHRISTMAS FOR

13 OUR RESIDENTS THAT DON'T HAVE FAMILY AND ENOUGH FUND FOR

14 CHRISTMAS STUFF.  THAT'S WHY I DON'T TAKE VACATION DURING THIS

15 MONTH AND NEXT MONTH.

16             THE COURT:  SO YOUR INCOME IS DEPENDENT ON YOUR

17 WORK.

18             PROSPECTIVE JUROR:  YES.  NOT ONLY THAT, BUT MY

19 COMMITMENT TO THE RESIDENTS.

20             THE COURT:  AND SO YOU HAVE OBLIGATIONS TO OTHER

21 PEOPLE --

22             PROSPECTIVE JUROR:  YES.

23             THE COURT:  -- THAT WOULD BE AFFECTED BY THIS.

24             PROSPECTIVE JUROR:  YES.

25             THE COURT:  AND YOU BELIEVE THAT THAT WOULD BE SUCH
```

```
1    THAT THEY WOULD SUFFER, IN EFFECT, BY THE FACT THAT YOU'RE NOT
2    THERE.
3              PROSPECTIVE JUROR:  YES, CORRECT.
4              THE COURT:  IS THAT WHAT YOU -- THE TRUTH IS OF YOUR
5    JOB?
6              PROSPECTIVE JUROR:  YES.
7              THE COURT:  MS. ANIMASHAUN, YOU CAN BE EXCUSED.  YOU
8    CAN GO BACK TO THE JURY COMMISSIONER IF YOU WOULD, PLEASE.
9              PROSPECTIVE JUROR:  THANK YOU, SIR.
10             THE COURT:  THANK YOU.
11             THE CLERK:  XIURONG LI.  THE LAST NAME IS L-I.
12    OKAY.  FIRST NAME IS X-I-U-R-O-N-G.
13                  (PAUSE IN THE PROCEEDINGS.)
14             THE COURT:  MS. LI, COULD I ASK YOUR RESIDENCE,
15    PLEASE.
16             PROSPECTIVE JUROR:  SAN FRANCISCO.
17             THE COURT:  AND COULD I ASK YOUR OCCUPATION.
18             PROSPECTIVE JUROR:  BOOKKEEPER.
19             THE COURT:  WHO DO YOU WORK FOR?
20             PROSPECTIVE JUROR:  RICHARD LEE, C.P.A.
21             THE COURT:  C.P.A., RICHARD LEE?
22             PROSPECTIVE JUROR:  (NODS HEAD.)
23             THE COURT:  OKAY.  IS THAT A RELATION?
24             PROSPECTIVE JUROR:  NO.
25             THE COURT:  IS HE RELATED TO YOU?
```

```
 1                    PROSPECTIVE JUROR:  NO.

 2              THE COURT:  ANOTHER LEE.

 3              OKAY.  HOW LONG HAVE YOU DONE THAT?

 4              PROSPECTIVE JUROR:  ABOUT THREE YEARS.

 5              THE COURT:  DID YOU HAVE EMPLOYMENT BEFORE THAT?

 6              PROSPECTIVE JUROR:  NO.

 7              THE COURT:  MAY I ASK YOUR EDUCATIONAL BACKGROUND?

 8              PROSPECTIVE JUROR:  I HAVE ACCOUNTING DEGREE.

 9              THE COURT:  ALL RIGHT.  AND COULD I ASK YOUR

10    OCCUPATION OF MEMBERS OF YOUR IMMEDIATE FAMILY.

11              PROSPECTIVE JUROR:  MY HUSBAND IS TRUCK DRIVER.

12              THE COURT:  HOW LONG HAS HE DONE THAT?

13              PROSPECTIVE JUROR:  ABOUT SEVEN YEARS.

14              THE COURT:  AND HAVE YOU EVER HEARD OF THIS CASE

15    BEFORE YOU GOT HERE TO COURT?

16              PROSPECTIVE JUROR:  NO.

17              THE COURT:  DO YOU KNOW ANY OF THE PARTIES INVOLVED

18    IN THE CASE?

19              PROSPECTIVE JUROR:  NO.

20              THE COURT:  HAVE YOU BEEN A JUROR BEFORE?

21              PROSPECTIVE JUROR:  NO.

22              THE COURT:  IN SERVING AS A JUROR, YOU'LL HAVE TO

23    DECIDE ON FACTS, BUT YOU CAN ONLY DO THAT ON THE BASIS OF WHAT

24    YOU HEAR IN THE COURTROOM -- THAT'S PRESENTED IN THE COURTROOM.

25                    DO YOU UNDERSTAND THAT?
```

1              **PROSPECTIVE JUROR:**  YES.

2              **THE COURT:**  YOU MAY NOT USE ANY EXPERIENCES OR ANY

3   KNOWLEDGE YOU GAIN OUTSIDE THE COURTROOM IN DECIDING THIS CASE.

4              YOU UNDERSTAND THAT.

5              **PROSPECTIVE JUROR:**  YES.

6              **THE COURT:**  WOULD YOU BE ABLE TO DO THAT?

7              **PROSPECTIVE JUROR:**  I -- I DON'T KNOW.

8              **THE COURT:**  WHEN YOU HESITATED, TELL ME WHY IT IS

9   THAT YOU HESITATED IF YOU CAN.

10             **PROSPECTIVE JUROR:**  I'M SORRY.  WHAT?

11             **THE COURT:**  COULD YOU TELL ME WHY YOU THINK YOU

12  MIGHT HAVE SOME TROUBLE?

13             **PROSPECTIVE JUROR:**  BECAUSE WHEN I HEAR THE CASE, I

14  DIDN'T GET IT.

15             **THE COURT:**  IT'S DIFFICULTY WITH THE LANGUAGE?

16             **PROSPECTIVE JUROR:**  I THINK MAYBE.

17             **THE COURT:**  AND YOU -- HAVE YOU BEEN IN A CASE

18  BEFORE?

19             **PROSPECTIVE JUROR:**  NO.

20             **THE COURT:**  SO YOU'VE NOT BEEN ON A JURY BEFORE.

21             **PROSPECTIVE JUROR:**  YEAH.

22             **THE COURT:**  AND YOU'RE IN THIS CASE NOW, AND YOU'VE

23  BEEN LISTENING TO US TALK ABOUT THE CASE.  HAVE YOU HAD SOME

24  DIFFICULTY IN FOLLOWING THE CASE?

25             **PROSPECTIVE JUROR:**  YES, I DO.

1              **THE COURT:**  YOU DO HAVE.

2              **PROSPECTIVE JUROR:**  UH-HUH.

3              **THE COURT:**  AND YOU THINK THAT THAT MIGHT HAPPEN IN

4    THE CASE AS YOU GO ALONG?

5              **PROSPECTIVE JUROR:**  UH-HUH.

6              **THE COURT:**  ALL RIGHT.  MS. LI, YOU CAN BE EXCUSED.

7    PLEASE GO BACK TO THE JURY COMMISSIONER IF YOU WOULD.

8              **PROSPECTIVE JUROR:**  OKAY.  THANKS.

9              **THE CLERK:**  BRIAN WATERS, W-A-T-E-R-S.

10                 (PAUSE IN THE PROCEEDINGS.)

11             **THE COURT:**  MR. WATERS, COULD I ASK YOUR RESIDENCE,

12   PLEASE.

13             **PROSPECTIVE JUROR:**  ORINDA.

14             **THE COURT:**  AND COULD I ASK YOUR OCCUPATION.

15             **PROSPECTIVE JUROR:**  RETIRED.

16             **THE COURT:**  WHAT DID YOU DO?

17             **PROSPECTIVE JUROR:**  I'M A PROFESSIONAL FISHERIES

18   BIOLOGIST BY TRAINING, AND I DID ENVIRONMENTAL SCIENCE WORK

19   AND --

20             **THE COURT:**  WHO DID YOU WORK FOR?

21             **PROSPECTIVE JUROR:**  -- PROJECT MANAGEMENT.

22             TWENTY-SIX YEARS WITH PG&E AND TWELVE YEARS FOR AN

23   ENGINEERING AND ENVIRONMENTAL CONSULTING FIRM.

24             **THE COURT:**  AND WHO WAS THAT?

25             **PROSPECTIVE JUROR:**  THE LAST ONE WAS CALLED DEVINE

1  TARBELL & ASSOCIATES.

2          **THE COURT:**  OKAY.  AND YOUR EDUCATIONAL BACKGROUND

3  IN THAT FIELD.

4          **PROSPECTIVE JUROR:**  BACHELOR'S DEGREE AND A MASTER'S

5  DEGREE AND SOME POSTGRADUATE WORK.

6          **THE COURT:**  COULD I ASK THE OCCUPATION OF MEMBERS OF

7  YOUR IMMEDIATE FAMILY.

8          **PROSPECTIVE JUROR:**  MY WIFE IS A HOUSEWIFE.  I HAVE

9  A DAUGHTER WHO'S A PART-TIME ACTRESS AND AN HR WORKER.  AND MY

10  SON IS A DEPUTY SHERIFF.

11          **THE COURT:**  WHO DOES HE WORK FOR?

12          **PROSPECTIVE JUROR:**  MY SON?

13          **THE COURT:**  YES.

14          **PROSPECTIVE JUROR:**  CONTRA COSTA COUNTY.

15          **THE COURT:**  ALL RIGHT.  NOW, HAVE YOU HEARD ABOUT

16  THIS CASE BEFORE COMING TO COURT?

17          **PROSPECTIVE JUROR:**  NO.

18          **THE COURT:**  DO YOU KNOW ANY OF THE PARTIES INVOLVED

19  IN THE CASE?

20          **PROSPECTIVE JUROR:**  NO.

21          **THE COURT:**  HAVE YOU BEEN A JUROR YOURSELF?

22          **PROSPECTIVE JUROR:**  ONCE.

23          **THE COURT:**  WHAT KIND OF A CASE AND WHEN WAS IT?

24          **PROSPECTIVE JUROR:**  THE -- IT WAS ABOUT 15 YEARS

25  AGO.  IT WAS A CIVIL CASE IN MARTINEZ.

1      **THE COURT:**  DID YOU SERVE AND DELIBERATE AND RETURN

2    A VERDICT?

3      **PROSPECTIVE JUROR:**  YES, WE DID.

4      **THE COURT:**  DO YOU UNDERSTAND THAT THAT CASE HAS

5    NOTHING TO DO WITH THIS CASE?

6      **PROSPECTIVE JUROR:**  OH, YES.

7      **THE COURT:**  AND THEN YOU UNDERSTAND THAT AS A JUROR,

8    IT WILL BE YOUR OBLIGATION TO MAKE FINDINGS OF FACT.  BUT YOU

9    MUST LIMIT YOUR CONSIDERATION TO WHAT IS PRESENTED TO YOU HERE

10   IN THIS COURTROOM.

11     YOU UNDERSTAND THAT?

12     **PROSPECTIVE JUROR:**  YES.

13     **THE COURT:**  WILL YOU BE ABLE TO DO THAT?

14     **PROSPECTIVE JUROR:**  YES.

15     **THE COURT:**  AND IN THIS CASE, I WILL GIVE YOU THE

16   LEGAL CONTEXT FOR YOU TO CONSIDER THE CASE, AND YOU MUST ACCEPT

17   AND FOLLOW THAT.

18     WOULD YOU DO THAT?

19     **PROSPECTIVE JUROR:**  YES.

20     **THE COURT:**  ANYBODY IN THE FAMILY, CLOSE FRIEND OR

21   RELATIVE, CONNECTED WITH HIGH-TECH INDUSTRY,

22   TELECOMMUNICATIONS, THAT SORT OF THING?

23     **PROSPECTIVE JUROR:**  NO.

24     **THE COURT:**  ANYBODY CONNECTED WITH VENTURE CAPITAL

25   FUNDING?

1          **PROSPECTIVE JUROR:**  NO.

2          **THE COURT:**  ANYBODY INVOLVED IN THE PROCESS OR THE

3     HANDLING OF PATENTS OR TRADEMARKS OR COPYRIGHTS?

4          **PROSPECTIVE JUROR:**  NO.

5          **THE COURT:**  HAVE YOU EVER RUN A BUSINESS YOURSELF?

6          **PROSPECTIVE JUROR:**  NO.

7          **THE COURT:**  AND HAVE YOU EVER BEEN INVOLVED IN A

8     LAWSUIT YOURSELF?

9          **PROSPECTIVE JUROR:**  NO.

10          **THE COURT:**  IN THIS PARTICULAR CASE, YOU'VE HEARD ME

11     DESCRIBE IT.  IS THERE ANYTHING ABOUT THE NATURE OF THE CASE

12     THAT WOULD MAKE IT SUCH THAT YOU COULD NOT SERVE?

13          **PROSPECTIVE JUROR:**  NO.

14          **THE COURT:**  YOU CONSIDER ANY OF THE ISSUES THAT ARE

15     INVOLVED IN THE CASE, INCLUDING ISSUES ABOUT AWARD OF DAMAGES;

16     IS THAT CORRECT?  YOU WOULD FOLLOW THE LAW AND THE FACTS.

17          **PROSPECTIVE JUROR:**  ABSOLUTELY.

18          **THE COURT:**  DOESN'T MATTER WHAT IT IS --

19          **PROSPECTIVE JUROR:**  YES.

20          **THE COURT:**  -- YOU'LL BE ABLE TO HANDLE THAT.

21          ALL RIGHT.  IF YOU WOULD BE CALLED UPON TO SERVE,

22     WOULD YOU GIVE US YOUR COMMITMENT THAT YOU'D MAKE NO DECISION

23     IN THE CASE THAT YOU BASE UPON RACE OR ETHNIC ORIGIN?

24          **PROSPECTIVE JUROR:**  YES.

25          **THE COURT:**  ANYTHING OCCUR TO YOU WHY YOU WOULD NOT

```
 1    BE ABLE TO SERVE IN THIS CASE AND BE A FAIR AND IMPARTIAL TRIAL

 2    JUROR?

 3              PROSPECTIVE JUROR:  NO.

 4              THE COURT:  THANK YOU, SIR.  PLEASE PASS THE --

 5              AND MS. ALEXANDER?

 6              PROSPECTIVE JUROR:  YES.

 7              THE COURT:  MAY I ASK YOUR RESIDENCE, PLEASE.

 8              PROSPECTIVE JUROR:  BERKELEY.

 9              THE COURT:  AND YOUR OCCUPATION.

10              PROSPECTIVE JUROR:  I'M A FUND RAISER FOR A PRIVATE

11    SCHOOL.

12              THE COURT:  FOR A PRIVATE SCHOOL.

13              PROSPECTIVE JUROR:  CORRECT.

14              THE COURT:  HOW LONG HAVE YOU DONE THAT?

15              PROSPECTIVE JUROR:  IT'S A NEW JOB.  I'VE BEEN THERE

16    ABOUT THREE MONTHS.

17              THE COURT:  AND WHAT DID YOU DO BEFORE THAT?

18              PROSPECTIVE JUROR:  I RAN A MUSEUM.

19              THE COURT:  WHICH ONE.

20              PROSPECTIVE JUROR:  THE JUDAH MAGNES MUSEUM IN

21    BERKELEY.

22              THE COURT:  AND HOW LONG DID YOU DO THAT?

23              PROSPECTIVE JUROR:  ABOUT THREE AND A HALF YEARS.

24              THE COURT:  AND WHAT EMPLOYMENT DID YOU HAVE, IF

25    ANY, BEFORE THAT?
```

1          **PROSPECTIVE JUROR:**  I WORKED FOR ABOUT SEVEN AND A

2     HALF YEARS FOR AN ORGANIZATION CALLED THE FOUNDATION FIGHTING

3     BLINDNESS.  I HAVE A DISABLED DAUGHTER.

4          **THE COURT:**  YES.  MAY I ASK YOUR EDUCATIONAL

5     BACKGROUND.

6          **PROSPECTIVE JUROR:**  I HAVE A BACHELOR'S AND A

7     MASTER'S DEGREE.

8          **THE COURT:**  AND THE OCCUPATION OF MEMBERS OF YOUR

9     IMMEDIATE FAMILY, PLEASE.

10         **PROSPECTIVE JUROR:**  I -- I HAVE A SON WHO'S AN

11    NATIONAL JOURNALIST, NATIONAL NEWS BROADCASTER.  I HAVE A

12    DAUGHTER WHO'S A THERAPIST, A SON WHO HAS A LONG-TERM ILLNESS.

13    I HAVE A STEPSON WHO IS A VENTURE CAPITAL -- HE IS A HEDGE FUND

14    MANAGER.  I HAVE A STEPSON WHO'S JUST LOOKING FOR WORK.  MY

15    HUSBAND IS A COMMERCIAL PHOTOGRAPHER.

16         **THE COURT:**  OKAY.

17         HAVE YOU EVER HEARD OF THIS CASE AT ALL?

18         **PROSPECTIVE JUROR:**  ACTUALLY, YES, I HAVE.

19         **THE COURT:**  AND IN WHAT?  THROUGH NEWS COVERAGE OR

20    WHAT?

21         **PROSPECTIVE JUROR:**  NO, IN FACT, I LOOKED IT UP ON

22    YOUR CALENDAR, AND I READ ABOUT IT.  DID A LITTLE RESEARCH.

23         **THE COURT:**  SO YOU READ ABOUT THE CASE AND THE

24    DESCRIPTION.

25         **PROSPECTIVE JUROR:**  I DID.

```
1              THE COURT:  SO IT'S THE SAME THING AS THOUGH I

2    DESCRIBED THIS CASE, JUST LIKE --

3              PROSPECTIVE JUROR:  RIGHT.

4              THE COURT:  THAT'S THE LIMIT OF YOUR KNOWLEDGE?

5              PROSPECTIVE JUROR:  IT IS, ALTHOUGH I DID SEE WHO

6    SOME OF THE ATTORNEYS ARE, AND ONE OF THE ATTORNEY LAW FIRMS IS

7    ACTUALLY A DONOR TO THE ORGANIZATION FOR WHICH I'M A TRUSTEE.

8              THE COURT:  WHICH ONE WOULD THAT BE?

9              PROSPECTIVE JUROR:  TOWNSEND, TOWNSEND AND CREW, I

10   BELIEVE.

11             THE COURT:  HAVE YOU EVER HAD ANY CONTACT WITH THEM

12   AND DO ANY WORK WITH THEM?

13             PROSPECTIVE JUROR:  WELL, WITH A COUPLE OF PEOPLE

14   SOME YEARS AGO, YES.  BUT NOT RECENTLY.

15             THE COURT:  I GUESS I SHOULD ASK YOU, IS -- BEFORE

16   WE GET THERE, WITH REFERENCE TO YOUR PERSONAL RESPONSIBILITIES,

17   WOULD YOU BE ABLE TO SERVE IN THE MATTER?

18             PROSPECTIVE JUROR:  I HAVE OTHER REASONS, YOUR

19   HONOR, WHY I THINK I NEED TO BE EXCLUDED.  BUT I'D LIKE TO

20   SPEAK TO YOU PERSONALLY ABOUT THAT PRIVATELY.  IT'S -- IT'S A

21   FAMILY MATTER, AND I DON'T FEEL COMFORTABLE SHARING THAT WITH

22   THE --

23             THE COURT:  WELL, THAT'S NOT NECESSARY AT ALL.

24             PROSPECTIVE JUROR:  OKAY.

25             THE COURT:  AND I WOULD THINK THAT COUNSEL WOULD
```

```
1    AGREE THAT GIVEN WHAT YOU'VE SAID, IS THAT YOU SHOULD BE

2    EXCUSED, AND WE DON'T HAVE TO GO INTO ANYTHING.

3              PROSPECTIVE JUROR:  OKAY.

4              THE COURT:  ALL RIGHT.  SO THANK YOU VERY MUCH,

5    MS. ALEXANDER.  YOU COULD BE EXCUSED.  PLEASE GO BACK TO THE

6    JURY COMMISSIONER.

7              THE CLERK:  JAMES -- IS IT GROBE?  G-R-O-B-E.

8                   (PAUSE IN THE PROCEEDINGS.)

9              THE COURT:  MR. GROBE; IS THAT CORRECT?

10             PROSPECTIVE JUROR:  YES.

11             THE COURT:  COULD ASK YOUR RESIDENCE, PLEASE.

12             PROSPECTIVE JUROR:  IT'S IN HERCULES.

13             THE COURT:  AND MAY I ASK YOUR OCCUPATION.

14             PROSPECTIVE JUROR:  I'M A TECHNICAL INSTRUCTOR IN

15   A -- FOR A HIGH-TECH MANUFACTURER OF SEMICONDUCTOR

16   MANUFACTURING EQUIPMENT.

17             THE COURT:  HOW LONG HAVE YOU DONE THAT?

18             PROSPECTIVE JUROR:  FOR ABOUT 13 YEARS NOW.

19             THE COURT:  AND WHO IS IT THAT YOU WORK FOR?

20             PROSPECTIVE JUROR:  I ALMOST WOULD PREFER NOT TO SAY

21   THE NAME PUBLICLY, AS SOME OF THE -- THE COMPANIES MENTIONED

22   HERE, I DON'T KNOW WHAT THE INDIVIDUALS -- ANY OF THEM.  BUT

23   THE -- THE COMPANIES, INTEL IS ONE OF OUR BIG SOMETIMES CLIENT,

24   AND THE OTHER COMPANY MAY BE A SOMETIMES VENDOR.  I'M NOT SURE.

25             THE COURT:  OKAY.
```

1          SO WE GET IT CLEARED OUT, IS THERE ANYTHING ABOUT

2   THAT THAT WOULD AFFECT YOUR SERVICE AS A JUROR AND YOUR

3   DECISION-MAKING HERE?

4          PROSPECTIVE JUROR:   I'M MORE CONCERNED THAT WITH

5   THE -- THE IDEA THAT, FOR EXAMPLE, INTEL WOULD MIGHT SAY, OH,

6   THIS GUY WAS ON THE JURY, AND HE WAS A -- WORKED FOR THIS

7   PARTICULAR COMPANY AND THE IMPACT THAT MIGHT HAVE.

8          THE COURT:   WELL, WOULD THAT AFFECT WHAT YOU WOULD

9   DECIDE?   I MEAN, YOU'RE SAYING THAT YOU'RE THINKING ABOUT WHAT

10  OTHER PEOPLE MAY THINK ABOUT THE VERDICT.

11         BUT YOU ARE THE ONE WHO MAKES UP YOUR MIND ABOUT THE

12  VERDICT, AND THE -- MY QUESTION IS WHETHER OR NOT YOU CAN DO

13  THIS TASK.

14         PROSPECTIVE JUROR:   YEAH, I COULD PROBABLY DO THE

15  TASK AND UNDERSTAND WHAT'S GOING ON VERY WELL.

16         THE COURT:   AND YOU THINK YOU COULD DO IT IN SUCH A

17  FASHION THAT IT WOULD BE NOT BASED UPON ANYTHING ABOUT YOUR

18  RELATIONSHIP WITH INTEL 'CAUSE THAT HAS NOTHING TO DO WITH THIS

19  CASE.

20         PROSPECTIVE JUROR:   RIGHT.   RIGHT.

21         THE COURT:   AND YOU MUST EXCLUDE THAT.   WOULD YOU BE

22  ABLE TO DO THAT?

23         PROSPECTIVE JUROR:   YES.

24         THE COURT:   ALL RIGHT.   LET ME ASK YOU YOUR

25  EDUCATIONAL BACKGROUND.

1              **PROSPECTIVE JUROR:**  I HAVE A ASSOCIATE DEGREE.

2              **THE COURT:**  AND COULD I ASK THE OCCUPATION OF

3     MEMBERS OF YOUR IMMEDIATE FAMILY.

4              **PROSPECTIVE JUROR:**  WELL, MY WIFE IS A HOMEMAKER.

5     THAT'S -- YEAH.

6              **THE COURT:**  ALL RIGHT.  HAD YOU HEARD ABOUT THIS

7     PARTICULAR CASE BEFORE YOU GOT HERE?

8              **PROSPECTIVE JUROR:**  NO.

9              **THE COURT:**  AND YOU SAY YOU KNOW NAMES AND YOU KNOW

10    THE NAME INTEL, BUT DO YOU KNOW ANY OF THE OTHER NAMES THAT I

11    TALKED ABOUT?

12             **PROSPECTIVE JUROR:**  I DID NOT RECOGNIZE ANY OTHER

13    NAME.

14             **THE COURT:**  ALL RIGHT.  HAVE YOU BEEN A JUROR

15    BEFORE?

16             **PROSPECTIVE JUROR:**  NO.

17             **THE COURT:**  AS A JUROR, IT'S YOUR RESPONSIBILITY TO

18    MAKE DECISIONS OF FACT.  AND AS YOU SIT THERE NOW, YOU DON'T

19    KNOW ANYTHING ABOUT THIS CASE FACTUALLY; IS THAT CORRECT?

20             **PROSPECTIVE JUROR:**  TRUE.

21             **THE COURT:**  IN MAKING YOUR DECISION, YOU HAVE TO

22    LIMIT YOUR CONSIDERATIONS TO WHAT YOU HEAR PRESENTED IN THE

23    COURTROOM.  YOU UNDERSTAND THAT.

24             **PROSPECTIVE JUROR:**  YES.

25             **THE COURT:**  WHATEVER KNOWLEDGE YOU HAVE OUTSIDE THE

1   COURTROOM, WHATEVER KINDS OF INFORMATION YOU MAY HAVE RECEIVED,

2   YOU MAY NOT USE THAT IN DECIDING THIS CASE.

3            YOU UNDERSTAND THAT.  WOULD YOU BE ABLE TO DO THAT?

4            **PROSPECTIVE JUROR:**  YES.

5            **THE COURT:**  I WILL GIVE YOU THE RULES OF LAW FOR

6   YOUR DELIBERATIONS, AND THERE'LL BE RULES OF LAW THAT DEAL WITH

7   ALL THESE ISSUES OF LAW AND THE AREAS OF LAW THAT I DISCUSS,

8   THE AREA OF PATENT LAW, THE AREA OF LAW THAT DEALS WITH

9   CONTRACTS, THE AREA THAT DEALS WITH STATE OFFENSES OR THE STATE

10  CAUSES OF ACTION I'VE TALKED ABOUT.

11           AND IT'S UP TO YOU TO ACCEPT AND FOLLOW THAT LAW.

12  DO YOU UNDERSTAND THAT?

13           **PROSPECTIVE JUROR:**  UM-HMM.

14           **THE COURT:**  WILL YOU BE ABLE TO DO THAT?

15           **PROSPECTIVE JUROR:**  YES.

16           **THE COURT:**  ALL RIGHT.  NOW, WITH REFERENCE TO THE

17  CONNECTION OTHER THAN YOURSELF, IS THERE OTHER PERSONS IN THE

18  FAMILY OR CLOSE FRIENDS OR RELATIVES WHO ARE CONNECTED TO HIGH

19  TECH?

20           **PROSPECTIVE JUROR:**  NO.

21           **THE COURT:**  ANYBODY CONNECTED TO VENTURE CAPITAL

22  KIND OF --

23           **PROSPECTIVE JUROR:**  NO.

24           **THE COURT:**  -- CONCERNS?

25           HAVE YOU EVER BEEN INVOLVED IN -- OR ANY OF THESE

1   PEOPLE THAT I'VE SAID, HAVE THEY BEEN INVOLVED IN PATENTS --

2               **PROSPECTIVE JUROR:**  NO.

3               **THE COURT:**  -- OR TRADEMARKS OR COPYRIGHTS, THAT

4   SORT OF THING?

5               **PROSPECTIVE JUROR:**  NO.

6               **THE COURT:**  NO SUCH INVOLVEMENT.

7               HAVE YOU BEEN INVOLVED IN RUNNING A BUSINESS

8   YOURSELF AT ANY TIME?

9               **PROSPECTIVE JUROR:**  NO.

10              **THE COURT:**  HAVE YOU EVER BEEN INVOLVED IN A

11  LAWSUIT?

12              **PROSPECTIVE JUROR:**  NO.

13              **THE COURT:**  IN THE NATURE OF THIS CASE, THEN, WOULD

14  YOU BE ABLE TO SERVE IN THIS CASE JUST LIKE ANY OTHER CASE IN

15  TERMS OF YOUR SERVICE AS A JUROR?

16              **PROSPECTIVE JUROR:**  YES.

17              **THE COURT:**  AND WOULDN'T BOTHER YOU WHATEVER THE

18  SUBJECT MATTER IS.  IT WOULDN'T BOTHER YOU THAT IT MAY INCLUDE

19  THINGS LIKE AWARD FOR DAMAGES AS AN ISSUE TO BE CONSIDERED BY

20  YOU?

21              **PROSPECTIVE JUROR:**  THAT KIND OF -- I -- I DON'T

22  KNOW WHAT THAT WOULD EXACTLY BE, SO --

23              **THE COURT:**  WELL, I UNDERSTAND, BUT -- THE QUESTION

24  IS THIS:  SEE, EVERYBODY COMES IN HERE WITH DIFFERENT KINDS OF

25  IDEAS, AND IT MAY BE THAT YOU'VE HAD SOME EXPERIENCES WITH

1    REFERENCE TO THE SUBJECT MATTER WE DEAL WITH HERE.  BUT WE ALSO

2    HAVE TO HAVE PEOPLE WHO WILL SAY, "MY OWN EXPERIENCES ARE NOT

3    WHAT'S INVOLVED HERE.  WHAT'S INVOLVED HERE IS WHAT HAPPENED IN

4    THIS CASE THAT I'VE HEARD ABOUT IN THIS COURTROOM."

5              WOULD YOU BE ABLE TO LIMIT IT TO THAT?

6              **PROSPECTIVE JUROR:**  YES.

7              **THE COURT:**  IN OTHER WORDS, YOU WOULDN'T DECIDE THIS

8    CASE BASED UPON SOMETHING THAT HAPPENED OUTSIDE THE COURTROOM?

9              **PROSPECTIVE JUROR:**  NO.

10             **THE COURT:**  COULD YOU GIVE US YOUR COMMITMENT THAT

11   YOU WOULD MAKE NO DECISION IN THE CASE WHICH YOU BASE UPON RACE

12   OR ETHNIC ORIGIN?

13             **PROSPECTIVE JUROR:**  RIGHT.  YES.

14             **THE COURT:**  IS THERE ANYTHING THAT OCCURS, THEN, WHY

15   YOU WOULD NOT BE ABLE TO SERVE FAIRLY AND IMPARTIALLY AND TO

16   PRODUCE A VERDICT IN THIS CASE WHICH IS BASED UPON THE FACTS

17   AND LAW.

18             COULD YOU DO THAT?

19             **PROSPECTIVE JUROR:**  I THINK I COULD DO THAT.

20             **THE COURT:**  WELL, THIS -- WE NEED ULTIMATE CANDOR

21   RIGHT NOW, AND IF THERE'S ANY QUESTION IN YOUR MIND.

22             **PROSPECTIVE JUROR:**  WELL, IT STILL BOTHERS ME VERY

23   MUCH THAT -- THAT I'M DEALING WITH A CUSTOMER HERE.

24             **THE COURT:**  WELL, I -- I CAN UNDERSTAND.  AND THAT'S

25   A CONCERN.  BUT AS I -- I'VE GONE THROUGH, I WANT TO MAKE SURE

1    THAT YOU WILL NOT USE THAT TO DECIDE THE CASE.

2              IF THERE'S ANY HESITANCY ABOUT THAT, YOU REALLY

3    SHOULDN'T SERVE.

4              **PROSPECTIVE JUROR:**  I --

5              **THE COURT:**  YOU'RE HESITATING IT.

6              ALL RIGHT, MR. GROBE, YOU COULD BE EXCUSED.  PLEASE

7    GO BACK TO THE JURY COMMISSIONER.  THANK YOU.

8              **THE CLERK:**  WAYNE FURR, F-U-R-R.

9                   (PAUSE IN THE PROCEEDINGS.)

10             **THE COURT:**  MR. FURR, COULD I ASK YOUR RESIDENCE,

11   PLEASE, SIR.

12             **PROSPECTIVE JUROR:**  ROHNERT PARK.

13             **THE COURT:**  AND MAY I ASK YOUR OCCUPATION.

14             **PROSPECTIVE JUROR:**  I'M RIGHT NOW I'M UNEMPLOYED.  I

15   WAS LAID OFF BY AT&T.  I'M A CONTRACTOR.  I HAD 31 YEARS WITH

16   PACIFIC TELEPHONE, PACIFIC BELL.  I RETIRED IN 1995.  THEN I'VE

17   BEEN DOING CONTRACT WORK FOR SBC/AT&T NOW AS A DESIGN BIC

18   ENGINEER.

19             **THE COURT:**  AND THAT'S BEEN THE KIND OF WORK YOU'VE

20   DONE IN THE PAST.

21             **PROSPECTIVE JUROR:**  WELL, I WAS -- INSTALLATION AND

22   REPAIR FOR YEARS IN SAN FRANCISCO.

23             **THE COURT:**  OKAY.

24             **PROSPECTIVE JUROR:**  AND THEN I GOT INTO ENGINEERING.

25             **THE COURT:**  COULD I ASK YOUR EDUCATIONAL BACKGROUND?

1          **PROSPECTIVE JUROR:**  TWO YEARS OF COLLEGE, HOTEL AND

2    RESTAURANT OPERATION, WHICH HAS NOTHING TO DO WITH --

3          **THE COURT:**  OKAY.

4          MAY I ASK THE OCCUPATION OF MEMBERS OF YOUR

5    IMMEDIATE FAMILY.

6          **PROSPECTIVE JUROR:**  MY DAUGHTER USED TO WORK FOR

7    HARRIS DIGITAL, AND THEN SHE WORKED FOR ALCATEL, AND THEN SHE

8    GOT OUT OF THE TELECOMMUNICATIONS, AND NOW SHE'S A -- A

9    RADIOLOGY TECHNICIAN AT SANTA ROSA MEMORIAL.

10         AND MY OTHER DAUGHTER WAS A -- WENT TO SCHOOL AS A

11   SCHOOL TEACHER AND GOT LAID OFF DURING A BUDGET CRUNCH, AND NOW

12   SHE WORKS FOR A MORTGAGE COMPANY.  SHE'S HUMAN RESOURCES

13   DIRECTOR.

14         **THE COURT:**  WHAT COMPANY IS THAT?

15         **PROSPECTIVE JUROR:**  FIRST -- FIRST REPUBLIC, I

16   THINK, IS THE --

17         **THE COURT:**  OKAY.

18         **PROSPECTIVE JUROR:**  I'M NOT QUITE --

19         **THE COURT:**  ALL RIGHT.  HAVE YOU HEARD ABOUT THIS

20   CASE BEFORE TODAY?

21         **PROSPECTIVE JUROR:**  NO.

22         **THE COURT:**  DO YOU KNOW ANY OF THE PARTIES INVOLVED

23   IN THE CASE?

24         **PROSPECTIVE JUROR:**  NO.

25         **THE COURT:**  HAVE YOU BEEN A JUROR BEFORE?

1          PROSPECTIVE JUROR:  YES.

2          THE COURT:  WHAT KIND OF CASE AND WHEN WAS THAT?

3          PROSPECTIVE JUROR:  WELL, TWICE.  THE FIRST ONE WAS

4    YEARS AGO, AND -- WHEN I LIVED IN SAN MATEO.  I MEAN, I LIVED

5    IN SOUTH SAN FRANCISCO.  IT WAS A DUI.  AND THE SECOND ONE WHEN

6    I LIVED IN -- I'VE LIVED IN MARIN COUNTY FOR 30 YEARS.  AND I

7    WAS ON A KIDNAP ROBBERY.

8          THE COURT:  DID YOU DELIBERATE AND RETURN VERDICTS

9    IN THOSE CASES?

10          PROSPECTIVE JUROR:  THE FIRST -- YES.

11          THE COURT:  OKAY.

12          WOULD THERE BE ANY IMPACT FROM THOSE CASES ON THIS

13    CASE?

14          PROSPECTIVE JUROR:  NO.

15          THE COURT:  THIS CASE IS -- IS A NEW CASE.  YOU KNOW

16    NOTHING ABOUT IT AS YOU SIT THERE; IS THAT RIGHT?

17          PROSPECTIVE JUROR:  RIGHT.

18          THE COURT:  AND YOU REALIZE THAT YOU'RE GOING TO

19    HAVE TO LEARN ABOUT IT FROM WHAT YOU'RE PRESENTED IN THE

20    COURTROOM.  YOU UNDERSTAND THAT.

21          PROSPECTIVE JUROR:  RIGHT.

22          THE COURT:  AND YOU MUST LIMIT YOUR CONSIDERATION TO

23    THAT.  WILL YOU?

24          PROSPECTIVE JUROR:  YES.

25          THE COURT:  AND WILL YOU ACCEPT AND FOLLOW THE RULES

1   OF LAW THAT I GIVE YOU FOR YOUR DELIBERATIONS?

2                **PROSPECTIVE JUROR:**  YES.

3                **THE COURT:**  NOW, IN ADDITION TO YOUR DAUGHTER AND

4   HER CONNECTION WITH TELECOMMUNICATIONS, IS THERE ANYBODY ELSE

5   IN THE FAMILY, CLOSE FRIEND OR RELATIVE, WHO HAS SUCH A

6   CONNECTION?

7                **PROSPECTIVE JUROR:**  NO.

8                **THE COURT:**  ANYBODY IN ANY OTHER AREA OF HIGH TECH

9   THAT IS CONNECTED TO --

10               **PROSPECTIVE JUROR:**  NO.

11               **THE COURT:**  ANYBODY HAVE ANYTHING TO DO WITH VENTURE

12  CAPITAL FUNDING, THAT SORT OF THING?

13               **PROSPECTIVE JUROR:**  NO.

14               **THE COURT:**  YOU EVER HAD ANYTHING TO DO WITH OR

15  ANYBODY IN THE GROUP OF PERSONS HAVE ANYTHING TO DO WITH

16  PATENTS OR TRADEMARKS OR COPYRIGHTS?

17               **PROSPECTIVE JUROR:**  NO.

18               **THE COURT:**  HAVE YOU RUN A BUSINESS YOURSELF?

19               **PROSPECTIVE JUROR:**  NO.

20               **THE COURT:**  HAVE YOU EVER BEEN INVOLVED IN ANY KIND

21  OF LAWSUIT?

22               **PROSPECTIVE JUROR:**  NOT REALLY.  WHEN I WAS A BIC

23  ENGINEER, THERE WAS SOME LITIGATION WHERE WE WERE WORKING -- I

24  WAS A MANAGER, AND WE WERE WORKING TEN HOURS A DAY, AND PACIFIC

25  BELL WOULD ONLY GIVE YOU -- I WAS SALARIED, SO THERE WAS A CASE

1    WHERE THEY HAD TO GO BACK AND GIVE ALL THE BIC ENGINEERS IN

2    CALIFORNIA TWO HOURS PAY DEPENDING ON HOW MANY YEARS YOU WORKED

3    FOR IT, SO --

4              THE COURT:  SO YOU WERE ONE OF THE CLASS OF PERSONS

5    INVOLVED IN THAT.

6              PROSPECTIVE JUROR:  RIGHT.  RIGHT.

7              THE COURT:  DOES THAT HAVE ANYTHING TO DO WITH THIS

8    CASE?

9              PROSPECTIVE JUROR:  I DON'T THINK SO.

10             THE COURT:  IF YOU SERVE ON THIS CASE, WOULD YOU BE

11   ABLE TO CONSIDER ALL THE ISSUES THAT ARE INVOLVED, INCLUDING

12   THINGS LIKE DAMAGES?

13             PROSPECTIVE JUROR:  I THINK SO.

14             THE COURT:  COULD YOU GIVE US YOUR COMMITMENT THAT

15   IF YOU'RE A JUROR IN THIS CASE, YOU WOULD MAKE NO DECISION

16   WHICH YOU BASE UPON RACE OR ETHNIC ORIGIN?

17             PROSPECTIVE JUROR:  YES.

18             THE COURT:  DOES ANYTHING OCCUR TO YOU WHY YOU WOULD

19   NOT BE ABLE TO BE A FAIR AND IMPARTIAL TRIAL JUROR?

20             PROSPECTIVE JUROR:  NOT REALLY, OTHER THAN WHEN I

21   WAS A DESIGN ENGINEER, I DID COPPER AND FIBER OPTICS.

22             THE COURT:  YOU PERSONALLY DID SOME OF THAT?

23             PROSPECTIVE JUROR:  YEAH.  THAT'S WHAT I DID.

24             THE COURT:  ALL RIGHT.  SO IF THAT SUBJECT MATTER

25   COMES UP, THIS WILL BE SOMETHING YOU KNOW SOMETHING ABOUT?

```
1              PROSPECTIVE JUROR:  YEAH.

2              THE COURT:  AND YOU REALIZE, OF COURSE, WHAT YOU

3    LEARNED OUT THERE AND WHAT YOU'VE DONE OUT THERE DOESN'T HAVE

4    ANYTHING TO DO WITH THIS CASE.

5              PROSPECTIVE JUROR:  RIGHT.

6              THE COURT:  YOU'D HAVE TO TAKE THIS CASE ON ITS OWN.

7              WOULD YOU BE ABLE TO DO THAT?

8              PROSPECTIVE JUROR:  I THINK SO.

9              THE COURT:  AND YOU COULD BE FAIR AND IMPARTIAL IN

10   DOING THAT?

11             PROSPECTIVE JUROR:  YEAH.

12             THE COURT:  THANK YOU, SIR.

13             PROSPECTIVE JUROR:  OKAY.

14             THE COURT:  PLEASE.

15             MR. LIND, COULD I ASK YOUR RESIDENCE, PLEASE, SIR.

16             PROSPECTIVE JUROR:  I LIVE IN FREMONT.

17             THE COURT:  AND YOUR OCCUPATION, PLEASE.

18             PROSPECTIVE JUROR:  I'M AN I.T. CONTRACT WORKER.  I

19   DO TEMP WORK FOR AGENCIES, PART-TIME JOB.

20             THE COURT:  WHO DO YOU WORK FOR?

21             PROSPECTIVE JUROR:  IT'S CALLED THE COMPUTER

22   MERCHANTS.

23             THE COURT:  HOW LONG HAVE YOU DONE THAT?

24             (SIMULTANEOUS COLLOQUY.)

25             THE COURT:  EXCUSE ME.
```

1                    **PROSPECTIVE JUROR:**  THEY'RE OUT OF MASSACHUSETTS.

2                    **THE COURT:**  ALL RIGHT.  AND HOW LONG HAVE YOU DONE

3     THAT?

4                    **PROSPECTIVE JUROR:**  FOR SEVERAL YEARS NOW SINCE --

5                    **THE COURT:**  DID YOU HAVE EMPLOYMENT BEFORE THAT IN

6     ANOTHER AREA?

7                    **PROSPECTIVE JUROR:**  YES, I WORKED AS A -- AS A

8     COMPUTER SYSTEMS ENGINEER.

9                    **THE COURT:**  AND WHO DID YOU WORK FOR THEN?

10                   **PROSPECTIVE JUROR:**  FOR KLA-TENCOR.

11                   **THE COURT:**  ALL RIGHT.  AND MAY I ASK YOUR

12    EDUCATIONAL BACKGROUND.

13                   **PROSPECTIVE JUROR:**  I HAVE A BACHELOR'S DEGREE.

14                   **THE COURT:**  AND COULD I ASK --

15                   **PROSPECTIVE JUROR:**  THE COMPANY I WORKED FOR DID

16    MAJOR WORK WITH INTEL, AND I ACTUALLY SPEC'D A LOT OF COMPUTER

17    SYSTEMS TO HELP THEM DESIGN THEIR -- THEIR GENERAL --

18                   **THE COURT:**  THAT'S PART OF YOUR BACKGROUND.

19                   **PROSPECTIVE JUROR:**  -- CHIPS.

20                   YES.  I WORKED WITH A LOT OF HIGH-TECH FIRMS.

21                   **THE COURT:**  AND DOES THAT HAVE ANYTHING TO DO WITH

22    YOUR ABILITY TO SERVE IN THIS CASE?

23                   **PROSPECTIVE JUROR:**  IT COULD BECAUSE I OWN A MAJOR

24    SHARE OF INTEL.  I'M A MAJOR SHARE --

25                            (LAUGHTER.)

```
 1              THE COURT:  ALL RIGHT.

 2              SO THAT MIGHT BE SOMETHING THAT IS ON YOUR MIND AS

 3    YOU LISTEN.

 4                        (LAUGHTER.)

 5              PROSPECTIVE JUROR:  BASED UPON MY 401K, YES.

 6                   (SIMULTANEOUS COLLOQUY.)

 7              THE COURT:  MR. LIND, YOU COULD BE EXCUSED.  PLEASE

 8    GO BACK TO THE JURY COMMISSIONER.  THANK YOU.

 9              THE CLERK:  SEAN HEYMAN, H-E-Y-M-A-N.

10              THE COURT:  MR. HEYMAN, COULD I ASK YOUR RESIDENCE,

11    PLEASE, SIR.

12              PROSPECTIVE JUROR:  TIBURON.

13              THE COURT:  AND YOUR OCCUPATION, PLEASE.

14              PROSPECTIVE JUROR:  I'M A FULL-TIME STUDENT AT

15    COLLEGE OF MARIN.

16              THE COURT:  ALL RIGHT.  ARE YOU FACED WITH THE SAME

17    PROBLEM IN TERMS OF EXAMINATIONS MIGHT BE AFFECTED BY THIS

18    CASE?

19              PROSPECTIVE JUROR:  YES, I HAVE EXAMINATIONS THIS

20    MONTH.

21              THE COURT:  AND THEY'RE SCHEDULED NOW?

22              PROSPECTIVE JUROR:  YEAH.

23              THE COURT:  IF YOU DON'T TAKE THEM, YOU LOSE THE

24    CREDIT.

25              PROSPECTIVE JUROR:  YES, SIR.
```

```
 1                    THE COURT:  MR. HEYMAN, YOU COULD BE EXCUSED.

 2      PLEASE GO BACK TO THE JURY COMMISSIONER.  THANK YOU.

 3                    THE CLERK:  VERA GASSNER, G-A-S-S-N-E-R.

 4                    (PAUSE IN THE PROCEEDINGS.)

 5                    THE COURT:  MS. GASSNER, COULD I ASK YOUR RESIDENCE,

 6      PLEASE.

 7                    PROSPECTIVE JUROR:  I LIVE IN ALAMEDA.

 8                    THE COURT:  AND COULD I ASK YOUR OCCUPATION.

 9                    PROSPECTIVE JUROR:  I'M A MARRIAGE FAMILY THERAPIST

10      INTERN.

11                    THE COURT:  WHO DO YOU WORK FOR?

12                    PROSPECTIVE JUROR:  FAMILY SERVICE OF SAN LEANDRO.

13                    THE COURT:  AND HOW LONG HAVE YOU DONE THAT?

14                    PROSPECTIVE JUROR:  I'VE BEEN THERE SINCE JUNE.

15                    THE COURT:  AND DID YOU HAVE EMPLOYMENT BEFORE THAT

16      TIME?

17                    PROSPECTIVE JUROR:  FAMILY SERVICE OF THE TRI CITIES

18      IN FREMONT.

19                    THE COURT:  ALL RIGHT.  AND MAY I ASK YOUR

20      EDUCATIONAL BACKGROUND.

21                    PROSPECTIVE JUROR:  I HAVE A MASTER'S IN PSYCHOLOGY.

22                    THE COURT:  COULD I ASK THE OCCUPATION OF MEMBERS OF

23      YOUR IMMEDIATE FAMILY?

24                    PROSPECTIVE JUROR:  MY PARTNER HAS A M.B.A.

25                    THE COURT:  AND HAD YOU EVER HEARD ABOUT THIS CASE
```

1   BEFORE YOU GOT HERE TO COURT?

2                    **PROSPECTIVE JUROR:**  NO, I HAVEN'T.

3                    **THE COURT:**  AND HAVE YOU EVER SERVED AS A JUROR

4   BEFORE?

5                    **PROSPECTIVE JUROR:**  NO, I HAVEN'T.

6                    **THE COURT:**  IF YOU SERVE AS A JUROR HERE, YOU WILL

7   HAVE TO DECIDE THE FACTS BUT YOU CAN ONLY DO ON THE BASIS OF

8   THE EVIDENCE THAT YOU HEAR PRESENTED IN THE COURTROOM.

9                    YOU UNDERSTAND THAT?

10                    **PROSPECTIVE JUROR:**  YES, I DO.

11                    **THE COURT:**  AND YOU MUST EXCLUDE FROM YOUR

12   CONSIDERATION ANY EXPERIENCES OR KNOWLEDGE YOU GAIN FROM

13   OUTSIDE THE COURTROOM.

14                    WOULD YOU BE ABLE TO DO THAT?

15                    **PROSPECTIVE JUROR:**  YES, I COULD.

16                    **THE COURT:**  AND YOU MUST FOLLOW THE RULES OF LAW

17   THAT I GIVE YOU FOR YOUR DELIBERATIONS.  I'LL DEFINE THAT THE

18   LEGAL CONTEXT FOR YOU -- YOUR CONSIDERATIONS, YOUR

19   DELIBERATIONS.

20                    WILL YOU ACCEPT AND FOLLOW THOSE RULES?

21                    **PROSPECTIVE JUROR:**  YES, I DO.

22                    **THE COURT:**  ANYBODY IN YOUR FAMILY, CLOSE FRIEND OR

23   RELATIVE, CONNECTED WITH THE HIGH-TECH INDUSTRY?

24                    **PROSPECTIVE JUROR:**  NO.

25                    **THE COURT:**  ANYBODY HAVE ANYTHING TO DO WITH VENTURE

1    CAPITAL -- VENTURE FUNDING, VENTURE CAPITAL?

2              **PROSPECTIVE JUROR:**  NO.

3              **THE COURT:**  ANYBODY HAVE ANYTHING TO DO WITH PATENTS

4    OR COPYRIGHTS, TRADEMARK, THAT SORT OF --

5              **PROSPECTIVE JUROR:**  NO.

6              **THE COURT:**  YOU EVER RUN A BUSINESS YOURSELF?

7              **PROSPECTIVE JUROR:**  I -- I'VE DONE ART WORK IN THE

8    PAST.

9              **THE COURT:**  OKAY.  WHAT KIND OF -- WHAT DID YOU DO?

10             **PROSPECTIVE JUROR:**  DRAWING -- HAND-MADE CARDS,

11   JEWELRY AND I'VE SOLD THEM AT FAIRS.

12             **THE COURT:**  OKAY.  OKAY.  DID YOU EVER HAVE ANY

13   TROUBLE IN THERE IN TERMS OF LAWSUITS OR ANYTHING OF THAT

14   NATURE?

15             **PROSPECTIVE JUROR:**  NO.

16             **THE COURT:**  IS THERE ANYTHING ABOUT THE NATURE OF

17   THIS CASE THAT WOULD AFFECT YOUR ABILITY TO SERVE FAIRLY AND

18   IMPARTIALLY?

19             **PROSPECTIVE JUROR:**  NO.

20             **THE COURT:**  COULD YOU GIVE US YOUR COMMITMENT THAT

21   IF YOU SERVE AS A JUROR, YOU'LL MAKE NO DECISION WHICH YOU BASE

22   UPON RACE OR ETHNIC ORIGIN?

23             **PROSPECTIVE JUROR:**  YES.

24             **THE COURT:**  THAT'S THE WAY YOU WOULD DO IT; IS THAT

25   CORRECT?

```
1              PROSPECTIVE JUROR:  (NODS HEAD.)

2              THE COURT:  IS THERE ANY REASON WHY YOU COULD NOT

3    SERVE IN THE MATTER AND BE FAIR AND IMPARTIAL IN YOUR SERVICE?

4              PROSPECTIVE JUROR:  NO.

5              THE COURT:  OKAY.  THANK YOU, MA'AM.

6                 (OFF-THE-RECORD DISCUSSION.)

7              THE COURT:  MR. DEGUZMAN, CAN YOU TELL US YOUR

8    RESIDENCE, PLEASE.

9              PROSPECTIVE JUROR:  SANTA ROSA.

10             THE COURT:  AND MAY I ASK YOUR OCCUPATION?

11             PROSPECTIVE JUROR:  I'M A SOFTWARE QUALITY ASSURANCE

12   ENGINEER.

13             THE COURT:  WHO DO YOU WORK FOR?

14             PROSPECTIVE JUROR:  BAY PACK (PHONETIC).

15             THE COURT:  HOW LONG HAVE YOU DONE THAT?

16             PROSPECTIVE JUROR:  THREE YEARS.

17             THE COURT:  AND WHAT EMPLOYMENT DID YOU HAVE BEFORE

18   THAT?

19             PROSPECTIVE JUROR:  I WAS ALSO A QA ENGINEER.

20             THE COURT:  AND COULD I ASK YOUR EDUCATIONAL

21   BACKGROUND.

22             PROSPECTIVE JUROR:  BACHELOR'S.

23             THE COURT:  AND MAY I ASK THE OCCUPATION OF MEMBERS

24   OF YOUR IMMEDIATE FAMILY?

25             PROSPECTIVE JUROR:  MY WIFE IS A ACCOUNTANT.
```

| | |
|---|---|
| 1 | **THE COURT:**  AN ACCOUNTANT.   OKAY. |
| 2 | WHO DOES SHE WORK FOR? |
| 3 | **PROSPECTIVE JUROR:**  SHE WORKS FOR AUBERGE -- AUBERGE |
| 4 | DU SOLEIL. |
| 5 | **THE COURT:**  AUBERGE DU SOLEIL.  GOOD PLACE. |
| 6 | (LAUGHTER.) |
| 7 | **PROSPECTIVE JUROR:**  NEVER BEEN THERE. |
| 8 | **THE COURT:**  HAVE YOU EVER HEARD OF THIS CASE BEFORE |
| 9 | YOU GOT HERE TODAY? |
| 10 | **PROSPECTIVE JUROR:**  NO, SIR. |
| 11 | **THE COURT:**  DO YOU KNOW ANY OF THE PARTIES THAT ARE |
| 12 | INVOLVED? |
| 13 | **PROSPECTIVE JUROR:**  NO, SIR. |
| 14 | **THE COURT:**  HAVE YOU BEEN A JUROR BEFORE? |
| 15 | **PROSPECTIVE JUROR:**  NO, SIR. |
| 16 | **THE COURT:**  AS A JUROR, YOU WILL HAVE AN OBLIGATION |
| 17 | TO MAKE FINDINGS OF FACT, BUT YOU CAN ONLY DO THAT ON THE BASIS |
| 18 | OF THE EVIDENCE THAT'S INTRODUCED IN THIS COURTROOM, AND YOU |
| 19 | MUST LIMIT YOUR CONSIDERATION TO THAT. |
| 20 | CAN YOU DO THAT? |
| 21 | **PROSPECTIVE JUROR:**  YES, SIR. |
| 22 | **THE COURT:**  THE RULES OF LAW THAT APPLY TO THIS CASE |
| 23 | I WILL GIVE YOU, AND YOU MUST ACCEPT AND FOLLOW THOSE. |
| 24 | DO YOU UNDERSTAND? |
| 25 | **PROSPECTIVE JUROR:**  YES, SIR. |

1              **THE COURT:**  COULD YOU DO THAT?

2              **PROSPECTIVE JUROR:**  YES, SIR.

3              **THE COURT:**  ANYBODY -- LET ME ASK YOU IN TERMS OF

4    HIGH-TECH -- CONNECTION WITH HIGH TECH, ANYBODY IN THE FAMILY,

5    CLOSE FRIEND OR RELATIVES, WHAT CONNECTIONS THERE MAY BE.

6              **PROSPECTIVE JUROR:**  YES.  MY BROTHER WORKS FOR A

7    COMPANY CALLED JDS UNIPHASE IN SANTA ROSA.  AND I HAVE A

8    BROTHER-IN-LAW WHO WORKS FOR A COMPANY THAT IS A SUPPLIER TO

9    INTEL.

10             **THE COURT:**  SO HE WORKS FOR A COMPANY THAT DOES

11   SUPPLYING FOR INTEL.

12             **PROSPECTIVE JUROR:**  CORRECT.

13             **THE COURT:**  THAT'S THE CONNECTION THAT'S THERE.

14             **PROSPECTIVE JUROR:**  CORRECT.

15             **THE COURT:**  DOES THAT CONNECTION HAVE ANYTHING TO DO

16   WITH YOU AND YOUR SERVICE HERE?

17             **PROSPECTIVE JUROR:**  (SHAKES HEAD.)

18             **THE COURT:**  THAT WOULD MAKE NO DIFFERENCE TO YOU AT

19   ALL IN YOUR SERVICE; IS THAT RIGHT?

20             **PROSPECTIVE JUROR:**  NO.

21             **THE COURT:**  AND YOU'D DECIDE THIS CASE ON YOUR OWN;

22   IS THAT CORRECT?

23             **PROSPECTIVE JUROR:**  THAT'S RIGHT.

24             **THE COURT:**  ANYBODY IN THE FAMILY, CLOSE FRIEND OR

25   RELATIVE, HAVE ANY CONNECTION WITH VENTURE CAPITAL FUNDING?

1              **PROSPECTIVE JUROR:**  NO, SIR.

2              **THE COURT:**  ANYBODY HAVE ANY CONNECTION WITH THE

3      WORLD OF PATENTS AND TRADEMARKS AND COPYRIGHT?

4              **PROSPECTIVE JUROR:**  MY -- MY SISTER ONCE DID PATENT

5      LAW.  SHE WAS A LAWYER.

6              **THE COURT:**  BUT DOES SHE WORK IN A PATENT FIRM, OR

7      WHAT DID SHE DO?

8              **PROSPECTIVE JUROR:**  SHE JUST FREELANCED.

9              **THE COURT:**  ALL RIGHT.  BUT SHE WAS INVOLVED, YOU

10     COULD RECALL, IN TERMS OF WORKING FOR SOMEONE WHO WANTED TO GET

11     A PATENT?

12             **PROSPECTIVE JUROR:**  YES, HERS.

13             **THE COURT:**  OKAY.  DO YOU KNOW WHEN THAT WAS?

14             **PROSPECTIVE JUROR:**  I'D SAY ABOUT FOUR, FIVE YEARS

15     AGO.

16             **THE COURT:**  DOES THAT HAVE ANYTHING TO DO WITH THIS

17     CASE?

18             **PROSPECTIVE JUROR:**  NO, SIR.

19             **THE COURT:**  SO THAT'S THE KIND OF EXPERIENCE OUT

20     THERE THAT YOU WOULD EXCLUDE FROM YOUR CONSIDERATION.

21             **PROSPECTIVE JUROR:**  CORRECT.

22             **THE COURT:**  IS THAT RIGHT?

23             **PROSPECTIVE JUROR:**  (NODS HEAD.)

24             **THE COURT:**  HAVE YOU EVER RUN A BUSINESS OF YOUR

25     OWN?

1          **PROSPECTIVE JUROR:**  NO, SIR.

2          **THE COURT:**  AND HAVE YOU BEEN IN A LAWSUIT OF YOUR

3    OWN?

4          **PROSPECTIVE JUROR:**  I WAS A DEFENDANT IN A PERSONAL

5    INJURY CASE.

6          **THE COURT:**  OKAY.  AND THAT'S THROUGH?

7          **PROSPECTIVE JUROR:**  AND THAT'S OVER, YES.

8          **THE COURT:**  AND THAT ALSO IS ONE OF THESE THINGS

9    THAT HAS NOTHING TO DO WITH THIS CASE.

10         **PROSPECTIVE JUROR:**  CORRECT.

11         **THE COURT:**  IS THAT CORRECT?

12         IF YOU SERVE AS A JUROR HERE, CAN YOU BE FAIR AND

13   IMPARTIAL IN YOUR SERVICE?

14         **PROSPECTIVE JUROR:**  YES, SIR.

15         **THE COURT:**  WOULD YOU GIVE US YOUR COMMITMENT THAT

16   YOU'D MAKE NO DECISION IN THIS CASE THAT YOU'D BASE UPON RACE

17   OR ETHNIC ORIGIN?

18         **PROSPECTIVE JUROR:**  YES, SIR.

19         **THE COURT:**  THANKS.

20         MR. MUROTSUNE.

21         **PROSPECTIVE JUROR:**  YES.

22         **THE COURT:**  COULD I ASK YOUR RESIDENCE, PLEASE.

23         **PROSPECTIVE JUROR:**  HAYWARD.

24         **THE COURT:**  AND YOUR OCCUPATION.

25         **PROSPECTIVE JUROR:**  BUSINESS SYSTEMS ANALYST FOR

1    WASHINGTON MUTUAL -- WHAT USED TO BE WASHINGTON MUTUAL.

2          THE COURT:  HOW LONG DID YOU DO THAT?

3          PROSPECTIVE JUROR:  FOUR YEARS.

4          THE COURT:  AND WHAT OTHER EMPLOYMENT DID YOU HAVE?

5          PROSPECTIVE JUROR:  I WAS A PROJECT MANAGER FOR A

6    COMPANY CALLED MY WAY.

7          THE COURT:  AND MAY I ASK YOUR EDUCATIONAL

8    BACKGROUND.

9          PROSPECTIVE JUROR:  HIGH SCHOOL.

10         THE COURT:  COULD I ASK THE OCCUPATION OF MEMBERS OF

11   YOUR IMMEDIATE FAMILY.

12         PROSPECTIVE JUROR:  MY PARTNER'S A TECHNICAL ACCOUNT

13   MANAGER FOR A COMPANY CALLED GT NEXUS.

14         THE COURT:  NOW, BEFORE YOU GOT TO COURT, HAVE YOU

15   EVER HEARD ABOUT THIS CASE?

16         PROSPECTIVE JUROR:  NO.

17         THE COURT:  AND DO YOU KNOW ANY OF THE PARTIES THAT

18   ARE INVOLVED IN THIS CASE?

19         PROSPECTIVE JUROR:  NO.

20         THE COURT:  HAVE YOU SERVED AS A JUROR BEFORE?

21         PROSPECTIVE JUROR:  NO.

22         THE COURT:  IN SERVICE AS A JUROR, YOU WILL HAVE TO

23   MAKE DECISIONS OF FACT, AS WE'VE GONE THROUGH, BUT YOU MUST

24   LIMIT YOUR CONSIDERATION TO THE EVIDENCE THAT YOU HEAR IN THE

25   COURTROOM ALONG WITH YOUR FELLOW JURORS.

```
1                    YOU UNDERSTAND THAT?

2              PROSPECTIVE JUROR:  YES.

3              THE COURT:  WOULD YOU BE ABLE TO EXCLUDE THOSE

4    EXPERIENCES AND KNOWLEDGE YOU GAINED FROM OUTSIDE THE COURTROOM

5    IN DECIDING THIS CASE?

6              PROSPECTIVE JUROR:  YES.

7              THE COURT:  NOW, YOU ALSO HAVE TO ACCEPT AND FOLLOW

8    THE RULES OF LAW THAT I GIVE YOU FOR YOUR DELIBERATIONS HERE.

9                    WILL YOU DO THAT?

10             PROSPECTIVE JUROR:  YES.

11             THE COURT:  IS THERE ANYONE IN YOUR FAMILY OR CLOSE

12   FRIEND OR RELATIVE WHO HAS SOME CONNECTION WITH HIGH-TECH

13   INDUSTRIES?

14             PROSPECTIVE JUROR:  NO.

15             THE COURT:  ANYBODY WHO'S HAD A CONNECTION WITH

16   VENTURE CAPITAL FUNDING?

17             PROSPECTIVE JUROR:  NO.

18             THE COURT:  OR WITH PATENTS OR WITH COPYRIGHTS,

19   TRADE MARKS?

20             PROSPECTIVE JUROR:  NO.

21             THE COURT:  HAVE YOU EVER --

22                   (CELL PHONE RINGING.)

23             THE COURT:  ALL RIGHT.  I THINK THAT'S OKAY.

24                   HAVE YOU EVER BEEN IN THE BUSINESS YOURSELF OR RUN A

25   BUSINESS YOURSELF?
```

1          **PROSPECTIVE JUROR:**  I OWN RENTAL PROPERTY.

2          **THE COURT:**  OKAY.

3          AND THAT'S -- THAT'S THE NATURE OF ANY BUSINESS

4   YOU'VE BEEN ASSOCIATED WITH?

5          **PROSPECTIVE JUROR:**  YES.

6          **THE COURT:**  HAVE THERE BEEN ANY PROBLEMS ASSOCIATED

7   WITH THAT OR -- LIKE, CONTRACT PROBLEMS OR --

8          **PROSPECTIVE JUROR:**  NO.

9          **THE COURT:**  SO THERE'S NO PROBLEMS AT ALL DEVELOPING

10  THAT?

11         **PROSPECTIVE JUROR:**  NO.

12         **THE COURT:**  YOU'VE NEVER BEEN IN A LAWSUIT YOURSELF.

13         **PROSPECTIVE JUROR:**  NO.

14         **THE COURT:**  THE NATURE OF THIS CASE, WOULD THAT HAVE

15  ANYTHING TO DO WITH YOUR ABILITY TO SERVE?

16         **PROSPECTIVE JUROR:**  NO.

17         **THE COURT:**  IF YOU SERVE, WILL YOU GIVE US YOUR

18  COMMITMENT THAT YOU'D MAKE NO DECISION WHICH YOU BASE UPON RACE

19  OR ETHNIC ORIGIN?

20         **PROSPECTIVE JUROR:**  YES.

21         **THE COURT:**  CAN YOU SERVE IN THIS MATTER AND BE FAIR

22  AND IMPARTIAL IN YOUR SERVICE?

23         **PROSPECTIVE JUROR:**  YES.

24         **THE COURT:**  THANK YOU, SIR.

25         **PROSPECTIVE JUROR:**  BUT -- SORRY.  UNFORTUNATELY, I

```
 1   AM SCHEDULED TO BE OUT OF TOWN THE 6TH AND THE 7TH OF DECEMBER.

 2                AND ALSO SINCE I'M -- I'M EMPLOYED BY WHAT USED TO

 3   BE WASHINGTON MUTUAL, THEY'RE EVALUATING ALL OF US FOR WHETHER

 4   WE'RE GOING TO BE RETAINED OR NOT.

 5                THE COURT:  SO IT'S A PARTICULARLY ACUTE TIME.

 6                PROSPECTIVE JUROR:  IT IS VERY SENSITIVE.

 7                THE COURT:  BUT SPECIFICALLY, YOU HAVE SOME TRAVEL

 8   THAT YOU'RE REQUESTING TO HAVE TO DO; IS THAT IT?

 9                PROSPECTIVE JUROR:  THAT, TOO, YES.

10                THE COURT:  ALL RIGHT.  OKAY.  MR. MUROTSUNE, YOU

11   CAN BE EXCUSED.  PLEASE GO BACK TO THE JURY COMMISSIONER.

12   THANK YOU.

13                THE CLERK:  ELLEN MCDOUGALD, M-C-D-O-U-G-A-L-D.

14                     (PAUSE IN THE PROCEEDINGS.)

15                THE COURT:  MS. MCDOUGALD, COULD YOU PLEASE TELL ME

16   YOUR RESIDENCE.

17                PROSPECTIVE JUROR:  PACIFICA.

18                THE COURT:  AND YOUR OCCUPATION.

19                PROSPECTIVE JUROR:  I'M A SUPERVISOR AT DHL.

20                THE COURT:  AND HOW LONG HAVE YOU DONE THAT?

21                PROSPECTIVE JUROR:  TWENTY-ONE YEARS.

22                THE COURT:  AND COULD I ASK YOUR EDUCATIONAL

23   BACKGROUND.

24                PROSPECTIVE JUROR:  BACHELOR'S DEGREE.

25                THE COURT:  MAY I ASK THE OCCUPATION OF MEMBERS OF
```

1    YOUR IMMEDIATE FAMILY.

2            **PROSPECTIVE JUROR:**  MY PARTNER IS JUST RECENTLY

3    UNEMPLOYED BUT WORKED FOR YEARS IN MARKETING.

4            **THE COURT:**  OKAY.  WHO DID -- WORKED FOR --

5            **PROSPECTIVE JUROR:**  A SMALL COMPANY IN FOSTER CITY.

6            **THE COURT:**  OKAY.  HAD YOU EVER HEARD OF THIS CASE

7    BEFORE YOU GOT HERE TO COURT?

8            **PROSPECTIVE JUROR:**  NO.

9            **THE COURT:**  DO YOU KNOW ANY OF THE PARTIES INVOLVED?

10           **PROSPECTIVE JUROR:**  NO.

11           **THE COURT:**  HAVE YOU BEEN A JUROR BEFORE?

12           **PROSPECTIVE JUROR:**  ALWAYS.

13           (LAUGHTER.)

14           **THE COURT:**  AND YOU KNOW THE WHOLE ROUTINE.

15           **PROSPECTIVE JUROR:**  YEAH.

16           **THE COURT:**  OKAY.  YOU KNOW THAT YOU CAN'T DECIDE

17   THE CASE ON ANYTHING OTHER THAN YOU HEAR IN THE COURTROOM AND

18   YOU'LL ACCEPT AND FOLLOW THAT.

19           **PROSPECTIVE JUROR:**  UH-HUH.

20           **THE COURT:**  AND THE RULES OF LAW WILL BE FOR THIS

21   PARTICULAR CASE, AND I'LL GIVE THEM TO YOU, AND YOU MUST FOLLOW

22   THOSE.

23           CAN YOU DO THAT?

24           **PROSPECTIVE JUROR:**  YES.  UM-HMM.

25           **THE COURT:**  ANYBODY INVOLVED -- ANYBODY IN THE --

```
1    CLOSE FRIEND OR RELATIVE INVOLVED IN THE HIGH-TECH INDUSTRY?

2              PROSPECTIVE JUROR:  NO.

3              THE COURT:  ANYBODY INVOLVED IN VENTURE CAPITAL

4    FUNDING?

5              PROSPECTIVE JUROR:  NO.

6              THE COURT:  ANYBODY INVOLVED IN PATENTS, TRADEMARKS,

7    COPYRIGHT --

8              PROSPECTIVE JUROR:  NO.

9              THE COURT:  -- THAT AREA?

10             YOU EVER RUN A BUSINESS YOURSELF?

11             PROSPECTIVE JUROR:  YEARS AND YEARS AGO.

12             THE COURT:  WHAT DID YOU DO?

13             PROSPECTIVE JUROR:  WE RAN A DELI.

14             THE COURT:  OKAY.  ANYTHING COME OUT OF THAT THAT

15   WOULD BE ANY LAWSUITS OR ANYTHING OF THAT NATURE?

16             PROSPECTIVE JUROR:  NO.

17             THE COURT:  HAVE YOU EVER BEEN IN A LAWSUIT

18   YOURSELF?

19             PROSPECTIVE JUROR:  NO.

20             THE COURT:  IS THE NATURE OF THIS LAWSUIT SUCH THAT

21   YOU COULD DELIBERATE AND CONSIDER ALL THE ISSUES INVOLVED IN

22   THIS LAWSUIT?

23             PROSPECTIVE JUROR:  YES.

24             THE COURT:  WOULD YOU GIVE US YOUR COMMITMENT THAT

25   YOU'D MAKE NO DECISION WHICH YOU BASE UPON RACE OR ETHNIC
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1    ORIGIN IN SERVING AS A JUROR HERE.

2              **PROSPECTIVE JUROR:**  YES, I WOULD COMMIT TO THAT.

3              **THE COURT:**  COULD YOU SERVE AND BE A FAIR AND

4    IMPARTIAL JUROR FOR EVERYONE HERE?

5              **PROSPECTIVE JUROR:**  YEP.

6              **THE COURT:**  THANK YOU VERY MUCH.

7              MS. DURGAN, COULD I ASK YOUR RESIDENCE, PLEASE.

8              **PROSPECTIVE JUROR:**  SAN FRANCISCO.

9              **THE COURT:**  AND MAY I ASK YOUR OCCUPATION?

10             **PROSPECTIVE JUROR:**  I'M A PROGRAM DIRECTOR AT UCSF.

11             **THE COURT:**  HOW LONG HAVE YOU DONE THAT?

12             **PROSPECTIVE JUROR:**  THREE YEARS.

13             **THE COURT:**  WHAT OCCUPATION DID YOU HAVE --

14   EMPLOYMENT DID YOU HAVE BEFORE?

15             **PROSPECTIVE JUROR:**  I WORKED FOR NON-PROFIT

16   ORGANIZATION AS A PROGRAM MANAGER.

17             **THE COURT:**  COULD I ASK YOUR EDUCATIONAL BACKGROUND.

18             **PROSPECTIVE JUROR:**  I HAVE A MASTER'S DEGREE.

19             **THE COURT:**  AND MAY I ASK THE OCCUPATION OF MEMBERS

20   OF YOUR IMMEDIATE FAMILY.

21             **PROSPECTIVE JUROR:**  MY SISTER'S A LAWYER.

22             **THE COURT:**  WHAT KIND OF WORK DOES SHE DO?  WHAT

23   KIND OF AREA OF PRACTICE?

24             **PROSPECTIVE JUROR:**  EMPLOYMENT LAW.

25             **THE COURT:**  ALL RIGHT.  AND WHERE IS SHE?  WHERE

```
1    DOES SHE WORK?

2              PROSPECTIVE JUROR:  SAN FRANCISCO.

3              THE COURT:  ALL RIGHT.  NOW, HAD YOU EVER HEARD

4    ABOUT THIS CASE BEFORE YOU GOT HERE BEFORE?

5              PROSPECTIVE JUROR:  NO.

6              THE COURT:  AND DO YOU KNOW ANY OF THE PARTIES THAT

7    ARE INVOLVED IN THE CASE?

8              PROSPECTIVE JUROR:  I WENT TO HIGH SCHOOL WITH

9    SOMEBODY NAMED JOHN GORMAN, AND I DON'T KNOW IF IT'S THE SAME

10   JOHN GORMAN THAT YOU DESCRIBED.

11             THE COURT:  THIS IS A LAWYER.

12             PROSPECTIVE JUROR:  HE'S A LAWYER IN PHILADELPHIA.

13             THE COURT:  THAT'S NOT HIM.

14             PROSPECTIVE JUROR:  OKAY.

15                       (LAUGHTER.)

16             PROSPECTIVE JUROR:  OKAY.

17             THE COURT:  OKAY.

18             NOW, HAVE YOU EVER BEEN A JUROR BEFORE?

19             PROSPECTIVE JUROR:  YES.

20             THE COURT:  WHAT KIND OF A CASE AND WHEN WAS THAT?

21             PROSPECTIVE JUROR:  IT WAS A CRIMINAL CASE ABOUT

22   THREE YEARS AGO IN SAN FRANCISCO.

23             THE COURT:  DID YOU DELIBERATE AND RETURN A VERDICT?

24             PROSPECTIVE JUROR:  YES.

25             THE COURT:  WOULD THAT EXPERIENCE HAVE ANYTHING TO
```

1   DO WITH THIS CASE?

2              **PROSPECTIVE JUROR:**  NO.

3              **THE COURT:**  IN THIS CASE, YOU WOULD DECIDE THIS CASE

4   ON WHAT YOU FIND BY WAY OF THE EVIDENCE INTRODUCED IN THIS

5   COURTROOM; IS THAT CORRECT?

6              **PROSPECTIVE JUROR:**  YES.

7              **THE COURT:**  AND YOU'D LIMIT YOUR CONSIDERATION TO

8   THAT; IS THAT RIGHT?

9              **PROSPECTIVE JUROR:**  YES.

10             **THE COURT:**  YOU MUST ACCEPT THE RULES OF LAW THAT I

11  GIVE YOU FOR DELIBERATIONS IN THIS CASE.  WILL YOU DO THAT?

12             **PROSPECTIVE JUROR:**  YES.

13             **THE COURT:**  ANYBODY IN THE FAMILY, CLOSE FRIEND OR

14  RELATIVE, CONNECTED TO THE HIGH-TECH INDUSTRY?

15             **PROSPECTIVE JUROR:**  NO.

16             **THE COURT:**  ANYBODY INVOLVED IN VENTURE CAPITAL

17  FUNDING?

18             **PROSPECTIVE JUROR:**  NO.

19             **THE COURT:**  ANYBODY INVOLVED IN PATENT WORK,

20  TRADEMARK, COPYRIGHTS, THAT SORT OF THING?

21             **PROSPECTIVE JUROR:**  THE ONLY THING, I WORKED FOR

22  UCSF, AND SO I HAVE TO -- I HAD TO SIGN A -- SOME KIND OF

23  INTELLECTUAL PROPERTY --

24             **THE COURT:**  YES.

25             BUT THAT'S -- AND THAT DOESN'T INVOLVE YOU AND THE

1    SUBJECT MATTER ITSELF.

2                    **PROSPECTIVE JUROR:**  NO.

3                    **THE COURT:**  ALL RIGHT.  AND YOU HAVEN'T HAD ANY SUCH

4    INVOLVEMENT.

5                    **PROSPECTIVE JUROR:**  NO.

6                    **THE COURT:**  HAVE YOU EVER RUN A BUSINESS YOURSELF?

7                    **PROSPECTIVE JUROR:**  NO.

8                    **THE COURT:**  HAVE YOU EVER BEEN IN A LAWSUIT

9    YOURSELF?

10                   **PROSPECTIVE JUROR:**  NO.

11                   **THE COURT:**  IS THE SUBJECT MATTER OF THIS CASE AND

12   THE NATURE OF THIS CASE SUCH THAT YOU COULD SERVE IN THE MATTER

13   AND DO SO FAIRLY AND IMPARTIALLY?

14                   **PROSPECTIVE JUROR:**  YES.  I DO HAVE A SEMINAR THAT I

15   NEED TO GO TO THAT I DIRECT FOR THE PROGRAM THAT I DIRECT

16   THAT'S DECEMBER 9TH THROUGH THE 13TH.

17                   **THE COURT:**  OKAY.  SO THAT WILL MEAN YOU'RE GONE.

18                   **PROSPECTIVE JUROR:**  SO -- YES.

19                   **THE COURT:**  IT AFFECTS OTHER PEOPLE WHO WOULDN'T BE

20   ABLE TO GAIN YOUR SERVICES FROM THAT.

21                   **PROSPECTIVE JUROR:**  RIGHT.

22                   **THE COURT:**  OKAY.  MS. DURGAN, CAN BE EXCUSED.

23   PLEASE GO BACK TO THE JURY COMMISSIONER.  THANK YOU.

24                   **PROSPECTIVE JUROR:**  THANK YOU.

25                   **THE CLERK:**  JASON KING, K-I-N-G.

```
1              THE COURT:   MR. KING, COULD I ASK YOUR RESIDENCE,

2    PLEASE, SIR.

3              PROSPECTIVE JUROR:   LIVERMORE.

4              THE COURT:   AND YOUR OCCUPATION.

5              PROSPECTIVE JUROR:   I'M A NETWORK ENGINEER.

6              THE COURT:   WHO DO YOU WORK FOR?

7              PROSPECTIVE JUROR:   COMPANY CALLED LEVERED

8    (PHONETIC) INFORMATION SYSTEMS.

9              THE COURT:   HOW LONG HAVE YOU DONE THAT?

10             PROSPECTIVE JUROR:   ABOUT THREE MONTHS.

11             THE COURT:   BEFORE THAT, WHAT EMPLOYMENT DID YOU

12   HAVE?

13             PROSPECTIVE JUROR:   I WAS ALSO A NETWORK ENGINEER AT

14   LAWRENCE LIVERMORE LAB.

15             THE COURT:   HOW LONG DID YOU WORK THERE?

16             PROSPECTIVE JUROR:   ABOUT TEN YEARS.

17             THE COURT:   MAY I ASK YOUR EDUCATIONAL BACKGROUND.

18             PROSPECTIVE JUROR:   I HAVE A MASTER'S DEGREE IN

19   COMPUTER SCIENCE.

20             THE COURT:   MAY I ASK YOUR -- OR THE OCCUPATIONS OF

21   MEMBERS OF YOUR IMMEDIATE FAMILY.

22             PROSPECTIVE JUROR:   MY WIFE IS A POLITICAL

23   SCIENTIST.

24             THE COURT:   WHERE DOES SHE WORK?

25             PROSPECTIVE JUROR:   LAWRENCE LIVERMORE NATIONAL LAB.
```

```
 1                    THE COURT:  HAD YOU EVER HEARD OF THIS CASE BEFORE
 2   COMING TO COURT?
 3                    PROSPECTIVE JUROR:  NO.
 4                    THE COURT:  DO YOU KNOW ANY OF THE PARTIES INVOLVED
 5   IN THE MATTER?
 6                    PROSPECTIVE JUROR:  NO.
 7                    THE COURT:  AND YOU HESITATED A LITTLE BIT.
 8                    PROSPECTIVE JUROR:  WELL, OTHER THAN INTEL.
 9   EVERYBODY.
10                    THE COURT:  YOU'VE HEARD OF THAT.
11                    PROSPECTIVE JUROR:  YEAH.
12                    THE COURT:  THAT'S -- OKAY.
13                    HAVE YOU EVER SERVED AS A JUROR?
14                    PROSPECTIVE JUROR:  YES.
15                    THE COURT:  WHAT KIND OF A CASE AND WHEN WAS THAT?
16                    PROSPECTIVE JUROR:  IT WAS A CRIMINAL CASE,
17   SHOPLIFTING, MAYBE 15 YEARS AGO.
18                    THE COURT:  AND DID YOU DELIBERATE AND RETURN A
19   VERDICT?
20                    PROSPECTIVE JUROR:  YES.
21                    THE COURT:  WOULD THAT HAVE ANYTHING TO DO WITH THIS
22   CASE?
23                    PROSPECTIVE JUROR:  NO.
24                    THE COURT:  IN THIS CASE, YOU'D BE REQUIRED TO
25   DECIDE IT BASED UPON WHAT IS PRESENTED TO YOU HERE IN THIS
```

1    COURTROOM.

2                    YOU UNDERSTAND THAT?

3              **PROSPECTIVE JUROR:**  YES.

4              **THE COURT:**  WOULD YOU BE ABLE TO MAKE THAT

5    CONSIDERATION AND NOT CONSIDER THE MATTERS OUTSIDE THE

6    COURTROOM?

7              **PROSPECTIVE JUROR:**  YES, SIR.

8              **THE COURT:**  AND THE RULES OF LAW THAT APPLY IN THIS

9    CASE, I WOULD GIVE THEM TO YOU.  WILL YOU ACCEPT AND FOLLOW

10   THOSE?

11             **PROSPECTIVE JUROR:**  YES.

12             **THE COURT:**  ANYBODY IN THE FAMILY, CLOSE FRIENDS OR

13   RELATIVE, HAVE CONNECTION WITH HIGH-TECH INDUSTRY?

14             **PROSPECTIVE JUROR:**  NO.

15             **THE COURT:**  ANYBODY INVOLVED IN VENTURE CAPITAL

16   FUNDING?

17             **PROSPECTIVE JUROR:**  NO.

18             **THE COURT:**  ANYBODY INVOLVED IN PATENT WORK?

19             **PROSPECTIVE JUROR:**  NO.

20             **THE COURT:**  HAVE YOU EVER RUN A BUSINESS YOURSELF?

21             **PROSPECTIVE JUROR:**  NO.

22             **THE COURT:**  HAVE YOU BEEN INVOLVED IN A LAWSUIT?

23             **PROSPECTIVE JUROR:**  NO.

24             **THE COURT:**  DOES THE NATURE OF THIS CASE AFFECT YOUR

25   ABILITY TO SERVE IN ANY WAY?

1          **PROSPECTIVE JUROR:**  I WOULD SAY THE LENGTH OF TIME.

2   I HAVE A CONFERENCE NEXT WEEK AT WHICH I'M SUPPOSED TO LEAD

3   SEVERAL MEETINGS.  THERE'S REALLY NOBODY IN MY COMPANY WHO CAN

4   TAKE THAT ON.

5          **THE COURT:**  WELL, I -- THAT'S THE SORT OF THING THAT

6   GENERALLY THERE IS PEOPLE WHO CAN TAKE IT ON OR THEY CAN PASS

7   IT.  I DON'T KNOW, SEE, THAT'S -- YOU DON'T THINK SO.

8          **PROSPECTIVE JUROR:**  I DON'T THINK SO.  I ALSO THINK

9   THAT THIS HAS A FINANCIAL IMPACT.  MY JOB HAS A LOT OF

10  INCENTIVE-BASED COMPENSATION, PART OF WHICH IS THE CONFERENCE

11  NEXT WEEK.

12         **THE COURT:**  YOU THINK THAT WOULD BE ON YOUR MIND.

13         **PROSPECTIVE JUROR:**  ABSOLUTELY.

14         **THE COURT:**  OKAY.  MR. KING, YOU CAN BE EXCUSED.

15  PLEASE GO BACK TO THE JURY COMMISSIONER.  THANK YOU.

16         **THE CLERK:**  ALICIA WONG, W-O-N-G.

17         **THE COURT:**  MS. WONG, COULD I ASK YOUR RESIDENCE,

18  PLEASE.

19         **PROSPECTIVE JUROR:**  YES, ANTIOCH.

20         **THE COURT:**  MAY I ASK YOUR OCCUPATION.

21         **PROSPECTIVE JUROR:**  I'M A NEW PRODUCT INTRODUCTION

22  MANAGER FOR A HEALTH CARE COMPANY.

23         **THE COURT:**  HOW LONG HAVE YOU DONE THAT?

24         **PROSPECTIVE JUROR:**  TWELVE YEARS.

25         **THE COURT:**  AND WHAT DO YOU DO?

1          **PROSPECTIVE JUROR:**  WORK IN RESEARCH AND DEVELOPMENT

2     FOR NUCLEAR MEDICINE EQUIPMENT.

3          **THE COURT:**  COULD I ASK YOUR EDUCATIONAL BACKGROUND.

4          **PROSPECTIVE JUROR:**  I HAVE A BACHELOR OF SCIENCE IN

5     BIOLOGY.

6          **THE COURT:**  MAY I ASK THE OCCUPATIONS OF MEMBERS OF

7     YOUR IMMEDIATE FAMILY.

8          **PROSPECTIVE JUROR:**  MY HUSBAND'S A SENIOR DIRECTOR

9     OF MATERIALS FOR A CONTRACT MANUFACTURING COMPANY THAT PRODUCES

10    EQUIPMENT FOR TELECOMS.

11         **THE COURT:**  WHAT KIND OF EQUIPMENT?

12         **PROSPECTIVE JUROR:**  SERVERS AND CHASSIS.

13         **THE COURT:**  HOW LONG HAS HE DONE THAT?

14         **PROSPECTIVE JUROR:**  HE'S DONE THAT FOR, OH, FIVE

15    YEARS.

16         **THE COURT:**  HAD YOU EVER HEARD ABOUT THIS CASE

17    BEFORE YOU GOT HERE TO COURT?

18         **PROSPECTIVE JUROR:**  NO.

19         **THE COURT:**  AND DO YOU KNOW ANY OF THE PARTIES

20    INVOLVED IN THIS CASE?

21         **PROSPECTIVE JUROR:**  NO.

22         **THE COURT:**  HAVE YOU BEEN A JUROR YOURSELF?

23         **PROSPECTIVE JUROR:**  NO.

24         **THE COURT:**  IN DECIDING THE FACTS OF THIS CASE,

25    WHICH WOULD BE YOUR RESPONSIBILITY, YOU MUST LIMIT YOUR

1   CONSIDERATIONS TO THE MATERIAL THAT'S INTRODUCED IN THIS

2   COURTROOM.

3           YOU UNDERSTAND THAT.

4           **PROSPECTIVE JUROR:**  YES.

5           **THE COURT:**  WOULD YOU BE ABLE TO DO THAT?

6           **PROSPECTIVE JUROR:**  YES.

7           **THE COURT:**  AND YOU MUST FOLLOW THE RULES OF LAW

8   THAT I GIVE YOU FOR YOUR DELIBERATIONS.

9           COULD YOU DO THAT ALSO?

10          **PROSPECTIVE JUROR:**  YES.

11          **THE COURT:**  ANYBODY IN YOUR FAMILY, CLOSE FRIEND OR

12  RELATIVE, CONNECTED WITH HIGH TECH?

13          **PROSPECTIVE JUROR:**  OTHER THAN MY HUSBAND AND

14  MYSELF, NO.

15          **THE COURT:**  OKAY.

16          ANYBODY INVOLVED IN CAPITAL -- IN VENTURE CAPITAL

17  FUNDING?

18          **PROSPECTIVE JUROR:**  NO.

19          **THE COURT:**  ANYBODY INVOLVED IN PATENTS, TRADEMARK,

20  COPYRIGHTS?

21          **PROSPECTIVE JUROR:**  I HAVE MY NAME ON A PATENT

22  THAT'S SUBMITTED.  BUT OTHER THAN THAT, NO.

23          **THE COURT:**  YOUR NAME IS ON AS A -- WHAT IS IT --

24  COINVENTOR OR SOMETHING?

25          **PROSPECTIVE JUROR:**  YES.  YEAH.

1          **THE COURT:**  IS THAT SOMETHING THAT'S PENDING?

2          **PROSPECTIVE JUROR:**  YES.

3          **THE COURT:**  SO THAT'S PENDING BEFORE THE PATENT

4    OFFICE NOW?

5          **PROSPECTIVE JUROR:**  YES.

6          **THE COURT:**  WHAT'S THE SUBJECT MATTER?

7          **PROSPECTIVE JUROR:**  IT HAS TO DO WITH ALGORITHM --

8    RECONSTRUCTION ALGORITHMS FOR NUCLEAR MEDICINE.

9          **THE COURT:**  AND WHO ARE THE OTHER PERSONS INVOLVED?

10         **PROSPECTIVE JUROR:**  ANGELA DE SILVA.  JING KUNG

11   (PHONETIC) -- I'M SORRY.  JIN HAN YEE, STEVEN SONG.  SO

12   OTHER -- OTHER MEMBERS.

13         **THE COURT:**  THEY'RE THE OTHER PERSONS WHO ARE NAMED

14   ON THE PATENT.

15         **PROSPECTIVE JUROR:**  YES.

16         **THE COURT:**  ALL RIGHT.

17         IS IT SOMETHING THAT HAS TO DO WITH THE COMPANY YOU

18   WORK FOR?

19         **PROSPECTIVE JUROR:**  YES.

20         **THE COURT:**  ALL RIGHT.  SO IS IT THEIR PATENT?

21         **PROSPECTIVE JUROR:**  YES.

22         **THE COURT:**  BEEN INVOLVED IN ANY OTHER KIND OF WORK

23   LIKE THAT?

24         **PROSPECTIVE JUROR:**  NO.

25         **THE COURT:**  HOW LONG DID YOU WORK ON THAT?

1          **PROSPECTIVE JUROR:**  IT'S BEEN PROBABLY TWO YEARS.

2          **THE COURT:**  OKAY.

3               IS THAT THE ONLY ONE WHERE YOU'VE HAD A CONNECTION

4     WITH A PATENT?

5          **PROSPECTIVE JUROR:**  YES.

6          **THE COURT:**  WOULD THAT HAVE ANYTHING TO DO WITH THIS

7     CASE?

8          **PROSPECTIVE JUROR:**  NO.

9          **THE COURT:**  YOU EVER RUN A BUSINESS YOURSELF?

10         **PROSPECTIVE JUROR:**  NO.

11         **THE COURT:**  BY YOURSELF?

12              AND HAVE YOU EVER BEEN INVOLVED IN A LAWSUIT

13    YOURSELF?

14         **PROSPECTIVE JUROR:**  NO.

15         **THE COURT:**  IS THE NATURE OF THIS CASE THAT'S

16    INVOLVED THAT I DESCRIBED TO YOU, DOES THAT AFFECT YOUR ABILITY

17    TO SERVE?

18         **PROSPECTIVE JUROR:**  NO.

19         **THE COURT:**  IF YOU SERVE IN THIS MATTER, COULD YOU

20    GIVE US YOUR COMMITMENT THAT YOU'D MAKE NO DECISION WHICH YOU

21    BASE UPON RACE OR ETHNIC ORIGIN?

22         **PROSPECTIVE JUROR:**  YES.

23         **THE COURT:**  AS YOU REFLECT UPON IT, COULD YOU SERVE

24    IN THE MATTER, BE FAIR AND IMPARTIAL IN YOUR SERVICE?

25         **PROSPECTIVE JUROR:**  YES.

```
 1              THE COURT:  THANK YOU.

 2              COULD YOU --

 3                  (OFF-THE-RECORD DISCUSSION.)

 4                  (PAUSE IN THE PROCEEDINGS.)

 5              THE COURT:  MS. KAUR, MAY I ASK YOUR RESIDENCE,

 6     PLEASE.

 7              PROSPECTIVE JUROR:  UNION CITY.

 8              THE COURT:  AND COULD I ASK YOUR OCCUPATION.

 9              PROSPECTIVE JUROR:  MEDICAL ASSISTANT AT A DOCTOR'S

10     OFFICE.

11              THE COURT:  AND WHAT IS THE MEDICAL PRACTICE?  WHAT

12     KIND OF PRACTICE?

13              PROSPECTIVE JUROR:  IT'S A PRIVATE PRACTICE, AND

14     THERE'S, LIKE, FIVE DOCTORS THAT WORKS IN THERE.

15              THE COURT:  AND WHAT'S THE NATURE OF THE PRACTICE?

16     WHAT KIND OF MEDICINE?

17              PROSPECTIVE JUROR:  OH, ONE DOCTOR, THE MAIN DOCTOR,

18     HE'S A GI SPECIALIST.  AND THE REST ARE JUST INTERNAL MEDICINE.

19              THE COURT:  ALL RIGHT.

20              MAY I ASK YOUR EDUCATIONAL BACKGROUND.

21              PROSPECTIVE JUROR:  ASSOCIATE IN ART DEGREE IN

22     MEDICAL ASSISTING.

23              THE COURT:  COULD I ASK THE OCCUPATION OF MEMBERS OF

24     YOUR IMMEDIATE FAMILY.

25              PROSPECTIVE JUROR:  MY MOM IS A HOUSEWIFE.  MY DAD
```

1    DOES SOME, LIKE, HANDYWORK, LIKE FIXING HOUSES AND STUFF.  MY

2    OLDER SISTER IS A PART-TIME -- SHE WORKS AT KAISER, AND MY

3    YOUNGER SISTER, SHE'S A FULL-TIME STUDENT AT A UNIVERSITY.

4            **THE COURT:**  ALL RIGHT.  NOW, HAD YOU HEARD ABOUT

5    THIS CASE BEFORE YOU GOT HERE TO COURT?

6            **PROSPECTIVE JUROR:**  NO.

7            **THE COURT:**  DO YOU KNOW ANY OF THE PARTIES INVOLVED

8    IN THE CASE?

9            **PROSPECTIVE JUROR:**  NO.

10           **THE COURT:**  HAVE YOU BEEN A JUROR BEFORE?

11           **PROSPECTIVE JUROR:**  NO.

12           **THE COURT:**  ALL RIGHT.  NOW, YOU'VE HEARD US

13   DESCRIBE THIS AND THAT YOU DON'T KNOW ANYTHING ABOUT IT NOW,

14   BUT YOU WILL BE HEARING EVIDENCE AND YOU'LL BE LISTENING TO

15   THAT ALONG WITH YOUR FELLOW JURORS, AND YOU MUST DECIDE THE

16   FACTS IN THIS CASE FROM THAT AND THAT ALONE.

17           YOU UNDERSTAND THAT?

18           **PROSPECTIVE JUROR:**  YEAH.

19           **THE COURT:**  AND YOU MUST LIMIT YOUR CONSIDERATION TO

20   THAT.  WOULD YOU DO THAT?

21           **PROSPECTIVE JUROR:**  YEAH.

22           **THE COURT:**  AND THERE ARE RULES OF LAW THAT I WOULD

23   GIVE YOU FOR YOUR DELIBERATIONS.  WILL YOU ACCEPT AND FOLLOW

24   THOSE RULES?

25           **PROSPECTIVE JUROR:**  YEAH.

1          **THE COURT:**  ANYBODY IN THE FAMILY OR CLOSE FRIEND OR

2     RELATIVE THAT -- CONNECTED WITH HIGH-TECH INDUSTRY?

3          **PROSPECTIVE JUROR:**  NO.

4          **THE COURT:**  ANYBODY INVOLVED IN CAPITAL -- VENTURE

5     CAPITAL FUNDING?

6          **PROSPECTIVE JUROR:**  NO.

7          **THE COURT:**  ANYBODY INVOLVED IN PATENTS OR

8     TRADEMARKS OR COPYRIGHTS?

9          **PROSPECTIVE JUROR:**  NO.

10          **THE COURT:**  ANY OF THAT?

11          HAVE YOU EVER BEEN INVOLVED IN RUNNING A BUSINESS OF

12     YOUR OWN?

13          **PROSPECTIVE JUROR:**  NO.

14          **THE COURT:**  YOU EVER BEEN INVOLVED IN A LAWSUIT OF

15     YOUR OWN?

16          **PROSPECTIVE JUROR:**  NO.

17          **THE COURT:**  WOULD YOU BE ABLE TO CONSIDER ALL THE

18     ISSUES IN THIS CASE REGARDLESS OF THE NATURE OF THE CASE?  I

19     MEAN, IT DOESN'T MAKE ANY DIFFERENCE TO YOU.

20          **PROSPECTIVE JUROR:**  YEAH.

21          **THE COURT:**  ALL RIGHT.

22          IF YOU SERVE IN THE MATTER, WILL YOU GIVE US YOUR

23     COMMITMENT THAT YOU'LL MAKE NO DECISION WHICH YOU BASE UPON

24     RACE OR ETHNIC ORIGIN?

25          **PROSPECTIVE JUROR:**  YES.

 1          **THE COURT:**  COULD YOU SERVE AND BE FAIR AND

 2   IMPARTIAL?

 3          **PROSPECTIVE JUROR:**  WELL, THE ONLY THING IS MY

 4   FAMILY DEPENDS ON MY PAY CHECKS SO I CAN'T MISS FOUR TO FIVE

 5   WEEKS OF WORK.

 6          **THE COURT:**  THAT'S TOO MUCH.

 7          OKAY.  MS. KAUR, YOU COULD BE EXCUSED.

 8          **PROSPECTIVE JUROR:**  THANK YOU.

 9          **THE COURT:**  PLEASE GO BACK TO THE JURY COMMISSIONER.

10   THANK YOU.

11          **THE CLERK:**  DAISY CHAK, C-H-A-K.

12              (PAUSE IN THE PROCEEDINGS.)

13          **THE COURT:**  MS. CHAK, COULD I ASK YOUR RESIDENCE,

14   PLEASE.

15          **PROSPECTIVE JUROR:**  SAN FRANCISCO.

16          **THE COURT:**  AND MAY I ASK YOUR OCCUPATION.

17          **PROSPECTIVE JUROR:**  I'M ADMINISTRATIVE ASSISTANT.

18          **THE COURT:**  WHO DO YOU WORK FOR?

19          **PROSPECTIVE JUROR:**  WELLS FARGO.

20          **THE COURT:**  HOW LONG HAVE YOU DONE THAT?

21          **PROSPECTIVE JUROR:**  SEVENTEEN YEARS.

22          **THE COURT:**  AND MAY I ASK YOUR EDUCATIONAL

23   BACKGROUND?

24          **PROSPECTIVE JUROR:**  BACHELOR.

25          **THE COURT:**  COULD I ASK THE OCCUPATION OF MEMBERS OF

1    YOUR IMMEDIATE FAMILY?

2              **PROSPECTIVE JUROR:**  MY PARENTS ARE RETIRED.  MY

3    OLDEST SISTER IS ACCOUNTING MANAGER.  AND MY OLDER SISTER WORKS

4    FOR THE SAN FRANCISCO SHERIFF DEPARTMENT.  SHE'S A OFFICE

5    CLERK.  AND YOUNGER BROTHER IS A FINANCIAL ANALYST.

6              **THE COURT:**  WHO DOES HE WORK FOR?

7              **PROSPECTIVE JUROR:**  FORGOT.  MELLON BANK.

8              **THE COURT:**  OKAY.  HAD YOU EVER HEARD ABOUT THIS

9    CASE BEFORE YOU CAME HERE TO COURT?

10             **PROSPECTIVE JUROR:**  NO.

11             **THE COURT:**  DO YOU KNOW ANY OF THE PARTIES INVOLVED

12   IN THE CASE?

13             **PROSPECTIVE JUROR:**  NO.

14             **THE COURT:**  HAVE YOU BEEN A JUROR?

15             **PROSPECTIVE JUROR:**  YES.

16             **THE COURT:**  WHAT KIND OF CASE, AND WHEN WAS THAT IT?

17             **PROSPECTIVE JUROR:**  BOTH CRIMINAL AND A CIVIL CASE.

18             **THE COURT:**  AND DID YOU DELIBERATE AND RETURN

19   VERDICTS IN THOSE CASES?

20             **PROSPECTIVE JUROR:**  YES.

21             **THE COURT:**  WOULD THOSE CASES HAVE ANYTHING TO DO

22   WITH THIS CASE?

23             **PROSPECTIVE JUROR:**  NO.

24             **THE COURT:**  I MEAN, THAT'S TOTALLY SEPARATE; IS THAT

25   CORRECT?

1          **PROSPECTIVE JUROR:**  YEAH.

2          **THE COURT:**  IN THIS CASE, YOU WOULD HAVE TO DECIDE

3   IT ON WHAT YOU HEAR IN THE COURT.  YOU UNDERSTAND?

4          **PROSPECTIVE JUROR:**  YES.

5          **THE COURT:**  WOULD YOU LIMIT YOUR CONSIDERATION TO

6   WHAT YOU HEARD IN THIS COURTROOM AND THAT ALONE?

7          **PROSPECTIVE JUROR:**  YES.

8          **THE COURT:**  AND WOULD YOU ACCEPT AND FOLLOW THE

9   RULES OF LAW THAT I GIVE YOU FOR YOUR DELIBERATIONS?

10         **PROSPECTIVE JUROR:**  YES.

11         **THE COURT:**  ANYBODY IN THE CLOSE -- WHO IS A CLOSE

12  FRIEND OR RELATIVE INVOLVED IN THE HIGH-TECH INDUSTRY?

13         **PROSPECTIVE JUROR:**  NO.

14         **THE COURT:**  ANYBODY INVOLVED IN VENTURE CAPITAL

15  FUNDING AT ALL?

16         **PROSPECTIVE JUROR:**  NO.

17         **THE COURT:**  ANYBODY INVOLVED IN PATENTS, TRADEMARKS,

18  COPYRIGHTS, ANYTHING OF THAT NATURE?

19         **PROSPECTIVE JUROR:**  NO.

20         **THE COURT:**  HAVE YOU EVER BEEN INVOLVED IN RUNNING A

21  BUSINESS OF YOUR OWN?

22         **PROSPECTIVE JUROR:**  NO.

23         **THE COURT:**  AND HAVE YOU EVER BEEN INVOLVED IN A

24  LAWSUIT?

25         **PROSPECTIVE JUROR:**  NO.

```
 1              THE COURT:  COULD YOU HEAR THIS CASE ON ALL THE

 2   ISSUES INVOLVED IN THIS CASE AND DOESN'T BOTHER YOU THE NATURE

 3   OF THE CASE?  THERE'S NO PROBLEM TO YOU?

 4              PROSPECTIVE JUROR:  NO.

 5              THE COURT:  COULD YOU GIVE US YOUR COMMITMENT THAT

 6   IF YOU SERVE IN THE MATTER, YOU WILL MAKE NO DECISION WHICH YOU

 7   BASE UPON RACE OR ETHNIC ORIGIN?

 8              PROSPECTIVE JUROR:  YES.

 9              THE COURT:  COULD YOU SERVE IN THE MATTER AND BE A

10   FAIR AND IMPARTIAL TRIAL JUROR?

11              PROSPECTIVE JUROR:  UM-HMM.  YES.

12              THE COURT:  THANK YOU.

13              MS. BALASBAS?

14              PROSPECTIVE JUROR:  YES.

15              THE COURT:  MAY I ASK YOUR RESIDENCE, PLEASE.

16              PROSPECTIVE JUROR:  I'M FROM FREMONT, CALIFORNIA.

17              THE COURT:  AND MAY I ASK YOUR OCCUPATION.

18              PROSPECTIVE JUROR:  I WORK IN A MANUFACTURING

19   COMPANY IN THE ACCOUNTING DEPARTMENT.

20              THE COURT:  AND WHAT COMPANY IS IT?

21              PROSPECTIVE JUROR:  BELANG (PHONETIC) GROUP.

22              THE COURT:  AND HOW LONG HAVE YOU WORKED THERE?

23              PROSPECTIVE JUROR:  SEVEN YEARS.

24              THE COURT:  DID YOU HAVE EMPLOYMENT BEFORE THAT?

25              PROSPECTIVE JUROR:  YES.
```

1          **THE COURT:**  WHAT DID YOU DO?

2          **PROSPECTIVE JUROR:**  MOSTLY MY WORKING EXPERIENCE

3   HERE IN THE UNITED STATES IS WITH THE AIRLINE INDUSTRY,

4   PHILIPPINE AIRLINES.

5          **THE COURT:**  COULD I ASK YOUR EDUCATIONAL BACKGROUND.

6          **PROSPECTIVE JUROR:**  BACHELOR'S IN ACCOUNTING.

7          **THE COURT:**  AND MAY I ASK THE OCCUPATION OF MEMBERS

8   OF YOUR IMMEDIATE FAMILY.

9          **PROSPECTIVE JUROR:**  MY HUSBAND USED TO WORK WITH

10   ALOHA, WHICH WAS -- FILED BANKRUPTCY WAY BACK, APRIL OF THIS

11   YEAR, AND HE'S UNEMPLOYED RIGHT NOW.

12          **THE COURT:**  AND WHAT WORK DOES HE DO?

13          **PROSPECTIVE JUROR:**  HE WORKS AS THE MANAGER FOR THE

14   AIRPORT IN OAKLAND.

15          **THE COURT:**  OKAY.

16          **PROSPECTIVE JUROR:**  HERE IN OAKLAND.

17          **THE COURT:**  ALL RIGHT.  HAD YOU HEARD ABOUT THIS

18   CASE BEFORE COMING TO COURT?

19          **PROSPECTIVE JUROR:**  NO.

20          **THE COURT:**  DO YOU KNOW ANY OF THE PARTIES INVOLVED

21   IN THE MATTER?

22          **PROSPECTIVE JUROR:**  NO, SIR.

23          **THE COURT:**  HAVE YOU EVER BEEN A JUROR YOURSELF?

24          **PROSPECTIVE JUROR:**  NO.

25          **THE COURT:**  IF YOU SERVE HERE AND YOU HAVE TO DECIDE

1   THE FACTS, YOU MUST LIMIT YOUR CONSIDERATION TO WHAT IS

2   PRODUCED IN THIS COURTROOM ALONG WITH THE OTHER JURORS.  YOU

3   UNDERSTAND THAT?

4              **PROSPECTIVE JUROR:**  YES, SIR.

5              **THE COURT:**  AND YOU MAY NOT USE ANYTHING THAT COMES

6   TO YOU BY WAY OF INFORMATION YOU EXPERIENCE FROM OUTSIDE THE

7   COURT.  WOULD YOU DO THAT?

8              **PROSPECTIVE JUROR:**  YES.

9              **THE COURT:**  AND YOU MUST FOLLOW THE RULES OF LAW

10  THAT I GIVE YOU FOR YOUR DELIBERATIONS.  WOULD YOU DO THAT?

11             **PROSPECTIVE JUROR:**  YES, SIR.

12             **THE COURT:**  IS THERE ANYONE IN YOUR FAMILY OR CLOSE

13  FRIEND OR RELATIVE WHO HAS ANYTHING TO DO WITH THE HIGH-TECH

14  INDUSTRY?

15             **PROSPECTIVE JUROR:**  NO.

16             **THE COURT:**  ANYBODY WHO HAS ANYTHING TO DO WITH

17  VENTURE CAPITAL FUNDING?

18             **PROSPECTIVE JUROR:**  NOT THAT I KNOW.

19             **THE COURT:**  AND ANYBODY HAD ANYTHING TO DO WITH THE

20  WHOLE WORLD OF PATENTS, THAT SORT OF THING?

21             **PROSPECTIVE JUROR:**  NO.

22             **THE COURT:**  HAVE YOU EVER RUN A BUSINESS YOURSELF?

23             **PROSPECTIVE JUROR:**  NO, SIR.

24             **THE COURT:**  AND HAVE YOU BEEN INVOLVED IN A LAWSUIT

25  YOURSELF?

```
1                    PROSPECTIVE JUROR:  NO.

2                    THE COURT:  DOES THE NATURE OF THIS CASE BOTHER YOU

3    IN ANY WAY IN TERMS OF YOUR ABILITY TO SERVE?

4                    PROSPECTIVE JUROR:  AS MUCH AS I WANT TO SERVE,

5    RIGHT NOW, I DON'T THINK I CAN, BECAUSE LIKE WHAT I MENTION A

6    WHILE AGO, MY HUSBAND JUST GOT LAID OFF, AND I HAVE A FIRST

7    YEAR HIGH SCHOOL AND ONE COLLEGE STUDENT THAT I'M TRYING TO

8    SUPPORT.

9                    THE COURT:  AND YOU'RE THE ONE WHO DOES IT?

10                   PROSPECTIVE JUROR:  YES.

11                   THE COURT:  AND YOU NEED TO KEEP WORKING.

12                   PROSPECTIVE JUROR:  YES, SIR.

13                   THE COURT:  MS. BALASBAS, YOU CAN BE EXCUSED.

14   PLEASE GO BACK TO THE JURY COMMISSIONER IF YOU WOULD.  THANK

15   YOU.

16                   PROSPECTIVE JUROR:  THANK YOU.

17                   THE CLERK:  PHYLLIS FETTERS, F-E-T-T-E-R-S.

18                   THE COURT:  MS. FETTERS, COULD I ASK YOUR RESIDENCE,

19   PLEASE.

20                   PROSPECTIVE JUROR:  SAN FRANCISCO.

21                   THE COURT:  AND MAY I ASK YOUR OCCUPATION.

22                   PROSPECTIVE JUROR:  I'M RETIRED.

23                   THE COURT:  WHAT DID YOU DO?

24                   PROSPECTIVE JUROR:  I WORKED FOR A LEGAL FIRM AS A

25   LEGAL ASSISTANT.
```

1               **THE COURT:**  WHO DID YOU WORK FOR?

2               **PROSPECTIVE JUROR:**  SEDGWICK DETRICK MORAN & ARNOLD.

3               **THE COURT:**  HOW LONG DID YOU DO THAT?

4               **PROSPECTIVE JUROR:**  TWENTY-TWO AND A HALF YEARS.

5               **THE COURT:**  MAY I ASK YOUR EDUCATIONAL BACKGROUND.

6               **PROSPECTIVE JUROR:**  JD.

7               **THE COURT:**  AND DID YOU EVER PRACTICE YOURSELF?

8               **PROSPECTIVE JUROR:**  NO.  WELL, I APPEARED AT COURT A

9        COUPLE OF TIMES FOR SEDGWICK, BUT NOT --

10              **THE COURT:**  BASICALLY.

11              **PROSPECTIVE JUROR:**  -- NOT ANYTHING -- YEAH.

12              **THE COURT:**  ALL RIGHT.  WHAT WAS THE AREA OF

13       PRACTICE THAT YOU WERE MOST ASSOCIATED WITH?

14              **PROSPECTIVE JUROR:**  TORT LAW.

15              **THE COURT:**  TORT LAW?

16              **PROSPECTIVE JUROR:**  ALTHOUGH, YOU KNOW, YOU KIND

17       OF -- MOST OF IT WAS TORT.  I DID A LITTLE IN A COUPLE OTHER

18       AREAS BUT NOT -- NOT ANYTHING BASICALLY TO DO WITH CONTRACT LAW

19       OR ANYTHING LIKE THAT.

20              **THE COURT:**  ALL RIGHT.

21              NOW, DID YOU KNOW ANY OF THE LAWYERS OR THE PARTIES

22       THAT HAVE BEEN INVOLVED HERE?

23              **PROSPECTIVE JUROR:**  NO.  BUT I'VE BEEN AWAY FOR TEN

24       YEARS NOW.

25              **THE COURT:**  HAVE YOU --

1              **PROSPECTIVE JUROR:**  MORE THAN TEN.

2              **THE COURT:**  ALL RIGHT.

3              MAY I ASK THE OCCUPATION OF MEMBERS OF YOUR

4       IMMEDIATE FAMILY.

5              **PROSPECTIVE JUROR:**  MY HUSBAND IS RETIRED.  HE WAS A

6       PHYSICIAN WORKING WITH -- IN NUCLEAR MEDICINE.

7              **THE COURT:**  OKAY.

8              HAVE YOU EVER BEEN A TRIAL JUROR?

9              **PROSPECTIVE JUROR:**  YES.

10             **THE COURT:**  WHAT KIND OF A CASE AND WHEN DID YOU DO

11      THAT?

12             **PROSPECTIVE JUROR:**  OH, IT MUST HAVE BEEN

13      20-SOME-ODD YEARS AGO.  I SERVED ON ONE CRIMINAL JURY.  WE CAME

14      TO A CONCLUSION ON TWO OF THE THREE COUNTS.

15             **THE COURT:**  OKAY.

16             THAT EXPERIENCE WOULD HAVE NOTHING TO DO WITH THIS

17      CASE.

18             **PROSPECTIVE JUROR:**  NO.

19             **THE COURT:**  OKAY.  AND THIS IS ONE OF THESE -- THESE

20      THINGS WHERE YOU SAY TO PEOPLE INVOLVED IN THE LAW, YOU HAVE TO

21      FOLLOW MY INSTRUCTIONS WHETHER YOU AGREE WITH THEM OR NOT.  YOU

22      UNDERSTAND THAT.

23             **PROSPECTIVE JUROR:**  YES.

24             **THE COURT:**  OKAY.  YOU WOULD DO THAT.

25             **PROSPECTIVE JUROR:**  YES.

```
 1                    THE COURT:  ALL RIGHT.

 2                    ANYBODY IN THE -- CLOSE FRIEND OR RELATIVE INVOLVED

 3    IN A HIGH-TECH INDUSTRY?

 4                    PROSPECTIVE JUROR:  NO.

 5                    THE COURT:  ANYBODY INVOLVED WITH VENTURE CAPITAL

 6    FUNDING?

 7                    PROSPECTIVE JUROR:  NO.

 8                    THE COURT:  ANYBODY INVOLVED WITH PATENTS?

 9                    PROSPECTIVE JUROR:  NO.

10                    THE COURT:  DID YOU EVER DO ANY WORK IN THAT AREA?

11                    PROSPECTIVE JUROR:  I HELPED OUT ON A COUPLE OF

12    CASES, BUT THAT WAS MANY YEARS AGO BECAUSE SEDGWICK MOVED AWAY

13    FROM SOME AREAS AND THAT WAS ONE OF THE ONES -- EXCUSE ME --

14    THAT THEY CUT BACK ON.

15                    THE COURT:  OKAY.

16                    ALL RIGHT.

17                    HAVE YOU EVER BEEN INVOLVED IN RUNNING A BUSINESS

18    YOURSELF?

19                    PROSPECTIVE JUROR:  I HAD A BUSINESS, BUT IT -- IT

20    WENT KAPLUNK (PHONETIC) BEFORE IT GOT ANYWHERE, SO I REALLY

21    CAN'T SAY I --

22                    THE COURT:  WHAT KIND OF AREA WAS INVOLVED?

23                    PROSPECTIVE JUROR:  CREATING -- ARTISTIC STUFF.

24                    THE COURT:  OKAY.  EVER BEEN INVOLVED IN A LAWSUIT

25    PERSONALLY?
```

1          PROSPECTIVE JUROR:  NO.

2          THE COURT:  DOES THE NATURE OF THIS CASE AFFECT YOUR

3     ABILITY TO SERVE IN ANY WAY?

4          PROSPECTIVE JUROR:  NO.

5          THE COURT:  IF YOU SERVED AS A JUROR, WILL YOU GIVE

6     US YOUR COMMITMENT THAT YOU'D MAKE NO DECISION WHICH YOU BASE

7     UPON RACE OR ETHNIC ORIGIN?

8          PROSPECTIVE JUROR:  YES.

9          THE COURT:  COULD YOU SERVE IN THE MATTER, BE FAIR

10    AND IMPARTIAL TO ALL PARTIES INVOLVED?

11         PROSPECTIVE JUROR:  YES.

12         THE COURT:  THANK YOU.

13         MR. FABIAN.

14         PROSPECTIVE JUROR:  YES, SIR.

15         THE COURT:  COULD I ASK YOUR RESIDENCE, PLEASE.

16         PROSPECTIVE JUROR:  UNION CITY.

17         THE COURT:  MAY I ASK YOUR OCCUPATION?

18         PROSPECTIVE JUROR:  FORKLIFT DRIVER.

19         THE COURT:  HOW LONG HAVE YOU DONE THAT?

20         PROSPECTIVE JUROR:  THIRTY YEARS.

21         THE COURT:  COULD I ASK YOUR EDUCATIONAL BACKGROUND?

22         PROSPECTIVE JUROR:  SOME HIGH SCHOOL.

23         THE COURT:  MAY I ASK THE OCCUPATION OF THE MEMBERS

24    OF YOUR IMMEDIATE FAMILY.

25         PROSPECTIVE JUROR:  MY TWO KIDS, FULL-TIME STUDENT,

1    AND MY WIFE IS UNEMPLOYED.

2              **THE COURT:** HAS SHE HAD WORK BEFORE?

3              **PROSPECTIVE JUROR:** FIVE YEARS AGO.

4              **THE COURT:** OKAY.   WHAT DID SHE DO?

5              **PROSPECTIVE JUROR:** NURSING ASSISTANT.

6              **THE COURT:** WHEN YOU CAME TO COURT HERE TODAY, HAD

7    YOU HEARD ANYTHING ABOUT THIS CASE?   DID YOU KNOW ABOUT IT WHEN

8    YOU GOT HERE?

9              **PROSPECTIVE JUROR:** NO.

10              **THE COURT:** AND DO YOU KNOW ANY OF THE PARTIES

11   INVOLVED IN THE CASE?

12              **PROSPECTIVE JUROR:** NO.

13              **THE COURT:** HAVE YOU EVER BEEN A JUROR BEFORE?

14              **PROSPECTIVE JUROR:** NO.

15              **THE COURT:** IF YOU SERVED HERE AS A JUROR, YOU MUST

16   DECIDE THE FACTS, BUT YOU CAN ONLY DO THAT ON THE BASIS OF

17   WHAT'S INTRODUCED IN THE COURTROOM.   YOU UNDERSTAND?

18              **PROSPECTIVE JUROR:** YES.

19              **THE COURT:** WOULD YOU DO THAT?

20              **PROSPECTIVE JUROR:** YES.

21              **THE COURT:** AND THERE ARE RULES OF LAW THAT YOU MUST

22   APPLY, AND I'LL GIVE THEM TO YOU, AND YOU MUST ACCEPT THEM.

23              WILL YOU DO THAT?

24              **PROSPECTIVE JUROR:** YES, SIR.

25              **THE COURT:** ANYBODY IN THE FAMILY, CLOSE FRIEND OR

```
 1   RELATIVE, INVOLVED IN THE HIGH-TECH INDUSTRY?

 2                  PROSPECTIVE JUROR:  NO.

 3                  THE COURT:  ANYBODY INVOLVED IN CAPITAL FUNDING?

 4                  PROSPECTIVE JUROR:  NO.

 5                  THE COURT:  ANYBODY INVOLVED IN PATENT WORK?

 6                  PROSPECTIVE JUROR:  NO.

 7                  THE COURT:  HAVE YOU RUN A BUSINESS YOURSELF AT ALL?

 8                  PROSPECTIVE JUROR:  NO.

 9                  THE COURT:  HAVE YOU EVER BEEN INVOLVED IN A LAWSUIT

10   YOURSELF?

11                  PROSPECTIVE JUROR:  NO.

12                  THE COURT:  IF YOU SERVED IN THIS MATTER, WOULD YOU

13   GIVE US YOUR COMMITMENT THAT YOU'D MAKE NO DECISION WHICH YOU

14   BASE UPON RACE OR ETHNIC ORIGIN?

15                  PROSPECTIVE JUROR:  YES, YOUR HONOR.

16                  THE COURT:  YOU WOULD NOT DO THAT; IS THAT RIGHT?

17                  PROSPECTIVE JUROR:  I MEAN -- SAY, I -- I'M ASKING

18   FOR A -- WHAT YOU CALL THAT -- EXCUSE FOR THIS HEARING.

19   BECAUSE I --

20                  THE COURT:  WELL -- YOU HAVE TROUBLE HEARING?

21                  PROSPECTIVE JUROR:  YEAH, A LITTLE BIT.

22                  THE COURT:  OKAY.  AND YOU THINK THAT MIGHT AFFECT

23   YOUR ABILITY TO SERVE HERE?

24                  PROSPECTIVE JUROR:  YEAH.

25                  THE COURT:  OH, ALL RIGHT.
```

```
 1              MR. FABIAN, YOU COULD BE EXCUSED.  PLEASE GO BACK TO

 2    THE JURY COMMISSIONER IF YOU WOULD.  THANK YOU.

 3              THE CLERK:  CAROLYN JAYNE, J-A-Y-N-E.

 4              THE COURT:  MS. JAYNE, COULD I ASK YOUR RESIDENCE,

 5    PLEASE.

 6              PROSPECTIVE JUROR:  SAN FRANCISCO.

 7              THE COURT:  AND MAY I ASK YOUR OCCUPATION.

 8              PROSPECTIVE JUROR:  I'M A MUSIC TEACHER.

 9              THE COURT:  AND DO YOU WORK FOR ANYBODY SPECIFICALLY

10    OR YOURSELF?

11              PROSPECTIVE JUROR:  MYSELF.

12              THE COURT:  HOW LONG HAVE YOU DONE THAT?

13              PROSPECTIVE JUROR:  FOR 40 YEARS.

14              THE COURT:  OKAY.  WHAT INSTRUMENT'S INVOLVED?

15              PROSPECTIVE JUROR:  MY VOICE AND MY GUITAR.

16              THE COURT:  OKAY.  MAY I ASK YOUR EDUCATIONAL

17    BACKGROUND?

18              PROSPECTIVE JUROR:  I HAVE A MASTER'S DEGREE IN

19    EDUCATION.  I ALSO HAVE HERE --

20              THE COURT:  PROBLEM.

21              PROSPECTIVE JUROR:  I HAVE EVIDENCE OF MY FLIGHT TO

22    COSTA RICA ON SUNDAY.

23                        (LAUGHTER.)

24              THE COURT:  YOU WERE READY.

25              AND YOU COULD BE EXCUSED.  THANK YOU.
```

```
1                    (OFF-THE-RECORD DISCUSSION.)

2              PROSPECTIVE JUROR:   COULD I BE EXCUSED?   I HAVE A

3    LITTLE -- A LITTLE BIT OF PANIC ATTACK.

4              THE COURT:   WHY DON'T YOU -- OKAY.   ALL RIGHT.

5    LET'S -- LET'S TAKE A RECESS NOW.   LET'S TAKE IT -- NO MORE

6    THAN TEN MINUTES, PLEASE.   AND ALL OF YOU COME BACK IN THE

7    PLACES WHERE YOU ARE IN THE JURY BOX, AND THE REST OF YOU COME

8    BACK INTO THE COURTROOM, PLEASE.

9                    (RECESS TAKEN AT 11:23 A.M.)

10                   (PROCEEDINGS RESUMED AT 11:37 A.M.)

11             (THE FOLLOWING PROCEEDINGS WERE HEARD IN THE

12   PRESENCE OF THE JURY:)

13             THE CLERK:   REMAIN SEATED.   COURT IS IN SESSION.

14   COME TO ORDER.

15             THE COURT:   MS. ALBAYEROS, WE'RE GOING TO EXCUSE YOU

16   NOW.   OKAY.

17             PROSPECTIVE JUROR:   THANK YOU.

18             THE COURT:   YOU GO BACK.   THAT'S FINE.   I

19   UNDERSTAND.   YOU GOING TO BACK TO THE JURY COMMISSIONER IF YOU

20   WOULD, PLEASE, AND JUST REPORT BACK THERE.

21             PROSPECTIVE JUROR:   THANK YOU.

22             THE COURT:   THANK YOU.

23             THE CLERK:   LUCY RAMIREZ, R-A-M-I-R-E-Z.

24             THE COURT:   AND WOULD YOU SIT IN THE BACK -- IN THE

25   BACK ROW, YEAH, PLEASE.   THANK YOU.
```

1                    (OFF-THE-RECORD DISCUSSION.)

2               **THE CLERK:**  MOCHERLA RAO, R-A-O.

3               **THE COURT:**  MS. RAMIREZ, MAY I ASK YOUR RESIDENCE,

4    PLEASE.

5               **PROSPECTIVE JUROR:**  SAN FRANCISCO.

6               **THE COURT:**  AND COULD I ASK YOUR OCCUPATION.

7               **PROSPECTIVE JUROR:**  RESTAURANT BUSINESS.

8               **THE COURT:**  OKAY.  WHO -- WHAT?

9               **PROSPECTIVE JUROR:**  FAMILY-OWNED RESTAURANT

10   BUSINESS.

11              **THE COURT:**  ALL RIGHT.

12              **PROSPECTIVE JUROR:**  MEXICAN RESTAURANT.

13              **THE COURT:**  AND HOW LONG HAVE YOU DONE THAT?

14              **PROSPECTIVE JUROR:**  ALL MY LIFE, I COULD SAY.  GREW

15   UP IN THE RESTAURANT BUSINESS.

16              **THE COURT:**  OKAY.  ALL RIGHT.

17              WANT TO GIVE THE NAME?

18              **PROSPECTIVE JUROR:**  DON RAMON'S RESTAURANT.

19   225 - 11TH STREET.

20                    (LAUGHTER.)

21              **THE COURT:**  WHAT'S THE PHONE NUMBER?  NO.

22              CAN I ASK YOUR EDUCATIONAL BACKGROUND.

23              **PROSPECTIVE JUROR:**  HIGH SCHOOL.

24              **THE COURT:**  AND MAY I ASK THE OCCUPATION OF MEMBERS

25   OF YOUR IMMEDIATE FAMILY.

1     **PROSPECTIVE JUROR:**  MY HUSBAND IS A RETIRED CAPTAIN

2  FROM THE POLICE DEPARTMENT.  MY BROTHER-IN-LAW IS A LAWYER FOR

3  THE STATE DEPARTMENT.  MY YOUNGER SISTER WORKS WITH THE

4  DISTRICT ATTORNEY'S OFFICE.  AND MY OLDER SISTER AND MY DAD AND

5  MYSELF RUN THE RESTAURANT.

6     **THE COURT:**  OKAY.

7     OKAY.  SAN FRANCISCO POLICE DEPARTMENT?

8     **PROSPECTIVE JUROR:**  YES.

9     **THE COURT:**  OKAY.  HAD YOU EVER HEARD ABOUT THIS

10 CASE BEFORE YOU GOT HERE TODAY?

11    **PROSPECTIVE JUROR:**  NO.

12    **THE COURT:**  YOU KNOW NOTHING ABOUT IT.

13    **PROSPECTIVE JUROR:**  NO.

14    **THE COURT:**  YOU KNOW ANY OF THE PARTIES INVOLVED?

15    **PROSPECTIVE JUROR:**  NO.

16    **THE COURT:**  HAVE YOU BEEN A JUROR BEFORE?

17    **PROSPECTIVE JUROR:**  YES.

18    **THE COURT:**  WHAT KIND OF CASE AND WHEN WAS IT?

19    **PROSPECTIVE JUROR:**  IT WAS A -- ABOUT TEN YEARS.  IT

20 WAS A COMMERCIAL BUILDING SITUATION THAT DIDN'T GO THROUGH OR

21 SOMETHING.

22    **THE COURT:**  ALL RIGHT.

23    DID THAT CASE HAVE ANYTHING TO DO WITH THIS CASE?

24    **PROSPECTIVE JUROR:**  NO.

25    **THE COURT:**  YOU REALIZE YOU WOULD DECIDE THIS CASE

1    ON WHAT IS PRODUCED IN THE COURTROOM?

2              **PROSPECTIVE JUROR:**  YES.

3              **THE COURT:**  AND THE RULES OF LAW FOR THIS CASE, I

4    WOULD GIVE YOU AND YOU'D BE REQUIRED TO FOLLOW THOSE.  COULD

5    YOU DO THAT?

6              **PROSPECTIVE JUROR:**  NO, BECAUSE MY KNOWLEDGE AND

7    TECHNOLOGY IS NOT GOOD AT ALL.  AND I DON'T UNDERSTAND THE CASE

8    TO BEGIN WITH.  I JUST STARTED LEARNING HOW TO USE A COMPUTER.

9    AND THAT'S EVEN DIFFICULT FOR ME.

10             **THE COURT:**  WELL, THE -- A LOT OF PEOPLE DON'T KNOW

11   HOW TO USE COMPUTERS.  WELL, THAT'S -- SO YOU WOULD BE

12   INTRODUCED TO THIS IF YOU'RE SERVING US HERE, YOU'D HAVE TO BE

13   INTRODUCED TO THIS AS IT GOES ALONG.

14             **PROSPECTIVE JUROR:**  OKAY.  I JUST -- I DON'T THINK I

15   CAN SERVE BECAUSE I JUST -- ESPECIALLY FOR THE HARDSHIP OF THE

16   FAMILY RESTAURANT.  I --

17             **THE COURT:**  THAT WILL BE --

18             **PROSPECTIVE JUROR:**  HOLIDAY PARTIES ARE COMING

19   AND --

20             **THE COURT:**  THAT'S TRUE.  THAT'S TRUE.  OKAY.

21   MS. RAMIREZ, YOU CAN BE EXCUSED.  PLEASE GO BACK TO THE JURY

22   COMMISSIONER.

23             **PROSPECTIVE JUROR:**  THANK YOU VERY MUCH.

24             **THE CLERK:**  KATHRYN BROWNE, B-R-O-W-N-E.

25                  (PAUSE IN THE PROCEEDINGS.)

1          **THE COURT:**  MS. BROWNE, COULD I ASK YOUR RESIDENCE.

2          **PROSPECTIVE JUROR:**  LA HONDA, CALIFORNIA.

3          **THE COURT:**  ALL RIGHT.  MAY I ASK YOUR OCCUPATION.

4          **PROSPECTIVE JUROR:**  I'M A COLLEGE INSTRUCTOR AT A

5    COMMUNITY COLLEGE, SKYLINE.

6          **THE COURT:**  HOW LONG HAVE YOU DONE THAT?

7          **PROSPECTIVE JUROR:**  HMM, THIS IS MY FOURTH YEAR

8    FULL-TIME AT SKYLINE.

9          **THE COURT:**  YOUR EDUCATIONAL BACKGROUND IS IN

10   EDUCATION?

11         **PROSPECTIVE JUROR:**  UM-HMM.

12         **THE COURT:**  MAY I ASK THE OCCUPATION OF MEMBERS OF

13   YOUR IMMEDIATE FAMILY.

14         **PROSPECTIVE JUROR:**  MY HUSBAND IS A SOFTWARE

15   ENGINEER.

16         **THE COURT:**  WHO DOES HE WORK FOR?

17         **PROSPECTIVE JUROR:**  HE WORKS FOR A COMPANY NOW

18   CALLED ARMIS CORPORATION IN BURLINGAME.

19         **THE COURT:**  AND WHAT OTHER PLACES HAS HE WORKED?

20         **PROSPECTIVE JUROR:**  HE'S A COFOUNDER OF ASK

21   MANUFACTURING MANAGEMENT SYSTEM --

22         **THE COURT:**  OKAY.

23         **PROSPECTIVE JUROR:**  -- COMPANY.

24         **THE COURT:**  HAD YOU EVER HEARD ABOUT THIS CASE

25   BEFORE YOU GOT HERE TO COURT?

1              **PROSPECTIVE JUROR:**  NO.

2              **THE COURT:**  DO YOU KNOW ANY OF THE PARTIES INVOLVED

3      IN THIS CASE?

4              **PROSPECTIVE JUROR:**  YES, I KNOW MIKE RICCI.

5              **THE COURT:**  OKAY.  WOULD THAT KNOWLEDGE AFFECT THE

6      CASE IN DELIBERATIONS IN ANY WAY?

7              **PROSPECTIVE JUROR:**  I DON'T -- I DON'T KNOW -- WE'RE

8      A MEMBER OF A COMMUNITY -- WE LIVE RIGHT OUTSIDE OF LA HONDA,

9      AND OUR IMMEDIATE SCHOOL COMMUNITY IS PORTOLA VALLEY IN

10     WOODSIDE, SO WE HAVE A LOT OF CONTACT WITH PEOPLE THAT ARE IN

11     THE VENTURE CAPITAL COMMUNITY.

12             **THE COURT:**  OKAY.  BUT IN TERMS OF POTENTIAL SERVICE

13     HERE, THE FACT THAT YOU HAVE SUCH KNOWLEDGE, WOULD THAT AFFECT

14     YOUR ABILITY TO DECIDE THIS CASE ON YOUR OWN?

15             **PROSPECTIVE JUROR:**  I DON'T -- I DON'T THINK SO.  I

16     MEAN, WE HAVE GOOD FRIENDS THAT ARE VENTURE CAPITALISTS.

17             **THE COURT:**  RIGHT.  RIGHT.

18             **PROSPECTIVE JUROR:**  WE DON'T TALK A LOT OF BUSINESS,

19     BUT --

20             **THE COURT:**  CORRECT.  CORRECT.  BUT YOU DON'T HAVE

21     ANY THOUGHT IN YOUR HEAD NOW THAT YOU WOULD BE UNABLE TO SERVE

22     IN THIS CASE AND BE FAIR AND IMPARTIAL TO EVERYBODY THAT'S

23     INVOLVED, OR DO YOU?

24             **PROSPECTIVE JUROR:**  ONLY IF IT WAS -- IF IT INVOLVED

25     THE RICCIS AND I WOULD FEEL A CONFLICT OF INTEREST.

1     **THE COURT:**  WELL, OKAY.  YOU CAN BE EXCUSED, THEN,

2  PLEASE -- MS. BROWNE, PLEASE GO BACK TO THE JURY COMMISSIONER

3  IF YOU WOULD, THANK YOU.

4     **PROSPECTIVE JUROR:**  RAFAEL MIRANDA, M-I-R-A-N-D-A.

5     **THE COURT:**  MR. MIRANDA, COULD I ASK YOUR RESIDENCE,

6  PLEASE.

7     **PROSPECTIVE JUROR:**  SANTA ROSA.

8     **THE COURT:**  YOUR OCCUPATION.

9     **PROSPECTIVE JUROR:**  I'M A CITY PLANNER FOR THE CITY

10  OF HEALDSBURG.

11     **THE COURT:**  AND HOW LONG HAVE YOU DONE THAT?

12     **PROSPECTIVE JUROR:**  FOUR YEARS.

13     **THE COURT:**  AND MAY I ASK YOUR EDUCATIONAL

14  BACKGROUND.

15     **PROSPECTIVE JUROR:**  I HAVE A BA.

16     **THE COURT:**  AND DID YOU WORK BEFORE THAT, BEFORE

17  YOUR HEALDSBURG --

18     **PROSPECTIVE JUROR:**  YEAH, WORKED AT CROSS-CHECK.

19     **THE COURT:**  OKAY.

20     MAY I ASK THE OCCUPATION OF MEMBERS OF YOUR

21  IMMEDIATE FAMILY.

22     **PROSPECTIVE JUROR:**  MY DAD'S AN ER DOC.  MY MOM'S A

23  HOUSEWIFE.

24     **THE COURT:**  HAD YOU EVER HEARD ABOUT THIS CASE

25  BEFORE YOU GOT HERE TO COURT?

| | |
|---|---|
| 1 | **PROSPECTIVE JUROR:**  NO. |
| 2 | **THE COURT:**  DO YOU KNOW ANY OF THE PARTIES INVOLVED |
| 3 | IN THE CASE? |
| 4 | **PROSPECTIVE JUROR:**  NO, BUT MY FIRST COUSIN WORKS |
| 5 | FOR INTEL. |
| 6 | **THE COURT:**  OKAY.  THAT WOULD NOT AFFECT YOUR |
| 7 | DELIBERATIONS, THOUGH, I TAKE IT. |
| 8 | **PROSPECTIVE JUROR:**  I THINK IT WOULD.  HE HAS A |
| 9 | NEWBORN AND HE HAS A BABY ON THE WAY, AND IF IT WOULD MEAN |
| 10 | MONEY, I WOULDN'T WANT THAT AFFECTING THE COMPANY AT ALL. |
| 11 | **THE COURT:**  ALL RIGHT.  YOU CAN BE EXCUSED, |
| 12 | MR. MIRANDA.  PLEASE GO BACK TO THE JURY COMMISSIONER. |
| 13 | **THE CLERK:**  ERIC HUI, H-U-I.  IS THAT HOW YOU SAY |
| 14 | YOUR LAST NAME? |
| 15 | **PROSPECTIVE JUROR:**  HUI.  HUI. |
| 16 | **THE CLERK:**  OKAY.  HUI.  THANK YOU. |
| 17 | **THE COURT:**  MR. HUI, COULD YOU TELL US YOUR |
| 18 | RESIDENCE, PLEASE. |
| 19 | **PROSPECTIVE JUROR:**  SAN LEANDRO. |
| 20 | **THE COURT:**  MAY I ASK YOUR OCCUPATION. |
| 21 | **PROSPECTIVE JUROR:**  REAL ESTATE AGENT. |
| 22 | **THE COURT:**  WHO DO YOU WORK FOR? |
| 23 | **PROSPECTIVE JUROR:**  I'M SELF-EMPLOYED. |
| 24 | **THE COURT:**  OKAY.  HOW LONG HAVE YOU DONE THAT? |
| 25 | **PROSPECTIVE JUROR:**  ABOUT FIVE YEARS. |

| 1 | **THE COURT:**  AND YOUR EDUCATIONAL BACKGROUND. |
| 2 | **PROSPECTIVE JUROR:**  I HAVE AN A.A. DEGREE, AND I |
| 3 | HAD -- I WAS STUDENT AT CAL STATE HAYWARD. |
| 4 | **THE COURT:**  MAY I ASK THE OCCUPATION OF MEMBERS OF |
| 5 | YOUR IMMEDIATE FAMILY. |
| 6 | **PROSPECTIVE JUROR:**  MY WIFE, SHE'S A DENTAL |
| 7 | ASSISTANT. |
| 8 | **THE COURT:**  HAD YOU HEARD ABOUT THIS CASE BEFORE |
| 9 | TODAY? |
| 10 | **PROSPECTIVE JUROR:**  I -- IT WAS MENTION IN ONE OF |
| 11 | THE I.T. MAGAZINES I SUBSCRIBE TO.  THERE WAS A BRIEF MENTION |
| 12 | OF THIS CASE IN THAT MAGAZINE. |
| 13 | **THE COURT:**  YOU HEARD ABOUT THE CASE, THEN? |
| 14 | **PROSPECTIVE JUROR:**  I BELIEVE JUST MENTIONED SUCH |
| 15 | CASE, BUT NOT MUCH DETAIL. |
| 16 | **THE COURT:**  YOU DON'T KNOW ANYTHING ABOUT IT. |
| 17 | **PROSPECTIVE JUROR:**  NO. |
| 18 | **THE COURT:**  JUST THE FACT THAT IT WAS MENTIONED. |
| 19 | **PROSPECTIVE JUROR:**  UM-HMM. |
| 20 | **THE COURT:**  ALL RIGHT.  SO YOU KNOW NOTHING ABOUT |
| 21 | THE EVIDENCE OR ABOUT THE CASE OR THE PEOPLE INVOLVED; IS THAT |
| 22 | IT? |
| 23 | **PROSPECTIVE JUROR:**  NO. |
| 24 | **THE COURT:**  OKAY. |
| 25 | HAVE YOU EVER SERVED AS A JUROR BEFORE? |

1        PROSPECTIVE JUROR:  NO.

2        THE COURT:  IF YOU SERVE HERE, YOU MUST DECIDE THE

3   FACTS BUT YOU MUST LIMIT YOUR CONSIDERATION TO WHAT'S PRESENTED

4   TO YOU HERE IN THE COURTROOM.  YOU UNDERSTAND THAT?

5        PROSPECTIVE JUROR:  YES, SIR.

6        THE COURT:  WOULD YOU BE ABLE TO DO THAT?

7        PROSPECTIVE JUROR:  YES, SIR.

8        THE COURT:  AND THE RULES OF LAW FOR YOUR

9   DELIBERATIONS I WOULD GIVE TO YOU AND YOU MUST FOLLOW THOSE.

10       WILL YOU DO THAT?

11       PROSPECTIVE JUROR:  YES, SIR.

12       THE COURT:  ANYBODY IN THE FAMILY, CLOSE FRIEND OR

13  RELATIVE, CONNECTED WITH THE HIGH-TECH INDUSTRY IN ANY WAY?

14       PROSPECTIVE JUROR:  I HAVE ONE CLOSE FRIEND THAT

15  WORKS FOR INTEL.

16       THE COURT:  OKAY.

17       PROSPECTIVE JUROR:  ANOTHER ONE THAT WORK FOR INTEL

18  FOR A FEW YEARS, BUT HE LEFT ABOUT A YEAR AGO.

19       THE COURT:  OKAY.  WOULD THOSE FRIENDSHIPS HAVE

20  ANYTHING TO DO WITH ANY VERDICT THAT YOU MIGHT REACH IN THIS

21  CASE?

22       PROSPECTIVE JUROR:  PROBABLY NOT.

23       THE COURT:  I MEAN, WHEN YOU SAY "PROBABLY NOT," I

24  MEAN, THE -- YOU HAVE TO BE IN A SITUATION WHERE THE FACT THAT

25  YOU HAVE FRIENDS WHO WORK FOR INTEL WILL NOT BE SOMETHING THAT

1    YOU USE IN DECIDING THIS CASE.

2              WILL YOU ELIMINATE THAT FROM ANY DECISION-MAKING YOU

3    MAKE IN THE CASE?

4              **PROSPECTIVE JUROR:**  YES.

5              **THE COURT:**  OKAY.  SO YOU DECIDE A CASE ON YOUR OWN,

6    AND REGARDLESS OF HOW IT COMES OUT, IT WOULD BE BASED UPON THE

7    FACTS AND THE LAW; IS THAT RIGHT?

8              **PROSPECTIVE JUROR:**  YES, SIR.

9              **THE COURT:**  SO IT COULD COME OUT EITHER WAY WITH

10   REFERENCE TO INTEL; IS THAT CORRECT?

11             **PROSPECTIVE JUROR:**  YES.

12             **THE COURT:**  ANYBODY INVOLVED IN -- CLOSE FRIENDS OR

13   RELATIVES INVOLVED IN VENTURE FUNDING AT ALL?

14             **PROSPECTIVE JUROR:**  NO.

15             **THE COURT:**  ANYBODY INVOLVED IN PATENTS OR

16   TRADEMARKS OR COPYRIGHTS?

17             **PROSPECTIVE JUROR:**  A COUSIN FROM MY WIFE'S SIDE,

18   HER HUSBAND IS A PATENT ATTORNEY.

19             **THE COURT:**  AND WHERE DOES HE WORK?

20             **PROSPECTIVE JUROR:**  IN MARIN COUNTY, I BELIEVE.  I

21   DON'T --

22             **THE COURT:**  YOU DON'T HAVE MUCH KNOWLEDGE ABOUT IT.

23             **PROSPECTIVE JUROR:**  NO.

24             **THE COURT:**  BUT THAT FAMILY RELATIONSHIP WOULDN'T

25   HAVE ANYTHING TO DO WITH YOUR SERVICE HERE.

1           **PROSPECTIVE JUROR:**  NO, SIR.

2           **THE COURT:**  OKAY.

3           HAVE YOU EVER BEEN INVOLVED IN RUNNING A BUSINESS

4    YOURSELF?

5           **PROSPECTIVE JUROR:**  I'M SELF-EMPLOYED.

6           (OFF THE RECORD DISCUSSION.)

7           **THE COURT:**  OH, EXCUSE ME.  YOU EVER BEEN INVOLVED

8    IN A LAWSUIT YOURSELF?

9           **PROSPECTIVE JUROR:**  ABOUT TEN YEARS AGO, WHILE I WAS

10   A MANAGER AT WAL-MART, A CUSTOMER TOOK US TO COURT.

11          **THE COURT:**  ALL RIGHT.  IS THAT COMPLETED NOW?

12          **PROSPECTIVE JUROR:**  OH, YES.

13          **THE COURT:**  WOULD THAT HAVE ANYTHING TO DO WITH THIS

14   CASE?

15          **PROSPECTIVE JUROR:**  NO.

16          **THE COURT:**  ALL RIGHT.

17          IF YOU WERE CALLED UPON TO SERVE HERE, WILL YOU GIVE

18   US YOUR COMMITMENT THAT YOU'D MAKE NO DECISION IN THE CASE

19   WHICH YOU BASE UPON RACE OR ETHNIC ORIGIN?

20          **PROSPECTIVE JUROR:**  NO.

21          **THE COURT:**  YOU WOULD NOT DO THAT; IS THAT CORRECT?

22          **PROSPECTIVE JUROR:**  I'M SORRY?

23          **THE COURT:**  YOU WOULD NOT MAKE A DECISION WHICH YOU

24   BASE UPON RACE OR ETHNIC ORIGIN?

25          **PROSPECTIVE JUROR:**  I WOULD NOT BASE ON THAT.

1          **THE COURT:**  OKAY.  COULD YOU BE FAIR AND IMPARTIAL

2    IF YOU SERVED IN THIS CASE?

3          **PROSPECTIVE JUROR:**  IT'S JUST THAT I'M -- I'M THE

4    ONLY ONE -- I'M SELF-EMPLOYED.  I'M ONLY ONE IN THIS BUSINESS.

5    IF I HAVE TO BE TIED FOR FOUR TO FIVE WEEKS, I LOSE MOST OF MY

6    CUSTOMERS.  IT WOULD CAUSE A GREAT FINANCIAL IMPACT ON MY

7    BUSINESS.

8          **THE COURT:**  ALL RIGHT, MR. HUI.  YOU CAN BE EXCUSED.

9    PLEASE GO BACK TO THE JURY COMMISSIONER.

10          **PROSPECTIVE JUROR:**  THANK YOU, SIR.

11          **THE CLERK:**  PAUL LOEFFLER, L-O-E-F-F-L-E-R.

12              (PAUSE IN THE PROCEEDINGS.)

13          **THE COURT:**  MR. LOEFFLER, IS THAT IT?

14          **PROSPECTIVE JUROR:**  YES.

15          **THE COURT:**  MAY I ASK YOUR RESIDENCE, PLEASE.

16          **PROSPECTIVE JUROR:**  UNION CITY.

17          **THE COURT:**  AND YOUR OCCUPATION, PLEASE.

18          **PROSPECTIVE JUROR:**  I'M A CNC PROGRAMMER.

19          **THE COURT:**  WHO DO YOU WORK FOR?

20          **PROSPECTIVE JUROR:**  SANMINA SCI CORPORATION.

21          **THE COURT:**  HOW LONG HAVE YOU DONE THAT?

22          **PROSPECTIVE JUROR:**  HOW LONG HAVE I BEEN IN THIS

23    TRADE, OR HOW LONG HAVE I WORKED THERE?

24          **THE COURT:**  BOTH OF THEM.

25          **PROSPECTIVE JUROR:**  THIRTY YEARS IN DOING THE SAME

1    THING AND --

2                THE COURT:  OKAY.

3                PROSPECTIVE JUROR:  -- ABOUT FIVE YEARS AT

4    SANMINA --

5                THE COURT:  AND MAY I ASK YOUR EDUCATIONAL

6    BACKGROUND.

7                PROSPECTIVE JUROR:  HIGH SCHOOL.

8                THE COURT:  MAY I ASK THE OCCUPATIONS OF MEMBERS OF

9    YOUR IMMEDIATE FAMILY.

10                PROSPECTIVE JUROR:  IMMEDIATE FAMILY, I'M SINGLE,

11    AND I HAVE TWO CHILDREN IN HIGH SCHOOL.

12                THE COURT:  HAD YOU EVER HEARD OF THIS CASE BEFORE

13    COMING TO COURT TODAY?

14                PROSPECTIVE JUROR:  NO, I HAVEN'T.

15                THE COURT:  YOU KNOW ANY OF THE PARTIES INVOLVED IN

16    THE MATTER?

17                PROSPECTIVE JUROR:  NO.

18                THE COURT:  HAVE YOU BEEN A JUROR YOURSELF?

19                PROSPECTIVE JUROR:  YES, I HAVE.

20                THE COURT:  WHAT KIND OF A CASE AND WHEN WAS IT?

21                PROSPECTIVE JUROR:  IT WAS ABOUT 20 YEARS AGO.  IT

22    WAS A CASE INVOLVING -- IT WAS AN AUTO ACCIDENT, AND THE TWO

23    PARTIES INVOLVED WERE DETERMINED TO BOTH BE AT FAULT.  WE HAD

24    TO DECIDE PERCENTAGE-WISE WHO --

25                THE COURT:  I SEE.

1      **PROSPECTIVE JUROR:**  -- WAS RESPONSIBLE FOR -- YOU

2   KNOW, 50/50, 60/40 TYPE THING.  THAT WAS ABOUT IT.

3      **THE COURT:**  DID YOU RETURN A VERDICT?

4      **PROSPECTIVE JUROR:**  YES, WE DID.

5      **THE COURT:**  ANYTHING ABOUT THAT CASE THAT WOULD HAVE

6   ANYTHING WITH THIS CASE?

7      **PROSPECTIVE JUROR:**  I CAN'T IMAGINE.

8      **THE COURT:**  IN THIS CASE, WOULD YOU DECIDE THIS CASE

9   ON THE FACTS THAT ARE SHOWN BY THE EVIDENCE IN THIS MATTER IN

10  THIS COURTROOM?

11     **PROSPECTIVE JUROR:**  I GUESS HE -- YES.

12     **THE COURT:**  WOULD YOU ACCEPT AND FOLLOW THE RULES OF

13  LAW THAT I GIVE YOU FOR YOUR DELIBERATIONS?

14     **PROSPECTIVE JUROR:**  SURE.

15     **THE COURT:**  IS THERE ANYBODY IN THE FAMILY, CLOSE

16  FRIEND OR RELATIVE, CONNECTED WITH HIGH TECH?

17     **PROSPECTIVE JUROR:**  BESIDES MYSELF.

18     **THE COURT:**  BESIDES YOURSELF, YEAH.

19     **PROSPECTIVE JUROR:**  NAW, NOT REALLY.

20     **THE COURT:**  ANYBODY INVOLVED IN THE VENTURE FUNDING,

21  CAPITAL FUNDING?

22     **PROSPECTIVE JUROR:**  NO.

23     **THE COURT:**  ANYBODY INVOLVED IN WORK WITH PATENTS

24  OR --

25     **PROSPECTIVE JUROR:**  NO.

1          **THE COURT:**  HAVE YOU EVER RUN A BUSINESS YOURSELF?

2          **PROSPECTIVE JUROR:**  NO, I HAVEN'T.

3          **THE COURT:**  HAVE YOU EVER BEEN INVOLVED IN A LAWSUIT

4    YOURSELF?

5          **PROSPECTIVE JUROR:**  NOPE.

6          **THE COURT:**  IF YOU SERVE IN THE MATTER, WOULD YOU

7    GIVE US YOUR COMMITMENT THAT YOU'D MAKE NO DECISION WHICH YOU

8    BASE UPON RACE OR ETHNIC ORIGIN?

9          **PROSPECTIVE JUROR:**  YES.

10         **THE COURT:**  COULD YOU SERVE IN THIS MATTER AND DO SO

11   AS A FAIR AND IMPARTIAL JUROR?

12         **PROSPECTIVE JUROR:**  SURE.

13         **THE COURT:**  THANK YOU.

14         PASS THAT DOWN TO MS. RAO.

15         MS. RAO, COULD I ASK YOUR RESIDENCE, PLEASE.

16         **PROSPECTIVE JUROR:**  SAN FRANCISCO.

17         **THE COURT:**  AND MAY I ASK YOUR OCCUPATION.

18         **PROSPECTIVE JUROR:**  I DON'T WORK AND -- BUT I

19   VOLUNTEER IN A HOSPICE AND SENIOR HOME.

20         **THE COURT:**  OKAY.

21         MAY I ASK YOUR EDUCATIONAL BACKGROUND.

22         **PROSPECTIVE JUROR:**  TWO-YEAR DEGREE FROM

23   CITY COLLEGE, LONG TIME AGO.

24         **THE COURT:**  MAY I ASK THE OCCUPATION OF MEMBERS OF

25   YOUR IMMEDIATE FAMILY?

1          **PROSPECTIVE JUROR:**  I LIVE ON MY OWN.  MY -- I HAVE

2     TWO DAUGHTERS.  THEY WORK -- ONE OF THEM WORKS IN WELLS

3     FARGO -- WELLS FARGO AS A MARKETING ANALYST, AND THE OTHER ONE

4     IS A COUNSELING PSYCHOLOGY (SIC).

5          **THE COURT:**  OKAY.  HAD YOU EVER HEARD ABOUT THIS

6     CASE BEFORE YOU GOT HERE TO COURT?

7          **PROSPECTIVE JUROR:**  NO, I HAVEN'T.

8          **THE COURT:**  AND DO YOU KNOW ANY OF THE PARTIES

9     INVOLVED IN THE CASE?

10          **PROSPECTIVE JUROR:**  NO, I DON'T.

11          **THE COURT:**  HAVE YOU BEEN A JUROR YOURSELF?

12          **PROSPECTIVE JUROR:**  I HAVEN'T.

13          **THE COURT:**  IF YOU SERVE HERE AND YOU DECIDE THE

14     FACTS IN THIS CASE, YOU MUST DO SO ONLY UPON CONSIDERING THE

15     EVIDENCE THAT YOU HEAR PRESENTED IN THE COURTROOM.

16          YOU UNDERSTAND?

17          **PROSPECTIVE JUROR:**  YES.

18          **THE COURT:**  WOULD YOU DO THAT?

19          **PROSPECTIVE JUROR:**  I WILL.

20          **THE COURT:**  WOULD YOU ACCEPT AND FOLLOW THE RULES OF

21     LAW THAT I GIVE YOU FOR YOUR DELIBERATIONS?

22          **PROSPECTIVE JUROR:**  I WILL TRY.  I WILL.

23               (LAUGHTER.)

24          **PROSPECTIVE JUROR:**  WHEN I SAID I WOULD TRY, THAT

25     MEANS TO BEST MY -- MY ABILITY.  I'M NOT SURE I CAN FOLLOW WHAT

```
1    IS GOING ON LEGALLY.  THAT'S ALL.

2                THE COURT:  OKAY.

3                PROSPECTIVE JUROR:  I MEAN THAT.

4                THE COURT:  BUT I WILL EXPLAIN THIS TO YOU.

5                PROSPECTIVE JUROR:  OKAY.  THEN THAT'S FINE.

6                THE COURT:  WHEN I EXPLAIN IT TO YOU, I HOPE IT'S

7    CLEAR ENOUGH SO WE CAN ALL FOLLOW IT BUT YOU WOULD FOLLOW IT.

8                PROSPECTIVE JUROR:  YES, OF COURSE.

9                THE COURT:  ALL RIGHT.  ANYBODY IN THE FAMILY OR

10   CLOSE FRIEND OR RELATIVE CONNECTED WITH HIGH TECH?

11               PROSPECTIVE JUROR:  ACTUALLY, MY SON-IN-LAW WORKS

12   FOR KEYNOTE NETWORK (PHONETIC), AND I HAVE A LOT OF FRIENDS

13   THAT I KNOW SILICON VALLEY.

14               THE COURT:  WOULD THAT FRIENDSHIP OR THOSE

15   RELATIONSHIPS HAVE ANYTHING TO DO WITH YOUR SERVICE HERE?

16               PROSPECTIVE JUROR:  NOT AT ALL.

17               THE COURT:  YOU WOULD DECIDE THIS CASE ON WHAT YOU

18   HEAR IN THIS COURTROOM --

19               PROSPECTIVE JUROR:  YES.

20               THE COURT:  -- ON YOUR OWN.

21               PROSPECTIVE JUROR:  ABSOLUTELY.

22               THE COURT:  ANYBODY INVOLVED IN CAPITAL OR VENTURE

23   FUNDING?

24               PROSPECTIVE JUROR:  NO.

25               THE COURT:  ANYBODY INVOLVED -- OR HAVE YOU HAD ANY
```

1   EXPERIENCE INVOLVED WITH PATENTS?

2           PROSPECTIVE JUROR:  NO.

3           THE COURT:  HAVE YOU EVER RUN A BUSINESS YOURSELF?

4           PROSPECTIVE JUROR:  I WAS IN TAX PREPARATION FOR

5   THREE, FOUR YEARS.

6           THE COURT:  DID YOU HAVE PEOPLE WHO WORKED WITH YOU

7   OR FOR YOU?

8           PROSPECTIVE JUROR:  NO, MYSELF.

9           THE COURT:  YOU HAVE ANY KINDS OF PROBLEMS THERE?

10  ANY KIND OF DISPUTES THAT HAD TO GO TO COURT?

11          PROSPECTIVE JUROR:  NO.

12          THE COURT:  YOU EVER HAD TO GO TO COURT YOURSELF?

13          PROSPECTIVE JUROR:  NO.

14          THE COURT:  IF YOU SERVE IN THIS MATTER, COULD YOU

15  GIVE US YOUR COMMITMENT THAT YOU'D MAKE NO DECISION WHICH YOU

16  BASE UPON RACE OR ETHNIC ORIGIN?

17          PROSPECTIVE JUROR:  YES.

18          THE COURT:  COULD YOU SERVE AND BE FAIR AND

19  IMPARTIAL?

20          PROSPECTIVE JUROR:  YES.

21          THE COURT:  THANK YOU.

22          AND, MR. MCDOUGALD, DO YOU WANT TO -- YEAH, GOOD.

23          PROSPECTIVE JUROR:  YES.

24          THE COURT:  MAY I ASK YOUR RESIDENCE, PLEASE, SIR.

25          PROSPECTIVE JUROR:  SAN FRANCISCO.

```
1              THE COURT:  AND YOUR OCCUPATION.

2              PROSPECTIVE JUROR:  I'M RETIRED.  I'M A PROFESSOR OF

3    ART HISTORY AND A WRITER.

4              THE COURT:  OKAY.  WHERE DID YOU TEACH?

5              PROSPECTIVE JUROR:  IN TORONTO.

6              THE COURT:  IN TORONTO.

7              ALL RIGHT.  AND WAS YOUR EDUCATIONAL BACKGROUND IN

8    THE AREA OR WHAT --

9              PROSPECTIVE JUROR:  YES, I HAVE A DOCTORATE IN ART

10   HISTORY.

11             THE COURT:  AND COULD I ASK THE OCCUPATION OF

12   MEMBERS OF YOUR IMMEDIATE FAMILY?

13             PROSPECTIVE JUROR:  MY PARTNER WORKS FOR THE CITY OF

14   SAN FRANCISCO.

15             THE COURT:  ALL RIGHT.  HAD YOU EVER HEARD OF THIS

16   CASE BEFORE YOU GOT HERE TODAY?

17             PROSPECTIVE JUROR:  NO.

18             THE COURT:  HAVE YOU EVER BEEN A JUROR BEFORE?

19             PROSPECTIVE JUROR:  NO, I'VE BEEN CALLED AS AN

20   EXPERT WITNESS, BUT I'VE NEVER BEEN A JUROR.

21             THE COURT:  OKAY.  AND IN SERVICE AS A JUROR, YOU

22   REALIZE YOU WOULD BE CALLED UPON TO DECIDE SOME FACTS ON AN

23   AREA THAT YOU KNOW NOTHING ABOUT RIGHT NOW.  BUT YOU MUST LIMIT

24   YOUR CONSIDERATIONS TO THE INTRODUCTION OF EVIDENCE IN THIS

25   COURTROOM.  YOU UNDERSTAND THAT?
```

1          **PROSPECTIVE JUROR:**  YES, OF COURSE.

2          **THE COURT:**  AND THAT'S WHAT YOU WOULD DO?

3          **PROSPECTIVE JUROR:**  YES.

4          **THE COURT:**  AND YOU WOULD FOLLOW THE RULES OF LAW

5  THAT I GIVE YOU FOR YOUR DELIBERATIONS?

6          **PROSPECTIVE JUROR:**  YES.

7          **THE COURT:**  ANYONE IN THE FAMILY OR CLOSE FRIEND OR

8  RELATIVE CONNECTED WITH THE HIGH-TECH INDUSTRY?

9          **PROSPECTIVE JUROR:**  I THINK I HAVE A COUSIN WHO'S

10  INVOLVED WITH A STARTUP, BUT I REALLY DON'T KNOW ANYTHING ABOUT

11  IT.

12          **THE COURT:**  ALL RIGHT.  AND THAT'S NOT A

13  RELATIONSHIP THAT WOULD HAVE ANY BEARING ON YOUR SERVICE.

14          **PROSPECTIVE JUROR:**  NONE WHATEVER.

15          **THE COURT:**  AND ANYBODY INVOLVED WITH VENTURE

16  FUNDING?

17          **PROSPECTIVE JUROR:**  NO.

18          **THE COURT:**  ANYBODY INVOLVED OR HAVE YOU HAD ANY

19  EXPERIENCE WITH PATENTS OR COPYRIGHTS OR TRADEMARKS?

20          **PROSPECTIVE JUROR:**  JUST MY OWN BOOKS.

21          **THE COURT:**  GOOD.  OKAY.

22          DID YOU EVER HAVE ANY DISPUTE ABOUT THOSE?

23          **PROSPECTIVE JUROR:**  NO.

24          **THE COURT:**  HAVE YOU EVER BEEN INVOLVED IN A

25  LAWSUIT?

1              **PROSPECTIVE JUROR:**  NO.

2              **THE COURT:**  IF YOU WERE CALLED UPON TO SERVE HERE,

3       COULD YOU GIVE US YOUR COMMITMENT THAT YOU'D MAKE NO DECISION

4       WHICH YOU BASE UPON RACE OR ETHNIC ORIGIN?

5              **PROSPECTIVE JUROR:**  YES.

6              **THE COURT:**  COULD YOU SERVE AND DO SO FAIRLY AND

7       IMPARTIALLY?

8              **PROSPECTIVE JUROR:**  I BELIEVE SO.

9              **THE COURT:**  GOOD.  THANKS.

10             MR. YEE, MAY I ASK YOUR RESIDENCE, PLEASE.

11             **PROSPECTIVE JUROR:**  MARTINEZ.

12             **THE COURT:**  AND MAY I ASK YOUR OCCUPATION.

13             **PROSPECTIVE JUROR:**  I'M A FULL-TIME STUDENT AT DVC.

14             **THE COURT:**  ALL RIGHT.  AND WHAT IS THE STATUS OF

15      YOUR STUDIES?  ARE YOU GOING TO GET INVOLVED IN MISSING

16      EXAMINATIONS?

17             **PROSPECTIVE JUROR:**  YES.

18             **THE COURT:**  ALL RIGHT.  YOU CAN BE EXCUSED, MR. YEE.

19      THANK YOU.

20             **THE CLERK:**  JOHN MACE, M-A-C-E.

21             **THE COURT:**  MR. MACE, COULD I ASK YOUR RESIDENCE,

22      PLEASE.

23             **PROSPECTIVE JUROR:**  NAPA.

24             **THE COURT:**  AND COULD I ASK YOUR OCCUPATION.

25             **PROSPECTIVE JUROR:**  PART-TIME STUDENT.

```
1              THE COURT:  LET'S ASK ABOUT YOUR STUDIES.  ARE YOU

2    GOING TO BE AFFECTED BY THIS TRIAL?

3              PROSPECTIVE JUROR:  (NODS HEAD.)

4              THE COURT:  ALL RIGHT, MR. MACE, YOU COULD BE

5    EXCUSED.  THANK YOU.  GO BACK TO THE JURY COMMISSIONER IF YOU

6    WOULD, THANKS.

7              THE CLERK:  GAYDEN HALL, H-A-L-L.

8              THE COURT:  MR. HALL, COULD I ASK YOUR RESIDENCE,

9    PLEASE.

10             PROSPECTIVE JUROR:  SANTA ROSA.

11             THE COURT:  MAY I ASK YOUR OCCUPATION.

12             PROSPECTIVE JUROR:  TRUCK MECHANIC.

13             THE COURT:  WHO DO YOU WORK FOR?

14             PROSPECTIVE JUROR:  NICK BARBERI (PHONETIC)

15   TRUCKING.

16             THE COURT:  HOW LONG HAVE YOU DONE THAT?

17             PROSPECTIVE JUROR:  FIFTEEN YEARS.

18             THE COURT:  MAY I ASK YOUR EDUCATIONAL BACKGROUND.

19             PROSPECTIVE JUROR:  HIGH SCHOOL.

20             THE COURT:  COULD I ASK THE OCCUPATION OF MEMBERS OF

21   YOUR IMMEDIATE FAMILY.

22             PROSPECTIVE JUROR:  MY WIFE WAS WORKING.  SHE'S LAID

23   OFF NOW.

24             THE COURT:  WHAT DID SHE DO?

25             PROSPECTIVE JUROR:  SHE WAS A SECRETARY.
```

```
 1                    THE COURT:  AND WHO DID SHE WORK FOR?

 2                    PROSPECTIVE JUROR:  WIRED CONSTRUCTION.

 3                    THE COURT:  HAD YOU EVER HEARD ABOUT THIS CASE

 4      BEFORE YOU GOT HERE TO COURT?

 5                    PROSPECTIVE JUROR:  NO.

 6                    THE COURT:  YOU KNOW ANY OF THE PARTIES THAT ARE

 7      INVOLVED IN THE CASE?

 8                    PROSPECTIVE JUROR:  NO.

 9                    THE COURT:  HAVE YOU EVER BEEN A JUROR?

10                    PROSPECTIVE JUROR:  NO.

11                    THE COURT:  IF YOU SERVE HERE, YOU'LL HAVE TO DECIDE

12      FACTS, BUT YOU CAN ONLY DO THAT BASED UPON WHAT'S PRODUCED IN

13      THIS COURTROOM AS THE EVIDENCE.  YOU UNDERSTAND THAT.

14                    PROSPECTIVE JUROR:  YES.

15                    THE COURT:  WOULD YOU LIMIT YOUR CONSIDERATION TO

16      THAT?

17                    PROSPECTIVE JUROR:  YES.

18                    THE COURT:  AND WOULD YOU ACCEPT AND FOLLOW THE

19      RULES OF LAW THAT I GIVE YOU FOR YOUR DELIBERATIONS?

20                    PROSPECTIVE JUROR:  YES.

21                    THE COURT:  ANYONE IN THE FAMILY OR CLOSE FRIENDS OR

22      RELATIVE CONNECTED WITH THE HIGH-TECH INDUSTRY?

23                    PROSPECTIVE JUROR:  NO.

24                    THE COURT:  ANYBODY CONNECTED WITH VENTURE

25      FUNDING -- CAPITAL FUNDING?
```

```
1              PROSPECTIVE JUROR:  NO.

2              THE COURT:  ANYBODY HAVE EXPERIENCE OR CONNECTED

3   WITH PATENTS --

4              PROSPECTIVE JUROR:  NO.

5              THE COURT:  -- AND TRADEMARKS, THAT SORT --

6              HAVE YOU EVER RUN A BUSINESS OF YOUR OWN?

7              PROSPECTIVE JUROR:  YES.

8              THE COURT:  WHAT KIND OF A BUSINESS?  WHEN DID YOU

9   DO THAT?

10             PROSPECTIVE JUROR:  WELDING FABRICATION.

11             THE COURT:  AND HOW LONG DID YOU HAVE THE BUSINESS?

12             PROSPECTIVE JUROR:  FIFTEEN YEARS.

13             THE COURT:  YOU EVER GET INTO SITUATIONS WHERE THERE

14  WAS ANY DIFFICULTY WITH CONTRACTS OR ANYTHING OF THAT NATURE?

15             PROSPECTIVE JUROR:  NO.

16             THE COURT:  YOU EVER BEEN IN A LAWSUIT YOURSELF?

17             PROSPECTIVE JUROR:  NO.

18             THE COURT:  THE NATURE OF THIS CASE AFFECT YOUR

19  ABILITY TO SERVE AT ALL?

20             PROSPECTIVE JUROR:  NO.

21             THE COURT:  IF YOU'RE CALLED ON TO SERVE, COULD YOU

22  GIVE US YOUR COMMITMENT YOU'D MAKE NO DECISION WHICH YOU BASE

23  UPON RACE OR ETHNIC ORIGIN?

24             PROSPECTIVE JUROR:  YES.

25             THE COURT:  COULD YOU SERVE AND BE FAIR AND
```

1   IMPARTIAL?

2           **PROSPECTIVE JUROR:**  YES.

3           **THE COURT:**  THANK YOU, SIR.

4           MY WIFE'S NOT WORKING.  I'M THE SOLE GUY WORKING

5   RIGHT NOW.

6           **THE COURT:**  AND THAT'S YOUR ONLY INCOME.

7           **PROSPECTIVE JUROR:**  (NODS HEAD.)

8           **THE COURT:**  AND LACK OF INCOME WOULD AFFECT YOUR

9   WHOLE ABILITY TO GET ALONG?

10          **PROSPECTIVE JUROR:**  (NODS HEAD.)

11          **THE COURT:**  MR. HALL, YOU CAN BE EXCUSED.  PLEASE GO

12  BACK TO THE JURY COMMISSIONER IF YOU WOULD.

13          **THE CLERK:**  WENDY MISNER, M-I-S-N-E-R.

14          **THE COURT:**  MS. MISNER, COULD I ASK YOUR RESIDENCE,

15  PLEASE.

16          **PROSPECTIVE JUROR:**  NAPA.

17          **THE COURT:**  COULD I ASK YOUR OCCUPATION?

18          **PROSPECTIVE JUROR:**  I'M A KINDERGARTEN TEACHER AND

19  AN APARTMENT MANAGER.

20          **THE COURT:**  MAY I ASK YOUR EDUCATIONAL BACKGROUND?

21          **PROSPECTIVE JUROR:**  BACHELOR'S AND TEACHING

22  CREDENTIAL.

23          **THE COURT:**  OKAY.  COULD I ASK THE OCCUPATION OF

24  MEMBERS OF YOUR IMMEDIATE FAMILY.

25          **PROSPECTIVE JUROR:**  MY HUSBAND IS SELF-EMPLOYED AND

```
1    PARTIALLY DISABLED.  MY SISTER IS A CHP OFFICER IN

2    SAN FRANCISCO.  AND MY OTHER SISTER IS A SUPERVISOR FOR THE

3    DEPARTMENT OF JUSTICE.

4               THE COURT:  IN WHAT CAPACITY?

5               PROSPECTIVE JUROR:  IN THE CRIME LAB.

6               THE COURT:  OKAY.

7               PROSPECTIVE JUROR:  SHE'S A FORENSIC SCIENTIST.

8               THE COURT:  AND WHAT IS THE NATURE OF YOUR HUSBAND'S

9    BUSINESS?

10              PROSPECTIVE JUROR:  LANDSCAPING, HOME MAINTENANCE.

11              THE COURT:  OKAY.  HAD YOU EVER HEARD ABOUT THIS

12   CASE BEFORE YOU CAME HERE TO COURT?

13              PROSPECTIVE JUROR:  NO.

14              THE COURT:  DO YOU KNOW ANY OF THE PARTIES INVOLVED

15   IN THE CASE?

16              PROSPECTIVE JUROR:  NO.

17              THE COURT:  HAVE YOU EVER BEEN A JUROR?

18              PROSPECTIVE JUROR:  NO.

19              THE COURT:  IF YOU SERVED AS A JUROR HERE, YOU HAVE

20   TO DECIDE THE FACTS, BUT YOU CAN ONLY USE THE EVIDENCE

21   INTRODUCED IN THIS COURTROOM.  YOU UNDERSTAND THAT.

22              PROSPECTIVE JUROR:  YES.

23              THE COURT:  WOULD YOU BE ABLE TO LIMIT YOUR

24   CONSIDERATION TO THAT?

25              PROSPECTIVE JUROR:  YES.
```

1          **THE COURT:**  WOULD YOU FOLLOW THE RULES OF LAW THAT I

2    GIVE FOR YOUR DELIBERATIONS?

3          **PROSPECTIVE JUROR:**  YES.

4          **THE COURT:**  ANYBODY IN THE FAMILY OR CLOSE FRIEND OR

5    RELATIVE CONNECTED WITH HIGH TECH?

6          **PROSPECTIVE JUROR:**  NO.

7          **THE COURT:**  ANYBODY CONNECTED WITH VENTURE FUNDING?

8          **PROSPECTIVE JUROR:**  NO.

9          **THE COURT:**  ANYBODY CONNECTED WITH PATENTS,

10   COPYRIGHTS, TRADEMARKS?

11         **PROSPECTIVE JUROR:**  NO.

12         **THE COURT:**  HAVE YOU EVER RUN A BUSINESS YOURSELF?

13         **PROSPECTIVE JUROR:**  MY HUSBAND AND I RUN HIS SMALL

14   BUSINESS.

15         **THE COURT:**  OKAY.  HAVE YOU EVER HAD ANY PROBLEMS

16   IN -- CONTRACT PROBLEMS OR DIFFICULTIES?

17         **PROSPECTIVE JUROR:**  NO.

18         **THE COURT:**  YOU EVER BEEN INVOLVED IN A LAWSUIT

19   YOURSELF?

20         **PROSPECTIVE JUROR:**  NO.

21         **THE COURT:**  IF YOU SERVE IN THE MATTER, WILL YOU

22   GIVE US YOUR COMMITMENT THAT YOU WOULD MAKE NO DECISION WHICH

23   YOU BASE UPON RACE OR ETHNIC ORIGIN?

24         **PROSPECTIVE JUROR:**  CORRECT.

25         **THE COURT:**  COULD YOU SERVE AND BE FAIR AND

```
1    IMPARTIAL?

2              PROSPECTIVE JUROR:  I -- CAN I ASK A CLARIFICATION

3    QUESTION?

4              THE COURT:  SURE.

5              PROSPECTIVE JUROR:  WHAT IS THE DATE THAT YOU SAID

6    IT WOULD GO THROUGH?

7              THE COURT:  IT WILL BE BE FINISHED AT LEAST BY THE

8    WEEK OF DECEMBER 15.

9              PROSPECTIVE JUROR:  I HAVE TRAVEL PLANS FOR

10   DECEMBER 15TH, SO --

11             THE COURT:  WELL, THAT'S PRETTY CLOSE.

12             I DON'T THINK -- OKAY.  YOU COULD BE EXCUSED.

13             PROSPECTIVE JUROR:  THANK YOU.

14             THE COURT:  OKAY.  THANK YOU.

15             THE CLERK:  JENNIFER NORMOYLE, N-O-R-M-O-Y-L-E.

16             THE COURT:  MS. NORMOYLE?

17             PROSPECTIVE JUROR:  MORNING.

18             THE COURT:  MAY I ASK YOUR RESIDENCE, PLEASE.

19             PROSPECTIVE JUROR:  HILLSBOROUGH.

20             THE COURT:  PARDON?

21             PROSPECTIVE JUROR:  HILLSBOROUGH.

22             THE COURT:  GOOD.  MAY I ASK YOUR OCCUPATION.

23             PROSPECTIVE JUROR:  I'M A PHYSICIAN.

24             THE COURT:  AND WHAT IS THE AREA OF YOUR PRACTICE?

25             PROSPECTIVE JUROR:  OBSTETRICS AND GYNECOLOGY.
```

1          **THE COURT:**  YOU'RE ASSOCIATED WITH ANY PARTICULAR

2     INSTITUTION OR HOSPITAL --

3          **PROSPECTIVE JUROR:**  KAISER IN DALY CITY.

4          **THE COURT:**  ALL RIGHT.  MAY I ASK THE OCCUPATION OF

5     MEMBERS OF YOUR IMMEDIATE FAMILY?

6          **PROSPECTIVE JUROR:**  MY HUSBAND IS A PHYSICIAN.  I

7     HAVE TWO YOUNG CHILDREN.

8          **THE COURT:**  OKAY.

9          **PROSPECTIVE JUROR:**  YOUNGISH CHILDREN.

10          ALL RIGHT.  AND HAVE YOU EVER HEARD OF THIS CASE

11     BEFORE TODAY?

12          **PROSPECTIVE JUROR:**  I HAVE NOT.

13          **THE COURT:**  AND DO YOU KNOW ANY OF THE PARTIES

14     INVOLVED?

15          **PROSPECTIVE JUROR:**  I DO NOT.

16          **THE COURT:**  HAVE YOU EVER BEEN A JUROR?

17          **PROSPECTIVE JUROR:**  YES.

18          **THE COURT:**  WHAT KIND OF A CASE AND WHEN WAS IT?

19          **PROSPECTIVE JUROR:**  IT WAS AN ASSAULT CASE ABOUT 15

20     TO 18 YEARS AGO.

21          **THE COURT:**  AND WHEN WERE YOU -- YOU DELIBERATED AND

22     RETURNED A VERDICT?

23          **PROSPECTIVE JUROR:**  WE DID.

24          **THE COURT:**  IS THERE ANYTHING ABOUT THIS CASE -- OR

25     THAT CASE THAT WOULD AFFECT THIS CASE IN ANY WAY?

1          **PROSPECTIVE JUROR:**  NO.

2          **THE COURT:**  YOU WOULD DECIDE THIS CASE ON ITS OWN BY

3    THE EVIDENCE IN THIS COURTROOM; IS THAT CORRECT?

4          **PROSPECTIVE JUROR:**  YES.

5          **THE COURT:**  AND YOU'D FOLLOW THE RULES OF LAW THAT I

6    GIVE YOU FOR YOUR DELIBERATIONS?

7          **PROSPECTIVE JUROR:**  YES.

8          **THE COURT:**  ANYBODY IN THE FAMILY, CLOSE FRIEND OR

9    RELATIVE, CONNECTED WITH HIGH TECH?

10         **PROSPECTIVE JUROR:**  NO.

11         **THE COURT:**  ANYBODY INVOLVED IN VENTURE FUNDING?

12         **PROSPECTIVE JUROR:**  NO.

13         **THE COURT:**  ANYBODY INVOLVED IN PATENTS OR

14   TRADEMARKS OR COPYRIGHTS?

15         **PROSPECTIVE JUROR:**  NO.

16         **THE COURT:**  HAVE YOU EVER RUN A BUSINESS YOURSELF?

17         **PROSPECTIVE JUROR:**  NO.

18         **THE COURT:**  HAVE YOU EVER BEEN INVOLVED IN A

19   LAWSUIT?

20         **PROSPECTIVE JUROR:**  PERIPHERALLY.

21         **THE COURT:**  IS THAT DONE AND IT'S ALL THROUGH?

22         **PROSPECTIVE JUROR:**  YES.

23         **THE COURT:**  AND IT HAS NOTHING TO DO WITH THIS CASE.

24         **PROSPECTIVE JUROR:**  NO.

25         **THE COURT:**  IF YOU SERVE IN THE MATTER, COULD YOU

1   GIVE US YOUR COMMITMENT THAT YOU'D MAKE NO DECISION WHICH YOU

2   BASE UPON RACE OR ETHNIC ORIGIN?

3            **PROSPECTIVE JUROR:**  YES.

4            **THE COURT:**  COULD YOU SERVE AND BE A FAIR AND

5   IMPARTIAL JUROR?

6            **PROSPECTIVE JUROR:**  SERVING ON A JURY FOR FOUR TO

7   FIVE WEEKS WOULD HAVE SIGNIFICANT IMPACT ON A LOT OF OTHER

8   PEOPLE.

9            **THE COURT:**  WELL, THAT'S -- THAT'S REALLY THE

10  QUESTION, IS THAT YOU WOULD HAVE TO DO THAT.  I MEAN, THIS IS

11  NOT A SITUATION WHERE SOMEBODY ELSE COULD FILL IN AND DO THIS?

12           **PROSPECTIVE JUROR:**  WELL, I'M JUST SAYING THAT MY

13  PARTICIPATION ON A JURY FOR FOUR TO FIVE WEEKS WOULD HAVE A LOT

14  OF IMPACT AND CAUSE A LOT OF HARDSHIP TO A LOT OF OTHER PEOPLE,

15  MY PATIENTS PRIMARILY, MY COLLEAGUES WHO WOULD NEED TO COVER

16  FOR ME, AND MY PATIENTS THAT I HAVE SCHEDULED FOR SURGICAL

17  PROCEDURES.

18           **THE COURT:**  OKAY.

19           WELL, WE DON'T WANT TO DO THAT.  OKAY.

20  MS. NORMOYLE, YOU COULD BE EXCUSED.  THANK YOU.

21           **PROSPECTIVE JUROR:**  THANK YOU.

22           **THE CLERK:**  ERICA KEILEY, K-E-I-L-E-Y.  IS THAT HOW

23  YOU SAY YOUR LAST NAME?

24           **PROSPECTIVE JUROR:**  YES.  I THINK YOU'RE PROBABLY

25  THE FIRST PERSON TO SAY IT CORRECTLY.

1          **THE COURT:**  COULD YOU TELL US YOUR RESIDENCE.

2          **PROSPECTIVE JUROR:**  SAN FRANCISCO.

3          **THE COURT:**  AND YOUR OCCUPATION.

4          **PROSPECTIVE JUROR:**  I'M A NURSE.

5          **THE COURT:**  OKAY.  WHERE DO YOU WORK?

6          **PROSPECTIVE JUROR:**  AT KAISER AND UCSF.

7          **THE COURT:**  AND YOUR EDUCATIONAL BACKGROUND?

8          **PROSPECTIVE JUROR:**  BACHELOR'S.

9          **THE COURT:**  AND MAY I ASK THE OCCUPATION OF MEMBERS

10   OF YOUR IMMEDIATE FAMILY?

11          **PROSPECTIVE JUROR:**  I'M SINGLE.  I LIVE ALONE.  MY

12   FAMILY LIVES IN THE EAST COAST.

13          **THE COURT:**  OKAY.  HAD YOU EVER HEARD OF THIS CASE

14   BEFORE YOU GOT HERE TO COURT?

15          **PROSPECTIVE JUROR:**  NO.

16          **THE COURT:**  DO YOU KNOW ANY OF THE PARTIES INVOLVED

17   IN THE MATTER?

18          **PROSPECTIVE JUROR:**  NO.

19          **THE COURT:**  HAVE YOU EVER BEEN A JUROR?

20          **PROSPECTIVE JUROR:**  NO.

21          **THE COURT:**  IF YOU'RE A JUROR HERE, YOU MUST DECIDE

22   FACTS, BUT YOU MUST LIMIT YOUR CONSIDERATION TO WHAT'S

23   PRESENTED TO YOU AS A JUROR HERE IN THE COURTROOM.

24          YOU UNDERSTAND?

25          **PROSPECTIVE JUROR:**  UM-HMM.

1          **THE COURT:**  WOULD YOU DO THAT?

2          **PROSPECTIVE JUROR:**  YES.

3          **THE COURT:**  AND WOULD YOU FOLLOW THE RULES OF LAW

4    THAT I GIVE YOU FOR YOUR DELIBERATIONS?

5          **PROSPECTIVE JUROR:**  YES.

6          **THE COURT:**  ANYBODY IN THE FAMILY, CLOSE FRIEND OR

7    RELATIVE, CONNECTED WITH HIGH TECH?

8          **PROSPECTIVE JUROR:**  YES, MY BOYFRIEND.

9          **THE COURT:**  WHAT DOES HE DO?

10         **PROSPECTIVE JUROR:**  HE'S A ELECTRICAL ENGINEER WITH

11   STANFORD LINEAR ACCELERATOR CENTER.

12         **THE COURT:**  OKAY.  WOULD THAT FRIENDSHIP HAVE

13   ANYTHING TO DO WITH YOUR SERVICE HERE?

14         **PROSPECTIVE JUROR:**  MY ONLY THING WITH THAT IS I

15   MEAN, WE'RE VERY, VERY CLOSE, AND WE TALK ABOUT THIS KIND OF

16   STUFF ALL THE TIME.  IT'S KIND OF THE NATURE OF HIS WORK.

17         **THE COURT:**  RIGHT.

18         **PROSPECTIVE JUROR:**  AND SOME OF IT I DON'T

19   UNDERSTAND, AND SOME OF IT, HE KIND OF SWAYS ME EITHER WAY.  I

20   THINK HIS OPINION WOULD HAVE A GREAT INFLUENCE ON IT SOMEHOW.

21   THAT WOULD BE THE ONLY --

22         **THE COURT:**  WELL, ONE OF THE RULES ARE THAT YOU

23   DON'T TALK TO ANYBODY ELSE WHILE YOU'RE SERVING AS A JUROR.

24         **PROSPECTIVE JUROR:**  OH, OKAY.

25                    (LAUGHTER.)

1      THE COURT:  BECAUSE THAT'S EXACTLY WHAT WE DON'T

2  WANT TO DO, IS TO HAVE SOMEBODY ELSE BE A PART OF THE JURY

3  WHO'S NOT HERE.  ALL RIGHT.  BUT YOU CAN DO THAT, COULDN'T YOU?

4      PROSPECTIVE JUROR:  YES.

5      THE COURT:  I MEAN, YOU JUST SAY THE JUDGE SAID I

6  CAN'T TALK TO YOU.

7      PROSPECTIVE JUROR:  YES.

8      THE COURT:  ALL RIGHT.  BUT YOU WOULD DO THAT.

9      PROSPECTIVE JUROR:  YES.

10     THE COURT:  OKAY.

11         ANYBODY INVOLVED -- ANYBODY, MEMBER OF FAMILY, CLOSE

12  FRIEND OR RELATIVE, INVOLVED IN VENTURE FUNDING, CAPITAL

13  FUNDING?

14     PROSPECTIVE JUROR:  NOT THAT I KNOW OF.

15     THE COURT:  ANYBODY INVOLVED IN HANDLING THE PATENTS

16  OR TRADEMARKS OR COPYRIGHTS?

17     PROSPECTIVE JUROR:  NO.

18     THE COURT:  YOU EVER RUN A BUSINESS YOURSELF?

19     PROSPECTIVE JUROR:  NO.

20     THE COURT:  YOU EVER BEEN INVOLVED IN A LAWSUIT

21  YOURSELF?

22     PROSPECTIVE JUROR:  NO.

23     THE COURT:  IF YOU SERVE HERE AS A JUROR, WILL YOU

24  GIVE US YOUR COMMITMENT THAT YOU WOULD MAKE NO DECISION WHICH

25  YOU BASE UPON RACE OR ETHNIC ORIGIN?

1              **PROSPECTIVE JUROR:**  YES.

2              **THE COURT:**  COULD YOU SERVE AND BE FAIR AND

3     IMPARTIAL, THEN?

4              **PROSPECTIVE JUROR:**  YES.  MY ONLY HARDSHIP WOULD BE

5     ONE OF MY JOBS IS PER DIEM, SO THAT WOULD BE A LACK OF A

6     SIGNIFICANT INCOME THAT I WOULD BE MISSING OUT ON.

7              **THE COURT:**  COULD YOU -- COULD YOU MAKE IT THROUGH

8     THE TIME OF THE TRIAL?  I MEAN, COULD YOU -- IF YOU WERE CALLED

9     UPON TO DO IT, COULD YOU DO IT?

10             **PROSPECTIVE JUROR:**  I WOULD IMAGINE SO.

11             **THE COURT:**  OKAY.  WELL, THAT'S THE POINT, I MEAN,

12    IF YOU COULD.

13             AND YOU'D BE FAIR AND IMPARTIAL IN DOING IT; IS THAT

14    RIGHT?

15             **PROSPECTIVE JUROR:**  YES.

16             **THE COURT:**  ALL RIGHT.  THANK YOU.

17             AND MS. KEETON.

18             **PROSPECTIVE JUROR:**  YES.

19             **THE COURT:**  MAY I ASK YOUR RESIDENCE, PLEASE.

20             **PROSPECTIVE JUROR:**  CONCORD.

21             **THE COURT:**  AND YOUR OCCUPATION.

22             **PROSPECTIVE JUROR:**  I'M RETIRED FROM BANK OF

23    AMERICA.

24             **THE COURT:**  WHAT DID YOU DO THERE?

25             **PROSPECTIVE JUROR:**  I WAS A BUSINESS SYSTEM ANALYST

1    FOR 25 YEARS.

2              THE COURT:  AND MAY I ASK YOUR EDUCATIONAL

3    BACKGROUND.

4              PROSPECTIVE JUROR:  MASTER'S.

5              THE COURT:  AND THE OCCUPATION OF MEMBERS OF YOUR

6    IMMEDIATE FAMILY.

7              PROSPECTIVE JUROR:  MY HUSBAND IS RECENTLY RETIRED

8    FROM LAWRENCE LIVERMORE LAB.  HE'S A PHYSICIST THERE.

9              THE COURT:  ALL RIGHT.  WHAT DID HE DO?

10             PROSPECTIVE JUROR:  A PHYSICIST.  SCIENTIST.

11             I HAVE A SON WHO HAS -- WHO'S A MATHEMATICIAN, WORKS

12   FOR A GOVERNMENT AGENCY; ANOTHER SON, WHO IS A MECHANICAL

13   ENGINEER, DOES HEATING AND AIR CONDITIONING DESIGN FOR MOVIE

14   THEATERS; AND A DAUGHTER WHO WORKS FOR THE LIVERMORE SCHOOL

15   DISTRICT AS A EXECUTIVE SECRETARY.

16             THE COURT:  OKAY.  GOOD.

17             AND HAVE YOU EVER HEARD ABOUT THIS CASE?

18             PROSPECTIVE JUROR:  NO.

19             THE COURT:  DO YOU KNOW ANYBODY INVOLVED IN THE

20   CASE?

21             PROSPECTIVE JUROR:  NO.

22             THE COURT:  HAVE YOU BEEN A JUROR?

23             PROSPECTIVE JUROR:  YES.  THREE TIMES.

24             THE COURT:  OKAY.  DID YOU DELIBERATE OR RETURN

25   VERDICTS IN THESE CASES?

 1              **PROSPECTIVE JUROR:**  YES.  ALL -- YES.

 2              **THE COURT:**  SO YOU KNOW THE RULES.

 3              **PROSPECTIVE JUROR:**  YES.

 4              **THE COURT:**  AND SO YOU WOULD -- IF YOU SERVED IN

 5    THIS CASE, THEN, YOU WOULD DECIDE THIS ON THE FACTS THAT ARE

 6    INTRODUCED BY WAY OF THE EVIDENCE IN THIS COURTROOM; IS THAT

 7    CORRECT?

 8              **PROSPECTIVE JUROR:**  YES.

 9              **THE COURT:**  YOU REALIZE YOU MUST LIMIT YOUR

10    CONSIDERATION TO THAT.

11              **PROSPECTIVE JUROR:**  YES.

12              **THE COURT:**  AND I WILL GIVE YOU THE RULES FOR THIS

13    CASE, AND IT WILL BE YOUR OBLIGATION TO FOLLOW THOSE.  WOULD

14    YOU DO THAT?

15              **PROSPECTIVE JUROR:**  YES.

16              **THE COURT:**  ANYBODY IN THE FAMILY, CLOSE FRIEND OR

17    RELATIVE CONNECTED WITH HIGH TECH?

18              **PROSPECTIVE JUROR:**  I DO HAVE A NEPHEW WHO WORKS FOR

19    INTEL, BUT WE RARELY DISCUSS BUSINESS, AND I SEE HIM ONLY TWICE

20    A YEAR.

21              **THE COURT:**  ALL RIGHT.  SO THAT'S NOT A RELATIONSHIP

22    THAT WOULD HAVE ANYTHING TO DO WITH YOUR SERVICE.

23              **PROSPECTIVE JUROR:**  NO.

24              **THE COURT:**  YOU WOULDN'T BE CONCERNED WITH YOUR

25    VERDICT HAVING ANY IMPACT OR BEING -- AFFECTING THAT PERSON.

```
1              PROSPECTIVE JUROR:  NO.

2              THE COURT:  OKAY.

3              ANYBODY INVOLVED IN VENTURE FUNDING?

4              PROSPECTIVE JUROR:  NO.

5              THE COURT:  ANYBODY INVOLVED IN THE BUSINESS OF

6      PATENTS OR COPYRIGHTS, TRADEMARKS?

7              PROSPECTIVE JUROR:  NO.

8              THE COURT:  HAVE YOU BEEN INVOLVED IN RUNNING A

9      BUSINESS?

10             PROSPECTIVE JUROR:  NO.

11             THE COURT:  HAVE YOU EVER BEEN INVOLVED IN A LAWSUIT

12     PERSONALLY?

13             PROSPECTIVE JUROR:  NO.

14             THE COURT:  IF YOU SERVE IN THIS CASE, WILL YOU GIVE

15     US YOUR COMMITMENT THAT YOU'D MAKE NO DECISION WHICH YOU BASE

16     UPON RACE OR ETHNIC ORIGIN?

17             PROSPECTIVE JUROR:  YES.

18             THE COURT:  COULD YOU SERVE AND DO SO FAIRLY AND

19     IMPARTIALLY?

20             PROSPECTIVE JUROR:  YES.

21             THE COURT:  THANK YOU.

22             MS. RIABOFF.

23             PROSPECTIVE JUROR:  YES.

24             THE COURT:  MAY I ASK YOUR RESIDENCE, PLEASE.

25             PROSPECTIVE JUROR:  MILL VALLEY.
```

1          **THE COURT:**  AND YOUR OCCUPATION.

2          **PROSPECTIVE JUROR:**  SELF-EMPLOYED.

3          **THE COURT:**  WHAT DO YOU DO?

4          **PROSPECTIVE JUROR:**  PROPERTY MANAGEMENT.

5          **THE COURT:**  AND WHAT IS YOUR EDUCATIONAL BACKGROUND?

6          **PROSPECTIVE JUROR:**  BACHELOR'S.

7          **THE COURT:**  AND MAY I ASK THE OCCUPATION OF MEMBERS

8   OF YOUR IMMEDIATE FAMILY.

9          **PROSPECTIVE JUROR:**  MY HUSBAND'S A DENTIST.

10          **THE COURT:**  HAD YOU EVER HEARD ABOUT THIS CASE

11   BEFORE TODAY?

12          **PROSPECTIVE JUROR:**  NO.

13          **THE COURT:**  AND DO YOU KNOW ANY OF THE PARTIES

14   INVOLVED IN THE CASE?

15          **PROSPECTIVE JUROR:**  NO.

16          **THE COURT:**  YOU'VE BEEN A JUROR BEFORE?

17          **PROSPECTIVE JUROR:**  YES, I HAVE.  TWICE BEFORE.

18          **THE COURT:**  AND DID YOU SERVE AND DELIBERATE AND

19   RETURN VERDICTS?

20          **PROSPECTIVE JUROR:**  YES, ON BOTH OF THEM.

21          **THE COURT:**  WOULD THOSE CASES HAVE ANYTHING TO DO

22   WITH THIS CASE?

23          **PROSPECTIVE JUROR:**  NO.

24          **THE COURT:**  WOULD YOU FOLLOW THE RULES OF LAW THAT I

25   GIVE YOU FOR THIS CASE?

```
1                  PROSPECTIVE JUROR:  YES.

2                  THE COURT:  ANYBODY IN THE FAMILY, CLOSE FRIEND OR

3     RELATIVE, CONNECTED WITH HIGH TECH?

4                  PROSPECTIVE JUROR:  NOT THAT I CAN THINK OF.

5                  THE COURT:  OKAY.  ANYBODY CONNECTED WITH FUNDING --

6     VENTURE FUNDING, ANYTHING OF THAT NATURE?

7                  PROSPECTIVE JUROR:  NO.

8                  THE COURT:  AND ANYBODY INVOLVED IN THE BUSINESS OF

9     PATENTING?

10                 PROSPECTIVE JUROR:  NO.

11                 THE COURT:  HAVE YOU EVER BEEN IN A SITUATION WHERE

12    YOU RAN A BUSINESS?

13                 PROSPECTIVE JUROR:  YES.

14                 THE COURT:  AND WHAT KIND OF TIME -- WHAT WAS IT

15    THAT YOU --

16                 PROSPECTIVE JUROR:  I MANAGED A NUMBER OF SMALL

17    BUSINESSES.  I MANAGED -- THE LAST ONE I MANAGED WAS MY

18    HUSBAND'S BUSINESS.  I MANAGED THAT FOR 15 YEARS.

19                 THE COURT:  OKAY.  DID THEY DEVELOP ANY PROBLEMS

20    WITH HANDLING OF CONTRACTS OR DISPUTES OR ANYTHING OF THAT

21    NATURE?

22                 PROSPECTIVE JUROR:  NO.

23                 THE COURT:  YOU EVER BEEN INVOLVED IN A LAWSUIT,

24    YOURSELF PERSONALLY?

25                 PROSPECTIVE JUROR:  NO, I HAVEN'T.
```

1     **THE COURT:**  IF YOU SERVE IN THE MATTER, COULD YOU DO

2 SO -- WOULD YOU GIVE US YOUR COMMITMENT THAT YOU WOULD MAKE NO

3 DECISION WHICH YOU BASE UPON RACE OR ETHNIC ORIGIN?

4     **PROSPECTIVE JUROR:**  OF COURSE.

5     **THE COURT:**  COULD YOU SERVE FAIRLY AND IMPARTIALLY?

6     **PROSPECTIVE JUROR:**  YES, I PROBABLY COULD, BUT RIGHT

7 NOW, I'M -- I DON'T THINK I COULD FOCUS ON THIS CASE.  MY SON

8 IS IN SOUTH AMERICA, AND HE'S SUPPOSED TO COME HOME NEXT WEEK,

9 BUT I HAVEN'T HEARD FROM HIM IN A WHILE.  THE LAST I HEARD HE

10 WAS IN PERU, AND THERE WERE MAJOR PROTESTS GOING ON AND HE WAS

11 TRYING TO CROSS BORDER.  AND SO I JUST -- I'M WORRIED ABOUT HIS

12 SAFETY.

13     **THE COURT:**  YOU'RE CONCERNED.

14     **PROSPECTIVE JUROR:**  HE'S 18 YEARS OLD, AND THIS IS

15 THE FIRST TIME HE'S TRAVELED.

16     **THE COURT:**  ALL RIGHT.  SO YOU'RE CONCERNED, BUT

17 THAT -- THAT'S THE PROBLEM.  BUT IF YOU DID SERVE HERE, YOU

18 COULD CONCENTRATE ON THE CASE?

19     **PROSPECTIVE JUROR:**  I DON'T THINK SO.

20     **THE COURT:**  YOU DON'T THINK SO.  ALL RIGHT.  YOU

21 COULD BE EXCUSED, MS. RIABOFF.  PLEASE GO BACK TO THE JURY

22 COMMISSIONER IF YOU WOULD.

23     **THE CLERK:**  PAUL PUCCINELLI, P-U-C-C-I-N-E-L-L-I.

24     **THE COURT:**  MR. PUCCINELLI; IS THAT CORRECT?

25     **PROSPECTIVE JUROR:**  YES, YOUR HONOR.

1        **THE COURT:**  MAY I ASK YOUR RESIDENCE, PLEASE.

2        **PROSPECTIVE JUROR:**  SAN FRANCISCO.

3        **THE COURT:**  AND YOUR OCCUPATION.

4        **PROSPECTIVE JUROR:**  I'M SELF-EMPLOYED.

5        **THE COURT:**  WHAT DO YOU DO?

6        **PROSPECTIVE JUROR:**  I MAKE PET TREATS, PET FOOD.

7        **THE COURT:**  AND HOW LONG HAVE YOU DONE THAT?

8        **PROSPECTIVE JUROR:**  WE ARE STARTING OUR SECOND YEAR.

9        **THE COURT:**  AND WHAT EMPLOYMENT DID YOU HAVE BEFORE?

10       **PROSPECTIVE JUROR:**  PRIOR TO THAT, I WORKED FOR A

11   SCHOOL SYSTEM AS A DIRECTOR OF I.T.

12       **THE COURT:**  AND MAY I ASK YOUR EDUCATIONAL

13   BACKGROUND.

14       **PROSPECTIVE JUROR:**  I HAVE A BACHELOR'S.

15       **THE COURT:**  MAY I ASK THE OCCUPATION OF MEMBERS OF

16   YOUR IMMEDIATE FAMILY?

17       **PROSPECTIVE JUROR:**  MY WIFE IS A HOMEMAKER.

18       **THE COURT:**  HAD YOU EVER HEARD OF THIS CASE BEFORE

19   COMING TO COURT?

20       **PROSPECTIVE JUROR:**  NO.

21       **THE COURT:**  DO YOU KNOW ANY OF THE PARTIES INVOLVED?

22       **PROSPECTIVE JUROR:**  I MAY KNOW JOHN GORMAN, IF HE'S

23   IN MODESTO.

24       **THE COURT:**  NO, THAT WOULD NOT BE THIS -- A LOT OF

25   JOHN GORMANS.

```
 1                          (LAUGHTER.)

 2              THE COURT:  OKAY.

 3          HAVE YOU EVER BEEN A JUROR BEFORE?

 4              PROSPECTIVE JUROR:  NO.

 5              THE COURT:  IF YOU SERVED HERE AS A JUROR, YOU MUST

 6      DECIDE THE FACTS.  YOU MUST LIMIT YOUR CONSIDERATION TO THE

 7      EVIDENCE INTRODUCED IN THIS COURTROOM.  WOULD YOU DO THAT?

 8              PROSPECTIVE JUROR:  YES.

 9              THE COURT:  WOULD YOU ACCEPT AND FOLLOW THE RULES OF

10      LAW THAT I GIVE YOU FOR DELIBERATIONS?

11              PROSPECTIVE JUROR:  YES.

12              THE COURT:  ANYBODY IN THE FAMILY, CLOSE FRIEND OR

13      RELATIVE, CONNECTED WITH HIGH-TECH INDUSTRY?

14              PROSPECTIVE JUROR:  I WAS HIGH TECH.

15              THE COURT:  AND WHAT DID YOU DO?

16              PROSPECTIVE JUROR:  I WAS A DIRECTOR OF I.T. FOR A

17      SCHOOL DISTRICT.  SO IT WAS PUTTING TOGETHER THEIR NETWORKS AND

18      FIBER OPTIC PATHS AND ALL THAT.

19              THE COURT:  SO YOU HAD SOME EXPERIENCE DOING THAT.

20              PROSPECTIVE JUROR:  CORRECT.

21              THE COURT:  BUT YOU REALIZE THAT ANYTHING THAT YOU

22      DID THERE AND ANYTHING YOU LEARNED THERE WOULD NOT BE A PART OF

23      THIS CASE.

24              PROSPECTIVE JUROR:  CORRECT.

25              THE COURT:  AND THAT'S THE WAY YOU WOULD TREAT IT;
```

1   IS THAT CORRECT?

2           **PROSPECTIVE JUROR:**  CORRECT.

3           **THE COURT:**  ANYBODY INVOLVED IN VENTURE FUNDING OR

4   THAT SORT?

5           **PROSPECTIVE JUROR:**  YES, ME.  I WORKED FOR A COMPANY

6   CALLED THE PECOVICH (PHONETIC) GROUP, WHO WAS ACTUALLY FUNDED

7   BY INTEL.  THEY WERE ONE OF THE MAJOR STAKEHOLDERS OF THE

8   COMPANY.  AND THEIR EXECUTIVES SAT ON OUR BOARD.

9           **THE COURT:**  AND IS THAT SOMETHING THAT YOU'RE

10  INVOLVED WITH NOW?

11          **PROSPECTIVE JUROR:**  NO.

12          **THE COURT:**  THAT'S SOMETHING THAT HAPPENED IN THE

13  PAST?

14          **PROSPECTIVE JUROR:**  CORRECT.

15          **THE COURT:**  WOULD THAT BE AN EXPERIENCE THAT WOULD

16  AFFECT THIS CASE?

17          **PROSPECTIVE JUROR:**  WELL, THEY GAVE MONEY TO THE

18  COMPANY THAT I WORK FOR, SO THEY ESSENTIALLY PAID ANY SALARY.

19          **THE COURT:**  ALL RIGHT.  BUT THAT'S SOMETHING THAT

20  HAPPENED IN THE PAST.  SO, IN EFFECT, THEY WOULD BE AN EMPLOYER

21  IN A WAY.

22          **PROSPECTIVE JUROR:**  CORRECT.

23          **THE COURT:**  THAT RELATIONSHIP -- WOULD THAT AFFECT

24  YOUR ABILITY TO SERVE IN THIS CASE?

25          **PROSPECTIVE JUROR:**  I THINK IT WOULD.  JUST LIKE I

1    SAY, THEY -- THEY ALLOWED ME TO -- TO LIVE.

2              **THE COURT:**  SO THAT WOULD BE SOMETHING THAT WOULD BE

3    A PART OF YOUR THOUGHT PROCESS IN HANDLING THIS CASE.

4              **PROSPECTIVE JUROR:**  CORRECT.

5              **THE COURT:**  OKAY.  MR. PUCCINELLI, YOU CAN BE

6    EXCUSED.  PLEASE GO BACK TO THE JURY COMMISSIONER IF YOU WOULD.

7    THANK YOU.

8              **THE CLERK:**  DENNIS LEONG, L-E-O-N-G.

9              **THE COURT:**  MR. LEONG, COULD I ASK YOUR RESIDENCE,

10   PLEASE.

11             **PROSPECTIVE JUROR:**  DALY CITY, CALIFORNIA.

12             **THE COURT:**  OCCUPATION, PLEASE.

13             **PROSPECTIVE JUROR:**  RECENTLY RETIRED.

14             **THE COURT:**  WHAT DID YOU DO?

15             **PROSPECTIVE JUROR:**  I WAS A SMALL BUSINESS OWNER FOR

16   ABOUT 11 AND A HALF YEARS, AND I WAS AN ACCOUNTANT FOR 25

17   BEFORE THAT.

18             **THE COURT:**  WHAT WAS THE NATURE OF YOUR BUSINESS?

19             **PROSPECTIVE JUROR:**  LAUNDROMAT.

20             **THE COURT:**  OKAY.  AND MAY I ASK YOUR EDUCATIONAL

21   BACKGROUND.

22             **PROSPECTIVE JUROR:**  BACHELOR'S DEGREE.

23             **THE COURT:**  AND COULD I ASK THE OCCUPATION OF

24   MEMBERS OF YOUR IMMEDIATE FAMILY.

25             **PROSPECTIVE JUROR:**  MY WIFE IS A BUDGET MANAGER FOR

```
 1    A LAW FIRM.

 2              THE COURT:   WHAT KIND OF A LAW FIRM OR WHAT --

 3    WHAT'S THE NAME OF THE LAW FIRM?

 4              PROSPECTIVE JUROR:   MORRISON & FOERSTER.

 5              THE COURT:   THEY HAVE LOTS OF DIFFERENT AREAS.

 6              PROSPECTIVE JUROR:   YES, SIR.

 7              THE COURT:   WHAT AREA DID SHE HANDLE?

 8              PROSPECTIVE JUROR:   JUST THE BUDGET.

 9              THE COURT:   OKAY.

10              DID YOU EVER HEAR OF THIS CASE BEFORE YOU GOT HERE

11    TO COURT?

12              PROSPECTIVE JUROR:   NO, YOUR HONOR.

13              THE COURT:   AND DO YOU KNOW ANY OF THE PARTIES

14    INVOLVED IN THIS CASE?

15              PROSPECTIVE JUROR:   NO, YOUR HONOR.

16              THE COURT:   HAVE YOU BEEN A JUROR?

17              PROSPECTIVE JUROR:   YES, YOUR HONOR.

18              THE COURT:   WHAT DID YOU SERVE ON, AND WHEN WAS

19    THAT?

20              PROSPECTIVE JUROR:   ABOUT FIVE YEARS AGO.  I WAS

21    INVOLVED WITH A CRIMINAL CASE.

22              THE COURT:   OKAY.  DID YOU DELIBERATE, RETURN A

23    VERDICT?

24              PROSPECTIVE JUROR:   YES, YOUR HONOR.

25              THE COURT:   AND YOU REALIZE THAT CASE WOULD HAVE
```

1    NOTHING TO DO WITH THIS CASE.

2                 **PROSPECTIVE JUROR:**  YES, YOUR HONOR.

3                 **THE COURT:**  YOU'D DECIDE THIS CASE ON ITS OWN; IS

4    THAT CORRECT?

5                 **PROSPECTIVE JUROR:**  YES, SIR, YOUR HONOR.

6                 **THE COURT:**  AND YOU'D FOLLOW THE RULES OF LAW THAT I

7    GIVE YOU FOR THIS CASE?

8                 **PROSPECTIVE JUROR:**  YES, YOUR HONOR.

9                 **THE COURT:**  IS THERE ANYONE IN THE FAMILY, CLOSE

10   FRIENDS OR RELATIVE, WHO'S CONNECTED WITH THE HIGH-TECH

11   INDUSTRY?

12                **PROSPECTIVE JUROR:**  NO, YOUR HONOR.

13                **THE COURT:**  ANYBODY WHO'S INVOLVED WITH VENTURE

14   FUNDING?

15                **PROSPECTIVE JUROR:**  NO, YOUR HONOR.

16                **THE COURT:**  ANYBODY WHO'S INVOLVED WITH THE BUSINESS

17   OF PATENTING?

18                **PROSPECTIVE JUROR:**  NO, YOUR HONOR.

19                **THE COURT:**  HAVE YOU EVER BEEN INVOLVED IN -- WELL,

20   YOU HAVE BEEN INVOLVED RUNNING A BUSINESS, BUT DID YOU EVER

21   HAVE ANY PROBLEMS WITH THAT IN TERMS OF CONTRACT DISPUTES OR

22   ANYTHING OF THAT NATURE?

23                **PROSPECTIVE JUROR:**  NO, YOUR HONOR.

24                **THE COURT:**  YOU EVER BEEN INVOLVED IN A LAWSUIT

25   YOURSELF?

```
1              PROSPECTIVE JUROR:  NO, YOUR HONOR.

2              THE COURT:  IF YOU SERVE IN THIS MATTER, WILL YOU

3    GIVE US YOUR COMMITMENT THAT YOU'D MAKE NO DECISION WHICH YOU

4    BASE UPON RACE OR ETHNIC ORIGIN?

5              PROSPECTIVE JUROR:  YES, YOUR HONOR.

6              THE COURT:  COULD YOU SERVE AND DO SO FAIRLY AND

7    IMPARTIALLY?

8              PROSPECTIVE JUROR:  YES, YOUR HONOR.

9              THE COURT:  THANK YOU.

10             AND MS. FORSTER, MAY I ASK YOUR RESIDENCE, PLEASE.

11             PROSPECTIVE JUROR:  DALY CITY.

12             THE COURT:  AND YOUR OCCUPATION.

13             PROSPECTIVE JUROR:  SUBSTITUTE TEACHER FOR

14   SAN FRANCISCO UNIFIED SCHOOL DISTRICT.

15             THE COURT:  HOW LONG HAVE YOU DONE THAT?

16             PROSPECTIVE JUROR:  SINCE 1992.

17             THE COURT:  AND YOUR EDUCATIONAL BACKGROUND IS...?

18             PROSPECTIVE JUROR:  A BA.

19             THE COURT:  MAY I ASK THE OCCUPATION OF MEMBERS OF

20   YOUR IMMEDIATE FAMILY?

21             PROSPECTIVE JUROR:  MY HUSBAND IS AN ELECTRICIAN,

22   AND ANY DAUGHTER IS A MUSIC THERAPIST.

23             THE COURT:  HAD YOU EVER HEARD OF THIS CASE BEFORE

24   COMING TO COURT?

25             PROSPECTIVE JUROR:  NO, I HAVEN'T.
```

1  **THE COURT:**  AND DO YOU KNOW ANY OF THE PARTIES

2  INVOLVED IN THE CASE?

3  **PROSPECTIVE JUROR:**  NO.

4  **THE COURT:**  HAVE YOU EVER BEEN A TRIAL JUROR?

5  **PROSPECTIVE JUROR:**  NO.

6  **THE COURT:**  IF YOU SERVE AS A JUROR HERE, YOU WILL

7  HAVE TO DECIDE FACTS.  AS YOU SIT THERE NOW, YOU KNOW NOTHING

8  OF THE CASE; IS THAT CORRECT?

9  **PROSPECTIVE JUROR:**  YES.

10  **THE COURT:**  YOU'D HAVE TO DECIDE IT, BUT YOU MUST

11  LIMIT YOUR DECISION TO WHAT YOU HEAR PRESENTED IN THIS

12  COURTROOM.  YOU UNDERSTAND THAT.

13  **PROSPECTIVE JUROR:**  YES.

14  **THE COURT:**  WOULD YOU DO THAT?

15  **PROSPECTIVE JUROR:**  YES.

16  **THE COURT:**  AND WOULD YOU FOLLOW THE RULES OF LAW

17  THAT I GIVE YOU FOR YOUR DELIBERATIONS?

18  **PROSPECTIVE JUROR:**  YES.

19  **THE COURT:**  ANYBODY IN THE FAMILY, CLOSE FRIEND OR

20  RELATIVE, CONNECTED WITH THE HIGH-TECH INDUSTRY?

21  **PROSPECTIVE JUROR:**  NO.

22  **THE COURT:**  ANYBODY CONNECTED WITH VENTURE FUNDING?

23  **PROSPECTIVE JUROR:**  NO.

24  **THE COURT:**  ANYBODY CONNECTED WITH PATENTS OR

25  TRADEMARKS OR COPYRIGHTS?

1            **PROSPECTIVE JUROR:**  NO.

2            **THE COURT:**  AND HAVE YOU RUN A BUSINESS YOURSELF OR

3     BEEN INVOLVED IN THAT?

4            **PROSPECTIVE JUROR:**  NO, I HAVEN'T.

5            **THE COURT:**  HAVE YOU EVER BEEN INVOLVED IN A LAWSUIT

6     YOURSELF?

7            **PROSPECTIVE JUROR:**  NO.

8            **THE COURT:**  IF YOU SERVE IN THE MATTER, COULD YOU

9     GIVE US YOUR COMMITMENT THAT YOU'D MAKE NO DECISION WHICH YOU

10    BASE UPON RACE OR ETHNIC ORIGIN?

11           **PROSPECTIVE JUROR:**  YES.

12           **THE COURT:**  COULD YOU SERVE AND DO SO FAIRLY AND

13    IMPARTIALLY?

14           **PROSPECTIVE JUROR:**  YES.

15           **THE COURT:**  ALL RIGHT.  WE'LL TAKE A RECESS NOW, AND

16    LET'S TAKE AN HOUR FOR LUNCH.  WELL, LET'S TAKE -- LET'S BE

17    BACK HERE AT, WHAT, 1:30.  SO IF EVERYONE WOULD PLEASE COME

18    BACK -- ALL OF THOSE SITTING IN THE JURY BOX, PLEASE COME BACK

19    AND TAKE THE SEAT YOU HAVE NOW.  AND THEN THE REST OF YOU, IF

20    YOU'D PLEASE COME BACK INTO THE COURTROOM, AND EVERYBODY BE

21    HERE PROMPTLY AT 1:30, WE'LL GET GOING AT THAT TIME.

22              (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE

23    PRESENCE OF THE JURY:)

24           **THE COURT:**  OKAY.  SO YOU'RE GOING TO WAIVE VOIR

25    DIRE?

```
 1                         (LAUGHTER.)

 2              MR. KIRSCH:  NO, YOUR HONOR.  I DON'T THINK -- WE

 3   MAY NOT NEED AN HOUR, BUT --

 4              THE COURT:  I DON'T SEE HOW YOU COULD.  YOU CAN DO

 5   IT -- WELL, I DON'T THINK YOU WILL, BUT THAT -- ALL RIGHT.  BUT

 6   WE'LL GO AHEAD WITH VOIR DIRE AND WE'LL -- SO WE'LL GET A JURY

 7   THIS AFTERNOON.

 8              NOW, IT'S THEORETICALLY POSSIBLE THAT WE COULD GET

 9   TO INSTRUCTIONS, BUT I DON'T KNOW THAT I THINK THAT THAT'S A

10   VERY GOOD IDEA.  I THINK IT'S PROBABLY BETTER THAT WE HAVE THE

11   INSTRUCTIONS IMMEDIATELY BEFORE YOU DO YOUR OPENING STATEMENTS.

12   I THINK THAT HELPS.

13              ALL RIGHT.  SO WE CONTEMPLATE THAT WE GET THE JURY,

14   AND WE'LL SORT OF GET THEM ORGANIZED AND THEN GET BACK HERE AND

15   GET STARTED ON MONDAY MORNING.  IS THAT OKAY?

16              ALL RIGHT.  1:30, WE'LL GET AT IT AGAIN.

17              MR. TANGRI:  THANK YOU, YOUR HONOR.

18              (RECESS TAKEN AT 12:22 P.M.)

19

20

21

22

23

24

25
```

```
 1   THURSDAY, NOVEMBER 13TH, 2008                        1:35 P.M.

 2

 3            THE COURT:  COUNSEL, DO YOU HAVE ANY QUESTIONS?

 4            MR. KIRSCH:  YES.  THANK YOU, YOUR HONOR.

 5            GOOD AFTERNOON, LADIES AND GENTLEMEN.

 6            AS I INTRODUCED MYSELF THIS MORNING, MY NAME IS PAUL

 7   KIRSCH.  I AM COUNSEL FOR MR. FRANK SHUM.

 8            I JUST HAVE A FEW FOLLOW-UP QUESTIONS FOR EACH OF

 9   YOU BASED ON THE VOIR DIRE THAT JUDGE JENSEN CONDUCTED THIS

10   MORNING.  SO I AM GOING TO TRY TO GO AS QUICKLY AS POSSIBLE,

11   BUT BEFORE I BEGIN, I WANT TO EMPHASIZE THAT MR. SHUM AND I

12   GENUINELY APPRECIATE THE TIME AND EFFORT THAT THIS DAY HAS --

13   THAT YOU PUT INTO THIS DAY, AND THE TIME AND EFFORT THAT A

14   GROUP OF YOU MIGHT HAVE TO PUT IN FOR THE NEXT SEVERAL WEEKS IN

15   THIS CASE.

16            AND SO I JUST WANT EVERYBODY IN THE COURTROOM TO

17   KNOW THAT MR. SHUM AND HIS COUNSEL UNDERSTANDS THE IMPOSITION

18   THAT THIS MAY CAUSE JUST TODAY AND OVER THE NEXT FEW WEEKS.

19   AND WE UNDERSTAND AND APPRECIATE THAT.

20            MR. LOEFFLER, I BELIEVE YOU SAID YOU WERE A CMC

21   PROGRAMMER; IS THAT CORRECT?

22            PROSPECTIVE JUROR:  THAT'S CORRECT.

23            MR. KIRSCH:  CAN YOU BRIEFLY EXPLAIN WHAT THAT IS?

24            PROSPECTIVE JUROR:  I PROGRAM MACHINE TOOLS THAT

25   MANUFACTURE PARTS OF VARIOUS TYPES.
```

1           **MR. KIRSCH:**  WHAT TYPES --

2           **PROSPECTIVE JUROR:**  MILLING MACHINES.

3           **MR. KIRSCH:**  EXCUSE ME, I DIDN'T HEAR.

4           **PROSPECTIVE JUROR:**  ALL TYPES OF PARTS.  THE COMPANY

5    I WORK FOR WE MAINLY MAKE LARGE VACUUM CHAMBERS AND

6    SEMICONDUCTOR --

7           **THE REPORTER:**  I'M SORRY.

8           **PROSPECTIVE JUROR:**  IT'S -- THE PARTS ARE MADE FOR

9    CAPITAL EQUIPMENT PARTS THAT ARE ASSEMBLED INTO TOOLS FOR

10   PROCESSING WAFERS.

11          **MR. KIRSCH:**  FOR WAFERS YOU SAID?

12          **PROSPECTIVE JUROR:**  YES.  FOR MICROCHIPS, YOU KNOW,

13   SILICON WAFERS.

14          **MR. KIRSCH:**  YOU SAID YOU DID THAT FOR HOW MANY

15   YEARS?

16          **PROSPECTIVE JUROR:**  I HAVE BEEN DOING IT SINCE I WAS

17   IN HIGH SCHOOL, OUT OF HIGH SCHOOL.

18          **MR. KIRSCH:**  YOU WORKED FOR SCI CORPORATION BEFORE

19   THAT?

20          **PROSPECTIVE JUROR:**  SANMINA-SCI IS THE COMPANY I

21   WORK FOR.

22          **MR. KIRSCH:**  YOU DO CMC PROGRAMMING FOR THEM?

23          **PROSPECTIVE JUROR:**  THAT'S CORRECT.

24          **MR. KIRSCH:**  MS. MEIER?

25          **PROSPECTIVE JUROR:**  YES.

1          **MR. KIRSCH:**  YOU WORKED AT SBC, CORRECT?

2          **PROSPECTIVE JUROR:**  YES.

3          **MR. KIRSCH:**  WHAT WAS YOUR POSITION THERE?

4          **PROSPECTIVE JUROR:**  WHEN I LEFT, I WAS DIRECTOR OF

5     HUMAN RESOURCES FOR ONE OF THEIR SUBSIDIARIES.

6          **MR. KIRSCH:**  WHICH SUBSIDIARY?

7          **PROSPECTIVE JUROR:**  FOR PACIFIC TELESIS GROUP.

8          **MR. KIRSCH:**  DID YOU HAVE -- WHAT WERE YOUR PREVIOUS

9     POSITIONS THERE?

10          **PROSPECTIVE JUROR:**  PREVIOUSLY MOSTLY IN MARKETING.

11    I HAD WORKED IN MARKETING.

12          **MR. KIRSCH:**  AND YOU SAID YOU HAD A FRIEND WHO

13    WORKED AT INTEL, CORRECT?

14          **PROSPECTIVE JUROR:**  YES, I DID.

15          **MR. KIRSCH:**  WHAT DID THAT FRIEND DO AT INTEL?  WHAT

16    WAS THE JOB?

17          **PROSPECTIVE JUROR:**  I DON'T KNOW THE TERMINOLOGY,

18    BUT SHE WOULD WRITE PROGRAMS, BUT NOT PROGRAMS FOR COMPUTERS;

19    PROGRAMS FOR PUTTING IN SYSTEMS, FOR PUTTING IN LARGE SYSTEMS.

20          **MR. KIRSCH:**  SHE IS NO LONGER THERE?

21          **PROSPECTIVE JUROR:**  UNFORTUNATELY SHE PASSED AWAY.

22    NO, SHE'S NOT THERE.

23          **MR. KIRSCH:**  I AM SORRY.

24          YOUR HUSBAND, YOU SAID, WORKS AT ADVANCE LIGHT

25    SOURCE?

1          **PROSPECTIVE JUROR:**  NO, THAT WAS NOT ME.  MY

2     HUSBAND, HE IS A PHOTOGRAPHER AND HE DOES IT, FREELANCE IT

3     WORK.

4          **MR. KIRSCH:**  WHO DOES HE DO THE IT WORK FOR?

5          **PROSPECTIVE JUROR:**  DIFFERENT CLIENTS.  HE HAS

6     WORKED FOR, IN THE PAST FOR BARCLAY'S, BUT HE WOULD ALWAYS WORK

7     THROUGH A CONTRACT AGENCY.

8          **MR. KIRSCH:**  WHAT TYPE OF IT WORK?

9          **PROSPECTIVE JUROR:**  MOSTLY DESKTOP SUPPORT

10    NETWORKING, THAT KIND OF WORK.

11         **MR. KIRSCH:**  ALL RIGHT.  THANK YOU.  I HAVE NO

12    FURTHER QUESTIONS.

13         MR. WATERS?

14         **PROSPECTIVE JUROR:**  YES.

15         **MR. KIRSCH:**  YOU WERE A BIOLOGIST, CORRECT?

16         **PROSPECTIVE JUROR:**  YES.  FISHERIES AND MARINE

17    BIOLOGY.

18         **MR. KIRSCH:**  YOU HAVE WORKED IN THE NORTHERN

19    CALIFORNIA AREA YOUR WHOLE CAREER?

20         **PROSPECTIVE JUROR:**  NOT ENTIRELY.  I SPENT FOUR

21    YEARS ON THE MID-ATLANTIC AREA.  MOSTLY IN CALIFORNIA.

22         **MR. KIRSCH:**  AND I WAS A LITTLE UNSURE.  WHAT IS

23    YOUR EDUCATIONAL BACKGROUND?  YOU HAVE A BA AND A MASTER'S?

24         **PROSPECTIVE JUROR:**  I HAVE A BS AND AN MS, AND SOME

25    ADDITIONAL POST-GRADUATE WORK AT STANFORD.

```
 1              MR. KIRSCH:  WHAT IS YOUR BS IN?

 2              PROSPECTIVE JUROR:  FISHERIES FROM HUMBOLDT STATE

 3    UNIVERSITY.

 4              MR. KIRSCH:  AND YOUR MASTER'S?

 5              PROSPECTIVE JUROR:  FISHERIES, BIOLOGY, UNIVERSITY

 6    OF WASHINGTON.

 7              MR. KIRSCH:  YOU DID SOME CONTINUING WORK AFTER YOUR

 8    MASTER'S, CORRECT?

 9              PROSPECTIVE JUROR:  YES.  I WASN'T ON A PH.D

10    PROGRAM, BUT I GOT SOME, YOU KNOW -- NATIONAL SCIENCE

11    FOUNDATION SUPPORT AT THE TIME TO DO SOME ADDITIONAL

12    OCEANOGRAPHIC RESEARCH THROUGH STANFORD.

13              MR. KIRSCH:  AND YOU WORKED FOR SEVERAL YEARS IN

14    THAT INDUSTRY, CORRECT?

15              PROSPECTIVE JUROR:  38 YEARS.

16              MR. KIRSCH:  ALL RIGHT.  I HAVE NO FURTHER QUESTIONS

17    FOR YOU.

18              MR. FURR?

19              PROSPECTIVE JUROR:  FURR.

20              MR. KIRSCH:  EXCUSE ME.  YOU SAID THAT YOU WERE A

21    BIC, OR BIC ENGINEER?  IS THAT WHAT YOU SAID?

22              PROSPECTIVE JUROR:  BUILDING INDUSTRIES CONSULTANT.

23              MR. KIRSCH:  BUILDING INDUSTRIES?

24              PROSPECTIVE JUROR:  CONSULTANT.

25              MR. KIRSCH:  CAN YOU EXPLAIN WHAT THAT MEANS?
```

1          **PROSPECTIVE JUROR:**  WELL, FOR INSTANCE, WHEN PACIFIC

2    TELEPHONE OR PACIFIC BELL USED TO HOUSE CABLES IN THE

3    BUILDINGS, I USED TO GO OUT AND INSPECT THE NEW BUILDINGS AND

4    DESIGN THE WIRING INSIDE THE BUILDINGS.

5          **MR. KIRSCH:**  I UNDERSTAND.

6          **PROSPECTIVE JUROR:**  AND THEN AS A DESIGN ENGINEER, I

7    DID COPPER AND FIBER, AND HIGH CAP WHICH WAS LIKE GIGEMAN AND

8    OPTEMAN.

9          I DON'T KNOW IF YOU UNDERSTAND WHAT THOSE ARE.

10         **MR. KIRSCH:**  IF YOU COULD EXPLAIN TO ME WHAT THOSE

11   ARE.

12         **PROSPECTIVE JUROR:**  I DID A BUNCH OF PRE-FIELDS FOR

13   THE SANTA ROSA SCHOOL DISTRICT.  AND AT THAT TIME IT WAS AT&T

14   PUT IN SOME BIDS FOR -- THEY TIED ALL THE SCHOOLS INTO THE MAIN

15   HEADQUARTERS OR THE BOARD OF EDUCATION MAIN BUILDING.

16         AND THEY COULD -- IT WAS A COMPUTER SYSTEM WHERE

17   THEY COULD REPORT ALL THEIR ATTENDANCE.  AND AT&T ENDED UP

18   GETTING THE BID, SO 23 SCHOOLS, IT'S CALLED GIGAMAN ON FIBER.

19         **MR. KIRSCH:**  YOU SAID YOU WORKED WITH COPPER AND

20   FIBER OPTICS ON THAT PROJECT?

21         **PROSPECTIVE JUROR:**  YES.

22         **THE WITNESS:**  WHAT SPECIFICALLY DID YOU DO?

23         **PROSPECTIVE JUROR:**  I DID THE PRE-FIELD FOR THE

24   SCHOOLS, AND THEN I DO A LOT OF THE JOBS-UP FOR THE WORKERS

25   THAT DID THE ACTUAL WORK.

1          **MR. KIRSCH:**  ALL RIGHT.  THANK YOU VERY MUCH.

2          MS. GASSNER?

3          **PROSPECTIVE JUROR:**  YES.

4          **MR. KIRSCH:**  YOU SAID THAT YOUR PARTNER HAS AN MBA,

5     CORRECT?

6          **PROSPECTIVE JUROR:**  CORRECT.

7          **MR. KIRSCH:**  WHAT TYPE OF WORK?

8          **PROSPECTIVE JUROR:**  HE WORKS FOR CONTRA COSTA WATER

9     DISTRICT.  HE'S A PUBLIC INFORMATION OFFICER.

10          **MR. KIRSCH:**  WHAT TYPE OF WORK DOES THAT ENTAIL?

11          **PROSPECTIVE JUROR:**  HE SPENDS A LOT OF TIME WORKING

12    TO PUBLICIZE A RACE THAT HAPPENS AT LOS VAQUEROS ONCE A YEAR

13    AND WE CALL IT THE TARANTULA RUN.  I DON'T GET TO SEE HIM A LOT

14    DURING THAT TIME.

15          **MR. KIRSCH:**  WHAT'S THE TARANTULA RUN?

16          **PROSPECTIVE JUROR:**  PEOPLE TRAIN TO RACE FOR THE

17    LONG RACES, 10 KILOMETERS I THINK.  IT'S KIND OF HILLY OUT

18    THERE.  SO HE DOES THE PROMOTION FOR IT, PUBLICATION, THAT KIND

19    OF STUFF.

20          **MR. KIRSCH:**  COULD I ASK, YOU EXPLAINED THAT YOU'RE

21    STUDYING, CORRECT?

22          **PROSPECTIVE JUROR:**  I AM CLOSE TO LICENSING.  I'M

23    STUDYING FOR MY EXAM.  MARRIAGE FAMILY THERAPIST.

24          **MR. KIRSCH:**  HOW LONG HAVE YOU BEEN STUDYING FOR

25    THAT EXAM?

1          **PROSPECTIVE JUROR:** TOO LONG.

2          (LAUGHTER)

3          **MR. KIRSCH:** YOU DON'T NEED TO --

4          **PROSPECTIVE JUROR:** A LONG TIME.  YEARS.

5          **MR. KIRSCH:** WHEN DO YOU EXPECT TO TAKE IT?

6          **PROSPECTIVE JUROR:** FEBRUARY.

7          **MR. KIRSCH:** GOOD LUCK.

8          **PROSPECTIVE JUROR:** THANK YOU.

9          **MR. KIRSCH:** THAT'S ALL THE QUESTIONS I HAVE FOR YOU

10   AT THIS TIME.

11          MR. DEGUZMAN?

12          **PROSPECTIVE JUROR:** YES.

13          **MR. KIRSCH:** I WAS UNCLEAR ABOUT YOUR EDUCATIONAL

14   BACKGROUND.  YOU SAID YOU HAD A BACHELOR'S, I BELIEVE.

15          **PROSPECTIVE JUROR:** BACHELOR'S IN ACCOUNTING.

16          **MR. KIRSCH:** IN ACCOUNTING.  AND DID YOU EVER WORK

17   AS AN ACCOUNTANT?

18          **PROSPECTIVE JUROR:** I DID FOR ABOUT THREE YEARS.

19          **MR. KIRSCH:** WHERE DID YOU WORK AS AN ACCOUNTANT?

20          **PROSPECTIVE JUROR:** I WAS EMPLOYED BY THE THEN U.S.

21   MINT OVER ON FIFTH STREET IN SAN FRANCISCO.  AND THEN ANOTHER

22   YEAR FOR THE ESPIRIT CORP.

23          **MR. KIRSCH:** WHAT DID YOU DO THERE?

24          **PROSPECTIVE JUROR:** I WAS A STAFF ACCOUNTANT.

25          **MR. KIRSCH:** THEN YOU BECAME A SOFTWARE ENGINEER; IS

1    THAT CORRECT?

2            **PROSPECTIVE JUROR:**  AFTER THAT I DID TECH SUPPORT

3    WORK FOR SHRINK-WRAP SOFTWARE.

4            **MR. KIRSCH:**  EXCUSE ME, WHAT DID YOU SAY?

5            **PROSPECTIVE JUROR:**  CONSUMER SHRINK-WRAP SOFTWARE.

6            **MR. KIRSCH:**  WHAT IS THAT?

7            **PROSPECTIVE JUROR:**  QUICKEN BOOKS.

8            **MR. KIRSCH:**  THEN YOU MOVED INTO SOFTWARE

9    ENGINEERING, CORRECT?

10           **PROSPECTIVE JUROR:**  THEN I MOVED INTO -- I MOVED TO

11   A SOFTWARE QUALITY ASSURANCE, NOT NECESSARILY SOFTWARE

12   ENGINEERING.

13           **MR. KIRSCH:**  AND THE NAME OF YOUR EMPLOYER NOW IS

14   WHAT?

15           **PROSPECTIVE JUROR:**  PAY PAL.

16           **MR. KIRSCH:**  WHAT IS THE NATURE OF YOUR WORK

17   SPECIFICALLY FOR PAY PAL?

18           **PROSPECTIVE JUROR:**  I DO QA WORK FOR THE --

19   APPLICATION.

20           **THE REPORTER:**  I'M SORRY.

21           **MR. KIRSCH:**  WHICH APPLICATION?

22           **PROSPECTIVE JUROR:**  I DO QA WORK PAY PAL WEBSITE.

23   THEY DO MONEY TRANSFER AND PAYMENTS ON LINE.

24           **MR. KIRSCH:**  UNDERSTAND.

25           YOU ALSO MENTIONED THAT YOU WERE A DEFENDANT IN A

1    PERSONAL INJURY CASE, CORRECT?

2              **PROSPECTIVE JUROR:**  CORRECT.

3              **MR. KIRSCH:**  WERE YOU SATISFIED WITH THE RESOLUTION

4    OF THAT CASE?

5              **PROSPECTIVE JUROR:**  YES, I WAS.

6              **MR. KIRSCH:**  AND YOUR EXPERIENCE ON THAT CASE

7    WOULDN'T EFFECT YOUR ABILITY TO LOOK AT THIS CASE FAIRLY FROM

8    THE PLAINTIFF'S OR THE DEFENSE SIDE, CORRECT?

9              **PROSPECTIVE JUROR:**  IT SHOULDN'T.

10             **MR. KIRSCH:**  DID YOU SAY IT SHOULDN'T?

11             **PROSPECTIVE JUROR:**  IT WON'T.

12             **MR. KIRSCH:**  OKAY.  THE.

13             **PROSPECTIVE JUROR:**  THE SETTING IS JUST A LITTLE BIT

14   INTIMIDATING.  IT JUST GIVES ME FLASHBACKS.

15             (LAUGHTER.)

16             **MR. KIRSCH:**  HOW LONG WAS THAT -- WAS THERE A TRIAL

17   IN THAT CASE?

18             **PROSPECTIVE JUROR:**  WE WENT TO TRIAL.  THAT WAS

19   EARLY '90S.

20             **MR. KIRSCH:**  HOW LONG WAS THE TRIAL?

21             **PROSPECTIVE JUROR:**  IT WAS AT LEAST TWO WEEKS.

22             **MR. KIRSCH:**  I HOPE YOU DON'T HAVE TOO MANY

23   FLASHBACKS.

24             **PROSPECTIVE JUROR:**  THANK YOU.

25             **MR. KIRSCH:**  YOUR BROTHER WORKS FOR JDS UNIPHASE?

```
1              PROSPECTIVE JUROR:  CORRECT.

2              MR. KIRSCH:  HOW LONG HAS HE BEEN THERE?

3              PROSPECTIVE JUROR:  I WOULD SAY AT LEAST EIGHT

4    YEARS.

5              MR. KIRSCH:  AND DO YOU AND YOUR BROTHER TALK OFTEN

6    ABOUT HIS WORK?

7              PROSPECTIVE JUROR:  NO, NOT REALLY.

8              MR. KIRSCH:  WERE YOU AWARE THAT JDS UNIPHASE

9    ACQUIRED A COMPANY CALLED SDL?

10             PROSPECTIVE JUROR:  NO, I AM NOT.

11             MR. KIRSCH:  YOUR BROTHER AND YOU NEVER TALKED ABOUT

12   THAT?

13             PROSPECTIVE JUROR:  CORRECT.  NO.

14             MR. KIRSCH:  ALL RIGHT.  THANK YOU.  I HAVE NO

15   FURTHER QUESTIONS.

16             AND MS. MCDOUGALD?

17             PROSPECTIVE JUROR:  YES.

18             MR. KIRSCH:  YOU SAID YOU HAVE ALWAYS BEEN A JUROR;

19   IS THAT RIGHT?

20             PROSPECTIVE JUROR:  I ALWAYS GET PICKED.

21             MR. KIRSCH:  AND HOW MANY TIMES HAVE YOU BEEN A

22   FOREPERSON ON THESE JURIES?

23             PROSPECTIVE JUROR:  OH, NEVER.

24             MR. KIRSCH:  NEVER?

25             PROSPECTIVE JUROR:  NEVER.
```

1          **MR. KIRSCH:**  HOW MANY JURIES APPROXIMATELY HAVE YOU

2    BEEN ON?

3          **PROSPECTIVE JUROR:**  I HAVE BEEN ON THREE.  THIS WILL

4    BE MY FOURTH.

5          **MR. KIRSCH:**  YOU SAID YOUR PARTNER IS IN MARKETING

6    IN FOSTER CITY; IS THAT RIGHT?

7          **PROSPECTIVE JUROR:**  MARKETING, SALES.  WAS.  SHE'S

8    UNEMPLOYED RIGHT NOW.

9          **MR. KIRSCH:**  WHAT TYPE OF MARKETING DID SHE DO?

10          **PROSPECTIVE JUROR:**  ADVERTISING PREMIUMS.  SHE'LL

11    LOGO ON ANYTHING.  SHE'LL DO IT.

12          **MR. KIRSCH:**  LOGOS?

13          **PROSPECTIVE JUROR:**  YEAH, ANY KIND OF ADVERTISING

14    FOR COMPANIES.

15          **MR. KIRSCH:**  I DON'T HAVE ANY FURTHER QUESTIONS FOR

16    YOU AT THIS TIME.

17          MS. WONG?

18          **PROSPECTIVE JUROR:**  YES.

19          **MR. KIRSCH:**  YOU SAID THAT YOU -- I BELIEVE YOU SAID

20    THAT YOU WORK IN NEW PRODUCTS INTRODUCTION IN HEALTH CARE; IS

21    THAT CORRECT?

22          **PROSPECTIVE JUROR:**  YES.  THAT'S CORRECT.

23          **MR. KIRSCH:**  CAN YOU GIVE ME SOME MORE DETAILS ON

24    WHAT YOU DO SPECIFICALLY?

25          **PROSPECTIVE JUROR:**  OKAY.  BASICALLY I WORK FROM THE

1    CUSTOMER SUPPORT AND SERVICE ORGANIZATION AS A REPRESENTATIVE

2    ON THE RESEARCH AND DEVELOPMENT TEAMS, BASICALLY MAKING SURE

3    THAT THE SERVICE ABILITY RELIABILITY REQUIREMENTS ARE MET FOR

4    THE NEW PRODUCTS THAT WE'RE DEVELOPING.

5            **MR. KIRSCH:**  WHAT TYPE OF PRODUCTS ARE YOU

6    DEVELOPING?

7            **PROSPECTIVE JUROR:**  NUCLEAR MEDICINE SYSTEMS.

8            **MR. KIRSCH:**  WHAT DO YOU MEAN BY THAT?

9            **PROSPECTIVE JUROR:**  GAMMA CAMERAS --

10           **MR. KIRSCH:**  I AM SORRY, WHAT DID YOU SAY?

11           **PROSPECTIVE JUROR:**  GAMMA CAMERAS.  IT'S A DIVISION

12    OF RADIOLOGY.

13           **MR. KIRSCH:**  ANYTHING ELSE?  ANY OTHER PRODUCTS?

14           **PROSPECTIVE JUROR:**  NO.  NO.  WE HAVE, I MEAN, IT'S

15    THE CAMERAS AND THEN THE WORKSTATIONS.

16           **MR. KIRSCH:**  HOW LONG HAVE YOU BEEN DOING THAT?

17           **PROSPECTIVE JUROR:**  I HAVE BEEN WITH THIS COMPANY 12

18    YEARS.

19           **MR. KIRSCH:**  BEFORE THAT WHAT DID YOU DO?

20           **PROSPECTIVE JUROR:**  I WAS ACTUALLY A NUCLEAR

21    MEDICINE TECHNOLOGIST, WHICH I STILL AM.

22           **MR. KIRSCH:**  AND YOU SAID YOUR HUSBAND, I BELIEVE,

23    WORKS FOR A MANUFACTURING COMPANY FOR THE TELECOMS?

24           **PROSPECTIVE JUROR:**  SOME OF HIS CUSTOMERS ARE

25    ACTUALLY -- THEY DO BOX BUILDS FOR THE TELECOMMUNICATIONS

```
1   COMPANIES, LIKE ZONE AND RED BACK NETWORKS.

2              MR. KIRSCH:  WHAT SPECIFICALLY DOES YOUR HUSBAND DO?

3              PROSPECTIVE JUROR:  HE'S A SENIOR DIRECTOR OF

4   MATERIALS.  SO HE'S INVOLVED WITH PROCUREMENT AND LOGISTICS.

5              MR. KIRSCH:  THANK YOU.  I HAVE NO FURTHER

6   QUESTIONS.  IF YOU CAN BRING THE MICROPHONE DOWN HERE.  THANK

7   YOU.

8              PROSPECTIVE JUROR:  HI.

9              MR. KIRSCH:  MS. CHAK?

10             PROSPECTIVE JUROR:  YES.

11             MR. KIRSCH:  I HAVE A COUPLE OF QUESTIONS FOR YOU AS

12  WELL.

13             YOU SAID YOU WORKED AT WELLS FARGO, CORRECT?

14             PROSPECTIVE JUROR:  UH-HUH.

15             MR. KIRSCH:  WHAT DEPARTMENT ARE YOU IN AT WELLS

16  FARGO?

17             PROSPECTIVE JUROR:  QA.

18             MR. KIRSCH:  QUALITY ASSURANCE?

19             PROSPECTIVE JUROR:  YES.

20             MR. KIRSCH:  HOW LONG HAVE YOU BEEN IN THAT

21  DEPARTMENT?

22             PROSPECTIVE JUROR:  THAT DEPARTMENT THREE YEARS.

23             MR. KIRSCH:  AND BEFORE THAT WHAT DEPARTMENT WERE

24  YOU IN?

25             PROSPECTIVE JUROR:  I WAS WITH TRUST SYSTEMS.
```

1          **MR. KIRSCH:**  AND YOU HAVE BEEN AT WELLS FARGO FOR

2     APPROXIMATELY 17 YEARS?

3               **PROSPECTIVE JUROR:**  (NODS HEAD).

4          **MR. KIRSCH:**  BEFORE THAT?

5          **PROSPECTIVE JUROR:**  HUMAN RESOURCES.

6          **MR. KIRSCH:**  AT WELLS FARGO --

7          **PROSPECTIVE JUROR:**  UH-HUH.

8          **MR. KIRSCH:**  -- OR ANOTHER COMPANY.

9          **PROSPECTIVE JUROR:**  YEAH.

10         **MR. KIRSCH:**  AT WELLS FARGO?

11         **PROSPECTIVE JUROR:**  AT WELLS FARGO.

12         **MR. KIRSCH:**  YOU SAID YOUR BROTHER IS A FINANCIAL

13    ANALYST; IS THAT CORRECT?

14         **PROSPECTIVE JUROR:**  UH-HUH.

15         **MR. KIRSCH:**  WHO DOES HE WORK FOR?

16         **PROSPECTIVE JUROR:**  MELLON BANK INVESTMENT.

17         **MR. KIRSCH:**  IS THAT IN THE CITY?

18         **PROSPECTIVE JUROR:**  IN THE CITY.

19         **MR. KIRSCH:**  DO YOU TALK TO HIM OFTEN ABOUT WHAT HIS

20    WORK ENTAILS?

21         **PROSPECTIVE JUROR:**  NOT REALLY.

22         **MR. KIRSCH:**  DOES HE TALK TO YOU ABOUT WHAT YOUR

23    WORK ENTAILS?

24         **PROSPECTIVE JUROR:**  NO.

25         **MR. KIRSCH:**  ALL RIGHT.  THAT'S FINE.  I HAVE NO

1    FURTHER QUESTIONS FOR YOU.

2              THANK YOU.

3              MS. FETTERS, YOU SAID YOU WERE A LEGAL ASSISTANT AT

4    SEDGWICK FOR A NUMBER OF YEARS, CORRECT?

5              **PROSPECTIVE JUROR:**  YES.

6              **MR. KIRSCH:**  SEDGWICK IS A FIRM IN SAN FRANCISCO

7    THAT SPECIALIZES IN INSURANCE DEFENSE LITIGATION; ISN'T THAT

8    RIGHT?

9              **PROSPECTIVE JUROR:**  THAT'S CORRECT, BUT I WAS IN THE

10   ENVIRONMENTAL DEPARTMENT.

11             **MR. KIRSCH:**  YOU WERE IN THE ENVIRONMENTAL

12   DEPARTMENT?

13             **PROSPECTIVE JUROR:**  UH-HUH.

14             **MR. KIRSCH:**  WHAT SPECIFICALLY DID YOU DO?  WERE YOU

15   A PARALEGAL OR --

16             **PROSPECTIVE JUROR:**  YES.

17             **MR. KIRSCH:**  -- RESEARCHER?

18             **PROSPECTIVE JUROR:**  OKAY.  IN THE BEGINNING WHEN WE

19   WEREN'T SO LARGE, I DID, BECAUSE I WAS ADMITTED TO THE

20   CALIFORNIA BAR, BUT I SINCE DROPPED THAT, I WOULD ATTEND PRE

21   AND POST HEARINGS ON BEHALF OF OUR CLIENTS.

22             THEN WE GREW BIGGER, SO THEN I BECAME INTERESTED,

23   BECAUSE MY BACKGROUND IS SCIENCE, MY UNDERGRADUATE DEGREE IS IN

24   SCIENCE, WE WERE DOING CHEMICAL CASES, AND SO I SWITCHED FROM

25   DOING ANYTHING LEGAL OVER TO BASICALLY LEGAL ASSISTANT WORK,

1   WHICH IS ANYWHERE FROM TRIAL PREP THROUGH READING ARTICLES AND

2   EXPLAINING THINGS TO THE ATTORNEYS OR EXPLAINING THINGS TO --

3   WHAT THE ATTORNEY HAS EXPLAINED TO ME AND THEN I EXPLAIN DOWN

4   TO SOMEONE BELOW ME BECAUSE THEY DIDN'T UNDERSTAND WHAT THE

5   ATTORNEY SAID.

6          **MR. KIRSCH:**  I UNDERSTAND.  THAT OFTEN HAPPENS,

7   DOESN'T IT?

8          **PROSPECTIVE JUROR:**  I JUST SORT OF WAS CALLED ON.

9   SOMETIMES THEY SEND ME TO ANOTHER DEPARTMENT BECAUSE SOMEONE

10  WAS HAVING PROBLEMS UNDERSTANDING SOMETHING, SO I WAS THE

11  CHEAPEST ONE TO SEND.

12         **MR. KIRSCH:**  SO YOUR EXPERTISE WAS IN WHAT

13  SPECIFICALLY?

14         **PROSPECTIVE JUROR:**  WHAT?

15         **MR. KIRSCH:**  WHAT WAS YOUR EXPERTISE IN?

16         **PROSPECTIVE JUROR:**  WELL, THEY SAID IT WAS

17  ORGANIZATION AND TRANSLATION.

18         IF YOU WANT TO KNOW WHAT AREAS OF MY EDUCATION?

19  BIOLOGY -- BIOLOGICAL SCIENCES.  I WAS A REGISTERED DIETICIAN

20  FOR MANY, MANY YEARS, AND I WORKED IN HOSPITALS.  AND I MARRIED

21  A PHYSICIAN, SO I COULD GO HELP EVERYBODY UNDERSTAND AS MUCH AS

22  I COULD EXPLAIN.

23         **MR. KIRSCH:**  ALL RIGHT.  AND I DO WANT TO ASK YOU,

24  YOU SAID YOUR HUSBAND WAS A, IN A NUCLEAR MEDICINE POSITION?

25         **PROSPECTIVE JUROR:**  THAT'S CORRECT.

1          **MR. KIRSCH:**  WHAT DOES THAT MEAN?

2          **PROSPECTIVE JUROR:**  DO YOU KNOW WHAT AN MRI IS?

3          **MR. KIRSCH:**  YES.

4          **PROSPECTIVE JUROR:**  HE READS YOUR MRI.

5          **PROSPECTIVE JUROR:**  IT'S AN ADVANCED COURSE -- I

6     THINK I NEED YOUR HELP.

7          **PROSPECTIVE JUROR:**  HE'S THE DOCTOR WHO READS THE

8     IMAGES THAT I PRODUCE.

9          **MR. KIRSCH:**  I UNDERSTAND.  FOR SOME OF US WE'RE

10    CLAUSTROPHOBIC.  WE CAN'T GET INTO THE MRI.

11         ALL RIGHT.  THANK YOU.  I HAVE NO FURTHER QUESTIONS

12    FOR YOU.  THANK YOU.

13         MS. RAO, I BELIEVE YOU SAID YOU WORKED IN TAX

14    PREPARATION FOR A LONG TIME; IS THAT RIGHT?

15         **PROSPECTIVE JUROR:**  NOT LONG TIME, JUST THREE YEARS.

16         **MR. KIRSCH:**  JUST THREE YEARS.  I MISUNDERSTOOD.  I

17    AM SORRY.

18         WHO DID YOU WORK FOR?

19         **PROSPECTIVE JUROR:**  FOR MYSELF BECAUSE I TOOK ENROLL

20    AGENT EXAMS.  MYSELF.  I HAD A SMALL PRACTICE FOR MYSELF.

21         **MR. KIRSCH:**  WHERE WAS THAT PRACTICE?

22         **PROSPECTIVE JUROR:**  INCOME TAX PREPARATION.

23         **MR. KIRSCH:**  YES.  WHERE WAS THAT?

24         **PROSPECTIVE JUROR:**  IN MARIN COUNTY.

25         **MR. KIRSCH:**  AND YOUR CLIENTS WERE INDIVIDUALS?

1          PROSPECTIVE JUROR:  MAINLY FRIENDS.  YEAH,

2     INDIVIDUALS.

3          MR. KIRSCH:  AND YOU SAID YOU HAD A NUMBER OF

4     FRIENDS IN SILICON VALLEY; IS THAT RIGHT?

5          PROSPECTIVE JUROR:  YEAH, LOT OF FAMILY AND FRIENDS,

6     COUSINS.

7          MR. KIRSCH:  WHAT TYPES OF JOBS ARE THEY INVOLVED

8     IN?

9          PROSPECTIVE JUROR:  THEY ARE ALL KINDS OF JOBS.

10    THERE ARE SOME OF THEM ARE DATA COMPANY, SOME OF THEM ARE

11    INTEL.  ALL OVER.

12         MR. KIRSCH:  SOME OF THEM WORK FOR INTEL; IS THAT

13    CORRECT?

14         PROSPECTIVE JUROR:  YES.

15         MR. KIRSCH:  HOW MANY FRIENDS OF YOURS OR FAMILY

16    MEMBERS WORK AT INTEL?

17         PROSPECTIVE JUROR:  AT INTEL, I WOULD SAY AT LEAST

18    THREE OR FOUR OF THEM.

19         MR. KIRSCH:  ARE YOU CLOSE TO THEM?

20         PROSPECTIVE JUROR:  NO.

21         MR. KIRSCH:  WHAT DO THESE THREE FRIENDS OR FAMILY

22    MEMBERS DO AT INTEL?

23         PROSPECTIVE JUROR:  I DON'T EXACTLY REMEMBER THE

24    SPECIFIC JOBS.  I DON'T KNOW.

25         MR. KIRSCH:  YOU DON'T TALK TO THEM ABOUT THE

```
1    DETAILS OF THE JOB?

2              PROSPECTIVE JUROR:  NO, I DON'T.

3              MR. KIRSCH:  HOW OFTEN DO YOU SPEAK WITH THEM?

4              PROSPECTIVE JUROR:  THREE OR FOUR YEARS.  ONCE EVERY

5    THREE OR FOUR YEARS.

6              MR. KIRSCH:  ONCE EVERY THREE OR FOUR YEARS.  OKAY.

7              SO THE FACT THAT YOU HAVE THESE FRIENDS THAT WORK AT

8    INTEL WOULDN'T EFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL?

9              PROSPECTIVE JUROR:  NO.

10             MR. KIRSCH:  THANK YOU.  I HAVE NO FURTHER

11   QUESTIONS.

12             MR. MCGREGOR?

13             PROSPECTIVE JUROR:  YES.

14             MR. KIRSCH:  YOU SAID YOU WERE AN EXPERT WITNESS?

15             PROSPECTIVE JUROR:  YES.

16             MR. KIRSCH:  HOW MANY TIMES?

17             PROSPECTIVE JUROR:  ONLY ONE TIME.

18             MR. KIRSCH:  IN WHAT TYPE OF CASE?

19             PROSPECTIVE JUROR:  THE QUEEN VERSUS PENTHOUSE

20   MAGAZINE.

21             MR. KIRSCH:  WOW.

22             (LAUGHTER.)

23             MR. KIRSCH:  I NEED SOME ADVICE, YOUR HONOR.

24             THE COURT:  IT IS UP TO YOU.

25             MR. KIRSCH:  OKAY.  DID YOU REPRESENT THE QUEEN --
```

```
 1     ON THE SIDE OF THE QUEEN?

 2               PROSPECTIVE JUROR:  YES.

 3               MR. KIRSCH:  THEN I WON'T ASK ANY FURTHER QUESTIONS.

 4               YOU ALSO SAID THAT YOU WERE -- YOU WROTE MANY BOOKS

 5     OR WROTE SOME BOOKS; IS THAT RIGHT?

 6               PROSPECTIVE JUROR:  LET'S NOT EXAGGERATE.

 7               MR. KIRSCH:  I APOLOGIZE.  HOW MANY BOOKS HAVE YOU

 8     WRITTEN?

 9               PROSPECTIVE JUROR:  SIX.

10               MR. KIRSCH:  WHAT DO THEY CONCERN?

11               PROSPECTIVE JUROR:  THEY DEAL WITH ART IN RELATION

12     TO PSYCHIATRY AND PSYCHOANALYSIS.

13               MR. KIRSCH:  THAT'S FASCINATING.  CAN YOU DESCRIBE

14     IN A LITTLE BIT MORE DETAIL WHAT THE SUBJECT MATTER OF THE

15     BOOKS ARE?

16               PROSPECTIVE JUROR:  WELL, VERY RARELY PEOPLE WITH

17     SEVERE MENTAL ILLNESSES, PARTICULARLY SCHIZOPHRENIA, BEGIN TO

18     DRAW AND PAINT, BUT ON RARE OCCASIONS THEIR DRAWING AND

19     PAINTING IS OF EXCEPTIONAL IMPORTANCE, AND VERY BEAUTIFUL.

20     THOSE ARE THE PAINTERS I HAVE BEEN STUDYING.

21               MR. KIRSCH:  YOU TAUGHT IN TORONTO; IS THAT CORRECT?

22               PROSPECTIVE JUROR:  YES.

23               MR. KIRSCH:  AT WHAT WAR SCHOOL?

24               PROSPECTIVE JUROR:  IT'S NOW CALLED ONTARIO

25     UNIVERSITY OF ART.
```

1        **MR. KIRSCH:**  NOW YOU ARE RETIRED FROM TEACHING?

2        **PROSPECTIVE JUROR:**  I RETIRED MANY, MANY YEARS AGO.

3        **MR. KIRSCH:**  AND YOU ARE SPENDING MOST OF YOUR TIME

4    WRITING BOOKS; IS THAT CORRECT?

5        **PROSPECTIVE JUROR:**  YES.  UH-HUH.

6        **MR. KIRSCH:**  ARE YOU WORKING ON FURTHER BOOKS RIGHT

7    NOW IN THE SAME SUBJECT MATTER?

8        **PROSPECTIVE JUROR:**  NO, NOT NECESSARILY.

9        **MR. KIRSCH:**  YOU SAID YOUR PARTNER WORKS FOR THE

10   CITY OF SAN FRANCISCO; IS THAT RIGHT?

11       **PROSPECTIVE JUROR:**  THAT'S CORRECT.

12       **MR. KIRSCH:**  WHAT DOES YOUR PARTNER DO?

13       **PROSPECTIVE JUROR:**  HE'S IN HUMAN RESOURCES.

14       **MR. KIRSCH:**  I HAVE NO FURTHER QUESTIONS AT THIS

15   TIME.  THANK YOU.

16       **PROSPECTIVE JUROR:**  SURE.

17       **MR. KIRSCH:**  MS. KEILEY?

18       **PROSPECTIVE JUROR:**  KEILEY.

19       **MR. KIRSCH:**  I APOLOGIZE.

20       YOU SAID YOU ARE FROM THE EAST COAST ORIGINALLY.

21       **PROSPECTIVE JUROR:**  UH-HUH.

22       **MR. KIRSCH:**  HOW LONG HAVE YOU BEEN ON THE WEST

23   COAST?

24       **PROSPECTIVE JUROR:**  ABOUT FOUR YEARS NOW.

25       **MR. KIRSCH:**  WHERE ON THE EAST COAST?

```
1              PROSPECTIVE JUROR:  BOSTON.

2              MR. KIRSCH:  AND YOU ARE A NURSE, CORRECT?

3              PROSPECTIVE JUROR:  UH-HUH.

4              MR. KIRSCH:  WHAT TYPE OF NURSE?

5              PROSPECTIVE JUROR:  PEDIATRIC.

6              MR. KIRSCH:  YOU HAVE BEEN A PEDIATRIC NURSE FOR HOW

7    LONG?

8              PROSPECTIVE JUROR:  SIX YEARS.

9              MR. KIRSCH:  DID YOU GO TO SCHOOL ON THE EAST COAST?

10             PROSPECTIVE JUROR:  UH-HUH.  I WENT TO NORTHEASTERN

11   UNIVERSITY IN BOSTON.

12             MR. KIRSCH:  YOU ALSO TALKED ABOUT THE FACT THAT

13   YOUR BOYFRIEND WORKS AT STANFORD LINEAR?

14             PROSPECTIVE JUROR:  ACCELERATOR.

15             MR. KIRSCH:  ACCELERATOR.

16             PROSPECTIVE JUROR:  RIGHT.

17             MR. KIRSCH:  CAN YOU GIVE ME MORE DETAIL ABOUT WHAT

18   HE DOES THERE?

19             PROSPECTIVE JUROR:  I DON'T REALLY QUITE UNDERSTAND

20   IT TO BE HONEST.

21             MR. KIRSCH:  I PROBABLY WOULDN'T EITHER.

22             PROSPECTIVE JUROR:  HE'S AN ELECTRICAL ENGINEER

23   THERE.  HE WORKS WITH DIFFERENT WIRING SYSTEMS CURRENTLY.  I

24   FORGET, LCLS, WHICH IS A NEW DIVISION HE'S WORKING FOR.  I AM

25   NOT EVEN SURE WHAT THAT STANDS FOR.
```

1          **MR. KIRSCH:**  ALL RIGHT.  I HAVE NO FURTHER QUESTIONS

2     OF YOU AT THIS TIME.

3          **PROSPECTIVE JUROR:**  OKAY.

4          **MR. KIRSCH:**  THANK YOU.

5          MS. KEETON?

6          **PROSPECTIVE JUROR:**  UH-HUH.

7          **MR. KIRSCH:**  YOU SAID THAT YOU WERE A BUSINESS

8     SYSTEMS ANALYST FOR B OF A FOR A NUMBER OF YEARS?

9          **PROSPECTIVE JUROR:**  YES.

10          **MR. KIRSCH:**  WHAT DID YOUR JOB ENTAIL?

11          **PROSPECTIVE JUROR:**  PROGRAMMING AND DESIGNING FOR

12     THE BRANCH NETWORK.

13          **MR. KIRSCH:**  PROGRAMMING AND DESIGNING WHAT TYPE OF

14     THINGS?

15          **PROSPECTIVE JUROR:**  THINGS THAT RUN THE BRANCH

16     NETWORK LIKE ATM, HOME BANKING, CHECKING, SAVINGS.

17          **MR. KIRSCH:**  YOU SAID YOU HAVE A MASTER'S DEGREE?

18          **PROSPECTIVE JUROR:**  YES.

19          **MR. KIRSCH:**  IN WHAT?

20          **PROSPECTIVE JUROR:**  STATISTICS.

21          **MR. KIRSCH:**  YOU ALSO WERE A JUROR BEFORE, CORRECT?

22          **PROSPECTIVE JUROR:**  YES, THREE TIMES.

23          **MR. KIRSCH:**  WERE YOU EVER FOREPERSON?

24          **PROSPECTIVE JUROR:**  NO.

25          **MR. KIRSCH:**  I HAVE NO FURTHER QUESTIONS.  THANK

1    YOU.

2              MR. LEONG?

3              **PROSPECTIVE JUROR:**  YES.

4         **MR. KIRSCH:**  YOU WERE AN ACCOUNTANT, CORRECT?

5              **PROSPECTIVE JUROR:**  YES.

6         **MR. KIRSCH:**  WAS YOUR DEGREE IN ACCOUNTING?

7              **PROSPECTIVE JUROR:**  BIZ AD.

8         **MR. KIRSCH:**  BUSINESS --

9              **PROSPECTIVE JUROR:**  ADMINISTRATION.

10        **MR. KIRSCH:**  WHERE DID YOU GET THAT DEGREE?

11             **PROSPECTIVE JUROR:**  GOLDEN GATE UNIVERSITY.

12        **MR. KIRSCH:**  WHEN YOU WORKED AS AN ACCOUNTANT, DID

13   YOU HAVE YOUR OWN FIRM OR WORK AT A BIG FIRM?

14             **PROSPECTIVE JUROR:**  NO.  I WORKED FOR BOTH PUBLIC

15   AND PRIVATE SECTOR.

16             **MR. KIRSCH:**  WHAT DID YOU DO IN THE PUBLIC SECTOR?

17             **PROSPECTIVE JUROR:**  STAFF ACCOUNTANT.

18        **MR. KIRSCH:**  FOR WHAT PUBLIC SECTOR?

19             **PROSPECTIVE JUROR:**  BOARD OF EDUCATION.

20        **MR. KIRSCH:**  IN THE PRIVATE SECTOR?

21             **PROSPECTIVE JUROR:**  CPA, SMALL CPA FIRM.

22             **MR. KIRSCH:**  HOW LONG WERE YOU IN THE SMALL CPA

23   FIRM?

24             **PROSPECTIVE JUROR:**  JUST A COUPLE OF YEARS.

25             **MR. KIRSCH:**  SO YOU WORKED AT THE BOARD OF EDUCATION

1    FOR A NUMBER OF YEARS?

2              **PROSPECTIVE JUROR:**  ABOUT FIVE YEARS.

3              **MR. KIRSCH:**  THEN YOU HAD YOUR OWN SMALL BUSINESS,

4    CORRECT?

5              **PROSPECTIVE JUROR:**  RIGHT.

6              **MR. KIRSCH:**  ALL RIGHT.  I HAVE NO FURTHER

7    QUESTIONS.

8              THANK YOU.

9              **PROSPECTIVE JUROR:**  THANK YOU.

10             **MR. KIRSCH:**  MS. FORSTER, YOU ARE A PART-TIME

11   TEACHER --

12             **PROSPECTIVE JUROR:**  YES.

13             **MR. KIRSCH:**  -- IS THAT CORRECT?

14             WHAT DO YOU SPECIALIZE IN?

15             **PROSPECTIVE JUROR:**  EARLY CHILDHOOD WITH THE YOUNG

16   CHILDREN.

17             **MR. KIRSCH:**  KINDERGARTEN AND BELOW?

18             **PROSPECTIVE JUROR:**  FIVE AND BELOW, YES.

19             **MR. KIRSCH:**  YOU HAVE BEEN DOING PART-TIME TEACHING

20   FOR A NUMBER OF YEARS?

21             **PROSPECTIVE JUROR:**  YES.

22             **MR. KIRSCH:**  YOU HAVE A BACHELOR'S DEGREE IN?

23             **PROSPECTIVE JUROR:**  EARLY CHILDHOOD EDUCATION.

24             **MR. KIRSCH:**  AND YOU SAID THAT YOUR HUSBAND WORKS AS

25   AN ELECTRICIAN?

```
 1              PROSPECTIVE JUROR:  YES.

 2              MR. KIRSCH:  WHAT DOES HE DO IS SPECIFICALLY?

 3              PROSPECTIVE JUROR:  WORKS AS AN ELECTRICIAN FOR

 4    UNITED AIRLINES.

 5              MR. KIRSCH:  HE HAS BEEN THERE FOR A NUMBER OF

 6    YEARS?

 7              PROSPECTIVE JUROR:  YES.

 8              MR. KIRSCH:  ALL RIGHT.

 9              YOUR HONOR, I DON'T HAVE ANY FURTHER QUESTIONS AT

10    THIS TIME.

11              THE COURT:  THANK YOU VERY MUCH.

12              COUNSEL?

13              MR. TAYLOR:  GOOD AFTERNOON.  LET ME RE-INTRODUCE

14    MYSELF AS WELL.

15              I AM STEVE TAYLOR AND I AM ONE OF THE LAWYERS

16    REPRESENTING THE DEFENDANTS IN THE CASE.

17              BECAUSE OF THE TIME CONSTRAINTS, I AM AFRAID I AM

18    NOT GOING TO HAVE A CHANCE TO ASK EVERY ONE OF YOU AN

19    INDIVIDUAL QUESTION.  AND I WOULD ASK YOU NOT TO HOLD IT

20    AGAINST ME, AND THAT'S OKAY WITH YOU, BUT I DO HAVE SOME

21    QUESTIONS FOR SOME OF YOU.

22              WHERE DID THE MICROPHONE LAND?

23              MR. LOEFFLER, LET ME START WITH YOU BY ASKING, IF I

24    UNDERSTOOD YOU CORRECTLY, YOU HAVE 30 YEARS OF EXPERIENCE AS A

25    CMC PROGRAMMER; IS THAT CORRECT?
```

1          **PROSPECTIVE JUROR:**  YES.  WELL, NOT SO MUCH

2    PROGRAMMING, AS A MACHINIST.

3          **MR. TAYLOR:**  HOW DOES ONE, FOR THE POSITION THAT YOU

4    HAVE NOW, HOW DOES ONE GET TRAINED FOR THAT?  WHAT TRAINING

5    HAVE YOU --

6          **PROSPECTIVE JUROR:**  MOST OF IT IS ON THE JOB,

7    LEARNING FROM PEOPLE ABOVE ME AND GETTING AN OPPORTUNITY TO

8    LEARNING THE SOFTWARE ON MY OWN, A LOT OF IT WAS.

9          **MR. TAYLOR:**  ARE YOU NOW IN THE PROCESS OF TRAINING

10   OTHER PEOPLE BELOW YOU?

11         **PROSPECTIVE JUROR:**  NOT USUALLY.  I DON'T HAVE TIME

12   TO TRAIN PEOPLE.

13         **MR. TAYLOR:**  COULD I ASK YOU TO HAND THE MIKE DOWN

14   TO MS. CHAK FOR A MINUTE?

15         MS. CHAK, THE QUESTION I HAVE FOR YOU REALLY HAS TO

16   DO WITH YOUR CURRENT JOB.  AND I WANT TO KNOW A LITTLE BIT MORE

17   ABOUT WHAT IT IS THAT YOU DO AND WHAT YOUR RESPONSIBILITIES ARE

18   FOR WELLS FARGO.

19         **PROSPECTIVE JUROR:**  WELL, LIKE I SAID, MY POSITION

20   IS ADMINISTRATIVE ASSISTANT.  SO PRETTY MUCH I RUN THE OFFICE,

21   ASSIST MY MANAGER, SEVERAL MANAGERS IN ADMINISTRATIVE WORK.

22         **MR. TAYLOR:**  ALL RIGHT.  HELPING THE WHEELS OF THE

23   BANK GO FORWARD?

24         **PROSPECTIVE JUROR:**  YEAH.

25         **MR. TAYLOR:**  LET ME ASK A QUESTION OF YOU, BUT I

1    WOULD LIKE THE WHOLE GROUP TO BE THINKING ABOUT IT WHEN I ASK

2    IT.

3            THIS IS A CASE, AS YOU KNOW, WHERE THERE IS AN

4    INDIVIDUAL ON ONE SIDE OF THE CASE AND AN INDIVIDUAL AND A

5    CORPORATION ON THE OTHER SIDE OF THE CASE.  AND WHAT IS

6    IMPORTANT FOR US TO KNOW IS WHETHER YOU, MS. CHAK, OR REALLY

7    ANYBODY, WHETHER ANYBODY IN THAT KIND OF A SITUATION WOULD

8    CANDIDLY FEEL THAT THEY WOULD JUST FAVOR IN SOME WAY THE

9    INDIVIDUAL IF IT IS A CASE AGAINST AN INDIVIDUAL AND A

10   CORPORATION.

11           WOULD YOU IN ANY WAY TEND TO START OUT MORE

12   FAVORABLE TOWARD THE INDIVIDUAL AND LESS FAVORABLE TOWARD THE

13   CORPORATION?

14           **PROSPECTIVE JUROR:**  I'M -- CAN YOU REPEAT THAT

15   QUESTION?

16           **MR. TAYLOR:**  WELL, I'M WONDERING WHETHER YOU WOULD

17   START OUT IN A CASE LIKE THIS WHERE IT'S AN INDIVIDUAL AND A

18   CORPORATION, AND YOU WOULD BE MORE SYMPATHETIC JUST AT THE

19   STARTING POINT TO THE INDIVIDUAL.

20           **PROSPECTIVE JUROR:**  UH-HUH.

21           **MR. TAYLOR:**  WOULD YOU FEEL THAT WAY OR WOULD YOU BE

22   WILLING TO LOOK AT THE EVIDENCE FAIRLY?

23           **PROSPECTIVE JUROR:**  I WOULD LOOK AT THE EVIDENCE AND

24   TREAT IT FAIRLY.

25           **MR. TAYLOR:**  LET ME ASK THE REST OF THE GROUP JUST

1    BY RAISE OF HANDS.  IS THAT A PROBLEM FOR THE GROUP WHERE YOU

2    WOULD JUST HONESTLY YOU WERE BEING CANDID, YOU WOULD JUST START

3    OUT BEING MUCH MORE SYMPATHETIC TO AN INDIVIDUAL JUST BECAUSE

4    IT'S AN INDIVIDUAL AND CORPORATION.

5             YES, MS. KEILEY.

6             **PROSPECTIVE JUROR:**  I WOULD.

7             **MR. TAYLOR:**  WOULD YOU?  TELL ME WHY.

8             **PROSPECTIVE JUROR:**  I HAVE KNOWN PEOPLE THAT HAVE

9    WORKED ON PATENTS, JUST PEOPLE I HAVE BEEN FRIENDS WITH OR HAVE

10   KNOWN, AND I KNOW THE HARD WORK THAT GOES INTO THAT, AND I

11   WOULD KIND OF SIDE WITH THEM JUST OUT OF SYMPATHY AS A HUMAN

12   BEING.

13            **MR. TAYLOR:**  ALL RIGHT.

14            **PROSPECTIVE JUROR:**  NATURALLY WITHOUT HEARING

15   ANYTHING, JUST OUT OF HABIT.

16            **MR. TAYLOR:**  AND WOULD THE CORPORATION, BECAUSE WE

17   REPRESENT BOTH DR. VERDIELL, BUT ALSO THE CORPORATION, WOULD WE

18   BE A LITTLE BIT BEHIND IN YOUR MIND, NOT QUITE ON A LEVEL

19   PLAYING FIELD TO START WITH?

20            **PROSPECTIVE JUROR:**  KIND OF.  TO BE HONEST.  I

21   MEAN...

22            **MR. TAYLOR:**  ANYBODY ELSE FEEL THAT WAY?

23            **PROSPECTIVE JUROR:**  I AM JUST THINKING OF ALL THE

24   OLD MOVIES WHERE THE INDIVIDUAL IS UP AGAINST THE BANK OR

25   SOMETHING.  I AM NOT SAYING IT WOULD EFFECT MY DECISION, BUT

1   THAT'S THE FIRST THING THAT CAME IN MY MIND WHEN YOU SAID THE

2   INDIVIDUAL VERSUS THE CORPORATION.

3           **MR. TAYLOR:**   WOULD YOU, IN THIS CASE, YOU KNOW

4   NOTHING ABOUT IT OTHER THAN WHAT HIS HONOR HAS TOLD YOU, DO YOU

5   START OUT IN THIS CASE WITH THAT SAME FEELING THAT, YOU KNOW, I

6   AM KIND OF PULLING FOR THE INDIVIDUAL IF THERE IS A

7   CORPORATION.

8           **PROSPECTIVE JUROR:**   I WILL WOULDN'T START OUT, BUT

9   YOUR MENTION OF IT --

10          **MR. TAYLOR:**   IT'S IMPORTANT.   AND I MENTIONED IT

11  BECAUSE I THINK IT'S AN IMPORTANT THING TO GET ON THE TABLE AND

12  JUST TALK ABOUT IT AND SEE IF ANYONE HAS THAT KIND OF AN ISSUE.

13          MR. MCGREGOR, I THOUGHT I SAW YOUR HAND A LITTLE

14  ANYWAY.

15          **PROSPECTIVE JUROR:**   I LIKE THE FACT THAT YOU RAISE

16  THE QUESTION.   MY LIFE WORKS BETTER ALWAYS WITH INDIVIDUALS.   I

17  HAVE NO EXPERIENCE WITH CORPORATIONS.   SO THAT'S WHERE IT'S AT.

18          **MR. TAYLOR:**   SO HERE YOU COME TO THIS CASE AS A

19  JUROR, AND YOU UNDERSTAND, I AM SURE, THE RESPONSIBILITIES OF

20  THAT, CAN YOU PUT THAT NATURAL AFFINITY OR JUST RELATIONSHIPS

21  IN YOUR LIFE WITH INDIVIDUALS ASIDE AND TREAT THE INDIVIDUAL

22  AND THE CORPORATION EXACTLY THE SAME FOR A PROCEEDING LIKE

23  THIS?

24          **PROSPECTIVE JUROR:**   I WOULD HOPE SO.   I MEAN, I'M AN

25  HISTORIAN AS WELL, SO I DO TAKE FACTS VERY SERIOUSLY INDEED.

1   SO THOSE WILL BE THE PREEMINENT FACTORS ULTIMATELY.

2          **MR. TAYLOR:**  SO I APPRECIATE YOUR LIKING THAT I

3   RAISE THE QUESTION.

4          NOW, FOCUSING JUST FOR A MINUTE ON THE ANSWER, I AM

5   THINKING ABOUT YOUR FRAME OF MIND.  CAN YOU PUT YOURSELF IN A

6   POSITION WHERE WE REALLY DO START OUT ON AN EQUAL POSITION OR

7   DO YOU THINK THE CORPORATION IS BEHIND RIGHT FROM THE

8   BEGINNING?

9          **PROSPECTIVE JUROR:**  I WOULD SAY THE CORPORATION IS

10  BEHIND UNTIL THEY PROVE DIFFERENTLY, YES.

11         **MR. TAYLOR:**  ANYBODY ELSE HAVE A SIMILAR ISSUE WHERE

12  THERE'S GOING TO BE AN ADVANTAGE IN SOME WAY BECAUSE ONE OF THE

13  DEFENDANTS IS A CORPORATION.  RAISE YOUR HAND IF YOU DO.  I

14  WOULD LIKE TO KNOW ABOUT IT.

15         YES, MR. LOEFFLER.

16         **PROSPECTIVE JUROR:**  I WOULD ALWAYS SYMPATHIZE WITH

17  THE INDIVIDUAL, BUT I THINK MOST PEOPLE, JUST FROM READING THE

18  NEWS AND JUST EVERYTHING THAT GOES ON IN THE WORLD INITIALLY

19  WOULD THINK THAT THE CORPORATION WOULD HAVE AN UPPER HAND AT

20  SOME POINT.  OR INITIALLY MAY BE JUST GENERALLY, YOU KNOW, YOU

21  READ IN THE NEWS IS DEEP POCKETS GENERALLY.

22         YOU KNOW, I AM NOT SAYING MYSELF, BUT I'M JUST

23  SAYING I THINK HUMAN NATURE TENDS TO MAKE PEOPLE THINK THAT

24  WAY.  THAT, YOU KNOW, JUST BY WHAT YOU READ IN THE NEWS THAT

25  CORPORATIONS GENERALLY HAVE THE UPPER HAND.

1          **MR. TAYLOR:**  SO LET ME ASK BOTH YOU AND

2     MR. MCGREGOR.  IN THIS CASE, CAN YOU WAIT UNTIL ALL THE

3     EVIDENCE COMES IN BEFORE MAKING YOUR DECISION?

4          **PROSPECTIVE JUROR:**  OH, YES.

5          **MR. TAYLOR:**  CAN YOU DO THAT?

6          ONE OF THE THINGS I WANTED TO MENTION TO EVERYBODY

7     AND ASK EVERYBODY ABOUT IS THERE ARE PROCEDURES FOR THE WAY

8     TRIALS TAKE PLACE AND SOMEBODY HAS TO GO FIRST.  SOMEBODY HAS

9     TO GO SECOND.

10          AND THE PLAINTIFF, MR. SHUM, GETS TO GO FIRST.  AND

11     WE HAVE TO WAIT AND THEN WE GO SECOND.

12          AND IT'S HARD BECAUSE A LOT OF US ARE GOOD AT MAKING

13     QUICK DECISIONS AND COMING TO CONCLUSIONS AND MAKING JUDGMENTS

14     ABOUT FACTS OR PEOPLE QUICKLY.  AND WHAT I NEED TO KNOW IS

15     WHETHER THERE IS ANYBODY ON THIS PANEL WHO WOULD HAVE, JUST

16     HONESTLY, WOULD HAVE A VERY HARD TIME RESTRAINING THEMSELVES

17     FROM REACHING A CONCLUSION UNTIL ALL THE FACTS ARE IN.  IN

18     OTHER WORDS, UNTIL BOTH SIDES HAVE HAD A CHANCE TO PRESENT

19     THEIR FACTS.

20          DOES ANYBODY HAVE A PROBLEM WITH THAT?

21          MS. KEETON, WOULD THAT BE ANY KIND OF AN ISSUE FOR

22     YOU AT ALL?

23          **PROSPECTIVE JUROR:**  NO.

24          **THE COURT:**  MR. LEONG?

25          **PROSPECTIVE JUROR:**  NO.

1          **MR. TAYLOR:**  AND MS. FORSTER, WOULD THAT BE ANY KIND

2     OF AN ISSUE?

3          **PROSPECTIVE JUROR:**  I DON'T THINK SO.

4          **MR. TAYLOR:**  OKAY.  THAT WOULD BE IMPORTANT.

5          THERE'S ANOTHER ISSUE LIKE THIS THAT I WILL ALSO PUT

6     ON THE TABLE SO WE CAN TALK ABOUT IT, AND THAT IS WHETHER

7     ANYONE THINKS JUST BECAUSE SOMEONE FILED A COMPLAINT, HAS

8     BROUGHT A CLAIM TO THIS COURT, WHICH THEY ARE PERFECTLY

9     ENTITLED TO DO, THAT BY DOING THAT, THAT MEANS IN SOME WAYS

10    THAT THE DEFENDANT MUST HAVE DONE SOMETHING WRONG.  WE WOULDN'T

11    BE HERE IF THE DEFENDANT DID SOMETHING WRONG WHICH IS NOT TRUE,

12    BUT I WANT TO SEE IF ANYONE HAS THAT KIND OF A MINDSET.  IT

13    WOULD BE IMPORTANT FOR US TO KNOW.

14          MS. KEILEY, IS THAT FOR YOU AT ALL?

15          **PROSPECTIVE JUROR:**  (SHAKES HEAD).

16          **MR. TAYLOR:**  MS. WONG, HOW ABOUT YOU?  DO YOU HAVE

17    ANY SENSE OF THAT?

18          **PROSPECTIVE JUROR:**  NO, I THINK --

19          **MR. TAYLOR:**  I INTERRUPTED YOU.

20          **PROSPECTIVE JUROR:**  THAT'S OKAY.  I WAS GOING TO SAY

21    IT IS THE NATURE OF COMING TO COURT.  I MEAN, IT'S YOUR CASE.

22          **MR. TAYLOR:**  DOES ANYBODY ELSE HAVE ANY -- I DON'T

23    WANT TO START OFF IN A HOLE IN THE CASE BY HAVING YOU THINK

24    THAT JUST BECAUSE WE ARE HERE AS A DEFENDANT WE DID SOMETHING

25    WRONG NECESSARILY.

1              ARE WE SQUARE ON THAT EVERYBODY?

2              GREAT.

3              LET ME ASK A COUPLE OF INDIVIDUAL QUESTIONS, IF I

4    CAN, JUST TO CIRCLE BACK.

5              LIKE MS. WONG, YOU HAVE A -- YOU'RE A CO-INVENTOR ON

6    A PENDING PATENT; IS THAT RIGHT?

7              **PROSPECTIVE JUROR:**  PARTICIPANT IN THE PATENT.

8              **MR. TAYLOR:**  ARE YOU LISTED AS AN INVENTOR?

9              **PROSPECTIVE JUROR:**  I AM NOT SURE IF I AM LISTED AS

10   AN INVENTOR ON IT.  I HAVEN'T SEEN THE ACTUAL PAPERWORK YET.

11   IT'S STILL IN PROCESS.

12             **MR. TAYLOR:**  TELL US WHAT YOUR ROLE WAS IN THE

13   PROCESS.

14             **PROSPECTIVE JUROR:**  BASICALLY IT HAD TO DO WITH SOME

15   OF THE PERFORMANCE OF THE PROCESSING OF THE IMAGES WITH THIS

16   ALGORITHM AND LOOKING AT THE CLINICAL IMPACT.

17             **MR. TAYLOR:**  DID YOU CONTRIBUTE SOMETHING THAT YOU

18   CONSIDERED TO BE YOUR INVENTION TO THIS PROCESS?

19             **PROSPECTIVE JUROR:**  NO.

20             **MR. TAYLOR:**  AND YOU ARE NOT SURE WHETHER YOU ARE

21   LISTED AS AN INVENTOR OR NOT?

22             **PROSPECTIVE JUROR:**  YEAH, I AM NOT POSITIVE.

23             **MR. TAYLOR:**  DOES DID MATTER TO YOU?

24             **PROSPECTIVE JUROR:**  NO, IT DOESN'T.

25             **MR. TAYLOR:**  THANK YOU VERY MUCH.

1          DOES IT MATTER TO YOU WHETHER YOU ARE LISTED AS AN

2     INVENTOR?

3          **PROSPECTIVE JUROR:**  NO.

4          **MR. TAYLOR:**  OKAY.  LET ME SEE WHAT ELSE I HAVE.

5          I ACTUALLY -- I CAN DO THIS WITHOUT THE MIKE,

6     MR. MCGREGOR.

7          I WAS CURIOUS WHAT YOUR SPECIALTY IS OTHER THAN THE

8     SCHIZOPHRENIA PART, IS THERE ANOTHER PART OF ART HISTORY THAT

9     YOU SPECIALIZE IN?

10          **PROSPECTIVE JUROR:**  I LECTURED ON CHINESE ART

11    HISTORY.

12          **MR. TAYLOR:**  ANY PARTICULAR PART OF IT?

13          **PROSPECTIVE JUROR:**  NO.  I WAS DOING INTRODUCTORY

14    COURSES, SO A WIDE RANGE.

15          **MR. TAYLOR:**  MS. FETTERS I CAN DO THIS WITHOUT THE

16    MICROPHONE AS WELL.

17          DID YOU -- YOU DECIDED NOT TO PRACTICE LAW?

18          **PROSPECTIVE JUROR:**  YES.  WELL, I NEVER INTENDED TO

19    PRACTICE LAW IN THE FIRST PLACE, BUT THAT'S A WHOLE JOKING

20    STORY.

21          **MR. TAYLOR:**  THIS IS A REALLY WISE DECISION.  I WAS

22    CURIOUS.

23          (LAUGHTER.)

24          **PROSPECTIVE JUROR:**  I WENT TO LAW SCHOOL BECAUSE I

25    HAD A BET ON WITH MY HUSBAND AND MY BROTHER.  AND THEY TOLD ME

1    THAT -- MAKE ME A MIGI, WHICH IS A 1936 MG IF I PASSED THE BAR.

2    AND I TOLD THEM THAT I DIDN'T WANT TO REALLY TAKE THE BAR,

3    BECAUSE I DIDN'T WANT TO PRACTICE, I JUST WANTED TO SEE WHAT

4    LAW SCHOOL WAS LIKE.

5         SO THEY SAID IF I WOULD AT LEAST TRY, THEY WOULD GET

6    ME THE MIGI.  I TRIED AND I PASSED.  AND THEN I COULDN'T FIGURE

7    OUT WHAT TO DO SO I JOINED SEDGWICK AND THEY LET ME DO A FEW

8    PRETRIAL, POST-TRIAL HEARINGS WHEN THEY WERE SMALLER, BUT I AM

9    SORRY, SIR, IT JUST DIDN'T DO ANYTHING FOR ME.

10        I AM MUCH MORE -- WAS INTERESTED IN WORKING WITH THE

11   OTHER EMPLOYEES AND HELPING THEM LEARN TO HELP BECAUSE SO MANY

12   OF THEM WERE SO YOUNG AND I WAS SO OLD, THAT THEY WOULDN'T

13   QUITE GRASP WHAT THE ATTORNEYS WOULD ASK THEM TO DO.  THAT'S

14   WHY I SAID I WAS KIND OF A GO-AROUND HERE AND DO THIS, GO

15   AROUND THERE AND DO THAT TYPE THING.  I DID GET INVOLVED IN

16   SOME PARTICULAR CASES.

17        **MR. TAYLOR:**  SO THIS DECISION NOT TO PRACTICE LAW IS

18   ONE YOU HAVE NEVER REGRETTED PROBABLY.

19        **PROSPECTIVE JUROR:**  NO.

20        (LAUGHTER.)

21        **PROSPECTIVE JUROR:**  IT WAS FUN LEARNING.

22        **MR. TAYLOR:**  THAT'S GREAT.

23        MS. MEIER, I MAY GET THIS WRONG.  FORGIVE ME IF I

24   DO.  I UNDERSTOOD YOU WORK FOR A SMALL NONPROFIT?

25        **PROSPECTIVE JUROR:**  YES, I CURRENTLY DO.

1          **MR. TAYLOR:**  DOING EVENTS AND THINGS LIKE THAT?

2          **PROSPECTIVE JUROR:**  DOING EVENTS, GRANT WRITING,

3    FUNDRAISING.

4          **MR. TAYLOR:**  WHICH NONPROFIT IS IT?

5          **PROSPECTIVE JUROR:**  MISSION NEIGHBOR CENTERS IN THE

6    MISSION DISTRICT IN SAN FRANCISCO.

7          **MR. TAYLOR:**  WHAT KIND OF ACTIVITIES ARE THEY

8    INVOLVED IN?

9          **PROSPECTIVE JUROR:**  THEY DO MAINLY SOCIAL SERVICES

10   FOR SENIORS, YOUTH, GANG PREVENTION.  THEY WORK WITH FAMILIES

11   OF, MOSTLY FAMILIES, IMMIGRANT FAMILIES FROM LATIN AMERICAN

12   COUNTRIES.

13         **MR. TAYLOR:**  THAT'S GREAT.  YOUR SPECIFIC DUTIES

14   WOULD BE ALONG THE LINES OF WHAT?

15         **PROSPECTIVE JUROR:**  I DO EVENT PLANNING.  WE DO A

16   VERY LARGE EVENT CALLED CARNIVAL SAN FRANCISCO, WHICH IS A BIG

17   FUNDRAISER.  I HANDLE ALL OF THE EVENTS RELATED TO THAT.  AND

18   CINCO DE MAYO, MEXICAN CELEBRATION, AND I HANDLE THAT.  AND I

19   DO GRANT WRITING AND FUNDRAISING.

20         **MR. TAYLOR:**  I HAVE ANOTHER ONE OF THESE GRADUATE

21   DEGREE OR DEGREE QUESTIONS FOR YOU.

22         MS. FETTERS SAYS SHE NEVER PRACTICED LAW; YOU HAVE A

23   JOURNALISM DEGREE?

24         **PROSPECTIVE JUROR:**  I HAVE A JOURNALISM DEGREE.

25         **MR. TAYLOR:**  DID YOU EVER WORK IN JOURNALISM?

1         **PROSPECTIVE JUROR:**  YES, I DID.  WHEN I FIRST CAME

2    TO CALIFORNIA, I WORKED FOR THE BAY GUARDIAN.  IT WASN'T QUITE

3    AS LUCRATIVE AS GOING INTO OTHER FIELDS.

4         **MR. TAYLOR:**  THANK YOU VERY MUCH.

5         **PROSPECTIVE JUROR:**  YOU ARE WELCOME.

6         **MR. TAYLOR:**  MS. KEILEY, I HAVE ANOTHER QUESTION FOR

7    YOU.  THIS WAS LISTENING TO YOU RESPOND TO THE JUDGE'S

8    QUESTIONS.

9         I AM CONCERNED OR I HEARD YOU EXPRESS SOME CONCERN

10   ABOUT LOSING SOME OF YOUR WORKER'S PER DIEM.  I WANT TO MAKE

11   SURE THAT IF THIS TRIAL GOES ON, IF IT LASTS AS LONG AS HIS

12   HONOR SAYS IT MAY LAST, THAT YOU'RE GOING TO BE COMFORTABLE

13   SITTING HERE AND LOSING THAT PER DIEM IS GOING TO BE SOMETHING

14   THAT'S GOING TO BE A PROBLEM AND GOING TO BE NOT ONLY AN

15   ANNOYANCE BUT A DISTRACTION WITH YOU.  I JUST WANTED TO CHECK

16   THAT WITH YOU.

17        **PROSPECTIVE JUROR:**  IT COULD BE BECAUSE IT IS A

18   PRETTY SIZEABLE CHUNK.  IT IS A NONBENEFITED POSITION, SO IT'S

19   SIGNIFICANTLY HIGHER THAN MY OTHER JOB.  IT IS A BIT.  YEAH, IT

20   MIGHT BE A PROBLEM.

21        **MR. TAYLOR:**  EXCUSE ME, I DON'T MEAN TO PRY IN ANY

22   WAY.  IS THAT SOURCE OF INCOME FROM THAT PER DIEM JOB IMPORTANT

23   TO YOU RIGHT NOW?

24        **PROSPECTIVE JUROR:**  YEAH, IT IS.

25        **MR. TAYLOR:**  WOULD IT BE DIFFICULT FOR YOU TO GO

1   WITHOUT IT FOR FOUR OR FIVE WEEKS?

2           **PROSPECTIVE JUROR:**  IT WOULD BE A CHANGE IN

3   LIFESTYLE, BUT IT WOULD BE OKAY.

4           **MR. TAYLOR:**  OKAY.

5           **PROSPECTIVE JUROR:**  MY OTHER ISSUE THAT I FORGOT TO

6   BRING UP, I THINK IT WOULD BE FINE; I GENERALLY WORK NIGHT

7   SHIFT.  MEANING FROM 7:00 P.M. TO 7:00 A.M., OR 11:00 P.M. TO

8   7:00 A.M.  SO THIS IS GENERALLY MY TIME TO SLEEP.

9           (LAUGHTER.)

10          WHICH EXPLAINS WHY I AM SO DITSY.

11          **MR. TAYLOR:**  IF THE TRIAL GOES FORWARD, ARE YOU

12  GOING TO TRY TO WORK SOME OR ALL OF THE NIGHT SHIFTS?

13          **PROSPECTIVE JUROR:**  I CAN'T.  I WON'T BE ABLE TO.

14  BECAUSE THAT WOULD -- I CAN'T WORK AT ALL.  BECAUSE I WOULDN'T

15  BE ABLE TO WORK ALL NIGHT -- I HAD TROUBLE JUST BEING HERE

16  TODAY ACTUALLY BECAUSE I HAD SLEPT LITERALLY TWO HOURS LAST

17  NIGHT BECAUSE I WORKED ANOTHER NIGHT PREVIOUSLY.

18          **MR. TAYLOR:**  OKAY.  OKAY.  ARE YOU COMFORTABLE

19  SITTING AS A JUROR ON THIS CASE WITH ALL OF THESE

20  CONSIDERATIONS GOING ON?

21          **PROSPECTIVE JUROR:**  I CAN DO IT.

22          **MR. TAYLOR:**  IS IT GOING TO BE DISTRACTING TO YOU?

23          **PROSPECTIVE JUROR:**  HOPEFULLY NOT.  I THINK IT WILL

24  BE OKAY BECAUSE THE HOURS ARE SHORTER.  IT'S NOT VERY EARLY IN

25  THE MORNING.  STARTS AT 9:00, I BELIEVE, SO THAT IS A LITTLE

1    BETTER.

2              **MR. TAYLOR:**  OKAY.  I HAVE A QUESTION TO ASK THE

3    GROUP ABOUT CONTRACTS BECAUSE YOU ALL SAID YOU HAD VARIOUS

4    EXPERIENCE WITH CONTRACTS OR NO EXPERIENCE WITH CONTRACTS.

5    THIS IS A GENERAL QUESTION.

6              DIFFERENT PEOPLE HAVE DIFFERENT VIEWS ABOUT

7    CONTRACTS AND ISSUES WHEN THERE'S A DISPUTE IN THE CONTRACT.

8    MY QUESTION IS SIMPLE:  ARE YOU THE KIND OF PERSON, LIKE SOME,

9    WHO THINK THAT IT'S THE WRITTEN TERMS IN A CONTRACT THAT ARE

10   MOST IMPORTANT OR DO YOU THINK IT'S THE SPIRIT OF THE CONTRACT

11   THAT IS MORE IMPORTANT?

12             SO BETWEEN THE LITERAL WRITTEN TERMS OF THE CONTRACT

13   AND THE SPIRIT OR THE INTENT OF THE CONTRACT, HOW MANY PEOPLE

14   THINK -- IT'S A TOUGH QUESTION, I KNOW, HOW MANY PEOPLE THINK,

15   YOU KNOW, IT IS REALLY THE SPIRIT OF THE CONTRACT THAT MATTERS

16   THE MOST TO ME.

17             WOULD YOU RAISE YOUR HAND IF YOU FEEL THAT WAY ABOUT

18   IT?

19             DOES THAT MEAN EVERYBODY FEELS THAT THE TERMS ARE

20   THE IMPORTANT PART OF THE CONTRACT OR YOU ARE JUST MIXED AND --

21   HOW MANY PEOPLE ARE JUST MIXED AND DON'T KNOW WHICH WAY TO

22   ANSWER THAT QUESTION?

23             (HANDS RAISED.)

24             **MR. TAYLOR:**  MR. DEGUZMAN?

25             **PROSPECTIVE JUROR:**  YES.

1          **MR. TAYLOR:**  YOU CAN'T TELL ME HOW YOU FEEL ABOUT

2     IT?

3          **PROSPECTIVE JUROR:**  WELL, THE LOGICAL SIDE OF ME

4     SAYS IT IS THE WRITTEN, BUT THE OTHER HALF OF ME SAYS THERE IS

5     SOME SPIRIT IN THE WRITTEN CONTRACT THAT HAS TO BE FOLLOWED

6     THROUGH.  I HAVE MIXED FEELINGS.

7          **MR. TAYLOR:**  ARE THERE PEOPLE AMONG YOU WHO THINK

8     WORDS ARE WRITTEN DOWN, IT IS THE WRITTEN WORDS OF THE CONTRACT

9     THAT ARE THE MOST IMPORTANT.  DOES ANYBODY FEEL THAT?  RAISE

10    YOUR HAND SO I CAN SEE WHO THAT IS.

11          THANK YOU VERY MUCH.

12          **MR. TAYLOR:**  HOW ABOUT YOU, MS. FETTERS?

13          **PROSPECTIVE JUROR:**  WELL, WHEN YOU SAY "SPIRIT" THAT

14    BOTHERS ME.  WHEN YOU SAY "INTENT", I KNOW THE INTENT.

15          **MR. TAYLOR:**  I STAND CORRECTED.

16          (LAUGHTER.)

17          THAT'S GREAT.  IF WE SAY INTENT, WHICH IS MORE

18    IMPORTANT?

19          **PROSPECTIVE JUROR:**  INTENT.

20          **MR. TAYLOR:**  INTENT IS MORE IMPORTANT.  OKAY.

21          IF THAT CONTRACT IS NEGOTIATED EACH SIDE IS

22    REPRESENTED BY LAWYERS AND THE LAWYERS DRAFT IT, DOES THAT

23    CHANGE YOUR MIND AT ALL?

24          **PROSPECTIVE JUROR:**  NO.

25          (LAUGHTER).

```
 1                    I AM SORRY, NO.

 2              MR. TAYLOR:   OKAY.   LET ME LOOK AT MY NOTES HERE AND

 3       SEE WHAT ELSE -- I ACTUALLY MS. RAO, I AM CURIOUS.   YOU ARE

 4       SAYING YOU ARE DOING VOLUNTEER HOSPICE WORK?   DID I HEAR THAT

 5       CORRECTLY?

 6                    PROSPECTIVE JUROR:   YES.

 7              MR. TAYLOR:   COULD YOU TELL US A LITTLE BIT ABOUT

 8       THAT?

 9                    YOU CAN WAIT FOR THE MICROPHONE.

10              PROSPECTIVE JUROR:   I WORK ON THE WEEKENDS FIVE

11       HOURS A WEEK ON SUNDAYS 10:00 TO 3:00.   AND WE FEED AND CARE

12       FOR THEM AND BATHE THEM, HOSPICE WORK.

13              MR. TAYLOR:   HOW LONG HAVE YOU BEEN DOING THAT?

14              PROSPECTIVE JUROR:   SEVEN YEARS.

15              MR. TAYLOR:   REALLY?   I THOUGHT I HEARD YOU SAY THAT

16       YOU ARE DOING THE HOSPICE WORK AS A VOLUNTEER; IS THAT CORRECT?

17              PROSPECTIVE JUROR:   YES, I AM.

18              MR. TAYLOR:   YOU HAVE BEEN VOLUNTEERING TO DO THIS

19       FOR SEVEN YEARS?

20              PROSPECTIVE JUROR:   YEAH.   I ALSO VOLUNTEER AT A

21       SENIOR HOME ALSO.   I HAVE BEEN DOING THAT FOR EIGHT YEARS.

22              MR. TAYLOR:   YOU DID TAX PREPARATION WORK FOR TWO OR

23       THREE YEARS.   HAVE YOU DONE ANY OTHER KIND OF WORK, HOSPICE

24       WORK, THE TAX PREPARATION WORK, ANY OTHER KIND OF WORK?

25              PROSPECTIVE JUROR:   NO.   MY FAMILY, HOMEMAKER.
```

1          **MR. TAYLOR:**  OKAY.

2          **PROSPECTIVE JUROR:**  BUT I DO NOT FOR MONEY, BUT

3    COUNSEL A LOT OF FRIENDS.  I AM UNOFFICIAL COUNSELOR.

4          **MR. TAYLOR:**  LET ME ASK ANOTHER QUESTION OF THE

5    GROUP, AND THAT IS WHETHER ANYBODY HERE OR SOMEONE IN YOUR

6    FAMILY OR VERY CLOSE FRIEND OF YOURS HAS EVER BEEN IN A

7    BUSINESS SITUATION WHERE THEY HAVE BEEN REALLY THE VICTIM OF

8    SOME UNFAIR CONDUCT OR REALLY TAKEN ADVANTAGE OF IN A BAD WAY

9    THAT HAS MADE A REAL IMPRESSION ON YOUR MIND ABOUT SOMEONE WHO

10   HAS BEEN A VICTIM OF UNFAIR BUSINESS PRACTICES IN SOME WAY.

11          ANYONE HAVE AN EXPERIENCE LIKE THAT?  COULD BE YOU,

12   COULD BE A FRIEND, CLOSE FRIEND.

13          MS. WONG, ANYTHING LIKE THAT?

14          **PROSPECTIVE JUROR:**  I HAVE A GREAT AUNT MAYBE WHO

15   WORKED FOR TYCO AND OF COURSE HER PENSION WAS IMPACTED BY THE

16   WHOLE SITUATION, BUT THAT WOULD BE THE ONLY THING I CAN THINK

17   OF.

18          **MR. TAYLOR:**  WHAT I AM LOOKING FOR IS WHETHER

19   SOMEONE HAS HAD AN EXPERIENCE OR SOMEONE CLOSE TO YOU HAS HAD

20   AN EXPERIENCE THAT IT WOULD JUST BE REALLY HARD FOR YOU NOT TO

21   BRING INTO A COURTROOM WHERE THERE'S A BUSINESS DISPUTE WHERE

22   PEOPLE HAVE DIFFERENT OPINIONS AND HAVE DIFFERENT POSITIONS ON

23   THE WAY TO DO BUSINESS.  ANYBODY HAVE AN EXPERIENCE LIKE THAT

24   WHERE THEY FELT VICTIMIZED?

25          OKAY.  THANK YOU VERY MUCH.

1            LADIES AND GENTLEMEN, I THINK THAT THOSE ARE ALL THE

2    QUESTIONS I HAVE.  I THANK YOU VERY MUCH FOR YOUR TIME AND

3    ATTENTION.

4            I WOULD ASK YOU, PLEASE, TO REMEMBER THAT YOU

5    PROMISE THAT YOU WILL WAIT UNTIL WE GET TO PRESENT OUR CASE TO

6    YOU.  AND I ALSO WOULD JOIN COUNSEL IN THANKING YOU VERY, VERY

7    MUCH FOR YOUR SERVICE AND WILLINGNESS TO SERVE.

8            THANK YOU VERY MUCH.

9            YOUR HONOR, MAY WE APPROACH THE BENCH?

10           **THE COURT:**  ONE MINUTE.  YOU WANT TO HOLD ON?

11           (DISCUSSION HELD AT SIDEBAR AND NOT REPORTED.)

12           (OPEN COURT.)

13           (PEREMPTORY CHALLENGES MADE AT COUNSEL TABLE.)

14           (PAUSE IN THE PROCEEDINGS.)

15           **THE COURT:**  ALL RIGHT.

16           LADIES AND GENTLEMEN, THERE IS GOING TO BE SIX OF

17   THE PROSPECTIVE JURORS WILL NOW BE EXCUSED.  I WILL READ OFF

18   THE NAMES OF THOSE WHO ARE BEING EXCUSED.  AFTER YOU HAVE BEEN

19   EXCUSED, YOU CAN GO BACK TO THE JURY COMMISSIONER WITH THANKS

20   FROM THE COURT.

21           THE FOLLOWING JURORS WILL BE EXCUSED THEN:

22   MR. WATERS, MS. GASSNER, MS. FETTERS, MS. KEILEY, KEETON,

23   MS. FORSTER.  EACH OF YOU THEN CAN GO BACK TO THE JURY

24   COMMISSIONER, IF YOU WOULD.  THANKS VERY MUCH.

25           THE REMAINING JURORS NOW CAN PLEASE STAND AND WE

1    WILL HAVE YOU SWORN.

2              (JURORS SWORN.)

3         **JURORS:**  I DO.

4         **THE COURT:**  NOW WHY DON'T YOU ALL MOVE OVER EXCEPT

5    MS. WONG.  WHY DON'T YOU TAKE THE LAST SEAT IN THE FRONT ROW.

6              OKAY.  YOU CAN ALL BE SEATED NOW.  RIGHT THERE.

7    THAT'S FINE.  THANKS.

8              NOW THE REMAINING MEMBERS OF THE PANEL, YOU CAN ALSO

9    ALL BE EXCUSED NOW.  YOU CAN GO BACK TO THE JURY COMMISSIONER

10   AND REPORT BACK IN.  WE THANK YOU VERY, VERY MUCH.

11             (PROSPECTIVE JURORS EXCUSED.)

12        **THE COURT:**  YOU CAN ALL BE SEATED.

13             WHAT WE ARE GOING TO DO NOW IS RECESS UNTIL NEXT

14   MONDAY.  TOMORROW IS FRIDAY; NOT A TRIAL DAY FOR YOU.  AND WE

15   ARE GOING TO START IN ON THE REST OF THE CASE.

16             WE WILL START IN WITH SOME INSTRUCTIONS AND SOME

17   OPENING STATEMENTS AND THEN WE'LL START PUTTING ON THE EVIDENCE

18   ON MONDAY.

19             BUT I AM GOING TO GIVE YOU SOME STATEMENTS ABOUT

20   WHAT IS EXPECTED AND MY SORT OF ADMONITIONS TO YOU IN TERMS OF

21   WHAT IS EXPECTED OF YOUR CONDUCT.

22             THE COURTROOM DEPUTY WILL TAKE YOU BACK INTO THE

23   JURY ROOM, THE JURY ROOM IS RIGHT BACK HERE.  AND THERE IS

24   LOGISTICS TO FIGURE OUT ABOUT THIS BUILDING AND EVERYTHING ELSE

25   ABOUT IT, SO THE COURT COURTROOM DEPUTY WILL DO THAT.  SO AS

1   SOON AS WE GET THROUGH HERE, I WOULD LIKE YOU TO DO THAT BEFORE

2   YOU LEAVE.

3           THERE ARE SOME THINGS THAT I WILL BE TALKING TO YOU

4   ABOUT.  ONE, I THINK I MENTIONED ALREADY, IS I LIKE IT TO BE

5   UNDERSTOOD THAT WE DON'T TALK ABOUT THE CASE UNTIL THE ENTIRE

6   CASE HAS BEEN PRESENTED TO YOU.

7           THE IDEA IS YOU KEEP AN OPEN MIND AS THIS CASE IS

8   BEING PRESENTED.  AND THE TIME WHEN YOU TALK ABOUT IT TOGETHER

9   WILL BE WHEN WE FINISH ALL THE EVIDENCE, AND I GIVE YOU YOUR

10  INSTRUCTIONS, AND THEN YOU GO BACK INTO THE JURY ROOM TO

11  DELIBERATE.  THAT IS THE TIME WHEN YOU ALL TALK ABOUT THE CASE

12  AND ABOUT WHAT YOUR DECISION SHOULD BE ABOUT THE CASE.

13          UNTIL THEN, I DON'T WANT YOU TO DO THAT BECAUSE IT

14  GETS YOU IN A POSITION WHERE YOU HAVEN'T HEARD EVERYTHING AND

15  YOU MAY GET INTO POSITIONS WHERE IT'S JUST UNFAIR TO NOW TRY TO

16  MAKE UP YOUR MIND ABOUT THIS CASE BEFORE IT HAS BEEN TOTALLY

17  PRESENTED.

18          SO, THERE ARE DIFFERENT WAYS OF LOOKING AT THIS, BUT

19  I FOUND TO BE THE BEST WAY IS PLEASE DON'T TALK ABOUT IT AMONG

20  YOURSELVES WHILE THE CASE IS BEING PRESENTED.  OKAY.

21          ALSO DON'T TALK TO ANYBODY ELSE ABOUT IT WHEN YOU GO

22  HOME.  ONLY THING YOU CAN SAY IS, "I AM SITTING ON A CASE AND

23  THE JUDGE HAS ASKED ME NOT TO TALK ABOUT IT UNTIL WE ARE

24  THROUGH."  THAT MEANS MEMBERS OF YOUR FAMILY, EVERYBODY.  JUST

25  DON'T TALK TO ANYBODY ELSE ABOUT THE CASE AT ALL.

1           AND AS I SAID, WE WANT TO MAKE SURE WE DECIDE THE

2    CASE ON WHAT HAPPENS HERE IN THE COURTROOM.  THERE IS GOING TO

3    BE EVIDENCE PUT ON IN THE COURTROOM AND YOU ARE GOING TO HEAR

4    TESTIMONY, YOU ARE GOING TO SEE THINGS, YOU'RE GOING TO SEE

5    DOCUMENTS, YOU'RE GOING TO SEE VIDEOS, YOU'RE GOING TO SEE ALL

6    KINDS OF THINGS THAT WILL BE A PART OF THE CASE WHEN IT'S

7    PRESENTED IN THE COURTROOM.  BUT I DON'T WANT YOU TO BE GETTING

8    ANYTHING FROM OUTSIDE THE COURTROOM.

9           NOW, THAT MEANS THAT IF THERE IS ANY COVERAGE ABOUT

10   THE CASE, I DON'T KNOW WHETHER THERE WOULD BE OR NOT, BUT IF

11   THERE IS ANYTHING ON RADIO, TV, ON PAPERS, WHATEVER IT MAY BE,

12   WE WANT YOU TO STAY AWAY FROM IT BECAUSE THAT HAS NOT BEEN

13   PRESENTED TO YOU IN THE COURTROOM.  ANYTHING THAT IS ABOUT THIS

14   CASE THAT IS GENERATED OUTSIDE THE COURTROOM IS DEEMED TO BE

15   OFF LIMITS.  AND YOU OUGHT TO MAKE SURE, HOWEVER YOU GATHER

16   YOUR NEWS OR GO ABOUT YOUR BUSINESS IN THAT WAY, YOU STAY AWAY

17   FROM ANY NEWS SOURCE THAT'S GOING TO BE ABOUT THIS CASE OR

18   ABOUT ANYONE WHO HAS ANYTHING TO DO WITH IT.  YOU WANT TO STAY

19   AWAY FROM THAT WHILE THE CASE IS BEING PRESENTED.  IN THE NEW

20   WORLD, THAT MEANS THE INTERNET ALSO.  JUST STAY AWAY FROM

21   EVERYTHING.

22          ANOTHER THING THAT PEOPLE THINK ABOUT ONCE IN A

23   WHILE IS THAT I CAN LOOK SOMETHING UP.  NO RESEARCH.  NO

24   RESEARCH.  DON'T DO ANY RESEARCH ON YOUR OWN.  WE WANT YOU TO

25   HEAR EVERYTHING FROM THE COURTROOM ITSELF.  SO ANYTHING THAT IS

1    GOING TO BE PRESENTED TO YOU THAT I THINK YOU SHOULD HEAR ABOUT

2    FOR YOUR DECISION WILL BE CONTROLLED THROUGH THIS PROCESS.  BUT

3    I DON'T WANT YOU TO DO ANY RESEARCH ON YOUR OWN.

4             ONCE IN A WHILE PEOPLE HAVE LAW BOOKS AT HOME, THEY

5    LOOK UP THE LAW.  DON'T DO THAT.  I WANT YOU TO MAKE SURE THAT

6    YOU STAY AWAY FROM ANY KIND OF RESEARCH ON THIS CASE THAT IS

7    OUTSIDE OF THIS.

8             THOSE ARE THE ADMONITIONS THAT I WILL BE GIVING YOU

9    THROUGHOUT THE TRIAL.  DON'T TALK ABOUT THE CASE, STAY AWAY

10   FROM ANY KIND OF SOURCE OUTSIDE THE COURTROOM, KEEP AN OPEN

11   MIND WHILE THIS CASE IS GOING ON.  THAT'S THE WHOLE IDEA IS

12   THAT WE ALL END UP WITH HAVING SEEN AND HEARD THE SAME THINGS

13   AND TALKING TOGETHER ABOUT IT AT THE GIVEN TIME.

14            SO THAT'S GOING TO BE THE INSTRUCTIONS.

15            WHEN I SAY WE ARE GOING TO START AGAIN AT

16   9:00 O'CLOCK ON MONDAY MORNING, EVERYBODY SHOULD GET THIS IN

17   MIND.  FIGURE OUT HOW YOU ARE GOING TO DO THIS BECAUSE WE ALL

18   HAVE TO BE HERE OR WE CAN'T START.  EVERYBODY HAS TO HEAR

19   EVERYTHING.  SO IF ANYBODY IS LATE, WE CAN'T DO ANYTHING.

20            SO, YOU HAVE TO MAKE SURE THAT YOU GET YOURSELF INTO

21   A RHYTHM IN TERMS OF GETTING HERE ON TIME.  WE WILL TRY TO KEEP

22   THIS THING MOVING.  A LOT OF THINGS WE WANT TO MAKE SURE IS WE

23   KEEP MOVING.  YOUR TIME IS PRECIOUS AND SO IS OURS.  WE WANT TO

24   MAKE SURE THAT OF THOSE SIX HOURS WE SET ASIDE, THAT'S ABOUT AS

25   MUCH AS WE CAN GET DONE IN ONE DAY, BUT I WANT TO MAKE SURE

1   THAT IT'S PRODUCTIVE SO WE DON'T WASTE ANY TIME, YOU BEING LATE

2   OR WHATEVER.

3          WE WILL TAKE RECESSES.  WE DON'T WANT TO GO STRAIGHT

4   THROUGH.  SO WE WILL HAVE A RECESS IN THE MORNING AND A RECESS

5   IN THE AFTERNOON.  BUT WE ARE GOING TO KEEP WORKING AND USE

6   THOSE HOURS AS PRODUCTIVELY AS WE CAN TO GET THIS CASE MOVED

7   ALONG.

8          OKAY.  I THINK THAT'S BASICALLY IT.  AS I SAY, I

9   WOULD LIKE YOU TO GO WITH THE COURTROOM DEPUTY NOW AND GET

10  YOURSELVES ORIENTED IN TERMS OF HOW YOU GET IN AND OUT OF THE

11  BUILDING, AND THE BADGES, AND EVERYTHING ELSE YOU GET.

12         ONE OTHER THING THAT COMES UP:  THIS BUILDING IS

13  SUCH THAT EVERYBODY REALLY HAS TO GO DOWN THROUGH THE ONE

14  ELEVATOR.  AND YOU MAY FIND YOURSELF IN THE ELEVATOR WITH

15  SOMEBODY WHO HAS SOMETHING TO DO WITH THIS CASE.

16         AND, YOU KNOW, THIS IS ONE OF THE THINGS YOU ARE IN

17  THE ELEVATOR, BUT YOU DON'T PAY ATTENTION TO THEM.  THEY ARE

18  NOT GOING TO PAY ANY ATTENTION TO YOU.  THEY ARE NOT BEING

19  IMPOLITE.  THEY SHOULDN'T HAVE ANY CONTACT.

20         SO DON'T TAKE IT AS AN ACT OF SORT OF LIKE NOT BEING

21  POLITE, BUT IT'S JUST THAT THEY KNOW THEY ARE NOT SUPPOSED TO

22  HAVE CONTACT WITH YOU AND EVERYBODY IS GOING TO DO THAT.

23         IF SOMEBODY WERE TO MAKE CONTACT WITH YOU, AND IT'S

24  SOMETHING ABOUT THIS CASE AT ALL, LET ME KNOW ABOUT IT RIGHT

25  AWAY.  I WANT TO KNOW.  SO IF SOMETHING LIKE THAT HAPPENS.  I

1    DON'T THINK SO, BUT I JUST WANT YOU TO KNOW THAT IN THESE

2    INCIDENTAL CONTACTS THAT HAPPEN AROUND HERE, IF THEY ARE ALOOF,

3    THEY ARE NOT BEING IMPOLITE BECAUSE THEY WANT TO STAY AWAY FROM

4    ANY KIND OF CONTACT.

5         SO HAVE A GOOD WEEKEND, AND WE WILL SEE YOU AND GET

6    STARTED AT 9:00 O'CLOCK NEXT MONDAY.  OKAY?  THANK YOU.

7         (JURORS EXCUSED AT 2:40 P.M.)

8         (DISCUSSION HELD OUTSIDE THE PRESENCE OF THE JURY.)

9    **THE COURT:**  ONE THING TO PUT ON THE RECORD.  WE HAD

10   A BRIEF SIDEBAR JUST BEFORE THE PEREMPTORY CHALLENGES WERE

11   TAKEN BY EACH SIDE, AND DEFENSE RAISED A QUESTION ABOUT JUROR

12   NUMBER 13, MS. KEILEY IN TERMS OF WHETHER OR NOT HER HARDSHIPS

13   WOULD INTERFERE WITH HER ABILITY TO SERVE AND ALSO ABOUT HER

14   ANSWERS THAT SEEMED TO SUGGEST THAT SHE WOULD PREFER A

15   CORPORATION OR GIVE PREFERENCE TO A CORPORATION RATHER THAN AN

16   INDIVIDUAL.

17        I DID NOT THINK THAT EITHER ONE OF THOSE GROUNDS

18   WERE SUCH THAT SHE SHOULD NOT BE AVAILABLE FOR SERVICE, AND SO

19   I REJECTED THE NOTION THAT SHE SHOULD BE CHALLENGED FOR CAUSE

20   ON THAT BASIS.

21        BUT THAT SHOULD BE A PART OF THE RECORD.  THAT'S

22   WHAT TOOK PLACE AT THAT SIDEBAR.  OKAY.

23        THEN, YES.

24   **MR. TAYLOR:**  FIRST OF ALL, THANK YOU, YOUR HONOR,

25   FOR TODAY.  IT WAS VERY EFFICIENT.

1          FOR OPENING STATEMENTS ON MONDAY, ARE WITNESSES --

2     WHAT IS YOUR PRACTICE?  ARE WITNESSES EXCLUDED OR NOT?

3          **THE COURT:**  WELL, IT'S -- THERE'S GOING TO BE AN

4     ORDER, I TAKE IT, THAT WITNESSES WILL BE EXCLUDED, RIGHT?

5          **MR. TAYLOR:**  YES.

6          **MR. TANGRI:**  YES.

7          **THE COURT:**  I THINK THAT THEY OUGHT TO STAY OUT FOR

8     OPENING STATEMENT.  I THINK THAT IT'S -- I DON'T KNOW THAT IT

9     REALLY MAKES A TERRIBLE AMOUNT OF DIFFERENCE, BUT I AM NOT

10    SURE.  SO I JUST AS SOON WE KEPT IT UNDER THE CIRCUMSTANCE

11    WHERE THE WITNESSES DON'T LISTEN TO THE OPENING STATEMENTS.

12         **MR. TAYLOR:**  WE WOULD REQUEST THAT.

13         **THE COURT:**  I LEAVE THAT UP TO YOU TO POLICE IT IN

14    THE SENSE THAT YOU KNOW WHO YOUR WITNESSES ARE AND YOU JUST

15    TELL THEM TO STAY OUT.  THAT WILL BE, IN EFFECT, WHAT HAPPENS

16    DURING THE TRIAL.

17         AND I THINK WE WILL GET TO THE POINT WE WILL START

18    IN ON TESTIMONY.  WE ARE NOT GOING TO HOLD THE OPENING

19    STATEMENTS AGAINST YOU IN ANY SENSE UNLESS I GET TO THE POINT

20    WHERE YOU GO TOO LONG, BUT WE WILL START IN ON TIMEKEEPING.

21         REMEMBER I SAID I WOULD LIKE TO HAVE EACH OF YOU, I

22    WANT YOU TO TELL FRANCES AT THE END OF EVERY DAY OR THE

23    BEGINNING OF THE NEXT DAY WHAT THE TIME WAS.  AND I WANT YOU TO

24    AGREE TO IT.  I DON'T WANT TO HAVE TRIALS ABOUT IT.  I THINK

25    THIS IS PRETTY SIMPLE; YOU'LL BE ABLE TO AGREE TO THIS.  WE

1    WILL KEEP A RECORD OF THIS AS WE'RE GOING ALONG.

2              **MR. TAYLOR:**  THE OTHER REQUEST I HAVE FOR MONDAY IS

3    WHETHER WE CAN BUILD IN, AFTER THEY FINISH THEIR OPENING AND

4    BEFORE WE START OURS, CAN WE HAVE A SHORT --

5              **THE COURT:**  NO, NO.  I THINK THAT IS ALMOST

6    NECESSARY BECAUSE IT WILL BE ABOUT THE TIME TO HAVE A BREAK

7    ANYWAY, AND I WANT TO -- BUT THERE'S SOME LEVEL OF SETTING

8    THINGS UP THAT I WILL GIVE YOU TIME TO DO.  ABSOLUTELY.  YOU

9    CAN DO THAT.

10             ALL RIGHT.  WE ARE SET THEN.

11             **MR. KIRSCH:**  THANK YOU, YOUR HONOR.

12             **MR. JANSEN:**  THANK YOU, YOUR HONOR.  SEE YOU MONDAY,

13   YOUR HONOR.

14             **MR. TAYLOR:**  THANK YOU.

15

16                  (PROCEEDINGS CONCLUDED AT 2:45 P.M.)

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

WE, RAYNEE H. MERCADO AND DIANE E. SKILLMAN, OFFICIAL REPORTERS FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN C02-3262DLJ, SHUM V. INTEL, ET AL.,, WERE REPORTED BY US, THURSDAY, DECEMBER 11, 2008 CERTIFIED SHORTHAND REPORTERS, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.

_____

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR

_____/S/_____

DIANE E. SKILLMAN, CSR, RPR, FCRR