UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**ORIGINAL**

BEFORE THE HONORABLE D. LOWELL JENSEN, JUDGE

| | | |
|---|---|---|
| FRANK T. SHUM, | ) | **JURY TRIAL** |
| | ) | |
| PLAINTIFF, | ) | **VOLUME 17** |
| | ) | |
| VS. | ) | NO. C 02-3262 DLJ |
| | ) | |
| INTEL CORPORATION, | ) | |
| JEAN-MARC VERDIELL AND | ) | **PAGES 3582 - 3779** |
| LIGHTLOGIC, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | OAKLAND, CALIFORNIA |
| _____ | ) | MONDAY, DECEMBER 15, 2008 |

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

APPEARANCES:

FOR PLAINTIFF:          TOWNSEND AND TOWNSEND AND CREW LLP
                        TWO EMBARCADERO CENTER, EIGHTH FLOOR
                        SAN FRANCISCO, CALIFORNIA  94111-3834
                BY:  TALI L. ALBAN,
                     MARK T. JANSEN,
                     PAUL F. KIRSCH,
                     ANGUS M. MACDONALD,
                     ROBERT A. MCFARLANE, ATTORNEYS AT LAW

FOR DEFENDANTS:         TAYLOR & CO. LAW OFFICES
                        ONE FERRY BUILDING SUITE 355
                        SAN FRANCISCO, CALIFORNIA  94111
                BY:  STEPHEN MCGEORGE BUNDY,
                     STEPHEN E. TAYLOR
                     JESSICA GRANT, ATTORNEYS AT LAW

                        KEKER & VAN NEST
                        710 SANSOME STREET
                        SAN FRANCISCO, CALIFORNIA  94111-1704
                BY:  DANIEL E. JACKSON,
                     RAGESH K. TANGRI, ATTORNEYS AT LAW

REPORTED BY:       RAYNEE H. MERCADO, CSR NO. 8258

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-8404*

```
1    MONDAY, DECEMBER 15, 2008                          10:08 A.M.

2                       P R O C E E D I N G S

3              THE CLERK:  REMAIN SEATED.  COURT IS IN SESSION.

4    COME TO ORDER.

5              (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE

6    PRESENCE OF THE JURY:)

7              THE CLERK:  CALLING CIVIL ACTION 02-3262, FRANK SHUM

8    VS. INTEL.

9              AND COUNSEL, PLEASE STATE YOUR APPEARANCES.

10             MR. JANSEN:  GOOD MORNING, YOUR HONOR.  MARK JANSEN

11   WITH -- FOR PLAINTIFF.  WITH ME IS ROB MCFARLANE, TALI ALBAN,

12   AND PAUL KIRSCH.

13             THE COURT:  OKAY.

14             MR. TANGRI:  GOOD MORNING, YOUR HONOR.  RAGESH

15   TANGRI.  AND WITH ME ARE JESSICA GRANT, STEVE BUNDY AND DAN

16   JACKSON --

17             THE COURT:  OKAY.

18             MR. TANGRI:  -- FOR DEFENDANTS.

19             THE COURT:  ALL RIGHT.

20             ALL RIGHT.  I LOOKED AT THIS -- THE PAPER AND I WAS

21   THINKING MAYBE WE SHOULD HAVE DONE THIS FRIDAY AFTERNOON.  YOU

22   WOULDN'T HAVE A CHANCE TO DO THAT.

23             I -- I HAVEN'T HAD A CHANCE TO READ ALL THIS,

24   OBVIOUSLY, BECAUSE I -- FOR ONE THING, 580 WAS A ZOO THIS

25   MORNING, AND I EVEN GOT HERE LATE.  SO I HAVEN'T HAD A CHANCE TO
```

```
1    DO THAT.
2             WHAT I THOUGHT WHAT WE MIGHT DO IS GO INTO THINGS
3    THAT ARE NOT JUST THE INSTRUCTIONS.  THERE ARE OTHER AREAS,
4    WE'VE GOT VARIOUS MOTIONS THAT WE COULD -- HAVE A MOTION IN
5    TERMS OF STRIKING TESTIMONY.  THERE'S A RULE 50 MOTION.  THE
6    ONLY ONE I SEE THAT THERE'S A PAPER ON IS ON BEHALF OF INTEL, I
7    GUESS.  AND SO WHAT WE OUGHT TO DEAL WITH THOSE.
8             AND THEN WHAT I THINK MAYBE WE'LL DO IS GIVE ME A
9    CHANCE TO READ THE POSITIONS THAT YOU'VE BOTH TAKEN ON THE
10   INSTRUCTIONS, AND IT MIGHT HELP US A LITTLE BIT IN TERMS OF
11   MOVING IT ALONG.
12            MY TAKE ON DOING INSTRUCTIONS IS GENERALLY JUST TO DO
13   IT PAGE BY PAGE, AND THAT IF YOU'VE GOT SOMETHING ON A GIVEN
14   PAGE, WE'LL TAKE IT UP.  BUT THAT WILL OBVIOUSLY OPEN THE
15   SUBJECT MATTER ON SOME OF THE MORE OPEN AREAS.  SO WHAT I THINK
16   WE OUGHT TO DO IS DEAL WITH YOUR SEPARATE MOTIONS AND THEN WE'LL
17   MAYBE TAKE A TIME OUT AND DO THE INSTRUCTIONS.
18            **MR. TANGRI:**  THAT --
19            **THE COURT:**  OKAY?
20            **MR. TANGRI:**  -- MAKES SENSE.
21            **MR. JANSEN:**  YOUR HONOR, WE -- THAT'S FINE WITH US.
22   I -- WE HAD GONE THROUGH YOUR DRAFT INSTRUCTIONS THAT WERE
23   CIRCULATED FRIDAY --
24            **THE COURT:**  RIGHT.
25            **MR. JANSEN:**  -- AND HAD RELATIVELY FEW COMMENTS ON
```

```
1    THEM.

2              WE DID, I THINK, SUBMIT 14 OTHER PROPOSED

3    INSTRUCTIONS WHICH WE FELT WERE APPROPRIATE, SOME OF THEM JUST

4    SIMPLY GOING TO EXPLAIN THE -- THE FACT THAT A CORPORATION LIKE

5    LIGHTLOGIC HAS GOT CERTAIN --

6              THE COURT:  I THINK THERE'S --

7                     (SIMULTANEOUS COLLOQUY.)

8              THE COURT:  -- THAT'S SOMETHING THAT I THINK WAS NOT

9    IN THE INSTRUCTIONS.  IT OUGHT TO BE IN THE INSTRUCTIONS.  AND

10   THAT'S THE SORT OF THING THAT I THINK THERE MAY BE AREAS WHERE

11   WE HADN'T COVERED IT BEFORE.

12             MR. TANGRI:  YOUR HONOR, ON THE -- YOU MENTIONED THE

13   RULE 50 MOTION ON INTEL.  AND ONE OF THE THINGS THAT I NOTED IN

14   ONE OF THE PLEADINGS FILED BY PLAINTIFF LATE LAST NIGHT WAS THAT

15   THEY'RE WITHDRAWING THEIR UNJUST ENRICHMENT CLAIM AGAINST INTEL,

16   WHICH I BELIEVE WAS THE ONLY CLAIM THEY HAD --

17             THE COURT:  I BELIEVE THAT'S SO.

18             MR. TANGRI:  -- LEFT AGAINST INTEL.

19             THE COURT:  IS THAT CORRECT?

20             MR. JANSEN:  YOUR HONOR, WE -- WE REALLY HAD GONE

21   INTO THIS TRIAL WITH UNDERSTANDING FROM YOUR HONOR THAT THERE

22   WAS NO CLAIM AGAINST INTEL PER SE EXCEPT AS A SUCCESSOR, SO YES.

23             MR. TANGRI:  AND IT'S OUR POSITION THAT THE SUCCESSOR

24   LIABILITY --

25             THE COURT:  ALL RIGHT.
```

```
 1                MR. TANGRI:  -- ISSUE DOESN'T NEED TO GO TO THE JURY.

 2   THAT'S A --

 3                THE COURT:  IT'S NOT GOING TO GO TO THE JURY.  I

 4   THINK THAT IN TERMS OF THE INTEL I THINK THAT IT WAS QUESTION AS

 5   TO WHETHER IT WAS SIMPLY A QUESTION OF LIABILITY AS A SUCCESSOR

 6   CORPORATION AS OPPOSED TO DIRECT LIABILITY AT TRIAL.

 7                AND AT THE TRIAL IT'S CLEAR THAT THERE IS NO

 8   LIABILITY TO INTEL FOR THE UNJUST ENRICHMENT THESIS, AND SO I

 9   WOULD GRANT A RULE 50 MOTION IN TERMS OF TO THE EXTENT THAT IT

10   WAS ASSERTED THAT INTEL SHOULD BE RESPONSIBLE FOR UNJUST

11   ENRICHMENT AS IN AND OF ITSELF.

12                IT DOESN'T CHANGE THE RELATIONSHIP OF INTEL TO THE

13   REST OF THE CASE, BUT THEY'RE NOT LIABLE FOR UNJUST ENRICHMENTS

14   AS AN INDIVIDUAL DEFENDANT.

15                MR. TANGRI:  AND -- AND I -- I -- I TAKE IT AND WOULD

16   REQUEST THAT THAT WOULD MEAN THAT INTEL WOULD COME OFF THE

17   VERDICT FORM.

18                THE COURT:  THEY WOULD NOT BE ON THE VERDICT FORM,

19   THAT'S RIGHT.

20                MR. TANGRI:  AND THERE ARE A COUPLE OF THE DEFEN --

21   PLAINTIFF'S NEWLY PROPOSED INSTRUCTIONS FROM LAST NIGHT THAT

22   SEEK TO INSTRUCT THE JURY TO FIND SUCCESSOR LIABILITY AGAINST

23   INTEL, AND WE THINK THAT'S, AS WE SAID, NOT AN APPROPRIATE

24   MATTER FOR THE JURY.  THAT'S FOR THE --

25                THE COURT:  DID YOU THINK THAT'S UP TO A JURY, THAT A
```

1    JURY COULD FIND THAT INTEL IS NOT LIABLE FOR ANYTHING AS A

2    SUCCESSOR CORPORATION?

3              **MR. JANSEN:**  I BELIEVE IT'S A MATTER OF LAW THAT IT

4    WILL BE LIABLE AND WHATEVER JUDGMENT --

5                        (SIMULTANEOUS COLLOQUY.)

6              **THE COURT:**  WELL, THAT WOULD BE YOUR ULTIMATE

7    POSITION.  BUT IT SHOULDN'T BE THAT A JURY SHOULD BE ABLE TO

8    FIND THAT THEY'RE NOT LIABLE, BECAUSE IT'S A MATTER OF LAW FOR

9    THE COURT TO DETERMINE, IT SEEMS TO ME.  SO I DON'T SEE ANY

10   REASON OF GIVING ANY VERDICT TO THE JURY THAT WILL HAVE AN ISSUE

11   ABOUT INTEL'S LIABILITY.

12             **MR. JANSEN:**  WELL, I -- GIVEN -- I MEAN, I THINK

13   GIVEN THE WAY WE WENT INTO THIS TRIAL, THAT WAS OUR

14   UNDERSTANDING, YOUR HONOR, THAT --

15             **THE COURT:**  OKAY.

16             **MR. JANSEN:**  -- INTEL WOULDN'T HAVE INDEPENDENT

17   LIABILITY.

18             **THE COURT:**  ALL RIGHT.  SO WE'LL JUST REMOVE IT FROM

19   ANY JURY VERDICT FORMS, ANY REFERENCE TO --

20             **MR. TANGRI:**  AND FROM ANY INSTRUCTION, YOUR HONOR.

21             **THE COURT:**  RIGHT.  THAT'S RIGHT.

22             **MR. TANGRI:**  OKAY.  SO --

23             **THE COURT:**  THEN THERE'S THE -- YOU HAVE A MOTION

24   WITH REFERENCE TO STRIKING THE TESTIMONY OF THE EXPERTS, AND

25   WE'VE GOT YOUR PAPERS AND WOULD ASK IF THERE IS A RESPONSE TO

```
 1   THAT.

 2              MR. JANSEN:  THERE IS A RESPONSE, YOUR HONOR.  WE

 3   OPPOSE THE MOTION.  I HAVE NOT BEEN ABLE TO COMPLETE OUR

 4   RESPONSE PAPERS.  THEY CAME IN LATE -- THE MOTION CAME IN LATE

 5   FRIDAY AND WE WERE FOCUSING ON THE JURY INSTRUCTIONS.  WE COULD

 6   SUBMIT AN OPPOSITION TO THAT LATER TODAY.

 7              THE COURT:  I DON'T THINK THAT'S NECESSARY.

 8              MR. JANSEN:  WE -- YEAH.

 9              THE COURT:  WELL, I THINK THAT AS I SAID BEFORE,

10   THE -- THE ISSUE WOULD BE WHETHER OR NOT THE INSTRUCTIONS THAT

11   DIRECT THE JURY'S ATTENTION TO THE ABILITY OF AN EXPERT TO OFFER

12   AN OPINION WHEN THE OPINION IS BASED UPON ASSUMPTIONS, THEN THEY

13   SHOULD CONSIDER THE ASSUMPTIONS.  AND IF THE ASSUMPTIONS ARE NOT

14   BORNE OUT BY THE EVIDENCE, THEN THE OPINION IS NOT BORNE OUT BY

15   THE EVIDENCE EITHER.

16              NOW, I THINK THE INSTRUCTIONS SAY THAT.

17              MR. JANSEN:  THAT WAS THE PROBLEM I WAS STRUGGLING

18   WITH IN DEALINGS WITH DEFENDANTS' PAPERS IS THAT ESSENTIALLY

19   THERE'S A HUGE DISPUTE ABOUT WHAT THE EVIDENCE SHOWS AND WHETHER

20   THEY SUPPORT OR DON'T SUPPORT THE ASSUMPTIONS MADE BY THE

21   EXPERTS.  AND EVEN THERE'S A DISPUTE AS TO WHAT EXACTLY THE

22   ASSUMPTIONS OF THE EXPERTS WERE.

23              FOR EXAMPLE, MR. LASINSKI DID NOT TESTIFY SOLELY TO

24   THE IDEA OF A BUT-FOR ASSUMPTION.  HE SIMPLY SAID HIS ASSUMPTION

25   WAS THAT -- THAT THE EVIDENCE WAS THAT LIGHTLOGIC HAD SOLD THE
```

1      ENTIRE RIGHTS, TITLE, AND INTEREST IN THE PATENTS TO -- TO

2      INTEL.  AND THAT WAS REALLY THE ASSUMPTION.  THAT'S -- AND

3      THERE'S PLENTY OF EVIDENCE ON THAT.

4             AND WE CAN -- THEN THERE'S A LOT OF EVIDENCE WE CAN

5      DEBATE BACK AND FORTH AS TO THE IMPORTANCE OF, YOU KNOW, THE

6      IMPORTANCE OF PATENTS IN THE -- IN THE ACQUISITION, THE

7      IMPORTANCE OF PATENTS AND EXCLUSIVE RIGHTS TO THE VC'S, THE

8      EXCLUSIVE -- THE NEED FOR PROPRIETARY RIGHTS.  THERE'S LOTS OF

9      EVIDENCE WE THINK TO SUPPORT THAT.  BUT IT'S REALLY A MATTER FOR

10     THE JURY TO DECIDE, YOU KNOW, WHAT THE EVIDENCE IS AS A PART OF

11     THEIR DELIBERATIONS.

12            **THE COURT:**  THAT'S ULTIMATELY IT.  BUT IT SEEMS AS

13     THOUGH THERE IS SOME PRECEDENT FOR THE NOTION THAT THERE MAY BE

14     CIRCUMSTANCES WHERE IT'S TAKEN AWAY FROM THE JURY IN THAT THE

15     LACK OF RELATIONSHIP TO THE EVIDENCE OR TO THE OPINIONS OFFERED

16     BY THE EXPERT IS -- IS SO STARK THAT WE -- IT SHOULD BE

17     STRICKEN.

18            AND THAT SEEMS THAT THAT'S A REMEDY IN SOME

19     CIRCUMSTANCES, AND IT WOULD BE DEPENDENT UPON THE OVER -- THE

20     OVERALL NATURE OF THE TESTIMONY AGAINST ALL OF ITS CONTENT AND

21     WHETHER OR NOT I THINK THAT THE INSTRUCTIONS ARE SUFFICIENT FOR

22     THE FACT FINDER TO MAKE DECISIONS BASED UPON THE FACT OF WHETHER

23     OR NOT THEY HAVE ESTABLISHED THE ASSUMPTION.

24            AND I THINK THE INSTRUCTIONS DO THAT, AND SO I THINK

25     THAT THE ARGUMENTS CAN BE MADE.  BUT I DON'T THINK THAT IT RISES

1   TO THE LEVEL WHERE THE ENTIRE EVIDENCE SHOULD BE STRICKEN SO --

2          **MR. TANGRI:**  AND --

3          **THE COURT:**  SO WE'LL LEAVE IT WITH THE INSTRUCTIONS

4   THAT EXIST NOW.

5          **MR. JANSEN:**  THANK YOU, YOUR HONOR.

6          **MR. TANGRI:**  YOUR HONOR, WE HEARD YOU LOUD AND CLEAR

7   ON FRIDAY.  WE WANTED TO MAKE OUR POSITION CLEAR FOR THE

8   RECORD --

9          **THE COURT:**  NO, I THINK THAT THAT'S RIGHT, AND THERE

10  IS PRECEDENT FOR THAT.  BUT I DON'T THINK THAT THIS IS A

11  CIRCUMSTANCE THAT FALLS WITHIN THE PRECEDENT --

12         **MR. TANGRI:**  OKAY.

13         **THE COURT:**  -- IN THAT I THINK THOSE ARE

14  EXTRAORDINARY CASES WHERE YOU SIMPLY STRIKE THE ENTIRE

15  TESTIMONY, AND I DON'T THINK THAT THAT'S NECESSARY HERE BECAUSE

16  I THINK THE INSTRUCTIONS MAKE IT CLEAR THAT YOU CAN MAKE THE

17  ARGUMENTS THAT WHEN THE EXPERT SAYS "X" IS HIS OPINION, AND,

18  "THIS IS MY -- ASSUMPTIONS UPON -- IT'S BASED," AND YOU MAKE THE

19  ARGUMENT THAT "THERE IS NO FACTUAL BASIS FOR THAT ASSUMPTION,"

20  THEN THE JURY CAN UNDERSTAND THAT.

21         **MR. TANGRI:**  AND THE ONLY THING I WOULD ADD, YOUR

22  HONOR, TO WHAT WAS IN OUR PAPERS IS THAT IN ADDITION TO THE

23  INSTRUCTIONS ABOUT THE EXPERTS' ASSUMPTIONS AND THE LACK OF

24  BASIS FOR THEM --

25         **THE COURT:**  RIGHT.

```
 1            MR. TANGRI:  -- BEING IMPORTANT TO THIS ISSUE, THE

 2   OTHER SET OF INSTRUCTIONS THAT ARE GOING TO BE IMPORTANT TO THIS

 3   ISSUE, ESPECIALLY IN LIGHT OF WHAT WE HEAR TO BE THE COURT'S

 4   DECISION TO DENY THE MOTION TO STRIKE, IS THE INST -- WILL BE

 5   THE INSTRUCTIONS ON HOW UNJUST ENRICHMENT IS TO BE MEASURED.

 6            THE COURT:  RIGHT.

 7            MR. TANGRI:  AND AS WE -- WE PUT IN IN OUR PAPERS ON

 8   FRIDAY AFTERNOON, WE THINK THE INSTRUCTION PROPOSED CURRENTLY BY

 9   THE COURT PICKS UP THE NOTION OF BUT-FOR CAUSATION IN THE UNJUST

10   ENRICHMENT.

11            WE THINK THAT'S NOT THE CORRECT STANDARD AND WE THINK

12   THERE'S LAW, ESPECIALLY ELCOCK, E-L-C-O-C-K, DECISION WHICH

13   INDICATES PARTICULARLY WHERE YOU HAVE TESTIMONY OF THIS NATURE

14   FROM THE EXPERTS, WHICH WE SUBMIT SHOULD BE STRICKEN WHICH IN

15   ANY EVENT RAISES THIS ISSUE PRETTY CLEARLY, I THINK, IT'S VERY

16   IMPORTANT THAT THE INSTRUCTIONS CLEARLY STATE WHAT THE LEGAL

17   REQUIREMENTS FOR UNJUST ENRICHMENT ARE.

18            WE'VE TRIED TO DO THAT IN THE INSTRUCTIONS WE'VE

19   PROPOSED, AND WE'LL TAKE THAT UP WITH THE COURT WHEN WE RETURN.

20            THE COURT:  WELL, OKAY.  I THINK WE CAN DEAL WITH

21   THAT, BUT MAYBE IT MIGHT BE OF SOME BENEFIT TO JUST DO, IN A

22   GENERAL SENSE RIGHT NOW, TO DISCUSS THAT.  THAT -- SEEMS TO BE A

23   DIFFERENCE IN TERMS OF THE PARTIES' APPROACH AS TO WHAT WOULD BE

24   THE WAY IN WHICH ANY UNJUST ENRICHMENT VERDICT WOULD BE

25   MEASURED.
```

```
 1              MR. TANGRI:  WELL --

 2              THE COURT:  AND I GUESS I SHOULD SEE WHAT THE

 3    POSITIONS OF THE PARTIES ARE ON THAT BECAUSE THAT MAY BE

 4    SOMETHING THAT WE WOULD HAVE TO TAKE A LOOK AT.

 5              MR. TANGRI:  YOU -- I GUESS FIRST AND FOREMOST, YOUR

 6    HONOR, IS OUR POSITION THAT THE UNJUST -- AND WE'VE -- WE'VE

 7    TRIED TO MAKE THIS CLEAR IN THE PAPERS -- THAT THE UNJUST

 8    ENRICHMENT INQUIRY OUGHT TO BE ONE FOR THE COURT, NOT FOR JURY.

 9              IF IT'S TO GO TO THE JURY, WE BELIEVE THAT THE

10    STARTING POINT IS THAT THIS IS A -- A DISGORGEMENT OF PROFITS

11    RECEIVED CASE.  IT'S NOT A CASE ABOUT A RETURN OF SOME PROPERTY

12    THAT MR. SHUM GAVE TO DR. VERDIELL.

13              AND IN SUCH CASES, YOU NEED PROOF OF A WRONGFUL ACT,

14    AND YOU ALSO NEED PROOF THAT SOMETHING IS -- THAT THE MONIES TO

15    BE -- TO BE DISGORGED ARE DIRECTLY ATTRIBUTABLE TO THE

16    WRONGDOING.  AND -- AND YOUR HONOR HAD INDICATED, I BELIEVE, AT

17    THE LAST OF THE PRETRIAL CONFERENCES THAT YOU WERE NOT GOING TO

18    GIVE A BUT-FOR INSTRUCTION IN THIS AREA.

19              THE COURT:  I --

20              MR. TANGRI:  AND WE THINK THAT --

21              THE COURT:  I THINK THAT'S RIGHT, BUT I THINK THAT

22    ALSO IS A QUESTION ABOUT WHAT INSTRUCTIONS ARE THERE.  AS I LOOK

23    AT THE INSTRUCTIONS FOR CAUSATION NOW IN CALIFORNIA, THEY'RE ALL

24    SUBSTANTIAL FACTOR INSTRUCTIONS.

25              MR. TANGRI:  BUT --
```

```
 1          THE COURT:  AND I THINK THAT'S WHAT THEY SAY, THAT

 2   IT'S A SUBSTANTIAL FACTOR AND IT'S NOT A MATTER OF TRIVIA, OR

 3   WHATEVER IT MAY BE.  AND THAT'S WHAT I WOULD EXPECT TO GIVE AT

 4   THIS STAGE.

 5          MR. TANGRI:  AND WE SUBMIT THAT FOR UNJUST

 6   ENRICHMENT, ESPECIALLY IN THIS TYPE OF A CASE WHERE IT'S A

 7   THIRD-PARTY, NOT A DIRECT BENEFIT, THAT THERE HAS -- THE

 8   LANGUAGE OF THE RESTATEMENT AND THE LANGUAGE OF THE CASES IS

 9   DIRECTLY ATTRIBUTABLE TO THE WRONGDOING.  IT'S A NOTION OF

10   DISAGGREGATING, AND THAT'S -- THE ALCATEL CASE PICKS THAT UP

11   THAT WE'VE CITED.

12          THE COURT:  ALL RIGHT.  BUT HOW DOES THAT PLAY OUT IN

13   TERMS OF NUMBERS HERE?  DOES THAT PLAY OUT AS EITHER THE

14   409 MILLION OR SOMETHING GREATER THAN THAT OR SOMETHING LESS

15   THAN THAT?

16          MR. TANGRI:  NO.  IT PLAYS OUT, YOUR HONOR, IN THAT

17   THEORY OF CASE HAS BEEN THAT EXCLUSIVITY WAS EITHER FALSELY

18   REPRESENTED TO BE TRANSFERRED OR -- OR -- AND WE DON'T SEE HOW

19   THIS COULD BE, BUT IMPROPERLY TRANSFERRED, AND THAT THAT IS THE

20   INCREMENT, THAT WOULD BE THE WRONGFUL ACT OF THE FALSE

21   REPRESENTATION OF EXCLUSIVITY OR THE FALSE TRANSFER OF

22   EXCLUSIVITY.  AND THE PART OF THE REASON WE FILED THE MOTION TO

23   STRIKE THE EXPERTS IS THAT ADMITTEDLY --

24          THE COURT:  I UNDERSTAND.

25          MR. TANGRI:  -- NO ONE'S TRIED TO VALUE THAT.
```

```
 1            SO THE 409 IS PLAINLY NOT THAT.  NONE OF THE OTHER

 2   NUMBERS, 348 OR 319 FROM MR. REGAN OR MR. LASINSKI, WHICH

 3   PURPORT TO VALUE EITHER THE RADIANCE IP OR THE --

 4            THE COURT:  ASSUME THAT'S SO.

 5                 (SIMULTANEOUS COLLOQUY.)

 6            THE COURT:  WHAT IS YOUR SUGGESTION AS TO WHAT

 7   LIMITS, IF ANY, SHOULD BE GIVEN TO THE JURY?

 8            MR. TANGRI:  WELL, WE'VE TRIED TO CAPTURE THAT, YOUR

 9   HONOR, IN THE PROPOSED INSTRUCTIONS WE SUBMITTED ON FRIDAY.  AND

10   IF I CAN JUST FIND THEM HERE, I WILL --

11                 (REVIEWING DOCUMENTS.)

12            MR. TANGRI:  I THINK IT'S NO. 20 -- IT'S NUMBERS 24

13   THROUGH 27.  TWENTY-FOUR DEFINES THE ELEMENTS AND THE MEANING OF

14   "BENEFIT," AND STATES THE THEORY.  TWENTY-FIVE DOES -- DOES SOME

15   OF THE SAME, AND -- AND MAKES CLEAR THAT THEY HAVE -- THE

16   BENEFITS AT ISSUE HAVE TO BE THE DIRECT RESULT OF THE ALLEGED

17   CLAIM -- FALSE CLAIM OF EXCLUSIVE RIGHTS.

18            TWENTY-SIX ALSO MAKES CLEAR THAT IT'S THE DIRECT

19   RESULT OF A WRONGFUL ACT AT SHUM'S EXPENSE, AND THE

20   AT-HIS-EXPENSE PIECE WE BELIEVE IS IMPORTANT OBVIOUSLY AS A

21   MATTER OF UNJUST ENRICHMENT, THAT'S WHAT MAKES IT UNJUST.

22            AND THEN 27 GOES TO THE AMOUNT OF UNJUST ENRICHMENT,

23   INSTRUCTS THE JURY THAT THEY MUST DETERMINE THE AMOUNT OF ANY

24   BENEFIT RECEIVED THAT IS DIRECTLY ATTRIBUTABLE TO THE FALSE

25   CLAIM OF EXCLUSIVITY AND NOT TO AWARD MR. SHUM ANY PORTION OF A
```

1    BENEFIT THAT IS ATTRIBUTABLE TO FACTORS OTHER THAN THE FALSE

2    CLAIM OF EXCLUSIVITY.  AND THEN IT GOES ON TO REPEAT THAT FOR --

3    FOR LIGHTLOGIC.

4              SO IT'S -- IT'S THAT NOTION OF DIRECT ATTRIBUTION TO

5    THE WRONGFUL ACT CLAIMED AS COMPARED TO ALL -- YOU'VE HEARD THE

6    TESTIMONY OBVIOUSLY, THERE'S A LOT OF VALUE IN LIGHTLOGIC OVER

7    AND ABOVE --

8              **THE COURT:**  WHAT'S YOUR POSITION IF -- IF YOU SAY

9    THAT THE FALSE EXCLUSIVITY IS THE TOUCHSTONE FOR -- FOR THE

10   WRONGFUL CONDUCT, WRONGFUL CONDUCT IS REQUIRED, THEN WOULD THAT

11   LIMIT THE $409 MILLION IN ANY SPECIFIC SENSE?

12             DOES THAT -- WOULD THAT APPLY TO JUST MR. VERDIELL,

13   OR DOES IT APPLY TO DR. VERDIELL?  DOES IT APPLY TO LIGHTLOGIC?

14   I MEAN, THERE'S A DIFFERENCE BETWEEN LIGHTLOGIC AND DR. VERDIELL

15   IN A SENSE IN THAT THE -- THE BENEFIT THAT GOES DIRECTLY TO

16   DR. VERDIELL IS -- IS -- IS A SUBSET OF THE $409 MILLION.

17             **MR. TANGRI:**  WE THINK IT APPLIES TO BOTH OF THEM,

18   YOUR HONOR.  WE THINK -- THERE'S NO WAY THAT -- WE DON'T SEE ANY

19   WAY THE 409 COULD BE AWARDED AGAINST DR. VERDIELL, BUT THE

20   PLAINTIFF'S DAMAGES EXPERTS' THEORIES WITH REGARD TO VERDIELL,

21   IT'S WHAT YOU SAID, THEY ARE -- THEIR THEORY AS TO VERDIELL IS

22   NOTHING BUT A SUBSET OF THE 409.  THEY SIMPLY TOOK THE PART OF

23   409 THAT HE RECEIVED AND CALCULATED IT, AND SO IT SUFFERS -- IT

24   IS INFECTED WITH THE SAME FLAW.  IT'S NOT AN EFFORT TO TRY TO

25   SAY OF EITHER THE 409 OR OF THE SUBSET OF THE 409 THAT HE

```
 1    MATHEMATICALLY RECEIVED, WHAT PORTION IS ATTRIBUTABLE TO

 2    EXCLUSIVITY OR FALSE -- EXCLUSIVITY.

 3              THE COURT:  BUT THERE'S A -- QUESTION IN TERMS OF

 4    WHETHER THE JURY IS TOLD THAT THEY START MEASUREMENT FROM 409 OR

 5    FROM, WHAT WAS IT, $58 MILLION THAT DR. VERDIELL GOT?

 6              MR. TANGRI:  BUT THE 58 MILLION, YOUR HONOR, WE

 7    SUBMIT IS STILL STARTING FROM THE 409.

 8              THE COURT:  THAT'S A DIFFERENT THING, I MEAN, THAT'S

 9    JUST -- THESE ARE THE -- WHAT IS AVAILABLE FOR THEM TO EVEN

10    MEASURE.

11              MR. TANGRI:  I --

12              THE COURT:  THAT'S THE WHOLE THING.

13              MR. TANGRI:  I WOULD THINK THAT IN THAT CIRCUMSTANCE,

14    IF THEY COULDN'T -- IT COULDN'T BE MORE THAN WHAT DR. VERDIELL

15    BROUGHT, BECAUSE EVERYTHING -- AND HE BROUGHT -- I MEAN, HE

16    DIDN'T BRING 58, HE -- HE BROUGHT A LOT MORE THAN THE PATENTS

17    AND EXCLUSIVITY.  BUT AS A STARTING POINT, YEAH, IT OUGHT TO

18    START THERE AND WORK DOWN.

19              THE COURT:  MY -- I GUESS THE QUESTION SHOULD BE

20    IF -- IF WE'RE LOOKING AT UNJUST ENRICHMENT AS A FACTOR OF A --

21    A BENEFIT OBTAINED BY SOMEONE, AND I THINK THAT THAT RAISES THE

22    ISSUE ABOUT IS THERE ATTENDANT WRONGFUL CONDUCT BY THEM AT THE

23    EXPENSE OF ANOTHER.  AND WE SAY IS THE PROOF SUFFICIENT TO SAY

24    THAT THAT COULD BE A LIMIT -- A CAP OF $58 MILLION FOR

25    DR. VERDIELL.  BUT AS FAR AS LIGHTLOGIC, WHY SHOULD THERE BE ANY
```

1   MONEY OTHER THAN THE $58 MILLION WITHIN 409 THAT WOULD FALL

2   WITHIN THE WHOLE NOTION OF WRONGFUL -- OR UNJUST ENRICHMENT IN

3   THAT -- AS FAR AS WHAT HAPPENED THERE IS THE MONEY GOES TO THE

4   SHAREHOLDERS, AND THERE ISN'T ANY -- ANY EVIDENCE AT ALL THAT A

5   SHAREHOLDER WOULD BE CONSIDERED TO BE SOMEONE WHO HAD A --

6   RETAINED A BENEFIT UNJUSTLY IN TERMS OF THE MONEY THAT WENT TO

7   THEM.  SO WHY SHOULD THE MEASUREMENT BE ANY DIFFERENT THAN THE

8   58 MILLION THAT WENT TO DR. VERDIELL?

9          **MR. JANSEN:**  YOUR HONOR, WE -- THAT'S AN ISSUE THAT'S

10  BEEN RAISED BY THE DEFENSE.  AND WE HAVEN'T -- WE -- WE BRIEFED

11  THAT TO SOME EXTENT IN OUR OPPOSITION TO THEIR -- OUR OBJECTIONS

12  TO THEIR INSTRUCTIONS, BECAUSE THEY DID RAISE IT AS A FOOTNOTE

13  IN ONE OF THEIR PROPOSED INSTRUCTIONS.

14          AND I GUESS THE SIMPLE ANSWER IS THE SHAREHOLDERS,

15  OTHER THAN DR. VERDIELL, DIDN'T ACT WITH -- DIDN'T ACT

16  WRONGFULLY, THEY WOULDN'T BE SUBJECT TO AN UNJUST ENRICHMENT

17  CLAIM THEMSELVES.  LIGHTLOGIC DID ACT WRONGFULLY JUST AS MUCH AS

18  DR. VERDIELL DID IN THE SENSE THAT IT -- LIGHTLOGIC HAD THE SAME

19  KNOWLEDGE OF -- OF WHAT ITS RIGHTS WERE.  IT'S PRESUMED THEY

20  HAVE THE SAME KNOWLEDGE.

21          (SIMULTANEOUS COLLOQUY.)

22          **THE COURT:**  THEY, IN EFFECT, COULD BE -- IN TERMS OF

23  CORPORATE LIABILITY, THEIR CORPORATE LIABILITY WOULD BE

24  DEPENDENT UPON DR. VERDIELL'S CONDUCT.  ALL RIGHT.  SO THAT ARE

25  YOU SAYING THAT IF YOU SAY THAT LIGHTLOGIC HAS CORPORATE

1    LIABILITY FOR DR. VERDIELL'S CONDUCT AND HE GOT 58 MILLION, WHY

2    SHOULD IT BE ANY GREATER THAN THAT --

3              **MR. JANSEN:**  BECAUSE.

4              **THE COURT:**  -- OR ANY OTHER SUM?

5              **MR. JANSEN:**  WELL, LIGHTLOGIC SOLD EXCLUSIVE RIGHTS

6    WHICH IT DIDN'T HAVE BECAUSE DR. VERDIELL DIDN'T HAVE THE

7    ABILITY TO TRANSFER EXCLUSIVE RIGHTS.  IT SOLD THOSE RIGHTS TO

8    INTEL AND IT OBTAINED A BENEFIT OF $409 MILLION.

9              NOW, IT'S TRUE IT STRUCTURED THE TRANSACTION IN A WAY

10   THAT THE PAYMENT DIDN'T GO DIRECTLY TO IT.  HOWEVER, THE

11   CORPORATION ACTS ON BEHALF OF ITS SHAREHOLDERS.  IT ACTS FOR THE

12   BENEFIT OF ITS SHAREHOLDERS, AND WHETHER IT HAD THE -- THIS

13   STILL COULD HAVE BEEN STRUCTURED AS AN ASSET SALE WITH THE MONEY

14   COMING TO LIGHTLOGIC --

15             **THE COURT:**  RIGHT.

16             **MR. JANSEN:**  -- THE ENTIRE 409 COMING TO LIGHTLOGIC

17   AND THEN LIGHTLOGIC DISTRIBUTING -- DISSOLVING ITSELF AND

18   DISTRIBUTING THE PROFITS TO ITS SHAREHOLDERS.  INSTEAD IT GOT

19   THE SAME BENEFITS FOR ITS SHAREHOLDERS, BUT IT SIMPLY STRUCTURED

20   THE DEAL SO THAT THE PAYMENT DIDN'T GO THROUGH THE CORPORATE

21   COFFERS FIRST.  BUT IT STILL -- IT STILL ENGAGED IN THE CONDUCT

22   THAT RESULTED IN THAT BENEFIT.  IT SHOWS HOW TO DISTRIBUTE THE

23   BENEFIT.

24             WE, OF COURSE, COULDN'T GO AFTER THE SHAREHOLDERS

25   BECAUSE, NUMBER ONE, THERE'S AN ALTER EGO THEORY THAT WOULD NOT

1    ALLOW US TO PIERCE THE CORPORATE VEIL AS TO THESE KIND OF

2    SHAREHOLDERS; NUMBER TWO, THESE SHAREHOLDERS, IN OUR VIEW, WE'RE

3    NOT ACCUSING THEM OF WRONGDOING, OTHER THAN DR. VERDIELL.

4    HOWEVER, LIGHTLOGIC DID OBTAIN THROUGH EVIDENCE WE BELIEVE

5    SATISFIES WRONGFUL CONDUCT AT THE EXPENSE OF MR. SHUM, YOU KNOW,

6    $409 MILLION OF BENEFIT.

7                **THE COURT:**  THAT MEANS --

8                **MR. JANSEN:**  AND THEREFORE I THINK -- I THINK THAT

9    LIGHTLOGIC CAN HAVE EXPOSURE UP TO --

10               **THE COURT:**  THAT MEANS THAT IT'S OKAY TO STRUCTURE IT

11   SO THAT THE MONEY GOES DIRECTLY TO THE SHAREHOLDERS AND -- BUT

12   THEN IT'S OKAY TO TAKE THE MONEY BACK FROM LIGHTLOGIC THAT WENT

13   TO THE SHAREHOLDERS ON THE THESIS THAT THEY WERE ENRICHED AND

14   THEREFORE THE CORPORATION, FOR THE SHAREHOLDERS, THEY GOT SOME

15   MONEY, BUT THEY ALSO HAD A CORPORATION NOW WHICH OWES

16   $409 MILLION TO MR. SHUM.

17               **MR. JANSEN:**  THE CORPORATION --

18               **THE COURT:**  THAT'S YOUR THEORY.

19               **MR. JANSEN:**  THE CORPORATION WAS ENRICHED AND IT --

20   IT SHOWS HOW TO DISTRIBUTE THAT ENRICHMENT.

21               **THE COURT:**  BUT THAT MEANS THAT YOU THINK THAT

22   MR. SHUM SHOULD BE ENTITLED TO GET MONEY THAT THEY DID NOT GIVE

23   TO DR. VERDIELL BUT THAT THEY GAVE TO OTHER SHAREHOLDERS AND

24   THAT, THEREFORE, THE CORPORATION WOULD BE LIABLE TO PAY THEM

25   UNJUST ENRICHMENT.  AND IN REALITY, SINCE THE CORPORATION

```
 1   DOESN'T EXIST ANYMORE, INTEL WOULD BE LIABLE TO PAY THEM FOR THE

 2   SO-CALLED UNJUST ENRICHMENT BY LIGHTLOGIC.

 3              IN OTHER WORDS --

 4         MR. JANSEN:  YES.

 5         THE COURT:  -- YOU COULDN'T -- YOU COULDN'T ORDER ANY

 6   PAYMENT BY DR. VERDIELL OF MORE THAN $58 MILLION.

 7         MR. JANSEN:  RIGHT.  DR. VERDIELL'S --

 8         THE COURT:  OKAY.

 9                 (SIMULTANEOUS COLLOQUY.)

10         THE COURT:  BUT YOU'RE SAYING YOU CAN ORDER PAYMENT

11   OF UNJUST ENRICHMENT UP TO $409 MILLION TO LIGHTLOGIC BECAUSE

12   LIGHTLOGIC ENGAGED IN CONDUCT THAT WOULD FIT WITHIN THE ELEMENTS

13   OF UNJUST ENRICHMENT.

14         MR. JANSEN:  EXACTLY.  THEY WOULDN'T BE CUMULATIVE.

15   YOU WOULDN'T ADD DR. VERDIELL'S AMOUNT --

16                 (SIMULTANEOUS COLLOQUY.)

17         THE COURT:  -- A SUM ABOVE DR. VERDIELL'S, BUT THAT

18   WOULD MEAN SOMETHING THAT IN REALITY WOULD HAVE TO BE PAID BY

19   INTEL.

20         MR. JANSEN:  WHICH IS AN ISSUE I THINK WE JUST

21   DECIDED WOULD BE RESOLVED AS A MATTER --

22                 (SIMULTANEOUS COLLOQUY.)

23         THE COURT:  RIGHT, CORPORATE LIABILITY.

24         MR. JANSEN:  -- CORPORATE LIABILITY AS A SUCCESSOR,

25   RIGHT.  INTEL DID SUCCEED TO THAT LIABILITY AS A MATTER OF ITS
```

```
1    MERGER.

2              THE COURT:  BUT THE LIABILITY IS DEPENDENT UPON THE

3    NOTION THAT INTEL ENGAGED IN SOME KIND OF WRONGFUL CONDUCT THAT

4    WAS OVER AND ABOVE THAT BY DR. VERDIELL, SO THAT THEY WOULD BE

5    LIABLE FOR UNJUST ENRICHMENT UP TO THE ENTIRE PURCHASE --

6              MR. JANSEN:  LIGHTLOGIC DID.

7              THE COURT:  THAT'S RIGHT.  EXCUSE ME.

8              MR. JANSEN:  NOT THAT IT DID ANYTHING OVER -- IT DID

9    SOMETHING OVER AND ABOVE IN THE SENSE THAT IT SOLD THE ENTIRE

10   RIGHT, TITLE, AND INTEREST IN THE PATENTS CONTRARY TO MR. SHUM'S

11   RIGHTS, IT SOLD HIS RIGHTS AND THEIR RIGHTS, TO INTEL FOR A

12   BENEFIT OF $409 MILLION.

13             AND -- AND OUR EXPERTS DID, IN FAIRNESS, DID THEIR

14   BEST EFFORT -- INTEL NEVER TRIED TO, YOU KNOW, IN ITS PURCHASE,

15   REVIEW OF THE PURCHASE TRANSACTION, NEVER TRIED TO BREAK OUT THE

16   VALUE OF THE -- OF THE INTELLECTUAL PROPERTY.  OUR EXPERTS MADE

17   THEIR BEST EFFORT TO -- TO DETERMINE WHAT THAT INTELLECTUAL

18   PROPERTY VALUE WAS SO THAT THE JURY WOULD HAVE SOME ABILITY

19   TO -- IF IT -- TO AWARD LESS THAN THAT FULL AMOUNT BASED ON WHAT

20   WAS THE VALUE OF THE INTELLECTUAL PROPERTY AS PART OF THE DEAL.

21   IF THEY FEEL IT'S APPROPRIATE.

22             WE BELIEVE UNDER THE LAW THAT THE APPROPRIATE AWARD

23   OF UNJUST ENRICHMENT IS UP TO THE TOTAL AMOUNT RECEIVED AS A

24   RESULT OF THE WRONGFUL CONDUCT, THAT IS -- AND IT'S THE JURY'S

25   DETERMINATION AS TO WHETHER OR NOT THERE WAS A --
```

```
1                    (SIMULTANEOUS COLLOQUY.)

2              THE COURT:  WELL, THAT THEY SAID -- THE TOTAL AMOUNT

3    IS 409 LESS 58 MILLION THAT'S ALREADY WENT TO DR. VERDIELL

4    BECAUSE HE WOULD HAVE TO PAY SOMETHING, TOO.  THE THEORY, IF

5    YOU'RE SAYING 409, THEN WE MAY ASSUME THAT DR. VERDIELL WOULD

6    HAVE TO PAY 58.  THEN WE'D TAKE THE REST OF IT AND WE SAY, WELL,

7    THEN WE'RE GOING TO TAKE A LOOK AND SEE HOW MUCH THE PATENTS

8    ARE.  AND IT COULD BE UP TO WHATEVER IS THE DIFFERENCE BETWEEN

9    409 AND 58.

10             MR. JANSEN:  RIGHT.  AND -- AND YES.  THAT'S

11   ESSENTIALLY RIGHT.

12             WE BELIEVE THAT YOUR INSTRUCTIONS ON UNJUST

13   ENRICHMENT ARE -- ARE ESSENTIALLY APPROPRIATE THE WAY THEY'RE

14   WRITTEN.  WE -- WE'VE OBJECTED TO ALL THE ADDITIONAL FACTORS

15   THAT --

16             THE COURT:  RIGHT.

17             MR. JANSEN:  -- AND ELEMENTS THAT THE DEFENDANTS ARE

18   TRYING TO THROW IN --

19             THE COURT:  -- THE INSTRUCTIONS DON'T INCLUDE ANY

20   KIND OF LIMITATION IN TERMS OF THE MEASUREMENT OF UNJUST

21   ENRICHMENT.  THEY TALK ABOUT THAT YOU MAKE SOME SORT OF AWARD,

22   BUT WE HAVEN'T GONE INTO THAT WITH ANY SPECIFICITY.

23             MR. JANSEN:  I BELIEVE THE SUBSTANTIAL FACTOR

24   APPROACH FOR CAUSATION IS THE APPROPRIATE INSTRUCTION.

25             THE COURT:  I THINK IT IS, BUT THAT DOESN'T ANSWER
```

```
1    THE QUESTION ABOUT SUBSTANTIAL FACTOR OF WHAT?

2              MR. TANGRI:  RIGHT.

3              THE COURT:  OF WHAT NUMBER?

4              MR. TANGRI:  YOUR HONOR, I GUESS JUST A FEW THINGS

5    BECAUSE THIS HAS GONE ON A LITTLE BIT.

6              JUST FIRST OFF, I'M REMINDED THAT THE TESTIMONY WAS

7    THAT THE AMOUNT OF THE BENEFIT RECEIVED BY DR. VERDIELL WAS

8    ACTUALLY, AT MOST, 50 MILLION, NOT 58.

9              THE COURT:  WELL, I WAS JUST SAYING THIS IS WHATEVER

10   THE MEASUREMENT WOULD BE IN THAT SENSE, WHATEVER HE GOT.

11             MR. TANGRI:  SECOND OFF, THERE'S -- THERE'S --

12   THERE'S NO EVIDENCE AND THIS -- THERE'S NO EVIDENCE IN THE

13   RECORD OF ANY STRUCTURING OF THE TRANSACTION BY LIGHTLOGIC OR

14   INTEL OR ANYONE ELSE WITH ANY PURPOSE OR CONSIDERATION OR INTENT

15   REGARDING THIS ISSUE.  THIS IS A COMPLETELY NORMAL TRANSACTION.

16             THE COURT:  WELL, THERE WAS --

17             MR. TANGRI:  AND THERE WAS JUST NO EVIDENCE FROM

18   ANYONE AS TO WHY IT WAS STRUCTURED THE WAY IT WAS, AND IT'S

19   STRUCTURED IN A COMPLETELY NORMAL WAY.  SO THE REALITY IS

20   LIGHTLOGIC GOT NO BENEFIT FROM THE TRANSACTION.  THE MONEY

21   FLOWED TO THE SHARE --

22             THE COURT:  DIDN'T LIGHTLOGIC -- DIDN'T LIGHTLOGIC

23   GET A BENEFIT IN THE SENSE THAT THEIR CORPORATION THAT GOT

24   $409 MILLION AND THEN IT WAS DISTRIBUTED TO THEIR SHAREHOLDERS?

25             MR. TANGRI:  NO, THAT'S NOT THE WAY THE TRANSACTION
```

3604

```
 1    WORKED.
 2            THE COURT:  OKAY.
 3            MR. TANGRI:  THE WAY THE TRANSACTION WORKED VERY
 4    CLEAR WAS THAT STOCK WAS EXCHANGED FOR STOCK.  LIGHTLOGIC
 5    SHAREHOLDERS ON DAY ONE HELD STOCK IN LIGHTLOGIC.  LIGHTLOGIC
 6    SHAREHOLDERS IN DAY TWO HELD STOCK IN INTEL.  IT DIDN'T PASS
 7    THROUGH LIGHTLOGIC.  NO MONEY PASSED ANYWHERE.  LIGHTLOGIC WAS,
 8    FOR ALL INTENTS AND PURPOSE -- PURPOSES, AN OBJECT THAT WAS
 9    SOLD.  AND JUST AS AN OBJECT THAT IS SOLD CANNOT BE SAID TO BE
10    ENRICHED BY THE CONSIDERATION PAID FOR ITS SALE, NEITHER CAN
11    LIGHTLOGIC BE SAID TO HAVE BEEN ENRICHED BY THE FACT ITS
12    SHAREHOLDERS --
13                   (SIMULTANEOUS COLLOQUY.)
14            THE COURT:  -- THERE SHOULD BE NO UNJUST ENRICHMENT
15    AT ALL FOR LIGHTLOGIC, IS WHAT YOU'RE SAYING.
16            MR. TANGRI:  THAT IS THE ARGUMENT AND I JUST DON'T
17    WANT TO LOSE TRACK OF THAT.
18            NOW, THE NEXT PIECE OF THE ARGUMENT IS THE -- THE
19    OTHER REASON THAT IT HAS TO BE CAPPED AT THE $50 MILLION THAT
20    DR. VERDIELL RECEIVED, AND I STRESS THAT THAT'S CAPPED, IS THAT
21    ANYTHING ELSE REALLY IS DOUBLE COUNTING.  IF LIGHTLOGIC HAD
22    THESE PATENT RIGHTS, EXCLUSIVITY RIGHTS, NOT JUST PATENT RIGHTS,
23    AND IF IT HAD THEM IMPERMISSIBLY OR IF IT SOLD THEM
24    IMPERMISSIBLY, HOWEVER -- WHATEVER IT HAD IN THAT REGARD AND
25    WHATEVER IT GOT IN THAT REGARD AND WHATEVER IT SOLD IN THAT
```

1    REGARD AND WHATEVER ANYONE THOUGHT IT WAS WORTH, IT GOT THEM,

2    THERE'S NO DISPUTE, FROM DR. VERDIELL.

3          WELL, OBVIOUSLY OUR POSITION IS THAT IT DIDN'T HAVE

4    EXCLUSIVE RIGHTS, NEVER TOLD ANYONE IT DID, NEVER SAID IT DID

5    AND NO ONE EVER PAID FOR IT.  BUT IF SOMEONE WANTS TO THINK THAT

6    HAPPENED, WHATEVER IT HAD IT GOT FROM DR. VERDIELL.  AND WHAT

7    DR. VERDIELL GOT WAS, AT MOST, $50 MILLION.

8          WE THINK THAT'S THE WRONG POINT IN TIME.  WE THINK

9    THAT'S THE WRONG APPROACH.  WE THINK THAT ADDS IN A WHOLE BUNCH

10   OF OTHER THINGS THAT DR. VERDIELL GOT VALUE FOR.  BUT THAT IS AN

11   INDEPENDENT REASON THERE HAS TO BE A CAP.  YOU CAN'T JUST LOOK

12   AT ALL THE MONEY THAT FELL ON LIGHTLOGIC OR FELL ON ITS

13   SHAREHOLDERS, MORE TO THE POINT, AND SAY, WELL, MAYBE SOME OF

14   THAT IS ATTRIBUTABLE TO THESE EXCLUSIVITY RIGHTS IF THE

15   EXCLUSIVITY RIGHTS IN THE FIRST INSTANCE CAME FROM DR. VERDIELL,

16   WHICH WE DON'T THINK THEY DID, BUT ON THIS THEORY, GOING DOWN

17   THIS ROAD, THAT WOULD HAVE TO BE THE MAXIMUM VALUE IS WHAT HE

18   GOT.  BECAUSE THEY DIDN'T GET THEM FROM ANY OTHER SOURCE.

19          **MR. JANSEN:**  YOUR HONOR, I JUST DON'T THINK THAT

20   ARGUMENT MAKES LOGICAL SENSE.  THE EVENT THAT CAUSED -- OR THE

21   EVENT OF UNJUST ENRICHMENT IS THE SALE TO INTEL.  LIGHTLOGIC IS

22   THE ENTITY THAT SOLD ALL THE RIGHT, TITLE, AND INTEREST IN -- I

23   DON'T THINK INTENT IS A REQUIRED ELEMENT OF UNJUST ENRICHMENT,

24   NUMBER ONE.  HOWEVER, TO THE EXTENT THAT IT IS, THE KNOWLEDGE OF

25   DR. VERDIELL AND DR. VERDIELL'S INTENT CAN BE IMPUTED TO

1    LIGHTLOGIC.  HE IS -- HE WAS ONE OF THEIR CHIEF EXECUTIVE

2    OFFICERS.  HE WAS ITS SOLE OWNER.  HIS KNOWLEDGE AND INTENT IS

3    IMPUTED TO LIGHTLOGIC.

4          LIGHTLOGIC -- DR. VERDIELL, I THINK THE TESTIMONY WAS

5    PRETTY CLEAR, DID NOT EVEN NEGOTIATE THE SALE TO INTEL.  BUT

6    THE -- THE CONDUCT IS THE SALE OF ALL RIGHT, TITLE, AND INTEREST

7    IN THOSE PATENTS AND IN THOSE INVENTIONS TO INTEL.  THE TOTAL

8    CONSIDERATION RECEIVED WAS $409 MILLION.

9          AND I THINK THERE'S SOME LEEWAY ON THE PART OF THE

10   JURY AS TO, YOU KNOW, WHAT PORTION OF THAT IS ATTRIBUTABLE TO,

11   YOU KNOW, INJURY TO MR. SHUM OR WAS IT MR. SHUM'S EXPENSE.  WE

12   BELIEVE IT'S AT LEAST ONE HALF OF THE -- THE VALUE OF THE

13   INTELLECTUAL PROPERTY AS MEASURED BY -- BY OUR EXPERTS.

14         BUT WE ALSO BELIEVE AND WE'VE PUT IN A JURY

15   INSTRUCTION WITH AUTHORITY ON THIS, IS THAT IN FACT IN AN UNJUST

16   ENRICHMENT CASE WHERE THE ASSETS HAVE BEEN MINGLED BY THE

17   DEFENDANT, THE DEFENDANT HAS THE DUTY TO ALLOCATE OUT WHAT THEY

18   BELIEVE IS, YOU KNOW --

19         **THE COURT:**  SO THE DEFENDANTS GET TO DECIDE IT?

20         **MR. JANSEN:**  -- THE PROCEEDS -- WHAT'S THAT?

21         **THE COURT:**  IF THEY HAVE A DUTY, THEY ALSO HAVE THE

22   POWER?  YOU MEAN THIS IS A DUTY THAT THEY HAVE, BUT THEY DON'T

23   HAVE ANY POWER TO DO IT?  IF I SAY TO THE DEFENDANT, "YOU TELL

24   US HOW MUCH OF THIS IS GOING TO BE ALLOCATED OUT," AND THEY SAY,

25   "A DOLLAR AND A HALF," OKAY, IS THAT WHAT IT IS?

 1          **MR. JANSEN:**  NO, NO.  THEY HAVE THE BURDEN OF PUTTING

 2     ON EVIDENCE, I THINK, THAT WOULD ALLOW THE -- IF THEY BELIEVE

 3     THERE HASN'T BEEN AN ADEQUATE ALLOCATION -- AND OUR EXPERTS DID

 4     THE BEST JOB THEY COULD WITH THE EVIDENCE, BUT ESSENTIALLY THE

 5     SALE HERE WAS OF UNDIVIDED INTERESTS IN PATENTS.  MR. SHUM'S

 6     RIGHTS WERE SOLD ALONG WITH MR. VERDIELL'S RIGHTS.  THERE WAS A

 7     COMMINGLING.  OUR EXPERTS DID THE BEST THEY COULD TO -- TO TRY

 8     TO DETERMINE THE VALUE OF THE INTELLECTUAL PROPERTY AS PART OF

 9     THAT -- OF THAT DEAL.

10          **THE COURT:**  BUT THAT'S ON A PREMISE THAT THEY WERE

11     SOLD THESE RIGHTS AND THAT MR. SHUM DOESN'T HAVE ANY MORE

12     RIGHTS.  THAT'S WHAT IT IS; IS THAT IT?

13          **MR. JANSEN:**  THE PREMISE OF THE UNJUST ENRICHMENT IS

14     THAT -- IS THAT --

15          **THE COURT:**  THEY HAVE -- THEY HAVE MR. SHUM'S RIGHTS

16     ON THAT PREMISE.

17          **MR. JANSEN:**  AND THEY HAVE TRANSFERRED THEM.

18          **THE COURT:**  HE HAS NO RIGHTS AT ALL AT THIS STAGE

19     BECAUSE THEY'VE BOUGHT THEM.

20          **MR. JANSEN:**  THEY'VE TRANSFERRED ALL THOSE RIGHTS.

21     ALL THOSE RIGHTS WERE TRANSFERRED ALONG WITH -- MR. VERDIELL

22     NEVER SOLD -- I MEAN, THIS IS A DISPUTE OF FACT FOR THE JURY,

23     OBVIOUSLY.  BUT IT'S OUR VIEW THE EVIDENCE SHOWS THAT

24     MR. VERDIELL NEVER SOLD HIS, QUOTE, RIGHT TO USE.  HE SOLD AN

25     UNDIVIDED COMPLETE RIGHT, TITLE, AND INTEREST.

```
 1              THE COURT:  DID THEY GET THAT?

 2              MR. JANSEN:  INTEL GOT THAT, YES.

 3              THE COURT:  ALL RIGHT.  AND SO MR. SHUM HAS NO SUCH

 4   THING BECAUSE IT WAS SOLD.

 5              MR. JANSEN:  THAT WAS THE PROBLEM THAT WE -- YOU

 6   KNOW, THAT WAS EXACTLY RIGHT, THAT INTEL HAS ON RECORD

 7   ASSIGNMENTS OF ALL RIGHT, TITLE, AND INTEREST IN THOSE

 8   INVENTIONS AS WELL AS PATENTS WHICH WERE ASSIGNED TO INTEL.

 9              THE COURT:  OKAY.

10              MR. TANGRI:  YOUR HONOR --

11              MR. JANSEN:  YOU KNOW, SO THAT'S -- NOW, MR. TANGRI

12   REFERRED TO SOME NOTION THAT THERE WAS NO WRONGFUL INTENT IN THE

13   WAY THAT THE ACTUAL MERGER AND RESULTING PAYMENT TO SHOW -- WAS

14   STRUCTURED -- WE'RE NOT CLAIMING SOME KIND OF FRAUDULENT

15   CONVEYANCE IN THE WAY THE DEAL ITSELF WAS STRUCTURED.  WE'RE NOT

16   TRYING TO CLAIM THAT THAT WAS STRUCTURED TO HIDE ASSETS FROM

17   MR. SHUM.  THERE'S NO SUCH CLAIM THERE.  WE'RE SIMPLY SAYING

18   THAT THE -- THE BENEFIT WAS RECEIVED --

19              THE COURT:  OKAY.

20              MR. JANSEN:  -- BY LIGHTLOGIC ON BEHALF OF ITS

21   SHAREHOLDERS.

22              THE COURT:  JUST FOR ANOTHER THING, I'LL THINK ABOUT

23   THIS A BIT.  IS UNJUST ENRICHMENT SOMETHING THAT IS ASKED OF THE

24   JURY TO MAKE A DECISION AS AN ADVISORY VERDICT TO THE COURT?

25              MR. JANSEN:  NO, IT'S NOT, YOUR HONOR.
```

1           **MR. TANGRI:**  YES.

2           **THE COURT:**  WHAT IS IT?

3           **MR. TANGRI:**  WE SAID -- WE SAID --

4           **THE COURT:**  IT'S ENFORCEABLE AS SUCH, IS THAT THERE'S

5    NO NOTION THAT UNJUST ENRICHMENT IS A SPECIES OF EQUITY THAT

6    GOES TO THE COURT IN SOME FASHION.

7           **MR. TANGRI:**  AND THAT IS -- OUR POSITION IS THAT IT

8    IS, YOUR HONOR, JUST TO BE CLEAR.

9           **THE COURT:**  I DIDN'T SEE ANYTHING ABOUT CALIFORNIA

10   LAW MAKING A DEFINITIVE STATEMENT ABOUT THAT, DID YOU?

11          **MR. JANSEN:**  WE DID, AND WE ACTUALLY -- I THINK WE

12   CITED SOME OF THOSE CASES IN -- WE DIDN'T FILE A FORMAL

13   OPPOSITION TO THE BRIEF THAT WAS FILED BY DEFENDANTS ON THE --

14          **THE COURT:**  YEAH, I KNOW.

15          **MR. JANSEN:**  BASICALLY WE INCORPORATED THIS INTO OUR

16   OBJECTIONS ON --

17          **THE COURT:**  RIGHT.

18          **MR. JANSEN:**  -- THEIR PROPOSED JURY INSTRUCTIONS.

19   AND IF I CAN JUST -- FOR A MINUTE, I CAN POINT YOU TO THE

20   DISCUSSION OF THE LAW THAT TELLS YOU WHERE WE BRIEFED THAT ON

21   OUR --

22                    (OFF-THE-RECORD DISCUSSION.)

23          **MR. TANGRI:**  YOUR HONOR, JUST SO OUR POSITION ON THIS

24   IS STATED AT PAGE 8 OF MEMORANDUM RE FINAL JURY INSTRUCTIONS

25   THAT WE FILED ON FRIDAY.

```
1              THE COURT:  OKAY.

2              MR. JANSEN:  JUST ONE SECOND, YOUR HONOR.

3              MR. TANGRI:  THERE IS LAW THERE FOR THE PROPOSITION.

4              THE COURT:  WELL, THIS IS OBVIOUSLY SOMETHING WE

5    DON'T HAVE TO DO RIGHT NOW, BUT I WANT TO MAKE SURE THAT YOU

6    GIVE ME WHAT YOU BELIEVE TO BE THE PRECEDENT THAT I SHOULD LOOK

7    AT FOR THAT ISSUE.

8              MR. JANSEN:  OKAY, YOUR HONOR.

9              THE COURT:  WE CAN LEAVE THAT FOR THE TIME BEING.

10             MR. JANSEN:  OKAY.

11             THE COURT:  ALL RIGHT.  ONE OTHER THING THAT MAYBE WE

12   OUGHT TO HAVE A BRIEF TALK ABOUT, AND THAT IS THAT -- THE

13   INSTRUCTIONS WERE PREMISED ON THE NOTION THAT THE -- AS I

14   UNDERSTOOD WHAT YOU'VE SAID DURING THE TRIAL, IS THAT THE ISSUE

15   HERE IS -- IS WHETHER OR NOT MR. SHUM IS A COINVENTOR.  AND THAT

16   THAT TOOK OUT THE PROBLEM ABOUT DECIDING UPON MR. VERDIELL.

17             BUT IT SEEMS THAT YOUR INSTRUCTIONS, AS I SEE THEM,

18   YOU ARE RETAINING THE NOTION THAT YOU THINK THAT THERE'S AN

19   EVIDENTIARY BASIS UPON WHICH A JURY COULD DECIDE THAT

20   DR. VERDIELL WAS NOT AN INVENTOR OF SOME PORTION OF THE PATENTS

21   OR THE CLAIMS.

22             MR. JANSEN:  I BELIEVE WE HAVE -- I THINK NOW

23   PROCEEDING ON THE COINVENTOR THEORY.

24             THE COURT:  THAT'S WHAT I THOUGHT.

25             MR. TANGRI:  THAT'S WHAT THEY SAY.
```

1      **MR. JANSEN:**  YES.

2      **THE COURT:**  WELL, THEN, THERE WAS A VERDICT FORM

3  OR -- VERDICT FORM SAYS DR. VERDIELL IS THE SOLE INVENTOR, YES

4  OR NO, IS NOT THE SOLE INVENTOR, YES OR NO.  THAT'S A VERDICT

5  FORM I DIDN'T THINK WAS APPROPRIATE.  I THINK THE VERDICT FORMS

6  NOW ARE COINVENTOR, YES OR NO, ON EACH CLAIM THAT IS RAISED WITH

7  REFERENCE TO EACH PATENT.

8      **MR. JANSEN:**  I THINK --

9      **THE COURT:**  THAT'S THE WAY I STRUCTURED IT.

10      **MR. JANSEN:**  I THINK WHEN WE -- YOUR HONOR, WHEN WE

11  STARTED, WHEN WE CAME INTO TRIAL IN THE PRETRIAL FILINGS, I

12  THINK WE DID FEEL THERE WAS A POSSIBLE OPTION FOR THE JURY TO

13  FIND THAT MR. SHUM WAS THE SOLE INVENTOR OR THE COINVENTOR.  AND

14  BASED ON MR. SHUM'S TESTIMONY IN PART IN TRIAL THAT HE WAS -- IT

15  WAS HIS VIEW, HIS OWN VIEW, EVEN THOUGH HE BELIEVED HE WAS -- HE

16  WAS DROPPING THAT.

17      **THE COURT:**  OKAY.  WELL, THAT CLARIFIES THAT AS FAR

18  AS I'M CONCERNED.

19      **MR. TANGRI:**  YOUR HONOR, I SEE YOU LOOKING AT THE

20  CLOCK, AND WE WOULD LIKE YOU TO HAVE AS MUCH TIME TO READ AND

21  DIGEST THIS MATERIAL AS POSSIBLE.

22      **THE COURT:**  I THINK, LET'S SEE, NEXT TUESDAY.

23      (LAUGHTER.)

24      **THE COURT:**  ALL RIGHT.  WHY DON'T WE TAKE OFF NOW,

25  AND YOU COME BACK AT 1:30 AND WE'LL GO INTO THE SPECIFICS OF THE

```
 1   INSTRUCTIONS.  OKAY.

 2              MR. TANGRI:  VERY WELL, YOUR HONOR.

 3              AND ACTUALLY, BEFORE WE DO THAT, I APOLOGIZE, BUT I

 4   JUST WOULD LIKE TO HAND TO THE COURT AND TO THE PLAINTIFF'S

 5   COUNSEL ONE INSTRUCTION.  THEY FILED SOMETHING ON YOUR

 6   INVENTORSHIP INSTRUCTIONS.  WE ALSO HAVE A PROPOSED INSTRUCTION

 7   THAT'S NUMBER 29 ON INVENTORSHIP, WHICH JUST TAKES FROM WHAT YOU

 8   DID, GAVE US ON FRIDAY, AND -- AND MAKES A FEW MODIFICATIONS TO

 9   THAT.

10              AND JUST FOR CONSIDERATION SO IT DOESN'T COME AT THE

11   LAST --

12              THE COURT:  I SEE THERE'S -- THERE'S SOME VALUE IN

13   RELYING UPON THE NORTHERN DISTRICT'S VERSION OF PATENT

14   INSTRUCTIONS, BUT IT'S NOT VERY EXTENSIVE AS FAR AS INVENTORSHIP

15   IS CONCERNED SO WE PROBABLY HAVE TO ADD SOME MORE.  BUT I LIKE

16   TO USE THEIR TAKE ON THINGS AS MUCH AS I CAN, AND THAT'S WHAT I

17   WAS TRYING TO DO IS TO ADAPT IT TO OUR CASE AND THEIR

18   INSTRUCTIONS.  SO THAT'S WHAT I WOULD SEEK TO DO FROM HERE ON

19   IN.

20              MR. TANGRI:  UNDERSTOOD.

21              THE COURT:  OKAY.

22              MR. TANGRI:  THANK YOU, YOUR HONOR.

23              THE COURT:  ALL RIGHT.  WE'LL SEE YOU AT 1:30.

24              MR. JANSEN:  THANK YOU, YOUR HONOR.

25                   (RECESS TAKEN AT 10:45 A.M.)
```

3613

```
1              (PROCEEDINGS RESUMED AT 1:30 P.M.)

2          THE CLERK:  REMAIN SEATED.  COURT IS IN SESSION.

3    COME TO ORDER.

4              (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE

5    PRESENCE OF THE JURY:)

6          THE COURT:  OKAY.  I THINK PROBABLY THE BEST WAY TO

7    GET STARTED IS TO DO AS I SUGGESTED BEFORE, IS THAT LET'S JUST

8    START AT PAGE 1 AND START FROM THERE AND THEN TAKE UP THE TOPICS

9    AS THEY COME ALONG.

10             SO THE FIRST THING TO DO IS FOR ANYBODY TO TELL ME

11   WHAT IS THE FIRST PAGE THAT CONTAINS AN ISSUE THAT THEY WANT TO

12   DISCUSS.

13         MR. TANGRI:  YOUR HONOR, I THINK FOR THE DEFENDANTS,

14   TWO THINGS.  FIRST OFF, I JUST WANTED TO SAY WE COMMUNICATED

15   THIS TO PLAINTIFF'S COUNSEL OVER THE -- OVER THE BREAK.  IF THE

16   COURT BELIEVES THAT IT WOULD BE HELPFUL TO HAVE MORE TIME THAN

17   JUST THIS AFTERNOON TO SETTLE THESE INSTRUCTIONS, OR FOR THE

18   COURT TO STUDY THEM THIS AFTERNOON FURTHER AND TO COME BACK AND

19   HAVE US DO THIS TOMORROW IN LIGHT OF THE TIMING AT WHICH THE

20   PARTIES GOT THESE TO YOU, WE ARE OPEN TO THAT.  WE HAD BEEN THE

21   ONES PUSHING FOR A SPEEDY CLOSE.  WE RECOGNIZE THAT, BUT WE

22   WOULD HAVE NO OBJECTION EITHER NOW OR AS THE DAY WEARS ON IF

23   YOUR HONOR DECIDES IT WOULD BE MORE PRODUCTIVE TO CALL THE

24   JURORS AND TELL THEM TO COME IN WEDNESDAY AND WE TAKE

25   TOMORROW --
```

3614

```
 1              THE COURT:  NO, I WAS THINKING ABOUT THAT, TOO, IS

 2    THAT IT MAY BE THAT WE GET TO A POINT THIS AFTERNOON WHERE WE

 3    THINK MAYBE THERE OUGHT TO BE SOME MORE REFLECTION BECAUSE

 4    THERE'S SOME VERY, YOU KNOW, SUBSTANTIAL ISSUES HERE THAT ARE --

 5    WE WANT TO MAKE SURE WE GET IT AS -- AS WELL AS WE CAN FOR THE

 6    JURY'S INSTRUCTIONS.

 7              SO, WELL, I THINK WE OUGHT TO JUST START IN WHAT

 8    WE'RE DOING NOW.

 9              MR. TANGRI:  ABSOLUTELY.

10              THE COURT:  SEE WHERE WE GET, AND THEN HAVE IN MIND

11    THAT IT MAY BE THAT BEFORE, SAY, 4:00 O'CLOCK OR SO, WE MAY TELL

12    THE CLERK TO CALL THEM AND HAVE THE JURY COME BACK NOT TOMORROW

13    BUT ON THE NEXT DAY.

14              MR. TANGRI:  AND I WANT --

15              THE COURT:  NO, I APPRECIATE WHAT YOU'RE SAYING.

16    OKAY.

17              MR. TANGRI:  AND WITH THAT, THEN I GUESS I WOULD SAY

18    THAT I THINK OUR FIRST ISSUE WOULD ARISE ON PAGE 8, SO UNLESS

19    PLAINTIFF HAS SOMETHING EARLIER THAN NOT.

20              MR. JANSEN:  YOUR HONOR, I THINK WE HAVE AN ISSUE

21    WITH ONE OF THE PRELIMINARY INSTRUCTIONS AT PAGE 3.

22              THE COURT:  SEE, I WANTED TO FIND OUT WHO WAS GOING

23    TO BE NUMBER ONE.  PAGE 3.

24              MR. JANSEN:  AND PLAINTIFF DOES NOT HAVE A LOT OF

25    CONCERNS WITH THE -- THE DRAFT INSTRUCTIONS.  THE ONE -- AND
```

```
1   MR. MCFARLANE IS GOING TO HANDLE THE INVENTORSHIP INSTRUCTIONS

2   WHERE WE HAVE GOT A COUPLE ISSUES, PRIMARILY THE ONE WE

3   ADDRESSED IN THE FILING LAST NIGHT.

4             THE COURT:  WE'LL GET TO THAT.

5             MR. JANSEN:  RIGHT.  ON PAGE 3, THOUGH, THERE'S A

6   REFERENCE TO THAT DURING THE TRIAL CERTAIN TESTIMONY HAS BEEN

7   READ OR SHOWN TO YOU BY WAY OF DEPOSITION.  WELL, THAT'S NOT THE

8   CASE IN THIS TRIAL.

9             THE COURT:  I THINK THAT THAT'S CORRECT BECAUSE I

10  THINK THAT ULTIMATELY WE DID NOT HAVE ANY DEPOSITION.

11            MR. JANSEN:  THAT'S RIGHT.  SO I THINK THIS PARAGRAPH

12  SHOULD BE TAKEN OUT.

13            THE COURT:  YEAH, THAT'S RIGHT.

14            MR. TANGRI:  THAT'S FINE.  NO OBJECTION.

15            MR. JANSEN:  AND THEN THE NEXT COMMENT THAT WE HAVE

16  WOULD BE I THINK PROBABLY ON PAGE 8 AS WELL, SO I'LL LET

17  MR. MCFARLANE TAKE THAT.

18            THE COURT:  OKAY.

19            MR. McFARLANE:  GOOD AFTERNOON, YOUR HONOR.

20            WE HAD, ON PAGE 8, JUST A VERY MINOR COMMENT.  I

21  BELIEVE.  IN THE FIRST FULL PARAGRAPH AFTER THE TWO BULLET

22  POINTS, IT REFERS TO MR. VERDIELL'S NAMED AS A COINVENTOR ALONG

23  WITH FOUR OTHER PERSONS ON THE '6, '726, AND I JUST BELIEVE THAT

24  THAT REFERENCE SHOULD BE THE '427 PATENT.

25            MR. TANGRI:  YEAH, THAT'S CORRECT, YOUR HONOR.  YEAH.
```

```
 1              THE COURT:  THAT IS CORRECT.

 2              I THINK THERE'S A TYPO.  ALL RIGHT.  NO, ALL RIGHT.

 3   SO WE AMEND THAT TO SAY THE '427 PATENT.

 4              MR. TANGRI:  RIGHT.

 5              THE COURT:  GOOD.  OKAY.

 6              ALL RIGHT.

 7              MR. TANGRI:  AND THEN, YOUR HONOR, I GUESS BOTH SIDES

 8   HAVE PROPOSED WHAT I THINK ARE FAIRLY, YOU KNOW -- SOME MINOR

 9   CHANGES TO THIS.  OURS WE HANDED UP AND HANDED OVER JUST BEFORE

10   THE BREAK THIS MORNING.

11              THE FIRST CHANGE THAT WE WOULD PROPOSE IS SIMPLY A

12   REORDERING, AND I CAN GIVE THE COURT ANOTHER COPY IF THAT

13   WOULD --

14              THE COURT:  YEAH, WELL, MAYBE SO.

15              MR. TANGRI:  IF YOU HAVE NO SHORTAGE OF PAPER UP

16   THERE, I KNOW.

17              THE COURT:  GET USED TO YOUR HANDLING OF PAPER, AND

18   WE'VE GOT A LOT OF PAPER AND IT WAS DUPLICATED WHICH WAS VERY

19   NICE OF PEOPLE TO GET THAT DONE.

20              MR. TANGRI:  SO, AND YOU'LL SEE THAT THERE'S A CHANGE

21   THERE AT THE BEGINNING OF LINE 14, THERE'S A BRACKETED

22   PARAGRAPH.  AND THAT BRACKETED PARAGRAPH IS FROM YOUR

23   INSTRUCTIONS --

24              THE COURT:  INSTRUCTION.

25              MR. TANGRI:  -- AS YOU PROPOSED IT.
```

```
1              THE COURT:  CORRECT.

2              MR. TANGRI:  THE INTENT IS FOR IT TO BE

3    WORD-FOR-WORD.  WE'VE SIMPLY MOVED IT FROM WHERE IT WAS TO

4    THERE.  AND THE REASON FOR DOING THAT, YOUR HONOR, IS THAT WE

5    THOUGHT THAT TO HAVE THE STATEMENTS ABOUT WHAT IT IS TO BE AN

6    INVENTOR COME IMMEDIATELY FOLLOWING THE STATEMENT THAT

7    MR. VERDIELL IS NAMED AS THE SOLE INVENTOR COULD UNNECESSARILY

8    LEAD THE JURY TO BEGIN WORRYING ABOUT WHETHER HE SHOULD HAVE

9    BEEN NAMED AN INVENTOR OR NOT.  AND SINCE SOLE INVENTORSHIP IS

10   NOT AN ISSUE IN THE CASE, WE THOUGHT IT WAS CLEAR TO STATE RIGHT

11   UP FRONT THE PRESUMPTION AND THEN MOVE FORWARD FROM THERE, BOTH

12   THE PRESUMPTION AND THE BURDEN ON THE --

13             THE COURT:  SO MOVE THE PARAGRAPH FROM PAGE 9, MOVE

14   IT TO PAGE 8 RIGHT AFTER THE DESCRIPTION OF THE SOLE

15   INVENTORSHIP.

16             MR. TANGRI:  THAT'S CORRECT.  THAT'S CORRECT.

17             THE COURT:  OKAY.

18             MR. TANGRI:  AND THEN OUR -- OUR NEXT CHANGE, I

19   BELIEVE, OR PROPOSED CHANGE WOULD OCCUR ON THE SECOND -- ON THE

20   NEXT PAGE OF THE INSTRUCTION 29 THAT WE HANDED UP.

21             YOU'LL SEE IN PAGE -- IN ABOUT LINE 4 THERE, SOME

22   BRACKETED TEXT APPEARS.  AND THAT'S JUST -- THERE'S A SHORT

23   DESCRIPTION OF DEPENDENT AND INDEPENDENT CLAIMS.

24             AND THEN THE LAST SENTENCE OF THAT --

25             THE COURT:  THAT'S -- LET'S TAKE CARE OF THAT SO WE
```

```
1   DO EACH ONE AT A TIME.

2           MR. TANGRI:  OKAY.

3           THE COURT:  WHAT PARAGRAPH WOULD YOU CHANGE?

4           MR. TANGRI:  IT'S --

5           THE COURT:  WHAT PAGE?

6           MR. TANGRI:  IT'S ON -- ON -- ON YOUR INSTRUCTIONS?

7           THE COURT:  RIGHT.

8           MR. TANGRI:  YOUR HONOR, ON YOUR INSTRUCTIONS, IT

9   WOULD BE ON PAGE 9, THE FIRST FULL PARAGRAPH THAT BEGINS "MORE

10  THAN ONE PERSON MAY BE AN INVENTOR OF A PATENT."  AND --

11          THE COURT:  WAIT A MINUTE.

12          YES.  OKAY.

13          MR. TANGRI:  OKAY.  AND WE WOULD PROPOSE TO ADD TO

14  THE END OF THAT PARAGRAPH THIS -- THE TEXT THAT APPEARS IN

15  BRACKETS IN OUR PROPOSED INSTRUCTION 29 THAT I JUST HANDED UP.

16          THE COURT:  OKAY.

17          MR. TANGRI:  AND IT'S ON THE SECOND PAGE OF THAT

18  PROPOSED INSTRUCTION.  BEGINNING IN THE MIDDLE OF LINE 4, YOU'LL

19  SEE SOME BRACKETED TEXT THAT WE PROPOSE TO ADD.

20          MR. McFARLANE:  AND MAY I RESPOND, YOUR HONOR?

21          THE COURT:  SURE.

22          MR. McFARLANE:  I THINK THE FIRST TWO SENTENCES THAT

23  REFER TO THE INDEPENDENT AND DEPENDENT CLAIMS ARE -- ARE FINE TO

24  EXPLAIN THAT DIFFERENCE TO THE JURY.

25          WE WOULD STRONGLY OBJECT, HOWEVER, TO THE LAST
```

```
1    SENTENCE WHICH READS, QUOTE, "THE IDEAS CONTRIBUTED MUST BE

2    ELEMENTS THAT RENDERED THE INVENTION NOVEL AND PATENTABLE."

3              THE COURT:  RIGHT.

4              MR. McFARLANE:  CLOSE QUOTE.

5              THE COURT:  WE CAN GET INTO AN AWFUL LOT OF

6    INSTRUCTIONS ON PATENTS SO WE SHOULDN'T DO THAT.  WE'RE GOING

7    THE TAKE THE FIRST TWO SENTENCES AND ADD THOSE.

8              MR. TANGRI:  AND YOUR HONOR, JUST TO GIVE YOU THE

9    REASON I HAD PAUSED BEFORE ADDRESSING THAT LAST SENTENCE SO WE

10   COULD DO THIS ONE AT A TIME, THAT LAST SENTENCE IS, I THINK,

11   IMPORTANT IN AN INVENTORSHIP CASE TO DISTINGUISH WHAT AN

12   INVENTIVE CONTRIBUTION IS.  THAT LANGUAGE, I BELIEVE, COMES FROM

13   THE COURT'S 2005 ORDER.

14              THAT LANGUAGE IS ALSO SUPPORTED BY THE HESS CASE, THE

15   ACROMED CASE, THE HUANG CASE.  THERE'S REALLY -- THERE'S NO

16   DOUBT UNDER THE FEDERAL CIRCUIT LAW THAT -- OH, I'M SORRY.  YOUR

17   HONOR, THERE SHOULDN'T BE ANY DOUBT UNDER THE FEDERAL CIRCUIT

18   LAW THAT THAT IS THE STANDARD FOR WHAT A COINVENTOR HAS TO SHOW

19   HE CONTRIBUTED.

20              MERELY HELPING, MERELY EXPLAINING WELL-KNOWN IDEAS,

21   MERELY REDUCING TO PRACTICE, THOSE THINGS DON'T GET YOU THERE.

22   AND TO HAVE AN INVENTORSHIP INSTRUCTION THAT DOESN'T TELL PEOPLE

23   WHAT INVENTORSHIP IS WE SUBMIT WOULD BE A MISTAKE.

24              MR. McFARLANE:  MAY I ADDRESS THAT, YOUR HONOR?

25              I THINK THAT THAT PARTICULAR SENTENCE IS ACTUALLY
```

```
1    CONTRARY TO ALL OF THE GOVERNING AUTHORITY FROM THE

2    SUPREME COURT ON DOWN WHERE YOU'RE ISOLATING INDIVIDUAL ELEMENTS

3    THAT RENDERED THE INVENTION NOVEL AND PATENTABLE, STARTING WITH

4    THE SUPREME COURT CASE WARNER JENKINSON, HOLDING THAT EACH

5    ELEMENT CONTAINED IN A PATENT IS DEEMED MATERIAL TO DEFINING THE

6    SCOPE OF THE PATENTED INVENTION.

7              I ALSO BELIEVE THAT THIS INSTRUCTION IS CONTRARY TO

8    THE MODEL -- THE PATENT INSTRUCTIONS FROM THE NORTHERN DISTRICT

9    OF CALIFORNIA.  I BELIEVE YOUR HONOR'S INSTRUCTION FOLLOWS THAT.

10   AND THE MODEL INSTRUCTION SIMPLY SAYS TO BE AN INVENTOR, ONE

11   MUST MAKE A SIGNIFICANT CONTRIBUTION TO ONE OR MORE OF THE

12   CLAIMS IN THE PATENT.

13             THE COURT:  WELL, BUT THEN YOU DROP OUT SOMETHING --

14   A WORD THERE THAT MAKE SIGNIFICANT CONTRIBUTIONS TO THE

15   CONCEPTIONS OF AT LEAST ONE OF THE CLAIMS.

16             MR. McFARLANE:  PARDON ME, YOUR HONOR.

17             THE COURT:  IF CONCEPTION IS INVOLVED, THEN YOU GET

18   INTO A PROBLEM HERE IN TERMS OF THE WAY WE REFER TO THIS IS THEN

19   YOU'RE GOING TO HAVE TO RELATE WHATEVER THE CLAIM IS THAT'S

20   BEING DISCUSSED TO CONCEPTION.

21             THIS IS NOT AN EASY CONCEPT, FRANKLY.  PATENT LAW

22   SOMETIMES HAS AREAS IN IT THAT ARE SOME PROBLEMS.  IF YOU LOOK

23   AT SOME OF THE CLAIMS HERE, SOME OF THE CLAIMS THAT ARE

24   LIMITATIONS, THEY SIMPLY SAY LET'S USE ALUMINA.  ALL RIGHT.  AND

25   THAT'S -- THAT'S A CLAIM THAT IS A DEPENDENT CLAIM ON AN
```

1    INDEPENDENT CLAIM, AND WE SAY THAT'S A LIMITATION.  BUT PATENT

2    LAW SAYS THAT'S AN INVENTION.

3              **MR. McFARLANE:**  CORRECT.

4              **THE COURT:**  AND THAT WE HAVE TO TREAT IT AS AN

5    INVENTION.  WELL, JUST USING ALUMINA, HOW CAN THAT BE A NOVEL

6    AND SIGNIFICANT CHANGE?  ALL THAT IS, IS PICKING OUT ALUMINA, A

7    KNOWN KIND OF SUBSTANCE, TO BE USED IN THE INVENTION.  NOW, IS

8    THAT A CONCEPTION?

9              **MR. McFARLANE:**  YOUR HONOR, IF THAT IS A NOVEL

10   ELEMENT OF THE CLAIM, YES, IT WOULD BE.  BUT LET ME ADDRESS --

11             **MR. TANGRI:**  AND THAT'S THE -- THAT'S WHY WE'RE

12   TRYING TO INSERT THIS LANGUAGE, IF IT'S A NOVEL ELEMENT OF THE

13   CLAIM THAT IT IS, BUT FIRST THE JURY MUST BE ASKED TO FIND THAT

14   OUT.

15             **MR. McFARLANE:**  BUT ONE --

16             **THE COURT:**  BUT IF IT'S A LIMITATION THAT COUNTS,

17   THEN -- I GUESS THE -- THE THEORY IS THAT IF THERE IS ANOTHER

18   PATENT THAT DIDN'T HAVE THIS LIMITATION IN IT, THEN IT COUNTS

19   EVEN THOUGH IT IS NOT AN INVENTION?

20             **MR. McFARLANE:**  WELL --

21             **THE COURT:**  IN AND OF ITSELF, IT'S CERTAINLY NOT AN

22   INVENTION.

23             **MR. JANSEN:**  HAVE --

24             **MR. TANGRI:**  IT --

25             **MR. McFARLANE:**  IT DEPENDS ON WHO -- THE USPTO GRANTS

```
 1   THE PATENT CLAIM, THEY FOUND THAT THAT COMBINATION IS NOVEL.

 2   AND I THINK THAT GIVES RISE TO ONE OF THE MAJOR PROBLEMS WE HAVE

 3   WITH THIS PARTICULAR FORMULATION IS THE ACROMED CASE THAT

 4   MR. TANGRI REFERRED TO ACTUALLY EXPLAINS THAT THERE IS A LONG

 5   ESTABLISHED RULE UNDER FEDERAL CIRCUIT AND SUPREME COURT CASES

 6   THAT A COMBINATION CLAIM EXISTS AND YOU CAN HAVE A PATENT THAT

 7   EXISTS OF ALL ELEMENTS THAT ARE KNOWN IN THE PRIOR ART.  AND SO

 8   IF YOU HAVE THE -- THE COMBINATION --

 9              THE COURT:  THERE'S STILL GOT TO BE A CONCEPTION OF

10   SOMETHING.  YOU CAN'T JUST LIST A BUNCH OF THINGS THAT EXIST IN

11   THE ART AND SAY, "LET'S PATENT THIS."  YOU'RE GOING TO HAVE SOME

12   SORT OF CONCEPTION THAT GOES ALONG WITH IT.  AND IF YOU HAVE

13   SOMETHING LIKE MY ALUMINA THING, IS THAT WHAT IS THE CONCEPTION

14   THAT'S INVOLVED -- NECESSARY IN THAT THAT IS DIFFERENT, IF IT

15   IS, FROM A LIMITATION?

16              MR. McFARLANE:  WELL, IF THE CONCEPTION RELATES TO

17   THAT COMBINATION, IF THAT IS A -- A NOVEL COMBINATION THAT DOES

18   NOT EXIST IN THE PRIOR ART, THEN THAT IS A NOVEL INVENTION

19   THAT'S -- THAT THE -- WHOEVER CONTRIBUTED THAT LIMITATION WOULD

20   BE CONSIDERED AN INVENTOR OF THAT CLAIM.

21              MR. TANGRI:  AND -- CLAIM -- CLAIM ONE, AN

22   INDEPENDENT CLAIM IS A NOVEL COMBINATION.  AND THERE'S

23   SOMETHING --

24              THE COURT:  ALL RIGHT.

25              MR. TANGRI:  -- THAT WAS NOVEL ABOUT IT THAT'S
```

1    INVENTIVE THAT MADE THAT A NOVEL COMBINATION.

2            **THE COURT:**  OKAY.

3            **MR. TANGRI:**  IF YOU GET DOWN TO THE DEPENDENT CLAIM

4    THAT SAYS "ALUMINA" --

5            **THE COURT:**  RIGHT.

6            **MR. TANGRI:**  -- ALUMINA DOESN'T MAKE IT INVENTIVE.

7    THE COMBINATION MAKES IT INVENTIVE.

8            **THE COURT:**  OKAY.  MAYBE IT IS.

9            **MR. TANGRI:**  ALUMINA IS A SUBSET OF THAT.

10           **THE COURT:**  ALL RIGHT.

11           **MR. TANGRI:**  AND THAT DOESN'T -- IF ALUMINA IS THE

12   THING THAT MAKES IT INVENTIVE, THEN THAT CAN BE A SEPARATE

13   INVENTIVE CLAIM.  IF IT'S SIMPLY A RESTRICTION, A SUBSET OF THE

14   MORE GENERAL METAL OR CERAMIC, AS IT WERE -- THE CASE MAY BE,

15   THEN THE THING THAT MAKES THAT DEPENDENT CLAIM INVENTIVE IS

16   STILL DISTINGUISHABLE FROM CLAIM ONE AND IT'S STILL THE CASE

17   THAT THE JURY HAS TO --

18           **THE COURT:**  WELL, THEN WHERE DO I DISTINGUISH BETWEEN

19   THOSE KINDS OF CLAIMS THAT ARE INDEPENDENT -- WELL, LIKE AN

20   INDEPENDENT CLAIM IS OKAY.  INDEPENDENT CLAIM HAS ALL OF THE

21   THINGS IN IT AND IT HAS TO INCLUDE THE CONCEPTION.

22           **MR. TANGRI:**  RIGHT.

23           **THE COURT:**  NOW WE GO DOWN TO A DEPENDENT CLAIM.  AND

24   THE DEPENDENT CLAIM SIMPLY CREATES A LIMITATION.  WHEN IS THAT

25   CREATION OF A LIMITATION A CONCEPTION, OR WHEN IS IT SIMPLY

1    DEFINING THE INDEPENDENT CLAIM IN SUCH A WAY THAT IT JUST LIMITS

2    IT IN SOME WAY?

3            **MR. TANGRI:**  I THINK THE ANSWER, YOUR HONOR, IS THAT

4    IT'S ALWAYS DEFINING THE DEPENDENT CLAIM -- THE INDEPENDENT

5    CLAIM IN A WAY THAT JUST LIMITS IT.  IF IT IS A SEPARATE NEW

6    CONCEPTION, DIFFERENT THING, THEN IT'S GOING TO BE AN

7    INDEPENDENT CLAIM.  THE FACT THAT IT'S A DEPENDENT CLAIM MEANS

8    THAT IT IS SIMPLY A NARROWER STATEMENT OF THE BROADER

9    INDEPENDENT CLAIM.

10           **THE COURT:**  ALL RIGHT.  WELL, THEN --

11                   (SIMULTANEOUS COLLOQUY.)

12           **THE COURT:**  IF THE -- THE SUGGESTION OF USING THE

13   ALUMINA IS BY ONE PERSON, IS THAT A -- ENOUGH TO BE A CONCEPTION

14   OF AN INVENTION?

15           **MR. McFARLANE:**  YOUR HONOR, MAY I ADDRESS --

16           **MR. TANGRI:**  IF SOMEONE COULD DETERMINE, I THINK,

17   YOUR HONOR, THAT THAT WERE NOVEL AND PATENTABLE, THEN, YES.  BUT

18   THAT HAS TO BE THE DETERMINATION THEY'RE MAKING IF THERE'S

19   SOMETHING ABOUT --

20           **THE COURT:**  GO AHEAD.

21           **MR. McFARLANE:**  THANK YOU, YOUR HONOR.

22           I THINK THAT IN -- TWO -- TWO COMMENTS I'D LIKE TO

23   MAKE IS IF A DEPENDENT CLAIM -- TAKE YOUR EXAMPLE OF ALUMINA IS

24   THE EMBODIMENT THAT THE INVENTORS CREATED AND STATED THAT

25   SPECIFICALLY IN A DEPENDENT CLAIM, AND THEN THE PATENT DRAFTER

1  STATED THE CLASS OF MATERIALS IN THE INDEPENDENT CLAIM, THEN THE

2  CONTRIBUTION OF ALUMINA MAY IN FACT BE, YOU KNOW, THE -- THE --

3  THE, YOU KNOW, CONTRIBUTION TO CONCEPTION THAT YOUR HONOR IS --

4  IS LOOKING TO.

5          AND I THINK THAT THE QUESTION OF WHETHER OR NOT THAT

6  IS AN INVENTIVE CONTRIBUTION TO THE CLAIM GOES BACK TO THE --

7  THE GENERAL JURY INSTRUCTION THAT IS IN THE NORTHERN DISTRICT

8  MODEL RULES AND ALSO IN THE FEDERAL CIRCUIT CASE LAW THAT IT HAS

9  TO BE A CONTRIBUTION OF SOMETHING THAT IS SIGNIFICANT WHEN

10  COMPARED TO THE SCOPE OF THE CLAIM AS A WHOLE.

11          **THE COURT:**  BUT THAT DOESN'T TALK ABOUT CONCEPTION.

12  I MEAN, IF -- IF IT'S A CONTRIBUTION, A SIGNIFICANT CONTRIBUTION

13  CAN BE WITHOUT ANY CONCEPTION.  AND THAT'S THE -- THE IDEA IS IF

14  YOU'RE COMBINING THESE THINGS AND YOU'RE GOING TO MAKE IT INTO

15  AN INVENTION, THE COMBINATION HAS TO BE SOMETHING THAT QUALIFIES

16  AS CONCEPTION.

17          SO WE'RE GOING TO HAVE TO HAVE THAT STATED IN SOME

18  FASHION, NOT JUST SAY WAS THIS SIGNIFICANT.  WELL, IT'S

19  SIGNIFICANT BECAUSE IT'S THERE.  SO IF IT'S -- IF IT'S THERE,

20  THAT ISN'T ENOUGH TO MAKE IT AN INVENTION.  SO IT'S GOT TO HAVE

21  SOMETHING THAT SAYS WHENEVER IT IS, WHETHER IT'S INDEPENDENT OR

22  DEPENDENT, IT INVOLVES A CONCEPTION IN THIS -- SOME FASHION.

23          **MR. McFARLANE:**  THE CONCEPTION OF THAT PORTION OF THE

24  CLAIM OR THE CONCEPTION OF THAT PORTION OF THE CLAIM LIMITATION.

25          **MR. TANGRI:**  THE CONCEPTION OF THE INVENTION, YOUR

1    HONOR, IS WHAT WE SAY -- AND THE CASES THAT WE'VE CITED TALK

2    ABOUT THE FACT THAT THE SIGNIFICANCE OF THE CONTRIBUTION IS

3    QUALITATIVE, NOT JUST QUANTITATIVE.  AND WHAT IS QUALITATIVE,

4    THE QUALITATIVE NATURE OF IT IS THAT IT GOES TO SOMETHING THAT

5    MAKES IT NOVEL AND PATENTABLE.

6            **MR. McFARLANE:**  AND I THINK UNDER THE SUPREME COURT

7    CASES, EACH ELEMENT IS INCLUDED WITHIN THAT CONCEPT OF NOVELTY

8    AND PATENTABILITY, EACH LIMITATION IS MATERIAL TO THE CLAIM.

9    AND SO IF -- IN THE CONCEPT OR THE CONCEPT OF JOINT

10   INVENTORSHIP, ONE INVENTOR MAY CONCEIVE OF CERTAIN PORTIONS OF

11   THE CLAIM, THE OTHER INVENTOR MAY CONCEIVE OF OTHER PORTIONS OF

12   THE CLAIM.

13           **THE COURT:**  WELL, THAT'S STILL A QUESTION OF WHAT'S A

14   CONCEPTION.

15           **MR. TANGRI:**  EACH LIMITATION, YOUR HONOR, ALL OF

16   THESE EACH LIMITATION CASES THAT THEY'RE TALKING ABOUT GO TO --

17   ARE INFRINGEMENT CONCEPTS, AN INFRINGING DEVICE HAS TO MEET EACH

18   ELEMENT OF THE CLAIM, WE ALL KNOW THAT.  THAT DOESN'T MEAN THAT

19   EACH ELEMENT OF THE CLAIM MAKES THE THING PATENTABLE.  AND IT'S

20   PRECISELY THAT DISTINCTION OF WHAT MAKES IT NOVEL, WHAT IS

21   THE -- CONCEPTION IS THE COMPLETE -- THE COMPLETE AND DEFINITE

22   UNDERSTANDING OF THE INVENTION, AND THE FACT THAT IT'S OF THE

23   INVENTION MEANS THAT YOU HAVE TO HAVE A -- AN UNDERSTANDING OF

24   WHAT MAKES THE THING NOVEL OR INVENTIVE.

25           AND THAT'S WHAT WE'VE TRIED TO -- TO CAPTURE IN THAT

```
1   LANGUAGE.

2           MR. McFARLANE:  I THINK THE CASE LAW, TOO, ALSO

3   ADDRESSES THE FACT THAT IN A COINVENTORSHIP CONTEXT, EACH

4   COINVENTOR NEED NOT CONTRIBUTE THE ENTIRE INVENTION OF THAT --

5           THE COURT:  EACH COINVENTOR MUST CONTRIBUTE A

6   CONCEPTION.

7           MR. McFARLANE:  CORRECT.

8           THE COURT:  PIECE OF THE CONCEPTION.  SO IF YOU TAKE

9   THE STICKS OF CONCEPTION AND THEY MAKE A BUNDLE, WHATEVER IT IS,

10  THERE HAS TO BE A STICK WITH CONCEPTION.  AND SO -- AND THAT HAS

11  TO BE WHETHER IT'S AN INDEPENDENT CLAIM OR A DEPENDENT CLAIM, SO

12  WE HAVE TO SAY THAT IN SOME FASHION.

13          MR. TANGRI:  CORRECT.  AND IT HAS TO BE -- WHEN --

14  ONCE YOU'RE TALKING ABOUT CONCEPTION, THEN I THINK WE NEED TO

15  MAKE CLEAR TO THE JURY THAT WE'RE TALKING ABOUT CONCEPTION OF --

16  CONCEPTION RELATES NECESSARILY TO INVENTIVENESS, NOT JUST

17  CONCEPTION OF IN THE SENSE OF THINKING OF A KNOWN THING --

18          THE COURT:  WELL, WE DECIDED UPON CONCEPTION BEFORE.

19  WE'VE ALREADY DEFINED IT.

20          MR. TANGRI:  RIGHT.  SO I JUST --

21          THE COURT:  I THINK WE NEED TO HAVE SOMETHING --

22          THE CLERK:  CAN YOU JUST WAIT A SECOND.

23          (OFF THE RECORD DISCUSSION.)

24          MR. McFARLANE:  MAY I -- MAY I, YOUR HONOR --

25          THE COURT:  SURE.
```

1        **MR. McFARLANE:**  OH, I'M SORRY.

2        **THE COURT:**  WELL, I THINK I HAVE WHAT I THINK IS A

3   SOLUTION.

4        IF YOU TAKE THIS -- THIS PARAGRAPH, START WITH THIS,

5   "MORE THAN ONE PERSON MAY BE AN INVENTOR OF THE PATENT."  NOW,

6   THE NEXT LINE IS, "A PATENT MAY CONTAIN BOTH INDEPENDENT AND

7   DEPENDENT CLAIMS," PERIOD.  AND THE NEXT LINE MAY BE "AN

8   INDEPENDENT CLAIM STANDS ALONE."  AND THEN "A DEPENDENT CLAIM

9   DOES NOT STAND ALONE AND REFERS TO ONE OR MORE OTHER CLAIMS."

10  AND THEN WE FINISH, "TO BE A COINVENTOR, IT IS NOT NECESSARY

11  THAT A PERSON MAKE A SIGNIFICANT CONTRIBUTION," TO FINISH WITH

12  THAT SENTENCE.

13        AND THEN THAT GIVES A DEFINITION OF INDEPENDENT AND

14  DEPENDENT CLAIMS ABOVE, AND THEN IT GIVES A DEFINITION AS TO

15  WHAT YOU HAVE TO DO TO BE AN INVENTOR BELOW.

16        **MR. TANGRI:**  WELL, YOUR HONOR --

17        **MR. McFARLANE:**  COULD YOU REPEAT THE LAST SENTENCE,

18  YOUR HONOR?

19        **THE COURT:**  WELL, IN EFFECT, WHAT I'M DOING IS MOVING

20  THE -- THE PORTION THAT SAYS "CLAIMS MAY BE INDEPENDENT OR

21  DEPENDENT" AND, "AN INDEPENDENT CLAIM STANDS ALONE," AND, "A

22  DEPENDENT CLAIM DOES NOT STAND ALONE REFERS TO ONE OR MORE OTHER

23  CLAIMS," MOVE THAT UP TO -- TO PRECEDE THE LINE THAT SAYS, "TO

24  BE A COINVENTOR, IT IS NOT NECESSARY THAT A PERSON MAKE A

25  SIGNIFICANT CONTRIBUTION TO."

1          SO IN EFFECT, I'M TAKING THE TWO LINES THAT YOU

2   SUGGESTED, ADDING THOSE AFTER THE FIRST SENTENCE OF THE

3   PARAGRAPH AND INTRODUCING THE SUBJECT MATTER DEPENDENT AND

4   INDEPENDENT, AND THEN FINISH OFF WITH THE FACT THAT "IT IS

5   NECESSARY THAT A PERSON MAKE A SIGNIFICANT CONTRIBUTION TO THE

6   CONCEPTION OF AT LEAST ONE OF THE CLAIMS IN THE PATENT."

7          AND AT THAT POINT, THEY ALREADY KNOW THAT THAT MEANS

8   DEPENDENT OR INDEPENDENT.

9          **MR. TANGRI:**  AND THAT'S A FINE WAY TO HANDLE THE

10  DEPENDENT OR INDEPENDENT, YOUR HONOR.  I THINK IT WOULD BE

11  BETTER TO INCLUDE THE LAST SENTENCE ABOUT DEPENDENT THAT WE HAD,

12  WHICH SAYS, "A DEPENDENT CLAIM INCORPORATES" WHATEVER THE OTHER

13  REFERENCED CLAIM OR CLAIMS SAY.

14         **THE COURT:**  THAT'S SENSIBLE.  ALL RIGHT.  AND THEN WE

15  LEAVE OUT THE LAST LINE, IN EFFECT, AND THAT GOES IN BECAUSE

16  IT'S NOW REFERRED TO BY WHAT WE MEAN BY "A SIGNIFICANT

17  CONTRIBUTION."

18         **MR. TANGRI:**  WELL, ALTHOUGH, YOUR HONOR, IT'S

19  STILL -- WE WOULD SUBMIT THAT STILL DOESN'T GIVE THE JURY ANY

20  GUIDANCE ON WHAT WE MEAN BY "A SIGNIFICANT CONTRIBUTION TO THE

21  CONCEPTION."

22         AND WE THINK THAT THERE NEED -- THERE SHOULD BE

23  LANGUAGE THAT TELLS THE JURY WHAT -- AND AGAIN, THIS IS -- THIS

24  LANGUAGE IS STRAIGHT OUT OF THE COURT'S 2005 ORDER, AND IT'S --

25  IT'S OUT OF THE ACROMED CASE WHICH TALKS ABOUT WHETHER OR NOT

```
1    SOMEBODY IS COUNTERSINKING OF THE ELONGATED SLOTS WAS AN

2    INVENTIVE CONCEPTION.  THE IDEA THAT THE PUTATIVE INVENTOR HAS

3    TO SHOW THAT THEY CONTRIBUTED TO THE CONCEPTION OF SOMETHING

4    NOVEL OR INVENTIVE OR PATENTABLE, SOMETHING OF THAT CHARACTER,

5    RATHER THAN JUST CONTRIBUTED.

6            THE COURT:  NOW, WHAT WE'RE DOING IS THIS IS WEIGHT

7    ONE ON THE SCALE THAT SAYS WE DON'T GO TO TRIAL UNTIL WEDNESDAY.

8            OKAY.  NOW, WE'LL START IN ON THE REST OF THIS, AND

9    WE'LL LEAVE THIS BECAUSE I HEAR WHAT YOU'RE SAYING AND WHAT

10   YOU'RE SAYING, BUT I CAN'T LEAVE IT WITHOUT SOME KIND OF NOTION

11   THAT SAYS WHAT IS A DEPENDENT CLAIM IN THIS KIND OF

12   RESPONSIBILITY BECAUSE THEY HAVE TO KNOW SOMETHING ABOUT THAT.

13           MR. TANGRI:  AND --

14           MR. McFARLANE:  I THINK YOUR HONOR'S SOLUTION IS --

15   IS -- IS FINE BECAUSE IT -- THE INSTRUCTIONS ALREADY DEFINE WHAT

16   "CONCEPTION" IS.  AND THE INSTRUCTIONS ALREADY STATE THAT YOU

17   MUST HAVE A SIGNIFICANT CONTRIBUTION TO THE CONCEPTION OF AT

18   LEAST ONE CLAIM.

19           AND THEN IT GOES TO THE DEPENDENT AND INDEPENDENT

20   CLAIM CONCEPTS, AND SO WE BELIEVE THAT THE INSTRUCTIONS ADDRESS

21   THAT ISSUE FULLY.

22           MR. TANGRI:  AND JUST SO IT'S CLEAR, WE'RE --

23   WE'RE -- WE'RE -- THERE'S NO PROBLEM FROM THE DEFENSE WITH THE

24   WAY YOU'RE HANDLING THE INDEPENDENT AND DEPENDENT -- MOVING THAT

25   LANGUAGE WE THINK IS -- IS GOOD, BUT THERE -- WE -- WE CONTINUE
```

1   TO SUBMIT THAT THERE NEEDS TO BE SOME LANGUAGE IN HERE --

2              **THE COURT:**  I NEED TO LOOK AT THAT AND SEE WHETHER OR

3   NOT I THINK THAT THAT'S ALREADY INCLUDED, IN ESSENCE, IN TERMS

4   OF THE DEFINITION OF "CONCEPTION."  WE'LL TAKE A LOOK AT THAT.

5              **MR. TANGRI:**  WHETHER IT'S NOVEL AND PATENTABLE OR

6   WHETHER IT'S THE NOTION OF AN INVENTIVE CONTRIBUTION, WHICH IS

7   LANGUAGE IN THE CASES.  BUT, AGAIN, THIS IS -- THIS IS STRAIGHT

8   OUT OF THE COURT'S ORDER AND HUANG, HESS, ACROMED.

9              **THE COURT:**  OKAY.

10             **MR. McFARLANE:**  AND I WOULD JUST LIKE TO ADDRESS

11  ACROMED BRIEFLY.  THAT'S THE CASE THAT ACTUALLY DOES DISCUSS NEW

12  COMBINATIONS OF OLD ELEMENTS BEING PATENTABLE.  AND I THINK THAT

13  THAT PRECISE HOLDING IS EXCLUDED BY THE DEFENDANTS' PROPOSED

14  INSTRUCTIONS THAT AN IDEA CONTRIBUTED MUST BE ELEMENTS THAT

15  RENDERED THE INVENTION NOVEL AND PATENTABLE, IF THEY'RE ALL --

16             **THE COURT:**  IT CERTAINLY HAS TO RENDER IT PATENTABLE.

17  I DON'T KNOW ABOUT NOVEL SO MUCH, BUT IT DOES HAVE TO SAY IF YOU

18  COMBINE OLD ELEMENTS -- AND WE SAY OBVIOUSLY ALL INVENTIONS ARE

19  A COMBINATION.  ALL RIGHT.  BUT IT'S GOT TO HAVE SOME SORT OF

20  NOVELTY THAT GOES ALONG WITH IT OR IT'S NOT -- IT'S NOT

21  PATENTABLE BECAUSE IT'S NOT AN INVENTION.  IF IT'S JUST A

22  COMBINATION, THAT'S NOT ENOUGH.  IT'S GOT TO HAVE A COMBINATION

23  THAT CREATES AN INVENTION IN SOME FASHION.

24             **MR. McFARLANE:**  A NOVEL COMBINATION.

25             **THE COURT:**  WELL, IT HAS A CONCEPTION OF AN INVENTION

```
 1   THAT'S A PERMANENT IDEA OF SOMETHING.

 2            MR. TANGRI:  AND WE -- WE THINK THE LANGUAGE IS --

 3   THERE'S LANGUAGE ON PAGE 1381 OF ACROMED RIGHT IN THE HOLDING AS

 4   TO WHY THE CHALLENGER THERE HAS NOT PRESENTED PROPER EVIDENCE OF

 5   AN INVENTIVE CONCEPTION.

 6            THE COURT:  ALL RIGHT.  LET'S LEAVE THAT ONE FOR THE

 7   TIME BEING.

 8            MR. TANGRI:  ALL RIGHT.

 9            THE COURT:  THAT'S ON PAGE 9.  WHAT'S THE NEXT ONE?

10            MR. TANGRI:  THE NEXT ONE, YOUR HONOR, IS ON PAGE 9.

11   WE WOULD PROPOSE IN THE VERY NEXT PARAGRAPH AFTER -- THE NEXT

12   PARAGRAPH SAYS, "A PERSON WHO HELPS WITH EXPERIMENTATION BY

13   CARRYING OUT THE ACTUAL INVENTOR'S INSTRUCTIONS OR EXPLAINING

14   THE IDEAS OF THE ACTUAL INVENTOR," WE WOULD PROPOSE THEREAFTER

15   TO INSERT "OR THE CURRENT STATE OF THE ART."  AND THEN INCLUDE,

16   AS YOU HAVE, "IS NOT A COINVENTOR."  AND THAT --

17            THE COURT:  I KNOW THAT COMES RIGHT OUT OF IT.  I

18   REMEMBER SEEING IT.  I DROPPED DOWN BECAUSE I DON'T KNOW WHAT IT

19   MEANS.  WELL, LET ME -- WHAT DOES IT ADD TO WHAT WE'RE SEEING

20   RIGHT HERE?

21            MR. TANGRI:  WELL, IT ADDS TO THE FACT THAT IF WHAT

22   SOMEBODY CONTRIBUTES SAYS, "HERE'S THE STATE OF ART," ONE PERSON

23   SAYS THAT, AND THE OTHER PERSON SAYS, "AND WE COULD ADD THIS,"

24   AND THE "THIS" IS WHAT MAKES IT INVENTIVE, IS WHAT TAKES IT

25   ABOVE, THEN THE PERSON WHO -- WHO SIMPLY CONTRIBUTED THE
```

```
 1   BASELINE --
 2               THE COURT:  THAT OR THE STATE OF THE ART, SINCE
 3   THAT'S OBVIOUSLY SAID IN OUR LOCAL INSTRUCTIONS.
 4               MR. McFARLANE:  AND, YOUR HONOR, WE WOULD HAVE ONE
 5   OTHER SMALL COMMENT ON THAT PARAGRAPH.
 6               THE COURT:  OKAY.
 7               MR. McFARLANE:  JUST AT THE BEGINNING OF THE
 8   SENTENCE, WE WOULD SUGGEST SAYING "A PERSON WHO," AND THEN
 9   INSERT THE PHRASE "DOES NO MORE THAN HELP," AND THEN CONTINUE TO
10   READ THAT PARAGRAPH.
11               THE COURT:  OKAY.  ALL RIGHT.  THEN THE PARAGRAPH
12   WILL READ, "A PERSON WHO DOES NO MORE THAN HELPING WITH
13   EXPERIMENTATION" -- OR "DOES NO MORE THAN HELP WITH"?
14               MR. TANGRI:  YEAH, "HELP."
15               MR. McFARLANE:  "HELP WITH."
16               THE COURT:  "DOES NO MORE THAN HELP WITH
17   EXPERIMENTATION BY CARRYING OUT THE ACTUAL INVENTOR'S
18   INSTRUCTIONS OR EXPLAINING THE IDEAS OF THE ACTUAL INVENTOR OR
19   THE STATE OF THE ART IS NOT A COINVENTOR."
20               OKAY?
21               MR. TANGRI:  OKAY.
22               THE COURT:  NEXT PAGE.
23               MR. McFARLANE:  I THINK ON THIS PAGE, THE BIGGEST
24   SUGGESTION WE HAVE, YOUR HONOR, IS REGARDING THE APPLICATION OF
25   THE CLEAR AND CONVINCING EVIDENCE STANDARD.  AND THIS GOES TO
```

 1    THE --

 2              **THE COURT:**  EXCUSE ME.  WHAT PAGE?

 3              **MR. McFARLANE:**  OH, I'M SORRY.  PAGE 10.

 4              **THE COURT:**  PAGE 10.  OKAY.

 5              **MR. McFARLANE:**  AND THIS IS THE ISSUE THAT WE WROTE

 6    THE BENCH BRIEF ON.

 7              **THE COURT:**  YEAH, THAT'S RIGHT.

 8              **MR. McFARLANE:**  AND WE -- WE AGREE THAT SHUM BEARS

 9    THE ULTIMATE BURDEN OF SHOWING INVENTORSHIP BY CLEAR AND

10    CONVINCING EVIDENCE.  BUT THE WAY THAT THIS PARTICULAR

11    INSTRUCTION IS STRUCTURED AT THIS POINT, IT SEEMS TO SET UP A

12    THREE-PRONG EVIDENTIARY TEST.

13              **THE COURT:**  I KNOW.  SEE, I MADE THIS UP, SO I'M

14    WILLING TO TAKE IT APART.

15              **MR. TANGRI:**  YOUR HONOR, WE THINK THE THREE PRONGS

16    ARE CORRECT.  WE DON'T OBJECT TO TAKING OUT THE REFERENCE TO

17    "CLEAR AND CONVINCING" IMMEDIATELY PRIOR TO THEM.

18              **THE COURT:**  OKAY.  IS THAT OKAY IF WE TAKE OUT THE

19    "CLEAR AND CONVINCING"?  THEN I THINK THAT -- I'M NOT SURE THAT

20    I AGREE WITH YOU IN TERMS OF THIS BREAKING APART DISTINCTION FOR

21    INVENTORSHIP TRIALS BETWEEN A BURDEN OF HIGH PROBABILITY AND LOW

22    PROBABILITY AND WHATEVER.  I MEAN, I THINK THAT THAT'S A LITTLE

23    HARD TO DO.

24              BUT ON THE OTHER HAND, I CAN SEE HOW THERE MAY BE

25    ASPECTS OF THE SO-CALLED INVENTORSHIP TRIAL WHERE YOU'RE NOT

1    REALLY DEALING WITH THE PROBLEM OF CORROBORATING THE TESTIMONY

2    OF AN INVENTOR AND YOU'RE TRYING TO NOW MAKE SURE YOU GET ALL OF

3    THE SO-CALLED INVENTORSHIP ELEMENTS NOT SUPPORTED ONLY BY THE

4    TESTIMONY OF THE INVENTOR.

5              BUT IT SEEMS TO ME THAT THAT DOES NOT MEAN YOU TAKE

6    OUT DISCLOSURE FROM THAT, SEE, BECAUSE I THINK DISCLOSURE IS

7    SOMETHING THAT IS ALSO RESPONSIBILITY OF THE INVENTOR.  SO I

8    THINK THE WAY WE'D TAKE CARE OF THIS IS YOU TAKE MY ELEMENTS

9    HERE, 1, 2, 3, AND WE DROP OUT 3, BECAUSE 3 IS A WAY OF

10   EXPLAINING AN EVIDENTIARY KIND OF ISSUE RATHER THAN WHAT'S

11   NECESSARY FOR INVENTORSHIP.

12             IF YOU DO THAT, SEE, THEN WE HAVE -- THEN YOU HAVE TO

13   CORROBORATE 1 AND 2 AND --

14             **MR. TANGRI:**  AND THAT'S -- YOUR HONOR, I THINK 3

15   IS -- I MEAN, I -- I THINK 3 IS CORRECT, BUT I ALSO THINK IT'S

16   ALREADY STATED, SO I DON'T --

17             **THE COURT:**  I THINK SO, TOO.

18             **MR. TANGRI:**  -- I DON'T -- WE DON'T NEED TO QUARREL

19   ABOUT THAT.

20             **THE COURT:**  SO THE RESULT IS THAT WE -- WE LEAVE THE

21   PARAGRAPH THERE AND -- BUT JUST USE 1 AND 2 RATHER THAN 1, 2,

22   AND 3.

23             **MR. McFARLANE:**  AND SO DOES THE CLEAR AND CONVINCING

24   EVIDENCE STANDARD THEN DIRECTLY APPLY TO NO. 2?

25             **THE COURT:**  JUST THAT.

1        **MR. McFARLANE:**  OH, I SEE.  SO --

2        **THE COURT:**  WE SAY --

3        **MR. TANGRI:**  "FOLLOWING THINGS."

4        **THE COURT:**  "THE FOLLOWING THINGS, 1, 2," THEN DROP

5   OUT PARAGRAPH 3.

6        **MR. TANGRI:**  AND THEN WE WOULD -- WE HAVE A PROPOSED

7   CHANGE, THEN, THAT IMMEDIATELY FOLLOWS WHAT WOULD NOW BE

8   NUMERAL 2 OF THE SENTENCE SET FORTH BACK IN NUMERAL 2.

9        **THE COURT:**  OKAY.  WHAT'S THAT?

10        **MR. TANGRI:**  AND THAT'S ALSO IN NO. 29 WHICH WE

11   HANDED UP.

12        **THE COURT:**  WHAT'S THAT?

13        **MR. TANGRI:**  AND IT'S ON PAGE 5 OF THAT DOCUMENT.

14        **THE COURT:**  OKAY.

15        **MR. TANGRI:**  OH, NO, I'M SORRY.  I PROBABLY JUST

16   STEERED YOU WRONG ON THAT.  LET ME GET THAT FOR YOU, GET YOU THE

17   RIGHT PAGE NUMBER.  IT IS ON PAGE 5, WHICH IS --

18        **THE COURT:**  "DOCUMENTS UNDATED" THING?

19        **MR. TANGRI:**  HMM?  YEAH, EXACTLY.

20        **THE COURT:**  I DON'T THINK I'LL ADD THAT.

21        **MR. TANGRI:**  WELL, YOUR HONOR --

22        **THE COURT:**  YOU CAN TALK ABOUT THAT.

23        **MR. TANGRI:**  WELL, THAT -- AGAIN, THAT COMES IN

24   JUST -- THE OFFER IS THAT COMES RIGHT OUT OF A NUMBER OF CASES

25   INCLUDING THE HUANG CASE, THE BROWN V. BARACID, MEDICHEM, SINGH,

```
 1    I MEAN, THERE ARE A NUMBER OF CASES.

 2              THE COURT:  I KNOW, BUT I DON'T SAY THAT JUST BECAUSE

 3    YOU'RE QUOTING A CASE THAT THAT MEANS THAT I'M GOING TO USE IT

 4    AS AN INSTRUCTION.

 5              MR. TANGRI:  YOUR HONOR, IN LIGHT OF AMOUNT OF

 6    UNDATED EVIDENCE THAT'S COME IN HERE, UNCORROBORATED EVIDENCE,

 7    EVERYTHING DOWN TO THE LAB NOTEBOOK CALCULATIONS WITH -- WHICH

 8    PROFESSOR KNOX STRESSED REPEATEDLY WERE CRITICAL EVIDENCE WHICH

 9    ARE NOT SIGNED, WHICH ARE NOT CORROBORATED BY ANYTHING, WE'VE

10    GOT THAT --

11              THE COURT:  BUT THAT'S -- THAT'S A MATTER OF JUST

12    POINTING OUT THE DIFFERENCE BETWEEN A DOCUMENT THAT'S SIGNED AND

13    DATED AND -- AND IS READ AND UNDERSTOOD, THAT HAS -- CARRIES

14    WITH IT SOME AUTHENTICATION, THE TESTIMONY BEYOND THE TESTIMONY

15    THAT ESTABLISHES IT IN A DOCUMENT.

16              BUT IF IT'S AN UNDATED DOCUMENT, JUST A PIECE OF

17    PAPER WITH A DRAWING, THAT FOLLOWED -- THIS IS EXACTLY WHAT WE

18    WOULD SAY NEEDS TO BE CORROBORATED BECAUSE THAT'S NOTHING BUT

19    THE TESTIMONY OF THE INVENTOR.

20              MR. TANGRI:  AND -- AND -- AND WE THINK THE JURY,

21    WITHOUT GUIDANCE, WILL NOT --

22                   (SIMULTANEOUS COLLOQUY.)

23              THE COURT:  -- HAVE TO HAVE GUIDANCE ON THAT, THEY

24    CAN UNDERSTAND THAT.  IT'S JUST EXPLAINING TO THEM THAT IF YOU

25    HAVE A PIECE OF PAPER THAT IS EXPLAINED BY THE INVENTOR AS
```

1    SAYING, "THIS PIECE OF PAPER IS A DRAWING OF SO AND SO AND SO

2    AND SO AND SO AND SO, AND THAT MEANS IT RELATES TO THE

3    INVENTION," THAT IS TESTIMONY OF THE INVENTOR.  IT'S NOT

4    STAND-ALONE TESTIMONY, BECAUSE IT ISN'T DATED OR WITNESSED OR IT

5    DOESN'T HAVE ANY AUTHENTICATION BEYOND SIMPLY THE INVENTOR'S

6    TESTIMONY.  SO I THINK THAT HAS TO BE CORROBORATED.

7              **MR. TANGRI:**  AND I –– AND –– AND –– AND I THINK ––

8    WELL, BUT THEN –– BUT NOTHING –– NOTHING IN HERE TELLS THE JURY

9    THAT THAT DOCUMENT CAN'T CORROBORATE THE INVENTOR'S TESTIMONY.

10   THERE'S –– THERE'S LANGUAGE IN HERE ABOUT –– ABOUT, YOU KNOW,

11   THE CORROBORATION MAY BE PROVIDED BY INDEPENDENT EVIDENCE FROM

12   DOCUMENTS, AND THEY'RE NOT GOING TO HAVE ANY WAY TO KNOW THAT

13   THAT DOCUMENT IS NOT ITSELF CORROBORATING.

14             **THE COURT:**  NO, THAT'S TRUE.

15             **MR. TANGRI:**  SO THAT'S –– THAT'S ––

16             **THE COURT:**  YOU HAVE TO USE THE SAME WORD.

17             **MR. TANGRI:**  IT DOES USE THE SAME WORD.  AND IT HAS

18   THE CAPACITY TO LEAD THEM TO THINK THAT.

19             **MR. McFARLANE:**  I THINK, YOUR HONOR, THAT THE

20   INSTRUCTION AS WRITTEN NOW IS ADEQUATE AND CORRECT, AND THAT

21   ADDING THE LANGUAGE PROPOSED BY THE DEFENDANTS ACTUALLY IS

22   INCORRECT IN TERMS OF THE LAW.  AND WE BRIEFED THIS I THINK

23   ORIGINALLY IN RESPONSE TO DEFENDANTS' ORIGINAL PROPOSED

24   INSTRUCTION NO. 33.

25             BUT THE CASES GIVE US A LOT OF GUIDANCE ON WHAT

1    CORROBORATION IS REQUIRED AND WHAT IS SUFFICIENT.  AND THE

2    FEDERAL CIRCUIT CASES DO SAY IN SOME CASES CONCEPTION MAY BE

3    PROVED SOLELY ON A LABORATORY NOTEBOOK WITNESSED SUBSEQUENT TO

4    THE ENTRY.  AND SO I THINK THAT THIS INSTRUCTION INCORRECTLY

5    IMPLIES THAT A SIMULTANEOUS OR CONTEMPORARY WITNESSING IS

6    REQUIRED TO USE DOCUMENTARY EVIDENCE TO CORROBORATE

7    INVENTORSHIP.

8         AND THE CASES ALSO SAY THAT DOCUMENTARY OR PHYSICAL

9    EVIDENCE MADE CONTEMPORANEOUS WITH THE INVENTIVE PROCESS

10   PROVIDES THE MOST RELIABLE PROOF THAT THE INVENTOR'S TESTIMONY

11   HAS BEEN CORROBORATED, AND THAT'S THE SANDT CASE.

12        AND THEN THERE'S ALSO CASES THAT STATE PRETTY CLEARLY

13   THAT IT'S THE TESTIMONY OF THE INVENTOR THAT HAS TO BE

14   INDEPENDENTLY CORROBORATED, NOT THE CONTENTS OF PHYSICAL

15   DOCUMENTS.

16        **THE COURT:**  WELL, ALL OF THOSE ARE CORRECT, BUT THEY

17   STILL DON'T GET US TO THE DISTINCTION BETWEEN SOME DOCUMENTS AND

18   OTHER DOCUMENTS.

19        **MR. TANGRI:**  RIGHT.  THE -- I'M SORRY, YOUR HONOR,

20   JUST TO RESPOND.  THE ISSUE -- GO AHEAD, SORRY.

21        **THE COURT:**  WELL, WHAT I WAS SAYING IS, SEE, I CAN

22   UNDERSTAND THAT IF YOU HAVE SOMETHING LIKE A LAB NOTEBOOK

23   THAT -- I GUESS YOU'D HAVE TO HAVE AUTHENTICATED IN SOME WAY

24   BEYOND THE INVENTOR HIMSELF, BECAUSE YOU CAN'T CREATE -- IF THE

25   INVENTOR SAYS, "YOU SEE THIS PIECE OF PAPER?  I WROTE THIS ON

1    AUGUST 3RD OF SOME -- SO AND -- ON AROUND IN AUGUST, AND SEE

2    WHAT IT SAYS?  AND IT SAYS WHAT I WAS THINKING ABOUT AT THE SAME

3    TIME."  WELL, THAT'S JUST THE TESTIMONY OF THE INVENTOR.

4              BUT IF -- IF IT IS SOMETHING THAT WAS A

5    CONTEMPORANEOUSLY CREATED DOCUMENT OF WHICH THERE'S NO DISPUTE,

6    AND LAB NOTEBOOKS, FOR EXAMPLE, ARE PEOPLE -- THEY MAY BE LAB

7    NOTEBOOKS THAT ARE REQUIRED BY THE -- THE EMPLOYER OR THERE MAY

8    BE LAB NOTEBOOKS THAT ARE KEPT THERE AS A CUSTOM, AND IT MAY BE

9    THAT YOU COULD THEN REFER TO THEM AS TO HAVING SOME SIGNIFICANCE

10   OTHER THAN SIMPLY A PIECE OF PAPER WRITTEN BY THE AUTHOR OR THE

11   PURPORTED INVENTOR.

12             BUT I THINK YOU CAN'T HAVE JUST AN UNDATED PIECE OF

13   PAPER THAT'S IDENTIFIED ONLY BY THE TESTIMONY OF THE INVENTOR TO

14   BE ANYTHING OTHER THAN SIMPLY THE NEED FOR CORROBORATION TYPE OF

15   EVIDENCE.

16             **MR. TANGRI:**  AND THAT'S PRECISE -- THAT KIND OF --

17   IT'S WHAT WE HAVE IN THIS CASE, YOUR HONOR.  IT'S NOT -- I MEAN,

18   MR. MCFARLANE MADE REFERENCE TO A CASE WHERE THERE WAS SOMETHING

19   THAT WAS WITNESSED BY AN INDEPENDENT WITNESS AFTER THE FACT.

20   WE'VE GOT STUFF HERE THAT WAS NEVER WITNESSED BY AN INDEPENDENT

21   WITNESS AT ALL.

22             AND -- AND WE THINK YOUR HONOR IS -- HAS CAPTURED IT

23   WHEN YOU SAY THAT CAN'T BOOTSTRAP THE CORROBORATION REQUIREMENT,

24   SOMEONE SAYING, "HERE'S A PIECE OF PAPER.  HERE'S WHEN I DREW

25   IT.  SO NOW I HAVE A PIECE A PAPER TO TELL YOU THAT I DREW THE

3641

1    PIECE OF PAPER ON THE DAY I TOLD YOU."

2              "HERE'S A PIECE OF PAPER.  HERE'S THE DATE I DREW IT.

3    NOW I HAVE A PIECE OF PAPER THAT CORROBORATES THAT I DREW THIS

4    ON THE DATE I SAY I DID."  THAT'S CIRCULAR AND IT DOESN'T

5    CORROBORATE.

6              AND SO THAT'S WHY WE PROPOSE -- AND WE TRIED TO BE

7    FAIR HERE IN TALKING -- TRY TO TAKE -- THERE ARE CASES THAT SAY

8    UNDATED, UNSIGNED, UNWITNESSED THINGS HAVE NO VALUE, DO NOT

9    QUALIFY.  THERE ARE CASES THAT SAY LIMITED VALUE, AND MINIMAL

10   VALUE, AND WE HAVE TAKEN THAT LATTER OPTION WHICH WE THINK --

11                   (SIMULTANEOUS COLLOQUY.)

12        **THE COURT:**  -- JUST HAVING A SORT OF THE

13   CHARACTERIZATION OF EVIDENCE, I DON'T THINK THAT'S WHAT THE

14   SUBJECT MATTER OF THE INSTRUCTIONS OUGHT TO BE.  IT'S EITHER IN

15   OR OUT.  I DON'T WANT TO CARE (SIC) -- THIS IS BETTER STUFF THAN

16   THAT STUFF, UNLESS I HAVE TO.

17        **MR. TANGRI:**  AND, YOUR HONOR, I WILL -- I WILL POINT

18   OUT THAT WE FILED A MOTION IN LIMINE AT THE OUTSET TO EXCLUDE

19   CERTAIN PIECES OF UNDATED OR -- PROPERLY AUTHENTICATED EVIDENCE,

20   EVIDENCE THAT'S GOING TO COME IN ONLY BY VIRTUE OF MR. SHUM'S

21   OWN TESTIMONY ABOUT WHAT HE WAS DOING ON WHAT DAY.  WE DID FILE

22   THAT MOTION IN LIMINE.  WE OBJECTED CONTEMPORANEOUSLY.  WE THINK

23   THAT UNDER THAT STANDARD, WE -- IT'S BEEN OUR POSITION THAT

24   SHOULDN'T BE HERE.

25              THE COURT DENIED THE MOTION IN LIMINE, SO THIS IS

3642

```
1    THE -- WE THINK THE LEAST THAT SHOULD BE DONE TO AVOID THE

2    PROBLEM OF HAVING THE JURY BELIEVE THAT A SKETCH DRAWN ON SOME

3    UNKNOWN TIME THAT THE INVENTOR -- IMPUTED INVENTOR TESTIFIES

4    ABOUT SOMEHOW CORROBORATES HIS OWN TESTIMONY.  THAT CAN'T BE.

5         MR. McFARLANE:  I THINK THIS GOES TO THE BASIC

6    CORROBORATION REQUIREMENT THAT'S STATED IN THE PRICE V. SYMSEK

7    CASE AND ALL OF THE CASES THAT FOLLOW THAT.  IT'S A RULE OF

8    REASONABLE ANALYSIS, AND IT STATES THAT YOU'RE TO LOOK AT THE

9    CORROBORATED EVIDENCE AND THE UNCORROBORATED EVIDENCE TOGETHER

10   AS A WHOLE TO SEE IF THE CONCEPTION STORY OF A PUTATIVE

11   INVENTOR --

12        THE COURT:  THAT DOESN'T REMOVE THE RULE OF

13   CORROBORATION.

14        MR. McFARLANE:  RIGHT.

15        THE COURT:  SEE, I DON'T AGREE THAT THE RULE OF

16   REASON SAYS THAT IF YOU LISTEN TO AN INVENTOR AND YOU FIND ONE

17   THING THAT WAS CORROBORATED BY THE INVENTOR, THEN YOU CAN

18   INCLUDE EVERYTHING ELSE THAT WAS STATED BY THE INVENTOR.  I

19   DON'T BELIEVE THAT'S WHAT THE RULE OF CORROBORATION IS.

20        MR. McFARLANE:  I --

21        THE COURT:  IT HAS TO BE AS TO EACH CONCEPTION YOU'RE

22   GOING TO HAVE TO HAVE INDIVIDUAL INDEPENDENT CORROBORATION.

23        MR. McFARLANE:  AND AS TO EACH CONCEPTION BUT NOT

24   EACH AND EVERY FACT OF EACH CONCEPTION NEED NOT BE CORROBORATED.

25        THE COURT:  BUT IF WHAT YOU'RE SAYING IS THAT THE
```

3643

1    ORAL TESTIMONY NEEDS TO BE CORROBORATED, BUT IF THE ORAL

2    TESTIMONY SAYS, "HERE'S WHAT I WROTE DOWN, NOW USE THAT," THEN I

3    THINK THAT HAS TO BE CORROBORATED, TOO.  I MEAN, THE ACT OF

4    CREATING THAT IS -- IS SIMPLY NO DIFFERENT THAN THE ORAL

5    TESTIMONY.  SO IT'S GOT TO BE CORROBORATED.

6         MR. TANGRI:  AND -- AND THAT -- THAT WAS THE -- THE

7    POSITION WE TOOK IN THE MOTIONS IN LIMINE, YOUR HONOR, AND --

8    MADE THE OBJECTIONS.

9         MR. McFARLANE:  I THINK --

10        MR. TANGRI:  WE -- WE HEARD YOUR HONOR TO SAY THIS

11   WAS ALL COMING IN SUBJECT TO CORROBORATION, AND NOW WE THINK

12   IT'S TIME FOR CORROBORATION.

13        MR. McFARLANE:  I THINK THAT JUST ONE COMMENT I

14   THINK, YOUR HONOR, IS THAT THE CASES BEGINNING WITH ETHICON

15   STATE THAT THERE NEED NOT BE CORROBORATION OF EVERY FACT

16   CONTESTED BY THE PARTIES.  THE LAW DOES NOT REQUIRE THE

17   IMPOSSIBLE STANDARDS OF INDEPENDENCE ON CORROBORATIVE EVIDENCE

18   BY REQUIRING THAT EVERY POINT --

19        THE COURT:  I KNOW.

20        MR. McFARLANE:  -- OF REDUCTIONS TO PRACTICE CAN BE

21   CORROBORATED.

22        THE COURT:  BUT THAT DOESN'T MEAN THAT THERE CAN'T BE

23   A NEED TO CORROBORATE MORE THAN ONE POINT.  AND WHAT I'M SAYING

24   IS, IS YOU'RE GOING TO HAVE TO CORROBORATE THOSE POINTS THAT

25   ESTABLISH CONCEPTION.  THAT'S THE WHOLE IDEA.  AND IF IT'S -- IF

```
 1   THE ARGUMENT IS THAT IT'S DONE BY THIS PIECE OF PAPER, THEN

 2   THAT -- AND THAT'S -- THAT PIECE OF PAPER EXISTS BECAUSE OF THE

 3   TESTIMONY OF THE INVENTOR ONLY, THEN IT HASN'T BEEN

 4   CORROBORATED.

 5            SO IT'S JUST A QUESTION OF HOW WE'RE GOING TO STATE

 6   THIS.  THERE HAS TO BE SOMETHING BECAUSE MY ONLY STATEMENT IN

 7   THE INSTRUCTIONS OR INDEPENDENT EVIDENCE FROM DOCUMENTS, NOW

 8   THAT MEANS IT'S AN INDEPENDENT EVIDENCE DOCUMENT, BUT PROBABLY

 9   NEEDS MORE THAN SIMPLY THE STATUS AS A DOCUMENT.

10            MR. TANGRI:  OUR CONCERN IS THAT'S NOT GOING TO TELL

11   THE JURY WHAT IT NEEDS.

12            MR. McFARLANE:  I THINK OUR POSITION IS THAT UNDER

13   THE CASES THAT BOTH PARTIES HAVE CITED, THE INSTRUCTION AS IT IS

14   NOW IS ADEQUATE AND CORRECTLY REFLECTS THE CORROBORATION

15   REQUIREMENT.

16            THE COURT:  WELL, I THINK THAT I DON'T AGREE WITH

17   THAT, BUT I'M NOT SURE THAT I AGREE WITH PUTTING IN THIS WHOLE

18   PARAGRAPH.

19                  (PAUSE IN THE PROCEEDINGS.)

20            THE COURT:  WELL, JUST SIT HERE TRYING TO DO SOME --

21   LET'S MOVE TO ANOTHER POINT.  BUT I THINK THERE HAS TO BE

22   SOMETHING THAT -- THAT DEFINES THE FACT THAT A DOCUMENT WITHOUT

23   SOME CORROBORATION BEYOND THE TESTIMONY OF THE -- THE INVENTOR

24   IS NOT SUFFICIENT.

25            MR. TANGRI:  OKAY.
```

3645

```
1            AND I MEAN, WE COULD SIMPLY SAY, YOUR HONOR, THAT --

2   WE THINK THAT THE LANGUAGE YOU PROPOSED IS CORRECT AND

3   APPROPRIATE, BUT IF YOU'RE NOT INCLINED TO ACCEPT IT, WE COULD

4   SAY -- YOU COULD SAY WHAT THE COURT JUST SAID, WHICH IS --

5            THE COURT:  WELL, THAT'S WHAT I'M THINKING ABOUT

6   SAYING, SOMETHING THAT'S SENSIBLE.

7            MR. TANGRI:  -- DOCUMENT --

8            THE COURT:  IT WOULD HAVE BEEN A MODIFIED DOCUMENT,

9   THAT'S THE POINT.

10            MR. TANGRI:  OKAY.

11            AND I BELIEVE THAT THAT WAS THE LAST CHANGE THAT

12   DEFENDANTS PROPOSE TO THE INVENTORSHIP PORTION OF THE

13   INSTRUCTION.  WE THEN DO HAVE OTHER INSTRUCTIONS RELATED TO

14   PATENT ISSUES THAT WE PROPOSE THAT WOULD COME AFTER THIS, BUT

15   THEY DON'T GO TO INVENTORSHIP.

16            MR. McFARLANE:  AND WE DON'T HAVE ANY OTHER FURTHER

17   COMMENTS ON INVENTORSHIP.

18            THE COURT:  WHY DON'T -- WELL, MAYBE IT'S A -- I

19   GUESS YOU'RE TALKING ABOUT -- WE'RE GOING TO HAVE TO DO SOME

20   DEFINITIONS OF WHAT'S A LAWFUL PATENT.

21            MR. TANGRI:  WE ARE -- YEAH, WE'RE TALKING ABOUT --

22            THE COURT:  THE QUESTION ABOUT WHERE THAT GOES, IT'S

23   EITHER HERE OR DOES IT GO WITH THE CONTRACT.

24            MR. TANGRI:  RIGHT.  WHAT I -- AND JUST TO BE CLEAR,

25   WHAT WE'RE REFERRING TO -- WHAT I'M REFERRING TO, YOUR HONOR, IS
```

```
 1   OUR PROPOSED INSTRUCTIONS 1 THROUGH 7 THAT WE SUBMITTED ON

 2   FRIDAY AFTERNOON AND WHETHER THEY GO HERE OR SOMEWHERE ELSE

 3   THAT -- THAT THEY TOUCH ON PATENT ISSUES.  THEY DON'T -- THEY

 4   DON'T GO TO THE GIST OF WHAT MAKES SOMEONE AN INVENTOR.  SO

 5   THAT'S WHY I'M SAYING WE'RE DONE WITH THIS INSTRUCTION --

 6            THE COURT:  WELL, LET'S MAYBE TAKE THAT UP AGAIN WHEN

 7   WE GET TO UNLAWFUL PATENT.

 8            MR. TANGRI:  OKAY.  AND THESE ARE THE INSTRUCTIONS

 9   THAT RELATE TO ASSIGNMENTS AND OWNERSHIP AND INVENTORSHIP RIGHTS

10   AND THOSE --

11            THE COURT:  I THINK WE'RE GOING TO HAVE SOME

12   DISCUSSIONS ABOUT THAT ALSO.  YEAH.

13            BUT WHY DON'T WE KEEP GOING ON THE -- JUST THE PAGES

14   OF THE PROPOSED INSTRUCTIONS RIGHT NOW.

15            MR. TANGRI:  VERY -- VERY WELL.

16            OUR FIRST AND OVERARCHING COMMENT ON THIS WOULD BE

17   THAT WE WOULD REQUEST THAT IT BE PHRASED IN THE CACI LANGUAGE OF

18   INTENTIONAL MISREPRESENTATION RATHER THAN THE LANGUAGE OF FRAUD.

19            THE COURT:  WHICH I THINK YOUR HONOR HAD DONE AS PART

20   OF THE PREINSTRUCTIONS.

21            MR. McFARLANE:  YOUR HONOR, MS. ALBAN IS GOING TO

22   ADDRESS THAT FOR US.

23            MS. ALBAN:  AFTERNOON.

24            MR. TANGRI:  AND WE HAVE --

25            THE COURT:  HE WANTS ME TO CHANGE THE WORD "FRAUD" TO
```

1    "INTENTIONAL MISREPRESENTATION."

2            **MS. ALBAN:**  I DON'T KNOW THAT WE HAVE A PROBLEM WITH

3    THAT, YOUR HONOR.  I THINK "FRAUD" IS FINE, BUT --

4            **THE COURT:**  OKAY.  ALL RIGHT.  I THINK THE DEFENDANTS

5    CERTAINLY CALLED IT FRAUD, BUT --

6            **MS. ALBAN:**  WE SHOULD STICK --

7            **MR. TANGRI:**  I THINK THE CACI INSTRUCTIONS, C-A-C-I,

8    REFER TO IT AS INTENTIONAL MISREPRESENTATION.

9            AND THEN WE HAVE PROPOSED, AS PART OF THE

10   INSTRUCTIONS THAT WE SUBMITTED ON FRIDAY, INSTRUCTION 19.  AND

11   WE WOULD PROPOSE TO USE THAT IN PLACE OF THE FIRST PARAGRAPH OF

12   THIS INSTRUCTION AND THE NUMBERED PARAGRAPHS 1 THROUGH 5.

13           **MS. ALBAN:**  WE OBJECT, YOUR HONOR.  WE THINK THAT THE

14   COURT'S PROPOSED INSTRUCTION FOLLOWS CACI 1900 AND IS

15   APPROPRIATE.

16           **THE COURT:**  WELL, LET'S SEE.  SEE IF I GET --

17                   (PAUSE IN THE PROCEEDINGS.)

18           **THE COURT:**  SO WE -- INSTEAD OF USING THE TEXT THAT I

19   START OUT WITH, YOU WANT US TO START OUT WITH 19?

20           **MR. TANGRI:**  CORRECT, YOUR HONOR.  AND -- AND --

21           **THE COURT:**  BUT I'M NOT SURE THAT I AGREE THAT

22   WE'RE -- THE FALSE REPRESENTATION CLAIM IS.  NOW, THAT IS WE'RE

23   NOW GOING TO HAVE A -- A DESCRIPTION OF SOME FALSE

24   REPRESENTATIONS, AND WHAT ARE THEY?

25           **MR. TANGRI:**  WELL, THAT'S -- THAT'S THE QUESTION,

1    YOUR HONOR.  AND WHAT WE FIND SIGNIFICANT IS IN THE MEMORANDUM

2    THAT PLAINTIFF FILED LATE LAST NIGHT IN -- IN OPPOSITION TO

3    THIS.  WE -- LET ME BACK UP.

4          WE HAD INDICATED THAT ONE REASON TO -- THAT WE NEED

5    TO HAVE THIS STATED CLEARLY IS WHAT IS THE FALSE REPRESENTATION,

6    IS THAT THE COURT HAS MADE A RULING AND REAFFIRMED THE RULING

7    BEFORE TRIAL, AND PLAINTIFFS SAY THEY ARE NOT CHALLENGING THE

8    RULING, THAT THIS CANNOT BE BASED ON NON-DISCLOSURE.

9          AND PLAINTIFF, IN THEIR OPPOSITION -- THEIR OBJECTION

10   TO THIS INSTRUCTION, SAY WE -- THEY UNDERSTAND THAT MR. SHUM ON

11   THE STAND TESTIFIED VERY DIRECTLY TO A NON-DISCLOSURE AND

12   TESTIFIED THAT BECAUSE OF THE NON-DISCLOSURE, HE ENTERED INTO

13   THE PLAN OF LIQUIDATION AND THAT HE WOULD NOT HAVE ENTERED INTO

14   THE PLAN OF LIQUIDATION BUT FOR THE NON-DISCLOSURE.

15         THEY THEN GO ON TO SAY THAT THAT IS NOT THE BASIS OF

16   THEIR CLAIM, THAT THEIR CLAIM IS GOING TO BE BASED ON AN

17   AFFIRMATIVE MISREPRESENTATION, AND THEY STOP.

18         AND IT IS NOT CLEAR TO US HERE, AFTER THE CLOSE OF

19   THE EVIDENCE, WHAT THAT AFFIRMATIVE MISREPRESENTATION IS,

20   BECAUSE THE TESTIMONY OF THE PLAINTIFF WE THINK WAS PRETTY DARN

21   CLEAR THAT WHAT INDUCED HIM TO ENTER INTO A PLAN OF LIQUIDATION

22   HE SAYS, WE DISPUTE IT, BUT HE IDENTIFIED IT AS A

23   NON-DISCLOSURE.

24         "IF I HAD KNOWN THAT DR. VERDIELL WAS WORKING ON THIS

25   PATENT APPLICATION AT THE SAME TIME AS WE WERE ENTERING INTO THE

1    PLAN OF LIQUIDATION, I WOULDN'T HAVE DONE IT."

2              FAIR ENOUGH.  WE -- WE DISPUTE THAT, BUT THAT'S A

3    NON-DISCLOSURE.  AND PLAINTIFF ACKNOWLEDGES IN THEIR PAPERS THAT

4    IT'S A NON-DISCLOSURE.  AND THEY SAY IT'S NOT THE BASIS OF THEIR

5    CLAIM, BUT WE THINK IT'S HIGH TIME TO HEAR WHAT IS.

6              **MS. ALBAN:**  MAY I ADDRESS THAT, YOUR HONOR?

7              SO PLAINTIFF'S AFFIRMATIVE MISREPRESENTATION CLAIM IS

8    BASED BOTH ON STATEMENTS BY VERDIELL DIRECTLY TO SHUM AND

9    THROUGH ALBOSZTA, TO THE EXTENT TESTIMONY EXISTS ON THAT

10   SUBJECT, THAT THE PATENT APPLICATION -- THE RADIANCE PATENT

11   APPLICATION HAD TO BE WITHDRAWN.  THE STATEMENT THAT SHUM MADE

12   ON THE STAND THAT HE WOULD NOT HAVE ENTERED INTO --

13             **THE COURT:**  WELL, DO YOU HAVE -- DO YOU HAVE A LIST

14   OF STATEMENTS THAT YOU'RE GOING TO RELY UPON?

15             **MS. ALBAN:**  DO I HAVE?

16             **THE COURT:**  SO YOU AGREE THAT IN EFFECT THAT YOU HAVE

17   A LIST OF MISREPRESENTATIONS THAT YOU CONTEND?

18             **MS. ALBAN:**  YES.

19             **THE COURT:**  SO WE'LL TELL THEM.  CAN YOU GIVE ME A

20   LIST THEN?

21             **MS. ALBAN:**  BEYOND THAT THE PATENT HAD TO BE

22   WITHDRAWN?

23             **THE COURT:**  IF THERE IS ANY.  I MEAN, I DON'T KNOW.

24   I MEAN, THE POINT IS THAT WE'RE GOING TO HAVE TO HAVE A

25   MISREPRESENTATION THAT IS AFFIRMATIVELY STATED, PRESENTED TO --

```
1    TO SHUM AND THEN YOU GO INTO WHETHER THAT'S FALSE, RELIED UPON,

2    ALL THE OTHER ELEMENTS GO ALONG WITH IT FOR CULPABILITY.

3              MS. ALBAN:  WELL, THE STATEMENT IS -- BOTH, AGAIN,

4    THROUGH VERDIELL AND ALBOSZTA IS THAT THE PATENT AS FILED WAS

5    INVALID AND THAT THE ONLY WAY TO RECTIFY THAT IS TO WITHDRAW IT.

6    AND THEN WE GO INTO THE RELIANCE AND THE CAUSATION, WHICH IS --

7              THE COURT:  BUT THE STEP ONE IS WHAT ARE THOSE

8    REPRESENTATIONS THAT YOU CLAIM ARE FALSE, SO THAT WE CAN THEN

9    GET INTO THESE -- THESE OTHER THINGS LIKE SCIENTER AND INTENT

10   AND THAT KIND OF STUFF.  BUT THAT MEANS THAT THEIR SUGGESTION IS

11   THAT WE'VE PUT INTO THE INSTRUCTIONS THAT THERE IS A FALSE

12   REPRESENTATION WHICH IS, AND THEN WE HAVE THE REST OF THE

13   INSTRUCTIONS ABOUT IT.

14             AND NOW IF THERE IS A LIST --

15             MS. ALBAN:  WELL, I DON'T KNOW THAT WE HAVE A LIST.

16             THE COURT:  -- TELL ME WHAT THEY ARE.

17             MS. ALBAN:  I DON'T HAVE A LIST.  THE STATEMENT IS

18   THAT THE ACTUAL STATEMENT THAT THE APPLICATION WAS INVALID AND

19   HAD TO BE WITHDRAWN.  AND WE CAN PUT THAT IN THERE DIRECTLY TO

20   THE JURY.

21             THE COURT:  WELL, THAT'S --

22                  (SIMULTANEOUS COLLOQUY.)

23             MS. ALBAN:  THAT --

24             THE COURT:  IF THAT'S SO, THEN WE COULD JUST ADD

25   THESE IN TERMS OF THEIR 19, WE'VE GOT A BLANK HERE.
```

```
 1              MS. ALBAN:  RIGHT, WE CAN ADD --

 2              THE COURT:  YOU CAN FILL THAT IN WITH THOSE

 3  REPRESENTATIONS YOU THINK THAT WERE MADE.  CAN YOU GIVE ME A

 4  LIST LIKE THAT?

 5              MR. TANGRI:  SOUNDS LIKE IT'S JUST THE ONE, YOUR

 6  HONOR.

 7              THE COURT:  OH, I HEARD TWO OF THEM.

 8              MS. ALBAN:  "INVALID AND HAD TO BE WITHDRAWN."  WE

 9  CAN PUT THOSE IN, YES.

10              MR. TANGRI:  IT SOUNDS LIKE THE CLAIM FALSE

11  REPRESENTATION IS THAT THE PATENT APPLICATION THAT HAD BEEN

12  FILED ON BEHALF OF RADIANCE WAS INVALID AND HAD TO BE WITHDRAWN.

13  AND THE ASSERTION IS THAT THAT STATEMENT WAS MADE BOTH BY

14  DR. VERDIELL AND THROUGH ALBOSZTA.

15              NOW, I DON'T KNOW THAT THE ALBOSZTA PIECE WORKS

16  BECAUSE THERE'S ONLY HEARSAY ON THE ALBOSZTA PIECE, BUT -- BUT

17  EITHER WAY, THAT'S THE STATEMENT, "INVALID AND HAD TO BE

18  WITHDRAWN."

19              THE COURT:  OKAY.  BUT THEN WHAT I WOULD SAY IS YOU

20  SHOULD -- YOU SHOULD GIVE ME A -- A SPECIFIC LIST OF A BRIEF

21  STATEMENT OF THOSE THINGS THAT YOU BELIEVE ARE THE

22  REPRESENTATIONS YOU'RE GOING TO RELY UPON IN THIS PARTICULAR

23  CAUSE OF ACTION.

24              MR. TANGRI:  I THINK THAT WAS -- I THINK WE JUST

25  HEARD THAT WAS IT.
```

```
 1                THE COURT:  WELL, WHATEVER IT IS, YOU GIVE ME -- IF

 2     THAT'S IT.

 3                MS. ALBAN:  THAT'S IT.  THAT'S OUR AFFIRMATIVE

 4     MISREPRESENTATION.

 5                THE COURT:  WELL, WHY DON'T YOU STATE THAT FOR THE

 6     RECORD, THEN, SO WE CAN PUT IT IN.

 7                MS. ALBAN:  OKAY.  "AFFIRMATIVE MISREPRESENTATION OF

 8     STATEMENTS BY VERDIELL DIRECTLY TO SHUM THAT THE PATENT

 9     APPLICATION HAD TO BE WITHDRAWN AND WAS INVALID.  AND ALSO

10     STATEMENTS THROUGH ALBOSZTA TO THE SAME EFFECT."

11                THE COURT:  THE SAME STATEMENT MADE BY BOTH VERDIELL

12     AND ALBOSZTA?

13                MS. ALBAN:  CORRECT.

14                THE COURT:  OKAY.

15                MR. TANGRI:  THAT'S -- WE UNDERSTAND, YOUR HONOR.

16                THAT'S --

17                MS. ALBAN:  NOW, YOUR HONOR, YOU ALSO MENTIONED AT A

18     PRIOR HEARING THAT WE MAY INTRODUCE EVIDENCE OF OMISSIONS AND

19     CONCEALMENT IF THEY HIGHLIGHT OR GO TO OTHER AREAS OF FRAUD AS

20     LONG AS THEY'RE NOT THE BASIS FOR THE FRAUD.  SO OMISSIONS MAY

21     BE CONSIDERED FOR INTENT OR CAUSATION?

22                THE COURT:  NO, I DIDN'T SEE ANYTHING THAT -- SEE,

23     THERE'S A CONCEPT THAT IF -- IF YOU MAKE A STATEMENT THAT RAISES

24     ISSUES THAT NEED EXPLANATIONS TO GO WITH THEM TO MAKE THAT

25     STATEMENT SOMETHING THAT IS INTELLIGIBLE, THEN YOU CAN PUT IN
```

3653

```
 1    OMISSIONS.

 2              BUT I DIDN'T SEE THERE'S ANYTHING LIKE THAT HERE.

 3         MR. TANGRI:  NO.

 4         THE COURT:  ON THE OTHER HAND, IF YOU MAKE A

 5    STATEMENT AND YOU'RE ATTEMPTING TO PROVE THAT THE STATEMENT WAS

 6    FALSE AT THE TIME IT WAS MADE, THEN YOU PUT ON CIRCUMSTANCES --

 7         MS. ALBAN:  RIGHT.

 8         THE COURT:  -- YOU CAN DO THAT.

 9              BUT THAT'S A DIFFERENT CONCEPT, AND THAT IS -- IS THE

10    ONLY CONCEPT THAT I SEE APPLIES HERE, IS THAT I DIDN'T SEE

11    ANYTHING THAT SAYS THERE WAS A STATEMENT THAT WAS MADE THAT

12    NEEDS TO HAVE A DISCLOSURE IN ORDER TO MAKE THAT STATEMENT ONE

13    THAT'S INTELLIGIBLE OR -- OR ONE THAT COULD BE RELIED UPON.

14              SO I THINK WHAT WE'LL -- WE CAN'T HAVE THAT AS A

15    BASIS.  BUT ALL WE -- THAT IS, WE DON'T CHANGE ANY OF THIS

16    LANGUAGE HERE.  ALL WE PUT IN HERE IS YOUR THESIS AS TO WHAT IS

17    THE MISREPRESENTATION YOU'RE RELYING UPON, AND WE'VE JUST GOT

18    THAT DONE AND SO I DON'T THINK WE NEED ANY MORE.

19         MS. ALBAN:  OKAY.  THANK YOU, YOUR HONOR.

20         MR. TANGRI:  AND JUST -- THAT'S FINE, YOUR HONOR.  SO

21    WHEN YOU SAY WE'RE NOT GOING TO CHANGE THE LANGUAGE, YOU --

22    YOU -- DO --

23         THE COURT:  I'M SAYING WE'RE GOING TO USE YOUR 19.

24         MR. TANGRI:  PERFECT.

25         THE COURT:  IT'S NOT PERFECT, BUT IT'S --
```

```
 1              MR. TANGRI:  PERFECT FOR US.  AND I THINK THE LAST

 2   PART OF OUR 19 THAT WE HAVE THERE IN BRACKETS IS ALREADY IN THE

 3   COURT'S INSTRUCTION SO --

 4                   (SIMULTANEOUS COLLOQUY.)

 5              MR. TANGRI:  THAT IS PERFECT THEN.

 6              THE COURT:  SO USE UP THROUGH 7 AND THEN WE USE

 7   THE -- WE SWITCH OVER TO THE -- OKAY.

 8              MR. TANGRI:  AND I -- IN LIGHT OF THE TESTIMONY FROM

 9   MR. SHUM THAT WE WERE JUST TALKING ABOUT AND IN LIGHT OF THE

10   COURT'S REMARKS, WE -- WE WOULD REQUEST TO THE COURT THEN ADD

11   AFTER THAT PARAGRAPH THE ENDING WITH "EVEN IF A REASONABLE

12   PERSON WOULD NOT," WE WOULD PROPOSE TO ADD OUR PROPOSED

13   INSTRUCTION NO. 20 THAT WE SUBMITTED ON FRIDAY.

14              MS. ALBAN:  WE DON'T FEEL THAT INSTRUCTION NO. 20 IS

15   NECESSARY.  IF YOU'RE ALREADY AFFIRMATIVELY --

16              THE COURT:  I DON'T THINK THAT'S NECESSARY.  I'M NOT

17   GOING TO GIVE THAT ONE.

18              MR. TANGRI:  WELL, I HOPE, THEN, YOUR HONOR -- I

19   MEAN, IF THERE'S GOING TO BE ARGUMENT TOMORROW BASED ON THE

20   TESTIMONY FROM SHUM, WHICH AS I SAID COULDN'T HAVE BEEN CLEARER

21   THAT WHAT CAUSED HIM TO DO IT WAS THE LACK OF DISCLOSURE, ONE, I

22   THINK THE JURY REMEMBERS THAT TESTIMONY, IT WAS DELIVERED

23   CLEARLY AND PASSIONATELY BY THE PLAINTIFF, AND TWO, I -- I'D BE

24   SURPRISED IF THERE WEREN'T ARGUMENT ABOUT IT.  IF THAT'S GOING

25   TO BE DISCUSSED AT ALL, I THINK WE DO NEED TO INFORM THE JURY
```

```
 1    THAT THAT IS NOT A LEGALLY AVAILABLE THEORY.  IF OTHERWISE --

 2                    (SIMULTANEOUS COLLOQUY.)

 3            THE COURT:  SEE, I DON'T KNOW WHY WE HAVE TO INFORM

 4    THE JURY THAT THIS ARGUMENT WAS JUST MADE.  IT'S JUST -- I MEAN,

 5    I DON'T MAKE THE ARGUMENTS, YOU MAKE YOUR OWN ARGUMENTS.  ALL

 6    RIGHT.  AND WE -- THERE'S NOTHING IN HERE THAT SAYS THAT THE

 7    FRAUD CAN BE BASED UPON A -- A FAILURE TO DISCLOSE SOMETHING.

 8            MR. TANGRI:  I --

 9            THE COURT:  IT'S CLEAR THAT YOU HAVE TO HAVE A

10    MISREPRESENTATION AND NOT SIMPLY FAILURE TO DISCLOSE.

11            MR. TANGRI:  AND -- AND WHERE THE -- I -- I'M -- I'M

12    JUST RECALLING MR. SHUM'S TESTIMONY WHERE HE SAID, YOU KNOW, "HE

13    DIDN'T TELL ME THAT HE WAS WORKING ON THIS PATENT APPLICATION,

14    AND IF HE TOLD ME THAT, I WOULD NEVER HAVE DONE IT."

15            IT SEEMS TO ME THAT THE DISTINCTION BETWEEN

16    NON-DISCLOSURE AND FRAUD WITHOUT A LITTLE BIT OF ELABORATION ON

17    THE NON-DISCLOSURE PIECE MAY BE -- MAY BE CONFUSING TO THE JURY

18    AND THEY COULD RETURN A VERDICT BASED ON THAT NON-DISCLOSURE

19    WHICH IS CONTRARY TO THE COURT'S PRIOR RULING.

20            MS. ALBAN:  I THINK --

21            MR. TANGRI:  WE'VE ALSO HAD -- WE'VE ALSO HAD A LOT

22    OF DISCUSSION IN THE CASE ABOUT -- FROM PLAINTIFF'S COUNSEL

23    ABOUT BATTERY VENTURES AND THE NON-DISCLOSURE OF THE BATTERY

24    VENTURES OFFER, WHICH CREATES ANOTHER OPPORTUNITY FOR THE JURY

25    TO FIND THAT THERE WAS SOMETHING ABOUT THE NON-DISCLOSURE ON
```

```
1    THAT THAT --

2              MS. ALBAN:  THE JURY'S ALLOWED TO CONSIDER

3    NON-DISCLOSURE IF IT GOES TO OTHER THINGS OTHER THAN THE ACTUAL

4    FRAUD.  THERE'S A LOT OF CIRCUMSTANTIAL EVIDENCE OF INTENT.

5              THE COURT:  THAT'S RIGHT, AND WE'RE NOT RULING THOSE

6    OUT.  BUT THE PROBLEM IS IF WE DON'T DESCRIBE THAT, IT MAY BE

7    THAT WHEN THAT ARGUMENT IS MADE, IT'S MADE SO THAT IT DOESN'T

8    MAKE THE EXCEPTIONS AS A PART OF IT.

9              MR. TANGRI:  THAT'S PRECISELY OUR CONCERN.  AGAIN, WE

10   HAD ASKED TO HAVE THOSE NON-DISCLOSURES KEPT OUT OF THE CASE.

11   YOUR HONOR ALLOWED THEM IN BASED -- BASED ON THIS CIRCUMSTANTIAL

12   POINT, AND WE RESPECT THAT.  BUT NOW THAT THEY'RE IN, I THINK WE

13   NEED SOMETHING THAT -- TO MAKE SURE THEY DON'T BECOME AN

14   IMPROPER BASIS FOR A FINDING.  AND THEY'RE CABINED --

15             THE COURT:  I'M GOING TO ADD A REWRITE OF YOUR 20.

16   ADD IN AN EDITED VERSION OF 20.

17             OKAY.

18             MR. TANGRI:  AND THEN, YOUR HONOR, OUR NEXT -- OUR

19   NEXT PROPOSED ADDITION WOULD BE ON THE FOLLOWING PAGE OF THE

20   COURT'S INSTRUCTION WHICH IS PAGE 12 IMMEDIATELY BEFORE THE LAST

21   FULL PARAGRAPH ON THAT PAGE WHICH BEGINS WITH "SHUM DOES NOT

22   HAVE TO PROVE."

23             WE WOULD REQUEST TO ADD THERE DEFENDANTS' PROPOSED

24   INSTRUCTION 23 ON DAMAGES.

25             MS. ALBAN:  YOUR HONOR, WE OBJECT.  THE FRAUD IS NOT
```

```
 1    LIMITED TO OUT OF THE POCKET AS YOUR HONOR HAS ACKNOWLEDGED IN

 2    HIS PROPOSED INSTRUCTION.  THERE'S CALIFORNIA CIVIL CODE 3333

 3    APPLIES, AND IT'S -- DOES NOT HAVE TO PROVE THE EXACT AMOUNT OF

 4    DAMAGES AS LONG AS IT'S REASONABLE AND REASONABLY FORESEEABLE

 5    AND THAT WILL COMPENSATE HIM FOR ALL THE DETRIMENT PROXIMATELY

 6    CAUSED THEREBY, WHETHER OR NOT IT HAS BEEN ANTICIPATED.

 7              MR. TANGRI:  AND, YOUR HONOR, IN THIS CONTEXT WHERE

 8    THERE IS A CONTRACT AND THE CONTRACT IS NOT AND CANNOT BE

 9    RESCINDED, THEN IT IS -- IT IS ABSOLUTELY THE CALIFORNIA LAW

10    THAT FRAUD IS LIMITED TO OUT OF THE POCKET AND CANNOT BE ALLOWED

11    TO TRY TO GAIN PLAINTIFF DAMAGES THAT HE WOULD GAIN ONLY IF THE

12    CONTRACT WERE NOT IN PLACE.

13              AND THE THEORY OF THIS CASE, IT SEEMS -- WELL, ONE

14    THEORY OF THIS CASE BY THE PLAINTIFF IS THAT MR. SHUM IS

15    ENTITLED TO HAVE THAT WHICH HE WOULD HAVE -- SOMEBODY THINKS HE

16    WOULD HAVE GOTTEN IF THERE HADN'T BEEN A PLAN OF LIQUIDATION,

17    NAMELY HALF THE RADIANCE IP.

18              AND THERE -- WE WOULD DIRECT THE COURT RESPECTFULLY

19    TO THREE CASES, CHANELL V. ANTHONY, WHICH IS 58 CAL.APP.3D 290,

20    CROENI, C-R-O-E-N-I, V. GOLDSTEIN, 21 CAL.APP.4TH 754.  AND

21    HICKMAN V. JOHNSON, 36 CAL.APP. 342.

22              AND I'LL -- JUST SINCE I'M READING CITATIONS, I'LL

23    JUST KEEP READING.  THE -- IN CHANELL, IT'S AT PAGE 314 OF THE

24    OFFICIAL REPORT.  IN CROENI, IT'S -- IT'S ON PAGE 759 OF THE

25    OFFICIAL REPORT.  AND IN HICKMAN V. JOHNSON, IT'S ON PAGE 347 TO
```

1   348 OF THE OFFICIAL REPORT.

2            THOSE CASES, YOUR HONOR, STAND, WE SUBMIT, VERY

3   CLEARLY FOR THE PROPOSITION THAT IN THIS CIRCUMSTANCE IT'S

4   LIMITED TO OUT OF POCKET.  WE'VE ADDRESSED THIS IN OUR -- IN OUR

5   TWO BRIEFS SUBMITTED AS PART OF OUR OPENING JURY INSTRUCTIONS IN

6   THIS CASE AND IN -- SOMEWHAT IN THE BRIEF WE SUBMITTED ON

7   FRIDAY.

8            **THE COURT:**  WELL --

9            **MR. TANGRI:**  BUT -- BUT IT IS NOT -- SIMPLY NOT THE

10  LAW THAT MR. SHUM CAN RECOVER AS IF HE WERE A 50/50 OWNER OF THE

11  RADIANCE INTELLECTUAL PROPERTY.  HE IS NOT, BY VIRTUE OF THE

12  POL, SUCH AN OWNER.  HE DOES NOT HAVE THE RIGHT TO PROFITS.  I

13  MEAN, THAT'S THE WHOLE POINT OF THEM BEING COMPETITORS.  AND SO

14  TO ALLOW -- IT'S JUST NOT --

15           **THE COURT:**  WELL, MAYBE WE SHOULD WAIT AND COME BACK

16  TO THIS AFTER WE'VE TALKED ABOUT THE -- THE IMPACT OF THE POL ON

17  OWNERSHIP AND THAT SORT OF THING.  I DON'T KNOW.  BUT -- YOUR

18  ARGUMENT HAS A GOOD DEAL OF SUPPOSE --

19           **MS. ALBAN:**  WE ALSO SAY THAT CALIFORNIA CIVIL CODE

20  STATES THAT A BREACH OF OBLIGATION, NOT OF CONTRACT.  AND HERE

21  THE FRAUD IS NOT BASED ON A BREACH OF CONTRACT.  THE FRAUD IS

22  THE FRAUDULENT INDUCEMENT OF THE CONTRACT.  SO THE DAMAGES HERE

23  ARE DAMAGES FLOWING FROM THE FRAUD, NOT FROM THE BREACH OF

24  CONTRACT.

25           **MR. TANGRI:**  BUT -- BUT WHERE THERE IS A CONTRACT IN

```
 1   PLACE AND IT'S NOT GOING TO BE RESCINDED, WHICH IS THIS CONTRACT

 2   HERE, THEN THE FRAUD DAMAGES ARE -- ARE -- ARE LIMITED, AND THE

 3   THREE CASES WE JUST CITED DISCUSS IT VERY CLEARLY, TO THE

 4   OUT-OF-POCKET MEASURE.  THEY ARE NOT LIMITED -- THEY DO NOT

 5   ALLOW ANYTHING OVER AND ABOVE THAT.  THEY DO NOT ALLOW TO A

 6   BENEFIT ONE WOULD HOPE TO HAVE RECEIVED.  THAT IS -- THAT'S VERY

 7   CLEAR IN THIS CASE.  IT'S NOT EXPECTATION DAMAGES, AND IT'S NOT

 8   ANYTHING PROXIMATE.  IT'S LIMITED TO THE OUT-OF-POCKET MEASURE.

 9              AND TO PUT IT ANOTHER WAY, IF THE CONTRACT IS

10   THERE --

11                   (SIMULTANEOUS COLLOQUY.)

12         THE COURT:  YOU'RE SAYING THAT THIS IS A FRAUD WHERE

13   THE FRAUD WAS IN INDUCING THE CONTRACT?

14         MS. ALBAN:  CORRECT.

15         THE COURT:  ALL RIGHT.  AND SO YOU'RE SAYING THAT --

16         MS. ALBAN:  I'M SAYING THE FRAUD DAMAGES --

17         THE COURT:  -- IF FRAUD IS ESTABLISHED, THERE'S NO

18   CONTRACT.

19         MS. ALBAN:  WELL, THAT WOULD BE RESCISSION --

20                   (SIMULTANEOUS COLLOQUY.)

21         THE COURT:  -- BUT WE'RE NOT --

22         MS. ALBAN:  BUT WHAT YOUR ARGUMENT --

23         THE COURT:  WELL, SEE, THAT'S PART OF THE PROBLEM IS

24   THAT WE HAVE TO -- WELL, WE SHOULD GO BACK AND REFER BACK TO

25   WHAT WE'VE DONE BEFORE.  AND WE DID HAVE A SPECIFIC
```

```
 1    CONSIDERATION OF THE REMEDY OF RESCISSION FOR THE BREACH OF

 2    CONTRACT.  AND YOU'RE SAYING NO.

 3              MS. ALBAN:  RIGHT.

 4              THE COURT:  ALL RIGHT.  NOW, IF YOU'RE SAYING

 5    THERE'S -- WE PROVE FRAUD AND THE FRAUD WAS TO INDUCE THE

 6    CONTRACT, THE REMEDY IS THE -- THAT THERE'S NO CONTRACT OR THE

 7    REMEDY IS THAT THERE IS A CONTRACT?

 8              MS. ALBAN:  THE REMEDY IS DAMAGES.

 9              THE COURT:  WELL, BUT -- WHEN IT'S LIMITED BY THE

10    CONTRACT OR NOT?

11              MR. JANSEN:  YOUR HONOR, MAYBE I COULD JUST ADDRESS

12    THAT.

13              THE COURT:  OKAY.

14              MR. JANSEN:  THE -- WE'RE NOT TRYING TO SEEK --

15    OBVIOUSLY THE CONTRACT IS NOT RESCINDED, BUT THE DAMAGES THEORY

16    AND THE CAUSATION HERE IS THAT MR. SHUM WAS DEFRAUDED BY THE

17    MISREPRESENTATIONS TO ENTER AN AGREEMENT IN WHICH HE ESSENTIALLY

18    DIDN'T GIVE UP RIGHTS BUT MR. -- MR. VERDIELL TOOK THE POSITION

19    THAT HE COULD THEN ACT IN A WAY THAT DEPRIVED MR. SHUM OF

20    50 PERCENT OF THE INTEREST IN THOSE INVENTIONS, WHICH IS WHAT

21    HAPPENED.  AND --

22              THE COURT:  WITH THAT -- IS THAT SAYING NO CONTRACT

23    OR THERE IS A CONTRACT?

24              MR. JANSEN:  THERE'S A CONTRACT, BUT THERE'S -- THERE

25    IS A -- THERE'S A CONTRACT, YOUR HONOR, BUT THERE'S DAMAGES FROM
```

```
 1   THE FACT THAT THE CONTRACT WAS ENTERED AND DEPRIVED MR. SHUM OF

 2   HIS RIGHTS WHICH WOULD HAVE BEEN TO SHARE EQUALLY IN THE VENTURE

 3   AND THE PROFITS THAT WERE MADE BY MR. VERDIELL GOING FORWARD.

 4            AND THAT IS THE MEASURE OF DAMAGE IT PROXIMATELY

 5   CAUSED, AND IT'S APPROPRIATE TO HAVE A JURY INSTRUCTION THAT IS

 6   NOT LIMITED TO OUT OF POCKET.  I DON'T BELIEVE THE CASES

 7   MR. TANGRI CITED ARE ON POINT OR DEAL WITH THE MEASURE OF

 8   DAMAGES FOR FRAUD PROXIMATELY CAUSED DAMAGES.

 9            MR. TANGRI:  THEY -- THEY DEAL EXACTLY WITH THAT,

10   YOUR HONOR.  AND WHAT -- WHAT YOU'RE HEARING, I THINK, FROM THE

11   PLAINTIFF IS MR. SHUM HAD A SET OF RIGHTS.  HE GAVE THEM UP.  HE

12   GOT OTHER THINGS IN EXCHANGE.  HE GOT HIS RIGHTS UNDER THE POL.

13   HE GOT HIS RIGHTS UNDER THE CONTRACT.  AND NOW WHAT THEY'RE

14   TRYING TO SAY IS HE SHOULD GET THE DAMAGES HE WOULD HAVE HAD HAD

15   HE NOT ENTERED THE CONTRACT.  THAT'S PRECISELY --

16            THE COURT:  THAT'S WHAT I'M SAYING.

17            MR. TANGRI:  -- RESCISSION.

18            AND THAT'S PRECISELY BARRED BY THE COURT'S PRIOR

19   RULINGS.  AND THE CASES WE'VE CITED ARE VERY CLEAR THAT WHERE

20   THE CONTRACT IS BEING AFFIRMED AND BEING HELD IN --

21            THE COURT:  GIVE ME YOUR BASIC CASE THAT YOU HAVE,

22   THAT YOU RELY UPON.

23            MS. ALBAN:  WELL, WE RELIED ON THE CALIFORNIA

24   CIVIL CODE AND THE CACI NO. 3900 AS WELL AS BAJI 12.57 --

25            THE COURT:  OKAY.
```

1         **MR. TANGRI:**  AND -- AND -- AND JUST SO IT'S -- WE'VE

2    GIVEN YOU THE CASES, THE CIVIL CODE SECTION THAT THOSE CASES

3    DISCUSS IN THIS FACTUAL SETTING, PRECISELY THIS 3343, AND THE

4    CACI INSTRUCTION -- THE CACI INSTRUCTION'S 1923.  SO IT'S

5    CIVIL CODE 3343.

6         **THE COURT:**  BUT AS I READ THIS ONCE MORE, THE --

7    IF -- IF YOU ARE SUCCESSFUL IN THE JURY FINDING THAT THERE WAS

8    FRAUD -- FRAUDULENT CONDUCT, CONTRACT WAS INDUCED BY -- BY

9    FRAUD, THEN WOULD THE CONTRACT ITSELF HAVE ANY IMPACT UPON THE

10   DAMAGES AT ALL?  DO YOU RELY UPON THE CONTRACT ALSO --

11        **MS. ALBAN:**  NO, YOUR HONOR -- SORRY.

12        **THE COURT:**  -- IN ANY WAY?

13        **MS. ALBAN:**  WHEN YOU GAVE THE PRELIMINARY

14   INSTRUCTIONS TO THE JURY, I BELIEVE YOU STATED THAT OUR -- WE

15   HAVE A CAUSE OF ACTION FOR FRAUD OR A BREACH OF CONTRACT.  I

16   BELIEVE IT WAS "OR."

17        **THE COURT:**  I KNOW, BUT I'M SAYING HOW -- BUT THESE

18   ARE DAMAGES, NOW, WE'RE TALKING ABOUT.

19        **MS. ALBAN:**  RIGHT.

20        **THE COURT:**  AND WE'RE SAYING HOW DO WE DO THIS.

21   IS -- I THINK YOU CAN'T BE IN A SITUATION WHERE YOU CAN, IN

22   EFFECT, USE THE CONTRACT AFTER WE HAVE FRAUDULENTLY INDUCED IT

23   AND THAT'S THE THRUST OF THE FRAUD IS "THAT I WOULD NOT HAVE

24   ENTERED THE CONTRACT."

25        **MR. JANSEN:**  THAT IS THE THRUST OF THE FRAUD THEORY,

1    YOUR HONOR.  IT IS DEFINITELY.  THERE'S NO QUESTION.

2              **THE COURT:**  IF THEY'RE SUCCESSFUL IN THAT, THERE'S NO

3    CONTRACT.  I MEAN, THEN -- UNDER THE FRAUD.  AND THEN YOU SAY --

4              **MR. JANSEN:**  WELL, I DON'T THINK RESCISSION OF

5    CONTRACT IS NECESSARILY -- IS NOT THE ISSUE.

6              **THE COURT:**  OKAY.

7              **MR. JANSEN:**  THE ISSUE, THERE WAS A FRAUD AND AS A

8    RESULT OF THAT FRAUD, MR. VERDIELL BENEFITED AND MR. SHUM WAS

9    DEPRIVED OF -- OF -- OF A SITUATION HE WOULD HAVE BEEN IN, WHICH

10   WAS THE ABILITY TO -- TO -- TO SHARE IN THE PROFITS OF -- OF THE

11   EXPLOITATION OF THAT -- OF THAT -- OF THOSE INTELLECTUAL

12   PROPERTY RIGHTS.

13             **MR. TANGRI:**  THAT'S BACK TO IF THERE IS NO CONTRACT.

14             **MS. ALBAN:**  THERE'S PLENTY OF AUTHORITY TO SUGGEST

15   THAT YOU CAN AFFIRM A CONTRACT INDUCED BY FRAUD AND STILL SUE

16   FOR DAMAGES, LIKE THE PEARSON CASE.

17             **MR. TANGRI:**  AND THE DAMAGES YOU CAN SUE FOR ARE YOUR

18   OUT-OF-POCKET DAMAGES AT THE TIME OF THE TRANSACTION, NOT FUTURE

19   PROFITS BASED ON THE PROPERTY THAT WAS TRANSFERRED BY THE

20   CONTRACT WHICH IS REMAINING IN PLACE.

21             **MR. JANSEN:**  I HAVEN'T LOOKED AT THE CASES MR. TANGRI

22   CITED.  HE JUST CITED THEM.  THEY WEREN'T IN THE BRIEFS THAT HE

23   FILED, I DON'T BELIEVE, THIS WEEKEND.

24             **THE COURT:**  ALL RIGHT.  THE ESSENTIAL THING IS

25   WHETHER THERE SHOULD BE AN INSTRUCTION THAT'S, IN EFFECT,

1    CONSEQUENTIAL DAMAGES AND SAY, THIS IS -- WE CAN GET DAMAGES

2    BASED UPON WHAT HAS HAPPENED, OR IT GOES BACK TO OUT OF POCKET.

3    THAT'S THE DISTINCTION, RIGHT?

4              **MR. JANSEN:**  AND WE BELIEVE THE APPROPRIATE

5    INSTRUCTION IS A PROXIMATE CAUSE INSTRUCTION UNDER 33 -- 3300

6    (SIC).

7              **THE COURT:**  3900?

8              **MR. JANSEN:**  33 --

9              **MS. ALBAN:**  OR 3900, CACI 3900.

10             **MR. JANSEN:**  AND CIVIL CODE 3333, YOUR HONOR.

11             **MR. TANGRI:**  AND I THINK WE SAID WE'RE RELYING ON

12   THOSE CASES ON CIVIL CODE 3343 WHICH THOSE CASES SAY IS THE

13   PROPER MEASURE IN THIS CONTEXT.

14             **THE COURT:**  OKAY.

15             **MR. TANGRI:**  AND 1923 CACI.

16             **THE COURT:**  OKAY.  I'M GOING TO KEEP A LIST OF THESE

17   THINGS.  OKAY.  NOW LET'S KEEP GOING.

18             **MR. TANGRI:**  AND THE FINAL PIECE I WOULD CITE IS THE

19   PERSSON CASE, P-E-R-S-S-O-N, WHICH YOUR HONOR IS -- PERSSON V.

20   SMART INVENTION, WHICH YOUR HONOR IS --

21             **THE COURT:**  WE'VE GONE THROUGH THAT ONCE BEFORE.

22             **MR. TANGRI:**  WE HAVE.  WE HAVE INDEED.

23             SO YOUR HONOR'S FAMILIAR WITH THAT ONE, I KNOW.

24             AND THEN THE NEXT THING THAT WE WOULD PROPOSE TO ADD,

25   AND THIS WOULD BE AT THE -- AT THE END OF WHAT YOUR HONOR HAS

3665

1   CURRENTLY UNDER -- UNDER FRAUD OR INTENTIONAL MISREPRESENTATION

2   AND BEFORE THE BREACH OF CONTRACT, WOULD BE OUR PROPOSED

3   INSTRUCTIONS 22 AND 21.  22 GOES TO THE CONCEPT OF AGENCY

4   VERDIELL FOR LIGHTLOGIC, AND 21 IS THE IN PARI DELICTO

5   INSTRUCTION.

6          **MS. ALBAN:**  WELL, AS WE STATED, WE -- IF AN AGENCY

7   INSTRUCTION IS NECESSARY, WE PROPOSE OUR PROPOSED JURY

8   INSTRUCTIONS 11 AND 12 WHICH ARE -- I'M SORRY.  IF SUCCESSOR

9   LIABILITY -- OR VICARIOUS LIABILITY, SO THAT WOULD BE 8, 9, AND

10  10.

11         **THE COURT:**  BUT THIS IS ALL ANOTHER INSTRUCTION, AN

12  ADDITIONAL INSTRUCTION TO MY INSTRUCTION --

13         **MR. TANGRI:**  THAT IS CORRECT, YOUR HONOR.

14         **THE COURT:**  -- AND THE INSTRUCTION ON THE LIABILITY

15  OF THE CORPORATION FOR THE ACTS OF AN EMPLOYEE.

16         **MR. TANGRI:**  OR WHEN THE ACTS OF AN EMPLOYEE CAN BE

17  VICARIOUSLY IMPUTED TO THE CORPORATION; THAT'S CORRECT.

18         **THE COURT:**  AND THE DIFFERENCE IS THAT YOU WOULD

19  LIMIT IT TO -- IT'S AN AGENCY?

20         **MR. TANGRI:**  THAT'S CORRECT, YOUR HONOR.

21         **THE COURT:**  AND YOU WOULD NOT INCLUDE THE SITUATION

22  WHERE THE -- THERE'S A RESPONDEAT SUPERIOR LIABILITY BASED UPON

23  ACTING IN THE SCOPE OF EMPLOYMENT?

24         **MR. TANGRI:**  YEAH.  GIVEN THAT THE ACTS IN QUESTION,

25  YOUR HONOR, WERE -- THE ACTS THAT ARE BEING DEBATED WERE TAKEN

```
1   ARGUABLY -- TO BEGIN WITH, THEY WERE TAKEN ARGUABLY BEFORE

2   LIGHTLOGIC EVER EXISTED OR THEY WERE TAKEN VERY SHORTLY AFTER

3   ITS INCORPORATION.  THERE'S BEEN, I THINK, NO TESTIMONY ABOUT

4   MR. -- DR. VERDIELL'S ROLE AT THAT TIME FOR LIGHTLOGIC.  THERE'S

5   BEEN TESTIMONY THAT LIGHTLOGIC IS INTENDED BY HIM TO BE A

6   DIFFERENT ENTITY AT THAT POINT IN TIME.

7            WE THINK THAT THE AGENCY -- THE MORE SPECIFIC INQUIRY

8   OF AGENCY IS MORE APPROPRIATE THAN WHAT'S ESSENTIALLY AN

9   ASSUMPTION THAT HE --

10           THE COURT:  WELL, IN A WAY, THEY'RE THE SAME THING.

11  I MEAN, IF LIGHTLOGIC EXISTED, I MEAN, AT THE TIME OF THE

12  ALLEGED ACTS, THE QUESTION IS WHETHER IT EXISTED IN SUCH A WAY

13  THAT THERE WAS AN EMPLOYMENT KIND OF RELATIONSHIP BETWEEN THE

14  EMPLOYER AND EMPLOYEE THAT WOULD INCLUDE THIS IN THE SCOPE.

15           MR. TANGRI:  AND WHETHER -- OR WHETHER THESE --

16  WHATEVER ACTS MR. -- DR. VERDIELL IS ALLEGED TO HAVE TAKEN WERE

17  TAKEN AT THAT TIME ON BEHALF OF LIGHTLOGIC OR FOR LIGHTLOGIC'S

18  BENEFIT OR SIMPLY ON HIS OWN -- SO --

19           MS. ALBAN:  I DON'T SEE A HUGE DIFFERENCE BETWEEN THE

20  VICARIOUS LIABILITY AGENCY PRINCIPLES IN THIS CONTEXT EXCEPT

21  THAT IF WE'RE -- IF THE FRAUD GOES TO LIGHTLOGIC AT ALL, THEN

22  THERE HAS TO BE SOME SORT OF IMPUTED INTENT OR KNOWLEDGE.  AND

23  SO THAT --

24                (SIMULTANEOUS COLLOQUY.)

25           THE COURT:  WHICH IS SORT OF THE AGENCY.
```

```
 1              MS. ALBAN:  -- OR VICARIOUS LIABILITY.

 2              THE COURT:  -- IT IN EFFECT DEALS WITH THE SAME KIND

 3    OF SUBJECT, WHAT'S THE RELATIONSHIP OF THE EMPLOYER AND THE

 4    EMPLOYEE.

 5              WELL, I THINK THAT THERE OUGHT TO BE SORT OF A -- IN

 6    BOTH OF THEM.  I MEAN, THEY'RE BOTH THE SAME THING, IF YOU

 7    ESTABLISH AGENCY, YOU ALSO ESTABLISH THE SCOPE.  BUT I THINK YOU

 8    HAVE TO SAY IT IN BOTH.  SO I THINK WE'LL PUT IT IN AS YOU

 9    DEFINE THE AGENT, BUT IT HAS TO BE IN THE SCOPE OF EMPLOYMENT

10    ALSO.

11              MR. TANGRI:  THAT'S FINE, YOUR HONOR.

12              THE ONE SPECIFIC COMMENT I WOULD HAVE, JUST LOOKING

13    AT THEIR PROPOSED ALTERNATIVE INSTRUCTION 9, WHICH WAS SOMETHING

14    THEY SUBMITTED LAST NIGHT, IT HAS INTEL IN IT, AND THAT SHOULD

15    COME OUT.

16              THE COURT:  WELL, THAT SHOULD COME OUT --

17                    (SIMULTANEOUS COLLOQUY.)

18              THE COURT:  I DON'T THINK -- THE ONLY THING IT SHOULD

19    BE IS THAT IT -- WE'LL JUST SAY THAT YOU USE YOUR INSTRUCTION

20    THAT SAYS IT HAS TO BE AN AGENT, BUT THAT MEANS THAT IT HAS TO

21    BE WORKING FOR THE CORPORATION, AND THAT --

22              MR. TANGRI:  AND I DON'T KNOW IF THEY'RE STILL

23    PROPOSING 10 IN THIS CONTEXT OR ANY OTHER CONTEXT, BUT 10 HAS

24    INTEL IN IT AS WELL, AND THAT SHOULD COME OUT OF THEIR 10.

25              MS. ALBAN:  THAT'S CORRECT.  INTEL SHOULD COME OUT.
```

```
 1              THE COURT:  OKAY.  SO THEIR 10 IS NOT A LOT DIFFERENT

 2   THAN YOURS.

 3              MS. ALBAN:  SO JUST TO CLARIFY, THE AGENCY STILL

 4   ENCOMPASSES, IN YOUR VIEW, THE IMPUTED INTENT AND IMPUTED

 5   KNOWLEDGE, THE CORPORATION JUST AS VICARIOUS LIABILITY WITH; IS

 6   THAT CORRECT?

 7              THE COURT:  LEAVE THOSE IN, YOU MEAN?

 8              MS. ALBAN:  WELL, MY UNDERSTANDING IS THAT YOU'RE

 9   GOING TO DEFINE "AGENCY" --

10              THE COURT:  NOW I GOT TO FIND IT AGAIN.

11                   (PAUSE IN THE PROCEEDINGS.)

12              THE COURT:  WHY DON'T WE SAY, "HE WAS ACTING WITHIN

13   THE SCOPE OF HIS EMPLOYMENT AS AN AGENT OF LIGHTLOGIC."

14              MS. ALBAN:  I'M JUST ASKING --

15              THE COURT:  PUT THEM BOTH IN.

16              MS. ALBAN:  I'M JUST CLARIFYING THAT THAT INCLUDES

17   INTENT IMPUTED TO THE CORPORATION AS WELL AS KNOWLEDGE.

18              MR. TANGRI:  SHE'S ASKING YOUR HONOR WHETHER YOU'RE

19   GOING TO GIVE THEIR INSTRUCTION 10 AS WELL AS THEIR

20   INSTRUCTION 9.

21                   IS THAT --

22              THE COURT:  LET ME SEE IF I GOT --

23                   (PAUSE IN THE PROCEEDINGS.)

24              THE COURT:  WE CAN SIMPLY ADD IT, IS THAT IN TERMS OF

25   USE, THE INSTRUCTION THAT YOU HAVE ON YOUR INSTRUCTION 22 AND --
```

3669

```
 1                    (PAUSE IN THE PROCEEDINGS.)

 2            THE COURT:  SO WE'LL SAY, "LIGHTLOGIC IS RESPONSIBLE

 3   AND CAN HAVE THE INTENT TO COMMIT A TORT UNDER THE CIRCUMSTANCES

 4   THAT ARE DEFINED."

 5            MR. JANSEN:  WHICH ONE ARE WE LOOKING AT NOW, YOUR

 6   HONOR?

 7            MS. ALBAN:  IT'S 10.

 8            THE COURT:  WE AMENDED THEIR 22 BY PUTTING IN YOUR

 9   NO. 10 ON THE INTENT TO COMMIT --

10            MS. ALBAN:  GREAT.  GREAT.

11            MR. JANSEN:  I THINK ONE OTHER THING WE MAY NEED TO

12   DEAL WITH, GIVEN THE STATEMENT YOU ASKED US TO PROVIDE REGARDING

13   THE MISREPRESENTATION THAT WE'RE ALLEGING, BOTH MADE BY VERDIELL

14   AND BY ALBOSZTA, I THINK YOU HAD, YOUR HONOR, HAD GIVEN A

15   PREINSTRUCTION TO THE JURY THAT IT WOULD BE NECESSARY TO FIND

16   THAT ALBOSZTA WAS MAKING STATEMENTS AS AN AGENT OF VERDIELL, AND

17   SOMETHING ALONG THOSE LINES MIGHT BE INCORPORATED.

18            THE COURT:  OH, NO, THAT'S NOT CORPORATE LIABILITY,

19   THAT'S A SEPARATE THING.  THIS IS THE CORPORATE LIABILITY OF

20   LIGHTLOGIC, EITHER THAT BECAUSE MR. VERDIELL WAS AN AGENT OR

21   ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT THAT -- BUT THAT

22   DOESN'T HAVE ANYTHING TO DO WITH MR. ALBOSZTA.

23            MR. JANSEN:  NO, IT WOULDN'T.  IT WOULD BE THAT

24   VERDIELL COULD BE LIABLE FOR STATEMENTS MADE --

25   MISREPRESENTATIONS MADE BY ALBOSZTA.
```

```
 1            MS. ALBAN:  I BELIEVE HE'S GOING BACK, YOUR HONOR, TO

 2   INTENTIONAL MISREPRESENTATION.

 3            THE COURT:  WHERE IS IT?

 4            MR. JANSEN:  LET'S SEE IF WE GO BACK TO YOUR -- YOUR

 5   HONOR, YOUR INSTRUCTION AT PAGE --

 6            MS. ALBAN:  ELEVEN.

 7            MR. JANSEN:  ELEVEN UNDER "FRAUD INSTRUCTION."

 8            THE COURT:  OKAY.

 9            MR. JANSEN:  THE VERY FIRST SENTENCE -- THE SECOND

10   SENTENCE READS, "IN ORDER TO PROVE THAT DEFENDANT VERDIELL AND

11   LIGHTLOGIC ENGAGED IN FRAUD."  I THINK THAT SHOULD BE "DEFENDANT

12   VERDIELL OR LIGHTLOGIC," THAT IS, VERDIELL COULD BE LIABLE

13   INDEPENDENTLY FOR FRAUD --

14            THE COURT:  YEAH.  OKAY.

15            MR. JANSEN:  SO THAT SHOULD BE "OR."

16            MR. TANGRI:  I'M SORRY, YOUR HONOR, I APOLOGIZE.  I

17   DIDN'T FOLLOW THAT.

18            MR. JANSEN:  ON PAGE --

19            MR. TANGRI:  WE'RE BACK ON -- WE'RE BACK ON MISREP.

20            THE COURT:  NINETEEN OR 22?

21            MR. JANSEN:  PAGE 11 OF YOUR -- OF THE JUDGE'S

22   INSTRUCTIONS.

23            THE COURT:  WE CHANGED THAT TO 19.

24            MR. TANGRI:  NINETEEN.  I'M WITH YOU NOW.

25            MR. JANSEN:  OKAY.
```

3671

```
 1              MR. TANGRI:  AND YOU'RE SAYING IT SHOULD BE --

 2              MR. JANSEN:  IF WE GO TO 19, THEN, THEIR 19, YOUR

 3  HONOR, WE CLARIFIED AT YOUR REQUEST WHAT THE --

 4              THE COURT:  YES.

 5              MR. JANSEN:  -- FALSE REPRESENTATION WAS.

 6                      (SIMULTANEOUS COLLOQUY.)

 7              THE COURT:  YES.

 8              MR. JANSEN:  AND THE FALSE REPRESENTATIONS WERE, AS

 9  WE POINTED OUT, WERE MADE BOTH BY VERDIELL AND BY ALBOSZTA.

10              THE COURT:  AND SO YOU'RE SAYING WE PUT IN "OR BY

11  ALBOSZTA IF HE ACTED IN -- ACTED AS AN AGENT OF."

12              MR. JANSEN:  "ON BEHALF OF VERDIELL."

13              MR. TANGRI:  ONE CONCERN, YOUR HONOR, IS THE LACK OF

14  TESTIMONY FROM ALBOSZTA WHO WAS ON PLAINTIFF'S WITNESS LIST AND

15  WASN'T CALLED.

16              MR. JANSEN:  WELL, WE HAVE TESTIMONY.  MR. --

17              THE COURT:  THIS IS NOT DEALING WITH TESTIMONY.  THIS

18  IS JUST SAYING WHAT THE ALLEGATIONS ARE.

19              MR. JANSEN:  RIGHT.

20              THE COURT:  BUT THERE'S ACTUALLY TWO REPRESENTATIONS

21  IS THAT THE STATEMENT BY EITHER -- BY MR. VERDIELL OR THE

22  STATEMENT BY MAREK ALBOSZTA.

23              MR. JANSEN:  SO --

24              THE COURT:  -- ACTING AS -- ON BEHALF OF.

25              MR. JANSEN:  YES.
```

3672

```
 1              MR. TANGRI:  YOUR HONOR, WE HAD PROPOSED, I BELIEVE,

 2    BEFORE THE TRIAL BEGAN, AN INSTRUCTION ON AGENCY FOR ALBOSZTA.

 3    WE HAVE NOT -- WE HAD NOT REPROPOSED IT DUE TO THE LACK OF

 4    ANY --

 5              THE COURT:  EVIDENCE.

 6              MR. TANGRI:  -- EVIDENCE.  CORRECT.

 7              AND SO I GUESS WE WOULD -- WE WOULD OBJECT TO THIS

 8    GOING TO THE JURY ON THIS ALBOSZTA THEORY WITHOUT ANY COMPETENT

 9    EVIDENCE OF ALBOSZTA.  HE WAS ON THE WITNESS LIST.  THEY -- THEY

10    MADE A DECISION NOT TO BRING HIM.

11              MS. ALBAN:  YOUR HONOR, I DON'T --

12              MR. TANGRI:  AND -- AND SO -- SO I -- SO -- THEN I

13    GUESS THAT'S THE FIRST POINT, IS I'M NOT QUITE SURE HOW WE GET

14    UP --

15              MR. JANSEN:  WELL, YOUR HONOR, TO ADDRESS THAT, WE

16    DIDN'T HAVE -- MR. ALBOSZTA DIDN'T NEED TO BE HERE TO PROVE THAT

17    HE MADE A STATEMENT TO MR. SHUM.  MR. SHUM TESTIFIED.

18              THE COURT:  WELL, MR. SHUM TESTIFIED.

19              MR. JANSEN:  OKAY.  AND THERE'S EVIDENCE IN THE

20    RECORD THAT WOULD ALLOW THE JURY TO INFER THAT MR. ALBOSZTA WAS

21    IN FACT MR. VERDIELL'S AGENT AT THE TIME.  HE WAS -- HE WAS

22    SIMULTANEOUSLY -- AT THE SAME TIME HE ABANDONED THE

23    APPLICATION --

24              THE COURT:  WE'RE NOT REALLY -- AS I SAY, BY AMENDING

25    19 TO PUT IN THE SPECIFIC ALLEGATIONS OF MISREPRESENTATION, WE
```

```
1    HAD ONE THAT IS AN ALLEGATION THAT SOMETHING WAS SAID BY

2    DR. VERDIELL.  AND THE OTHER IS THAT SOMETHING WAS SAID BY

3    MR. ALBOSZTA ACTING ON BEHALF.  AND WHETHER OR NOT THERE'S PROOF

4    OF THAT IS ANOTHER ISSUE.  WE'RE JUST SAYING THAT'S WHAT THE

5    ALLEGATIONS.

6              MR. TANGRI:  I GUESS IF -- YOUR HONOR, I THINK IT

7    WOULD BE -- I DON'T KNOW THAT WE NEED TO STICK ALBOSZTA INTO THE

8    INSTRUCTIONS.  IF THEY WANT TO ARGUE THAT SHUM TESTIFIED THAT

9    ALBOSZTA SAID THIS AND THAT HE WAS ACTING FOR VERDIELL, THEY CAN

10   ARGUE IT.  I DON'T THINK THAT WE NEED TO CALL HIM OUT IN THE

11   INSTRUCTIONS.  IT WAS THE SUBSTANCE OF A MISREPRESENTATION THAT

12   WE WERE TRYING TO GET AT.

13             THE COURT:  ALL RIGHT.  WELL, THE SUBSTANCE IS --

14                  (SIMULTANEOUS COLLOQUY.)

15             THE COURT:  -- DIRECTED BY VERDIELL.  THAT'S THE

16   ALLEGATION.

17             MS. ALBAN:  SO WE'RE JUST SEEKING A BRIEF ADDITION TO

18   THEIR 1900, WHICH IS BASED ON CACI 1906, WHICH I FORGET THE

19   EXACT TITLE, BUT IT'S SOMETHING LIKE FRAUD TO PERSONS --

20   MISREPRESENTATIONS TO PERSONS OTHER THAN THE PLAINTIFF.

21             AND YOU WOULD SAY SOMETHING TO THE EFFECT OF

22   "VERDIELL IS RESPONSIBLE FOR A REPRESENTATION THAT WAS NOT MADE

23   DIRECTLY TO SHUM IF HE MADE THE REPRESENTATION TO A THIRD

24   PARTY," HERE ALBOSZTA, "INTENDING OR REASONABLY EXPECTING THAT

25   IT WOULD BE REPEATED TO SHUM."
```

1          **MR. TANGRI:**  IS THAT OUT OF CACI 1906?

2          **MS. ALBAN:**  SIX.

3          **MR. TANGRI:**  THAT'S -- THAT'S OKAY.

4          **THE COURT:**  WE'LL PUT THAT IN AS -- ON -- THAT IS --

5     FILLS IN THE BLANKS ON 19.

6          **MR. TANGRI:**  AND THEN -- WELL, AND THE OTHER BLANK --

7     AND THIS IS WHAT WE HAD PROPOSED.  WE HAD PROPOSED BEFORE TRIAL,

8     AND AS I SAID, IN LIGHT OF THE EVIDENCE, WE DIDN'T THINK IT WAS

9     APPROPRIATE ANY LONGER, BUT IF WE'RE GOING DOWN THIS ROAD, OUR

10    PROPOSED INSTRUCTION NO. 44 -- AND THIS IS FROM OUR FIRST --

11    THIS IS FROM THE SET WE FILED ON OCTOBER 10TH AS PART OF THE

12    PRETRIAL FILINGS, WHICH IS EVIDENCE OF AN AGENCY RELATIONSHIP

13    BETWEEN ALBOSZTA AND VERDIELL, WHICH SOUNDS LIKE THAT'S -- I

14    MEAN, THEIR THEORY -- THE EVIDENCE, WE SUBMIT, WOULD SHOW THAT

15    ALBOSZTA WAS, DURING THIS TIME, ACTING AS THE AGENTS -- AGENT

16    FOR RADIANCE, THE COMPANY.  AND HE DID WHAT HE DID ON BEHALF OF

17    RADIANCE, THE COMPANY.

18          IF THEY'RE TRYING TO MAKE HIM VERDIELL'S AGENT, WE

19    THINK THERE OUGHT TO BE AN AGENCY INSTRUCTION THAT TIES THE TWO

20    MEN TOGETHER MORE THAN JUST THE NOTION THAT -- THE NOTION OF

21    THIRD-PARTY STATEMENTS.

22          **MS. ALBAN:**  WE DON'T BELIEVE THAT THE AGENCY

23    INSTRUCTION IS NECESSARY, BUT WE WOULD NOT OPPOSE ADDING AGENCY

24    IN THE INSTRUCTION.

25          **MR. TANGRI:**  AND WE HAVE IT.

3675

```
1              THE COURT:  SO THE QUESTION IS HOW DO WE ADAPT YOUR

2    PROPOSAL NO. 44 AND CACI 1906?

3              MR. TANGRI:  RIGHT.  AND OUR 44 IS BASED, YOUR HONOR,

4    ON CACI 3705 AND 3709 BASED ON IT HAS SOME MODIFICATIONS.

5              THE COURT:  OKAY.

6              MR. TANGRI:  AND I CAN HAND UP MY COPY OF IT

7    UNMARKED.

8              THE COURT:  WELL, I'M NOT GOING TO DO THAT.  I'VE GOT

9    IT ALREADY.

10             MR. JANSEN:  YOUR HONOR, AND I JUST BELIEVE THAT

11   THEIR PROPOSED INSTRUCTION 44 FROM THEIR PREVIOUS SUBMITTAL

12   REALLY GOES BEYOND THE PALE IN TERMS OF WHAT'S REQUIRED OF

13   MR. SHUM TO PROVE.  THEY SEEM TO THINK THAT MR. SHUM HAS GOT TO

14   PROVE SOME KIND OF OSTENSIBLE AGENCY THEORY, THAT IS THAT

15   MR. SHUM BELIEVED THAT MR. ALBOSZTA WAS MR. VERDIELL'S AGENT.

16             I DON'T THINK THAT'S THE CASE.  THE QUESTION IS

17   REALLY JUST WHETHER OR NOT MR. ALBOSZTA WAS IN FACT REPEATING A

18   STATEMENT THAT MR. VERDIELL SAID TO MR. ALBOSZTA WITH THE

19   EXPECTATION MR. ALBOSZTA WOULD REPEAT IT OR THAT HE WAS --

20             THE COURT:  THAT'S WHAT THE EXPECTATION MEANS, THAT

21   THERE'S SOME STATE OF MIND THAT THIS STATEMENT IS GOING TO BE

22   CARRIED THROUGH AND DELIVERED ON MY BEHALF TO A THIRD PARTY.

23             MR. JANSEN:  OR THAT -- OR THAT -- OR THAT

24   MR. ALBOSZTA WAS IN FACT AT THE TIME MR. VERDIELL'S AGENT.

25   MR. SHUM'S UNDERSTANDING AS TO WHETHER OR NOT ALBOSZTA WAS OR
```

```
 1   WASN'T MR. VERDIELL'S AGENT IS NOT THE ISSUE.

 2             THE COURT:  WELL, IT'S AN ISSUE IN TERMS OF WHETHER

 3   THERE'S ANY RELATIONSHIP BETWEEN WHAT IS SAID BY MR. VERDIELL TO

 4   MR. ALBOSZTA AS TO WHETHER OR NOT THAT IS HIS ACT THAT IS BEING

 5   CARRIED ON TO MR. SHUM.

 6             MR. JANSEN:  THAT'S TRUE.

 7             THE COURT:  THERE'S GOT TO BE SOME KIND OF CAUSATION

 8   THAT GOES ALONG WITH THIS.  BUT THIS -- SO WE NEED TO DRAFT

 9   SOMETHING THAT FITS IN TO 19 FILLS THE BLANK IN, BUT WE'LL DO

10   THAT, OKAY.

11             MR. JANSEN:  VERY GOOD, THANKS.

12             THE COURT:  ALL RIGHT.

13             MR. TANGRI:  AND THEN THE NEXT -- SO NOW WE'RE BACK,

14   I THINK, TO THE -- THE END OF THE INTENTIONAL MISREP SECTION.

15   WE'VE BEEN AT AGENCY.

16             THE COURT:  RIGHT.

17             MR. TANGRI:  WE'VE BEEN OVER AGENCY.  AND WE PROPOSE

18   ADDING AT THAT POINT AS WELL AS OUR PROPOSED INSTRUCTION 21 FROM

19   FRIDAY AFTERNOON, WHICH IS THE IN PARI DELICTO INSTRUCTION.

20             MS. ALBAN:  WE OBJECT.  WE JUST DON'T SEE HOW THIS

21   APPLIES TO THE FACTS OF THIS CASE.

22             MR. TANGRI:  AND THE OFFER, YOUR HONOR, IS THAT IT

23   APPLIES BECAUSE THE GIST OF THE THEORY AS TO WHY THE APPLICATION

24   WAS WITHDRAWN AND NEEDED TO BE WITHDRAWN WAS THAT IT HAD BEEN

25   FILED WITH DECEPTIVE INTENT ON THE PART OF MR. SHUM KNOWING FULL
```

3677

```
1    WELL THAT IT WAS MR. VERDIELL'S INVENTIONS CONTAINED IN THERE.
2                    (SIMULTANEOUS COLLOQUY.)
3            THE COURT:  ISN'T THIS JUST -- CONTRADICTION OF FACT.
4    IS THAT WHAT WE'RE DEALING WITH?  IS THAT MR. -- MR. VERDIELL
5    SAYS THAT THIS IS WHAT HAPPENED IS WE AGREED THAT WE WOULD USE
6    YOUR NAME ONLY.  AND MR. SHUM SAYS, NO, THAT DIDN'T HAPPEN AT
7    ALL.  ALL RIGHT.
8            AND SO THERE'S -- THERE'S A CONTRADICTION OF FACT
9    THAT THE FACT FINDER'S GOING TO HAVE TO RESOLVE, BUT THAT TAKES
10   CARE OF YOUR DEFENSE SO THAT EITHER THE FACT HAPPENED ONE WAY OR
11   THE OTHER.
12           MR. TANGRI:  WELL, BUT IF -- IF THE FACTS ARE AS WE
13   HAVE SUBMITTED THEM TO BE, AND WE BELIEVE THERE'S A LOT OF
14   EVIDENCE TO SUPPORT THAT, THEN IN ADDITION TO NEGATING THE
15   FRAUD, IT ALSO DOES MAKE OUT THIS DEFENSE.  WE THINK IT'S
16   IMPORTANT THE JURY UNDERSTAND THAT IF MR. SHUM IS COMPLICIT IN
17   THIS ACTION, IT IS -- IT IS AN ABSOLUTE DEFENSE.  AND IT'S NOT
18   SOMETHING THAT THEY CAN WEIGH IN SOME SORT OF -- FASHION.
19           THE COURT:  WELL, THEY HAVE TO MAKE A FACTUAL
20   DECISION TO SAY COMPLICIT OR NOT.
21           MR. TANGRI:  RIGHT.  BUT IF THEY MAKE --
22           THE COURT:  IF THEY MAKE THE FACTUAL -- IF THEY SAY
23   COMPLICIT, THEN THEY ALSO SAY NO FRAUD.
24           MR. TANGRI:  AND IF -- PERHAPS THEY SAY NO FRAUD.  I
25   WOULD HOPE THEY SAY NO FRAUD.  BUT WE ALSO THINK IT'S IMPORTANT
```

1    THAT --

2              THE COURT:  I DON'T THINK IT MAKES ANY DIFFERENCE.

3              MR. TANGRI:  VERY WELL, YOUR HONOR.

4              THE COURT:  I DON'T THINK WE'RE GOING TO PUT THAT

5    INTO THE INSTRUCTION.

6              MR. TANGRI:  AND WITH THAT, THAT WOULD CONCLUDE OUR

7    PROPOSED EITHER MODIFICATIONS OR ADDITIONS TO THE INTENTIONAL

8    MISREP INSTRUCTIONS, AND WE COME TO BREACH OF CONTRACT.

9              THE COURT:  ALL RIGHT.

10             MR. TANGRI:  AND OUR FIRST COMMENT ON BREACH OF

11   CONTRACT IS THAT WE WOULD REQUEST THAT THE COURT ADD ON PAGE 13,

12   IMMEDIATELY IN BETWEEN THE LAST TWO PARAGRAPHS OF THAT PAGE, OUR

13   PROPOSED INSTRUCTION NO. 8 FROM -- FROM FRIDAY, WHICH STATES

14   THAT THE PLAN OF LIQUIDATION IS A VALID CONTRACT AND BOTH SHUM

15   AND VERDIELL ARE BOUND BY ITS TERMS.  THIS IS ESSENTIALLY THE

16   NO-RESCISSION POINT, YOUR HONOR.

17             MS. ALBAN:  WE THINK THAT THAT -- THEIR PROPOSED

18   INSTRUCTION NO. 8 IS UNDULY ARGUMENTATIVE AND ALSO UNNECESSARY

19   CONSIDERING THAT YOUR HONOR, IN YOUR PROPOSED INSTRUCTION, YOU

20   TELL THEM WHAT YOUR INTERPRETATION OF THE CONTRACT IS.

21             AND IF YOU'RE INCLINED, YOUR HONOR, TO ADD ANOTHER

22   INSTRUCTION ON VALIDITY OF THE PLAN OF LIQUIDATION, WE WOULD --

23   WE WOULD BE MORE AMENABLE TO DEFENDANTS' PROPOSED INSTRUCTION

24   NO. 37 WHICH THEY HAD ORIGINALLY OFFERED.

25             (PAUSE IN THE PROCEEDINGS.)

```
 1                THE COURT:  THEIR ORIGINAL 37, IS THAT WHAT YOU SAID?

 2                MS. ALBAN:  YES, YOUR HONOR.

 3                MR. TANGRI:  OUR ORIGINAL 37, YOUR HONOR, READ, "I

 4    HAVE ALREADY DETERMINED THAT THE PLAN OF LIQUIDATION IS A VALID

 5    ENFORCEABLE CONTRACT BETWEEN SHUM AND VERDIELL.  YOUR TASK IS TO

 6    EVALUATE WHETHER VERDIELL'S ACTIONS CONSTITUTE A BREACH OF THE

 7    PLAN OF LIQUIDATION, NOT TO DETERMINE WHETHER A CONTRACT

 8    EXISTS."

 9                WE WOULD TAKE THAT OR 8.  WE PROPOSE -- WE'RE

10    PROPOSING 8, BUT WE THINK THE NOTION OF THE FACT THAT THE

11    CONTRACT IS VALID --

12                THE COURT:  OKAY.  WELL, I THINK WE'LL TAKE 37.

13    WE'LL USE THAT.

14                MS. ALBAN:  THANK YOU, YOUR HONOR.

15                THE COURT:  AND WHAT DO WE HAVE TO HAVE AT THE

16    BEGINNING?

17                MR. TANGRI:  WELL, YOUR HONOR, OUR SUGGESTION IS THAT

18    WE WOULD ADD IT IN -- IN BETWEEN THE TWO PARAGRAPHS AT THE

19    BOTTOM OF PAGE 13, SO AFTER THE PARAGRAPH THAT BEGINS

20    "WHENEVER."

21                THE COURT:  IT'S NECESSARY TO --

22                MR. TANGRI:  YEAH.

23                THE COURT:  RIGHT AFTER THAT.

24                     (SIMULTANEOUS COLLOQUY.)

25                THE COURT:  WHERE WE SAY FIRST, WE PUT IN 37.
```

1          **MR. TANGRI:**  YEAH.

2          **THE COURT:**  THAT'S FINE.

3          NOW, THERE -- I DON'T KNOW WHO SUGGESTED THIS, BUT

4  THERE WAS SUGGESTION THAT IN BREACH OF CONTRACT INSTRUCTIONS

5  WHEN WE START OUT WE GO ONE, TWO, THREE, AND WHEN WE GET TO

6  THREE, WE DON'T SAY THAT VERDIELL FAILED TO DO SOMETHING, RATHER

7  WE SAY THAT VERDIELL DID SOMETHING THAT THE CONTRACT PROHIBITED

8  FROM DOING.

9          **MR. TANGRI:**  THAT WAS THEIR SUGGESTION.

10         **MS. ALBAN:**  THAT WAS OUR SUGGESTION.  OR WE COULD

11  HAVE AN "OR VERDIELL FAILED TO DO SOMETHING THAT THE CONTRACT

12  REQUIRED HIM TO DO OR DID SOMETHING THAT WAS PROHIBITED BY THE

13  CONTRACT."  BECAUSE THE ALLEGATION HERE --

14         **THE COURT:**  OKAY.  WE'LL DO THAT.

15         **MR. TANGRI:**  SO WE'RE ADDING THE "OR?

16         **THE COURT:**  YEAH, WE'LL ADD THE PHRASE THAT FAILED TO

17  DO SOMETHING THAT THE CONTRACT REQUIRED HIM TO DO OR HE

18  FAILED -- OR THAT HE DID SOMETHING THAT THE CONTRACT PROHIBITED

19  FROM DOING.

20         **MS. ALBAN:**  CORRECT.

21         **MR. TANGRI:**  AND THEN -- IF THE COURT'S GOING TO DO

22  THAT, YOUR HONOR, PERHAPS WE OUGHT TO CHANGE NO. 4 TO SAY --

23         **THE COURT:**  SHUM WAS HARMED BY THAT CONDUCT.

24         **MR. TANGRI:**  CONDUCT, YEAH.

25         **THE COURT:**  OKAY.

```
 1              MR. TANGRI:  OKAY.  THEN YOUR HONOR, OUR NEXT

 2   SUGGESTED MODIFICATIONS TO THE INSTRUCTION OR ADDITIONS, REALLY,

 3   COME ON PAGE 14.

 4              MS. ALBAN:  I HAVE SOMETHING ON 13.

 5              MR. TANGRI:  OH, SORRY, GO AHEAD.

 6              MS. ALBAN:  ON 13, YOUR HONOR, YOU HAVE -- YOU

 7   MENTION A LAWFUL PATENT RELATED -- BASED SOLELY ON EITHER PARTY

 8   OBTAINING A LAWFUL PATENT, ON PAGE 13.

 9              THE COURT:  PAGE 13, LET'S SEE.

10              MS. ALBAN:  YES.  SECOND LINE FROM THE BOTTOM.

11   AND --

12              THE COURT:  YES, THAT'S RIGHT.

13              MS. ALBAN:  THIS MIGHT BE A GOOD PLACE TO CLARIFY AN

14   INSTRUCTION WHAT A LAWFUL PATENT MEANS.

15              THE COURT:  ALL RIGHT.

16              MR. TANGRI:  WHAT'S THE --

17              THE COURT:  OKAY.

18              MR. TANGRI:  IS THERE A PROPOSED CLARIFICATION?

19                   (OFF-THE-RECORD DISCUSSION.)

20              MR. JANSEN:  I THINK, YOUR HONOR, IN THE CONTEXT OF

21   THE CASE IT WOULD BE APPROPRIATE TO JUST ADD A SENTENCE, "A

22   PATENT WOULD NOT BE LAWFUL IF THERE IS A FAILURE TO NAME ALL

23   INVENTORS."

24              THE COURT:  WELL, IF THAT -- IF THERE WAS A MISTAKE

25   THAT'S NOT LAWFUL, I MEAN THIS GETS INTO THE WHOLE BUSINESS
```

```
1    ABOUT WHEN YOU CAN CORRECT AND WHEN YOU CAN'T CORRECT AND WHAT

2    IS LAWFUL AND WHAT IS NOT LAWFUL.

3              MS. ALBAN:  WELL, WHAT ABOUT UNINTENTIONAL FAILURE?

4              THE COURT:  PARDON?

5              MS. ALBAN:  UNINTENTIONAL FAILURE TO --

6              THE COURT:  THAT'S RIGHT.  BUT THAT ADDS -- SEE,

7    THAT'S DIFFERENT THAN -- IF IT DOESN'T NAME ALL THE INVENTORS

8    AND THE FAILURE TO NAME AN INVENTOR WAS A MISTAKE, THEN IT CAN

9    BE CORRECTED AND THAT'S LAWFUL.  I MEAN, IT'S A LAWFUL PATENT

10   UNLESS THERE IS SOME INTENTIONAL MISCONDUCT THAT GOES ALONG WITH

11   IT.

12             I MEAN, HERE -- HERE YOU START OUT WITH THE NOTION

13   THAT IT'S CONCEDED THAT MR. VERDIELL COULD FILE FOR THE PATENT.

14   THE QUESTION IS WHAT IS THE EFFECT OF FAILING TO ADD MR. SHUM'S

15   NAME AS A COINVENTOR?

16             AND THAT WOULD DEPEND UPON WHETHER OR NOT MR. --

17   DR. VERDIELL KNEW THAT SHUM WAS AN INVENTOR, A COINVENTOR, AND

18   DECIDED NOT TO NAME HIM, KEEP HIM OFF, BUT THAT'S AN INTENTIONAL

19   MISCONDUCT.  SO THAT'S IN EFFECT INEQUITABLE MISCONDUCT.  IF YOU

20   WERE DOING IT IN SOME CONTEXT WHERE YOU HAVE INFRINGEMENT OR

21   SOMETHING LIKE THAT, YOU COULD SAY IT'S INEQUITABLE.  IT'S

22   UNENFORCEABLE OR WHATEVER.

23             BUT HERE WE'RE TALKING ABOUT WHETHER OR NOT THE

24   PATENT SHOULD HAVE NAMED THE COINVENTOR, AND THAT INCLUDES SOME

25   SORT OF STATE OF MIND OF THE PERSON WHO FILES FOR THE PATENT.
```

```
 1              IN OTHER WORDS, WHEN -- WHEN VERDIELL FILES FOR THE
 2    PATENT, HE CAN FILE FOR THE PATENT.  AND THERE'S NOTHING WRONG
 3    WITH THAT.  BUT IF HE KNOWS THAT THERE IS A COINVENTOR THAT HE'S
 4    LEAVING OUT ON PURPOSE, THEN THAT CAN CHANGE THE -- INTO AN
 5    UNLAWFUL PATENT FOR PURPOSES OF THE CONTRACT.
 6              MR. JANSEN:  I'M NOT -- THE THING IS -- THE THING
 7    ABOUT THAT, YOUR HONOR, IS I DON'T BELIEVE THERE'S ANY TESTIMONY
 8    OR CLAIM THAT MR. VERDIELL LEFT MR. SHUM OFF THE PATENT
 9    APPLICATIONS BY MISTAKE OR INADVERTENCE.  IT WAS DONE
10    INTENTIONALLY, SO THERE'S NOT REALLY AN ISSUE --
11              THE COURT:  NO, NO.  NO, YOU CAN'T -- YOU CAN'T
12    ASSUME SOME MISCONDUCT FROM LACK OF EVIDENCE.  I MEAN, THE --
13    THE IDEA HAS TO BE THAT THE INVENTOR WHO APPLIES FOR THE PATENT
14    SHOULD HAVE NAMED SOMEONE ELSE, AND THAT DEPENDS UPON THE STATE
15    OF MIND THAT SAYS I KNOW THERE SHOULD HAVE BEEN SOMEBODY ELSE
16    AND I'VE DECIDED NOT TO DO THAT.  AND LACK OF EVIDENCE DOESN'T
17    ESTABLISH THAT.
18              MR. TANGRI:  RIGHT.  IF ANYTHING, YOUR HONOR, IT'S
19    THE OTHER WAY AROUND, THERE'S PLENTY OF EVIDENCE THAT
20    DR. VERDIELL TRIED TO REMOVE --
21              THE COURT:  THIS GETS BACK -- THIS GETS REALLY BACK
22    TO WHETHER OR NOT MR. SHUM IS A COINVENTOR.
23              WHEN YOU GET BACK, THIS IS SOMETHING THAT DEPENDS
24    UPON THIS ISSUE OF INVENTORSHIP, IS THAT IF YOU HAVE -- THE
25    PATENT AND YOU TAKE FIVE, SIX, SEVEN PATENT OR WHATEVER, AND YOU
```

 1   SAY THAT HE APPLIES, AND IF HE APPLIES AS THE INVENTOR AND ONLY

 2   PUTS HIS INVENTIVE CONCEPTIONS IN IT, THEN THERE'S NOTHING WRONG

 3   WITH THAT PATENT.  BUT IF HE APPLIES AND HE -- AND HE ADDS THE

 4   CONCEPTION INVENTIONS OR HE KNOWS THAT THERE ARE INVENTIONS BY

 5   MR. SHUM THAT HE'S LEAVING OUT, THEN HE IS CREATING AN UNLAWFUL

 6   PATENT.

 7           **MR. TANGRI:**  AND --

 8           **THE COURT:**  BUT THAT'S -- THAT'S REALLY THE QUESTION

 9   ABOUT WHETHER IT'S A LAWFUL PATENT OR NOT.  I MEAN, BECAUSE IT

10   CAN BE A LAWFUL PATENT IF ALL IT IS, IS VERDIELL APPLYING FOR A

11   PATENT BASED UPON HIS OWN CONDUCT AS AN INVENTOR, HIS OWN

12   INVENTORSHIP.  BUT IF HE LEAVES OUT INTENTIONALLY THE

13   INVENTORSHIP OF MR. SHUM, THEN THAT'S SOMETHING ELSE.

14           **MR. TANGRI:**  OR -- RIGHT.  AND I THINK INTENTIONALLY

15   IS THE KEY, YOUR HONOR.  I MEAN, WE WERE ALL JUST STANDING HERE

16   GRAPPLING WITH WHAT DO YOU DO WITH ALUMINA.  IF VERDIELL

17   HONESTLY BELIEVED THAT ALUMINA WAS PRIOR ART AND NOT INVENTIVE

18   AND HE HAD TAKEN OUT OTHER THINGS THAT HE KNEW WEREN'T HIS, THAT

19   WOULD BE INADVERTENT AND THAT WOULD BE CORRECTABLE, I WOULD

20   THINK.

21           **THE COURT:**  BUT WHAT I'M SAYING IS I THINK WHAT WE'RE

22   GETTING AT IS -- AND I DON'T KNOW WHAT YOU'RE SAYING.  ARE YOU

23   SAYING THAT IT'S -- IT'S NOT A LAWFUL PATENT IF UNDER ANY

24   CIRCUMSTANCES THAT MR. SHUM'S NAME IS NOT ADDED AS A COINVENTOR

25   EVEN THOUGH HE'S NOT A COINVENTOR.

1              **MR. JANSEN:**  NO.  IT WOULD DEPEND ON THE JURY

2    CERTAINLY FINDING THAT HE WAS IN FACT AN OMITTED COINVENTOR.  A

3    PATENT THAT DOESN'T LIST ALL THE INVENTORS IS NOT A LAWFUL

4    PATENT, IT'S NOT ENFORCEABLE WHETHER OR NOT AND IRREGARDLESS

5    (SIC) OF THE INTENT OF THE PERSON WHO CLAIMED TO BE THE SOLE

6    INVENTOR.

7              **THE COURT:**  IF THERE'S A COINVENTOR.

8              **MR. JANSEN:**  AND MR. MCFARLANE CAN SPEAK -- IF

9    THERE'S A COINVENTOR, SO --

10             **MR. TANGRI:**  NO, YOUR HONOR.  I THINK THAT WAS AN

11   INCORRECT STATEMENT.  IT IS ENFORCEABLE IF THE COINVENTOR WAS

12   OMITTED WITHOUT DECEPTIVE INTENT.  THEN THE REMEDY, AS I

13   UNDERSTAND IT, IN AN INFRINGEMENT TRIAL WHERE SOMEONE RAISES

14   THIS AS A DEFENSE IS THEY SAY, "CONGRATULATIONS, YOU'VE PROVED

15   SOME PERSON GOT LEFT OFF, YOU'VE PROVEN -- OR YOU HAVEN'T PROVEN

16   IT WAS DONE DELIBERATELY.  WE'RE GOING TO WRITE HIS NAME ON

17   THERE AND PATENT GETS ENFORCED AGAINST YOU.  THANK YOU VERY

18   MUCH."  CLEARED UP THE PUBLIC RECORDS AND AWAY WE GO.

19             **THE COURT:**  IT CAN STILL BE -- THE POINT IS THAT IT

20   CAN STILL BE ENFORCED BY WAY OF INFRINGEMENT EVEN THOUGH A

21   COINVENTOR WAS LEFT OFF AS LONG AS IT WAS WITHOUT DECEPTIVE

22   INTENT.

23             **MR. TANGRI:**  AND THAT CAN'T BE UNLAWFUL.

24             **MS. ALBAN:**  SO IN OUR DEFINITION OF LAWFUL PATENT, IF

25   WE JUST INCLUDED THE LANGUAGE, "THERE'S A DECEPTIVE FAILURE TO

```
 1   NAME ALL INVENTORS" OR INTENTIONAL FAILURE OR DECEPTIVE FAILURE

 2   TO NAME ALL INVENTORS, THAT SHOULD ADDRESS THE ISSUE.

 3              MR. TANGRI:  YOUR HONOR, WE'VE PROPOSED INSTRUCTIONS

 4   ON THIS.  WE'VE PROPOSED INSTRUCTIONS ON THIS, I BELIEVE,

 5   THAT -- THAT MAY BE ADAPTABLE TO THIS PURPOSE.

 6              AND IT'S -- IT'S -- I MEAN, WE HAVE PROPOSED

 7   INSTRUCTION NO. 1 AND PROPOSED INSTRUCTION NO. 2 THAT TALK ABOUT

 8   CONSEQUENCES OF INCORRECTLY NAMING INVENTORS ON THE APPLICATIONS

 9   TO PATENTS.

10              SO PERHAPS THIS IS THE TIME TO TAKE THAT UP.  THIS IS

11   OUR PROPOSED INSTRUCTION NO. 1 FROM -- FROM FRIDAY.

12                       (PAUSE IN THE PROCEEDINGS.)

13              MR. McFARLANE:  I THINK, YOUR HONOR, ON --

14              THE COURT:  DID YOU SEE THAT?  WELL, I'M STARTING

15   WITH SOME -- SOME TEXT.  AND THEY SAY ALL RIGHT.  WELL, THEN IF

16   WE'RE GOING TO DEFINE LAWFUL PATENT, THEN WE SHOULD USE

17   INSTRUCTIONS 1 AND 2.

18              MR. McFARLANE:  I THINK WITH NO. 1, I THINK WE FILED

19   SOME OBJECTIONS ON THAT.  THE MAIN GIST OF OUR OBJECTION WAS

20   THAT IT IMPLIES THAT AN ISSUED PATENT CAN BE WITHDRAWN, WHICH IT

21   CANNOT BE AN ISSUED PATENT THAT FAILS TO NAME ALL --

22                       (SIMULTANEOUS COLLOQUY.)

23              THE COURT:  YEAH, I THINK THAT YOU CAN'T WITHDRAW AN

24   ISSUED PATENT.  YOU COULD INVALIDATE IT, I GUESS, OR WHATEVER.

25   YOU COULD -- IT COULD BE UNENFORCEABLE OR IT COULD BE FOUND TO
```

1    BE INVALID.  BUT I DON'T THINK YOU CAN WITHDRAW.

2              **MR. TANGRI:**  PERHAPS IT SHOULD SAY THE ORIGINAL

3    APPLICATION MUST BE WITHDRAWN OR THE ISSUED PATENT MUST BE

4    CORRECTED.

5              **MR. McFARLANE:**  WELL, IT CAN'T BE CORRECTED IF THERE

6    WAS DECEPTIVE INTENT.

7              **THE COURT:**  THAT'S RIGHT.

8              **MR. TANGRI:**  BUT WE'VE GOT THAT -- OR THAT'S --

9    THAT'S IN HERE.

10             I SEE.  OKAY.  SO IN THAT CASE -- IN THAT CASE, THE

11   ORIGINAL APPLICATION MUST BE WITHDRAWN, AND WE STRIKE -- OR

12   PATENT -- OR PATENT -- WE CAN SAY THE ORIGINAL APPLICATION MUST

13   BE WITHDRAWN.  THAT'S -- THAT WOULD COVER IT.

14             **THE COURT:**  WE'LL SEE IF WE GET THE -- SO SUBJECT

15   MATTERS AGREED TO.

16             IT -- IT IS A LAWFUL PATENT IF A PERSON WHO INVENTED

17   THE INVENTION APPLIES FOR IT, AND NOW WE TALK ABOUT, WELL, WHAT

18   IF YOU FAIL TO PUT A COINVENTOR ALONG WITH IT.  THAT'S OUR

19   SITUATION HERE.  AND IF THE FAILURE TO PUT ANOTHER COINVENTOR

20   WAS THERE, WAS BASED UPON THE FACT THAT THE INVENTOR HAD THE

21   STATE OF MIND THAT, "I'M THE ONLY ONE WHO INVENTED IT, NOBODY

22   ELSE INVENTED IT," OR JUST NEGLECTED TO DO IT BY INADVERTENCE,

23   FAILED TO DO IT, BUT THERE'S NO DECEPTIVE INTENT -- LET'S PUT IT

24   THAT WAY -- SO IT'S FILED WITHOUT DECEPTIVE INTENT, THEN THAT'S

25   A VALID PATENT, BUT IT CAN BE CORRECTED BY SOMEONE WHO IS A

1   COINVENTOR WHO GOES THROUGH INVENTORSHIP, 256, THE MECHANISM FOR

2   THAT.

3           EVEN -- BECAUSE THE INVENTOR CAN'T EXCLUDE A

4   COINVENTOR BY HIS STATE OF MIND.  IT EITHER EXISTS OR IT DOESN'T

5   EXIST.  BUT IT IS A LAWFUL PATENT IF THE INVENTOR FILES IT

6   WITHOUT DECEPTIVE INTENT.

7           **MR. McFARLANE:**  YOUR HONOR, WE -- I BELIEVE THAT IT

8   WOULD BE UNDER 35 U.S.C. 102(F).  IT IS NOT A VALID PATENT AT

9   THAT POINT BECAUSE A PERSON IS NOT ENTITLED TO OBTAIN A PATENT

10  UNLESS HE OR SHE IS THE INVENTOR.

11          **THE COURT:**  BUT IF HE OR SHE DOES NOT KNOW OF ANOTHER

12  INVENTORSHIP OR HAS NO STATE OF MIND THAT THEY'RE EXCLUDING A

13  COINVENTOR, AND JUST THINKS THAT THERE IS NO REASON TO ADD

14  ANYBODY ELSE BECAUSE THERE WAS NO COINVENTOR, THAT DOESN'T MEAN

15  THAT THAT IS AN ABSOLUTE TRUTH.  IT SIMPLY MEANS THAT IS THERE

16  UNTIL SOMEBODY TAKES IT AWAY BY SHOWING THAT THEY'RE CORRECTLY

17  TO BE NAMED AS A COINVENTOR.

18          **MR. McFARLANE:**  RIGHT.  IT'S AMENABLE TO CORRECTION.

19          **THE COURT:**  RIGHT.

20          **MR. TANGRI:**  THAT'S CORRECT.

21          **THE COURT:**  AND IT'S STILL A VALID PATENT AND IT'S

22  STILL A LAWFUL PATENT AT THE TIME IT'S APPLIED FOR AND OBTAINED.

23          **MR. TANGRI:**  CORRECT.

24          **MR. McFARLANE:**  I BELIEVE WE WOULD AGREE WITH THAT.

25          **THE COURT:**  OH, THE REAL ISSUE IS IF THE -- WHEN WE

1  TALK ABOUT A LAWFUL PATENT HERE, WE MEAN IF THE PATENT WAS FILED

2  WITH A DECEPTIVE INTENT, IT WAS UNLAWFUL.  IF IT WAS FILED WITH

3  NO DECEPTIVE INTENT BY -- BY AN INVENTOR, THEN IT'S A LAWFUL

4  PATENT.

5          **MR. TANGRI:**  THAT IS THE IDEA, YOUR HONOR.

6          **THE COURT:**  OKAY.

7          **MR. TANGRI:**  AND WE THINK --

8          **THE COURT:**  ALL RIGHT.  WELL, THEN, WE JUST AMEND

9  NO. 1 TO, IN EFFECT, SAY THAT.

10          **MR. TANGRI:**  THAT'S --

11          **THE COURT:**  WE DON'T WITHDRAW ANYTHING.  WE JUST --

12  OKAY.  SO WE HAVE TO MODIFY 1.

13          NOW, 2 IS A DIFFERENT SUBJECT MATTER.  SO --

14          **MR. TANGRI:**  WE CAN TAKE UP 2 LATER ON, YOUR HONOR.

15  AS I SAY, WE WANTED TO GET THROUGH 1 THROUGH 7 AT SOME POINT,

16  BUT 1 IS MOST DIRECTLY --

17          **THE COURT:**  OKAY.  BUT THEN THE IDEA IS THAT WHEN WE

18  GET THROUGH WITH THE CONTRACT INSTRUCTIONS AND WE DO THAT ONE

19  WHICH WE CALL FIRST, BEFORE WE GET TO SECOND, WE PUT IN THIS

20  ADDED PHRASE THAT TELLS US WHAT A LAWFUL PATENT IS.

21          **MR. TANGRI:**  YES.

22          AND I JUST WOULD LIKE TO -- THAT'S -- THAT'S FINE,

23  YOUR HONOR.  WE AGREE WITH THAT.  BUT WE WANT TO FLAG FOR THE

24  COURT THAT WE THINK INSTRUCTION NO. 1 -- THAT THE SUBSTANCE OF

25  INSTRUCTION NO. 1 AS YOUR HONOR HAS JUST CLARIFIED IT IS -- IS

 1   RELEVANT ALSO TO ISSUES BEYOND THIS BREACH OF CONTRACT.  SO IT

 2   OUGHT TO BE -- WE THINK IT OUGHT TO BE AN INSTRUCTION --

 3          **THE COURT:**  WELL, THAT MAY BE, BUT THIS IS WHERE

 4   WE'RE PUTTING IT RIGHT NOW.

 5          **MR. TANGRI:**  THAT'S FINE.

 6          **MR. McFARLANE:**  AND IF I MAY, YOUR HONOR, I THINK WE

 7   WOULD AGREE WITH THAT ALTHOUGH WE WOULD LIKE TO HAVE THE

 8   LANGUAGE FROM OUR PROPOSED INSTRUCTION NO. 29 THAT WE HAVE IN

 9   OUR OBJECTIONS TO THEIR PROPOSED INSTRUCTION LISTED JUST TO

10   INCLUDE THE IDEA THAT IF THERE IS DECEPTIVE INTENT IN OMITTING

11   THE NAME OF AN INVENTOR, THEN THE ISSUED PATENT IS UNENFORCEABLE

12   AND IT CANNOT BE CORRECTED.

13          **MR. TANGRI:**  I APOLOGIZE.  I'M NOT QUITE WITH YOU

14   YET.

15          TWENTY-NINE?

16          WHERE ARE YOU?

17              (OFF THE RECORD DISCUSSION.)

18          **MR. TANGRI:**  SO THE PLACE TO FIND THIS, YOUR HONOR,

19   IS IN THE DOCUMENT THEY FILED LAST NIGHT, SHUM'S OBJECTIONS TO

20   OUR PROPOSED ADDITIONAL JURY INSTRUCTIONS AND, IN PARTICULAR,

21   ON --

22          **MR. McFARLANE:**  RIGHT.  WE INCLUDED THE TEXT IN

23   OURS --

24          **THE COURT:**  I'VE GOT 28, UP TO 28.

25          **MR. TANGRI:**  YEAH, THAT'S THE PROBLEM.  THIS IS IN

```
 1    SOMETHING ELSE.  SO WHERE IN THE DOCUMENT?

 2              MR. McFARLANE:  I'M SORRY FOR THE CONFUSION, YOUR

 3    HONOR.  IN THE DOCUMENT WE FILED LAST NIGHT, WE FILED OBJECTIONS

 4    TO THE SPECIFIC JURY INSTRUCTION THAT MR. TANGRI WAS JUST

 5    REFERRING TO.

 6              MR. TANGRI:  IT'S THEIR --

 7              MR. McFARLANE:  WITHIN OUR OBJECTIONS, WE STATED OUR

 8    OBJECTION TO THEIR PROPOSED JURY INSTRUCTIONS AND THEN

 9    INCORPORATED THE LANGUAGE THAT WE WOULD LIKE TO BE GIVEN IN

10    PLACE OF THAT.

11              THE COURT:  BUT WHAT DOES IT DO?

12              MR. TANGRI:  SO THIS IS --

13              MR. McFARLANE:  IT INCORPORATES THE LANGUAGE -- AS

14    THE DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 1 THAT WE'VE BEEN

15    DISCUSSING IS PHRASED NOW, IT INDICATES THAT A -- AN ISSUED

16    PATENT THAT MISNAMES THE INVENTORS WITH DECEPTIVE INTENT COULD

17    SIMPLY BE WITHDRAWN, AND WE HAD LANGUAGE IN OUR ALTERNATIVE

18    INSTRUCTION THAT CLARIFIED THAT IF THERE WAS DECEPTIVE INTENT ON

19    THE PART OF THE OMITTED INVENTOR -- I'M SORRY -- ON PART OF THE

20    OMITTED INVENTOR, IT CANNOT BE CORRECTED ONCE IT'S ISSUED AND IN

21    FACT A PATENT IS UNENFORCEABLE FOR INEQUITABLE CONDUCT.

22              MR. TANGRI:  THEIR NUMBER 29, YOUR HONOR, IS THE

23    PLACE TO READ IT.

24              MR. JANSEN:  IF I CAN HAND IT UP.

25              MR. TANGRI:  THAT HELPS.
```

1          **MR. JANSEN:**  THIS IS OUR ORIGINAL PROPOSED

2   INSTRUCTION NO. 29, YOUR HONOR.  THAT'S WHAT MR. MCFARLANE IS

3   REFERRING TO.

4          **THE COURT:**  OKAY.  THANK YOU.

5          **MR. TANGRI:**  AND THIS GOES OFF ON INEQUITABLE

6   CONDUCT, AND I DON'T KNOW -- IT'S APPLICABLE AS WHAT THE COURT

7   WAS JUST READING.

8          YOU, WE THINK, STATED PRETTY WELL -- IF IT'S FILED

9   WITHOUT DECEPTIVE INTENT, IT COULD BE CORRECTED.  IF IT'S FILED

10  WITH DECEPTIVE INTENT, IT HAS TO BE WITHDRAWN, THE APPLICATION.

11         **THE COURT:**  WELL, YOU CAN'T -- WELL, IT'S AN

12  APPLICATION, BUT YOU CAN'T WITHDRAW A PATENT.

13         **MR. TANGRI:**  THAT'S CORRECT.  JUST THE APPLICATION

14  WOULD HAVE TO BE WITHDRAWN.

15         **MR. McFARLANE:**  CORRECT.

16         **MR. TANGRI:**  AND A PATENT IS FILED WITHOUT ISSUES.

17         **THE COURT:**  WELL, THAT'S BASICALLY YOUR NO. 2, SAME

18  THING.

19         ALL RIGHT.  SO IT -- WE NAILED 1, 2, AND 29.

20         TRY AGAIN.

21         **MR. TANGRI:**  OUR NEXT REQUEST FOR -- WE'RE IN BREACH

22  OF CONTRACT STILL -- WOULD COME ON PAGE 14 -- WOULD COME ON

23  PAGE 14 FOLLOWING THE PARAGRAPH THAT BEGINS WITH, "SECOND, I

24  HAVE INTERPRETED."

25         AND WE WOULD REQUEST TO ADD THERE OUR PROPOSED

```
1    INSTRUCTIONS -- AND THESE ARE AGAIN FROM FRIDAY -- NOS. 9

2    THROUGH 17, WHICH WE BELIEVE GIVE OTHER CONSTRUCTIONS THAT THE

3    COURT HAS MADE OF THE PLAN OF LIQUIDATION OVER THE COURSE OF THE

4    CASE AND WHICH WE THINK ARE IMPORTANT TO HAVE IN THERE.  AND

5    THIS WAS, IN PART, THE SUBJECT OF A MEMO WE FILED ON FRIDAY AS

6    WELL.

7              MS. ALBAN:  YOUR HONOR, WE THINK THAT THESE

8    INSTRUCTIONS -- PROPOSED INSTRUCTIONS ARE UNDULY ARGUMENTATIVE,

9    AND WHAT IS INCLUDED IN YOUR HONOR'S PROPOSED INSTRUCTIONS IS

10   SUFFICIENT TO GIVE THE JURY A BASIS OF UNDERSTANDING OF HOW THE

11   POL HAS TO BE CONSTRUCTED.

12              AND IF -- IF YOUR HONOR WOULD BE INCLINED TO INCLUDE

13   ANY OF THESE, WE SUGGEST THAT WE GO THROUGH THEM ONE-BY-ONE AND

14   NOT A WHOLESALE INCLUSION OF 9 THROUGH WHATEVER NUMBER.

15              MR. TANGRI:  I WAS ASSUMING WE'D GO THROUGH THEM

16   ONE-BY-ONE, YOUR HONOR.

17              THE COURT:  WELL, THAT'S WHAT I WAS AFRAID OF.

18              MR. TANGRI:  AND -- AND NO. 9 JUST RECITES THE TWO

19   SECTIONS OF THE CONTRACT THAT YOUR HONOR HAS ALREADY DISCUSSED,

20   AND IT JUST ADDS -- REALLY, THE THING THAT WOULD BE ADDED WOULD

21   BE THE PARAGRAPH AT THE VERY END OF NO. 9.

22              MS. ALBAN:  THIS PARAGRAPH IS DEFENDANTS'

23   INTERPRETATION OF PRIOR RULINGS BY THE COURT AND ITS

24   INTERPRETATION OF THE CONTRACT.  BUT WHAT IS IN YOUR HONOR'S

25   PROPOSED INSTRUCTIONS IS THE COURT'S ACTUAL INTERPRETATION WHICH
```

```
 1    IS MORE ACCURATE AND SUFFICIENT.

 2              MR. TANGRI:  YOUR HONOR, ONE OF THE KEY NOTIONS HERE

 3    IS THAT THIS PLAN OF LIQUIDATION, AND THIS HAS BEEN THE SUBJECT

 4    OF YOUR PRIOR RULINGS, ALLOWS THESE TWO MEN TO BECOME

 5    COMPETITORS, TO COMPETE WITH THE BUSINESS THAT RADIANCE ONCE WAS

 6    AND TO COMPETE WITH EACH OTHER IN CARRYING ON THAT BUSINESS.

 7              AND FROM THAT -- FROM THAT A LOT OF THINGS FLOW, WE

 8    THINK, BUT THAT THAT NOTION ALONE, THE NOTION THAT THESE MEN ARE

 9    NOW COMPETITORS UPON THE SIGNING OF THIS, IS A VERY IMPORTANT

10    NOTION FOR THE JURY TO UNDERSTAND.

11              AND TO -- IT SAYS YOU'VE -- THE CURRENT INSTRUCTIONS

12    SAY IT ELIMINATES ANY LIABILITY BASED UPON THE CONDUCT OF

13    BUSINESS ACTIVITIES.  WE THINK THE NOTION OF GETTING COMPETITION

14    IN THERE IS -- IS COMPLETELY CONSISTENT WITH WHAT YOUR HONOR HAS

15    PREVIOUSLY RULED, AND INDEED IMPORTANT.

16              MS. ALBAN:  THE CONDUCT OF BUSINESS ACTIVITIES

17    ENCOMPASSES COMPETITION AND --

18              MR. TANGRI:  AND THEN --

19                   (SIMULTANEOUS COLLOQUY.)

20              MS. ALBAN:  -- AND IS SUFFICIENT.

21                   (PAUSE IN THE PROCEEDINGS.)

22              THE COURT:  UP IN THE FIRST PARAGRAPH WHERE IT SAYS,

23    "NO LIABILITY UPON CONDUCT OF BUSINESS ACTIVITIES IN ANY

24    COMMERCIAL EXPLOITATION OF THE RADIANCE TECHNOLOGY AND ALLOWS

25    THEM TO COMPETE AGAINST EACH OTHER OR COMPETE WITH EACH OTHER."
```

1          **MR. TANGRI:**  THAT WOULD BE -- THAT WOULD BE -- THAT

2     WOULD TAKE CARE OF NO. 9, YOUR HONOR.  THAT'S --

3          **THE COURT:**  ALL RIGHT.

4          **MR. TANGRI:**  AND FRANKLY, YOUR HONOR, NO. -- I MEAN I

5     THINK WE PROPOSED NO. 10, BUT THE KEY ELEMENT, THE FIRST PIECE

6     OF THAT YOU'VE PICKED UP BY ADDING COMPETITION.  AND THE ONLY --

7     THE PROPOSAL WOULD BE TO ADD SOMETHING LIKE THE SECOND NUMBERED

8     PARAGRAPH OF NO. 10 BECAUSE WE'RE A LITTLE CONCERNED THAT

9     COMMERCIAL EXPLOITATION OF THE RADIANCE TECHNOLOGY --

10          **THE COURT:**  COMPETE TAKES CARE OF THAT, I THINK.

11          **MR. TANGRI:**  AND THEN THE NEXT ONE THAT WE WOULD TAKE

12     UP -- I DON'T -- I MEAN IF -- I DON'T WANT TO --

13          **MS. ALBAN:**  ARE YOU WITHDRAWING NO. 10?

14          **MR. TANGRI:**  HMM?

15          **MS. ALBAN:**  ARE YOU WITHDRAWING NO. 10?

16          **MR. TANGRI:**  NO.  HE SAID HE'S NOT ADDING NO. 10.

17          **THE COURT:**  TEN'S GONE.

18               (SIMULTANEOUS COLLOQUY.)

19          **MR. TANGRI:**  WE HEAR YOU.

20          YOUR HONOR, WE PROPOSED NO. 11.  WE DON'T NEED TO

21     ARGUE IT SPECIFICALLY, IF YOU WOULD LIKE.  WE THINK THAT 11.1

22     HAS BEEN COVERED.  11.2, WE THINK IS A CORRECT STATEMENT OF THE

23     LAW.  IF IT'S -- AND OF THE PLAN.  IF YOU WERE TO NAME THE OTHER

24     PERSON AS THE INVENTOR, YOU COULD FILE THE APPLICATION --

25          **THE COURT:**  WHAT WOULD THE PATENT OFFICE SAY TO THAT?

1          **MR. TANGRI:**  WELL, IT WOULD SAY THAT YOU HAVE TO --

2                        (SIMULTANEOUS COLLOQUY.)

3          **THE COURT:**  TO SAY, "I GIVE YOU NOTICE THAT JOHN

4     JONES INVENTED SOMETHING.  I'D LIKE YOU TO GIVE HIM A PATENT."

5          **MR. TANGRI:**  I THINK, YOUR HONOR, THEY WOULD SAY THAT

6     YOU WERE PROCEEDING UNDER THE RELUCTANT INVENTOR DOCTRINE, WHICH

7     IS SOMETHING THAT COMPANIES DO WHEN THEY --

8          **THE COURT:**  IS THERE REALLY?

9          **MR. TANGRI:**  THERE IS -- I MEAN, IT DOES -- IT DOES

10    HAPPEN -- IT DOES.  AND THERE'S A -- THERE'S A BODY OF LAW

11    AROUND IT WHICH IS WHERE, YOU KNOW, THE EMPLOYEE HAS LEFT THE

12    CORPORATION, HE DOESN'T WANT TO COOPERATE, BUT THE CORPORATION

13    HAS TO --

14         **THE COURT:**  I DON'T THINK THAT'S AN ISSUE THIS JURY

15    OUGHT TO BE CONCERNED ABOUT.

16         **MR. TANGRI:**  FAIR ENOUGH.  WE'VE PROPOSED THIS

17    BEFORE, YOU'VE REJECTED IT BEFORE, BUT WE WANTED TO PROPOSE IT

18    AGAIN.

19         **THE COURT:**  ONCE MORE.

20         **MR. TANGRI:**  WE THINK 12 IS AN IMPORTANT INSTRUCTION.

21              AND I'M SORRY, YOUR HONOR.  I'M REMINDED BOTH IN 14

22    AND IN -- I'M SORRY.  BOTH IN 10 AND 11, WE -- WE DO THINK IT'S

23    IMPORTANT THAT THE JURY BE TOLD THAT PEOPLE -- EITHER MAN COULD

24    SELL OR ASSIGN THEIR RIGHTS UNDER THE POL.

25         **MS. ALBAN:**  YOUR HONOR, WE DO NOT BELIEVE THAT THAT

1    INSTRUCTION IS APPROPRIATE.

2            **THE COURT:**  I DON'T THINK I'M GOING TO ADD THAT.

3            **MR. TANGRI:**  ON NO. 12, PROPOSED INSTRUCTION NO. 12,

4    THE POL DOES NOT PROHIBIT SHUM OR VERDIELL FROM CLAIMING SOLE

5    AND EXCLUSIVE RIGHTS, IT MAY BE SOME OTHER SPECIES OF PROBLEM,

6    BUT WE DON'T THINK THAT ANYTHING IN THE COURT'S PRIOR RULINGS OR

7    IN THE POL ITSELF OUGHT TO BE CONSTRUED TO PROHIBIT SUCH ACTION.

8    IT MAY NOT AUTHORIZE IT.  IT MAY GET OKAYED IF IT'S NOT OKAY

9    OTHERWISE.  BUT THERE ARE A LOT OF THINGS THAT ARE NOT OKAY, FOR

10   SOME REASON OR OTHER BACKGROUND, LAW THAT ARE NOT PROHIBITED BY

11   A CONTRACT.  AND THIS IS, WE WOULD SUBMIT, ONE OF THOSE THINGS.

12           **THE COURT:**  IT WILL CONFUSE THE JURY SO I'M NOT GOING

13   TO ADD THAT.

14           **MS. ALBAN:**  THANK YOU, YOUR HONOR.

15           **THE COURT:**  I'M NOT GOING TO DO --

16           **MR. TANGRI:**  NO. 13, YOUR HONOR, IS ONE THAT WE WOULD

17   LIKE TO DISCUSS.

18           THERE'S BEEN, AS YOU KNOW, ASSUMPTIONS MADE BY THE

19   EXPERTS ABOUT THE -- THE EFFECT OF FILING PATENT APPLICATIONS,

20   THE EFFECT OF VARIOUS THINGS.  THE PLAN OF LIQUIDATION GRANTS

21   MR. SHUM RIGHTS TO USE THINGS EVEN IN -- EVEN IN PATENTS THAT

22   DR. VERDIELL OBTAINS.  THAT IS NOT, I THINK, DISPUTED AND CANNOT

23   BE DISPUTED.  THAT'S THE POINT OF A CONTRACT THAT GIVES SOMEONE

24   RIGHTS TO SOMETHING.  THERE'S GOT TO BE A SOMETHING THAT THEY

25   HAVE RIGHTS TO, AND IF THE SOMETHING IS A PATENT, THEN THEY

1    STILL HAVE RIGHTS TO IT.

2              SO WE THINK THIS IS BOTH A CORRECT -- CLEARLY A

3    CORRECT CONSTRUCTION OF THE PLAN OF LIQUIDATION AND AN IMPORTANT

4    POINT TO -- TO CLARIFY THAT THE PLAN OF LIQUIDATION IS NOT

5    SOMEHOW SUBJECT TO NO PATENTING HAPPENING.  IT ALLOWS PATENTING.

6    YOUR HONOR SAYS THAT IN THE INSTRUCTIONS.  AND ONCE ONE OF THOSE

7    PATENTS ISSUES, THEN BOTH MEN HAVE RIGHTS INDEPENDENTLY TO

8    EXPLOIT IT AS THEY HAVE RIGHTS INDEPENDENTLY TO EXPLOIT THE

9    OTHER INTELLECTUAL PROPERTY OF THE CORPORATION, PATENTED OR

10   OTHERWISE.

11             AND -- AND WE THINK THIS IS SOMETHING THAT NEEDS TO

12   BE GIVEN TO THE JURY.

13             **MS. ALBAN:**  YOUR HONOR, WE SEE THIS AS BEING ATTORNEY

14   ARGUMENT THAT IS NOT APPROPRIATE FOR A JURY INSTRUCTION.

15             WE ALSO THINK THAT WHETHER -- WHETHER SHUM IS ALLOWED

16   TO USE ANY RADIANCE TECHNOLOGY IS A KEY ISSUE IN THIS CASE AND

17   IS NOT APPROPRIATE FOR INSTRUCTION.  AND MOREOVER, THE -- THE

18   EVIDENCE, WE BELIEVE, DEMONSTRATED THAT WHATEVER THE POL MAY OR

19   MAY NOT HAVE ALLOWED IN PRACTICE, THAT'S NOT WHAT HAPPENED, THAT

20   VERDIELL AND THEN LIGHTLOGIC HELD THEMSELVES OUT TO BE THE SOLE

21   AND EXCLUSIVE OWNERS OF THE PATENT, AND THAT EXCLUDED SHUM'S

22   RIGHTS.

23             **THE COURT:**  OF THE PATENT.  THAT'S DIFFERENT THAN THE

24   TECHNOLOGY.

25             **MS. ALBAN:**  APPLICATION.

1          **MR. TANGRI:**  RIGHT.

2          **THE COURT:**  HERE'S -- THE PROBLEM IS THERE'S A

3    DIFFERENCE BETWEEN, QUOTE, RADIANCE TECHNOLOGY AND THE PATENT ON

4    THAT TECHNOLOGY.  SO I -- I DON'T KNOW WHETHER THIS HELPS US OR

5    HURTS US, I'M NOT SURE.

6          **MR. TANGRI:**  THE -- THE INTENT OF THE INSTRUCTION,

7    YOUR HONOR, AND I THINK WE'VE -- I THINK WE'VE CAPTURED IT, IS

8    WHAT IT SAYS HERE, WHICH IS THE POL GROUP GIVES SHUM THE RIGHT

9    TO USE, OR ALLOWS HIM TO USE, ANY RADIANCE TECHNOLOGY EVEN IF

10   IT'S COVERED BY THE PATENTS.

11         **THE COURT:**  RIGHT.

12         **MR. TANGRI:**  EVEN IF THE PATENTS ISSUED.  THAT IS A

13   PLAINLY CORRECT CONSTRUCTION OF THE POL.  AND THE PROBLEM

14   PRECISELY IS THE ATTORNEY ARGUMENT THAT HAS ATTEMPTED TO -- AND

15   THE ARGUMENT OF THE EXPERTS THAT HAS ATTEMPTED TO OBFUSCATE

16   THOSE TWO ISSUES, DRAW THEM TOGETHER.  AND I THINK IT'S

17   IMPORTANT FOR THE JURY TO HEAR THAT THE POL GIVES EITHER MAN THE

18   RIGHT TO USE ANY INVENTION, AND THAT HAVING A PATENT, JUST

19   HAVING A PATENT OUT THERE DOESN'T CHANGE THAT.

20         NOW MAYBE -- AND THERE ISN'T ANY -- FRANKLY, THE

21   PROBLEM IS THERE ISN'T ANY EVIDENCE THAT ANYONE EVER WENT AROUND

22   AND SAID FRANK SHUM HAS NO RIGHTS ANYMORE BECAUSE OF THIS.  BUT

23   AT THE VERY LEAST, THIS CLARIFIES THAT JUST GETTING THE PATENT

24   DOESN'T CHANGE THE POL OR THAT THE POL IS NOT IN SOME WAY

25   CONTINGENT ON THE ABSENCE OF THE PATENT.

1          **MS. ALBAN:**  THE PATENT IS A MONOPOLY.

2          **THE COURT:**  PARDON?

3          **MS. ALBAN:**  THE PATENT IS A MONOPOLY, AND THE

4     EXCLUSIVE RIGHTS --

5                    (SIMULTANEOUS COLLOQUY.)

6          **THE COURT:**  WELL, THE PATENT DOESN'T STOP EITHER

7     PARTY FROM EQUALLY EXPLOITING THE TECHNOLOGY.

8          **MR. TANGRI:**  THAT'S --

9          **THE COURT:**  THAT SEEMS TO BE --

10         **MS. ALBAN:**  UNLAWFUL.

11         **THE COURT:**  IS THAT AN ISSUE?  I THOUGHT THAT WHEN

12    THEY HAVE THE RIGHTS TO EXPLOIT IT, THAT THE RIGHTS TO EXPLOIT

13    STAYS WITH THE TECHNOLOGY FOR -- JUST FOR SHUM.  NOBODY ELSE CAN

14    GET IN THERE, BUT SHUM CAN.

15         **MR. JANSEN:**  WELL, I THINK THE ISSUE IS, YOUR HONOR,

16    AND I THINK THIS WAS A MATTER OF TESTIMONY, THAT THE -- THE

17    PATENTS -- FILING AND ISSUANCE OF PATENTS SHOWING ONLY ONE

18    PERSON AS HAVING OWNERSHIP CAN RESTRICT AND DID RESTRICT, IN

19    MR. SHUM'S CASE, HIS ABILITY TO COMMERCIALIZE, I.E., SELL --

20         **THE COURT:**  I DON'T THINK SO.  I THINK.

21         **MR. JANSEN:**  -- SELL THOSE RIGHTS --

22         **THE COURT:**  EXCUSE ME.  IF HE WASN'T NAMED, HE -- AND

23    HE SHOULD HAVE BEEN NAMED, AND HE, CORRECT, IF HE WASN'T NAMED

24    AND HE WASN'T ANY COINVENTOR, THEN HE DOESN'T HAVE ANY

25    RELATIONSHIP TO THE PATENT.  THE PATENT'S GOOD AND HE CAN'T

1    CORRECT IT.  BUT HE CAN STILL USE THE TECHNOLOGY.

2                **MR. TANGRI:**  RIGHT.

3                **MR. JANSEN:**  BUT HE CAN'T SELL OR LICENSE OR ASSIGN

4    OTHERS.  HE'S PREVENTED IN DOING THAT BECAUSE OF THE PERCEPTION

5    ON THE PART OF THE PUBLIC, PEOPLE HE MIGHT WANT TO SELL TO.

6                **THE COURT:**  THAT'S DIFFERENT THAN WHETHER HE'S

7    LEGALLY ENTITLED TO OR NOT.  YOU'RE SAYING -- BUT HE IS LEGALLY

8    UNDER THE -- AS I UNDERSTAND THE PLAN OF LIQUIDATION, IS EVEN IF

9    THERE'S A PATENT THERE, HE CAN EXPLOIT IT AND NOT BE AN

10   INFRINGEMENT.  THE POINT IS THAT HE'S NOT SUBJECT TO BEING

11   STOPPED FROM ANY COMMERCIAL USE OF IT BY THE EXISTENCE OF THE

12   PATENT.

13               **MR. JANSEN:**  YOU KNOW --

14               **MR. TANGRI:**  THAT'S CORRECT.

15               **MR. JANSEN:**  I DON'T DISAGREE WITH YOUR

16   INTERPRETATION OF THAT -- YOUR HONOR.  I THINK THE PROBLEM IN

17   INSTRUCTING THE JURY ON THAT, IT -- WHAT IT DOES IS IT ENDORSES

18   THAT THE CONCEPT THAT THE FILING OF AN -- OF A PATENT AND THE

19   OBTAINING OF A PATENT IN MR. VERDIELL'S SOLE NAME WOULDN'T IN

20   ANY WAY IMPEDE OR INTERFERE WITH MR. SHUM'S RIGHTS.

21               MR. SHUM MAY HAVE THOSE RIGHTS AS A MATTER OF

22   CONTRACT, BUT THERE CAN BE CONDUCT THAT WOULD INTERFERE OR

23   IMPEDE WITH THOSE RIGHTS.  AND THIS INSTRUCTION AS REQUESTED

24   WOULD TEND TO GIVE THE JURY THE SENSE THAT, OH, IT'S OKAY TO

25   HAVE FILED A PATENT THAT IMPEDED MR. SHUM'S RIGHTS TO

1    COMMERCIALIZE, EVEN THOUGH HE HAD THE RIGHT TO DO SO.  SO IT

2    LEADS TO JURY CONFUSION.  I THINK IT'S IMPROPER ARGUMENT AND

3    MISLEADS --

4            **MR. TANGRI:**  WHAT WOULD LEAD THE JURY TO CONFUSION

5    WOULD BE AN ARGUMENT THAT ANYTHING HERE IMPEDED MR. SHUM'S

6    RIGHTS BECAUSE THERE'S SIMPLY NO EVIDENCE IN THE RECORD THAT

7    ANYTHING DID.

8            **THE COURT:**  BUT --

9            **MR. TANGRI:**  WHAT'S IMPORTANT, WE THINK THE

10   INSTRUCTION -- THE INSTRUCTION DOESN'T SAY THAT HIS -- THAT

11   NOTHING HAPPENED IN THE CASE THAT IMPEDED HIS RIGHTS.  THE

12   INSTRUCTION SAYS WHAT YOUR HONOR JUST EXPRESSED AS THE

13   INTERPRETATION, WHICH IS UNDER THE POL HE'S ALLOWED TO USE THE

14   TECHNOLOGY, PATENT OR NO PATENT.  THAT'S A CORRECT

15   INTERPRETATION OF THE PLAN OF LIQUIDATION.  AND ESPECIALLY IN

16   LIGHT OF THE REPEATED ASSUMPTION BY THE EXPERTS -- AND REALLY IT

17   CAN ONLY BE AN ASSUMPTION FROM THOSE EXPERTS BECAUSE THEY'RE NOT

18   QUALIFIED ON PATENTS -- THAT JUST FILING IT OR JUST HAVING IT

19   OUT THERE SOMEHOW HURT HIM.

20           **THE COURT:**  THESE -- IT SHOULD NOT ELIMINATE -- THE

21   EQUAL RIGHTS ALLOW SHUM AND VERDIELL TO DEVELOP THEIR

22   PROPERTY -- THE PROPERTY DEVELOPED AT RADIANCE UNAFFECTED BY A

23   LAWFUL PATENT.

24           **MR. TANGRI:**  I'M SORRY, YOUR HONOR --

25           **THE COURT:**  WE'VE ALREADY SAID THIS ONCE.  WE SAY

```
 1   THIS IN THE FIRST -- WHAT THE INTERPRETATION IS BUSINESS

 2   ACTIVITY.  AND IT SAYS "ELIMINATES LIABILITY BETWEEN SHUM AND

 3   VERDIELL BASED SOLELY ON EITHER PARTY OBTAINING A LAWFUL PATENT

 4   RELATED TO THE PROPERTY DEVELOPED BY RADIANCE."

 5              MR. TANGRI:  BUT IT -- THAT, YOUR HONOR, DOESN'T, I

 6   THINK, MAKE -- MAKE AS CLEAR AS PROPOSED INSTRUCTION 13 WOULD.

 7              THE COURT:  NO, THAT'S TRUE.  IT MAY NOT.  YOU CAN

 8   MAKE IT CLEARER, BUT THAT'S -- THAT CAN BE DONE BUT --

 9              MR. TANGRI:  AND I'M SORRY.  I THINK, YOUR HONOR,

10   THAT TO MEET THE OBJECTION RAISED BY THE PLAINTIFF, IF YOU

11   WOULD, WE COULD -- WE COULD STRIKE THE FIRST LINE -- FIRST

12   SENTENCE, I'M SORRY, OF PROPOSED 13 AND JUST PUT IN THE SECOND

13   SENTENCE WHICH REALLY IS JUST A -- AN INTERPRETATION, THE

14   COURT'S INTERPRETATION.  I MEAN, IT'S BEEN HELD AND IT'S NOT

15   DISPUTED -- YOU JUST HEARD THAT IT'S NOT DISPUTED, OF THE PLAN

16   OF LIQUIDATION.

17              UNDER THE PLAN OF LIQUIDATION, SHUM IS ALLOWED TO USE

18   ANY RADIANCE TECHNOLOGY THAT MAY BE COVERED BY THE PATENTS

19   DESPITE THE ISSUANCE OF THOSE PATENTS BY THE PTO.

20              MS. ALBAN:  THIS IS ALREADY ENCOMPASSED IN THE

21   COURT'S PROPOSED ORDERS ON PAGES 13 AND 14.

22              (PAUSE IN THE PROCEEDINGS.)

23              MR. TANGRI:  IT'S REALLY NOT, YOUR HONOR.  IT DOESN'T

24   DISCUSS WHAT RIGHTS ONE PERSON HAS ONCE THE OTHER PERSON GETS A

25   PATENT.  AND THAT'S -- THAT'S THE GIST OF THIS.
```

```
 1                    (PAUSE IN THE PROCEEDINGS.)

 2              THE COURT:  I THINK MAYBE WE CAN PUT IN THE FIRST

 3    PARAGRAPH.

 4              MR. TANGRI:  THANK YOU, YOUR HONOR.

 5              THE COURT:  ALL RIGHT.  I'LL AMEND IT TO PUT

 6    SOMETHING LIKE THIS BUT NOT -- I'M NOT GOING TO PUT THE WHOLE

 7    THING IN THERE, BUT I'LL AMEND IT TO PUT IN THE FIRST PARAGRAPH

 8    AFTER WE SAY THAT THERE'S NO LIABILITY BETWEEN THEM.

 9              MR. TANGRI:  THANK YOU.

10              THE COURT:  OKAY.  WHAT'S THE NEXT ONE?

11              MR. TANGRI:  THE NEXT ONE, YOUR HONOR, IS NO. 14, AND

12    THAT ACTUALLY GETS -- GETS VERY CLOSE TO, I THINK, THE ISSUE WE

13    WERE DISCUSSING REGARDING THE LAWFUL PATENT --

14              THE COURT:  YEAH, I THINK IT'S COVERED.

15              MR. TANGRI:  -- THEY REQUESTED.  AND SO WE WOULD

16    SIMPLY SUBMIT THAT FOR YOUR CONSIDERATION WHEN YOU'RE

17    DRAFTING -- YOU SAID YOU WERE GOING TO LOOK AT OUR NO. 1.

18              THE COURT:  RIGHT, AND 29.

19              MR. TANGRI:  -- AND THEIR NO. 29.  WE THROW THAT INTO

20    THE HOPPER, BUT I DON'T THINK WE NEED TO DISCUSS IT FURTHER.

21              THE COURT:  OKAY.

22              MR. TANGRI:  YOU'VE GOT THE CONCEPT, AND WE'VE GOT

23    MORE TO DO.

24              NUMBER --

25              MS. ALBAN:  I'D JUST LIKE TO ADD -- I'M SORRY -- ON
```

1    NO. 14, WHEN YOU'RE CONSIDERING NO. 14, OUR INTERPRETATION OF

2    WHAT THEY'RE SAYING IN THAT FIRST PARAGRAPH IS THAT THE PARTIES

3    COULD ESSENTIALLY CONTRACT TO FORGO LIABILITY FOR UNLAWFUL

4    PATENTING.  AND WE THINK THAT'S INCORRECT AND SHOULD NOT BE

5    INCLUDED IN THE INSTRUCTION TO THE JURY.

6              **THE COURT:**  I'M NOT GOING TO PUT THAT IN.

7              **MS. ALBAN:**  THANK YOU, YOUR HONOR.

8              **MR. TANGRI:**  AND YOUR HONOR, JUST -- JUST TO BE CLEAR

9    ABOUT WHAT IS INTENDED AND WHAT THE DEFENDANTS' POSITION IS, WE

10   ARE NOT -- WE HAVE NOT -- WE'RE NOT TAKING THE POSITION THAT THE

11   PLAN OF LIQUIDATION SOMEHOW AUTHORIZES -- GIVES YOU PERMISSION

12   TO FILE AN INTENTIONALLY INCORRECT PATENT APPLICATION.

13             **THE COURT:**  NO.

14             **MR. TANGRI:**  THAT'S NOT -- THE POSITION IS THAT

15   FILING -- BUT THE POSITION IS THAT DOING SUCH A THING MIGHT --

16   IS NOT A BREACH OF THE PLAN OF LIQUIDATION, THAT IT'S NOT

17   COVERED BY IT AND FURTHERMORE -- AND THAT'S NOT THE POINT OF 14.

18             **THE COURT:**  WELL, IT'S COVERED TO THE EXTENT THAT YOU

19   CAN'T FILE UNLAWFUL PATENTS.

20             **MR. TANGRI:**  WELL, AND YOUR HONOR, IT -- THE

21   DIFFERENCE BETWEEN YOU'RE NOT AFFIRMATIVELY PERMITTED TO DO

22   SOMETHING THAT IS OTHERWISE NOT PROPER UNDER FEDERAL PATENT LAW,

23   WE'RE NOT ARGUING THAT.  WE -- WE DO SUBMIT THAT IT'S NOT A

24   BREACH, JUST AS A LOT OF OTHER THINGS THAT YOU'RE NOT PERMITTED

25   TO DO UNDER FEDERAL PATENT LAW, FOR EXAMPLE, FILE AN APPLICATION

1   LEAVING OUT A KEY PIECE OF PRIOR ART.  WE SUBMIT THAT WOULD NOT

2   BE A BREACH OF THE POL.  IT MIGHT RENDER THE PATENT

3   UNENFORCEABLE IF YOU DID IT WITH INTENT.  YOU KNOW, JUST

4   STANDARD INEQUITABLE CONDUCT, GARDEN VARIETY.  IT WOULDN'T BE A

5   BREACH OF THE POL.

6            WE SAY THAT SO TOO HERE, THIS WOULD NOT BE A BREACH,

7   CANNOT BE A BREACH OF THE POL, BECAUSE THE POL DOES NOT ADDRESS

8   THAT.  NOW --

9            **MS. ALBAN:**  WELL --

10            **MR. TANGRI:**  BUT I DON'T THINK THAT'S THE ISSUE IN 14

11   SO --

12            **THE COURT:**  YEAH.

13            **MS. ALBAN:**  AND IF THERE NOTHING ELSE, AND WE'RE NOT

14   CONCEDING THAT THIS IS THE ONLY THING, BUT EVERY CONTRACT

15   INCLUDING THE POL HAS WITHIN IT A GOOD FAITH AND FAIR DEALING

16   REQUIREMENT.

17            **THE COURT:**  THAT'S WHY WE'VE ALREADY DONE LAWFUL

18   PATENT.  WE DID IT ON THAT BASIS.

19            **MS. ALBAN:**  RIGHT.

20            **THE COURT:**  ALL RIGHT.  LET'S GO TO THE NEXT ISSUE.

21            **MR. TANGRI:**  THE NEXT ISSUE IS NO. 15, YOUR HONOR,

22   AND THIS IS, WE THINK, A CRITICAL ONE.  THIS IS THE "NO DUTY TO

23   ACCOUNT" LANGUAGE.

24            YOUR HONOR HAS -- I MEAN, IT'S IN THE PLAN OF

25   LIQUIDATION.  IT SAYS CLEARLY THAT THERE'S NO DUTY TO ACCOUNT.

1    AND THE FACT THAT -- AND THIS IS -- I THINK, AS I SAID, MANY

2    THINGS FLOW FROM BEING COMPETITORS, AND ONE OF THEM -- THIS IS

3    ONE OF THEM AND PERHAPS THE BIGGEST ONE.

4            YOU KNOW, STARBUCKS DOES NOT SHARE ITS PROFITS WITH

5    PEET'S.  COMPETITORS DO NOT SHARE THEIR PROFITS WITH EACH OTHER.

6    AND -- AND THE FACT THAT YOU CAN BE COMPETITORS AND THAT YOU

7    HAVE NO DUTY TO ACCOUNT MEANS, WE THINK, ALL -- ALL THREE OF THE

8    THINGS AT LEAST IN THIS -- CONTAINED IN THIS INSTRUCTION, NO

9    DUTY TO SHARE PROFITS, NO DUTY TO TELL EACH OTHER ABOUT BUSINESS

10   ACTIVITIES, WHICH WAS THE GENESIS OF YOUR HONOR'S RULINGS ABOUT

11   NON-DISCLOSURE CLAIMS BEING OUT OF THE CASE, AND THEN TELLING

12   EACH OTHER ABOUT PATENT APPLICATIONS.

13           AGAIN, THEY DON'T -- PEOPLE -- COMPETITORS DON'T RUN

14   AROUND NOTIFYING EACH OTHER OF THEIR EFFORTS ON THOSE THINGS.

15           **MS. ALBAN:**  AND --

16           **MR. TANGRI:**  AND BECAUSE ALL OF THOSE THINGS HAVE

17   BEEN SUGGESTED AT ONE TIME OR ANOTHER BY TESTIMONY FROM MR. SHUM

18   OR BY ARGUMENT OR BY ARGUMENT FROM THE EXPERTS TO BE IMPROPER IN

19   THIS CASE AND BREACHES, WE THINK IT'S IMPORTANT TO BE CLEAR THAT

20   THEY ARE NOT OBLIGATIONS TAKEN UP UNDER THE CONTRACT.

21           **MS. ALBAN:**  WE THINK, AGAIN, THAT THIS IS IMPROPERLY

22   ARGUMENTATIVE FOR A JURY INSTRUCTION, THAT THE ESSENCE OF THIS

23   IS ALREADY ENCAPSULATED IN YOUR HONOR'S PROPOSED INSTRUCTION.

24           AND MOREOVER, WE BELIEVE THAT THE PROPOSED

25   INSTRUCTION BASICALLY INVITES THE JURY TO CONCLUDE THAT

```
1   DEFENDANTS ARE NOT LIABLE FOR ASSERTING OR ASSIGNING OR SELLING

2   THE ENTIRE RIGHTS TO THE INVENTIONS, WHICH IS A KEY ISSUE IN

3   THIS CASE.

4            AND THIS INSTRUCTION IS ESSENTIALLY INSTRUCTING THE

5   JURY TO FIND FOR THE DEFENDANTS.

6            MR. TANGRI:  IT'S NOT THAT, YOUR HONOR.  BUT IT IS

7   INSTRUCTING THE JURY ON WHAT OBLIGATIONS ARE AND ARE NOT IMPOSED

8   UNDER THE POL.  AND SPECIFICALLY INTERPRETING THE

9   NO-DUTY-TO-ACCOUNT LANGUAGE AND INTERPRETING THE -- YOU KNOW,

10  THE LANGUAGE THAT TREATS THE TWO MEN AS COMPETITORS, BOTH WITH

11  EACH OTHER AND WITH THE PRIOR BUSINESS.

12           AND TO SAY THAT THERE'S NO LIABILITY -- THE PROVISION

13  ELIMINATES ANY LIABILITY BASED UPON THE CONDUCT OF BUSINESS

14  ACTIVITIES -- ESPECIALLY IN THE CONTEXT OF A LAWSUIT, I THINK

15  LIABILITY IS SUBJECT TO BEING UNDERSTOOD BY THE JURORS AS

16  BACKWARD-LOOKING OR, YOU KNOW, LEGAL LIABILITY FOR DAMAGES, AND

17  DIFFERENT FROM NO ONGOING AND GOING FORWARD OBLIGATION TO SHARE

18  PROFITS, WHICH REALLY IS -- IS CRITICAL.

19           AND THE SECOND IS THIS NOTION OF YOU DON'T HAVE TO

20  TELL EACH OTHER WHAT YOU'RE DOING, WHICH AGAIN FALLS OUT

21  LOGICALLY FROM BEING COMPETITORS, BUT WHICH HAS BEEN ASSERTED AT

22  VARIOUS POINTS AS HAVING BEEN, YOU KNOW, A BREACH.  WE'VE GOT

23  ALL THIS NON-DISCLOSURE FLOATING AROUND.

24           AND WE UNDERSTAND THAT YOUR HONOR'S LET IT IN FOR

25  PURPOSES OF STATE OF MIND.
```

```
1          THE COURT:  I THINK IF WE GO BACK TO PAGE 14, UP AT

2   THE TOP, AND WE SAY, "ANY COMMERCIAL EXPLOITATION OF THE

3   RADIANCE TECHNOLOGY," AND I ADDED "AND ALLOW THEM TO COMPETE

4   WITH EACH OTHER WITHOUT NOTICE OR ACCOUNTING TO ONE ANOTHER."

5          MR. TANGRI:  AND WE WOULD JUST -- "ACCOUNTING TO ONE

6   ANOTHER FOR PROFITS."  ACCOUNTING --

7          THE COURT:  I THINK --

8          MS. ALBAN:  JUST ACCOUNTING.

9          MR. TANGRI:  YOUR HONOR, I GUESS I'M -- I'M CONCERNED

10  THAT ACCOUNTING IS -- CAN BE UNDERSTOOD TOO EASILY AS SYNONYMOUS

11  WITH NOTICE OF SIMPLY TELLING PEOPLE.  AND IT SPECIFICALLY

12  RELATES TO PROFITS, IT RELATES TO PROFITS UNDER THE FEDERAL

13  PATENT LAWS AND IS USED IN THE AGREEMENT.  AND IF WE COULD JUST

14  SAY ACCOUNTING -- "NOTICE FOR ACCOUNTING FOR PROFITS TO ONE

15  ANOTHER," THAT WOULD -- WOULD BE A CLEAR --

16         THE COURT:  OKAY.  WITHOUT NOTICE OR ACCOUNTING AS TO

17  PROFITS WITH ONE ANOTHER.

18         MR. TANGRI:  THANK YOU, YOUR HONOR.

19         THE COURT:  ALL RIGHT.

20         MR. TANGRI:  NO. 16 IS REALLY ONE THAT IS -- WHICH

21  NO. 16 SIMPLY SAYS THE POL DOES NOT MAKE SHUM AND VERDIELL 50/50

22  OWNERS OF THE RADIANCE IP.  AND THIS IS THERE SIMPLY BECAUSE THE

23  EXPERTS FOR PLAINTIFF HAVE ARGUED, AND REALLY ARGUED IS THE ONLY

24  WORD FOR IT, TO THE CONTRARY IT'S -- IT'S NOT AN APPROPRIATE

25  SUBJECT FOR THEM.  IT'S CONTRARY TO THE NOTION THAT BEING
```

```
 1    COMPETITORS, IT'S CONTRARY TO THE NOTION OF HAVING INDEPENDENT

 2    RIGHTS TO EXPLOIT.  AND GIVEN -- GIVEN THAT THE EXPERT

 3    TESTIMONY, WE SUBMIT IT'S AN APPROPRIATE INSTRUCTION.

 4              MR. JANSEN:  YOUR HONOR, I -- ON THE INSTRUCTIONS

 5    THAT HAVE BEEN PROPOSED, I THINK BY BOTH PARTIES, GOING TO THE

 6    QUESTION OF OWNERSHIP AND -- THERE'S A NUMBER OF INSTRUCTIONS AT

 7    THE BEGINNING.

 8              THE COURT:  MAYBE WE SHOULD LEAVE THAT FOR THAT

 9    SUBJECT MATTER.

10              MR. JANSEN:  POSSIBLY SO.  I WOULD JUST POINT OUT

11    THAT THIS IS EXACTLY -- THE PROPOSED INSTRUCTION HERE IS EXACTLY

12    THE OPPOSITE OF WHAT DEFENDANTS PROPOSED IN THEIR INSTRUCTION 39

13    WHICH THEY SUBMITTED ON -- ON OCTOBER 10TH WHERE THEY STATED

14    THEY WANTED INSTRUCTION THAT UNDER THE PLAN OF LIQUIDATION,

15    VERDIELL AND SHUM ARE EFFECTIVELY EQUAL AND INDEPENDENT OWNERS

16    OF RADIANCE'S INTELLECTUAL PROPERTY.  AND NOW THEY'RE COMING

17    BACK AND SAYING EXACTLY THE OPPOSITE.

18              MR. TANGRI:  IT'S NOT THE OPPOSITE, YOUR HONOR,

19    AND -- AND THE CHANGE IN EMPHASIS, IT IS A CHANGE IN EMPHASIS,

20    IS IN LIGHT OF CHANGE IN THEORIES IN PLAINTIFF'S CASE WHERE THEY

21    WENT FROM SAYING THAT WE COULD NOT POSSIBLY HAVE ASSIGNED ANY OF

22    MR. SHUM'S RIGHTS TO SAYING THAT THAT'S EXACTLY WHAT WE DID.

23    SO -- BUT IF THE COURT'S INCLINED TO TAKE THIS UP AS PART OF THE

24    OWNERSHIP ONES --

25              THE COURT:  I THINK WE SHOULD.
```

 1          **MR. TANGRI:**  WE'LL DO IT THEN.  THAT'S FINE.

 2          **THE COURT:**  FRANCES.

 3          (OFF THE RECORD DISCUSSION.)

 4          **THE COURT:**  IT'S ALMOST 4:00 O'CLOCK AND WE DECIDED

 5   THAT THE JURY'S GOING TO COME BACK ON WEDNESDAY MORNING AT 9:00.

 6          **MR. TANGRI:**  VERY WELL, YOUR HONOR.

 7          AND NO. 17, YOUR HONOR, IS -- IS -- WE SUBMIT -- WE

 8   THINK IT'S APPROPRIATE -- YOU MAY FEEL IT'S TAKEN CARE OF IN

 9   LIGHT OF THE MODIFICATIONS YOU'VE MADE ALREADY.

10          **THE COURT:**  OKAY.

11          **MR. TANGRI:**  BUT WE LEAVE IT TO YOU.

12          AND THAT -- OUR -- OUR NEXT CHANGE REGARDING THE --

13   OR REQUESTED CHANGE REGARDING THE CONTRACT INSTRUCTIONS WOULD

14   RELATE TO DAMAGES.  WE WOULD REQUEST STRIKING THE -- THE LAST

15   SENTENCE IN THE PARAGRAPH ON PAGE 18 THAT BEGINS "IF YOU

16   DECIDE."  THAT SENTENCE.

17          **THE COURT:**  EIGHTEEN?

18          **MR. TANGRI:**  I'M SORRY, 14.  IF I SAID 18, I

19   MISSPOKE.  I'M SORRY.  ON PAGE 14.  THE LAST FULL PARAGRAPH

20   BEGINS "IF YOU DECIDE THAT SHUM."

21          **THE COURT:**  YEAH.

22          **MR. TANGRI:**  AND THE LAST SENTENCE OF THAT DISCUSSES

23   THE PURPOSE OF THE DAMAGES.  WE WOULD PROPOSE STRIKING THAT.

24   AND THEN WE HAVE OFFERED INSTRUCTION NO. 18, WHICH IS THE LOST

25   PROFITS INSTRUCTION WHICH WE SUBMIT IS THE APPROPRIATE

1    INSTRUCTION ON THE FACTS OF THE CASE, COMES FROM CACI 352

2    MODIFIED, BUT IT -- IT GIVES THE JURY SOME CONTEXT AS TO WHAT

3    THE THESIS IS THAT'S BEING PROPOSED BY MR. SHUM HERE, AS WE

4    UNDERSTAND IT FROM THE TESTIMONY OF HIS EXPERTS.

5            **MS. ALBAN:**  THAT IS INCORRECT.  I'M SORRY.

6            **MR. TANGRI:**  AND --

7            **MS. ALBAN:**  IT IS INCORRECT, YOUR HONOR.  OUR THESIS

8    IS NOT LOST PROFITS, BUT THE GOVERNING -- WE ARE GOING BY THE

9    GOVERNING CIVIL CODE WHICH IS 3300, WHICH I BELIEVE IS ALSO

10   REFLECTED IN YOUR PROPOSED INSTRUCTIONS.  THE AMOUNT THAT WILL

11   COMPENSATE THE PARTY AGREED FOR ALL THE DETRIMENT CAUSED

12   THEREBY, AND SO FORTH.  AND THAT IS THE -- THAT IS THE THESIS

13   UNDER WHICH THE EXPERTS TESTIFIED.  NOT LOST PROFITS.

14           **MR. TANGRI:**  WELL, THEIR -- THEIR TESTIMONY, YOUR

15   HONOR -- IT'S A LITTLE HARD TO MATCH -- FRANKLY, TO MATCH THIS

16   UP.  BUT THEIR TESTIMONY ON THE FACTS AS THEY ARGUED THEM IS

17   THAT IF -- AND THIS IS NOT, I THINK, PROPER TESTIMONY FROM THE

18   EXPERTS.  BUT THEIR TESTIMONY AS TO THEIR ASSUMPTION WAS THAT

19   SOMEBODY WOULD HAVE COME TO HIM IF -- IF HIS RIGHTS HAD BEEN

20   DISCLOSED, WHICH WE SUBMIT THEY WERE, AND IF SOMEBODY HAD CARED

21   ABOUT THEM, WHICH WE SUBMIT THEY DIDN'T, BUT ON THOSE TWO

22   ASSUMPTIONS, RIGHTS WEREN'T DISCLOSED AND IF THEY HAD BEEN AND

23   IF THEY MATTERED, THEN SOMEBODY WOULD HAVE COME TO HIM AND PAID

24   HIM OFF FOR THOSE RIGHTS UNDER THE CONTRACT.

25           THAT'S -- THAT'S THE -- THE ONLY DAMAGE THEORY UNDER

 1   THE CONTRACT THAT -- THAT WE -- THAT -- THAT EVEN BEGINS TO MAKE

 2   ANY SENSE HERE, WE SUBMIT.  WE THINK IT'S COUNTERFACTUAL, BUT

 3   THAT'S THE ONLY ONE THAT'S INTELLIGIBLE.  AND THAT'S THE ONE

 4   THEY TESTIFIED TO AS AN ASSUMPTION.

 5           **MR. JANSEN:**  YOUR HONOR, I BELIEVE THE -- I BELIEVE

 6   THE INSTRUCTION THAT YOU HAVE PROPOSED GIVING IS THE PROPER --

 7   PROPER -- PROPER INSTRUCTION FOR BREACH OF CONTRACT DAMAGES.

 8           **THE COURT:**  WELL, IT IS UNDER THAT -- THIS IS THE

 9   CALIFORNIA INSTRUCTIONS NOW, I THINK.

10           **MR. TANGRI:**  IT -- BUT, YOUR HONOR, IT DOESN'T -- IT

11   DOESN'T GIVE ANY CONTEXT TO THE -- THE THING, AND -- AND I MEAN

12   REGAN TESTIFIED -- THIS IS -- DECEMBER 4TH AT PAGE 2528, THAT IN

13   ORDER TO OBTAIN CLEAR TITLE AND THE RIGHT TO BENEFIT, VERDIELL

14   WOULD HAVE HAD TO BUY MR. SHUM'S RIGHTS AND THEY WOULD HAVE

15   SHARED IN THE VALUE OF THOSE RIGHTS.  THAT'S -- THAT'S THE

16   ASSUMPTION UNDER WHICH THE EXPERTS PUT IN THEIR CONTRACT DAMAGES

17   CASE.

18           AND SIMPLY SAYING PUT MR. SHUM IN AS GOOD A POSITION

19   AS HE WOULD HAVE BEEN IN, I THINK LEAVES THE JURY TO SPECULATE

20   WHEN THERE'S NO NEED TO SPECULATE.  THERE'S ONLY ONE, THAT'S THE

21   ONLY ONE, THAT'S THE ASSUMPTION, THE THEORY UNDER WHICH THE

22   EXPERTS CAME UP WITH THEIR DAMAGE NUMBER.

23           I CAN'T IMAGINE WHY PLAINTIFFS WOULD BE RELUCTANT TO

24   HAVE THAT THEORY GO TO THE JURY BECAUSE ANY -- SOMETHING

25   RETURNED ON ANY OTHER THEORY WOULD HAVE ABSOLUTELY NO BASIS IN

 1    THE EVIDENCE.  WE DON'T THINK THAT ONE DOES EITHER, BUT AT

 2    LEAST -- I MEAN, THAT'S THE BASIS FOR THE EXPERTS' NUMBERS.  AND

 3    IT'S THE ONLY -- IT'S THE ONLY FORM OF DAMAGE TO MR. SHUM THAT

 4    HAS -- SOMEONE HAS EVEN TRIED TO ARTICULATE ON THE CONTRACT

 5    THEORY.

 6              **THE COURT:**  WHAT WOULD IT BE OTHERWISE?

 7              **MR. JANSEN:**  OTHER THAN WHICH?  WHICH IS THE

 8    LANGUAGE --

 9              **THE COURT:**  YOUR INSTRUCTION NO. 18.

10              **MR. JANSEN:**  THEIR INSTRUCTION 18 GOES FOR A WAYS

11    HERE, AND PARTS OF IT I --

12                        (REVIEWING DOCUMENTS.)

13              **MR. JANSEN:**  YOU'RE SUGGESTING, MR. TANGRI, TO PASTE

14    THE -- THE TEXT WOULD BE EVERYTHING EXCEPT WHAT'S BEEN BLOCKED

15    OUT; IS THAT RIGHT?

16              **MR. TANGRI:**  WE'RE SUGGESTING THE TEXT BE AS GIVEN IN

17    OUR INSTRUCTION NO. 18 WHICH IS -- WHICH HAS BEEN REDLINED, IF

18    YOU WILL, TO SHOW ADDITIONS AND THE CHANGES FROM 352.

19              **MR. JANSEN:**  (REVIEWING DOCUMENT.)

20              THIS IS NOT -- YOUR HONOR, THIS -- I WOULDN'T SAY

21    THIS IS A CLASSIC LOST PROFIT CASE IN THE CASE OF A BUSINESS

22    THAT IS ENGAGING IN SOME KIND OF -- MR. SHUM WAS --

23              **THE COURT:**  YEAH.

24              **MR. JANSEN:**  SO I THINK THIS IS INAPPROPRIATE IN THAT

25    CONTEXT.  THIS GOES TO A CASE WHERE, YOU KNOW, SOME SORT OF

```
1    BUSINESS INTERRUPTION AND, YOU KNOW, THERE'S AN ONGOING, YOU

2    KNOW, COST OF DOING BUSINESS, COST OF GOODS SOLD, COST OF

3    PRODUCTION.  AND THIS JUST ISN'T THAT KIND OF BREACH OF CONTRACT

4    CASE.  IT'S NOT AN APPROPRIATE INSTRUCTION FOR THE SITUATION

5    THAT MR. SHUM WAS IN BECAUSE HE WASN'T RUNNING A BUSINESS

6    PER SE, AND THESE ARE THE KIND OF ELEMENTS THAT IT -- THE

7    DEFENDANTS --

8              THE COURT:  BUT IS YOUR THESIS I SHOULD LEAVE IT AS

9    THE -- THE ONLY INSTRUCTION SEEMS TO BE THAT THE PURPOSE OF SUCH

10   DAMAGES IS TO PUT SHUM IN AS GOOD A POSITION AS HE WOULD HAVE

11   BEEN IF VERDIELL HAD PERFORMED HIS PROMISE.

12             MR. JANSEN:  YES.

13             THE COURT:  AND THAT'S ALL WE SAY.

14             MR. JANSEN:  THAT'S RIGHT.  I THINK IT'S FOR THE JURY

15   TO MAKE THAT DETERMINATION.  AND THEY'RE NOT DEPENDENT SOLELY ON

16   MR. REGAN'S TESTIMONY.  THE JURY CAN ALSO -- YOU KNOW, HAS

17   EVIDENCE REGARDING MR. SHUM'S, YOU KNOW, EFFORTS TO TRY TO

18   COMMERCIALIZE THE -- THE TECHNOLOGY.

19             THE COURT:  WELL, THAT MEANS HE LOST BUSINESS

20   OPPORTUNITY OR SOMETHING LIKE THAT.

21             MR. TANGRI:  YOUR HONOR, THE ONLY -- THE ONLY EXPERT

22   I BELIEVE WHO PUT IN -- PURPORTED TO PUT IN A DAMAGES NUMBER

23   TIED TO A BREACH OF CONTRACT THEORY WAS MR. REGAN.  AND

24   MR. REGAN -- WE SAY THIS IN THE BRIEF THAT WE FILED, WE QUOTE IT

25   IN THE BRIEF THAT WE FILED ON FRIDAY AT PAGE 5, LINE 16 THROUGH
```

1    19, THAT WAS THE THEORY, THE ASSUMPTION ON WHICH MR. REGAN

2    PREDICATED THE DAMAGES NUMBER.

3          SO THAT'S THE ONLY THEORY AND THE ONLY ASSUMPTION

4    THAT WOULD BE ANYTHING OTHER THAN COMPLETE SPECULATION BY THE

5    JURY.  WE THINK IT'S COUNTERFACTUAL, BUT AT LEAST YOU CAN POINT

6    AT IT AND SAY WHY IT'S COUNTERFACTUAL, WHY IT'S NOT SUPPORTED BY

7    THE EVIDENCE.

8          IF THE SUGGESTION IS THE JURY IS SIMPLY GOING TO BE

9    ALLOWED TO SPECULATE ABOUT WHAT MIGHT HAVE HAPPENED AND WHAT

10   NUMBER MIGHT APPLY TO THAT THAT NO PARTY HAS PUT FORWARD,

11   CERTAINLY NOT THE PLAINTIFF'S EXPERTS, THAT CAN'T BE A CORRECT

12   STATE OF AFFAIRS.

13         SO IF THE OBJECTION -- WHAT I HEARD THE OBJECTION

14   TO -- TO PROPOSED 18 IS, IS THIS -- THE -- THE SECOND-TO-LAST

15   PARAGRAPH TALKING ABOUT SUBTRACTING COSTS AND VALUE OF LABOR AND

16   MATERIALS, IF THAT HAS TO BE ADAPTED, THAT IS NOT, TO MY MIND, A

17   CRITICAL PIECE OF THIS.  THE CRITICAL PIECE OF THIS IS PROVIDING

18   THE JURY WITH SOME CONTEXT SO THEY UNDERSTAND THE ASSUMPTION ON

19   WHICH THE EXPERT WAS TESTIFYING, WHAT HIS NUMBERS SUPPOSEDLY TIE

20   OFF TO SO THAT THEY HAVE A FRAMEWORK FOR EVALUATING THEIR CLAIM.

21   AND THERE IS NO OTHER FRAMEWORK BY WHICH THEY CAN EVALUATE THAT

22   DAMAGE CLAIM BECAUSE THAT'S THE ONE HE USED.

23         **THE COURT:**  BUT YOUR THESIS IS THEY COULD USE THIS

24   BUT THERE ARE OTHER THINGS THEY COULD USE.  THAT'S WHAT YOU'RE

25   SAYING, IN EFFECT, IS THAT IF YOU USE THE GENERAL DEFINITION

1    THAT'S IN -- IN THE ONE LINE, THEN IT WOULD BE OKAY FOR THEM TO

2    REASON THROUGH THE LOST PROFITS SORT OF THING AND SAY THAT

3    THAT'S A BASIS FOR DAMAGES.  BUT YOU THINK THEY'RE NOT LIMITED

4    TO THAT, THEY COULD DO SOMETHING ELSE.

5              **MR. JANSEN:**  I BELIEVE SO, YOUR HONOR.

6              **THE COURT:**  WELL, WHAT WOULD THAT BE?

7              **MR. JANSEN:**  BUT I THINK THAT -- AND I BELIEVE THAT

8    THE INSTRUCTION THAT YOUR HONOR HAS AT THE TOP OF PAGE 15 IS --

9    IS -- IS PERFECTLY APPROPRIATE.  I THINK YOU GO ON TO POINT

10   OUT THAT --

11             **MR. TANGRI:**  FORESEEABILITY --

12             **MR. JANSEN:**  -- IS NOT A SUBSTANTIAL FACTOR IN

13   CAUSING HARM, THE SAME HARM WOULD BE -- OCCURRED WITHOUT THE

14   CONDUCT OR RECOVERED DAMAGES FOR ANY HARM, SHUM MUST PROVE THAT

15   THE HARM WAS LIKELY TO ARISE IN THE ORDINARY COURSE OF EVENTS

16   FROM THE BREACH OF THE CONTRACT OR THAT WHEN THE CONTRACT WAS

17   MADE, BOTH PARTIES COULD HAVE REASONABLY FORESEEN THE HARM WAS

18   THE PROBABLE RESULT OF THE BREACH.

19             **MR. TANGRI:**  THOSE ARE ALL --

20             **MR. JANSEN:**  AND I THINK --

21             **MR. TANGRI:**  -- LIMITING PRINCIPLES, YOUR HONOR.

22   IT'S THE PRINCIPLE OF FORESEEABILITY OF HAVING -- THEY'RE NOT

23   THE THEORY ON WHICH YOU BORE DAMAGES.  THEY'RE A LIMITATION ON

24   THAT THEORY.  AND FIRST THE JURY NEEDS SOME FRAMEWORK OF THEORY

25   FOR HOW THEY'RE GOING TO THINK ABOUT THIS.  AND THE ONLY -- I

```
 1   COME BACK TO THIS.  THE ONLY CONTRACT DAMAGES NUMBER PUT FORWARD
 2   WAS PUT FORWARD BY REGAN, AND THE ONLY ASSUMPTION THAT HE PUT IN
 3   AS TO HOW HE GOT THERE WAS WHAT WE STATED THERE.
 4            THE COURT:  OKAY.  WELL, WHY DON'T YOU -- I THINK
 5   THAT THE QUESTION IS WHETHER WE ADD SOMETHING -- LIMIT THE LOST
 6   PROFITS AND TAKE OUT THINGS LIKE THE PARAGRAPH ON COST,
 7   MATERIALS, LABOR, THAT SORT OF THING.  BUT IF --
 8                  (SIMULTANEOUS COLLOQUY.)
 9            THE COURT:  IF YOU HAVE ANOTHER THESIS FOR HOW YOU
10   WOULD GET, YOU KNOW, SOMETHING THAT'S LESS GENERAL THAN THIS --
11   AS GOOD A POSITION, I DON'T THINK THAT THE NEXT TWO PAGES, I
12   THINK THEY APPLY TO CAUSATION BUT THEY DON'T NECESSARILY APPLY
13   TO THEORY OF PROFITS.  SO THAT IF THERE'S ANOTHER THEORY OF
14   PROFITS, THEN I COULD ADD THAT.
15            MR. JANSEN:  IT'S NOT SIMPLY A THEORY OF PROFITS,
16   YOUR HONOR, BUT IT'S A --
17            THE COURT:  I DON'T MEAN -- I MEAN A THEORY OF
18   DAMAGES.
19            MR. JANSEN:  OKAY.  A THEORY OF DAMAGES IS NOT SIMPLY
20   THE FAILURE TO DISCLOSE TO OTHERS BUT THE FACT THAT BY FILING
21   THE PATENTS -- BY FILING PATENTS WHICH WERE NOT LAWFUL PATENTS,
22   AND BY FILING THE ASSIGNMENTS WHICH SHOWED THAT MR. SHUM WAS
23   NOT -- WHICH INDICATED MR. SHUM HAD NO RIGHTS, IT PREVENTED AND
24   OBSTRUCTED MR. SHUM'S RIGHTS TO INDEPENDENTLY EXPLOIT WHICH HE
25   HAD A RIGHT TO DO AS WELL.
```

 1          **THE COURT:**  WELL, BUT THAT'S THE SAME THING.  THAT'S

 2     THE SAME THING, LOSS OF THE INVESTMENTS.

 3          **MR. TANGRI:**  RIGHT.  AND THE NUMBERS -- THE NUMBERS

 4     THAT THE EXPERT REGAN PUT IN ON THAT WERE PREDICATED ON

 5     PRECISELY THE ASSUMPTION.  I MEAN, HE SAID IT, WE QUOTE IT IN

 6     THE BRIEF OF PAGE 5, THAT THESE DEFENDANTS WOULD HAVE GONE TO

 7     MR. SHUM --

 8                    (SIMULTANEOUS COLLOQUY.)

 9          **THE COURT:**  IF YOU HAVE ANOTHER THESIS AND YOU CAN

10     DESCRIBE THAT IS OVER AND ABOVE THE -- THEIR NO. 18, IT COULD BE

11     ADDED BECAUSE I THINK WE PROBABLY SHOULD HAVE ANOTHER DEFINITION

12     IF THERE IS ONE.

13          **MR. JANSEN:**  OKAY.  DO YOU WANT ME TO JUST DO THAT

14     RIGHT NOW?

15          **THE COURT:**  NO.  NO.  YOU COULD BE THINKING ABOUT

16     THAT BECAUSE WE'RE GOING TO DO SOME MORE STUFF TOMORROW.

17          **MR. TANGRI:**  YOUR HONOR, THAT CONCLUDES OUR REQUESTS

18     REGARDING THE CONTRACT DAMAGES WITH -- WITH ONE MINOR EXCEPTION,

19     WHICH IS IF WE COULD GO BACK FOR A SECOND TO PAGE 13.

20          **THE COURT:**  OKAY.  WHAT IS IT?

21          **MR. TANGRI:**  ON PAGE 13, THIS IS JUST REALLY A

22     CONFORMING CHANGE AT THIS POINT.  BUT IN THE PARAGRAPH

23     IMMEDIATELY BELOW NUMERAL 4, YOU SAY IN THE LAST SENTENCE,

24     "PURSUANT TO THIS RESPONSIBILITY, I HAD INTERPRETED TWO

25     PROVISIONS IN THE PLAN OF LIQUIDATION."

```
1            WE WOULD PROPOSE STRIKING TWO PROVISIONS IN AND

2    SIMPLY SAY YOU'VE INTERPRETED THE PLAN OF LIQUIDATION.

3            MS. ALBAN:  THERE'S ONLY TWO RELEVANT PROVISIONS THAT

4    YOU'VE INTERPRETED, YOUR HONOR.

5            MR. TANGRI:  I THINK CONSTRUE THE DOCUMENT AS A WHOLE

6    WITH REGARD TO THE ISSUES THAT ARE PERTINENT TO THE CASE.

7            THE COURT:  WE'LL PUT "SOME OF THE PROVISIONS."

8            MS. ALBAN:  WE WOULD AGREE WITH THAT.

9            THE COURT:  INSTEAD OF "TWO."

10           ALL RIGHT.

11           MR. TANGRI:  AND THEN WITH THAT, WE'RE ON TO UNJUST

12   ENRICHMENT.  THAT -- UNLESS YOU WANT TO TAKE UP THE OWNERSHIP.

13   UNLESS YOU WANT TO TAKE UP THE OWNERSHIP AND ASSIGNMENT ISSUES

14   AT THIS TIME.  OR YOU CAN TAKE THEM UP IN THE CONTEXT OF UNJUST

15   ENRICHMENT.

16           THE COURT:  WHY DON'T WE DO OWNERSHIP RIGHT NOW.

17           MR. TANGRI:  OKAY.

18           THE COURT:  WE'RE GOING TO TAKE TEN MINUTES.  THEN

19   WE'LL COME BACK.

20               (RECESS TAKEN AT 4:07 P.M.)

21             (PROCEEDINGS RESUMED AT 4:14 P.M.)

22           THE COURT:  OWNERSHIP.

23           MR. TANGRI:  OWNERSHIP.

24           AND I GUESS I WOULD BEGIN WITH OUR, DEFENDANTS',

25   PROPOSED INSTRUCTION NO. 3, WHICH IS THE FIRST OF THESE.
```

```
 1              WE DISCUSSED -- WE DISCUSSED 1 AND 2 ALREADY IN THE

 2   CONTEXT OF THE CONTRACT CLAIM.

 3              THE COURT:  YEAH.

 4              MR. TANGRI:  NO. 3 -- FIRST ONE SQUARELY TO

 5   OWNERSHIP.  AND -- AND WE THINK THAT IT NEEDS TO BE MADE CLEAR,

 6   YOU -- THE OWNERS OF THE PATENT -- CO-OWNERS -- CO-OWNERS OF THE

 7   PATENT ARE THOSE WHO ARE THE INVENTORS.

 8              BECAUSE ALL OF THESE PATENTS WERE FILED AFTER

 9   RADIANCE DISSOLVED, THERE'S NO ISSUE WITH RADIANCE OWNING THEM.

10   THEY COVER RADIANCE INVENTIONS AS -- AS YOUR HONOR'S -- KNOWS,

11   AND THE POL GIVES PEOPLE RIGHTS TO USE THOSE THINGS AND EXPLOIT

12   THEM, AND ET CETERA, AS WE'VE DISCUSSED.  BUT IT -- BUT THE

13   OWNERS ARE THOSE WHO ARE -- WERE THE INVENTORS.  AND SO -- FOR

14   THE APPLICATION THAT WAS FILED --

15              THE COURT:  WELL, OKAY.

16              THE -- AS FAR AS THE PATENT IS CONCERNED, IF YOU ARE

17   A COINVENTOR, YOU'RE AN OWNER, RIGHT?  I GUESS THAT'S -- THAT'S

18   CORRECT, ISN'T IT?

19              MR. JANSEN:  IF YOU'RE A COINVENTOR --

20              THE COURT:  COINVENTOR, YOU'RE AN OWNER.

21              MR. JANSEN:  YOU ARE, BUT THAT'S NOT THE ONLY WAY TO

22   BECOME AN OWNER.

23              THE COURT:  NO, NO, NO.  THAT'S -- BUT IN TERMS OF

24   PATENT LAW, YOU GOT TO BE AN INVENTOR.  THEN YOU'RE AN OWNER.

25   NOW COMES THE ISSUE ABOUT OWNERSHIP UNDER THE PLAN OF
```

```
1   LIQUIDATION.

2              AND HE'S SAYING THAT, WELL, YOU CAN EXPLOIT, BUT YOU

3   CAN'T BE AN OWNER IF THE PATENT DIDN'T COME INTO EXISTENCE UNTIL

4   AFTER RADIANCE WAS DISSOLVED.

5              BUT THEN YOUR POSITION IS THAT AT THE TIME RADIANCE

6   WAS IN EXISTENCE, RADIANCE BECAME THE OWNER OF INVENTIONS THAT

7   OCCURRED WITH RADIANCE TECHNOLOGY, AND SO THAT IF THE INVENTION

8   TOOK PLACE AT A TIME WHEN RADIANCE WAS IN EXISTENCE.  AND WHEN

9   THE PATENT COMES ABOUT, ALL IT IS IS A STATEMENT OF AN INVENTION

10  AND SO IT'S OWNED BY RADIANCE.

11             MR. JANSEN:  THE INVENTION --

12             THE COURT:  WHOEVER OWNS RADIANCE THEN OWNS THE

13  PATENT.

14             MR. JANSEN:  THE INVENTION IS OWNED BY RADIANCE, AND

15  IT WAS -- AUTOMATICALLY BECAME RADIANCE'S PROPERTY AS SOON AS --

16  ASSUMING MR. VERDIELL WAS THE SOLE INVENTOR, BUT I THINK WE

17  SHOULD ASSUME THAT FOR JUST PURPOSE OF THIS ARGUMENT, BECAUSE I

18  THINK WE AGREE THAT IF MR. SHUM'S A COINVENTOR, HE'S NECESSARILY

19  A CO-OWNER.

20             THE COURT:  THAT'S WHAT I SAY.

21             MR. JANSEN:  ASSUMING FOR THE SAKE OF ARGUMENT THE

22  JURY WAS TO NOT FIND THAT AND FOUND THAT MR. VERDIELL WAS A SOLE

23  INVENTOR, HE CLEARLY INVENTED THAT AT RADIANCE, UNDER HIS

24  EMPLOYMENT AGREEMENT AT RADIANCE, IT WASN'T JUST THAT HE HAD A

25  DUTY TO ASSIGN.  THE INVENTION AUTOMATICALLY BECAME THE
```

1    PROPERTY -- THE PATENT AUTOMATICALLY BECAME THE PROPERTY OF

2    RADIANCE.  AND THE CASE --

3             **THE COURT:**  YOU SAY THE INVENTION BECAME, BUT THE

4    PATENT DOESN'T COME INTO EXISTENCE -- BUT THE PATENT IS THE

5    INVENTION, AND SO ANYTHING THAT IS RELATED TO THE INVENTION

6    BECOMES THE OWNERSHIP -- UNDER THE SAME RUBRIC, THAT IS, IT'S --

7    IT'S RADIANCE-OWNED BECAUSE THE INVENTION TOOK PLACE AT THE TIME

8    EVERYBODY WAS AT RADIANCE.

9             **MR. JANSEN:**  AND THIS GOES TO OUR PROPOSED

10   INSTRUCTION NO. 4, OUR PROPOSED ALTERNATIVE -- PLAINTIFF'S

11   PROPOSED ALTERNATIVE INSTRUCTION NO. 4, YOUR HONOR, GOES TO THIS

12   ISSUE.  AND A CASE ON POINT FROM -- WHICH I -- I COULD HAND IT

13   UP TO YOUR HONOR -- IS DDB TECHNOLOGIES VS. MLB ADVANCED MEDIA,

14   LP.  IT'S A 2008 FEDERAL CIRCUIT CASE.

15            AND THERE WAS A DISCUSSION STARTING AT -- IT'S AT 517

16   F.3D 1284, AND THE DISCUSSION BEGINS AT 1289 THROUGH 1290 AND

17   EXPLAINS THAT WHEN THERE IS AN EMPLOYMENT AGREEMENT OR SOME SORT

18   OF AGREEMENT OR CONTRACT -- AND THIS IS WHERE OWNERSHIP COMES

19   FROM.  IT COMES FROM THE CONTRACT OR AGREEMENT.  WHEN THERE'S AN

20   AGREEMENT IN PLACE IN WHICH THE -- THE INVENTOR HAS AGREED THAT

21   HIS INVENTION WILL BE AUTOMATICALLY TRANSFERRED AND OWNED BY HIS

22   EMPLOYER -- IN THIS CASE, MR. VERDIELL SIGNS SUCH AN AGREEMENT,

23   AND IT'S TX158 -- THAT INVENTION BECOMES IMMEDIATELY THE

24   PROPERTY OF RADIANCE.

25            MR. VERDIELL WAS NEVER THE OWNER OF THAT INVENTION

**RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-8404**

```
1    ANY MORE THAN MR. SHUM WAS.  AND SO THE -- THE DEFENDANTS GOT IT
2    RIGHT WHEN THEY -- WHEN THEY PROPOSED THEIR ORIGINAL INSTRUCTION
3    NO. 39, WHICH WAS THAT MR. SHUM AND MR. VERDIELL WERE -- WERE
4    CO-OWNERS OF THE --
5              MR. TANGRI:  THAT'S NOT WHAT THE INSTRUCTION SAYS.
6              MR. JANSEN:  -- OF THE INVENTION.
7              THE COURT:  WELL --
8              MR. JANSEN:  AND --
9              THE COURT:  OKAY.  BUT YOU'RE SAYING THAT SINCE ANY
10   ONE OF THE PATENTS HERE WERE INVENTED AT RADIANCE, THEN AS SOON
11   AS THEY'RE INVENTED, THEY WERE AUTOMATICALLY OWNED BY RADIANCE.
12   SO THEN WHEN RADIANCE IS DISSOLVED, THEN EACH OF THEM HAVE
13   OWNERSHIP OF WHATEVER RADIANCE HAD.
14             SO THEN THAT'S WHERE YOU GET TO YOUR 50/50 OWNERSHIP
15   OF -- WHEN YOU DISSOLVE EVERYTHING?
16             MR. JANSEN:  WE THINK --
17             THE COURT:  AND SO THEN BOTH OF THEM, THEY'RE
18   CO-OWNERS OF THE PATENT BECAUSE THE PATENT COMES OUT OF THE
19   INVENTION OF RADIANCE.
20             MR. JANSEN:  THE PATENT SIMPLY CLAIMS THE INVENTION.
21   IT SIMPLY SAYS THIS -- IT DEFINES WHAT IS THE INVENTION AND AS
22   TO WHAT THERE IS SOME EXCLUSIVE -- SOME RIGHT TO EXCLUDE, BUT
23   THE INVENTION PREDATED THAT.  AND THE FACT A PATENT WAS ISSUED
24   OR WAS APPLIED FOR AFTER AN EMPLOYEE LEAVES HIS PLACE OF
25   EMPLOYMENT OR AFTER A COMPANY'S, YOU KNOW --
```

1          **THE COURT:**  RIGHT.  OKAY.

2          **MR. JANSEN:**  -- THAT DOESN'T CHANGE THE OWNERSHIP

3     ISSUE.  AND I THINK THE PLAN OF LIQUIDATION HAS GOT TO BE READ

4     AS IMPLICITLY, IF NOT EXPRESSLY --

5          **THE COURT:**  OKAY.

6          **MR. JANSEN:**  -- PROVIDING FOR 50/50 OWNERSHIP.

7          **THE COURT:**  OKAY.  SO IF THE AGREEMENT -- IF IT SAYS

8     THAT YOU WORK FOR RADIANCE AND YOU INVENT SOMETHING IN THE SENSE

9     THAT YOU CONCEIVE OF AND YOU HAVE INVENTED IT, THEN YOU

10    AUTOMATICALLY THEN HAVE ASSIGNED IT TO RADIANCE.  AND THEN THE

11    OWNERSHIP IS DEPENDENT UPON THE DISSOLUTION WHERE BOTH OF YOU

12    RETAIN AN OWNERSHIP OF THE PROPERTY OF RADIANCE.

13         **MR. JANSEN:**  AND I CAN HAND UP THE --

14         **MR. TANGRI:**  AND IF I MAY RESPOND, THE -- NO PATENTS

15    THAT ARE ISSUED IN THIS CASE EXISTED WHEN --

16         **THE COURT:**  I KNOW THAT.

17         **MR. TANGRI:**  -- WHEN RADIANCE --

18         **THE COURT:**  BUT THE -- THE INVENTION WAS -- THE

19    INVENTION EXISTED BEFORE THE PATENT, 'CAUSE YOU CAN PATENT

20    SOMETHING AFTER YOU'VE INVENTED IT.  YOU DON'T HAVE TO -- I

21    DON'T KNOW WHAT THE TIMING IS, BUT YOU COULD --

22         **MR. TANGRI:**  AND YOU COULD NOT PATENT SOMETHING AFTER

23    YOU'VE INVENTED IT.

24         **THE COURT:**  RIGHT.

25         **MR. TANGRI:**  AND UNTIL THE THING IS PATENTED, THERE'S

1    NO PATENT.  IF YOU CHOOSE TO RETAIN IT AS A TRADE SECRET, IT'S A

2    TRADE SECRET.

3              **THE COURT:**  ISN'T THIS A FUNCTION OF WHAT THE

4    AGREEMENTS SAY IN TERMS OF HOW YOU DEFINE RADIANCE?  I MEAN,

5    WHAT -- WHAT'S YOUR CITE IN TERMS OF THE CONTRACTUAL PORTION OF

6    RADIANCE AGREEMENTS THAT SAYS THERE'S AN AUTOMATIC OWNERSHIP

7    THAT GOES ALONG WITH AN INVENTION.

8              **MR. JANSEN:**  YOUR HONOR, I CAN PASS UP THE -- THE

9    AGREEMENT, WHICH IS TX158.  THIS IS THE ONE THAT MR. VERDIELL

10   SIGNED OBLIGATING HIM TO AUTOMATICALLY ASSIGN -- AND THERE'S A

11   MIRROR ONE THAT WAS EXECUTED BY MR. SHUM, TX160.

12             **MR. TANGRI:**  YOUR HONOR, BEFORE WE GO TOO DEEPLY INTO

13   THESE AGREEMENTS, I THINK IT'S IMPORTANT TO POINT OUT THAT THEY

14   WERE ABROGATED BY THE PLAN OF LIQUIDATION.  THE POL EXPRESSLY

15   REFERS TO THESE -- THIS AGREEMENT THAT MR. JANSEN HAS HANDED UP

16   AND THE ONE THAT HE JUST REFERRED TO AS SIGNED BY SHUM.  THE POL

17   SAYS THOSE GO AWAY.

18             **THE COURT:**  WHAT'S THE --

19             (SIMULTANEOUS COLLOQUY.)

20             **THE COURT:**  I'VE GOT A PIECE OF PAPER THAT SAYS IT

21   EXISTS.  YOU SAYS THERE'S A PIECE OF PAPER THAT SAYS IT DOESN'T

22   EXIST.

23             **MR. TANGRI:**  WE'LL FIND IT IN THE POL FOR YOU.  THE

24   POL IS 285 AND 289 IN THE TRIAL EXHIBITS, BUT IT SAYS AS PLAIN

25   AS DAY THOSE AGREEMENTS GO AWAY.  AND IT SAYS, MOREOVER, THAT

1    RADIANCE GOES AWAY.  SO IT -- IT CAN'T BE THAT RADIANCE --

2              **THE COURT:**  WELL, I UNDERSTAND THAT.  BUT THE POINT

3    IS THAT WHEN RADIANCE WENT AWAY, ITS PROPERTY DIDN'T GO AWAY.

4    ITS PROPERTY WENT TO MR. SHUM, MR. VERDIELL.

5              **MR. TANGRI:**  AND ITS PROPERTY, TO THE EXTENT IT

6    INCLUDED UNPATENTED IP, IT -- WHAT IT DID WITH THAT PROPERTY WAS

7    VERY CLEARLY GIVE EACH PERSON THE RIGHT INDEPENDENTLY TO

8    EXPLOIT.  THAT'S WHAT IT DID WITH THAT PROPERTY.

9              **THE COURT:**  OKAY.  WHERE IS --

10             **MR. TANGRI:**  WHAT -- WHAT IT DIDN'T DO, I WOULD SAY,

11   IS ASSIGN ANY OWNERSHIP THAT IT MAY HAVE HAD TO SOME UNDEFINED

12   INVENTION.  THAT REVERTS AT THAT POINT, ESPECIALLY BECAUSE THE

13   THING THAT OWNS IT IS GONE AND THE AGREEMENTS UNDER WHICH THE

14   THING THAT OWNED IT HAD -- YOU KNOW, GOT IT WERE ABROGATED,

15   THOSE RIGHTS REVERT PER INVENTORSHIP TO THE -- TO WHICHEVER MAN

16   INVENTED WHAT.

17             SO MR. SHUM, IF THE LENSING STUFF WITH THE LIP (SIC)

18   LENS IS AN INVENTION, HE CAN FILE A PATENT -- BECOME AN OWNER OF

19   IT.  VERDIELL CAN USE IT.

20             **THE COURT:**  OKAY.  WHERE'S THE PIECE OF PAPER THAT

21   SAYS THIS IS ABROGATED?

22             **MR. TANGRI:**  IT'S THE PLAN OF LIQUIDATION.

23             **MR. JANSEN:**  I CAN PASS THAT UP, YOUR HONOR.  I'VE

24   GOT IT RIGHT HERE.  I'M HAPPY TO PASS IT UP.  IT DOESN'T CHANGE

25   IT.  IT'S 298, AND IT'S THE SENTENCE STARTING AT THE BOTTOM OF

```
 1    PAGE 3 AND GOING OVER TO PAGE 4.

 2              MR. TANGRI:  WELL --

 3              MR. JANSEN:  I BELIEVE THAT'S RIGHT.

 4              MR. TANGRI:  ARE YOU USING THE TRIAL EXHIBIT NUMBER?

 5              MR. JANSEN:  I'M SORRY.  YES, TRIAL EXHIBIT NUMBERS.

 6              MR. TANGRI:  YEAH, THE CONFIDENTIALITY AND

 7    PROPRIETARY RIGHTS AGREEMENT THE CORPORATION ENTERED INTO WITH

 8    SHUM AND VERDIELL SHALL TERMINATE UPON THE APPROVAL OF THIS

 9    PLAN, AND THE PLAN WAS APPROVED.

10              THE COURT:  WHY ISN'T THAT TRUE?

11              MR. JANSEN:  WELL, YOUR HONOR, THE FACT IS THAT THE

12    AGREEMENT EXISTED AT THE TIME OF THE INVENTION BY MR. VERDIELL.

13    THE AGREEMENT WAS IN PLAY.  IT DIDN'T TERMINATE UNTIL THE PLAN

14    OF LIQUIDATION WAS SIGNED.  AND BY -- AUTOMATICALLY -- SEE, THE

15    LANGUAGE THAT I HIGHLIGHTED IN THAT -- IN HIS AGREEMENT SAYS

16    THAT THE WORK PRODUCT, WHICH IS DEFINED TO BE INCLUDED WITH

17    INVENTIONS, AND THE PATENTS ARE AUTOMATICALLY ASSIGNED; THAT IS,

18    THEY ASSIGNED AUTOMATICALLY AT THE TIME OF THE INVENTION OR THE

19    CONCEPTION, AND THE INVENTION IS THE CONCEPTION -- AUTOMATICALLY

20    TRANSFERRED TO RADIANCE.

21              AND I BELIEVE THE TESTIMONY IS THAT THAT CONCEPTION

22    DATE, FOR EXAMPLE, FOR THE FLEXURE WAS IN THE SUMMER OF 1997, SO

23    LONG BEFORE THE PLAN OF LIQUIDATION.  LONG BEFORE THESE

24    AGREEMENTS WERE TERMINATED, THERE ALREADY HAD BEEN A ASSIGNMENT

25    BY MR. VERDIELL AUTOMATICALLY UNDER THESE AGREEMENTS TO -- OF
```

```
 1    THE OWNERSHIP TO RADIANCE, AND THAT --

 2                    (SIMULTANEOUS COLLOQUY.)

 3              THE COURT:  BUT THAT IS AN ARGUMENT.

 4              MR. JANSEN:  -- THAT'S NOT ABOLISHED.

 5              THE COURT:  WELL, THIS LANGUAGE DOESN'T MEAN ANYTHING

 6    AS FAR AS YOU'RE CONCERNED, 'CAUSE THIS LANGUAGE -- IT'S GONE

 7    BECAUSE RADIANCE IS GONE.

 8              MR. TANGRI:  RIGHT.

 9              THE COURT:  THEN THERE WOULDN'T BE ANY NEED FOR THIS

10    AT ALL, BECAUSE WHEN RADIANCE IS GONE, IT CAN'T BE A CONTRACT

11    WHERE YOU'RE BEHOLDEN TO RADIANCE.  BUT YOU'RE SAYING IT'S

12    ALREADY VESTED, IN EFFECT, IS THAT YOU -- IT AUTOMATICALLY WENT

13    THERE.  AND SO THIS -- THIS LANGUAGE DOESN'T ACCOMPLISH THAT.

14              IS THERE SOME OTHER LANGUAGE?

15              MR. TANGRI:  YOUR HONOR, I THINK THE ONLY WAY TO READ

16    AND MAKE SENSE OF THE LANGUAGE IN THE PLAN OF LIQUIDATION, TAKEN

17    AS A WHOLE, WHERE IT EXPRESSLY SAYS THAT THE CONFIDENTIALITY

18    AGREEMENTS ARE TERMINATED, AND IT SAYS THAT THE IP -- I MEAN --

19    THE IP IS GOING TO HAVE --

20                    (OFF THE RECORD DISCUSSION.)

21              MR. TANGRI:  -- WHERE WE KNOW THAT IT SAYS THAT

22    PEOPLE -- EITHER MAN HAS EQUAL AND INDEPENDENT RIGHTS --

23    INDEPENDENT RIGHTS EQUALLY TO EXPLOIT THE INTELLECTUAL PROPERTY.

24    AND WE KNOW THAT IT ALLOWS PATENTING AS PART OF THAT, AND WE

25    KNOW THAT IN THE ABSENCE OF AN ASSIGNMENT, OWNERSHIP FOLLOWS
```

1    INVENTORSHIP.  THE ONLY REASONABLE CONSTRUCTION OF THE DOCUMENT

2    AND THE LAW TAKEN AS A WHOLE IS THAT THE INVENTOR IS THE OWNER

3    OF THE PATENT.

4           OTHERWISE, THE OWNER OF THE -- CERTAINLY NOTHING

5    SUGGESTS AN INTENT TO MAKE THE OTHER PERSON THE OWNER OF

6    SOMETHING THAT DOESN'T EVEN EXIST.  IT ADDRESSES HIS RIGHTS TO

7    IT.  IT SAYS THE OTHER PERSON HAS THE RIGHT INDEPENDENTLY TO

8    EXPLOIT, BUT IT DOES NOT SAY THAT HE'S AN OWNER.  COULD HAVE

9    SAID HE'S AN OWNER.  IT MAKES HIM THE OWNER OF CERTAIN PROPERTY,

10   OTHER PHYSICAL PROPERTY THAT IS DIVIDED BY -- BY EXPRESS TERMS

11   AND BY VIRTUE OF THE ATTACHMENT.

12          BUT A PATENT APPLICATION THAT DOES NOT YET EXIST AND

13   HAS NOT BEEN FILED FOR -- IF IT HAD BEEN FILED FOR, IF THERE

14   WERE A PATENT APPLICATION, THEN THE AGREEMENT WOULD HAVE TO --

15   WOULD HAVE HAD TO HAVE TAKEN ACCOUNT OF THAT AND SAID THIS IS AN

16   ASSET.  YOU'VE GOT A PATENT APPLICATION.  IT'S A TANGIBLE THING.

17   IT'S IN THE PTO.  SOMEBODY'S GOING TO OWN IT.  SOMEBODY'S GOING

18   TO HAVE THE RIGHT TO USE IT.

19          WHERE THERE IS NO SUCH PATENT APPLICATION, THAT IS

20   ITSELF A PIECE OF PROPERTY, AND THE -- THE -- THE PLAINTIFF, I

21   THINK, IS -- PROPOSED AN INSTRUCTION SAYING PATENTS HAVE THE

22   ATTRIBUTE OF PERSONAL PROPERTY.  THAT'S SOMEWHAT TRUE.  AND THE

23   PATENT APPLICATIONS DON'T EXIST.  THEY'RE NOT PERSONAL PROPERTY

24   THAT -- THE OWNERSHIP OF WHICH CAN BE REGULATED OR IS REGULATED,

25   AT LEAST, BY THAT AGREEMENT.  IT'S REGULATED BY FEDERAL PATENT

1    LAW, WHICH VESTS IT IN THE INVENTOR.

2              **THE COURT:**  OKAY.

3              **MR. JANSEN:**  I THINK -- AGAIN, I THINK GOING BACK TO

4    THE CASE I HANDED UP, WHICH IS THE FEDERAL CIRCUIT CASE FROM

5    LAST -- JUST LAST -- OR ACTUALLY EARLIER THIS YEAR AND ALL THE

6    CASES CITED THERE STAND FOR THE VERY CLEAR PROPOSITION THAT --

7    THAT WHATEVER MR. VERDIELL CONCEIVED, IT -- WHATEVER INVENTIONS

8    HE CONCEIVED BECAME AUTOMATICALLY THE PROPERTY OF RADIANCE.

9              SO HE DIDN'T HAVE OWNERSHIP OF THOSE INVENTIONS TO

10   TRANSFER OR ASSIGN TO LIGHTLOGIC, EXCEPT TO THE EXTENT THAT

11   SOMEHOW THE PLAN OF LIQUIDATION CAN BE INTERPRETED TO GIVE HIM

12   AND MR. SHUM EQUAL RIGHTS TO THOSE INVENTIONS AS PART OF THE

13   DISTRIBUTION OF THE ASSETS OF THE COMPANY.

14             **MR. TANGRI:**  IT --

15             **MR. JANSEN:**  SO AS A MATTER OF OWNERSHIP, LEAVING

16   ASIDE INVENTORSHIP, MR. VERDIELL CAN'T BE AN OWNER OF THE

17   INVENTION AT ALL, EXCEPT TO THE EXTENT THAT HE GOT IT THROUGH

18   THE PLAN OF LIQUIDATION OR THE PLAN OF LIQUIDATION WAS SILENT AS

19   TO THEIR CO-OWNERSHIP RIGHTS AS 50/50 SHAREHOLDERS BECAUSE THE

20   OWNERSHIP WAS CLEARLY IN RADIANCE OF THOSE INVENTIONS.

21             **MR. TANGRI:**  THE INVENTIONS, THE IDEAS PERHAPS.

22   THERE WAS NO PATENT APPLICATION AND CERTAINLY NO PATENT FOR

23   RADIANCE TO OWN.  IF IT HAD CHOSEN TO FILE FOR ONE, IT COULD

24   HAVE.  IT DID NOT.

25             THE ONE THING THE PLAN OF LIQUIDATION DID CLEARLY IS

 1   END RADIANCE, SO IT IS NO LONGER THE OWNER OF ANYTHING.   ITS

 2   PROPERTY GOES AWAY.   PROPERTY THAT IT IS ASSIGNING OR

 3   TRANSFERRING TO EACH MAN IS SPECIFICALLY CALLED OUT, THE

 4   PHYSICAL PROPERTY, AND THE IP, NONE OF WHICH WAS TANGIBILIZED

 5   (PHONETIC) AT THAT POINT IN THE FORM OF A PATENT APPLICATION,

 6   WAS GIVEN TO EACH OF THEM INDEPENDENTLY TO EXPLOIT.   THAT'S THE

 7   RIGHT THEY GOT.

 8             AND PART OF EXPLOITING IT IS PATENTING IT, AND WHEN

 9   YOU PATENT IT, IF IT'S YOURS, IF IT'S YOUR INVENTION, THEN YOU

10   OWN IT, AND THERE'S NOTHING TO OWN.   THERE'S NO PATENT

11   APPLICATION TO OWN UNTIL IT'S FILED.

12             **THE COURT:**   THE ONLY THING I CAN SEE IS THAT IN --

13   WHEN IT SAYS DISTRIBUTES PROPERTY, AND YOUR THESIS IS THAT THERE

14   WAS PROPERTY IN THAT RADIANCE OWNED AN INVENTION.   NOW, ANYTHING

15   THAT HAD BEEN CONCEIVED OF AND THEN NOW LET'S SAY, FOR EXAMPLE,

16   '567, IS THAT THEY OWNED IT.

17             AND NOW, THE -- THE ONLY THING IN HERE ABOUT THE

18   DISTRIBUTION OF THAT PROPERTY IS THAT EACH PARTY RECEIVES ITEMS

19   OF APPROPRIATE SAME TOTAL VALUE AND SAYS VERDIELL AND SHUM SHALL

20   HAVE EQUAL RIGHTS TO INDEPENDENTLY EXPLOIT THE INTELLECTUAL

21   PROPERTY DEVELOPED BY THE CORPORATION.

22             THAT'S ABOUT -- THAT'S THE ONLY LANGUAGE I SEE THAT

23   DEALS WITH THE ASSET OF '567.

24             **MR. TANGRI:**   AND THE --

25             **THE COURT:**   IS THAT RIGHT?

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-8404*

1              MR. TANGRI:  '567, TO BE CLEAR, YOUR HONOR, DIDN'T --

2              THE COURT:  I KNOW.

3              MR. TANGRI:  THAT APPLICATION DIDN'T EXIST.

4              THE COURT:  IT EXISTED AS AN INVENTION, NOT AS A

5    PATENT.

6              MR. TANGRI:  CORRECT, NOT --

7              THE COURT:  BUT IT'S AN ASSET OF RADIANCE AS FAR AS

8    YOU INDICATED.  AND THEN IF IT IS, THEN IT'S DISTRIBUTED BY

9    THIS -- THIS PARAGRAPH, THEN.  IT SAYS INDEPENDENTLY EXPLOIT THE

10   INTELLECTUAL PROPERTY.

11             MR. JANSEN:  IF IT'S DISTRIBUTED AT ALL BY THAT

12   PARAGRAPH, AND I -- I WOULD --

13             THE COURT:  IT SAYS, "UNLESS OTHERWISE AGREED UPON IN

14   WRITING, ALL OTHER ASSETS SHALL BE DIVIDED," AND SO THIS IS THE

15   ONLY THING THAT DIVIDES IT.

16             MR. TANGRI:  AND MR. SHUM RECEIVED THE RIGHT TO

17   PATENT WHATEVER -- AND HAVE OWNERSHIP OF WHATEVER INVENTIONS HE

18   MAY HAVE MADE, AND DR. VERDIELL, THE SAME.  AND THAT'S A

19   REASONABLE CONSTRUCTION OF THAT PARAGRAPH.

20             MR. JANSEN:  I BELIEVE, YOUR HONOR, THAT THAT IS A

21   50/50 -- SO THE INVENTION BECAME THE PROPERTY OF RADIANCE, AND

22   THIS AGREEMENT HAS TO DISTRIBUTE THAT -- THAT OWNERSHIP SOMEHOW.

23   AND IT --

24             THE COURT:  RIGHT.

25             MR. JANSEN:  IT DID IT ON A EQUAL BASIS.  I DON'T

```
 1   THINK THERE'S ANY BASIS UPON WHICH TO CLAIM THAT MR. VERDIELL

 2   OBTAINED GREATER RIGHTS IN THE INVENTION THAN DID MR. SHUM, AND

 3   THAT SEEMS TO BE THE WHOLE -- THE WHOLE -- WHAT'S BEEN POSITED

 4   HERE IS THAT THAT HE DID.  HE OBTAINED GREATER OWNERSHIP RIGHTS

 5   IN THIS INVENTION SO THAT HE COULD THEN PATENT AND CLAIM FULL

 6   AND EXCLUSIVE RIGHTS TO.  AND I THINK THAT'S COMPLETELY

 7   INCONSISTENT WITH -- WITH THE PLAN OF LIQUIDATION AND ITS -- ITS

 8   INTENT.

 9           THE COURT:  WELL, THE ONLY THING THE PLAN SAYS IS

10   THAT -- I'M SAYING IS THAT IT SAYS THAT AS TO THE INTELLECTUAL

11   PROPERTY, THEN IT'S EQUAL RIGHTS AND THERE'S NO OTHER LANGUAGE

12   AND THERE'S NOTHING ELSE THAT SAYS HOW THE ASSETS ARE DIVIDED.

13           SO IF THE INTELLECTUAL PROPERTY IS AN ASSET, IT'S

14   DIVIDED BY THIS PARAGRAPH WHICH SAYS THEY SHALL HAVE EQUAL

15   RIGHTS --

16           MR. JANSEN:  EXACTLY.

17           THE COURT:  -- TO INDEPENDENTLY EXPLOIT.

18           MR. TANGRI:  INDEPENDENTLY EXPLOIT.

19           THE COURT:  I DON'T KNOW.  IS THERE ANY OTHER

20   LANGUAGE THAT TALKS ABOUT THE INTELLECTUAL PROPERTY?  I DON'T

21   THINK SO.

22           MR. JANSEN:  NOT IN THE PLAN OF LIQUIDATION THAT I'M

23   AWARE OF, YOUR HONOR.

24           MR. TANGRI:  AND I THINK YOU HAVE TO READ THAT

25   LANGUAGE IN THIS INSTANCE IN LIGHT OF THE TERMINATION OF THE
```

 1   INVENTION ASSIGNMENTS/AGREEMENTS, IN LIGHT OF THE FACT THAT ALL

 2   OF THE PROPERTY IS BEING DISTRIBUTED ONE TO ONE -- YOU KNOW, ONE

 3   THING TO ONE PERSON, ONE THING TO THE OTHER.

 4          THE COURT:  ALL RIGHT.  I'LL READ YOUR FEDERAL

 5   CIRCUIT CASE, AND THEN WE'LL SEE.  BUT OTHER THAN THAT, UNLESS

 6   THERE'S SOMETHING IN THE FEDERAL CIRCUIT CASE THAT TELLS ME, I

 7   DON'T SEE HOW THIS CAN BE ANYTHING OTHER THAN THE -- THE ASSET

 8   WAS DIVIDED IN TERMS OF EXPLOITATION AND NOT IN TERMS OF

 9   OWNERSHIP.

10          MR. TANGRI:  THAT'S CORRECT, YOUR HONOR.  AND IT --

11   AND IF THAT IS THE COURT'S CONSTRUCTION, WHICH WE SUBMIT IS THE

12   CORRECT CONSTRUCTION, THEN WE THINK THAT OUR INSTRUCTIONS 4, 5,

13   AND 6 -- I'M SORRY -- 3, 4, 5, AND 6 FLOW -- FLOW FROM THAT.

14          THE COURT:  DO YOU HAVE OTHER INSTRUCTIONS ON THE

15   SAME THING?

16          MR. JANSEN:  WE DO, YOUR HONOR, AND --

17          THE COURT:  WHICH ONES ARE YOURS?

18          MR. JANSEN:  WELL, NO. 3 WHICH EXPLAINS THAT PATENT

19   OWNERSHIP CAN BE DETERMINED BY ASSIGNMENT AS WELL AS

20   INVENTORSHIP.  NO. 4, WHICH WE JUST DISCUSSED, WHICH WAS THAT

21   RADIANCE BECAME THE OWNER OF ALL THE PATENTABLE INVENTIONS

22   CONCEIVED BY EITHER SHUM OR VERDIELL PRIOR TO JANUARY 5, 1998.

23          NO. 5, WHICH GOES TO THE -- THE RIGHTS OF THE PATENT

24   OWNER, WHICH IS THE RIGHT TO EXCLUDE OTHERS FROM MAKING, USING

25   OR SELLING.  AND I THINK NO. 6, OUR PROPOSED INSTRUCTION NO. 6,

```
 1   WHICH IS -- GOES TO THE EFFECT THAT CLEAR AND UNAMBIGUOUS

 2   ASSIGNMENT OF THE ENTIRE RIGHT IN A PATENTED INVENTION FILED

 3   WITH THE U.S. PATENT OFFICE ARE CONCLUSIVELY DETERMINED AND

 4   DEEMED TO BE A COMPLETE TRANSFER OF RIGHT, TITLE, AND INTEREST

 5   IN THE PATENT.  FURTHERMORE, ONE WHO BENEFITS FROM OR RELIES ON

 6   SUCH ASSIGNMENT IS BOUND BY AND CANNOT DEVIATE FROM THE CLEAR

 7   LANGUAGE IN THE ASSIGNMENT.

 8              MR. TANGRI:  AND I'D LIKE TO -- WE OBJECT TO ALL OF

 9   THESE, AND I'M HAPPY TO MARCH THROUGH THEM ONE BY ONE AND SAY

10   WHY, IF THE COURT IS INCLINED TO GIVE ANY OF THEM OR CONSIDER

11   THEM -- WANT TO DO THAT -- STARTING FROM THAT LAST ONE --

12              THE COURT:  YEAH, BRIEFLY GO THROUGH THEM.

13              MR. TANGRI:  WELL, SO I'LL START FROM NO. 6 AND WORK

14   BACKWARDS.

15              NO. 6 IS -- HAS NO SUPPORTING AUTHORITY IN THE

16   CONTEXT OF THIS CASE.  THERE ARE CASES THAT -- WHERE A PURPORTS

17   TO ASSIGN SOMETHING TO B AND THEN GO BACK AGAINST B AND SAY NO,

18   I DIDN'T DO THAT, THAT B CAN LOOK AT IT AND, SAY, OH, YES, YOU

19   DID, AND HERE'S A WRITTEN DOCUMENT TO PROVE IT.  THAT'S FINE.

20              THAT'S NOT THIS CASE.  THIS CASE, A GIVES A DOCUMENT

21   TO B AND C COMES IN AND SAID -- SAYS YOU TRANSFERRED TO -- TO B

22   SOMETHING YOU DON'T HAVE BUT YOU NEED TO BE STUCK WITH SAYING IF

23   YOU TRANSFERRED IT WHEN I COME IN AND SAY THIS TO YOU.  IN OTHER

24   WORDS, MR. SHUM SAYS THAT.  THERE'S NO SUPPORT FOR THAT.

25              NONE OF THESE CASES HAVE THAT SITUATION.  THE -- THE
```

```
 1   LAW IS ACTUALLY CLEAR.  AND, IRONICALLY, THE -- THE -- MAYBE THE

 2   BEST STATEMENT OF THE LAW -- THE LAW IS VERY CLEAR THAT YOU CAN

 3   ONLY TRANSFER OR ASSIGN OR AFFECT WHAT YOU ALREADY OWN.

 4              THE COURT:  I WAS WONDERING ABOUT THAT.  WHY DON'T WE

 5   GO THROUGH THAT PHRASE.  DO YOU AGREE WITH THAT?

 6              MR. JANSEN:  WHICH PHRASE IS THAT?

 7              THE COURT:  YOU CAN ONLY TRANSFER THE THINGS YOU OWN.

 8              MR. TANGRI:  I THINK THEY DO AGREE WITH IT, YOUR

 9   HONOR, BECAUSE THEY SUBMITTED A BRIEF -- THIS IS IN THEIR

10   OBJECTIONS TO OUR PROPOSED ADDITIONAL JURY INSTRUCTIONS, PAGE 12

11   THROUGH 13, GOES ON FOR TWO PAGES PROVING PRECISELY THAT POINT.

12              AND THEY CITE THE CONTINENTAL AMERICAN CORP. CASE.

13   THEY CITE SCHERING PLOUGH.  THEY CITE A NUMBER OF CASES.  THEY

14   CITE TREATISES.  SAYS, FOR EXAMPLE, ONE CO-OWNER CANNOT ASSIGN

15   ALL RIGHTS IN THE PATENT INVENTION BUT, RATHER, CAN ASSIGN ONLY

16   HIS OR HER INVENTION IN THE INVENTION.  ONE CO-OWNER CANNOT

17   GRANT AN EXCLUSIVE RIGHT TO PRACTICE THE PATENTED INVENTION

18   WITHOUT THE CONSENT OF OTHERS BECAUSE SUCH A GRANT IS GREATER

19   SCOPE THAN THAT ONE CO-OWNER POSSESSES --

20              THE COURT:  IF WE TAKE --

21              (SIMULTANEOUS COLLOQUY.)

22              THE COURT:  IF WE TAKE THE ASSIGNMENT OF THE PATENTS

23   BY VERDIELL TO LIGHTLOGIC, AND THAT'S -- THAT'S IN THE PATENT

24   OFFICE, AND IT ASSIGNS IT, AND IT SAYS I ASSIGN ALL MY -- THE

25   ENTIRE RIGHTS THAT I HAVE -- IT ASSIGNS SUPPOSEDLY ENTIRE RIGHTS
```

1   TO THIS PATENT.  AND YOUR POINT IS THAT VERDIELL COULD NOT DO

2   THAT.

3            **MR. JANSEN:**  HE CAN'T VALIDLY DO IT.  HE DID IT.

4            **THE COURT:**  ALL RIGHT.  AND HE DOES IT, AND HE SIGNS

5   IT OFF, AND HE SIGNS IT OFF AND HE SAYS THAT.  LEGALLY, HE

6   HASN'T TRANSFERRED ANYTHING.  HE CAN'T ACCOMPLISH THAT.  AND THE

7   PATENT OFFICE CAN'T GET ANYTHING, AND LIGHTLOGIC CAN'T GET

8   ANYTHING HE DIDN'T HAVE.

9            **MR. JANSEN:**  WELL, LEGALLY --

10           **THE COURT:**  SO THAT MR. SHUM STILL HAS HIS OWNERSHIP

11  RIGHTS.

12           **MR. JANSEN:**  LEGALLY HE -- THAT'S THE WHOLE -- THAT'S

13  THE ENTIRE BASIS OF THIS CASE, IS THAT THAT'S -- MR. VERDIELL

14  AND LIGHTLOGIC DID DO EXACTLY WHAT THEY COULDN'T LAWFULLY DO;

15  THAT IS, THEY DID ASSIGN THE ENTIRE RIGHT, TITLE AND INTEREST.

16           **THE COURT:**  BUT DID YOU READ "LIGHTLOGIC DID OWN

17  SHUM'S RIGHTS"?

18           **MR. JANSEN:**  THEY PRESUMED -- THEY PRESUMED -- THEY

19  PRESUMED TO -- THEY TOOK THE POSITION THAT THEY OWNED ALL THOSE

20  RIGHTS BY ASSIGNMENT FROM VERDIELL.  MR. VERDIELL ASSIGNED ALL

21  RIGHT, TITLE, AND INTEREST.  THE DEFENDANTS, WHO EXECUTED THOSE

22  ASSIGNMENTS AND ACCEPTED THOSE ASSIGNMENTS, ARE ESTOPPED FROM

23  DENYING THAT IS WHAT HAPPENED.  THAT'S WHAT THE CASES THAT WE

24  CITE STAND FOR.  NOW, WHETHER -- IT CERTAINLY WAS NOT VALID TO

25  DO THAT.

1          **THE COURT:**  BUT THEY -- SO THAT FOLLOWS THE -- THE

2     STATEMENT THAT YOU CAN'T ASSIGN ANYTHING YOU DON'T OWN.  SO THAT

3     WHEN VERDIELL ASSIGNS TO LIGHTLOGIC SOMETHING THAT BELONGS TO

4     SHUM, THEN HE HASN'T ACCOMPLISHED A VALID ASSIGNMENT.

5     LIGHTLOGIC CAN'T ASSIGN IT TO ANYBODY.  THEY DON'T OWN IT

6     EITHER.

7          **MR. TANGRI:**  CORRECT.

8          **MR. JANSEN:**  THEY DID DO IT.  WHETHER OR NOT THAT

9     MIGHT BE RESCINDABLE -- AGAIN, WE GET DOWN TO A QUESTION OF WHAT

10    IS THE REMEDY AND WHETHER OR NOT SHUM HAS TO ELECT A REMEDY OF

11    RESCINDING SOMETHING --

12         **THE COURT:**  SO HE COULD HAVE SAID TO INTEL, YOU HAVE

13    TO GIVE IT BACK TO ME OR A PIECE OF IT AT LEAST.

14         **MR. JANSEN:**  WELL, THAT WAS WHAT WAS BARRED FROM

15    EVIDENCE IN THIS CASE, YOUR HONOR, WAS THERE WAS AN ATTEMPT TO

16    RESOLVE THAT, AND IT WAS -- YOU DIDN'T ALLOW THAT INTO EVIDENCE.

17    BUT IT WAS -- IT WAS REJECTED OUT OF HAND, AND -- AS WAS THE

18    INTERROGATORY ANSWERS THAT --

19         **THE COURT:**  EVEN IF HE DIDN'T SETTLE IT, YOU COULD

20    HAVE FILED A LAWSUIT.  THAT'S WHAT YOU'RE SAYING.

21         **MR. JANSEN:**  AND THAT'S WHAT MR. SHUM DID.  HE DID

22    FILE THAT LAWSUIT.  THAT'S WHAT THIS LAWSUIT --

23         **MR. TANGRI:**  BEFORE WE GO TOO FAR THROUGH THE LOOKING

24    GLASS HERE, YOU'RE ABSOLUTELY RIGHT.  YOU CAN'T ASSIGN OR SELL

25    WHAT YOU DON'T OWN.  I CAN'T SELL YOUR CAR, YOU KNOW, THAT -- IF

```
 1    I PURPORT TO DO IT, THE PERSON TO WHOM I'VE PURPORTED TO DO

 2    IT -- WHEN MR. JANSEN SAYS THEY TOOK THE POSITION, WELL, YOU

 3    TAKE A POSITION TO SOMEONE.  SO IF LIGHTLOGIC HAD COME BACK

 4    AGAINST VERDIELL AT SOME POINT AND SAID, GEE, WE GAVE YOU MONEY

 5    BASED ON THE ASSUMPTION THAT YOU ASSIGNED US SOMETHING AND NOW

 6    TURNS OUT YOU DIDN'T, WE'D LIKE THAT BACK, THAT'S AN ISSUE.

 7              IF HE PURPORTED TO SUE LIGHTLOGIC SAYING THAT HE

 8    DIDN'T GIVE ME THE ENTIRE RIGHTS TO PATENTS, THAT'S WHAT THESE

 9    CASES THAT THEY'RE RELYING ON STAND FOR.  HE CAN'T DO THAT.  BUT

10    HE CANNOT LEGALLY AFFECT IN ANY WAY -- SHAPE, OR FORM A TRANSFER

11    OF RIGHTS HE DOESN'T OWN.  AND WHATEVER RIGHTS --

12              THE COURT:  OKAY.  WHAT'S THE REMEDY FOR TRYING TO DO

13    THAT?

14              MR. TANGRI:  WELL, THE REMEDY FOR TRYING TO DO THAT

15    YOUR HONOR, IS THE PERSON TO WHOM YOU TRIED TO DO IT, A THIRD --

16    THAT PARTY MIGHT HAVE A BEEF WITH YOU.  THAT'S NOT THIS CASE.

17    THAT'S -- THAT'S NOT THIS CASE.

18              SO THAT WE THINK THERE IS NO REMEDY FOR A STRANGER

19    WHOSE RIGHTS HAVEN'T BEEN TAKEN, HAVEN'T BEEN AFFECTED -- THERE

20    IS NO REMEDY.  WE'VE BEEN SAYING THAT FOR AS LONG AS WE'VE BEEN

21    HERE.

22              THE WHOLE REASON, JUDGE, THIS THEORY SHIFTED FROM

23    FALSE EXCLUSIVITY -- VERDIELL TOLD PEOPLE HE HAD EXCLUSIVITY

24    THAT HE DIDN'T HAVE AND HE GOT MONEY BASED ON -- THERE WERE TWO

25    REASONS THEY SHIFTED FROM THAT THEORY TO THIS NEW THEORY OF HE
```

1    ACTUALLY TRANSFERRED SHUM'S RIGHTS, WHICH IS A LEGAL

2    IMPOSSIBILITY.

3            THE FIRST REASON IS THAT YOU RULED FRAUD TO THIRD

4    PARTIES IS OUT OF THE CASE.  AND THE SECOND REASON IS THAT WE

5    MADE CLEAR AND THE COURT INDICATED IT WOULD FOLLOW THE LAW

6    AND -- AND IMPOSE A REQUIREMENT IN UNJUST ENRICHMENT THAT THE

7    BENEFIT HAVE BEEN AT -- DONE AT THE PLAINTIFF'S EXPENSE.  AND

8    THIS WASN'T TO BE AT HIS EXPENSE.

9            AND THE WAY THEY'RE TRYING TO SHOE-HORN THIS

10   INTO SOMEWHERE IT DOES NOT FIT, WHICH IS AT PLAINTIFF'S EXPENSE,

11   IS TO SAY, OH, YOU ACTUALLY EFFECTED A TRANSFER OF MR. SHUM'S

12   RIGHTS.  NO SUCH THING OCCURRED.  IF -- SO THAT'S THE -- THAT'S

13   THE -- THAT'S THE ANSWER.

14           NOW, IF THEY HAD -- IF THERE WERE EVIDENCE THAT

15   MR. SHUM HAD GONE TO SOMEONE, TRIED TO SELL HIS RIGHTS AND BEEN

16   TOLD, I'M SORRY, I BELIEVE THAT INTEL HAS THOSE ALREADY AND SO

17   YOU CAN'T SELL THEM TO ME, THEN THAT WOULD BE A DIFFERENT CASE.

18   THERE'S NO EVIDENCE OF THAT IN THE RECORD.  THERE'S NO EVIDENCE

19   OF THAT ABOUT INTEL.  THAT WAS NOT HOW THE INTEL CONVERSATIONS

20   WENT DOWN.

21           THE EVIDENCE IN THE RECORD IS THAT THE PERSON TO WHOM

22   HE SPOKE AFTER, IN FACT, ALL OF THIS HAPPENED -- HE SPOKE TO

23   MR. JENKIN RICHARD, TRIED TO SELL HIM HIS RIGHTS, ACTED AS

24   THOUGH HE HAD RIGHTS, JENKIN RICHARD ACTED AS THOUGH HE HAD

25   RIGHTS.  THEY BOTH KNEW HE HAD RIGHTS.  JENKIN RICHARD AND HIS

1    COMPANY -- HIS COMPANY JUST DIDN'T WANT TO BUY IT.  THAT'S IT.

2              THERE'S NO EVIDENCE THAT ANYONE EVER ANYWHERE ALONG

3    THE LINE SAID TO MR. SHUM, "GOSH, YOUR RIGHTS HAVE BEEN

4    TRANSFERRED," BECAUSE THEY HAVEN'T.  AND THAT WOULDN'T -- IT

5    WOULDN'T BE A FUNCTION OF THE ASSIGNMENTS.  WOULDN'T MEAN THEY

6    HAD BEEN, BUT YOU COULD IMAGINE SOME INTERFERENCE KIND OF THEORY

7    THAT GOT TO THAT.  THAT'S NOT THE THEORY IN THIS CASE.

8              THE THEORY IN THIS CASE IS UNJUST ENRICHMENT BASED OF

9    THE TRANSFER OF HIS RIGHTS AT HIS EXPENSE.  AND NO SUCH TRANSFER

10   CAN LEGALLY OCCUR.

11             AND TO LET IT GO IN ON THE ASSUMPTION THAT IT

12   COULD -- TO ALLOW THE JURY TO SPECULATE ABOUT THAT WOULD BE

13   INCORRECT BECAUSE THAT -- THAT IS A LEGAL QUESTION.  IT'S NOT A

14   FACTUAL QUESTION.

15             **THE COURT:**  ALL RIGHT.

16             **MR. JANSEN:**  WELL, WE ALL HEARD MR. MIKE RICCI

17   TESTIFY THAT HE -- THAT THEY DID A DUE DILIGENCE TO ENSURE THAT

18   THEY DID, IN FACT, OWN -- THAT THE COMPANY LIGHTLOGIC OWNED THE

19   PATENTS.  THEY DID THAT DUE DILIGENCE.  THEY DETERMINED THAT

20   LIGHTLOGIC OWNED THE PATENTS.  THAT'S WHAT HE CARED ABOUT.  THAT

21   WAS THE ONE THING HE CARED ABOUT.

22             SO TO SAY -- TO CREATE A --

23                  (SIMULTANEOUS COLLOQUY.)

24             **THE COURT:**  HE SAID WE CARE ABOUT WHETHER OR NOT WE

25   HAVE A RIGHT TO USE IT.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-8404*

1           **MR. TANGRI:**  EXACTLY.

2           **MR. JANSEN:**  THAT'S --

3           **MR. TANGRI:**  THAT'S WHAT -- EXACTLY WHAT HE SAID.

4           **THE COURT:**  WELL, THEN -- KEEP GOING.

5           **MR. JANSEN:**  MR. RICCI -- I HAVEN'T GOT THE

6    TRANSCRIPT IN FRONT OF ME.  I DID LOOK AT IT YESTERDAY, AND YOUR

7    HONOR, HE DID TESTIFY THAT, YES, WE -- WE DID A DUE DILIGENCE TO

8    MAKE SURE THAT THE COMPANY OWNED THESE PATENTS.

9           SO THE WHOLE CASE THAT'S BEEN ENDORSED BY THE FEDERAL

10   CIRCUIT IS, IN FACT, THAT THERE WAS A FALSE CLAIM OF EXCLUSIVE

11   RIGHTS, A FALSE CLAIM OF HAVING A PATENT, HAVING EXCLUSIVE

12   RIGHTS IN THAT PATENT, ASSIGNING THOSE INVENTIONS TO -- TO

13   LIGHTLOGIC ON A COMPLETE AND EXCLUSIVE BASIS, AND THOSE BEING

14   SOLD TO INTEL -- BEING PURCHASED BY INTEL AS PART OF THE

15   $409 MILLION AS -- AND THAT WAS DONE.

16          I MEAN, TO SAY THAT IT DIDN'T HAPPEN IS A COMPLETE

17   FICTION, AND -- AND I THINK, YOU KNOW, THAT'S -- THAT'S WHAT

18   DID, IN FACT, OCCUR.

19          **MR. TANGRI:**  WHAT'S A FICTION, YOUR HONOR, IS THAT --

20   THAT THE PLAINTIFF CANNOT HAVE IT BOTH WAYS.  EITHER THERE WAS A

21   CLAIM OF FALSE EXCLUSIVITY.  DR. VERDIELL AND THEN LATER

22   LIGHTLOGIC GOT MONEY FOR EXCLUSIVITY THEY WERE NOT ABLE TO GIVE

23   SOMEONE AND DID NOT GIVE THEM.

24          OR --

25          **THE COURT:**  THEY SOLD IT.

1          **MR. TANGRI:**  OR THEY SOLD IT, AND THEY GAVE HIM (SIC)

2    EXCLUSIVITY.  THE LATTER IS LEGALLY IMPOSSIBLE.  OKAY.  AND I

3    THINK THAT'S CLEAR UNDER THE LAW.  THE FORMER DIDN'T HAPPEN, AND

4    MR. RICCI'S TESTIMONY IS PERFECTLY CLEAR, THAT IT DIDN'T HAPPEN.

5    EVERYBODY'S TESTIMONY IS PERFECTLY CLEAR THAT IT DIDN'T HAPPEN.

6          BUT IF IT DID HAPPEN, IT DIDN'T HAPPEN AT MR. SHUM'S

7    EXPENSE, AND IT DID NOT HAPPEN TO HIS DETRIMENT.  AND IT HAD NO

8    EFFECT UPON HIM.  AND THE CLAIM WOULD BE FROM INTEL, I GUESS,

9    AGAINST LIGHTLOGIC AND DR. VERDIELL, SAYING, BOY, YOU KNOW, WE

10   GAVE YOU MONEY FOR EXCLUSIVITY AND YOU DON'T HAVE IT, SO, YOU

11   KNOW, KICK SOME BACK.

12          **THE COURT:**  OKAY.

13          **MR. TANGRI:**  THAT'S OBVIOUSLY NOT THIS CASE --

14          **THE COURT:**  ALL RIGHT.  THE ISSUE IS, THEN, I NEED TO

15   READ YOUR FEDERAL CIRCUIT CASE AND SEE HOW I COMPARE THAT WITH

16   THE PLAN OF LIQUIDATION, SEE WHERE WE ARE.

17          **MR. JANSEN:**  AS FAR AS THE OWNERSHIP --

18          **THE COURT:**  RIGHT.

19          **MR. JANSEN:**  -- STEMMING FROM OTHER THAN BEING A

20   COINVENTOR.

21          **THE COURT:**  YES.  YES.

22          YEAH, NO, 'CAUSE, AS I SAID, IF -- REGARDLESS OF ALL

23   THIS, REGARDLESS OF THE CONTRACT, IF MR. SHUM IS A COINVENTOR,

24   ONCE HIS STATUS AS COINVENTOR IS ESTABLISHED, THEN HE'S AN

25   OWNER.

1    **MR. JANSEN:**  CERTAINLY.  THAT'S ONE -- THAT'S ONE

2    BASIS OF CO-OWNERSHIP.  AND THE OTHER BASIS IS THE FACT THAT IT

3    WAS A MATTER OF CONTRACT.

4            **THE COURT:**  WELL, AS I SAY, I'LL GO THROUGH THIS AND

5    SEE IF I AGREE OR IF I THINK THAT IT GETS A SITUATION WHERE,

6    WHEN RADIANCE DISSOLVED, THAT THERE WAS A RIGHT TO EXPLOIT BUT

7    THE OWNERSHIP THEN STAYED WITH THE INVENTORS.

8            SEE, OBVIOUSLY, IF YOU WERE INVENTOR, YOU COULD DO

9    THIS.  IF -- IF MR. SHUM WERE AN INVENTOR OF ANY OF THAT

10   RADIANCE, HE COULD PATENT --

11           **MR. JANSEN:**  NO, BECAUSE -- I DON'T THINK THAT'S THE

12   CASE, YOUR HONOR.  BECAUSE THE INVENTOR, ONCE HE'S AUTOMATICALLY

13   TRANSFERRED HIS OWNERSHIP TO RADIANCE, NO LONGER IS THE OWNER.

14   HE NO LONGER IS THE OWNER.  HE NO LONGER HAS THE ABILITY --

15           **THE COURT:**  I DON'T THINK IT COULD BE A CIRCUMSTANCE

16   THAT THIS SIMPLY GOES INTO A BLACK HOLE.  THE THEORY, THEN, IS

17   IF SOMEBODY INVENTS SOMETHING WORKING FOR COMPANY A, COMPANY A

18   DISAPPEARS, THEN SO DOES THE INVENTION THAT THEY MADE THERE EVEN

19   THOUGH THEY DIDN'T PATENT IT.  THEY WOULD HAVE BEEN ABLE TO

20   PATENT IT OTHERWISE.  AND NOW, SINCE THEY WENT INTO A HOLE AND

21   THERE WAS THIS CONTRACT, THEY -- THEN HE CAN'T -- HE CANNOT GET

22   A PATENT.  I DON'T SEE HOW THAT WOULD WORK.

23                   (SIMULTANEOUS COLLOQUY.)

24           **MR. JANSEN:**  BECAUSE IF I WORK FOR A COMPANY THAT

25   GOES BANKRUPT, I NO LONGER OWN THAT INVENTION.  THAT INVENTION

```
1    WAS OWNED BY THE COMPANY THAT WAS MY EMPLOYER.  I CAN'T COME

2    BACK AND SAY, OH, I CAN PATENT THIS NOW AND I CAN OWN IT

3    BECAUSE, NO, I LOST MY OWNERSHIP WHEN I TRANSFERRED IT.

4              THE COURT:  EVEN -- THAT'S A POINT -- WHAT THE

5    CONTRACT SAYS.  THAT'S SOMETHING THAT IS A FUNCTION OF

6    SOMETHING -- IF IT EXISTS, IT EXISTS BECAUSE THE CONTRACT.  AND

7    I'M SAYING I HAVE TO READ YOUR CASE AND COMPARE IT WITH THE

8    CONTRACT TO SEE IF I AGREE WITH THAT.

9              MR. JANSEN:  AND OUR POSITION IS THAT THE OWNERSHIP

10   JUST CAN'T COME BACK TO MR. VERDIELL, ASSUMING HE'S THE ONLY

11   INVENTOR -- IT DOESN'T COME BACK TO HIM.  HE'S ALREADY

12   TRANSFERRED THAT OWNERSHIP, AND MR. SHUM --

13             THE COURT:  BUT DO YOU THINK THERE WAS NO OWNERSHIP

14   FOR EITHER SHUM OR VERDIELL AFTER RADIANCE WENT DOWN; IS THAT --

15             MR. JANSEN:  THEY HAD EQUAL --

16                  (SIMULTANEOUS COLLOQUY.)

17             MR. JANSEN:  I BELIEVE THEY HAD EQUAL OWNERSHIP, YOUR

18   HONOR.  I BELIEVE THAT THAT IS A NECESSARY FOLLOW-ON OF THE

19   SILENCE OF THE PLAN OF LIQUIDATION ON THAT PARTICULAR ISSUE.

20             MR. TANGRI:  NOTHING IN THE -- I MEAN, IT'S A LITTLE

21   ODD TO HAVE SOMETHING THAT'S SILENT -- YOU HEARD JUST IT,

22   SILENT -- AFFIRMATIVELY CONVEY A RIGHT --

23             THE COURT:  LET -- I'LL LOOK AT THE CASE.

24             MR. TANGRI:  AND ON THE ASSIGNMENT POINT, JUDGE, ON

25   THE "YOU CAN'T ASSIGN WHAT YOU DON'T OWN," IF YOU'RE LOOKING FOR
```

1   THAT, THAT'S IN THE PRIMA TEK CASE.  BUT IT'S ALSO -- I MEAN,

2   IT'S LAID OUT AS CLEARLY AS IT CAN BE LAID OUT IN THE

3   PLAINTIFF'S BRIEF OBJECTING TO OUR INSTRUCTION AT PAGES 12 TO

4   13.

5           THE COURT:  IT'S IN THE CATEGORY THAT ONLY LAWYERS

6   WOULD THINK THAT -- OTHERWISE.

7           MR. TANGRI:  RIGHT.  I AGREE.

8           THE COURT:  OKAY.

9           MR. JANSEN:  AND, YOUR HONOR, ON THE PRIMA TEK CASE,

10  THAT WAS A CASE -- THERE'S A LINE OF CASES THAT INVOLVE A

11  STANDING OF A PLAINTIFF IN A PATENT INFRINGEMENT CASE TO SUE.

12  AND YES, IN THOSE CASES, THE COURTS ARE PRETTY RELUCTANT TO LET

13  SOMEBODY COME IN AND SUE UNLESS THEY CAN ACTUALLY ESTABLISH THAT

14  THEY ARE, IN FACT, A VALID ASSIGNEE.  BUT THAT'S NOT THE CASE

15  WE'RE DEALING WITH HERE.  AND I THINK THE PRIMA TEK CASE IS

16  REALLY OFF POINT AND THE -- THAT WHOLE LINE OF CASES IS OFF

17  POINT.

18          THE COURT:  I'M ONLY LOOKING AT IT IN TERMS OF ITS

19  RELATIONSHIP TO THE CONVENTIONAL WISDOM THAT YOU CAN'T SELL

20  THINGS YOU DON'T OWN.

21          MR. TANGRI:  AND IT CONVERTS THAT WISDOM.  YOUR

22  HONOR, IF WE'RE NOW -- I THINK YOU'VE GOT WHAT YOU NEED ON

23  OWNERSHIP.

24          THE COURT:  RIGHT.

25          MR. TANGRI:  AND IF WE'RE GOING TO TURN TO UNJUST

1   ENRICHMENT IN THE TIME REMAINING, I'LL STEP ASIDE AND MS. GRANT

2   WILL STEP UP.

3            **THE COURT:**  OKAY.

4            **MS. GRANT:**  GOOD AFTERNOON -- EVENING, YOUR HONOR.

5   LATE AFTERNOON.

6            AT THE BREAK, WHEN WE BROKE FOR LUNCH, I THINK I

7   HEARD THE COURT ASK WHAT WAS OR WHAT IS CALIFORNIA AND FEDERAL

8   LAW WITH REGARD TO UNJUST ENRICHMENT CLAIMS.  AND SO WHAT WE

9   DID -- I THOUGHT IT MIGHT BE HELPFUL, YOUR HONOR, IS I JUST

10  PULLED A CASE THAT I THINK WOULD BE HELPFUL FOR YOU, GETTY VS.

11  GETTY.  AND THIS -- UNDER THIS -- TAGGED THE PART WHERE

12  BASICALLY THE COURT OF APPEAL CONFIRMS THAT A CAUSE OF ACTION

13  FOR UNJUST ENRICHMENT IS AN EQUITABLE CLAIM AND, AS SUCH,

14  PLAINTIFF IS NOT ENTITLED TO A JURY TRIAL ON THAT CLAIM.

15           AND THEN FOCUSING OVER ON THE -- UNDER THE FEDERAL

16  LAW -- I'M GOING TO HAND YOU A NINTH CIRCUIT CASE, SEC VS. RIND,

17  R-I-N-D.  AND THAT CASE -- AND IN THAT CASE, THE NINTH CIRCUIT

18  ALSO CONFIRMS THAT DISGORGEMENT IS AN EQUITABLE REMEDY, IS TO

19  THIS -- THE JURY TRIAL REQUIREMENTS OF THE SEVENTH AMENDMENT DID

20  NOT APPLY.  AND IT GOES ON AND ON ABOUT HOW EQUITABLE CLAIMS

21  LIKE UNJUST ENRICHMENT ARE NOT -- DO NOT -- ARE NOT TRIED BY A

22  JURY.  AND SO THAT SORT OF EXPLAINS THE CONUNDRUM THAT WE ALL

23  FIND OURSELVES IN HERE, WHICH IS THERE ARE NO JURY INSTRUCTIONS

24  THAT APPLY TO THE CALIFORNIA UNJUST ENRICHMENT LAW.

25           THAT'S BECAUSE THESE CLAIMS ARE, QUITE FRANKLY, TRIED

1   TO THE COURT AND NOT THE JURY.  SO NOT TO BELABOR THE POINT, BUT

2   WE DON'T THINK THE UNJUST ENRICHMENT CLAIMS SHOULD GO TO THE

3   JURY.  BUT IF IT DOES, THEN THE QUESTION BECOMES, WELL, WHAT IS

4   THE PROPER INSTRUCTION?

5          AND SO WHAT WE'VE DONE, I THINK, JUST TO MAKE THINGS

6   A LITTLE EASIER FOR THE COURT IS, AT LUNCH, WE WENT AND JUST

7   MADE A RED LINE VERSION TO YOUR -- TO YOUR INSTRUCTION THAT

8   YOU'VE PROPOSED, AND WE JUST HAD A FEW CHANGES --

9          (OFF-THE-RECORD DISCUSSION.)

10          **MS. GRANT:**  THEY'RE IN GREEN, AND THEN I GAVE YOU A

11   CLEAN COPY SO YOU WOULD ACTUALLY SEE WHAT IT LOOKS LIKE.

12          AND, BASICALLY, GIVEN THE ABSENCE OF CLEAR AUTHORITY

13   ON -- IN CALIFORNIA LAW ON THIS ISSUE, WE TURN TO THE -- TO

14   RESTATEMENT OF RESTITUTION, WHICH IS WHAT CALIFORNIA ROUTINELY

15   DOES AND THE RESTATEMENT AND THE CASE LAW, YOUR HONOR, MAKE ONE

16   THING VERY CLEAR.  AND THAT'S MEASURE OF UNJUST ENRICHMENT IS

17   THE BENEFIT THAT IS PROPERLY ATTRIBUTABLE TO THE WRONGFUL ACT.

18   AND I THINK IT'S IMPORTANT THAT WE KEEP IN MIND THIS IS AN

19   EQUITABLE REMEDY, SO NOTIONS OF FAIRNESS AND EQUITY ARE IN PLAY

20   AND SO WHAT THE LAW DOES IS IT SAYS, OKAY, WHAT PORTIONS OF THE

21   PROFITS ARE ATTRIBUTABLE TO THE WRONGFUL ACT.

22          BECAUSE IT WOULD BE INEQUITABLE TO DISGORGE SOMETHING

23   THAT WAS THE RESULT OF A LEGITIMATE OR LAWFUL BENEFIT.

24          AND SO HERE, WHAT WE HAVE IS WE HAVE HAD A LOT OF

25   TESTIMONY ABOUT BENEFITS THAT WERE CREATED BY 70 PEOPLE OVER

1    THREE AND A HALF YEARS ALL BRINGING DIFFERENT CONTRIBUTIONS.  SO

2    THERE NEEDS TO BE A SEPARATION OUT OF WHAT WAS LAWFULLY CREATED

3    AS A BENEFIT VERSUS WHAT WAS ALLEGEDLY WRONGFULLY OBTAINED.

4              AND I THINK THE INSTRUCTIONS THAT I WAS ABLE TO -- TO

5    LOOK AT, YOUR HONOR -- YOUR INSTRUCTIONS I WAS ABLE TO GLEAN, I

6    THINK, CAME FROM CACI 430 AND CACI 431.

7              HERE YOU GO, FRANCES.

8              AND I'VE HIGHLIGHTED THOSE FOR YOUR HONOR (HANDING

9    DOCUMENT).

10             (OFF-THE-RECORD DISCUSSION.)

11             **MS. GRANT:**  BECAUSE THOSE INSTRUCTIONS MAKE VERY

12   CLEAR ON -- ON THE DIRECTIONS FOR USE THAT THE SUBSTANTIAL

13   FACTOR THAT'S IN THE COURT'S INSTRUCTIONS SUBSUMES THE BUT-FOR

14   TEST OF CAUSATION.  AND IT'S -- EVEN SAYS THE FIRST SENTENCE OF

15   THE INSTRUCTION ACCOUNTS FOR THE BUT-FOR CONCEPT.

16             AND, YOU KNOW, YOUR HONOR HAS CONSISTENTLY AND WE

17   THINK CORRECTLY SAID IN THIS CASE THAT YOU WOULD NOT GIVE A

18   BUT-FOR CONCEPT, SO THAT'S THE FIRST THING I'D LIKE TO POINT OUT

19   THAT'S PROBLEMATIC.

20             AND THEN THE SECOND THING, AS YOU CAN SEE, IT'S

21   USUALLY DONE IN BREACH OF CONTRACT, NEGLIGENCE, PRODUCT DEFECT,

22   WHICH IS NOT AT ISSUE HERE.

23             AND THEN, FINALLY, THE LAST SENTENCE THAT I'VE

24   HIGHLIGHTED ON CAC (SIC) 430, "ACCORDINGLY DO NOT USE THIS

25   INSTRUCTION IN A CASE INVOLVING CONCURRENT INDEPENDENT CAUSES,"

```
1   WHICH, AGAIN, IS EXACTLY WHAT WE HAVE HERE WITH ALL THESE

2   DIFFERENT PEOPLE OVER THREE AND A HALF YEARS MAKING MANY

3   CONTRIBUTIONS THAT ARE CONCURRENT CAUSES, OF COURSE, TO

4   LIGHTLOGIC'S SUCCESS.

5             AND THEN, FINALLY, YOUR HONOR, CACI 431, AGAIN, THE

6   DIRECTIONS FOR USE I'VE HIGHLIGHTED FOR YOU.  IT SAYS, "THIS

7   INSTRUCTION WILL APPLY ONLY WHEN NEGLIGENCE IS THE THEORY

8   ASSERTED AGAINST THE DEFENDANT."  AND, OBVIOUSLY, THAT'S NOT AT

9   ISSUE HERE.

10            SO I THINK THE WAY THE COURT'S INSTRUCTIONS ARE

11  PRESENTLY WORDED ARE SOMEWHAT PROBLEMATIC BECAUSE IT ENGRAPHS

12  (PHONETIC) BASICALLY NEGLIGENCE BUT-FOR CAUSATION INSTRUCTIONS

13  INTO AN EQUITABLE CLAIM.  AND AS WE ALL KNOW, LEGAL CLAIMS ARE

14  SEPARATE ANIMALS AND VERY DIFFERENT ANIMALS THAN EQUITABLE

15  CLAIMS.

16            SO I THINK TO BE CONSISTENT WITH CALIFORNIA LAW, THE

17  COURT SHOULD JUST FOLLOW THE RESTATEMENT LANGUAGE, WHICH IS

18  THERE MUST BE SOME ATTRIBUTION.  AND, REALLY, YOUR HONOR, I

19  THINK THAT'S SORT OF -- IN THE EQUITABLE SENSE, THE ATTRIBUTION

20  TO THE WRONG IS, IN ESSENCE, A FORM OF EQUITABLE CAUSATION.

21            THAT'S HOW WE MAKE SURE THAT ANYTHING THAT WAS DONE

22  CONSCIOUSLY BY A WRONGDOER THAT RESULTED IN ILL-GOTTEN GAIN,

23  THAT COULD BE DISGORGED, AND MAKING A VERY CLEAR BRIGHT-LINE

24  DISTINCTION BETWEEN THOSE THAT WERE LEGITIMATELY OR LAWFULLY

25  OBTAINED BENEFITS, WHICH, OF COURSE, SHOULD NEVER BE
```

```
1    DISCLOSED (SIC) BECAUSE THAT WOULD BE INEQUITABLE AND FLY IN THE

2    FACE OF RESTITUTION AND DISGORGEMENT.

3              SO WE BELIEVE THAT PROPOSED INSTRUCTIONS THAT WE'VE

4    JUST HANDED YOU COMPORT WITH CALIFORNIA LAW AND ARE CONSISTENT

5    WITH THE EQUITABLE CLAIMS THAT ARE AT ISSUE IN THIS CASE.

6              THE COURT:  OKAY.  SO THE GREEN LINE IS YOUR

7    SUGGESTION AS TO AMENDING THE INSTRUCTIONS ON UNJUST ENRICHMENT.

8              MS. GRANT:  YES, THAT ARE CONTAINED IN YOUR PROPOSED

9    INSTRUCTIONS AS THEY CURRENTLY STAND.

10             THE COURT:  OKAY.

11             MS. ALBAN:  YOUR HONOR, WE'D LIKE AN OPPORTUNITY TO

12   READ THE DOCUMENTS THAT DEFENDANTS HAVE JUST GIVEN US --

13             THE COURT:  SURE.

14             MS. ALBAN:  -- AND REACT APPROPRIATELY.

15             ON THE ISSUE OF WHETHER THE UNJUST ENRICHMENT SHOULD

16   GO TO THE JURY, WHETHER THE CAUSE OF ACTION --

17             THE COURT:  RIGHT.

18             MS. ALBAN:  -- SHOULD GO TO THE JURY, THERE IS ALSO

19   AUTHORITY -- PLENTY OF AUTHORITY IN CALIFORNIA THAT UNJUST

20   ENRICHMENT CAN GO TO THE JURY.  AND ONE SUCH CASE IS LECTRODRYER

21   CASE THAT I BELIEVE WAS ALSO CITED BY THE FEDERAL CIRCUIT IN

22   THIS CASE AND MAY HAVE BEEN BY CITED BY YOU IN PRIOR DECISIONS.

23             AND IN THAT CASE, THE CALIFORNIA COURT OF APPEALS

24   SUBMITTED THE UNJUST ENRICHMENT CAUSE OF ACTION TO THE JURY

25   FINDING THAT WHEN SEEKING MONEY DAMAGES, EVEN ON A CLAIM FOR
```

| | |
|---|---|
| 1 | RESTITUTION, IT IS ESSENTIALLY A LEGAL CLAIM DESPITE THAT |
| 2 | EQUITABLE PRINCIPLES ARE BEING APPLIED.  AND WE BELIEVE THAT IS |
| 3 | EQUITABLE HERE -- |
| 4 | **THE COURT:**  THIS IS LECTRODRYER? |
| 5 | **MS. ALBAN:**  YES.  AND THAT'S 77 CAL APP. 4TH, 723. |
| 6 | **THE COURT:**  OKAY. |
| 7 | **MS. ALBAN:**  AND THAT IS CITED IN OUR OBJECTIONS, I |
| 8 | BELIEVE. |
| 9 | **THE COURT:**  ALL RIGHT. |
| 10 | **MS. ALBAN:**  SO WE BELIEVE THAT IS THE CONTROLLING LAW |
| 11 | HERE, THAT THIS SHOULD BE SUBMITTED TO THE JURY IN ITS ENTIRETY |
| 12 | OR ALMOST ENTIRETY BECAUSE IT IS ESSENTIALLY A LEGAL CLAIM FOR |
| 13 | DAMAGES TO WHICH EQUITABLE PRINCIPLES MIGHT APPLY. |
| 14 | **MS. GRANT:**  AND, OBVIOUSLY, WE DON'T BELIEVE THAT ANY |
| 15 | EQUITABLE CLAIM IS A LEGAL CLAIM.  AND ANOTHER CASE I JUST |
| 16 | WANTED TO DRAW YOUR ATTENTION TO, YOUR HONOR, IS SOMETHING |
| 17 | CALLED C&K ENGINEERING, AND THE CITE IS 23 CAL 3RD, 1.  THAT'S |
| 18 | CALIFORNIA SUPREME COURT, OBVIOUSLY, WHERE THE COURT HELD THAT |
| 19 | THE TASK OF WEIGHING EQUITABLE CONSIDERATIONS THAT ARE AT ISSUE |
| 20 | IN THIS CASE IS LEFT FOR THE COURT, NOT THE JURY, ALTHOUGH THE |
| 21 | SUPREME COURT RECOGNIZED THAT THE -- THAT THE COURT MAY HAVE AN |
| 22 | ADVISORY JURY. |
| 23 | I DID WANT TO JUST HAND YOUR HONOR ONE MORE -- |
| 24 | **THE COURT:**  BUT THEN SO FAR, WE HAVE -- YOU'RE -- THE |
| 25 | CASE YOU HANDED ME JUST NOW AND THE CASE YOU JUST CITED, 23 CAL |

1    3RD, 1.  AND THEY WOULD SUPPORT THE FACT THAT THERE SHOULD BE NO

2    JURY.

3            **MS. GRANT:**  PROFESSOR BUNDY JUST REMINDED ME THAT

4    ACTUALLY, THIS IS NOT CONTROLLED BY CALIFORNIA LAW.  THE RIGHT

5    TO A JURY IN THIS CASE IS CONTROLLED BY THE SEVENTH AMENDMENT,

6    AND SO WE BELIEVE THE NINTH CIRCUIT'S DECISION IN SEC VS. RIND

7    IS CONTROLLING.  AND IT'S THE CONTROLLING PRECEDENT THAT GOVERNS

8    THIS CASE.

9            BUT I WOULD JUST LIKE TO HAND YOU ONE MORE CASE, YOUR

10   HONOR.  AND I APPRECIATE YOUR PATIENCE, WHICH IS CALLED STORAGE

11   TECHNOLOGY CORPORATION VS. CISCO -- HEARD A LOT OF ABOUT CISCO

12   IN THIS CASE.

13           **THE COURT:**  IS YOUR POSITION THAT WHEN THE FEDERAL

14   CIRCUIT SENT THIS BACK, THEY SHOULD HAVE SAID WE'RE SENDING THE

15   FRAUD BACK BUT THE UNJUST ENRICHMENT ISN'T TO BE TRIED BY A

16   JURY?

17           **MS. GRANT:**  WELL, I DON'T THINK THAT WAS WITHIN THE

18   SCOPE OF WHAT THE FEDERAL CIRCUIT WAS ASKED WITH REGARD TO THE

19   UNJUST ENRICHMENT CLAIM.  I THINK IT'S -- IT'S AN EQUITABLE

20   CLAIM, AND I DON'T KNOW THAT THEY WOULD EVEN SAY THAT IT DOESN'T

21   NEED TO GO TO THE JURY.  I MEAN, I THINK THAT'S JUST SORT OF

22   COMMON PRACTICE.

23           **THE COURT:**  -- THEY SENT IT BACK.

24           **MS. ALBAN:**  THERE WAS NO DISTINCTION.

25               (SIMULTANEOUS COLLOQUY.)

```
 1                THE COURT:  -- HERE'S YOUR UNJUST ENRICHMENT BACK,

 2      AND THIS SHOULD HAVE DROPPED THAT OUT.  BUT THEN YOU'RE SAYING

 3      THAT THEY DON'T HAVE TO SAY IT, BUT THEY SHOULD HAVE SAID TO ME,

 4      BY THE WAY, THIS ISN'T A JURY TRIAL.

 5                MR. TANGRI:  WELL, YOUR HONOR, IF I MAY JUST JUMP --

 6                (SIMULTANEOUS COLLOQUY.)

 7                MS. GRANT:  HE HAS A LITTLE MORE KNOWLEDGE THAN I DO.

 8                MR. TANGRI:  MY RECOLLECTION OF THE POSTURE THAT THE

 9      THING WENT UP TO THE FEDERAL CIRCUIT WAS THAT WE'D HAD THE BENCH

10      TRIAL ON INVENTORSHIP.

11                THE COURT:  AND I HAD DISMISSED THE UNJUST ENRICHMENT

12      SOMETIME BEFORE THAT.

13                MR. TANGRI:  ON 12(B)(6) LONG BEFORE.

14                THE COURT:  RIGHT.

15                MR. TANGRI:  THE FEDERAL CIRCUIT HAD BEFORE IT,

16      FIRST, THE QUESTION WHETHER THE INVENTORSHIP TRIAL HAD TO BE

17      DONE TO A JURY BASED ON THE FRAUD AND CONTRACT CLAIMS THAT WERE

18      IN THE CASE.  AND THEY SAID YES.

19                THEN THEY HAD INDEPENDENTLY THE QUESTION WHETHER THE

20      UNJUST ENRICHMENT CLAIM SHOULD HAVE BEEN DISMISSED OR NOT, AND

21      THEY SAID IT SHOULD NOT HAVE BEEN.

22                BUT I DON'T THINK THEY HAD BEFORE THEM -- THEY

23      CERTAINLY HAD NO RECORD ON WHAT THIS CLAIM WAS GOING TO BE, WHAT

24      FACTS WERE GOING TO HAPPEN ON IT, OR ANY --

25                THE COURT:  BUT THEY --
```

1            **MR. TANGRI:**  -- DEVELOPED WHETHER IT --

2            **THE COURT:**  -- FEDERAL LAW WAS THAT -- WHAT YOU'RE

3    TELLING ME IS THAT UNDER THE FEDERAL LAW, THIS IS EQUITABLE, IT

4    SHOULD NOT GO TO A JURY.

5            **MS. GRANT:**  THAT IS WHAT THE LAW STATES, YOUR HONOR.

6    AND I THINK THAT THE COURT --

7            **THE COURT:**  AFTER THEY JUST GOT THROUGH TELLING ME

8    THAT WE DON'T CARE ABOUT MARKMAN.  SEND IT BACK.

9            **MS. GRANT:**  I THINK REALLY THE ISSUE THERE -- THEY

10   MADE A VERY BROAD HOLDING.  AND THEY BASICALLY SAID IN INSTANCES

11   WHERE THERE MIGHT BE SOME OVERLAP -- NOW I WOULD ALSO ARGUE THAT

12   THERE IS NO OVERLAP HERE WITH REGARD TO THE AMOUNT OF THE

13   BENEFIT THAT WAS EITHER LAWFULLY OBTAINED OR UNLAWFULLY OBTAINED

14   IS NOT AT ALL OVERLAPPING WITH INVENTORSHIP.

15            ALL OF THE -- ALL OF THE TESTIMONY THAT WE'VE HEARD

16   IN THE LAST MONTH HAD ACTUALLY NOTHING TO DO WITH MR. SHUM OR

17   ANYTHING IN THIS CASE.  THESE WERE ALL CONTRIBUTIONS THAT WERE

18   BROUGHT BY DR. VERDIELL AND A TEAM OF 70 PEOPLE WORKING AT --

19   THREE AND A HALF YEARS, EVEN MR. SHUM'S EXPERTS CONCEDED.

20            **THE COURT:**  THAT'S -- WE'RE TALKING ABOUT RIGHT NOW

21   IS SHOULD THE UNJUST ENRICHMENT GO TO THE JURY, NOT --

22            **MR. TANGRI:**  YES, I THINK --

23            **THE COURT:**  YOU SAY FEDERAL LAW TELLS ME, NO, IT

24   CAN'T GO.

25            **MS. GRANT:**  OH, I'M SORRY.  RIGHT.  UNDER THE NINTH

3757

1   CIRCUIT'S DECISION IN SEC VS. RIND CASE, THAT WOULD BE CORRECT.

2           **MR. JANSEN:**  YOUR HONOR, THIS IS A CALIFORNIA STATE

3   LAW CLAIM AND IT'S A CLAIM FOR DAMAGES FOR UNJUST ENRICHMENT.

4   THE LECTRODRYER CASE AND I THINK AT LEAST ONE OTHER CASE WE

5   CITED AND MAYBE -- WE CAN GET OTHER CITES FOR A CASE CALLED

6   FRANK, 142 CAL F.2D. IT'S 688 -- INVOLVED A JURY TRIAL ON UNJUST

7   ENRICHMENT.

8           **THE COURT:**  WELL, THEY GAVE ME --

9           **MR. JANSEN:**  SO THERE ARE A NUMBER OF CASES THAT

10  INVOLVE --

11          **THE COURT:**  WELL --

12          **MR. JANSEN:**  THERE ARE A NUMBER OF CASES THAT HAVE

13  RECOGNIZED THAT A JURY TRIAL ON UNJUST ENRICHMENT WAS

14  APPROPRIATE.  AND THE LECTRODRYER CASE ACTUALLY DISCUSSES AT

15  LENGTH AND RULED THAT LECTRODRYER HAD THE RIGHT TO A JURY TRIAL.

16  SO IT'S A STATE LAW CLAIM FOR DAMAGES, SO -- AND CERTAINLY,

17  WE'LL LOOK AT THEIR CASES, BUT UNDER THE SEVENTH AMENDMENT, IF

18  THERE'S A STATE LAW CLAIM FOR DAMAGES, THEN YOU'RE ENTITLED TO A

19  JURY TRIAL ON THAT.

20          **MS. GRANT:**  AND ONE THING I WOULD LIKE TO ADD BECAUSE

21  I THINK IT'S AN IMPORTANT MISCONCEPTION -- HE JUST SAID THIS IS

22  A CLAIM FOR DAMAGES.  IT IS NOT A CLAIM FOR DAMAGES.  A CLAIM

23  FOR UNJUST ENRICHMENT IS FOR RESTITUTION OR DISGORGEMENT, VERY

24  DIFFERENT AND DISTINCT FROM DAMAGES OR COMPENSATION, ET CETERA.

25          SO --

```
1              THE COURT:  IT'S ONLY DAMAGES IN A LAY SENSE.  OKAY.

2    SO NOT LEGALLY DAMAGES, BUT IT'S MONEY TO BE PAID BACK BY WAY OF

3    RESTITUTION OR DISGORGEMENT.

4              MS. GRANT:  CORRECT.

5              THE COURT:  ALL RIGHT.

6              MS. GRANT:  YES, AND -- AND I THINK JUST THE WAY THAT

7    THE COURT'S INSTRUCTIONS ARE PHRASED RIGHT NOW, IT'S MUCH MORE

8    ALONG THE LINES OF COMPENSATION AND DAMAGES VIS-A-VIS WHAT WOULD

9    COME IN A TORT CASE.

10             THE COURT:  ALL RIGHT.  ISSUE ONE, STAY HERE, GO TO

11   THE JURY.  AND, AS YOU SAY, IT'S A STATE LAW CASE, AND YOU SAY

12   GETTY TELLS ME FROM THE STATE LAW PERSPECTIVE THAT IT'S A

13   EQUITABLE CASE, IT DOESN'T GO FOR THE JURY?

14             MS. GRANT:  UNDER GETTY --

15             THE COURT:  THEY SAY UNDER LECTRODRYER, UNDER

16   CALIFORNIA LAW, IT GOES.

17             MS. GRANT:  AND I THINK THERE'S ALSO A DIFFERENCE

18   OF -- I THINK YOU'LL SEE WHEN YOU READ THE CASE, IT'S FACTUALLY

19   INAPPOSITE TO THIS ONE.

20             THE COURT:  OKAY.  ASSUME WE'RE STILL HERE.

21             MS. GRANT:  SO IF WE'RE STILL HERE, YOUR HONOR,

22   THAT'S WHY I GAVE YOU -- ASSUMING THAT WE WOULD STILL BE HERE OR

23   GETTING AN ADVISORY JURY --

24             THE COURT:  GREEN LINE.

25             MS. GRANT:  -- TRACKS WITH THE RESTATEMENT AND THE
```

```
1   CASE LAW THAT SAYS THERE HAS TO BE AN APPORTION OR DETERMINATION

2   OF THE -- ATTRIBUTABLE TO THE WRONG.  OTHERWISE, YOU WOULD BE

3   DISGORGING THINGS THAT WOULD BE A LAWFULLY OBTAINED BENEFIT OR

4   LEGITIMATELY OBTAINED BENEFIT.

5            AND THAT'S WHERE I WANTED TO JUST DRAW YOUR ATTENTION

6   TO THE STORAGE TECHNOLOGY CASE, STORAGE TECHNOLOGY, WHERE

7   BASICALLY THE COURT HELD THAT WHERE THAT APPORTIONMENT OR

8   DISAGGREGATION, IF YOU WILL, HAS NOT BEEN DONE, IT WAS OBVIOUSLY

9   A MISTAKE BECAUSE THERE WAS NO DETERMINATION BETWEEN WHAT WAS

10  LAWFULLY ACCOMPLISHED AND WHAT WAS UNLAWFULLY ACCOMPLISHED.  IT

11  WAS ALL --

12           AND THAT'S THE PROBLEM WE HAVE WITH THIS JUNCTURE,

13  YOUR HONOR, WITH THE PLAINTIFFS' EXPERTS.  YOU MIGHT REMEMBER ON

14  CROSS-EXAMINATION, MR. REGAN ADMITTED TO ME THAT HE DIDN'T

15  ATTEMPT TO VALUE EXCLUSIVITY AND THAT IT WAS A COMPONENT

16  SOMEWHERE IN HIS DAMAGE ANALYSIS.

17           THE COURT:  OKAY.  BUT YOU -- I DON'T KNOW THAT

18  THERE'S ANYTHING THAT SAYS AN EXPERT HAS TO TELL THE JURY WHAT

19  THE NUMBER IS.

20           MS. GRANT:  NO, YOU'RE ABSOLUTELY RIGHT.  I GUESS THE

21  PLAINTIFFS COULD HAVE COME UP WITH AN ARGUMENT, BUT THERE HAS TO

22  BE SOME -- SOME DISAGGREGATION.  I THINK THE RESTATEMENT MAKES

23  IT VERY CLEAR THAT THE PLAINTIFF HAS THE BURDEN OF COMING

24  FORWARD WITH A REASONABLE APPROXIMATION OF THE ILL-GOTTEN GAIN

25  THAT IS FAIRLY ATTRIBUTABLE --
```

1          **THE COURT:**  OKAY.

2              **MS. GRANT:**  -- TO THE WRONG.

3          **THE COURT:**  THEN I THINK I SHOULD GET THE NEXT STEP

4     BESIDES THE JURY IS, DOES THERE HAVE TO BE SOME KIND OF

5     MISCONDUCT, WRONGFUL CONDUCT, AS A PART OF THE -- THE CASE

6     ITSELF?  IS THAT, IN EFFECT, AN ELEMENT BEFORE THERE'S A

7     DISGORGEMENT AND A RESTITUTION?

8              **MS. ALBAN:**  WELL, OUR POSITION, AS WE CITE IN OUR

9     OBJECTIONS, IS THAT THE CASE LAW STATES THAT SUCH IS NOT THE

10    LAW.  AND ONE OF THE CASES WE CITED IS FRANK V. TAVARES, WHICH

11    MR. JANSEN JUST MENTIONED.  AND THE COURT THERE SAYS -- THE

12    CALIFORNIA COURT OF APPEALS CASE WHERE THE COURT SAYS,

13    "APPELLANT'S NEXT POINT IS THAT THE TRIAL COURT ERRED IN

14    INSTRUCTING THE JURY THAT IT COULD FIND A VERDICT FOR PLAINTIFF

15    ON THE THEORY OF UNJUST ENRICHMENT CONTENDING THAT UNDER SUCH A

16    THEORY OF RECOVERY, THERE MUST BE SOME WRONGDOING OR ACTUAL

17    FRAUD.  SUCH IS NOT THE LAW."

18              AND THEN LECTRODRYER, ALSO ALONG THE SAME LINES, SAYS

19    THAT --

20              **THE COURT:**  OKAY.

21              **MS. ALBAN:**  SO OUR POSITION IS NO --

22          **THE COURT:**  AND YOUR THESIS IS THAT IT'S NOT -- WHAT

23    ARE THE LIMITS, IF THERE ARE, TO UNJUST ENRICHMENT?

24              **MS. ALBAN:**  WELL, IN THIS CASE, WE DO BELIEVE THAT

25    THERE ACTUALLY WAS A WRONGDOING.  WE JUST FEEL THAT THE

```
 1    INCLUSION IN YOUR INSTRUCTIONS OF THE -- OF THE TERM

 2    "WRONGDOING" IS NOT NECESSARY BASED ON THE LAW IN CALIFORNIA.

 3            THE -- THE LIMITS OF THE UNJUST ENRICHMENT IN THIS

 4    CASE IS THE CLAIM OF FALSE EXCLUSIVITY AND THE RESULTING HARM.

 5        MS. GRANT:  AND, YOUR HONOR, I THINK THE -- WHAT

 6    SHE'S CITING TO ARE -- THERE'S A DIFFERENCE BETWEEN A FIDUCIARY,

 7    WHICH WE KNOW THIS CASE IS NOT, AND THAT OF WHAT THE RESTATEMENT

 8    CALLS A CONSCIOUS WRONGDOER.  AND I'LL JUST READ IT.  AND IT

 9    SAYS, THE UNJUST ENRICHMENT OF A CONSCIOUS WRONGDOER IS THE NET

10    PROFIT ATTRIBUTABLE TO THE UNDERLYING WRONG."

11            AND WHEN YOU LOOK THROUGH THE CASE LAW, IT'S ALL,

12    WHAT IS ATTRIBUTABLE TO THE WRONG, BECAUSE LET'S NOT FORGET THIS

13    IS AN EQUITABLE REMEDY, AND YOU CANNOT -- IT WOULD BE

14    INEQUITABLE TO DISGORGE MONIES THAT WERE LAWFULLY OR

15    LEGITIMATELY OBTAINED.  I MEAN --

16        THE COURT:  WELL, LET ME SEE WHAT -- WHAT WE'RE

17    TALKING ABOUT IN TERMS OF LIMITS.

18            IS THERE SOME -- SOME LIMIT AT ALL TO THE UNJUST

19    ENRICHMENT THEORY, OR IS IT -- IS THE SAME THING AS TORT

20    DAMAGES, SOMETHING LIKE THAT?

21        MR. JANSEN:  YOUR HONOR, I THINK WITH RESPECT TO

22    THE -- THE DAMAGE AMOUNT, IT'S THE AMOUNT -- AND I BELIEVE --

23    SPEAKING TO MS. ALBAN'S COMMENT ABOUT THE -- WHETHER THERE NEEDS

24    TO BE A WRONGFUL ACT, THE CASE LAW SAYS THERE DOESN'T NEED TO BE

25    A WRONGFUL ACT PER SE.  WE BELIEVE THERE IS IN THIS CASE, BUT WE
```

1    DON'T THINK YOU NEED TO INSTRUCT THE JURY HAS TO FIND A WRONGFUL

2    ACT.

3              THERE IS A BENEFIT AT THE PLAINTIFF'S EXPENSE.

4    THAT'S WHAT THE JURY NEEDS TO FIND.

5              **THE COURT:**  OKAY.

6         **MR. JANSEN:**  NOW, AS FAR AS WHAT THE MEASURE IS --

7              **THE COURT:**  FIRST START OUT WITH THE BENEFIT.  YOU

8    MEAN THAT'S -- SOMEHOW OR OTHER THAT'S SOMETHING THAT WE SHOULD

9    BE ABLE TO ASCERTAIN?  THAT'S A FACTUAL THING?  AND SO WHAT'S

10   THE LIMIT OF THE BENEFIT?

11        **MR. JANSEN:**  THE LIMIT OF THE BENEFIT, YOUR HONOR, IS

12   IN OUR VIEW, THE -- 50 PERCENT OF WHAT WAS OBTAINED BY

13   LIGHTLOGIC IN THE SALE TO INTEL, WHICH IS 209 --

14             **THE COURT:**  ALL RIGHT.  BUT SO THE BENEFIT IS --

15                  (SIMULTANEOUS COLLOQUY.)

16             **THE COURT:**  -- INTEL PAID OUT --

17        **MR. JANSEN:**  YES.

18             **THE COURT:**  -- TO START OUT --

19        **MR. JANSEN:**  AND IT'S ALSO -- AND THERE'S ALSO LESS

20   THE -- HALF OF THE $58.5 MILLION OF THAT THAT WENT TO VERDIELL.

21   SO YOU WOULD -- YOU WOULD DEDUCT -- MR. VERDIELL WOULD BE

22   POTENTIALLY LIABLE FOR HALF OF THE 58.5 HE RECEIVED IN

23   COMPENSATION.  AND LIGHTLOGIC WOULD BE POTENTIALLY LIABLE FOR --

24             **THE COURT:**  WHAT IS -- WHAT IS THE "AT THE EXPENSE

25   OF" CONCEPT?  I MEAN, IT'S -- AT THE EXPENSE OF MR. -- MR. SHUM

```
1    IF MONEY WERE GIVEN TO VENTURE CAPITALISTS?

2              MR. JANSEN:  THE EXPENSE OF --

3              THE COURT:  IF THE BENEFIT WENT TO SOME VENTURE

4    CAPITALISTS, HOW IS THAT AN EXPENSE OF MR. SHUM OR AT HIS

5    EXPENSE?

6              MR. JANSEN:  THE EXPENSE -- WHAT WAS AT MR. SHUM'S

7    EXPENSE WAS, AGAIN, THE SALE OF THE TRANSFER AND SALE OF

8    COMPLETE TITLE TO THESE INVENTIONS IN THE FORM OF PATENTS THAT

9    MR. SHUM SHOULD HAVE BEEN A COINVENTOR ON AND THAT HE SHOULD

10   HAVE BEEN IDENTIFIED AS BEING A CO-OWNER OF.

11             THE SALE OF THAT ENTIRE, RIGHT, TITLE, AND INTEREST,

12   WHICH I THINK THE EVIDENCE SHOWED WAS -- WERE INVENTIONS THAT

13   WERE HIGHLY -- WERE CONSIDERED VERY, VERY IMPORTANT TO INTEL'S

14   DETERMINATION --

15             THE COURT:  OKAY.

16             MR. JANSEN:  SO THAT WAS WHAT WAS SOLD TO INTEL, WAS

17   THE ENTIRE RIGHT, TITLE, AND INTEREST, NOT JUST MR. VERDIELL'S

18   HALF.

19             THE COURT:  OKAY.

20             MR. JANSEN:  AND THE UNJUST -- THE -- THE BENEFIT

21   THAT WAS KEPT FROM MR. SHUM WAS HIS -- HIS 50 PERCENT SHARE OF

22   THAT, WHICH WAS THE -- IT'S LIKE THE -- AGAIN, THE CO-OWNER IN A

23   PIECE OF REAL PROPERTY AND A PARTNER SELLS THAT ENTIRE PIECE OF

24   TITLE TO SOMEBODY ELSE --

25                       (SIMULTANEOUS COLLOQUY.)
```

1            **MS. GRANT:** -- TO HAVE THIS THEORY, WHICH, OF COURSE,

2  IS COMPLETELY CONTRADICTED BY THE EVIDENCE BECAUSE INTEL DIDN'T

3  CARE ABOUT PATENTS, AS YOU'VE HEARD.

4            BUT IF YOU WANT TO TAKE THE THEORY, THE UPPER BOUND

5  WOULD BE IF HE'S A 50/50 OWNER, WHICH HE'S NOT, WOULD BE HALF OF

6  DR. VERDIELL.  HOW COULD MR. SHUM IF -- USING THEIR THEORY,

7  WHICH WE THINK IS COMPLETELY WRONG IN THIS CASE, BUT IF MR. SHUM

8  IS A 50/50 OWNER WITH DR. VERDIELL, HOW COULD HE END UP WITH

9  MORE THAN DR. VERDIELL GOT.  THAT MAKES ABSOLUTELY NO SENSE.

10            AND EVEN WORSE, YOUR HONOR --

11            **THE COURT:**  IT'S NOT -- THEY'RE NOT ASKING IT TO BE

12  FROM MR. VERDIELL.  THEY'RE ASKING FOR IT TO COME FROM

13  LIGHTLOGIC.

14            **MS. GRANT:**  WELL --

15            **THE COURT:**  -- LIGHTLOGIC -- THEY SEE LIGHTLOGIC AS

16  SOMETHING THAT IS TOTALLY DIFFERENT.  AND THEY SAY LIGHTLOGIC

17  HAS GOT -- THEY SOLD IT, AND THEY GOT 400 MILLION AND THAT --

18  ALL OF THAT WAS DONE AT THE EXPENSE OF MR. SHUM.

19            **MS. GRANT:**  WELL, OF COURSE, WE DISPUTE THAT, BUT I

20  DO THINK NOW YOU'RE BACK TO DID LIGHTLOGIC RECEIVE ANY STOCK.

21  AND WE KNOW AND THEY'VE ADMITTED IT WENT TO THE SHAREHOLDERS.

22            **THE COURT:**  RIGHT.

23            **MS. GRANT:**  AND HE ADMITTED THAT SHAREHOLDERS DIDN'T

24  DO ANYTHING WRONG.  SO WHAT HAPPENS IS, YOUR HONOR, WHEN YOU

25  BACK OUT THE MONEY THAT THE SHAREHOLDERS GOT, YOU'RE LEFT WITH

1    THE MONEY THAT DR. VERDIELL GOT.

2         **THE COURT:**  RIGHT.

3         **MS. GRANT:**  YOU BACK IT ALL OUT, THAT'S THE

4    50 MILLION.  SO THAT WOULD ALWAYS BE THE UPPER BOUND.  BUT EVEN

5    THEN THEY'VE ADMITTED THAT SHUM IS A HALF OWNER, SO IT WOULD BE

6    HALF OF THAT.

7         BUT HERE'S THE PROBLEM.  WE KNOW FROM THE TESTIMONY

8    OF THIS CASE THAT MR. VERDIELL, HALF OF HIS MONEY CAME FROM WHAT

9    HE DID AT INTEL.  THIS ILLUSTRATES THE PROBLEM THAT -- THAT THEY

10   HAVE NOT DONE WHAT IS UNDER THE RESTATEMENT SECTION 1D, A

11   CLAIMANT WHO SEEKS DISGORGEMENT --

12        **THE COURT:**  ALL THAT MEANS IS THAT WHAT YOUR POSITION

13   IS THAT THE DISAGGREGATION, OR WHATEVER IT MAY BE, IS OF 29 --

14   $29 MILLION BUCKS.  $29 MILLION.  THAT'S HALF OF -- THERE SHOULD

15   BE DISAGGREGATION IN THE SENSE THAT NOT ALL OF THE 50/50 GOES TO

16   MR. SHUM, ONLY THAT PART THAT IS ATTRIBUTABLE TO THE MISCONDUCT.

17        **MS. GRANT:**  CORRECT.  AND THAT'S WHY WE THINK THE

18   INSTRUCTION HAS TO SAY THE ATTRIBUTABLE TO THE WRONG TO MAKE

19   SURE THAT THE JURY -- NOW WE GAVE A VALUE TO WHAT WE THOUGHT IS

20   THE VALUE OF FALSE EXCLUSIVITY.  IT'S $250,000.  BUT THE JURY

21   NEEDS TO KNOW THAT IT'S THE WRONGFUL CONDUCT.

22        **THE COURT:**  OKAY.  BUT THE -- THEY CAN DO IT FROM A

23   DISAGGREGATION OF A LIMITATION.  AS FAR AS YOU'RE CONCERNED, THE

24   LIMIT IS $29 MILLION.  THEN THEY DISAGGREGATE.  YOU'RE SAYING IT

25   SHOULD -- THE LIMIT IS SOMETHING ELSE.  IT'S A FUNCTION OF HALF

```
 1   OF WHAT WENT TO LIGHTLOGIC.

 2           MR. JANSEN:  THE 50/50 OWNERS WERE NOT MR. VERDIELL

 3   AND MR. SHUM.  WHEN THIS OCCURRED, WHEN THE -- WHEN THE UNJUST

 4   ENRICHMENT OCCURRED, MR. VERDIELL HAD NO OWNERSHIP INTEREST

 5   BECAUSE HE'D ASSIGNED IT ALL TO LIGHTLOGIC.  LIGHTLOGIC AND

 6   MR. SHUM WERE, AT THAT POINT, THE 50/50 OWNERS.  LIGHTLOGIC

 7   AND --

 8           IT'S NOT JUST MR. SHUM THAT DID THIS.  WE HEARD

 9   MR. BALDRIDGE TESTIFY.  WE HEARD -- WE HEARD MR. BRUCE GRAHAM

10   TESTIFY THAT THEY -- IN DECEMBER OF -- OF 19 -- OF 2000,

11   RECOGNIZED THAT THEY BELIEVED THERE WAS A -- A PROBLEM IN THE

12   MARKET AND THEY NEEDED TO FIND A BUYER AS SOON AS POSSIBLE, AND

13   THEY WENT TO LOOK FOR A BUYER LIKE INTEL.

14           THE COURT:  RIGHT.

15           MR. JANSEN:  MR. BALDRIDGE TESTIFIED HE REALLY DIDN'T

16   CARE ABOUT MR. SHUM'S RIGHTS.  HE JUST WANT TO MAKE THAT SALE SO

17   MR. VERDIELL AT THIS POINT HAD TRANSFERRED HIS INTEREST TO

18   LIGHTLOGIC.  LIGHTLOGIC EXECUTIVES AND LIGHTLOGIC SOLD THE

19   ENTIRE RIGHT, TITLE, AND INTEREST, AND THEY RECEIVED AN AMOUNT

20   OF $409 MILLION.

21           AND OUR EXPERTS HAVE DONE THEIR BEST JOB TO TRY AND

22   BACK OUT WHAT OF THAT WAS ATTRIBUTABLE TO THE INTELLECTUAL

23   PROPERTY.  THEY'RE NOT CLAIMING AND THEY TESTIFIED THEY DID

24   THEIR BEST JOB TO IDENTIFY THE INTELLECTUAL PROPERTY PORTION OF

25   THAT AS BEING APPROXIMATELY EITHER 320 MILLION OR 340, YOU KNOW,
```

1    DEPENDING ON THE METHODOLOGY USED.

2            NOW -- AND THIS GOES BACK AGAIN TO THE COMMINGLING

3    ISSUE AND THE PERCEPTION THAT WE -- WE CAN ONLY DO SO MUCH TO,

4    QUOTE, DISAGGREGATE.  BUT WE'VE ACTUALLY GOT A PROPOSED JURY

5    INSTRUCTION, NO. 14, WHICH POINTS OUT THAT IT'S REALLY THE

6    DEFENDANTS' BURDEN AT SOME LEVEL TO DISAGGREGATE WHEN THEY'VE

7    COMMINGLED THESE TWO INTANGIBLES TOGETHER TO OBTAIN A BENEFIT --

8            **MS. GRANT:**  ACTUALLY, YOUR HONOR, THE STATEMENT SAYS

9    THAT THE CLAIMANT WHO SEEKS A DISGORGEMENT REMEDY HAS THE

10   BURDEN -- HAS THE BURDEN OF PRODUCING EVIDENCE, PERMITTING AT

11   LEAST A REASONABLE APPROXIMATION OF THE AMOUNT OF THE WRONGFUL

12   GAIN.

13           NOW, WHEN THEY DO THAT, WHICH THEY HAVEN'T DONE, BUT

14   WHEN THEY DO THAT, THE BURDEN SHIFTS TO DISAGGREGATION.  NOW, WE

15   DID DISAGGREGATE.  WE ACTUALLY VALUED THE ONE THING THAT'S AT

16   ISSUE IN THIS CASE, WHICH IS WHAT IS THE VALUE OF HAVING

17   EXCLUSIVE RIGHTS AS OPPOSED TO USE RIGHTS.  IT'S BETWEEN 250,000

18   TO $500,000.

19           WHAT THEY HAVE NOT DONE IS DONE THEIR OWN REASONABLE

20   APPROXIMATION FROM THE WRONG.  BUT RATHER THAN DEBATE THE FACTS

21   HERE, I ACTUALLY THINK WHAT'S IMPORTANT IS TO GET BACK TO THE

22   JURY INSTRUCTION.  AND ALL WE'RE ASKING IS THAT THE JURY

23   INSTRUCTION, IF IT'S GOING TO GO TO THE JURY, THERE BE AN

24   INSTRUCTION THAT'S CONSISTENT WITH THE RESTATEMENT WHICH ALWAYS

25   LINKS THE -- THE AMOUNT OF THE ILL-GOTTEN GAIN TO THE

 1   ATTRIBUTE -- ATTRIBUTION TO THE WRONG.  THAT'S BASICALLY A FORM

 2   OF EQUITABLE CAUSATION.

 3            AND WE THINK THAT MUST GO TO THE JURY SO THAT THEY

 4   UNDERSTAND THAT THEY DON'T DISGORGE THINGS THAT HAVE NOTHING TO

 5   DO WITH MR. SHUM.  THAT WOULD BE INEQUITABLE.

 6            **THE COURT:**  YOU SAID YOU HAD A PROPOSED INSTRUCTION?

 7            **MR. JANSEN:**  I DO, YOUR HONOR.  I COULD HAND IT UP TO

 8   YOU.  IT'S -- THERE'S A NUMBER OF CASES HERE THAT ARE CITED FOR

 9   OUR AUTHORITIES -- I'LL HAND UP THE ENTIRE PACKAGE, BUT IT'S

10   PROPOSED INSTRUCTION NO. 14.

11            **THE COURT:**  OKAY.

12            **MR. JANSEN:**  AND I THINK ALL THE CASES IN THE --

13   UNDER THE AUTHORITIES STAND FOR THIS PROPOSITION.  BUT ONE OF

14   THEM IS THE SEC VS. FIRST CITY FINANCIAL CORPORATION, WHICH IS

15   CITED THERE, 890 F.2D. 1215, 1232, HOLDING THAT ONCE A PLAINTIFF

16   CLAIMING UNJUST ENRICHMENT HAS MADE CALCULATIONS THAT REASONABLY

17   APPROXIMATE THE AMOUNT OF THE DEFENDANTS' UNJUST GAINS, THE

18   BURDEN IS ON THE DEFENDANT TO DISAGGREGATE THE AMOUNTS IT

19   CONTENDS DO NOT RELATE TO THE BENEFITS RECEIVED.

20            AND THEN THERE'S OTHER CASES UNDER THAT SAME LINE OF

21   AUTHORITIES.  YOU KNOW, SO --

22            **MS. GRANT:**  AND, YOUR HONOR, IF I MAY POINT OUT, WE

23   DID READ EVERY ONE OF THE CASES CITED, AND EVERY SINGLE CASE

24   UPON WHICH MR. SHUM CITES AND RELIES IS A CASE WHERE THE

25   PLAINTIFF GAVE SOME PROPERTY TO THE DEFENDANT AND WAS SEEKING IT

1  BACK.  THEY ARE NOT DISGORGEMENT OF PROFITS BASED ON BENEFITS

2  CREATED BY A THIRD PARTY.

3          THIS IS A -- SO THE CASES THEY CITE ARE VERY

4  DIFFERENT THAN THE FACTUAL CIRCUMSTANCES THAT ARE AT ISSUE IN

5  THIS CASE WHERE MR. SHUM DIDN'T GIVE ANYTHING DIRECTLY TO

6  LIGHTLOGIC AND IS TRYING TO GET SOMETHING BACK.  IT'S -- IT'S A

7  DIFFERENT ANIMAL.

8          SO THOSE CASES ARE NOT THE SAME.

9          **THE COURT:**  WHEN YOU WERE TALKING ABOUT

10  MR. BALDRIDGE, ARE YOU ARGUING THAT IF I ASSUME THAT THERE HAD

11  TO BE WRONGFUL CONDUCT, THAT HE ENGAGED IN WRONGFUL CONDUCT?

12          **MR. JANSEN:**  NO.  I THINK THE WRONGFUL CONDUCT WAS OF

13  LIGHTLOGIC IN -- IN TRANSFERRING ALL RIGHT, TITLE, AND INTEREST

14  IN INVENTIONS IN WHICH -- WHICH LIGHTLOGIC KNEW BY VIRTUE OF THE

15  IMPUTED KNOWLEDGE OF MR. VERDIELL AT THE VERY LEAST THAT IT

16  DIDN'T HAVE ENTIRE RIGHT, TITLE, AND INTEREST TO.

17          **MS. GRANT:**  CAN I JUST MAKE ONE POINT THAT I FIND

18  QUITE INTERESTING ABOUT COUNSEL'S ARGUMENT.

19          HE'S TESTIFIED -- HE HAS MENTIONED AND HIS EXPERTS

20  HAVE MENTIONED THAT THE UNJUST ENRICHMENT OCCURRED AT THE TIME

21  OF THE ACQUISITION IN MAY OF 2001.  THEY'VE SAID THAT

22  REPEATEDLY.

23          THE -- LIGHTLOGIC DID NOT TRANSFER AND ASSIGN ANY

24  RIGHTS UNTIL, YOU MIGHT REMEMBER FROM MS. SILVA, 2003.  SO I DO

25  THINK THAT'S A FACT WORTH NOTING, THAT THEY KEEP SAYING THAT

1    LIGHTLOGIC TRANSFERRED SOMETHING -- THAT THE ASSIGNMENTS THAT

2    LIGHTLOGIC SENT OVER TO INTEL WERE DATED IN JUNE OF 2003, AFTER

3    THE UNJUST ENRICHMENT ALLEGEDLY OCCURRED BY THEIR OWN --

4              **THE COURT:**  THAT MEANS THAT LIGHTLOGIC RETAINED

5    SOMETHING EVEN THOUGH ALL THE STOCK HAD GONE TO OTHER PEOPLE.

6              **MS. GRANT:**  PARDON ME?

7              **THE COURT:**  LIGHTLOGIC MUST HAVE HAD SOMETHING

8    THEY'RE GIVING AWAY OTHER THAN ALL OF THE INTEL STOCK THAT WENT

9    OFF TO THE SHAREHOLDERS.

10             SO ONE OF YOUR ARGUMENTS IS THAT IT ALL WENT TO THE

11   SHAREHOLDERS; THEREFORE, LIGHTLOGIC HAS NOTHING.  BUT YOU'RE

12   SAYING THAT LIGHTLOGIC DIDN'T EVEN GET RID OF IT UNTIL YEARS

13   LATER OR A YEAR LATER.

14             **MS. GRANT:**  TWO YEARS LATER.

15             **THE COURT:**  SO WHAT WAS IT THEY WERE GIVING AWAY?

16             **MS. GRANT:**  WELL, WE DON'T THINK THOSE RIGHTS HAVE

17   ANY VALUE, THAT -- WHEN YOU LOOK AT THE TESTIMONY OF THIS

18   CASE --

19             **THE COURT:**  I KNOW.  I KNOW.

20             **MS. GRANT:**  -- NOT ONE WITNESS SAID THAT THEY PAID --

21   THAT INTEL PAID MONEY BECAUSE OF ASSIGNMENTS OR EXCLUSIVITY OR

22   PATENTS.  THEY PAID FOR THE PEOPLE --

23             **THE COURT:**  I TRIED TO FIGURE OUT WHAT THEY ARE, BUT

24   YOU'RE SAYING THAT LIGHTLOGIC DISAPPEARED WHEN THE SALE TOOK

25   PLACE AND ALL OF THE INTEL STOCK WENT TO THE SHAREHOLDERS.  AND

1   SO THEN A YEAR OR SO LATER, LIGHTLOGIC SIGNED SOMETHING AND

2   SUPPOSEDLY TRANSFERRED SOMETHING.  BUT THERE WASN'T A LIGHTLOGIC

3   THEN, AND THEY WERE ALL GONE.  SO WHAT HAPPENED?  WHAT WAS THAT?

4               **MR. TANGRI:**  WELL, ONE THING THAT'S CLEAR IS THEY

5   DIDN'T GET ANY VALUE AT THAT TIME, THE VALUE HAD GONE TO THE

6   SHAREHOLDERS PREVIOUSLY.

7               **THE COURT:**  I KNOW THAT.  SO THERE WAS NOTHING IN

8   EXISTENCE.

9               **MS. GRANT:**  RIGHT.

10              **THE COURT:**  SO IF -- THAT MEANS WHEN THEY TRANSFERRED

11  SOMETHING OR SIGNED SOMETHING TO INTEL, THERE WASN'T ANYTHING TO

12  TRANSFER.

13              **MS. GRANT:**  WELL, I MEAN --

14              **THE COURT:**  IS THAT RIGHT?

15              **MS. GRANT:**  I DON'T KNOW THAT ANY OF US CAN FIGURE

16  OUT SOME OF THESE ASSIGNMENT DOCUMENTS AND THE WAY THESE THINGS

17  WORK, BUT I DO THINK WHAT IS UNDISPUTED IN THIS CASE, THERE ARE

18  TWO THINGS UNDISPUTED.  ONE, LIGHTLOGIC LOST MONEY.  THEY LOST,

19  I THINK, $9 MILLION DOLLARS, AND THE SECOND THING IS MONEY WENT

20  TO THE SHAREHOLDERS AND THE EMPLOYEES WHO HAD THEIR STOCK

21  OPTIONS.

22              THE -- LIGHTLOGIC, THE CORPORATION, DIDN'T GET A

23  PENNY, SO THERE'S NOTHING TO DISGORGE.  THEY WOULD HAVE TO SUE

24  PEOPLE LIKE MR. BALDRIDGE AND JONAS WEBJORN --

25              **THE COURT:**  THAT'S ONE OF THE THINGS I WAS SAYING,

1    ONE OF THE CONCEPTS IS THAT SOMEBODY IS HOLDING ON TO YOUR

2    PROPERTY AND YOU CAN GET IT BACK.  BUT LIGHTLOGIC ISN'T HOLDING

3    ON TO ANYTHING.  I MEAN, THEY HAD IT FOR A MINUTE, BUT IT WENT

4    THROUGH.

5                        (SIMULTANEOUS COLLOQUY.)

6            **MS. GRANT:**  BALDRIDGE GOT $15 MILLION, AND IF THEY

7    WANTED IT, THEY SHOULD HAVE SUED HIM.  BUT TO TRY AND HAVE

8    LIGHTLOGIC DISGORGE SOMETHING THAT IT NEVER GOT IS CONTRARY TO

9    CALIFORNIA LAW.

10           **THE COURT:**  WHAT -- WHAT IS IT THERE -- IF YOU SAY TO

11   YOURSELF, THE WHOLE NOTION OF THIS UNJUST ENRICHMENT IS

12   SOMEBODY'S GOT SOMETHING THAT BELONGS TO SOMEBODY ELSE, I SHOULD

13   GIVE IT BACK, THEY NEVER HAD ANYTHING AND THEY DON'T HAVE

14   ANYTHING NOW.  HOW CAN THEY BE HELD TO GIVE IT BACK.

15           **MR. JANSEN:**  LIGHTLOGIC OBTAINED THE BENEFIT WHICH IT

16   WAS SEEKING OF A $409 MILLION PAYMENT, WHICH IT OBTAINED ON

17   BEHALF OF ITS SHAREHOLDERS.

18           **THE COURT:**  RIGHT.

19           **MR. JANSEN:**  AS ALL CORPORATIONS DO.  SO IT DID

20   OBTAIN A BENEFIT.

21           WE BELIEVE IT ACTED -- IT IS THE ENTITY WHICH IS

22   LIABLE FOR UNJUST ENRICHMENT BECAUSE IT'S THE ONE THAT

23   TRANSFERRED THE PROPERTY --

24           **THE COURT:**  TO THE SHAREHOLDERS.

25           **MR. JANSEN:**  -- TO INTEL.  IT TRANSFERRED PROPERTY TO

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-8404*

1    INTEL.  IT RECEIVED A BENEFIT WHICH IT CHOSE TO DISTRIBUTE,

2    WHICH, I THINK, AS A CORPORATION THAT WAS WINDING DOWN, AT SOME

3    LEVEL HAD TO DISTRIBUTE THAT PROPERTY, BUT THAT DOESN'T MEAN

4    THAT WE CAN SUE THE INDIVIDUAL SHAREHOLDERS.  WE'D BE GOING

5    UNDER SOME KIND OF ALTER EGO THEORY, NUMBER ONE.

6              **THE COURT:**  BUT THEY'RE NOT HOLDING ANYTHING AT THE

7    EXPENSE OF MR. SHUM, AND THEY DIDN'T DO ANYTHING WRONG.

8              **MR. JANSEN:**  THEY DID NOTHING WRONG.

9                    (SIMULTANEOUS COLLOQUY.)

10             **MR. JANSEN:**  THAT'S WHY THE REMEDY'S AGAINST

11   LIGHTLOGIC.  IT'S THE ONE THAT OBTAINED THE BENEFIT, AND IT

12   CHOSE TO DISTRIBUTE THAT TO ITS SHAREHOLDERS AS WAS, IN A SENSE,

13   ITS OBLIGATION TO ITS SHAREHOLDERS.

14             **THE COURT:**  OKAY.

15             **MR. JANSEN:**  THAT DOESN'T MEAN --

16             **MS. GRANT:**  WELL, COUNSEL SAYS THAT LIGHTLOGIC IS

17   ACTING THROUGH AND ON BEHALF OF THE -- THEIR SHAREHOLDERS.  IF

18   THE SHAREHOLDERS DID NOTHING WRONG, THEN OBVIOUSLY LIGHTLOGIC

19   DID NOTHING WRONG.

20             **THE COURT:**  BUT ONE OF THE SHAREHOLDERS IS

21   MR. VERDIELL.

22             **MS. GRANT:**  WELL, BUT -- THAT'S MY POINT, YOUR HONOR.

23   SO WHEN YOU BACK OUT ALL OF THE MONEY FOR -- THAT WENT TO THE

24   EMPLOYEES AND THE SHAREHOLDERS, WHICH THEY'RE IMPERMISSIBLY

25   INCLUDING NOW --

```
 1                 THE COURT:  YOUR INSTRUCTIONS DON'T DO THAT.

 2                 MS. GRANT:  PARDON ME?

 3                 THE COURT:  YOUR INSTRUCTIONS DON'T DO THAT.  THEY

 4      DON'T BACK OUT ANYTHING.

 5                 MS. GRANT:  NO, OBVIOUSLY I DON'T THINK IT DOES THAT.

 6      IT WOULD IF LIGHTLOGIC WAS --

 7                 THE COURT:  WELL, THEY CAN BY YOUR ARGUMENT.

 8                 MS. GRANT:  RIGHT.

 9                 THE COURT:  OKAY.

10                 MS. GRANT:  BUT I DO THINK LIGHTLOGIC SHOULD BE

11      DISMISSED FROM THE CASE.

12                 THE COURT:  OKAY.

13                 MR. JANSEN:  I GUESS, YOUR HONOR, ON THE UNJUST -- I

14      DON'T KNOW HOW YOU WANT TO PROCEED ON THE -- THE UNJUST

15      ENRICHMENT INSTRUCTIONS.  WE BELIEVE THAT YOUR PROPOSED

16      INSTRUCTIONS, FOR THE MOST PART, WAS -- WAS APPROPRIATE.  EXCEPT

17      FOR THE FACT THAT THERE WAS -- THERE WAS ONE STATEMENT, I THINK,

18      AS PART OF YOUR INSTRUCTION ON PAGE 16 -- YOU HAVE A PARAGRAPH,

19      THE SECOND FULL PARAGRAPH THAT STATES YOU MAY NOT MAKE A FINDING

20      OF UNJUST ENRICHMENT IF YOU FIND THAT AN EXPRESS BINDING

21      AGREEMENT EXISTED AND DEFINED THE PARTIES RIGHT WITH RELATION TO

22      THE BENEFIT.

23                 WE BELIEVE THAT'S MORE OF A LEGAL ISSUE THAN A

24      FACTUAL ISSUE FOR THE JURY, AND WOULD SUGGEST THAT BE NOT PART

25      OF THE JURY'S INSTRUCTION.  OTHER THAN THAT, I THINK, WE -- WE
```

1    FEEL THAT YOUR INSTRUCTIONS IS APPROPRIATE.

2              **THE COURT:**  OKAY.

3              **MR. JANSEN:**  ALTHOUGH WE DID SUGGEST, I THINK, THAT

4    THERE BE ON THE DAMAGES SIDE, A STATEMENT OF THE DEFENDANTS HAVE

5    SOME BURDEN TO DISAGGREGATE DAMAGES ONCE WE HAVE MADE OUR

6    SHOWINGS, WHICH I THINK WE HAVE MADE THAT BASIC LEVEL REGARDING

7    THE AMOUNT OF APPROPRIATE DAMAGES.

8              **THE COURT:**  AND HOW WOULD -- WHAT WOULD I RELY UPON

9    FOR THE LEGAL CONCLUSION AS TO THE EXISTENCE OF THE CONTRACT?

10   IN OTHER WORDS, I MEAN, I WOULD MAKE FACTUAL FINDINGS ABOUT

11   THAT --

12             **MR. JANSEN:**  I'M NOT SURE.  IT SEEMED TO ME THAT IT

13   WAS MERELY A MATTER OF LAW FOR YOU, BUT --

14             **THE COURT:**  OKAY.

15             **MR. JANSEN:**  IF YOU BELIEVE IT'S A QUESTION OF FACT

16   FOR THE JURY.

17             **THE COURT:**  WELL --

18             **MR. JANSEN:**  MAYBE WE SUBMIT THAT TO THE JURY, THEN,

19   YOUR HONOR.

20             **THE COURT:**  OKAY.

21             **MR. TANGRI:**  AND, YOUR HONOR, JUST TO SORT OF WRAP UP

22   ON UNJUST ENRICHMENT, FIRST OFF, I THINK IT'S CLEAR WE SUBMITTED

23   ALTERNATIVE INSTRUCTIONS.  WE DO OBJECT TO THE COURT'S

24   INSTRUCTION.

25             IT'S A -- IT IS A -- WE BELIEVE IT IS AN ISSUE FOR

1   THE COURT.  WE BELIEVE THAT THE QUESTION WHETHER IT'S AN ISSUE

2   FOR THE COURT IS A QUESTION OF FEDERAL LAW, NOTWITHSTANDING THAT

3   IT'S A STATE LAW CLAIM, THE SEVENTH AMENDMENT DECIDES, AS A

4   MATTER OF THE FEDERAL LAW, WHETHER SOMETHING GOES TO A JURY OR

5   NOT.

6               IT'S NOT LIKE YOUR REVERSE THOMPKINS.  IT'S -- YOU

7   LOOK AT THE RIGHT AS IT EXISTED IN 1789, AND IT'S CLEAR UNDER

8   FEDERAL LAW WITH REASONS THE CASES MS. GRANT STATED IT GOES TO

9   THE COURT.

10          **THE COURT:**  IT'S A STATE LAW CLAIM THAT HAS A FEDERAL

11  RULE FOR JURY OR NON-JURY.

12          **MR. TANGRI:**  CORRECT.  CORRECT, BUT IT'S -- BUT

13  ANY -- I MEAN, ANY CLAIM THAT'S A STATE LAW CLAIM HAS -- HAS

14  THAT.

15              AND -- AND, FURTHERMORE, I'VE BEEN -- IF YOU WERE TO

16  LOOK AT IT AS A STATE LAW -- EVEN IF YOU WERE TO LOOK AT STATE

17  LAW TO DECIDE WHETHER THE CASE GOES TO A JURY OR NOT, WHICH WE

18  DON'T THINK IS THE APPROPRIATE INQUIRY UNDER STATE LAW, BECAUSE

19  IT IS A WRONGFUL ACT CASE INVOLVING THE PROPERTY OF A THIRD

20  PARTY, NOT A RETURN OF PROPERTY CASE, IT GOES TO THE -- IT GOES

21  TO THE COURT.

22          **THE COURT:**  OKAY.

23          **MR. TANGRI:**  AND ON THE QUESTION ABOUT THE CONTRACT,

24  WE'VE -- I MEAN, WE'VE ALWAYS MAINTAINED -- AS, YOU KNOW, WE

25  FILED MOTIONS ON THIS -- THAT THEY ARE TRYING TO HAVE BOTH OF

```
 1   THESE.  AND WE TRIED TO ARGUE EARLIER TODAY THAT THE CONTRACT

 2   DOESN'T PREVENT PATENTING, WRONGFUL OR OTHERWISE.  IT MAY NOT

 3   GRANT YOU PERMISSION, BUT IT DOES NOT PREVENT IT.

 4            IF THEY'RE GOING TO THE JURY ON A THEORY THAT THE

 5   CONTRACT PREVENTS THAT, THEN IT'S NOT UNJUST ENRICHMENT.  IF

 6   IT'S UNJUST ENRICHMENT, THEN IT DOESN'T GO TO THE JURY TO BE

 7   CONTRACT ISSUE.

 8            THE COURT:  OKAY.  ALL RIGHT.

 9            WHAT IF WE DO THIS AGAIN TOMORROW.

10            MR. TANGRI:  SOUNDS LIKE FUN.

11            MS. GRANT:  SO MUCH FUN.

12            THE COURT:  1:30?  AND THE THEORY WILL BE THAT I CAN

13   FIGURE OUT EVERYTHING WE LEFT UP FOR GRABS, AND I'LL SEE IF I

14   CAN GET SOME LANGUAGE FOR IT AND TELL YOU WHETHER IT'S GOING TO

15   BE -- WE MAY DEBATE IT AFTERWARDS, BUT ULTIMATELY THE DEBATE

16   COMES DOWN TO WHAT I'M GOING TO DO.

17            MR. TANGRI:  RIGHT.  THAT'S --

18            MR. JANSEN:  RIGHT THAT YOU --

19            THE COURT:  YOU WILL TELL YOU WHAT IT IS.  THE OBJECT

20   IS TO GET US INTO POSITION BY THE END OF TOMORROW AFTERNOON TO

21   KNOW WHAT THE INSTRUCTIONS ARE GOING TO BE.

22            MR. TANGRI:  SO WE CAN ARGUE.

23            MR. JANSEN:  VERY GOOD.  PERFECT.

24            MR. TANGRI:  THANK YOU.

25            MS. GRANT:  THANK YOU, YOUR HONOR.
```

1          (PROCEEDINGS WERE CONCLUDED AT 5:46 P.M.)

2                          --oOo--

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    **CERTIFICATE OF REPORTER**

4          I, RAYNEE H. MERCADO, OFFICIAL REPORTER FOR THE UNITED

5    STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY

6    THAT THE FOREGOING PROCEEDINGS IN C02-3262DLJ, SHUM V. INTEL,

7    ET AL. AND RELATED CROSS-ACTIONS, WERE REPORTED BY ME, A

8    CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED

9    UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A

10   FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY

11   ME AT THE TIME OF FILING.

12          THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID

13   TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE

14   COURT FILE.

15

16   _____

17          RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR

18             TUESDAY, DECEMBER 16, 2008

19

20

21

22

23

24

25

**RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-8404**