UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA          *ORIGINAL*

BEFORE THE HONORABLE D. LOWELL JENSEN, JUDGE

| | | |
|---|---|---|
| FRANK T. SHUM, | ) | **JURY TRIAL** |
| | ) | |
| PLAINTIFF, | ) | **VOLUME 18** |
| | ) | |
| VS. | ) | NO. C 02-3262 DLJ |
| | ) | |
| INTEL CORPORATION, | ) | |
| JEAN-MARC VERDIELL AND | ) | **PAGES 3780 - 3841** |
| LIGHTLOGIC, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | OAKLAND, CALIFORNIA |
| _____ | ) | TUESDAY, DECEMBER 16, 2008 |

### TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFF:       TOWNSEND AND TOWNSEND AND CREW LLP
                  TWO EMBARCADERO CENTER, EIGHTH FLOOR
                  SAN FRANCISCO, CALIFORNIA  94111-3834
          BY:  TALI L. ALBAN,
               MARK T. JANSEN,
               ROBERT A. MCFARLANE, ATTORNEYS AT LAW

FOR DEFENDANTS:      TAYLOR & CO. LAW OFFICES
                  ONE FERRY BUILDING SUITE 355
                  SAN FRANCISCO, CALIFORNIA  94111
          BY:  JESSICA GRANT,
               STEPHEN MCGEORGE BUNDY,
                  ATTORNEYS AT LAW

                  KEKER & VAN NEST
                  710 SANSOME STREET
                  SAN FRANCISCO, CALIFORNIA  94111-1704
          BY:  DANIEL E. JACKSON,
               RAGESH K. TANGRI, ATTORNEYS AT LAW

REPORTED BY:        RAYNEE H. MERCADO, CSR NO. 8258

```
 1   TUESDAY, DECEMBER 16, 2008                        1:32 P.M.

 2                    P R O C E E D I N G S

 3            (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE

 4   PRESENCE OF THE JURY:)

 5            THE COURT:  ALL RIGHT.  WHAT YOU HAVE IS THE

 6   RESPONSE TO YESTERDAY, I GUESS.  I THINK WE'VE GONE THROUGH

 7   EVERYTHING.  THAT -- THE IDEA WAS TO MAKE ALL THE MODIFICATIONS

 8   THAT WE TALKED ABOUT AND MAKE THE DECISIONS IN TERMS OF SOME OF

 9   THE ISSUES.

10            YOU SHOULD GO THROUGH IT AND SEE IF WE LEFT

11   SOMETHING OUT THAT'S SIGNIFICANT OR IF YOU THINK SHOULD --

12   THERE'S SOME ERRORS IN THERE, YOU SHOULD LET ME KNOW.  SO I'M

13   GOING TO SAY, WE'RE GOING TO GIVE YOU A HALF HOUR TO READ ALL

14   THIS STUFF AND THEN WE'LL GET BACK AND WE'LL GO THROUGH A

15   SESSION TO JUST CLEAN IT UP, AND THEN WE'LL KNOW EXACTLY WHAT

16   WE HAVE.

17            I MAY TELL YOU THAT, FOR EXAMPLE, I DIDN'T -- I

18   DIDN'T CHANGE THE DAMAGES TO LIMIT IT TO OUT-OF-POCKET.  I

19   THINK I BASICALLY LEFT THE DAMAGE INSTRUCTION AS IT WAS.  I --

20   I GAVE YOU INSTRUCTIONS OR PUT IN INSTRUCTIONS IN TERMS OF

21   WHAT'S A LAWFUL PATENT.

22            AND THEN THERE -- THE ISSUE IN TERMS OF OWNERSHIP,

23   TRIED TO TAKE A LOOK AT THAT.  I LOOKED AT THE CASES THAT YOU

24   GAVE ME AND THE CASE THAT, IN EFFECT, WAS TALKING ABOUT

25   OWNERSHIP IN TERMS OF IT VESTS AT THE TIME SOMEBODY IS WORKING
```

```
 1    FOR THE COMPANY.

 2                I THINK THAT CASE BASICALLY SAYS YOU LOOK AT

 3    AGREEMENT BY AGREEMENT.  AND LOOKING AT THIS AGREEMENT, I

 4    RESOLVED IT ON THE BASIS THAT THE -- WHEN THE PROPERTY WAS

 5    DISTRIBUTED AT THE TIME OF DISSOLUTION, IT DID NOT TRANSFER

 6    OWNERSHIP RIGHTS IN FUTURE PATENTS.  THE OWNERSHIP RIGHTS IN

 7    FUTURE PATENTS DEPENDED UPON THE INVENTOR INVENTING AND GETTING

 8    A FILED PATENT.

 9                I -- ALSO IN TERMS OF THE UNJUST ENRICHMENT, IT SORT

10    OF DEPENDS UPON WHAT THE COURT WANTS TO DO.  THEY CAN SAY

11    EQUITY THREE TIMES INSTEAD OF TWICE, AND THEN MAKE IT NO JURY

12    TRIAL, WHATEVER THEY DO, BUT I DECIDED THAT WE WILL HAVE A JURY

13    TRIAL AND THAT THAT'S -- BUT WE WILL HAVE A JURY TRIAL THAT

14    INCLUDES THE NOTION THAT YOU HAVE TO HAVE SOME NEXUS WITH

15    WRONGFUL CONDUCT.

16                I READ TAVARES AGAIN, THE CASE WHERE IT SAYS SUCH IS

17    NOT THE LAW.  WELL, THAT'S DICTA, AMONG OTHER THINGS, AND SO

18    IT'S DICTA LAW FOR WHATEVER IT IS, AND I DON'T THINK THAT IT'S

19    NECESSARY.  AND I THINK THAT IF WE HAVE SOMETHING LIKE UNJUST

20    ENRICHMENT, IT'S GOING TO HAVE TO HAVE SOME NEXUS WITH WRONGFUL

21    CONDUCT.  AND SO THE INSTRUCTIONS ARE PUT TOGETHER IN THAT

22    FASHION.

23                AND THEN THERE'S A SET OF VERDICT FORMS YOU CAN TAKE

24    A LOOK AT, TOO.  AND THIS IS MUCH SIMPLER THAN THE DEFENDANT

25    SUGGESTED.  I'M NOT GOING TO GIVE A WHOLE SERIES OF SPECIAL
```

```
1    VERDICTS.  I THINK IT'S -- UNDER THE CIRCUMSTANCES, IT'S -- WE

2    CAN GIVE THEM LIABILITY OR NOT, DAMAGES OR NOT.  BUT YOU TAKE A

3    LOOK AND TAKE A LOOK AT THAT ALSO.

4            SO MY SUGGESTION IS THAT YOU TAKE A LOOK AT IT.

5    WE'LL GET BACK TOGETHER, AND WE CAN GO BACK THROUGH IT.  AND

6    I'M NOT GOING TO REDO THE DECISION-MAKING.  I THINK I'VE GONE

7    THROUGH THAT AS FAR AS WHAT WAS SUGGESTED BY THE PARTIES.  BUT

8    IF THERE'S SOMETHING THAT WE LEFT OUT THAT I SHOULD PUT IN

9    THERE OR SHOULD HAVE ADDRESSED AT LEAST, YOU LET ME KNOW.  OR

10   IF YOU THINK IT COULD BE IMPROVED IN SOME FASHION, LET ME KNOW

11   AND THEN WE CAN SEE WHERE WE ARE, BECAUSE THE IDEA WOULD BE, AS

12   I SAY, ONCE WE GET THROUGH WITH THAT, THEN YOU'LL HAVE A COPY

13   OF WHAT IS ACTUALLY GOING TO BE PRESENTED TO THE JURY.  AND

14   THEN YOU COULD GO FROM THERE.  YOU COULD USE IT AS ANYTHING YOU

15   WANT IN TERMS OF ARGUMENT.

16           OKAY?  OKAY.

17           ALL RIGHT.  SO WE'LL GET BACK HERE ABOUT

18   2:00 O'CLOCK.

19           MR. JANSEN:  YOUR HONOR, COULD I JUST ADDRESS ONE

20   THING?

21           THE COURT:  SURE.

22           MR. JANSEN:  WE -- ON THE OWNERSHIP ISSUE, I DID

23   LOOK -- I SKIMMED -- I TRIED -- I JUST GOT TO THE POINT WHERE I

24   WAS SKIMMING THROUGH WHAT YOU'D WRITTEN ON THE OWNERSHIP ISSUE.

25           THE COURT:  YEAH.
```

1          **MR. JANSEN:**  AND JUST TO ALERT THE COURT, WE HAD

2     FILED A SUPPLEMENTAL BRIEF THIS MORNING ON THAT ISSUE.

3          **THE COURT:**  ON THE --

4          **MR. JANSEN:**  ON THE QUESTION OF OWNERSHIP OF THE

5     INVENTIONS AND PATENTS.  AND I WOULD ASK THE COURT TO LOOK AT

6     THAT AGAIN BECAUSE --

7          **THE COURT:**  WELL, I DON'T KNOW.  I --

8          **MR. JANSEN:**  I THINK IT'S PRETTY CLEAR HERE THAT --

9     THAT MR. VERDIELL DID NOT HAVE OWNERSHIP OF THE INVENTIONS.  HE

10    WAS THE INVENTOR, BUT IN -- INVENTOR DOESN'T --

11         **THE COURT:**  WELL, I --

12         **MR. JANSEN:**  -- DOESN'T PROVE OWNERSHIP.

13         WHEN YOU -- WHEN YOU INVENT SOMETHING, YOU CAN --

14    YOU CAN -- YOU CAN TRANSFER THE OWNERSHIP TO ANOTHER ENTITY.

15         **THE COURT:**  WELL, SURE, BUT THAT MEANS YOU DO IT AS

16    AN OWNER.

17         **MR. JANSEN:**  AND HE --

18         **THE COURT:**  AND WHEN YOU'RE AN INVENTOR -- WHEN

19    YOU'RE AN INVENTOR AND YOU ARE NAMED AS THE INVENTOR IN A FILED

20    ISSUED INVENTION, THEN AS THE INVENTOR, YOU ARE AN OWNER.

21         NOW, IF YOU WANT TO TRANSFER IT, YOU WANT TO GIVE IT

22    TO SOMEBODY, YOU CAN DO THAT, BUT YOU'RE AN OWNER TO START OUT

23    WITH.

24         **MR. JANSEN:**  NO, THAT -- THAT'S ACTUALLY -- THAT'S

25    THE IRONY HERE, THAT MR. VERDIELL WAS THE OWNER OF THE

1    INVENTION WHEN HE INVENTED IT, BUT HE ASSIGNED IT TO RADIANCE.

2    RADIANCE BECAME THE OWNER OF THAT INVENTION.  AND UNLESS HE

3    TRANSFERRED IT BACK -- UNLESS THE OWNERSHIP WAS TRANSFERRED

4    BACK TO VERDIELL AT THE DISSOLUTION, HE HAS NO OWNERSHIP.  HE

5    NEVER GOT OWNERSHIP BACK.  HE HAD NO MORE OWNERSHIP THAN

6    MR. SHUM BECAUSE HE ASSIGNED IT TO RADIANCE.

7            **THE COURT:**  HE GETS AN OWNERSHIP WHEN HE BECOMES THE

8    INVENTOR.  HE HAS THE RIGHT TO USE -- WE'VE ALREADY GONE

9    THROUGH THIS -- THAT HE HAD THE RIGHT TO -- UNDER THE PLAN OF

10   LIQUIDATION, HE HAD THE RIGHT TO PATENT, LAWFULLY PATENT, AN

11   INVENTION THAT HE HAD MADE OF THE INTELLECTUAL PROPERTY AT

12   RADIANCE.  HE HAD THE RIGHT TO EXPLOIT IT.  AND THE RIGHT TO

13   EXPLOIT IT INCLUDES OBTAINING A LAWFUL PATENT.  WHEN YOU OBTAIN

14   A LAWFUL PATENT, YOU BECOME AN OWNER.

15           **MR. JANSEN:**  YOU KNOW, I DON'T -- OBVIOUSLY, YOU

16   KNOW, THE INTERPRETATION OF THE CONTRACT TO ALLOW LAWFUL

17   PATENTING, YOU KNOW, WE'VE CROSSED THAT BRIDGE, IT WAS ARGUED

18   AND YOU RULED.

19           **THE COURT:**  RIGHT.

20           **MR. JANSEN:**  BUT THERE'S A DIFFERENCE BETWEEN

21   OBTAINING A LAWFUL PATENT AND HAVING THE SOLE AND EXCLUSIVE

22   RIGHTS TO THAT PATENT, I.E., IN THIS CASE, HE COULD APPLY FOR

23   THE PATENT, BUT THE PATENT WAS THE PROPERTY OF THE DISSOLVED

24   CORPORATION.  AND THERE'S -- AND THERE'S -- AND -- AND WE CITED

25   IN THE BRIEF WE FILED THIS MORNING THE CALIFORNIA CORPORATIONS

1  CODE SECTION WHICH PROVIDES THAT PROPERTY CAN ACCRUE TO A

2  DISSOLVED CORPORATION AFTER THE FACT.

3              AND I'D LIKE TO HAND THAT UP TO YOUR HONOR.  WE DID

4  CITE IT.

5              **THE COURT:**  OKAY.  WELL, GET IT.

6              **MR. JANSEN:**  LET ME GET THAT.  THANK YOU.

7              **MR. TANGRI:**  WE'RE GOING TO ABIDE BY YOUR DIRECTION

8  NOT TO REARGUE THINGS THAT WERE ARGUED YESTERDAY UNTIL FURTHER

9  NOTICE, YOUR HONOR.  SO --

10             (PAUSE IN THE PROCEEDINGS.)

11             **MR. JANSEN:**  I'LL HAND UP, YOUR HONOR, CALIFORNIA

12  CORPORATIONS CODE SECTION 2010 -- 2010 -- 2010 AND TAKING A

13  LOOK AT SUB C.

14             **MR. TANGRI:**  THANK YOU.

15             **MR. JANSEN:**  "ANY ASSETS," AND I THINK IT SHOULD BE

16  READ IN CONNECTION ALSO WITH CIVIL -- CORPORATIONS CODE 20 --

17  2004, WHICH I'LL ALSO PASS UP.  AND THESE ARE BOTH CITED IN THE

18  BRIEF WE FILED.

19             **THE COURT:**  OKAY.  I'LL GET A COPY OF THE BRIEF.

20             **MR. JANSEN:**  I COULD HAND UP A COPY OF THE BRIEF AS

21  WELL, BUT ESSENTIALLY 2010(C) PROVIDES THAT ANY ASSETS THAT ARE

22  INADVERTENTLY OR OTHERWISE OMITTED FROM THE WINDING UP OF A

23  CORPORATION CONTINUE IN THE DISSOLVED CORPORATION FOR THE

24  BENEFIT OF THE PERSONS ENTITLED THERETO UPON DISSOLUTION OF THE

25  CORPORATION AND ON REALIZATION SHALL BE DISTRIBUTED

1    ACCORDINGLY.

2              AND THE CASES WHICH WE CITED BOTH YESTERDAY IN

3    CONJUNCTION WITH OUR -- WITH OUR PROPOSED JURY INSTRUCTION

4    NO. 4 AND -- AND IN THE BRIEF WE FILED, WHICH INCLUDED THE

5    FILM TECH CASE FROM THE FEDERAL CIRCUIT, DDB TRANSPORTATION --

6    DDB TECHNOLOGIES.

7              **THE COURT:** DDB, I'VE READ THAT.

8              **MR. JANSEN:** DDB TECHNOLOGIES --

9              **THE COURT:** I WENT THROUGH THAT.

10             **MR. JANSEN:** -- AND SPEEDPLAY.

11             THEY BOTH PROVIDE THAT THE ASSIGNMENT OF THE

12   INVENTION IS THE OWNERSHIP INTEREST THAT'S TRANSFERRED.  IT'S

13   PERSONAL PROPERTY.  THE INVENTION IS PERSONAL PROPERTY, IT'S

14   TRANSFERRED FOR THE CORPORATION AUTOMATICALLY.

15             **THE COURT:** WELL, IT SAYS IT'S TRANSFERRED BASED

16   UPON THE LANGUAGE OF THE CONTRACT.  AND SO -- AND IT SAYS THAT

17   THE LANGUAGE OF THE CONTRACT CONTROLS.  AND SO WE NOW LOOK AND

18   SEE WHAT THE CONTRACT SAYS.

19             AND AS I SAY, THIS CONTRACT PROVIDES THAT DURING THE

20   TIME OF RADIANCE, IF YOU DID SOMETHING, IF YOU INVENTED

21   SOMETHING THAT WAS INTELLECTUAL PROPERTY THAT WAS RELATED TO

22   RADIANCE'S BUSINESS PURPOSE, THEN IT WENT TO RADIANCE.  AND THE

23   CONTRACT MAKES IT CLEAR THAT IT TRANSFERS RIGHT AWAY.

24             SO THE -- RADIANCE HAD THE PROPERTY RIGHTS FOR THE

25   INTELLECTUAL PROPERTY.  THAT'S NOT THE ISSUE.  THE ISSUE IS

1    WHAT ARE THE PROPERTY RIGHTS OR WHAT ARE THE OWNERSHIP RIGHTS

2    THAT SURVIVED RADIANCE.  SO THAT'S A QUESTION OF WHAT IS IN THE

3    CONTRACT ALSO.

4            SO I HAVE LOOKED AT THE CONTRACT, AND YOU LOOK AND

5    SEE HOW IT COMES OUT, AND THEN WE CAN TALK ABOUT THAT.  BUT AS

6    I SAY, I'LL LOOK AT YOUR PAPERS.  BUT SO FAR, I DON'T THINK

7    THAT I BELIEVE THAT THERE WAS ANY TRANSFER OF OWNERSHIP AT THE

8    TIME RADIANCE DISSOLVED FOR ANY FUTURE PATENT RIGHTS UNTIL AND

9    UNLESS YOU BECAME A PATENT INVENTOR.

10           **MR. JANSEN:**  OKAY.  I --

11           **THE COURT:**  ALL RIGHT.

12           **MR. JANSEN:**  -- I ENCOURAGE YOU TO LOOK AT OUR

13   BRIEF, YOUR HONOR, BECAUSE I BELIEVE --

14           **THE COURT:**  SURE.  I'LL DO THAT.

15           **MR. JANSEN:**  -- THAT THERE CAN'T BE --

16           **THE COURT:**  YEAH.

17           **MR. JANSEN:**  MR. VERDIELL CAN'T GET THE OWNERSHIP

18   BACK UNLESS IT'S TRANSFERRED BACK TO HIM BY THE CORPORATION,

19   AND IT WASN'T.  SO THAT'S -- OR I THINK IT WAS, FRANKLY.

20           **THE COURT:**  IT CAN'T GET TRANSFERRED BACK TO HIM BY

21   A CORPORATION THAT DOESN'T EXIST ANYMORE.  THE QUESTION IS WHAT

22   HAPPENS AT THE TIME THAT IT GOES OUT OF EXISTENCE.

23           **MR. JANSEN:**  I BELIEVE THE CALIFORNIA CORPORATIONS

24   CODE SECTION I HANDED YOU WOULD INDICATE THERE'S AN EQUITABLE

25   TITLE IN BOTH OWNERS, AND THAT'S EXACTLY WHY THE DEFENDANTS

```
 1   WERE RIGHT WHEN THEY -- WHEN THEY TOOK THE POSITION IN THEIR

 2   PROPOSED JURY FORM 39 -- WHICH I'D LIKE TO HAND THAT UP AS

 3   WELL, YOUR HONOR.

 4             THE COURT:  I'VE ALREADY GOT THAT.  I'VE ALREADY GOT

 5   THAT.

 6             OKAY.  WE'LL BE BACK IN A HALF HOUR.

 7             MR. JANSEN:  THANK YOU.

 8             THE COURT:  OKAY.

 9             (RECESS TAKEN AT 1:43 P.M.)

10           (PROCEEDINGS RESUMED AT         .M.)

11           (PROCEEDINGS RESUMED AT 2:17 P.M.)

12           (THE FOLLOWING PROCEEDINGS WERE HEARD OUT OF THE

13   PRESENCE OF THE JURY:)

14             THE COURT:  ALL RIGHT.  LET'S FIND OUT WHERE WE ARE.

15             MR. TANGRI:  ALL RIGHT.

16           WELL, YOUR HONOR, MINDFUL OF YOUR REQUEST THAT WE

17   NOT TRY TO REARGUE THINGS THAT WE ARGUED YESTERDAY, I'M GOING

18   TO TRY TO CONFINE MYSELF TO THINGS THAT WE UNDERSTOOD THE COURT

19   HAD INDICATED IT WOULD AT LEAST CONSIDER OR PERHAPS MAKE SOME

20   ADDITIONS ON THAT WE EITHER DON'T SEE OR WANT TO BE SURE THAT I

21   UNDERSTAND WHAT THE ADDITION IS.

22             THE COURT:  ALL RIGHT.

23             MR. TANGRI:  AND THEN A COUPLE OF ADDITIONS THAT I

24   DON'T THINK WE DID DISCUSS FULLY YESTERDAY OR MAYBE EVEN AT

25   ALL, AND I WANT TO RAISE THOSE.
```

```
1              SO MY FIRST -- MY QUESTION IS ON PAGE 9.  WE -- AT

2   THE VERY TOP.  WE HAD ASKED YOUR HONOR TO ADD, AS A PIECE OF

3   OUR PROPOSED INSTRUCTION 29, THIS NOTION OF SOMETHING THAT

4   RENDERED THE -- THE INVENTION NOVEL AND PATENTABLE.  I SEE THAT

5   YOU HAVE ADDED LANGUAGE ABOUT CONCEPTION AT THE VERY TOP OF

6   PAGE 9.

7              AND --

8              THE COURT:  AND THAT'S --

9              MR. TANGRI:  AND IF THAT'S THE COURT'S RESPONSE TO

10  DETERMINATION, THEN I'M NOT GOING TO REARGUE IT.

11             THE COURT:  WELL, THAT'S -- THAT'S WHAT I -- I

12  THOUGHT I GOT THAT -- SET OUT IS THAT I WANTED TO MAKE SURE

13  THAT WHEN WE TALKED ABOUT EACH OF THE CLAIMS, DEPENDENT OR

14  INDEPENDENT, WE ALSO BROUGHT IN THE CONCEPT OF CONCEPTION, AND

15  I THINK THE INSTRUCTIONS DO.

16             MR. TANGRI:  OKAY.  WELL, AS I SAID, IF THAT WAS

17  YOUR RESPONSE --

18             THE COURT:  THAT'S THE IDEA.

19             MR. TANGRI:  -- TO THAT REQUEST, THEN WE HEAR YOU,

20  AND WE'RE NOT GOING TO REARGUE IT.  WE'VE MADE THE ARGUMENT

21  YESTERDAY AND WE STAND BY IT, BUT WE'RE NOT GOING TO BELABOR

22  IT.

23             ON NUMBER -- ON PAGE 11, YOUR HONOR, WHICH IS TO SAY

24  BASICALLY AT THE BORDER BETWEEN THE INVENTORSHIP AND THE

25  INTENTIONAL MISREPRESENTATION INSTRUCTIONS, I DID WANT TO RAISE
```

```
1    TWO INSTRUCTIONS THAT I THINK WE MENTIONED BY NUMBER YESTERDAY

2    BUT CERTAINLY DIDN'T REALLY GET INTO ARGUING THE SUBSTANCE OF.

3            ONE OF THEM IS DEFENDANTS' PROPOSED INSTRUCTION

4    NO. 6.  AND THIS IS SOMETHING THAT WE REALLY DID NOT TAKE UP

5    YESTERDAY.  THIS IS AN INSTRUCTION WHICH SAYS THAT IF THE JURY

6    FINDS THAT MR. SHUM IS A COINVENTOR AND THAT IF HE IS THEREFORE

7    A -- BECOMES A CO-OWNER BY VIRTUE OF BEING A COINVENTOR,

8    FEDERAL PATENT LAW NEVERTHELESS VERY CLEARLY DOES NOT LIMIT THE

9    RIGHTS OF COINVENTORS AND DOES NOT IMPOSE UPON THEM A DUTY TO

10   ACCOUNT ONE TO THE OTHER.

11           THIS IS A POINT THAT WE DISCUSSED IN THE PRETRIAL

12   AND IT ACTUALLY WAS THE BASIS FOR YOUR HONOR'S RULING THAT

13   PEOPLE SHOULDN'T BE MAKING ANALOGIES TO FARMS AND REAL PROPERTY

14   AND THINGS LIKE THAT BECAUSE IT'S -- IT'S DIFFERENT IN PATENT

15   LAW.  CO-OWNERS HAVE NO DUTY TO ACCOUNT TO EACH OTHER.

16           AND WE THINK THAT AGAIN, GIVEN THE 50/50 ASSUMPTIONS

17   MADE BY THE PLAINTIFF'S EXPERTS ALL THE WAY DOWN THE LINE, IT'S

18   IMPORTANT FOR THE JURY TO REALIZE THAT EVEN IF THEY FIND

19   CO-INVENTORSHIP AND EVEN IF THAT LEADS TO CO-OWNERSHIP, THERE'S

20   STILL NO DUTY TO ACCOUNT, JUST AS A MATTER OF LAW.

21           AND IT'S NOT A -- IT'S NOT A FACT QUESTION.  IT'S --

22   THE LAW IS VERY CLEAR ON IT.  AND THE CASES ARE CITED.  THERE'S

23   A STATUTE.  AND THERE'S CASES CITED IN THAT PROPOSED JURY

24   INSTRUCTION, AND WE BELIEVE THIS IS WHAT YOUR HONOR ALREADY

25   RULED ON AT THE PRETRIAL CONFERENCE.
```

3792

```
1          THE COURT:  WELL, BUT THIS -- YOU MEAN THAT THIS

2    SHOULD BE ADDED TO THE PATENT INSTRUCTIONS?

3          MR. TANGRI:  WELL, WHETHER -- I MEAN, I'M -- I'M

4    RELATIVELY AGNOSTIC AS TO LOCATION, YOUR HONOR.  I JUST BROUGHT

5    IT UP HERE BECAUSE IT TALKS ABOUT INVENTORSHIP, AND IT SEEMS

6    LIKE THE PATENT INSTRUCTIONS IS THE PLACE TO PUT IT.  I BROUGHT

7    IT UP NOW BECAUSE THE TITLE OF IT IN OUR PROPOSED INSTRUCTION

8    IS "INVENTORSHIP RIGHTS," AND SO THIS SEEMED LIKE A PLACE TO

9    ADDRESS IT, BUT SOMEWHERE IN THESE INSTRUCTIONS I THINK THERE

10   NEEDS TO BE A HOME, WE SUBMIT.

11         THE COURT:  I'M NOT QUITE SURE I SEE WHY IT NEEDS TO

12   BE IN.

13         MR. JANSEN:  YOUR HONOR, I THINK ACTUALLY YOU HAVE A

14   VERY LONG SECTION WHERE YOU EXPLAIN THE RIGHTS AND DUTIES UNDER

15   THE PLAN OF LIQUIDATION.  I THINK YOU EXPLAIN THE RIGHT TO

16   COMPETE, THE RIGHT TO EXPLOIT --

17         THE COURT:  RIGHT.

18         MR. JANSEN:  -- WITHOUT SHARING OF PROFITS.

19         AND I THINK THIS INSTRUCTION AS A STAND-ALONE -- AND

20   I THINK THAT'S COVERED IN THAT LENGTHY DISCUSSION ABOUT WHAT

21   THE RIGHTS UNDER THE POL ARE AND --

22         THE COURT:  WELL, THAT'S UNDER THE POL.  AND HE'S

23   TRYING TO SAY THAT HE WANTED TO INSTRUCT THEM THAT UNDER PATENT

24   LAW IF YOU'RE A COINVENTOR AND YOU'RE A CO-OWNER AS A

25   COINVENTOR, YOU DON'T HAVE A DUTY TO ACCOUNT TO YOUR
```

1   COINVENTORS.

2              **MR. TANGRI:**  AND --

3              **THE COURT:**  BUT I DON'T KNOW WHY THAT MAKES ANY

4   DIFFERENCE.

5              **MR. TANGRI:**  WELL, IT MAKES A DIFFERENCE, YOUR

6   HONOR, BECAUSE AS I UNDERSTAND THE PLAINTIFF'S DAMAGES EXPERTS'

7   THEORY, ONE OUTCOME IS MR. SHUM IS FOUND TO BE A COINVENTOR.

8   AND AS I UNDERSTAND THE COURT TO HAVE RULED, IF HE'S A

9   COINVENTOR, THEN HE'S A CO-OWNER.  AND IF -- AND I BELIEVE THAT

10  PART OF THE PLAINTIFF'S DAMAGE THEORY IS THIS 50/50.  I MEAN, I

11  KNOW THAT PART OF THEIR DAMAGE THEORY IS THIS 50/50 NOTION, WE

12  TAKE HALF OF WHAT VERDIELL GOT OR HALF OF WHAT LIGHTLOGIC GOT

13  AND WE GIVE IT TO MR. SHUM.  AND UNLESS THEY ARE INSTRUCTED

14  THAT FEDERAL PATENT LAW DOESN'T REQUIRE THAT OUTCOME, DOES

15  NOT -- DOES NOT CAUSE IT, THEN THE 50/50 ASSUMPTION MADE BY THE

16  EXPERTS WILL -- WILL, YOU KNOW, BE IMPROPERLY CREDITED.

17             AND SO I THINK -- I MEAN, JUST AS A -- THIS IS A

18  PURE QUESTION OF LAW, AND I DON'T THINK THERE'S ANY DOUBT THAT

19  IT'S CORRECT.  AND GIVEN THE ASSUMPTIONS MADE BY THE EXPERTS, I

20  THINK IT'S IMPORTANT THAT -- I MEAN, THERE MAY BE SOME OTHER

21  BASIS FOR 50/50 THAT SOMEONE CAN ARGUE, BUT -- BUT IT ISN'T

22  BEING A CO-OWNER BY VIRTUE OF BEING A COINVENTOR.

23             **MR. JANSEN:**  YOUR HONOR, THE ACCOUNTING LANGUAGE IN

24  THE PLAN OF LIQUIDATION RELATES TO A -- COMES -- RELATES TO THE

25  DUTY TO ACCOUNT FOR THE, YOU KNOW, MAKING, USING OR SELLING

```
 1    GOODS MADE ACCORDING TO THE INVENTION, AND THE -- IT'S TOTALLY

 2    OUTSIDE OF WHAT -- OF WHAT OUR UNJUST ENRICHMENT OR OTHER

 3    CLAIMS GO TO, WHICH GO TO THE UNJUST ENRICHMENT FROM SELLING

 4    THE ENTIRE RIGHT, TITLE, AND INTEREST IN THE PATENT WHEN

 5    MR. VERDIELL AND LIGHTLOGIC DID NOT HAVE THAT.

 6            THE COURT:  OKAY.  SEE --

 7            MR. JANSEN:  SO THERE'S NOT --

 8            THE COURT:  IF THE THESIS IS THAT THE UNJUST

 9    ENRICHMENT COMES OUT OF THE PLAN OF LIQUIDATION IN SOME SENSE,

10    IT'S PREMISED ON THAT, SEE, THAT'S WHAT I WAS SAYING.

11            WHAT YOU'RE SAYING IS THAT -- THAT OVER AND ABOVE

12    THAT, ASIDE FROM THAT, OVER HERE, WE HAVE A BODY OF PATENT LAW

13    AND PATENT LAW TALKS ABOUT THE RIGHTS OF COINVENTORS, AND

14    THAT'S NOT A THESIS FOR ANYTHING, THEN I DON'T SEE WHY IT'S

15    IMPORTANT.

16            MR. TANGRI:  WELL -- I'M SORRY, YOUR HONOR, GO

17    AHEAD.

18            THE COURT:  WELL, THAT'S -- THAT'S JUST IT, THOUGH.

19    I SAY I DON'T SEE WHY IT MAKES ANY DIFFERENCE IS THAT IF IT'S

20    NOT A THESIS FOR -- FOR UNJUST ENRICHMENT, THEN WHY IS IT

21    IMPORTANT?

22            MR. TANGRI:  I -- I THINK -- I THINK IT IS A THESIS

23    FOR UNJUST ENRICHMENT.  I THINK IT'S AN ALTERNATIVE THESIS.  I

24    MEAN, WE -- WE -- WE HAD A LONG DISCUSSION YESTERDAY AND WE GOT

25    STRAIGHT THE POL AND -- AND THE FACT THAT --
```

1        **THE COURT:**  WHY DON'T YOU GIVE ME 6.  I DON'T HAVE

2    IT HERE.  HAVE YOU GOT A COPY OF 6?

3        **MR. TANGRI:**  I CAN HAND YOU A COPY OF 6, I AM SURE.

4        I MEAN, THERE --

5            (OFF-THE-RECORD DISCUSSION.)

6        **MR. TANGRI:**  HERE'S 6.  AND WE'VE -- THERE'S AN

7    EXTRANEOUS RED CIRCLE AROUND THE SOURCES, BUT I DON'T THINK

8    THAT WILL BE IN YOUR WAY.

9        **THE COURT:**  IT JUST MEANS THEY'RE INAPPLICABLE.

10       WELL, I WOULDN'T GIVE THIS.  IF I GAVE ANYTHING, I

11   WOULD GIVE SOMETHING THAT SAYS WHEN -- THERE'S A POINT IN HERE

12   WHERE WE TALKED ABOUT COINVENTORS ARE OWNERS, BECAME AN OWNER

13   OF THE PATENT.

14       **MR. TANGRI:**  WELL, THE -- THE CRITICAL LANGUAGE, WE

15   SUBMIT, YOUR HONOR, WOULD BE THE LAST SENTENCE WHICH SAYS,

16   "UNDER THE PATENT LAWS, THE COINVENTOR OR CO-OWNER HAS THE

17   RIGHT TO MAKE, USE, OR SELL THE PATENTED INVENTIONS OR GRANT A

18   LICENSE," AND YOU'VE GOT IT IN FRONT OF YOU -- "AND WITHOUT

19   HAVING TO SHARE ANY PROFITS WITH THE OTHER COINVENTOR OR

20   CO-OWNER."

21       THERE -- THERE WERE ABOUT A -- YOU KNOW, TWO DOZEN

22   SLIDES IN THESE EXPERTS' POWER POINTS THAT SAID 50/50.  WE'RE

23   GOING TO SEE THEM AGAIN TOMORROW, I'M SURE OF IT.  AND IT --

24   AND ONE THEORY OF THE CASE IS --

25       **THE COURT:**  ALL RIGHT.

1              **MR. TANGRI:**  -- HE'S NOT AN INVENTOR --

2              **THE COURT:**  THAT'S SOMETHING WE NEED TO RESOLVE.

3      ALL RIGHT.

4              WHAT ELSE?

5              **MR. TANGRI:**  THE NEXT ONE, YOUR HONOR, AND AGAIN,

6      I -- I BRING IT UP HERE BECAUSE IT RELATES TO PATENTS SO I

7      BRING IT UP HERE AT THE END OF INVENTORSHIP INSTRUCTIONS, BUT

8      WE COULD -- I'M AGNOSTIC AS TO WHERE IT GOES -- IS DEFENDANTS'

9      PROPOSED JURY INSTRUCTION NO. 7.

10             AND THIS IS ONE THAT I THINK BOTH SIDES DISCUSSED A

11     LITTLE, AND THEY DISCUSSED A COUNTER INSTRUCTION THAT THEY

12     HAVE.  THIS IS THE ONE THAT SAYS YOU CAN ONLY ASSIGN WHAT YOU

13     OWN.

14             AND WE HAVE A COPY OF IT TO HAND UP.  THERE WE GO.

15                      (HANDING DOCUMENT.)

16             **THE COURT:**  I THOUGHT WE TALKED ABOUT THIS BEFORE

17     AND I THOUGHT WE HAD -- SAID I THOUGHT THERE'D BEEN SOME MUTUAL

18     DISCUSSION ABOUT THAT AND I -- I GUESS THAT'S SOMETHING THAT IS

19     NOT IN HERE, BUT I THOUGHT WE PUT SOMETHING IN ABOUT IT.

20             **MR. TANGRI:**  I HAD -- I HAD THOUGHT THE COURT

21     INDICATED IT WOULD PUT SOMETHING IN.

22             **THE COURT:**  -- SOMETHING ABOUT IT.

23             **MR. JANSEN:**  YOUR HONOR --

24                      (SIMULTANEOUS COLLOQUY.)

25             **MR. JANSEN:**  YOUR HONOR, I THINK -- AGAIN, I THINK

```
 1    THIS WAS PROPERLY NOT -- NOT AN APPROPRIATE INSTRUCTION TO

 2    GIVE.  I THINK IT'S HIGHLY ARGUMENTATIVE AND PREJUDICIAL TO

 3    THE -- TO THE THEORY OF THE CASE HERE AND THE STATEMENT OF LAW.

 4               AND ACTUALLY, YOU KNOW, WE DISCUSSED THAT ISSUE

 5    YESTERDAY, WHETHER IT WAS POSSIBLE FOR INTEL TO HAVE RECEIVED

 6    ALL THE RIGHTS IN A PATENT IF MR. VERDIELL DIDN'T HAVE THE

 7    RIGHT TO TRANSFER ALL RIGHTS.

 8               AND IN FACT, IN THE COURSE OF DOING THE RESEARCH FOR

 9    THE BENCH MEMO I SENT YOU ON OWNERSHIP, I FOUND AN INTERESTING

10    STATEMENT THAT CLARIFIES IT, IN FACT, INTEL COULD GET ALL TITLE

11    TO THESE PATENTS.

12               AND I'M GOING TO HAND UP THIS CASE CALLED FILM TECH

13    WHICH EXPLAINS THAT.

14               THE COURT:  YOU MEAN THAT VERDIELL COULD ASSIGN TO

15    INTEL RIGHTS OF MR. SHUM THAT HE DIDN'T OWN?

16               MR. JANSEN:  WELL, THAT INTEL COULD TAKE THE

17    POSITION IN FACT THAT IT HAD ALL RIGHTS EVEN THOUGH

18    MR. VERDIELL DIDN'T HAVE ALL RIGHTS TO TRANSFER AS A BONA FIDE

19    PURCHASER FOR VALUE.  THERE'S A BONA FIDE PURCHASER FOR VALUE

20    RULE THAT IS SPELLED OUT HERE THAT'S WELL ESTABLISHED THAT WHEN

21    A LEGAL TITLEHOLDER OF A PATENT TRANSFERS HIS OR HER TITLE TO A

22    THIRD-PARTY PURCHASER FOR VALUE WITHOUT NOTICE OF ANY

23    OUTSTANDING EQUITABLE CLAIM OR TITLE, THE PURCHASER, INTEL,

24    TAKES THE ENTIRE OWNERSHIP OF THE PATENT FREE OF ANY PRIOR

25    EQUITABLE ENCUMBRANCE.
```

3798

```
 1            AND THE CASE CONTINUES AFTER THAT TO EXPLAIN IT ALSO

 2   EXTENDS TO LEGAL -- NOT JUST EQUITABLE ENCUMBRANCE BUT ALSO

 3   OTHER LEGAL ENCUMBRANCES.  SO IN FACT YOU CAN TRANSFER ALL

 4   TITLE EVEN IF YOU DON'T OWN.  I MEAN, AT LEAST THE BUYER CAN

 5   TAKE THE POSITION THEY GOT THE ENTIRE TITLE.

 6            AND THIS CASE INVOLVES -- A CRITICAL QUESTION IS

 7   WHETHER OR NOT LIGHTLOGIC WRONGFULLY TRANSFERRED THE ENTIRE

 8   RIGHT AND TITLE.  SO TO INSTRUCT THE JURY THAT IT'S NOT

 9   POSSIBLE FOR THEM TO DO THAT I THINK WOULD BE REALLY TO TAKE

10   AWAY THE ISSUE FROM THE JURY.

11            MR. TANGRI:  YOUR HONOR, IT MAY BE A CRITICAL

12   QUESTION, BUT IT'S ALSO A LEGAL QUESTION.  I MEAN, IF THERE

13   WERE -- IF THIS WERE A DISPUTE BETWEEN INTEL AND VERDIELL OR

14   VERDIELL -- INTEL AND LIGHTLOGIC OR VERDIELL AND LIGHTLOGIC

15   ABOUT WHAT HE SAID TO THEM AND WHAT THEY THOUGHT THEY BOUGHT

16   AND WHAT HE COULD GIVE THEM, THEN THERE MIGHT BE SOMETHING TO

17   THAT, BUT THIS IS NOT THAT DISPUTE.

18            AND AS A MATTER OF LAW -- AND WE'VE CITED THE

19   PRIMA TEK CASE.  IT WAS THE ONE CASE WE -- WE REQUESTED THE

20   COURT READ AT THE CLOSE OF SESSION YESTERDAY.  AS A MATTER OF

21   LAW, IT CANNOT HAPPEN.  AND THERE -- THERE ARE, AS I SAID, MANY

22   CASES ON THIS CITED IN THE PLAINTIFF'S MEMO IN OBJECTING TO

23   OUR -- ANOTHER ONE OF OUR JURY INSTRUCTIONS, WHICH WE ALSO

24   DIRECTED THE COURT'S ATTENTION TO.

25            THE COURT:  OKAY.
```

1           **MR. TANGRI:**  AND ON THE BFP POINT --

2           **THE COURT:**  CHECK, 7.  THAT'S YOUR REQUEST.

3           NOW LET'S GO AHEAD.

4           **MR. TANGRI:**  OKAY.  ON THE BFP POINT, IT IS WHAT --

5 THE PLAINTIFF, IN OPPOSING SUMMARY JUDGMENT, TOOK THE POSITION

6 THAT INTEL COULD NOT BE A BONA FIDE PURCHASER FOR VALUE AND

7 RESISTED SUMMARY JUDGMENT ON THAT BASIS.

8           OUR NEXT ONE -- I'M GOING TO TRY TO MOVE QUICKLY

9 HERE AND NOT GET -- GET US BOGGED DOWN.  THIS IS ONE THAT I --

10 I SUSPECT THE ANSWER IS YOU CONSIDERED IT AND YOU REJECTED IT,

11 AND I JUST WANT TO MAKE CLEAR FOR THE RECORD, IN -- IN THE

12 INTENTIONAL MISREPRESENTATION SECTION OF THE INSTRUCTIONS, WE

13 WOULD SAY ON PAGE 13, BUT SOMEWHERE, THE OUT-OF-POCKET RULE AS

14 LAID OUT IN CACI 1923 SHOULD BE STATED.  WE THINK IT'S THE

15 CORRECT RULE.  WE FILED -- THEY FILED A BRIEF THIS MORNING

16 ARGUING WHY IT SHOULDN'T APPLY.  WE FILED A RESPONSE SHORTLY

17 AFTER THE LUNCH -- SHORTLY INTO THE LUNCH HOUR SAYING WHY IT

18 IS.

19           THE GIST OF THE ARGUMENT, YOUR HONOR, IS THAT THE

20 OUT-OF-POCKET RULE IS THE ONLY RULE THAT APPLIES IN CALIFORNIA

21 IN FRAUD CASES NOT INVOLVING INTENTIONAL FRAUD BY A FIDUCIARY.

22 THIS IS NOT A FIDUCIARY CASE.

23           THE -- WE CITED -- CITED CASE LAW TO THE COURT

24 YESTERDAY.  I WON'T REPEAT IT.  THE PLAINTIFFS HAVE COME BACK

25 IN THEIR MEMO AND CITED CASES WHICH THEY SAY DISTINGUISH

```
 1   BETWEEN 3333 AND 3343 OF THE CIVIL CODE.  THE USE NOTES, THE

 2   COMMENTARY TO CACI 1923, IN FACT MAKES CLEAR THAT IT IS BASED

 3   ON SECTION 3333.  SO THAT DISTINCTION IS -- IS A DISTINCTION

 4   WITHOUT A DIFFERENCE, IT'S A RED HERRING.

 5            WHETHER IT'S 3333 OR -43, IF IT'S FRAUD, IT'S

 6   OUT-OF-POCKET UNLESS YOU'VE GOT AN INTENTIONAL FRAUD BY A

 7   FIDUCIARY.  AND THIS ISN'T A FIDUCIARY CASE.  AND SO TO LEAVE

 8   IT IN THIS POSTURE WE THINK MISSTATES THE APPLICABLE DAMAGES

 9   LAW.  AND -- AND AS I SAID, I --

10            THE COURT:  YOU'RE RIGHT --

11            MR. TANGRI:  OKAY.

12            THE COURT:  -- NO, WE'RE NOT GOING TO CHANGE.  I'M

13   GOING TO LEAVE THE INSTRUCTION AS IT IS.

14            MR. TANGRI:  THERE'S A -- THERE'S A -- I WILL POINT

15   OUT THERE'S A TYPOGRAPHICAL ERROR ON PAGE 13.

16            THE COURT:  WHAT'S THAT?

17            MR. TANGRI:  WHERE THE SENTENCE BEGINS "AN ACT

18   CAUSES HARM."

19            THE COURT:  YES.

20            MR. TANGRI:  THE LAST WORD OF THAT, I THINK THERE'S

21   A "G" THAT GOT DROPPED.

22                 (SIMULTANEOUS COLLOQUY.)

23            THE COURT:  WE'RE MAKING PICKLES.

24            MR. JANSEN:  WHERE IS THAT?

25            MR. TANGRI:  IT'S ON PAGE 13.  PAGE 13.
```

```
 1              MR. JANSEN:  WHERE ON PAGE 13?

 2              MR. TANGRI:  "BRINGING."  IT SHOULD BE "BRINGING."

 3              MR. JANSEN:  WHERE IS THAT -- I'M SORRY.  CATCH ME

 4    UP ON --

 5              THE COURT:  "AN ACT CAUSES HARM IF IT IS A

 6    SUBSTANTIAL FACTOR IN BRINGING" --

 7              MR. JANSEN:  OKAY.  OH, "BRINING."  OKAY.  YES.

 8    OKAY.

 9              MR. TANGRI:  I THINK LITTLE HOLDOVER FROM

10    THANKSGIVING, SOME PEOPLE BRINE THEIR TURKEYS, AND THERE YOU

11    GO.

12              ON PAGE -- AT THE TOP OF PAGE 16, YOUR HONOR --

13              THE COURT:  OKAY.

14              MR. TANGRI:  -- IN THE SECOND LINE FOLLOWING THE

15    WORD "NOTICE," THIS IS SOMETHING THAT WE HAD DISCUSSED IN THE

16    CONTEXT OF DEFENDANTS' PROPOSED 17.  I DON'T KNOW THAT WE

17    COVERED IT EXPLICITLY YESTERDAY.

18              WE WOULD REQUEST THAT WE ADD AFTER THE WORD "NOTICE"

19    THE PHRASE "TO EACH OTHER OR TO THIRD PARTIES."  THE POL, WE

20    BELIEVE THE COURT HAS INTERPRETED, DOESN'T REQUIRE EITHER PARTY

21    TO GIVE NOTICE TO THIRD PARTIES OF RIGHTS THAT THE OTHER PERSON

22    MAY HAVE.  THAT'S -- THAT'S CONSISTENT WITH AND -- AND FLOWS

23    LOGICALLY FROM COMPETITION.

24              IF ONE WALKS INTO MACY'S AND --

25              THE COURT:  IT'S JUST ANOTHER WAY OF PHRASING IT
```

3802

1   BECAUSE IT SAYS THE SAME THING, "TO COMPETE WITH EACH OTHER

2   WITHOUT NOTICE OR ANY ACCOUNTING AS TO PROFITS."  THAT MEANS

3   EACH OTHER IS WITHOUT NOTICE OR ACCOUNTING AS TO PROFITS.

4           **MR. TANGRI:**  AND WHAT WE WOULD -- WHAT WE'RE TRYING

5   TO -- TO ADD TO IT, YOUR HONOR, SO IT'S CLEAR IS THE NOTION

6   THAT THERE DOESN'T NEED TO BE NOTICE TO THE OTHER PERSON, SO TO

7   MR. SHUM --

8           **THE COURT:**  I KNOW.  IT SAYS "TO COMPETE WITH EACH

9   OTHER WITHOUT NOTICE."

10          **MR. TANGRI:**  -- OR TO -- OR NOTICE TO THIRD PARTIES

11  OF -- THAT THE OTHER PERSON MAY HAVE RIGHTS.

12          IN OTHER WORDS, IF YOU WALK INTO MACY'S TO BUY A

13  SUIT, MACY'S DOESN'T LOOK TO YOU AND SAY, "BY THE WAY, MEN'S

14  WEARHOUSE DOWN THE STREET MAY HAVE THE SAME" -- I'M SORRY.

15  MACY'S DOESN'T SAY TO YOU -- IT DOESN'T HAVE TO SAY TO YOU, "WE

16  HAVE A COMPETITOR, MEN'S WEARHOUSE DOWN THE STREET.  THEY MAY

17  HAVE THIS SAME SUIT CHEAPER."

18          **THE COURT:**  WELL, ACTUALLY THEY DO.

19          **MR. TANGRI:**  I'M SURE THEY DO.  BUT MACY'S DOESN'T

20  TELL YOU.  THAT'S WHAT -- THAT'S WHAT COMPETITION IS.  AND --

21  AND WE -- WE -- GIVEN THE CLAIMS IN THE CASE, WE THINK IT'S

22  IMPORTANT THAT THE POL NOT BE MISCONSTRUED TO REQUIRE SUCH

23  NOTICE.

24          **THE COURT:**  WELL, I THINK IT'S SAYING "WITHOUT

25  NOTICE TO EACH OTHER."

1          **MR. TANGRI:**  "OR TO THIRD PARTIES," COMMA.

2          **THE COURT:**  I DON'T THINK THAT'S NECESSARY.

3          **MR. TANGRI:**  VERY WELL, YOUR HONOR.  WE JUST --

4    GIVEN -- GIVEN THE CLAIMS THAT -- THE SORT OF FAILURE TO

5    DISCLOSE CLAIMS, GIVEN THE COURT'S PRIOR RULINGS THAT

6    NON-DISCLOSURES OR NON-DISCLOSURES TO THIRD PARTIES OR EVEN

7    STATEMENTS TO THIRD PARTIES CAN'T BE A BASIS --

8          **THE COURT:**  DOESN'T MAKE THAT MUCH DIFFERENCE.  I

9    THINK THAT IF -- THE ISSUE WOULD BE WHETHER THEY HAVE TO GIVE

10   NOTICE TO EACH OTHER.

11         **MR. TANGRI:**  OKAY.

12         **THE COURT:**  SO WE'LL ADD THOSE WORDS TO THAT LINE.

13         **MR. TANGRI:**  OKAY.  AND THEN, YOUR HONOR, OUR NEXT

14   ONE -- AND THIS IS -- THIS IS FOR THE RECORD AS MUCH AS

15   ANYTHING.  IT'S ON PAGE 18, YOU HAD -- WELL, I SHOULD -- MAYBE

16   THIS MAY NOT BE FOR THE RECORD, BUT ON PAGE 18, WE'RE IN THE

17   BREACH OF CONTRACT AND WE'RE COMING UP ON DAMAGES, I -- I HAD

18   UNDERSTOOD, AND I MAY HAVE MISUNDERSTOOD, BUT I HAD UNDERSTOOD

19   THAT YOUR HONOR HAD CONCLUDED THAT THE -- THERE HAD TO BE

20   SOMETHING MORE THERE, NOT NECESSARILY LANGUAGE ABOUT LABOR AND

21   MATERIALS, COSTS BEING DEDUCTED, BUT A FRAMING OF THE -- THE

22   BENEFIT OF THE BARGAIN THEORY AS PRESENTED IN THIS CASE.  WE

23   HAD PROPOSED IT IN OUR 18.

24         AND I HAD UNDERSTOOD THAT YOU HAD ASKED THE

25   PLAINTIFFS -- YOUR HONOR HAD ASKED THE PLAINTIFFS TO -- IF

3804

```
1    THERE WAS ANOTHER THESIS THAN THE ONE WE HAD LAID OUT IN 18 TO

2    PROVIDE IT, BUT THAT OTHERWISE --

3            THE COURT:  AND THEY REALLY DIDN'T HAVE ANY OTHER

4    THESIS OTHER THAN THAT.  IT WASN'T NECESSARY TO HAVE ANY THESIS

5    OTHER THAN AS STATED IN THE INSTRUCTIONS, AND I THINK I AGREE.

6            MR. TANGRI:  FAIR ENOUGH, YOUR HONOR.  WE HAD A

7    DIFFERENT UNDERSTANDING AT THE END OF YESTERDAY.  AND WITH

8    THAT, I BELIEVE, THOSE ARE MY --

9            MS. GRANT:  THERE'S ONE.

10           MR. TANGRI:  THERE'S ONE MORE.  I'M SORRY.

11           MS. GRANT:  I BELIEVE THERE WAS SOMETHING FROM

12   YESTERDAY, YOUR HONOR, WHERE YOU SEEMED AMENABLE TO ADDING A

13   SENTENCE -- AND I DON'T HAVE IT IN FRONT OF ME SO I'LL GO FROM

14   MEMORY -- ABOUT SOMETHING THAT FILING A LAWFUL PATENT -- IF

15   DR. VERDIELL FILED A LAWFUL PATENT, MR. SHUM STILL HAD RIGHTS

16   UNDER THE PLAN OF LIQUIDATION TO EXPLOIT.  AND THAT WAS

17   SOMETHING THAT WE HAD UNDERSTOOD YOU WERE AMENABLE TO, BUT WE

18   DIDN'T SEE IT IN THE PROPOSED INSTRUCTIONS.  AND I --

19           DO YOU GUYS HAVE THE REDLINE?  BECAUSE I REMEMBER

20   THE ACTUAL SENTENCE THAT WE HAD TALKED ABOUT.

21           MR. TANGRI:  OH, YOU KNOW, I APOLOGIZE.  IT'S ON

22   PAGE 16, YOUR HONOR.  IT WOULD BE ON -- I THINK IT WOULD BE ON

23   PAGE 16.  AND IT WOULD COME FOLLOWING THAT -- THE CARRYOVER

24   PARAGRAPH ON THAT PAGE AND THE -- THE CONCEPT --

25           MS. GRANT:  OH, YEAH, HERE IT IS.
```

```
 1              MR. TANGRI:  -- WAS FROM DEFENDANTS' 13.

 2              MS. GRANT:  HERE WAS THE SENTENCE WE TALKED ABOUT.

 3    "UNDER THE PLAN OF LIQUIDATION, SHUM IS ALLOWED TO USE ANY

 4    RADIANCE TECHNOLOGY THAT MAY BE COVERED BY THE PATENTS ISSUED

 5    BY THE USPTO."

 6              SO I THINK THAT GIVEN THE ARGUMENTS IN THIS CASE,

 7    THAT MR. SHUM'S RIGHTS WERE ABOLISHED --

 8              THE COURT:  THAT MEANS WE -- WE DID TALK ABOUT

 9    THAT --

10              MS. GRANT:  YEAH.

11              THE COURT:  -- IN TERMS OF ELIMINATING LIABILITY BUT

12    ALSO ADDING SOMETHING ABOUT THE RIGHT.

13              MS. GRANT:  RIGHT.  AND SO JUST THE --

14              THE COURT:  WHY DON'T YOU PASS THAT UP.

15              MS. GRANT:  OKAY.

16              MR. TANGRI:  WHY DON'T WE JUST PASS UP

17    DEFENDANTS' 13.  WE'LL PASS UP -- THE LANGUAGE CAME FROM OUR

18    PROPOSED 13, YOUR HONOR, WHICH I'M HOPING TO --

19                   (OFF-THE-RECORD DISCUSSION.)

20              MR. TANGRI:  I THINK IT'S JUST THE SECOND SENTENCE

21    OF 13 THAT WE HAD UNDERSTOOD THE COURT WAS AMENABLE TO AT THE

22    CONCLUSION OF YESTERDAY.

23              THE COURT:  OKAY.  ALL RIGHT.

24              MR. TANGRI:  AND WITH THAT --

25              THE COURT:  ALL RIGHT.
```

```
1              MR. JANSEN:  AND WE'LL OBJECT.  WE JUST MAINTAIN OUR

2    OBJECTION, WE THINK THAT'S UNNECESSARILY ARGUMENTATIVE.

3              THE COURT:  OKAY.

4              ALL RIGHT.  THEN WHAT FROM THE STANDPOINT OF

5    PLAINTIFFS?

6              MR. JANSEN:  YOUR HONOR, WE HAD -- I GUESS -- I'M

7    GOING TO -- MR. MCFARLANE WILL TALK ABOUT THE PATENT

8    INSTRUCTIONS, HIS CONCERNS ABOUT WHATEVER IS THERE.

9              I GUESS AT THE END OF THOSE, HOWEVER, WE HAD -- WE

10   PROPOSED TWO INSTRUCTIONS, 1 AND 2, WHICH EXPLAIN TO THE JURY

11   THE LAW ON WHAT A DIVISIONAL APPLICATION IS AND WHAT --

12             THE COURT:  YEAH.  I LEFT THAT OUT BECAUSE I WASN'T

13   QUITE SURE THAT I UNDERSTOOD HOW IT WOULD HAVE ANY APPLICATION

14   HERE.

15             MR. JANSEN:  WE THINK IT'S IMPORTANT FOR THE JURY TO

16   UNDERSTAND THAT PATENTS THAT ARE DIVISIONAL -- SOME OF THESE

17   PATENTS ARE DIVISIONAL OR CONTINUATION, AND THEY NECESSARILY

18   HAVE TO BE -- THE CLAIMS IN THOSE PATENTS HAVE TO BE BASED ON

19   THE SAME DISCLOSURES OR SPECIFICATIONS SO THAT THAT WAY THE

20   JURY UNDERSTANDS THE FAMILY HISTORY OF THE PATENTS AND THE

21   RELATEDNESS AND THE FACT THAT THE CLAIM --

22             THE COURT:  I DON'T KNOW WHY THAT WOULD HAVE ANY

23   IMPACT UPON CONCEPTION OR NO CONCEPTION.  THAT'S -- I THINK

24   THEIR ISSUE IS INVENTORSHIP, NOT IN TERMS OF DIVISION HISTORY.

25   I DON'T KNOW WHY THAT WOULD HAVE ANY EFFECT ON INVENTORSHIP.
```

1          **MR. JANSEN:**  I THINK IT'S IMPORTANT -- AND

2     MR. MCFARLANE CAN ADDRESS THIS AS WELL, PROBABLY, BUT IT'S

3     IMPORTANT FOR -- WE KNOW THAT THE ARGUMENTS ABOUT WHAT'S IN THE

4     SPECIFICATIONS AND WHAT'S COMMON -- WHAT IS STATED IN THE -- IN

5     THE -- THE DESCRIPTION OF THE INVENTION AND THE EXPLANATION OF

6     THE INVENTION, THE ARGUMENT TOMORROW IS NOT GOING TO BE LIMITED

7     TO PURELY THE LANGUAGE OF THE CLAIMS, BUT I'M GUARANTEEING THAT

8     THE DEFENDANTS WILL NOT SO LIMIT IT, THAT IT'S IMPORTANT FOR

9     THE JURY TO UNDERSTAND THAT SOME OF THESE PATENTS ARE -- THE

10    CLAIMS NECESSARILY HAVE TO BE MATTERS THAT ARE DISCLOSED IN A

11    PRIOR -- IN THE -- IN ANOTHER PATENT.  FOR EXAMPLE, THE '950

12    PATENT HAS SPECIFICATIONS, THE CLAIMS HAVE TO BE BASED ON

13    WHAT'S DISCLOSED THERE AND A COUPLE OF LATER PATENTS ARE

14    CONTINUATIONS FROM THAT PATENT.

15          AND I THINK THE JURY NEEDS TO UNDERSTAND IT, THAT

16    THAT'S HOW THESE PATENTS ARE RELATED, HOW THESE CLAIMS FROM

17    DIFFERENT PATENTS ARE RELATED TO THE PREDECESSOR PATENT.

18          **THE COURT:**  WELL, WHAT IS IT?  I REMEMBER THERE WAS

19    SOME LANGUAGE ABOUT THAT, BUT WHAT SPECIFICALLY ARE YOU TALKING

20    ABOUT?

21          **MR. JANSEN:**  I CAN HAND UP OUR 1 AND 2.

22          **THE COURT:**  OKAY.

23          **MR. JANSEN:**  ONE'S ON THE FRONT AND 2 IS ON THE

24    BACK.

25          **THE COURT:**  ALL RIGHT.  DO YOU HAVE ANY OTHER REASON

```
 1    WHY IT SHOULD BE IN, MR. MCFARLANE?

 2              MR. McFARLANE:  NO, YOUR HONOR.

 3              THE COURT:  ALL RIGHT.  THAT'S ONE SUGGESTION.

 4              MR. TANGRI:  YOUR HONOR, MAY WE BE HEARD ON THAT?

 5              WE DO -- WE DO OBJECT TO INCLUDING IT.  AND THE

 6    PRINCIPAL BASIS FOR THE OBJECTION IS I THINK WHAT YOUR HONOR

 7    HAS INDICATED AT THE OUTSET IS THERE HASN'T BEEN ANY TESTIMONY

 8    IN THIS CASE ABOUT THIS CONCEPT OR WHAT IT WOULD BE RELEVANT TO

 9    IN THIS CASE.

10              NONE OF THE WITNESSES -- I BELIEVE THEY TRIED TO PUT

11    UP A QUESTION ABOUT THIS WITH ONE OF OUR EXPERTS WHO SAID IT

12    WAS KIND OF BEYOND THE SCOPE OF HIS KEN, AND THAT WAS IT.  SO

13    TO HAVE THESE INSTRUCTIONS COME FLYING IN -- AND -- AND I -- IT

14    SOUNDS LIKE THERE IS GOING TO BE ARGUMENT ABOUT IT, BUT IT'S

15    GOING TO BE ARGUMENT FROM THEM, UNTETHERED TO ANY OF THE

16    TESTIMONY --

17              THE COURT:  WELL, I DON'T KNOW.  IS THERE ANYTHING

18    IN THE PATENTS THEMSELVES AS THEY'RE ISSUED THAT WOULD RAISE

19    THIS ISSUE ABOUT A RELATIONSHIP BACK THAT THIS IS A DIVISIONAL

20    PATENT, OR WHATEVER IT MAY BE?

21              MR. TANGRI:  NOT --

22              THE COURT:  BECAUSE I DON'T KNOW WHAT'S IN THE

23    RECORD THAT WOULD BE FROM ANY SOURCE OTHER THAN THAT.

24              MR. TANGRI:  THERE'S --

25              MR. McFARLANE:  IT'S ON THE FACE OF THE PATENTS.  I
```

1   THINK THE FACE OF THE '6, '726, STATES THAT IT'S A DIVISIONAL

2   OF THE '950 AND THE '427.  THE FACE OF THAT PATENT STATES THAT

3   IT'S A CONTINUATION IN PART OF THE '950.

4           **THE COURT:**  RIGHT.  SO IT'S IN EVIDENCE IN THAT

5   SENSE.  I WONDERED ABOUT THAT.

6           **MR. TANGRI:**  IT IS --

7           **THE COURT:**  BUT IT IS AS TO '6, '726?

8           **MR. McFARLANE:**  YES, YOUR HONOR.

9           **THE COURT:**  BUT THEN WHAT DIFFERENCE DOES IT MAKE IF

10  IT IS OR IT IS NOT?

11          **MR. McFARLANE:**  I THINK FOR THE REASONS THAT

12  MR. JANSEN EXPLAINED, THE JURY -- THERE MAY BE DISCUSSION

13  DURING THE CLOSING AS TO THE NATURE OF THE RELATIONSHIPS

14  BETWEEN THOSE PATENTS, THE -- THE RELATIONSHIP OF THE

15  SPECIFICATION OF THE '950 TO ITS CHILDREN PATENTS.

16          **MR. TANGRI:**  THIS WASN'T THE SUBJECT OF ANY

17  TESTIMONY AT ALL IN ANY -- I MEAN, IN ANY PART OF THIS.  NOBODY

18  TRIED TO ELUCIDATE WHY THIS WOULD MATTER, NONE OF THE EXPERTS,

19  AND THERE WERE PLENTY OF THEM, WENT INTO THIS.  AND SO I -- I

20  JUST THINK THAT --

21          **THE COURT:**  ALL RIGHT.  I'LL LOOK AT THE INSTRUCTION

22  AND SEE WHETHER OR NOT I THINK IT OUGHT TO BE ADDED.

23          **MR. McFARLANE:**  AND WE JUST HAD ONE OTHER SMALL

24  POINT TO MAKE IN THE PATENT INSTRUCTIONS, AND THIS IS ON

25  PAGE 10 IN THE SECTION THAT WAS ADDED.

1          THE COURT:  OKAY.

2          MR. McFARLANE:  THE SENTENCE THAT IS REGARDING THE

3   END OF THE SECOND PARAGRAPH.  AND IT READS, "ANY DOCUMENT WHICH

4   IS UNDATED OR NOT WITNESSED."

5          THE COURT:  OKAY.

6          MR. McFARLANE:  AND WE WOULD JUST SUGGEST IN THE

7   LAST SENTENCE OF THAT LINE THAT IT READ "TO BE GIVEN," AND

8   INSTEAD OF THE WORD "MINIMAL" PUT "LESS VALUE IN CORROBORATING

9   CONCEPTION," AND THEN ADD THE PHRASE "THAN CONTEMPORANEOUSLY

10  WITNESSED AND DATED DOCUMENTS."

11         THERE IS CASE LAW THAT WE'VE DISCUSSED IN OUR

12  VARIOUS BRIEFS AND OBJECTIONS ON THIS PARTICULAR INSTRUCTION

13  THAT DOES ALLOW CIRCUMSTANTIAL EVIDENCE TO CORROBORATE, AND

14  THAT HOLDS THAT CORROBORATION CAN EXIST EVEN IN THE ABSENCE OF

15  A SINGLE DOCUMENT.  AND SO WE THINK THAT, YOU KNOW, ONCE

16  EVIDENCE IS ADMITTED TO THE JURY, THAT THEY SHOULD HAVE MORE

17  FLEXIBILITY TO AFFORD THAT EVIDENCE PROBATIVE VALUE.

18         THE COURT:  WELL, MINIMAL VALUE IS OF LESSER VALUE

19  THAN OTHER EVIDENCE.  BUT YOU WANT TO SAY THAT MORE

20  SPECIFICALLY.  YOU WANT TO SAY IT'S OF -- TO BE GIVEN LESSER

21  VALUE IN CORROBORATING CONCEPTION THAN DATED DOCUMENTS OR --

22         MR. McFARLANE:  WE WANTED TO MAKE THAT A MORE

23  FLEXIBLE STATEMENT.

24         THE COURT:  I DON'T KNOW HOW YOU MAKE IT MORE

25  FLEXIBLE.

3811

```
 1              MR. TANGRI:  YOUR HONOR, WE THINK MINIMAL VALUE IS

 2   RIGHT THERE.  AS WE'VE DISCUSSED, THERE ARE CASES THAT SAY

 3   THESE DOCUMENTS -- SUCH DOCUMENTS ARE ENTITLED TO NO WEIGHT OR

 4   NO VALUE.  THERE'S CASES THAT SAY MINIMAL.  WE THINK MINIMAL IS

 5   THE APPROPRIATE RECOMMENDATION.

 6              MR. McFARLANE:  AND, YOUR HONOR, THE CASES THAT HAVE

 7   THAT STANDARD ARE CASES WHERE THERE IS SIMPLY NO OTHER EVIDENCE

 8   OF THE INVENTORSHIP.  AND HERE, GIVEN THE PLETHORA OF

 9   CORROBORATED EVIDENCE, CIRCUMSTANTIAL EVIDENCE, WE JUST BELIEVE

10   THAT "LESS VALUE" IN THIS SENTENCE WOULD BE MORE APPROPRIATE.

11              THE COURT:  WELL, "LESS" -- "LESS" IS AN

12   ARGUMENTATIVE WORD IN A SENSE, "MORE MINIMAL" IS SORT OF LIKE

13   CAUTIONARY INSTRUCTIONS.  I ALWAYS GO BACK TO CRIMINAL CASES

14   AND WE GIVE CAUTIONARY INSTRUCTIONS FOR SNITCHES AND THAT SORT

15   OF THING, AND "MINIMAL" SORT OF SOUNDS THE SAME WAY.

16              SO I THINK "MINIMAL," YOU CAN -- YOU CAN USE.  AND

17   IT LESSENS THAT EVIDENCE, SO I THINK IS JUST YOUR IMAGINATION

18   IN TERMS OF HOW ROUGH YOU CAN BE WITH "MINIMAL."  I THINK YOU

19   CAN DO THAT.  SO GO AHEAD.  SO I DON'T THINK IT NEEDS TO BE

20   CHANGED.

21              MR. McFARLANE:  OKAY.  THANK YOU, YOUR HONOR.

22              MR. JANSEN:  YOUR HONOR, GOING INTO THE FRAUD

23   SECTION ON PAGE 14.

24              THE COURT:  OKAY.

25              MR. JANSEN:  THERE'S A -- AFTER THE FACTORS UNDER
```

1    WHICH LIGHTLOGIC CAN BE RESPONSIBLE, IT BASICALLY EXPLAINS

2    VICARIOUS LIABILITY OR AGENCY LIABILITY, RESPONDEAT SUPERIOR

3    LIABILITY.  WE HAD PROPOSED TWO VERY SHORT INSTRUCTIONS,

4    NUMBERS 9 AND 10, WHICH I BELIEVE THAT -- I UNDERSTOOD THAT YOU

5    WOULD BE -- WOULD BE INSERTING WHICH GO TO IMPUTED KNOWLEDGE

6    AND IMPUTED INTENT TO A CORPORATION.

7            AND I THINK -- MY UNDERSTANDING WAS THAT THAT HAD

8    BEEN -- AND I WOULD SUGGEST THOSE BE INSERTED RIGHT -- RIGHT

9    THERE BEFORE THE PARAGRAPH STARTING WITH "CALCULATING THE

10   AMOUNT OF DAMAGES."  I EVEN TALKED ABOUT TAKING THE WORD

11   "INTEL" OUT OF THIS, BUT I THINK WE HAD SORT OF SAID THESE

12   WOULD GO IN, AND I'LL PASS THAT UP WITH THAT EDIT FOR YOU TO

13   CONSIDER.

14           **MR. TANGRI:**  YOUR HONOR --

15           **THE COURT:**  THAT'S THE ONE WHERE THERE IS OVERLAP IN

16   DAMAGES.

17           **MR. JANSEN:**  WELL, THIS IS RIGHT BEFORE THAT.  THIS

18   GOES TO REALLY THE IDEA THAT KNOWLEDGE AND INTENT CAN BE

19   IMPUTED TO A CORPORATION AND NEED TO BE IMPUTED.

20           **MR. TANGRI:**  AND, YOUR HONOR, WE HAD UNDERSTOOD THAT

21   YOU WERE GOING TO DRAFT SOMETHING TAKING INTO ACCOUNT THE

22   VARIOUS INSTRUCTIONS THAT HAD BEEN PROFFERED AND --

23           **THE COURT:**  I THINK -- I THOUGHT WE WERE GOING TO DO

24   SOMETHING WITH THIS.  YEAH.

25           **MR. JANSEN:**  SO I JUST SUGGEST THOSE TWO SENTENCES

3813

```
 1    BE INSERTED.

 2              THE COURT:  WELL, THIS IS -- "RESPONSIBLE FOR THE

 3    HARM."  I THINK THAT'S REALLY SOMETHING -- LIGHTLOGIC IS

 4    RESPONSIBLE FOR THE HARM, BUT YOU WANT TO ADD SOMETHING TO THE

 5    EFFECT THAT THEY'RE RESPONSIBLE FOR THE KNOWLEDGE AND INTENT?

 6              MR. JANSEN:  JUST -- NO.  JUST -- I THINK THAT IN

 7    DETERMINING INTENT, THAT IS -- ESPECIALLY WITH RESPECT FOR

 8    UNJUST ENRICHMENT, FOR EXAMPLE, WHERE YOU'VE ASKED THAT THERE

 9    BE A FINDING OF WRONGFUL CONDUCT BY LIGHTLOGIC, FOR EXAMPLE, WE

10    NEED SOMEWHERE TO -- SOME WAY TO LET THE JURY KNOW THAT -- THAT

11    THE KNOWLEDGE AND INTENT OF ITS OFFICER, MR. VERDIELL, CAN BE

12    IMPUTED TO THE CORPORATION.  IN FACT, IT HAS TO BE IMPUTED TO

13    THE CORPORATION.

14              I'M NOT SURE -- SO IT'S A PRETTY STANDARD THING TO

15    INSTRUCT THE JURY ON, I BELIEVE, THAT CONCEPT.  THIS IS THE

16    SECTION THAT SUGGESTS ON WHERE YOU MIGHT PUT IT, BUT WE THINK

17    IT SHOULD BE SOMEWHERE EITHER IN THE FRAUD OR THE UNLAWFUL --

18    THE --

19              THE COURT:  THE WRONGFUL CONDUCT?

20              MR. JANSEN:  YEAH.

21              THE COURT:  YEAH.

22              MR. JANSEN:  THE UNJUST ENRICHMENT SECTION, RIGHT.

23              THE COURT:  OKAY.

24              MR. JANSEN:  SO THE NEXT --

25              MR. TANGRI:  YOUR HONOR, WE THINK THAT -- JUST TO BE
```

```
1    CLEAR, WE THINK THAT WHAT YOU HAVE HERE CAPTURES IT ADEQUATELY

2    AND -- AND I DON'T -- I DON'T SEE HOW THIS HELPS WITH THAT --

3    WHEN YOU -- IF YOU WERE TO PUT THE TWO TOGETHER COULD RUN THE

4    RISK OF CREATING CONFUSION.

5              THE COURT:  WELL, I'LL LOOK AND SEE, BECAUSE I THINK

6    THAT WHEN WE TALKED ABOUT THIS YESTERDAY, THAT WE DID TALK

7    ABOUT ADDING SOMETHING THAT WOULD COVER THIS.  AND THE QUESTION

8    IS WHETHER IT'S COVERED OR WHETHER IT SHOULD BE MORE EXPLICITLY

9    STATED.

10             SO I'LL LOOK AT IT IN TERMS OF WHETHER I THINK IT'S

11   COVERED OR WHETHER IT OUGHT TO BE ADDED TO EITHER HERE OR

12   WITH -- OR AT THE UNJUST ENRICHMENT SECTION.

13             MR. JANSEN:  OKAY.  THANK YOU VERY MUCH, YOUR HONOR.

14   I DON'T BELIEVE THAT SPECIFIC CONCEPT IS COVERED, BUT I'LL

15   LEAVE THAT TO YOUR HONOR TO -- THE OTHER THING --

16             MR. TANGRI:  AND JUST TO BE -- THE INTEL, THEY'RE

17   NOT ASKING TO HAVE THE PHRASE "INTEL," THE WORD "INTEL" IN

18   HERE, CORRECT?

19             THE COURT:  NO.

20             MR. JANSEN:  I THINK WE AGREED YESTERDAY.

21             THE COURT:  THEY TOOK THAT OUT.

22             MR. JANSEN:  THE NEXT ISSUE I THINK I'D LIKE TO JUST

23   DISCUSS WITH THE COURT IS AT THE BOTTOM OF THE FRAUD SECTION,

24   AND IT ALSO CONTINUES IN THE BOTTOM OF THE BREACH OF CONTRACT

25   AND THE UNJUST ENRICHMENT SECTION --
```

1          **THE COURT:**  RIGHT.

2          **MR. JANSEN:**  -- IS THE INSTRUCTION THAT "THE JURY,

3    IN CALCULATING THE AMOUNT OF DAMAGES FOR INTENTIONAL

4    MISREPRESENTATION, SHOULD NOT TAKE INTO ACCOUNT ANY AMOUNT THAT

5    YOU ALREADY INCLUDED IN DETERMINING DAMAGES, IF ANY, FOR SHUM'S

6    CLAIM FOR BREACH OF CONTRACT OR ANY AWARD OF UNJUST

7    ENRICHMENT."

8          WE BELIEVE THAT IMPROPERLY ASKS THE JURY TO NOT

9    AWARD THE FULL AMOUNT OF DAMAGES SUFFERED FOR A PARTICULAR

10   CAUSE OF ACTION.  AND WE WOULD ASK THAT THAT BE CHANGED AROUND

11   TO INSTRUCT THEM "TO NOT CONSIDER TAKING INTO ACCOUNT OR

12   SUBTRACT ANY AMOUNT THAT YOU ALREADY INCLUDED IN DETERMINING

13   DAMAGES, IF ANY, FOR SHUM'S CLAIM FOR BREACH OF CONTRACT OR ANY

14   AWARD OF UNJUST ENRICHMENT."

15         WE DON'T BELIEVE IT'S APPROPRIATE FOR THE JURY TO --

16   TO AWARD LESS DAMAGES THAN THEY BELIEVE HAVE BEEN SUFFERED

17   UNDER ANY PARTICULAR CAUSE OF ACTION.

18         **THE COURT:**  NO, I THINK THAT'S TRUE.  BUT YOU DON'T

19   WANT TO ADD IT TWICE.  I MEAN, THAT'S --

20         **MR. JANSEN:**  WELL, WE HAVE TO DEAL WITH -- AT SOME

21   POINT WE'LL HAVE TO DEAL WITH IF THERE'S -- IF THERE'S -- IF

22   THERE'S, YOU KNOW, AWARDS UNDER EACH OF THE THREE CAUSES --

23   THREE CLAIMS, THEN WE HAVE TO DECIDE WHICH OF THOSE ARE -- ARE

24   DUPLICATIVE.

25         BUT I DON'T THINK IT'S APPROPRIATE TO ASK THE JURY

1   TO SUBTRACT -- SUBTRACT SOME AMOUNT OF -- FROM WHAT'S OWED BY

2   LIGHTLOGIC SIMPLY, FOR EXAMPLE, BECAUSE THEY BELIEVE VERDIELL

3   IS RESPONSIBLE FOR THAT.  IF VERDIELL DID SOMETHING AND

4   LIGHTLOGIC IS RESPONSIBLE FOR IT, THEN WE SHOULD GET AN AWARD

5   AGAINST LIGHTLOGIC AS WELL AS AGAINST VERDIELL.

6            **MR. TANGRI:**  BUT NOT BOTH.  THIS IS PERFECTLY RIGHT,

7   YOUR HONOR.  THIS SAYS IF VERDIELL DID SOMETHING, AND THAT'S

8   THE BASIS -- AND THE ONLY BASIS FOR LIABILITY AGAINST

9   LIGHTLOGIC IS THAT, THEN YOU GOT TO -- YOU CAN'T AWARD IT

10  TWICE.  DO NOT -- THIS -- THIS LANGUAGE HAS GOT IT, WE THINK,

11  CORRECT.  AND -- AND TO SAY WHAT THEY'RE PROPOSING WOULD JUST

12  CREATE --

13           **THE COURT:**  THIS ALLOWS --

14               (SIMULTANEOUS COLLOQUY.)

15           **THE COURT:**  THIS ALLOWS THEM, IN EFFECT, TO SAY THAT

16  THEY CAN AWARD SOMETHING THAT IS OVER AND ABOVE THAT WHICH HAS

17  ALREADY BEEN AWARDED FOR VERDIELL.  IT HAS SOME OTHER BASIS.  I

18  DON'T KNOW WHAT THE BASIS WOULD BE.  BUT IF THERE'S SOME OTHER

19  BASIS, THEN -- BUT I DON'T SEE HOW YOU CAN AWARD SOMETHING

20  AGAINST VERDIELL AND THEN ADD THE SAME THING TO BE AWARDED

21  AGAINST LIGHTLOGIC IF LIGHTLOGIC IS -- THEIR LIABILITY IS BASED

22  UPON THE CONDUCT OF VERDIELL, THE VICARIOUS CONDUCT OF

23  VERDIELL.

24           **MR. TANGRI:**  AND THERE'S NO OTHER THEORY ON THIS

25  CAUSE.

1          **MR. JANSEN:**  SO IF WE GET A VERDICT AGAINST --

2    AGAINST, LET'S SAY, ON THIS CAUSE OF ACTION AGAINST VERDIELL

3    FOR "X" DOLLARS --

4          **THE COURT:**  RIGHT.

5          **MR. JANSEN:**  -- AND THE JURY AWARDS -- FINDS

6    LIGHTLOGIC -- AWARDS ZERO BECAUSE THEY BELIEVE THAT THEY'VE

7    ALREADY AWARDED THE MONEY AGAINST VERDIELL --

8          **THE COURT:**  RIGHT.

9          **MR. JANSEN:**  -- DOES THAT MEAN THAT YOU WILL THEN

10   ENTER A JUDGMENT AGAINST LIGHTLOGIC FOR THAT AMOUNT, THE AWARD

11   AGAINST VERDIELL?  BECAUSE WE WANT THE JUDGMENT AGAINST THE

12   CORPORATION, NOT MR. VERDIELL.  WE WANT TO HAVE A JUDGMENT

13   AGAINST THE RESPONSIBLE EMPLOYER.  AND IF IT WOULD --

14          (SIMULTANEOUS COLLOQUY.)

15          **THE COURT:**  THAT WILL BE -- SUPPOSEDLY THAT WOULD BE

16   PICKED UP IN LIABILITY.  THAT'S WHAT YOU'RE TALKING ABOUT IN

17   SAYING IF THERE -- THERE'S VERDICTS THAT SAYS "LIABILITY 'YES'

18   OR 'NO' FOR VERDIELL" AND "LIABILITY 'YES' OR 'NO' FOR

19   LIGHTLOGIC."

20          SO YOU'D HAVE A VERDICT THAT SAYS THERE IS LIABILITY

21   FOR -- AND THEN THE MEASURE WOULD BE THAT IF -- IF IT WAS FOR

22   VERDIELL -- I GUESS THE PROBLEM WOULD BE THAT, WOULD THE

23   ARGUMENT BE MADE THAT IF THEY -- IF THEY DO SAY ZERO DAMAGES

24   FOR -- FOR FRAUD, LET US SAY, AND -- BUT THEY ALSO SAY "X"

25   DAMAGES FOR FRAUD VERSUS VERDIELL AND THEN NO DAMAGES AGAINST

```
1   LIGHTLOGIC, THAT THAT MEANS THAT THERE WOULD BE NO JUDGMENT TO

2   BE ENTERED AGAINST LIGHTLOGIC.

3            MR. JANSEN:  THAT'S THE PROBLEM THE WAY THIS IS

4   WORDED.  THAT'S ONE PROBLEM.  THERE'S -- AND THERE'S OTHER

5   PROBLEMS IN ADDITION, BUT THAT'S ONE PROBLEM I THINK WE NEED TO

6   ADDRESS.

7            AND THAT'S REALLY THE SECOND PARAGRAPH WHICH STATES

8   THAT, "IN CALCULATING THE AMOUNT OF ANY DAMAGES ATTRIBUTABLE TO

9   LIGHTLOGIC FOR INTENTIONAL MISREPRESENTATION, DO NOT INCLUDE

10  ANY AMOUNT THAT YOU ALREADY INCLUDED, IF ANY, IN DETERMINING

11  THE AMOUNT ATTRIBUTABLE TO VERDIELL."

12           FOR EXAMPLE, THEY FIND LIABILITY, THEY AWARD A

13  HUNDRED DOLLARS AGAINST VERDIELL.  THEY FIND LIABILITY ON

14  LIGHTLOGIC ZERO, BECAUSE THEY DEDUCTED THE HUNDRED DOLLARS, NOW

15  WE GET A JUDGMENT -- WE SHOULD BE ENTITLED TO JUDGMENT AGAINST

16  LIGHTLOGIC FOR THE FULL AMOUNT BECAUSE IT'S RESPONSIBLE.

17           THE COURT:  WELL, YOU SHOULD HAVE A JUDGMENT AGAINST

18  BOTH VERDIELL AND LIGHTLOGIC FOR THAT SAME SUM OF MONEY, BUT

19  NOT FOR TWICE THAT AMOUNT OF MONEY.

20           MR. TANGRI:  NOT FOR 200.

21           THE COURT:  THAT'S ALL.  BUT I THINK -- I THINK

22  YOU'RE RIGHT IS THAT WE OUGHT TO BE TAKING CARE OF THE

23  SITUATION WHERE IF WE'RE MISLEADING THEM IN TERMS OF THE

24  SIGNIFICANCE OF JUDGMENTS IN SOME FASHION -- BECAUSE THIS IS

25  NOT INTENDED TO AFFECT THE NOTION THAT YOU COULD HAVE JOINT AND
```

 1     SEVERAL LIABILITY FOR THE TWO ENTITIES --

 2                 **MR. JANSEN:**  SO I THINK WHAT --

 3                 **THE COURT:**  -- AS OPPOSED TO AWARDING SOMETHING

 4     TWICE.

 5                 **MR. JANSEN:**  SO WHAT WE THINK IS APPROPRIATE, YOUR

 6     HONOR, IS TO -- IS TO INSTRUCT THE JURY TO NOT -- WITH RESPECT

 7     TO ANY VERDICT ON ANY CAUSE OF ACTION TO NOT CONSIDER OR DEDUCT

 8     ANY AMOUNT THAT THEY FOUND -- THEY'VE AWARDED UNDER ANY OTHER

 9     CAUSE OF ACTION, AND AT THE END OF THE DAY, WE WOULD SIMPLY

10     TAKE THE HIGHEST AWARD.  WE WOULD NOT ADD THEM ALL UP.

11                 **MR. TANGRI:**  THAT'S A -- I MEAN, THAT'S AN

12     INVITATION TO DOUBLE RECOVERY, YOUR HONOR.

13                 **MR. JANSEN:**  NO, NO.  WE WOULD NOT ADD THEM UP.  WE

14     WOULD TAKE THE HIGHEST AWARD.  SO -- I THINK THAT'S THE ONLY

15     WAY TO REALLY SOLVE THIS PROBLEM WOULD BE TO SAY --

16                 **THE COURT:**  THAT RAISES THE SAME PROBLEM IN TERMS OF

17     JUDGMENTS IF YOU SAY, "WE'RE GOING TO TAKE THE JUDGMENT THAT'S

18     HIGHEST AND THEN WE'RE NOT GOING TO TAKE A JUDGMENT AGAINST THE

19     PERSON WHO WAS LESS THAN THAT, EVEN THOUGH THERE WAS AN AWARD

20     FOR LIABILITY."

21                 **MR. JANSEN:**  I -- I WOULD SAY IT THIS WAY, YOUR

22     HONOR.  LET'S SAY THE -- THERE'S AN AWARD OF UNJUST ENRICHMENT

23     AGAINST LIGHTLOGIC FOR $50.

24                 **THE COURT:**  "X."

25                 **MR. JANSEN:**  THERE'S AN AWARD AGAINST VERDIELL FOR

---

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1   $25.  WE WOULD SIMPLY TAKE THE HIGHEST NUMBER AND THAT WOULD BE

2   AN AWARD AGAINST --

3          **THE COURT:**  AND THAT MEANS YOU COULDN'T COLLECT.  IF

4   SOMEHOW OR OTHER YOU COULDN'T COLLECT FROM LIGHTLOGIC THE 50,

5   YOU WOULDN'T HAVE A JUDGMENT YOU COULD COLLECT ANYTHING FROM

6   VERDIELL.

7          **MR. JANSEN:**  IT WOULD BE -- THE JUDGMENT WOULD BE

8   THAT HE IS JOINTLY AND SEVERALLY LIABLE UP TO THE AMOUNT THAT

9   WAS AWARDED -- THE 25 THAT WAS AWARDED AGAINST HIM.

10         **THE COURT:**  SO THEN THERE ARE TWO JUDGMENTS.

11         **MR. JANSEN:**  NO, THERE'S NOT.  THERE'S ONE JUDGMENT

12  AND HE'S SEVERALLY LIABLE UP TO --

13         **THE COURT:**  YEAH -- TO HAVE JOINT AND SEVERAL

14  LIABILITY FOR SOME NUMBER.

15         **MR. JANSEN:**  RIGHT.

16         **THE COURT:**  ALL RIGHT.

17         **MR. JANSEN:**  AND IF THE AWARD AGAINST MR. VERDIELL

18  IS LESS THAN THE AWARD AGAINST LIGHTLOGIC, HE WOULD ONLY BE

19  SEVERALLY LIABLE, YOU KNOW, DIRECTLY LIABLE FOR PLAINTIFF UP TO

20  THAT AMOUNT.  BUT I THINK TO INSTRUCT THE JURY TO -- TO REDUCE

21  THE JUDGMENT AMOUNT ON ANY CAUSE OF ACTION GETS US INTO ALL

22  KINDS OF PROBLEMS, AND IT -- IT'S NOT THE WAY TO GO.

23         **MR. TANGRI:**  THIS DOESN'T ACTUALLY REQUEST THEM TO

24  REDUCE IT, YOUR HONOR, JUST TELLS THEM NOT TO DOUBLE COUNT

25  SO --

1      **MR. JANSEN:**  SO THAT'S THE FUNDAMENTAL PROBLEM WE

2    HAVE WITH THE WORDING ON THIS CAUSE OF ACTION.

3             **THE COURT:**  WELL, IT'S --

4      **MR. JANSEN:**  SO, YOUR HONOR, JUST TO RESTATE OUR

5    POINT, I -- YOU HAVE TO DO WHAT YOU HAVE TO DO.

6             **THE COURT:**  I THINK SOME OF IT IS, IS A QUESTION OF

7    WHAT DO YOU DO AFTER VERDICTS COME IN.  I THINK THAT WHAT

8    YOU'RE SUGGESTING IS THAT WE NEED TO BE PAYING ATTENTION TO THE

9    NOTION THAT IF THE VERDICTS COME IN, THEY SHOULD NOT AFFECT

10   THE -- THE INITIAL ISSUE OF LIABILITY AND THAT THE ISSUE IN

11   TERMS OF JOINT AND SEVERAL LIABILITY CAN BE RESOLVED BY THE

12   COURT EVEN -- WHATEVER THE JURY DID.

13            **MR. JANSEN:**  WELL, I'VE HAD THAT PROBLEM BEFORE,

14   YOUR HONOR, WHERE I'VE -- WE'VE WALKED AWAY FROM A JURY TRIAL

15   AND REALIZED THAT THE JURY HAD DONE WHAT THEY DECIDED THE TOTAL

16   DAMAGES WERE "X" --

17            **THE COURT:**  RIGHT.

18            **MR. JANSEN:**  -- AND THEY DIVIDED IT BETWEEN THE

19   DIFFERENT CAUSES OF ACTION, AND THE JUDGE ONLY GAVE ME THE

20   LARGEST AMOUNT.  SO I -- AT THE END OF THE DAY, I GOT -- I GOT

21   A QUARTER OF WHAT THE JURY INTENDED TO AWARD BECAUSE THE JURY

22   DECIDED TO ALLOCATE THE AMOUNTS.  AND WE CAN'T -- I DON'T WANT

23   THAT TO HAPPEN AGAIN HERE.

24            THAT WOULD BE -- THAT WOULD BE NOT -- THAT WOULD NOT

25   BE A FAIR RESULT.  BUT THE JURY SHOULD BE INSTRUCTED NOT TO

1    ALLOCATE.  IT NARROWS IT TO INSTRUCT THEM TO ALLOCATE.  THEY

2    SHOULD BE INSTRUCTED NOT TO ALLOCATE AND TO AWARD THE FULL

3    AMOUNT OF DAMAGES UNDER EACH CAUSE OF ACTION.

4         **THE COURT:**  ARE THESE -- YOU KNOW, THE -- MAYBE I

5    DON'T UNDERSTAND ENOUGH ABOUT CIVIL PRACTICE, IS THAT IT SEEMS

6    TO ME THIS IS THE SORT OF THING THAT PEOPLE DO ALL THE TIME.

7    WHY ISN'T THIS IN CALIFORNIA'S DAMAGES INSTRUCTIONS?  IS IT IN

8    THE DAMAGE INSTRUCTIONS THAT DEAL WITH YOUR ISSUE?  IS THERE

9    ANOTHER INSTRUCTION THAT DEALS WITH THE ISSUE ABOUT JOINT AND

10   SEVERAL OR PRESERVING VERDICTS FOR -- IN THAT FASHION?

11        **MR. JANSEN:**  I DON'T KNOW.

12        **THE COURT:**  I MEAN --

13             (SIMULTANEOUS COLLOQUY.)

14        **THE COURT:**  -- IF THEY DID THAT, BUT --

15        **MR. TANGRI:**  YEAH, WE -- YOUR HONOR, WE HAD PROPOSED

16   I GUESS, IN OUR INSTRUCTION 28, SOMETHING THAT WAS BASED ON THE

17   CACI 361.  AND I CANNOT TELL QUICKLY WHETHER YOU'VE INCLUDED

18   THAT OR NOT.

19        BUT THAT SAYS, "SHUM HAS MADE CLAIMS AGAINST

20   VERDIELL FOR BREACH OF CONTRACT, INTENTIONAL MISREPRESENTATION,

21   AND AGAINST BOTH VERDIELL AND LIGHTLOGIC FOR UNJUST ENRICHMENT.

22   IF YOU DECIDE THAT SHUM HAS PROVED MORE THAN ONE OF THESE

23   CLAIMS, YOU CANNOT AWARD MORE THAN THE SAME DAMAGES ONCE," AND

24   THAT'S -- THAT'S BASED ON CACI 361.  THERE'S ANOTHER CITE TO

25   CACI 4410.

```
 1              SO THAT'S -- THAT SEEMS TO BE HOW CALIFORNIA
 2   INSTRUCTIONS DEAL WITH IT.
 3              THE COURT:  WELL, THAT'S ONLY PART OF IT.  THAT
 4   WOULD BE -- YOU CAN AWARD DAMAGES --
 5              MR. TANGRI:  AND THEY DIDN'T OBJECT --
 6              THE COURT:  -- THAT ARE NOT DUPLICATIVE.
 7              IF YOU'RE SAYING THAT THEY -- THEY COME BACK AND
 8   THEY SAY, "WELL, WE'RE GOING TO GIVE YOU 'X' FOR THAT ONE, 'X'
 9   FOR THAT ONE, AND 'X' FOR THAT ONE, AND WHAT WE MEAN THAT YOU
10   SHOULD ADD THEM ALL TOGETHER AGAINST THE PERSON THAT WE FOUND
11   LIABLE" WOULD HAVE SOME WAY OF KNOWING THAT.  I MEAN -- AND
12   YOUR INSTRUCTION REALLY DOESN'T DO THAT.  YOU SAY YOU CAN'T --
13   YOU CAN'T ADD THEM TOGETHER, BUT YOU CAN KEEP THEM SEPARATE.
14              MR. TANGRI:  ALL RIGHT.
15              THE COURT:  IS THERE SOME OTHER INSTRUCTION OTHER
16   THAN 361 THAT'S OUT THERE IN CACI?
17              MR. TANGRI:  THERE'S A REFERENCE IN OUR PAPERS HERE
18   TO 4410, BUT I DO NOT HAVE THAT IN FRONT OF ME.  I APOLOGIZE.
19              THE COURT:  OKAY.
20              MR. TANGRI:  I MEAN, THAT'S NOT A REQUEST -- THAT'S
21   NOT AN INSTRUCTION WE REQUESTED.
22              THE COURT:  LET'S SEE, SHOULD WE TELL THE JURY TO
23   COME IN ON THURSDAY?
24              MR. TANGRI:  NO.
25              THE COURT:  NO.
```

3824

```
1              MR. JANSEN:  I DON'T THINK SO.

2                   (SIMULTANEOUS COLLOQUY.)

3              THE COURT:  I WOULD HOPE THERE'S A WAY WE COULD GET

4    THIS ALL DONE.

5              MR. TANGRI:  WE CAN --

6              THE COURT:  ALL I KNOW IS THAT -- I HEAR WHAT YOU'RE

7    SAYING, BUT I DON'T KNOW EXACTLY HOW TO DEAL WITH IT BECAUSE WE

8    HAVE THESE INSTRUCTIONS WHICH -- WHICH ARE CORRECT IN THE SENSE

9    OF DUPLICATIVE, BUT THERE'S THE ISSUE IN TERMS OF DOES THIS

10   FORECLOSE LEGITIMATE PROBLEMS THAT COME ABOUT BECAUSE OF NOT

11   HAVING PROPER JUDGMENTS OR THE AGGREGATION OF AMOUNTS THAT ARE

12   SEPARATE.

13             MR. JANSEN:  OR YOU DECIDE THAT, YOU KNOW, ONE

14   CLAIM --

15             THE COURT:  WHAT IF I JUST DID -- TOOK THOSE OUT

16   TOTALLY?

17             MR. JANSEN:  LET'S TAKE THEM OUT TOTALLY.  I AGREE

18   WITH THAT.

19             MR. TANGRI:  I'M SORRY?  WHAT WAS THE PROPOSAL?

20             THE COURT:  THAT'S ONE OF THE THINGS WE COULD DO,

21   INSTEAD OF HAVING THESE IN, JUST TAKE THEM OUT.

22             MR. TANGRI:  WELL, WE THINK THESE SHOULD STAY IN,

23   YOUR HONOR, BECAUSE --

24             THE COURT:  WELL --

25             MR. TANGRI:  WELL -- BUT, I MEAN, OR AT THE VERY
```

```
 1   LEAST, THEN 28 OUGHT TO BE IN.  THEY DIDN'T OBJECT TO 28.

 2             THE COURT:  WHAT'S 28?  TWENTY-EIGHT IS YOUR 28.

 3             MR. TANGRI:  OUR 28.

 4             MR. JANSEN:  THIS IS YOUR 28 FROM YESTERDAY?

 5             MR. TANGRI:  YEAH.

 6             MR. JANSEN:  TO WHICH YOU SAID NO OBJECTION?  IT'S

 7   ACTUALLY 28 FROM FRIDAY, I BELIEVE.

 8                  (OFF-THE-RECORD DISCUSSION.)

 9                  (PAUSE IN THE PROCEEDINGS.)

10             MR. TANGRI:  YOUR HONOR, THE OTHER SUGGESTION, I

11   GUESS, FOR INTENTIONAL MISREPRESENTATION IS ON THE VERDICT

12   FORM, YOU NOT -- ON QUESTION 7, YOU WOULD ASK, AS YOU DO, YES

13   OR NO ON LIABILITY AS TO EACH DEFENDANT.  ON QUESTION 8, YOU

14   WOULD SIMPLY SAY, "WE THE JURY, FIND THAT THE AMOUNT OF DAMAGES

15   SHUM SUFFERED AS A RESULT OF THE MISREPRESENTATION IS" BLANK.

16   AND NOT -- RIGHT NOW YOU'VE GOT VERDIELL AND LIGHTLOGIC AND A

17   BLANK FOR EACH.  IF YOU JUST HAD ONE BLANK, THAT WOULD TELL US

18   WHAT THE TOTAL AMOUNT OF DAMAGES WAS AND --

19             THE COURT:  YEAH.  BUT THAT WOULDN'T TELL US IF

20   THERE WAS A DISTINCTION IN TERMS OF WHO THE JUDGMENT SHOULD BE

21   RENDERED AGAINST.

22             MS. GRANT:  WELL, BECAUSE THAT'S ON THE LIABILITY

23   PART.

24             THE COURT:  WE HAVE THAT ON --

25             MR. TANGRI:  YOU HAVE THAT ON LIABILITY, IT WOULD
```

```
 1   SAY "YES" OR "NO."  SO IF IT SAID "NO" AGAINST ONE TO ONE OF

 2   THE DEFENDANTS, THEN YOU WOULDN'T HAVE A JUDGMENT --

 3                    (SIMULTANEOUS COLLOQUY.)

 4           MR. TANGRI:  BUT IT WOULD BE NON-DUPLICATIVE.

 5           MS. GRANT:  AND ACTUALLY IT STILL PICKS UP THE JOINT

 6   AND SEVERAL ISSUE.

 7           THE COURT:  YES, IT DOES.

 8           MR. TANGRI:  AND ON THIS CAUSE OF ACTION, THERE'S --

 9   I DON'T THINK THERE'S ANY CONCEIVABLE BASIS IN THE EVIDENCE FOR

10   A VERDICT AGAINST LIGHTLOGIC OTHER THAN, YOU KNOW, SEPARATELY,

11   SO --

12           MR. JANSEN:  I PERSONALLY THINK, YOUR HONOR, IT

13   WOULD BE BETTER IF WE JUST DIDN'T HAVE THIS INSTRUCTION AS IT'S

14   WRITTEN RIGHT NOW AND WAIT FOR THE JURY TO COME BACK.  IF

15   THERE'S A VERDICT THAT'S CONFUSING --

16           THE COURT:  WELL, SEE, THEN THEIR SUGGESTION IS TO

17   UNDO THE CONFUSION BY SAYING THAT YOU DON'T HAVE A -- A VERDICT

18   THAT FOLLOWS LIABILITY.  INSTEAD OF HAVING A VERDICT THAT

19   FOLLOWS LIABILITY THAT SAYS, "WHAT IS THE DAMAGE CAUSED BY

20   VERDIELL OR WHAT IS THE DAMAGE CAUSED BY LIGHTLOGIC," YOU JUST

21   HAVE ONE VERDICT SAY, "WHAT IS THE DAMAGE CAUSED BY THE

22   INTENTIONAL MISREPRESENTATION?"

23           MS. GRANT:  EXACTLY.

24           MR. TANGRI:  RIGHT.

25           THE COURT:  SO THEN YOU'VE GOT AN AGGREGATE THAT
```

```
1    THEY'RE BOTH JOINT AND SEVERALLY LIABLE FOR.

2              MR. JANSEN:  OKAY.  AND NO. 12, WOULD THAT BE

3    APPROPRIATE, TOO, THEN --

4              THE COURT:  YES.

5              MR. JANSEN:  -- UNDER "UNJUST ENRICHMENT" WOULD SAY,

6    "WE, THE JURY" --

7              MR. TANGRI:  NO.

8              MS. GRANT:  NO, IT'S DIFFERENT -- HAVE THE

9    ATTRIBUTIONS --

10                   (SIMULTANEOUS COLLOQUY.)

11             MS. GRANT:  WE WOULD ARGUE, YOUR HONOR, THAT ON

12   THAT, IT'S A DIFFERENT REQUIREMENT, WHICH IS YOU HAVE TO HAVE

13   THE ATTRIBUTION TO THE WRONG.  AND ON THAT ONE, THEY'RE

14   CLAIMING THAT LIGHTLOGIC GOT A BENEFIT OF 409 MILLION, AND THAT

15   DR. VERDIELL GOT A BENEFIT OF 50 MILLION, AND SO YOU WOULD HAVE

16   TO THEN -- YOU WOULD HAVE TO ATTRIBUTE WHAT PART OF

17   LIGHTLOGIC'S BENEFIT IS ATTRIBUTABLE FOR THE WRONG AND WHAT

18   PART OF DR. VERDIELL'S BENEFIT IS ATTRIBUTABLE FOR THE

19   WRONGDOING.  SO THAT IS ACTUALLY ONE WHERE YOU COULDN'T BREAK

20   IT OUT.

21             THE COURT:  OKAY.  I THINK WHAT WE'LL DO IS THEN IF

22   WE DROP OUT THE PARAGRAPHS ON PAGE 14 AND THEN WE MELD 8, AND

23   WE JUST HAVE ONE VERDICT FOR DAMAGES, THAT THAT WOULD TAKE CARE

24   OF IT.

25             MR. JANSEN:  OKAY.
```

```
1              THE COURT:  OKAY?

2              MR. JANSEN:  NOW LET ME --

3              MR. TANGRI:  WE WOULD ASK THAT YOU CONSIDER 28 THEN,

4   YOUR HONOR.

5              THE COURT:  RIGHT.  WELL --

6              MR. JANSEN:  LET ME TRY, YOUR HONOR.  I'M SORRY

7   ABOUT THIS --

8                   (PAUSE IN THE PROCEEDINGS.)

9              MR. JANSEN:  YOU KNOW, ON PAGE 16 THROUGH 17, WE --

10  WE'VE STATED OUR POSITION.  WE'VE ARGUED.  WE BELIEVE THERE CAN

11  BE -- THAT THE OWNERSHIP WAS -- WAS A 50/50 OWNERSHIP AND THE

12  OWNERSHIP IS NOT DEPENDENT UPON PROOF THAT MR. SHUM WAS AN

13  ADMITTED COINVENTOR ON THE PARTICULAR PATENTS.  WE'VE BRIEFED

14  IT.  WE'VE ALREADY --

15             THE COURT:  AND I SAID THAT I'VE LOOKED AT YOUR

16  OTHER TWO -- I DON'T -- IT DOESN'T CHANGE MY MIND IN TERMS OF

17  THE SIGNIFICANCE OF THE CONTRACT ITSELF.  SO I -- I THINK THE

18  INSTRUCTIONS FOLLOW FROM WHAT I READ INTO THE PLAN OF

19  LIQUIDATION.

20             MR. JANSEN:  OKAY.  WELL, WE'VE ARGUED THAT AND --

21             THE COURT:  OKAY.

22             MR. JANSEN:  -- WE, YOU KNOW, RESPECTFULLY DISAGREE

23  WITH THAT.  BUT JUST GOING ON.

24             ON PAGE 18 THROUGH 19 --

25             THE COURT:  OKAY.
```

1          **MR. JANSEN:** -- THIS IS THE SAME ISSUE ABOUT

2    CALCULATING THE AMOUNT OF DAMAGES FOR BREACH OF CONTRACT.

3          **THE COURT:**  WELL, WE'LL JUST DO THE SAME THING.

4    WE'LL JUST DRAFT OUT.  WELL, NO THIS IS ON -- IS THIS ON --

5          **MR. JANSEN:**  IT'S -- IT'S PAGE 18 GOING OVER TO 19.

6    "IN CALCULATING THE AMOUNT OF DAMAGE FOR BREACH OF CONTRACT, DO

7    NOT" -- IT SAYS, "DO NOT TAKE INTO ACCOUNT ANY AMOUNT THAT YOU

8    ALREADY INCLUDED IN DETERMINING THE DAMAGES OF ANY FOR SHUM'S

9    CLAIMS FOR INTENTIONAL MISREPRESENTATION OR UNJUST ENRICHMENT."

10         **THE COURT:**  I DON'T THINK -- I THINK WE SHOULD LEAVE

11   THAT IN BECAUSE THAT'S JUST A QUESTION OF DUPLICATIVE, AND IT

12   DOESN'T RUN INTO THIS PROBLEM ABOUT EITHER AGGREGATION OF

13   DAMAGES OR OF SEPARATE JUDGMENTS.

14         **MR. TANGRI:**  RIGHT.  THIS IS CORRECT, YOUR HONOR.

15         **THE COURT:**  OKAY.  WHAT ELSE?

16         **MR. JANSEN:**  SO I -- THE PROBLEM WITH THIS

17   INSTRUCTION IS IT INSTRUCTS THE JURY TO SUBTRACT -- POTENTIALLY

18   SUBTRACT FROM THE AMOUNT OF CONTRACT DAMAGES.  SO WE DON'T --

19   WE WANT TO KNOW WHAT THE JURY INTENDED TO -- WHAT THE JURY

20   FOUND FOR MR. SHUM'S CONTRACT DAMAGES.  I THINK IT'S FOR THE

21   COURT TO DETERMINE LATER WHETHER OR NOT THERE'S A DUPLICATIVE

22   AWARD.  BUT NOT TO HAVE THE JURY MAKE THAT DECISION.  BECAUSE

23   YOU MAY DECIDE, YOUR HONOR, ON A POST VERDICT MOTION TO -- TO

24   FIND THAT THERE WAS NO EVIDENCE SUPPORTING ONE OR THE OTHER

25   CLAIMS AND YOU WILL CROSS OUT THAT JUDGMENT AMOUNT FOR THAT

```
 1   CLAIM, AND I'LL BE LEFT WITH A CONTRACT CLAIM THAT IS LESS THAN

 2   WHAT THE ACTUAL CONTRACT DAMAGES WERE.

 3            SO I THINK IT'S INAPPROPRIATE TO INSTRUCT THE JURY

 4   TO REDUCE THE AMOUNT OF DAMAGES THAT WERE SUFFERED BY BREACH OF

 5   CONTRACT.  AND THAT'S -- SO I JUST SIMPLY OBJECT TO THAT

 6   INSTRUCTION.

 7            AND I SIMILARLY OBJECT TO INSTRUCTION -- THE SAME

 8   LANGUAGE ON PAGES 20 -- THE BOTTOM OF PAGE 20, THE LAST TWO

 9   PARAGRAPHS WHICH INSTRUCT THE JURY THE SAME WITH RESPECT TO THE

10   UNJUST ENRICHMENT DAMAGES.

11            MR. TANGRI:  AND AT THIS POINT, YOUR HONOR, THIS

12   REALLY IS JUST THE SAME THING AS WHAT'S PROVIDED BY THE FORM

13   INSTRUCTION, CACI INSTRUCTION 361 THAT'S ADAPTED TO THIS CASE

14   IN OUR 28 WHERE THE ADAPTATION IS MINIMAL.  AND -- AND THAT

15   SHOULD BE GIVEN.  THAT'S AN APPROPRIATE INSTRUCTION IN EVERY

16   CASE.  OTHERWISE, YOU HAVE THE -- YOU HAVE AN INVITATION TO

17   DOUBLE RECOVERY.

18                 (PAUSE IN THE PROCEEDINGS.)

19            THE COURT:  OKAY.  WE'RE GOING BACK TO LINE 18,

20   PAGE 18, THAT LAST PARAGRAPH?

21            MR. JANSEN:  RIGHT.  PAGE 18, THE LAST PARAGRAPH,

22   GOING OVER TO 19.

23            MR. TANGRI:  THIS -- THIS IS -- I MEAN, WHAT YOU'VE

24   WRITTEN HERE IS CORRECT.  IT'S ANOTHER -- IT'S JUST A DIFFERENT

25   STATEMENT OF THE CACI 361, AND THAT'S -- THAT'S AN APPROPRIATE
```

1   INSTRUCTION TO GIVE IN A CASE WHERE YOU'VE GOT OVERLAPPING

2   THEORIES OF LIABILITY.

3           **THE COURT:** WELL, I'LL LOOK AT CACI 361, AND IF I

4   AGREE WITH THAT, WE'LL LEAVE IT IN. IF I DON'T, I'LL TAKE IT

5   OUT.

6           **MR. JANSEN:** OKAY. AND AGAIN, MY PROPOSAL TO SOLVE

7   THIS PROBLEM, YOUR HONOR, IS TO SIMPLY HAVE A SITUATION WHERE

8   AT THE END OF DAY WE TAKE THE HIGHEST AWARD.

9           **THE COURT:** WELL, THAT --

10          **MR. JANSEN:** YOU KNOW, IF WE INSTRUCT THE JURY NOT

11  TO SUBTRACT THINGS, THEN WE KNOW WHAT THE ACTUAL MAXIMUM

12  DAMAGES ARE. THEY HAVEN'T SUBTRACTED ANYTHING AND -- AND WE

13  KNOW THAT WE CAN GET AN AWARD AGAINST LIGHTLOGIC FOR X, WE CAN

14  GET AN AWARD AGAINST VERDIELL FOR Y, AND WE DON'T TO HAVE WORRY

15  ABOUT, GEE, WHAT'S BEEN SUBTRACTED OUT? WHAT DID THEY AWARD ON

16  A FRAUD CLAIM THAT YOU DECIDE MAYBE TO THROW OUT AFTER TRIAL

17  THAT SHOULD HAVE BEEN -- AND MAY HAVE BEEN SOMETHING THAT THEY

18  INTENDED TO INCLUDE IN THE UNJUST ENRICHMENT CLAIM.

19          **THE COURT:** RIGHT.

20          **MR. JANSEN:** YOU SEE, THAT'S THE PROBLEM WE'RE GOING

21  TO FACE. THAT'S WHAT I'M CONCERNED -- I'D RATHER GET THE TOTAL

22  AMOUNT OF THE DAMAGES THEY FEEL IS DUE ON EACH CAUSE OF ACTION

23  SO WE KNOW WHAT THE TOTAL DAMAGES ARE. AND THEN WE CAN SORT

24  OUT AT THE END OF DAY, YOU KNOW, DO WE GET TO ADD THESE UP.

25  PROBABLY NOT. THEY ARE DUPLICATIVE. SO I DON'T THINK WE CAN

1    ADD THEM UP.

2              **THE COURT:**  I WILL, AS I SAY, I'LL LOOK AT IT IN

3    LIGHT OF 361.

4              **MR. TANGRI:**  AND YOUR HONOR, THIS -- I MEAN, THIS

5    WAS JUST A BIG PROBLEM IN A TRIAL DOWN SOUTH THAT JUDGE LARSON

6    PRESIDED OVER, NOT IN SAN JOSE BUT IN SOUTHERN CALIFORNIA,

7    WHERE THE JURY CAME BACK WITH IDENTICAL NUMBERS 30, 30, 30 ON

8    THREE CAUSES OF ACTION, BREACH OF FIDUCIARY DUTY, BREACH OF

9    CONTRACT --

10                   (SIMULTANEOUS COLLOQUY.)

11             **THE COURT:**  THAT'S WHAT I --

12             **MR. TANGRI:**  -- ALL BASED ON THE SAME THING AND

13   THERE'S NOW A HUGE FIGHT OVER IS THAT 90 OR IS THAT 30?

14             **THE COURT:**  THAT'S WHAT I SAID, THAT'S WHAT I THINK

15   IS WONDERFUL THAT YOU HAVE THOUSANDS AND THOUSANDS OF CASES

16   TRIED AND NOBODY KNOWS HOW TO FIGURE OUT --

17             **MR. JANSEN:**  WELL, THAT'S --

18                   (SIMULTANEOUS COLLOQUY.)

19             **MR. TANGRI:**  THIS INSTRUCTION IS HOW YOU SOLVE -- AT

20   LEAST TRY TO PREVENT AGAINST THAT PROBLEM.

21             **MR. JANSEN:**  THAT'S WHY I'M SUGGESTING THAT WE JUST,

22   AS OPPOSED TO INVITING THE JURY TO JUST REDUCE THE AWARD, WE

23   WOULD AGREE TO TAKE THE HIGHEST AWARD AND NOT TRY TO ADD THEM

24   TOGETHER.  AND THAT WOULD SOLVE MR. TANGRI'S PROBLEM.

25             **MR. TANGRI:**  WELL --

```
1              THE COURT:  OKAY.  AS I SAID, I'LL LOOK AT 361.

2         OKAY.  IS THAT IT?

3              MR. JANSEN:  I THINK THAT'S IT, YOUR HONOR, YES.

4              THE COURT:  ALL RIGHT.

5              MR. JANSEN:  THANK YOU.

6              THE COURT:  WELL, THEN, WHAT WE'LL DO IS YOU CAN --

7    THE ONLY THINGS THAT WILL BE CHANGED IN HERE WOULD BE THE --

8    THE ISSUE WITH REFERENCE TO DAMAGES OR WITH THE THREE

9    SUGGESTIONS YOU MADE THAT I'LL LOOK AT.

10             MR. TANGRI:  OKAY.

11             THE COURT:  AND SO YOU CAN PICK THOSE UP TOMORROW

12   MORNING EARLY AND SEE WHAT HAPPENED.

13             MR. TANGRI:  ALL RIGHT.  WOULD THERE BE ANY

14   POSSIBILITY OF GETTING THEM -- I DON'T KNOW WHEN THEY'RE GOING

15   TO GET -- IF THERE'S A WAY OF PICKING THEM UP TONIGHT OR

16   RECEIVING AN EMAIL TONIGHT.

17             THE COURT:  I GUESS WE COULD GET THEM DONE TONIGHT,

18   YOU COULD PICK THEM UP TONIGHT.  YEAH, YOU CAN PICK THEM UP

19   TONIGHT.

20             MR. TANGRI:  AND THEN THE OTHER QUESTION WE WOULD

21   HAVE, YOUR HONOR, WITH THE VERDICT FORMS, WE HEARD YOU AT THE

22   BEGINNING, YOU INDICATED YOU RECEIVED OUR VERDICT FORM.  MORE

23   DETAILED, YOU'RE NOT INCLINED TO USE IT.

24             THE COURT:  RIGHT.

25             MR. TANGRI:  THE ONE -- WE THINK IT'S CORRECT AND WE
```

1   HEAR YOUR RULING.  THE ONE AREA I WOULD JUST ASK YOU TO

2   CONSIDER ONE MORE TIME IS ON THE INVENTORSHIP CAUSES OF ACTION,

3   THE CORRECTION OF INVENTORSHIP CAUSES OF ACTION, WE HAD

4   PROPOSED ESSENTIALLY SPECIAL INTERROGATORIES FOR WHAT IS THE

5   CORROBORATING EVIDENCE.  IF THERE'S A CLAIM OR CLAIMS THAT THE

6   JURY FINDS MR. SHUM IS A COINVENTOR ON, WHAT CORROBORATING

7   EVIDENCE ARE THEY RELYING ON.

8           WE THINK THAT GIVEN THE VOLUME OF EVIDENCE THAT'S

9   BEEN SUBMITTED, SOME OF WHICH WE THINK IS NOT APPROPRIATE UNDER

10  THE -- THE STANDARDS FOR CORROBORATING EVIDENCE, HAVING IT

11  IDENTIFIED WOULD BE --

12          **THE COURT:**  BUT I DON'T LIKE -- I DON'T LIKE VERDICT

13  FORMS GIVEN TO THE JURIES WHERE THEY'RE GIVEN ESSAY QUESTIONS.

14  I THINK THEY OUGHT TO BE TRUE/FALSE QUESTIONS INSTEAD OF ESSAY

15  QUESTIONS.

16          **MR. TANGRI:**  WELL, THIS IS -- THIS IS MULTIPLE

17  CHOICE, AT LEAST, YOUR HONOR.

18              (SIMULTANEOUS COLLOQUY.)

19          **THE COURT:**  I KNOW BUT -- BUT I --

20          **MR. JANSEN:**  YOUR HONOR, IN THE INTEREST OF REDUCING

21  THE AMOUNT OF WORK ON THE JURY AS OPPOSED TO INCREASING IT,

22  WE'RE WITHDRAWING OUR CLAIMS -- WE CAN SCRATCH A COUPLE OF

23  THESE OFF YOUR FORMS IF YOU WANT.

24          **THE COURT:**  OH, CAN YOU?  WHAT'S THAT?

25          **MR. JANSEN:**  WITH RESPECT TO QUESTION NO. 4, WE ARE

3835

```
1    CROSSING OFF CLAIMS 9 AND CLAIMS 10.
2              THE COURT:  WHICH -- WHAT PATENT?
3              MR. JANSEN:  THAT'S THE '726 FLEXURE PATENT.
4              MR. TANGRI:  HANG ON.  LET ME GET WITH YOU HERE.
5              THE COURT:  ON THE '726 PATENT, WE TAKE OFF CLAIMS 9
6    AND 10?
7              MR. JANSEN:  YES.
8              THE COURT:  OKAY.
9              MR. JANSEN:  AND THEN UNDER QUESTION 5 FOR THE '724
10   PATENT --
11             THE COURT:  OKAY.
12             MR. JANSEN:  -- WE'LL TAKE OFF CLAIM 4.
13             THE COURT:  ALL RIGHT.
14             MR. JANSEN:  SO THAT CAN SAVE THE JURY A COUPLE OF
15   DAYS.
16             THE COURT:  COUPLE OF DAYS OF -- OKAY.
17             ALL RIGHT.  WELL, THEN WE'LL -- WE'LL AMEND THESE
18   AND YOU CAN PICK THEM UP LATER ON TODAY AND THEN WE'LL BE READY
19   TO GO.  OKAY.
20             MR. TANGRI:  ALL RIGHT.
21             THE COURT:  ALL RIGHT.  GOOD.
22             MR. JANSEN:  THANKS VERY MUCH, YOUR HONOR.
23             MS. GRANT:  AND YOUR HONOR?
24             MR. TANGRI:  OH, YES.
25             MS. GRANT:  -- RULE 50.
```

1          **MR. TANGRI:**  WELL, TWO OTHER THINGS, YOUR HONOR.

2    ONE IS -- ONE IS JUST NOTIFICATION.  WE WILL BE FILING LATER

3    TODAY, I HOPE, A RULE 50 MOTION ON BEHALF OF THE OTHER TWO

4    DEFENDANTS.  WE'VE HEARD YOU LOUD AND CLEAR THAT THIS CASE IS

5    GOING TO THE JURY, SO WE'RE FILING IT.  WE'RE NOT, YOU KNOW,

6    WE'RE NOT SEEKING ARGUMENT ON IT TOMORROW MORNING.  WE -- WE

7    UNDERSTAND THE COURT'S POSITION, WE THINK, BUT WE ARE

8    SUBMITTING IT.

9          **THE COURT:**  ALL RIGHT.

10         **MR. TANGRI:**  AND SECONDLY, WE JUST HAVE A QUESTION

11   ABOUT SORT OF THE ORDER OF BATTLE FOR TOMORROW.  AND THE -- THE

12   GOAL, TO BE CANDID ABOUT IT, IS TO NOT HAVE OUR CLOSING

13   INTERRUPTED BY THE LUNCH BREAK, AND IF THERE'S A WAY --

14         **THE COURT:**  THAT'S IMPOSSIBLE.

15         **MR. TANGRI:**  OKAY.

16         **THE COURT:**  I DON'T -- SEE, IT MAY WORK OUT THAT

17   WAY.  WE MAY -- IF THEY FINISH UP ARGUMENTS -- SEE, IT'S HARD

18   FOR ME THE FIGURE OUT HOW THAT COULD BE DONE BECAUSE THE IDEA

19   IS THAT THEY'RE GOING TO HAVE TWO HOURS, YOU'RE GOING TO HAVE

20   TWO HOURS.

21         **MR. TANGRI:**  RIGHT.

22         **THE COURT:**  AND YOU DON'T HAVE TO TAKE THOSE.

23         **MR. TANGRI:**  RIGHT.

24         **THE COURT:**  BUT IF THEY START OUT AT 9:00 O'CLOCK,

25   THEY'RE GOING TO -- THEY'RE NOT GOING TO GO AND FINISH UP.

```
1    YOU'RE GOING TO BE ARGUING IN THE MORNING.

2              MR. TANGRI:  RIGHT.

3              THE COURT:  AND SO THE ODDS ARE THAT YOU WILL BE

4    ARGUING OVER THE LUNCH HOUR, AND IT WILL BE SPLIT.  BUT I DON'T

5    SEE WHY THAT SHOULD BE A BAD THING FOR YOU.

6              MR. TANGRI:  WELL, THE ONLY SUGGESTION WOULD BE,

7    YOUR HONOR, IF -- AND I DON'T KNOW IF THEY KNOW -- BUT IF THEY

8    WERE, FOR INSTANCE, GOING TO TAKE 90 MINUTES AND THEN RESERVE

9    30 FOR REBUTTAL, WHICH SEEMS LIKE A PLAUSIBLE OUTCOME, THAT

10   WOULD HAVE US STARTING AT ABOUT 10:45.

11             THE COURT:  RIGHT.

12             MR. TANGRI:  IF THE COURT WAS WILLING TO ENTERTAIN

13   AND ASK THE JURORS TO ENTERTAIN A LATER LUNCH, TO LET US GO

14   FROM 10:45 TO 12:45, THEN TAKE LUNCH AND HAVE THE REBUTTAL.

15             THE COURT:  THAT'S 45 MINUTES.  THAT'S NOT JUST A

16   LITTLE BIT.  NO.  I THINK YOU'RE GOING TO FIGURE ON HAVING

17   LUNCH.

18             MR. TANGRI:  OKAY.

19             MR. JANSEN:  LAST -- VERY LAST -- I WAS REMINDED.  A

20   VERY LAST MINISTERIAL THING, BUT WE WERE ASKED TO PARE DOWN A

21   BOOK TO 1208 WITH THE PAGES.

22             THE COURT:  OH, YEAH.

23             MR. TANGRI:  NO.  YOUR HONOR, WE HAVE AN OBJECTION

24   TO THIS.  THE ISSUE IS THIS.  THE PROBLEM WASN'T PARING DOWN.

25   THE PROBLEM WAS ADDING.  THIS IS A PORTION OF A DOCUMENT THAT
```

```
1    THE WITNESS REFERRED TO DURING HIS TESTIMONY.  WE HAD OBJECTED

2    TO IT AS INCLUDING ONLY A PORTION OF WHAT HE REFERRED TO AND

3    NOT OTHER SECTIONS THAT HE REFERRED TO.  AND WHAT I HAD

4    UNDERSTOOD WAS GOING TO HAPPEN WAS THAT THEY WOULD COME BACK

5    WITH ALL OF THE STUFF HE HAD REFERRED TO.  THEY HAVEN'T DONE

6    THAT.

7              SO WE HAVE PREPARED A -- A VERSION -- A DOCUMENT

8    THAT CONTAINS THE OTHER SECTIONS OF THIS BOOK THAT THE WITNESS

9    REFERRED TO IN HIS TESTIMONY.

10             WHAT I WOULD PROPOSE IS WE COMBINE -- I DON'T CARE

11   WHICH NUMBER WE USE, BUT WE OUGHT TO HAVE ONE EXHIBIT FOR THIS

12   BOOK COMBINING THIS MATERIAL AND THE MATERIAL THAT THEY WANT TO

13   PUT IN, ALL OF WHICH WAS REFERRED TO BY THE WITNESS DURING HIS

14   TESTIMONY AND THAT CAN BE AN EXHIBIT.

15             THE COURT:  WELL, ARE YOU SAYING THAT THERE OUGHT TO

16   BE A BOOK THAT HAS ALL OF THE MATERIALS THAT WERE REFERRED TO

17   IN THE TESTIMONY?

18             MR. TANGRI:  YEAH.  THIS -- YES.  THERE OUGHT TO BE

19   ONE EXHIBIT.

20             THE COURT:  OKAY.  THAT'S WHAT I THOUGHT THE IDEA

21   WAS THAT WE WERE GOING TO MODIFY THE EXHIBIT SO THAT THE ONLY

22   THING THAT WAS INCLUDED WAS THOSE PORTIONS THAT HAD BEEN

23   REFERRED TO IN THE TESTIMONY.

24             MR. JANSEN:  THAT'S WHAT --

25             THE COURT:  AND SO THERE SHOULD BE ONE BOOK.
```

1            **MR. TANGRI:**  RIGHT.  AND THIS IF YOU WERE TO COMBINE

2    WHAT MR. JANSEN IS HOLDING AND WHAT I'M HOLDING, YOU WOULD HAVE

3    THAT.  AND WE HAD UNDERSTOOD THAT THAT'S WHAT THEY WERE GOING

4    TO DO.  IT WAS OBVIOUSLY A MISCOMMUNICATION.  BUT WHAT WE OUGHT

5    TO DO NOW IS -- WE CAN DO THIS THIS EVENING -- IS COMBINE

6    MR. JANSEN'S PAGES AND OUR PAGES INTO ONE DOCUMENT.

7            **THE COURT:**  I --

8            **MR. TANGRI:**  SLAP A NUMBER ON IT.

9            **THE COURT:**  -- UNDERSTAND WHAT YOU DO IS YOU TAKE

10   THEM APART AND TAKE OFF THE FRONT PAGE AND THEN JUST SHUFFLE

11   THE INTERIOR PAGES SO THAT THEY ALL LINE UP AND THEN PUT THE

12   FRONT PAGE BACK ON.

13                (SIMULTANEOUS COLLOQUY.)

14           **MR. JANSEN:**  YOUR HONOR, MY UNDERSTANDING WAS -- I

15   APOLOGIZE -- I THOUGHT WHAT THE COURT WANTED INTRODUCED AS AN

16   EXHIBIT WAS WHAT WAS ACTUALLY READ DURING THE TESTIMONY.

17           **THE COURT:**  WHAT'S ACTUALLY REFERRED TO IN THE

18   TESTIMONY.

19           **MR. JANSEN:**  AND THAT'S WHAT THIS IS.

20           **MR. TANGRI:**  NO, IT'S NOT.  THIS WAS ALSO REFERRED

21   TO DURING THE TESTIMONY.  I'VE GOT THE TESTIMONY IF YOU WANT

22   IT.

23           **MR. JANSEN:**  OKAY.  WELL, I'LL GO OVER THAT WITH

24   COUNSEL.  I DON'T WANT TO TAKE THE COURT'S TIME WITH IT NOW.

25           **THE COURT:**  YEAH.

3840

1          **MR. JANSEN:**  THANKS.

2          **THE COURT:**  ONE EXHIBIT.

3          **MR. TANGRI:**  ONE EXHIBIT WITH EVERYTHING HE REFERRED

4    TO, AND THAT'S IF WE COMBINE THIS AND THIS, THAT'S WHAT WE

5    HAVE.

6          **THE COURT:**  OKAY.

7          **MR. JANSEN:**  THANK YOU, YOUR HONOR.

8          **MR. TANGRI:**  THANK YOU.

9          **THE COURT:**  ALL RIGHT.

10         (PROCEEDINGS WERE CONCLUDED AT 3:20 P.M.)

11                        --O0O--

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

        I, RAYNEE H. MERCADO, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS IN C02-3262DLJ, SHUM V. INTEL, ET AL. AND RELATED CROSS-ACTIONS, WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

        THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE COURT FILE.

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR

WEDNESDAY, DECEMBER 17, 2008