United States District Court

For the Northern District of California

Frank T. Shum,                )
                              )
                Plaintiff,    )    No. C-02-3262-DLJ
                              )
         v.                   )
                              )    **ORDER**
Intel Corp., et al.,          )
                              )
                Defendants.   )
_____)

On February 20, 2009, the Court heard oral argument on Defendants' renewed motions for judgment as a matter of law (JMOL).  Having considered the papers submitted, the arguments of counsel, and the applicable law, the Court hereby GRANTS Defendants' renewed motion for JMOL as to Shum's state law claims, and GRANTS in part and DENIES in part Defendants' renewed motion for JMOL as to inventorship.

**I. BACKGROUND**

**A.   Factual Background**

Plaintiff Frank Shum (Shum) and defendant Jean-Marc Verdiell (Verdiell) are optical engineers.  They met in 1994 when both worked at a company called SDL Technologies (SDL).

After leaving SDL, Shum and Verdiell incorporated Radiance Design, Inc. (Radiance) on April 22, 1999, intending to work in the field of optoelectronics.  Shum and Verdiell were the sole and equal shareholders, with Verdiell as President and Treasurer and Shum as Vice President and Secretary.  On the day of incorporation, a patent application related to optoelectronic technology was filed on behalf of Radiance. Marek Alboszta (Alboszta), a patent agent, had been hired by Radiance and prepared this patent application, which named Shum as the sole inventor.

**United States District Court**

For the Northern District of California

1    While the patent application filed in April was pending,

2    Verdiell informed Alboszta that he was also an inventor of the

3    subject matter covered by the patent.  Shum states that

4    Alboszta informed him of this new information from Verdiell and

5    stated, to Shum, that if Verdiell is an inventor, the

6    application must be withdrawn.  Verdiell also told Shum that

7    the patent application would have to be withdrawn.

8    Subsequently, Radiance withdrew the pending application on

9    November 17, 1997.

10   At about this time, the relationship between Shum and

11   Verdiell deteriorated.  Both Shum and Verdiell hired individual

12   counsel to negotiate the dissolution of Radiance and a Plan of

13   Liquidation (POL) was drafted.  The POL was agreed upon and

14   executed on January 5, 1998.  Radiance was dissolved as of that

15   date.

16   After Radiance was dissolved, Shum formed a new company

17   called Luminance in order to continue developing the technology

18   that he and Verdiell worked on at Radiance.  Shum failed to

19   obtain financing for Luminance, however, and he abandoned the

20   company after several months.  Thereafter, Shum accepted

21   employment as an optical engineer at a telecommunications

22   company named Ditech.

23   The day after the POL took effect, Alboszta filed a patent

24   application on Verdiell's behalf which related to

25   optoelectronic technology covering the same subject matter as

26   the withdrawn patent application.  This patent application

27   named Verdiell as the sole inventor.  The patent application

28

**United States District Court**
For the Northern District of California

was assigned to LightLogic, a company newly formed by Verdiell. Verdiell had formed LightLogic, without notice to Shum, three days before the original patent application was withdrawn in November 1997.  Based on this application, United States Patent No. 5,977,567 ('567) was ultimately issued on November 2, 1999, listing Verdiell as the sole inventor.

Over the next several years, LightLogic applied for and obtained six additional patents: United States Patent Nos. 6,376,268 ('268); 6,207,950 ('950); 6,586,726 ('6726); 6,227,724 ('724); 6,585,427 ('427); and 6,252,726 ('2726).  All of these patents named Verdiell as the sole inventor except the '427 patent, which named Verdiell as well as four co-inventors. None of the patents listed Shum as an inventor.

These seven patents cover three separate areas of optoelectronic technology.  The first area can be referred to as "Dual Enclosure" technology and involves only a single patent -- the '2726 patent.  This invention describes an optoelectronic package which is comprised of two separate enclosures designed to regulate the temperature within the package in a cost-efficient manner.  The second technology group is referred to by the parties as "Direct Bonded Copper" (DBC) or "Step" technology and two patents, '567 and '268, are involved.  These patents disclose an optoelectronic package consisting of a substrate made of an insulating ceramic material, and a layer of copper that is bonded to this substrate.  The third technology group is called "Flexure" technology and four patents, '950, '724, '427, and '6726, are

3

**United States District Court**

For the Northern District of California

1  involved.  These inventions address the problem of precisely

2  aligning a laser diode and an optical fiber during an automated

3  fiber-optic assembly process, and of keeping the two components

4  aligned during use.

5  After LightLogic was formed, Verdiell undertook extensive

6  efforts to develop and market a device known as a transponder.

7  A transponder is an optoelectronic device that takes in

8  electrical signals and converts them into optical signals,

9  enabling telecommunications providers to process a large volume

10  of data at a very high speed.  Transponders contain numerous

11  electrical and optical components, including an optical

12  receiver, a high speed amplifier, a high speed demultiplexer, a

13  multiplexer driver, and an optical transmitter.

14  In order to develop and market a transponder, Verdiell

15  hired a team of managers and engineers to work at LightLogic.

16  After three rounds of venture capital investment and

17  approximately three years of effort, LightLogic began the

18  manufacture and sale of transponders in 2000.  All of

19  LightLogic's transponders at that time used off-the-shelf

20  optical components rather than any optical technology based on

21  Verdiell's patents.

22  In June 2001, Intel acquired LightLogic, its physical

23  assets and the services of its personnel, along with the rights

24  to LightLogic's transponder, the '567 patent, and the six

25  additional patents issued to LightLogic, for $409 million in

26  shares of its stock.  LightLogic distributed these shares

27  directly to its shareholders.  Verdiell received $58.4 million

28  4

**United States District Court**
For the Northern District of California

from the transaction.  After Intel acquired LightLogic, Intel began manufacturing transponders which contained different optoelectronic components, including the patented flexure, which had been developed at Radiance.

Shum contends that he is an inventor of the technology claimed by the seven patents issued to Verdiell.

**B.   Procedural History**

In 2001, Shum filed his original complaint in this action in California state court against Intel, Verdiell, Alboszta, Lumen (Alboszta's patent firm), and John Gorman (Verdiell's attorney during the dissolution of Radiance).  The complaint contained numerous state causes of action, essentially based on claims of fraud.

On July 9, 2002, Intel removed the case to federal district court.

On December 19, 2002, Shum filed a second amended complaint in this Court.  This complaint essentially repleaded the original state causes of action and added a federal cause of action for correction of patent inventorship pursuant to 35 U.S.C. § 256.  The second amended complaint also added LightLogic as a defendant.

On January 21, 2003, Intel and Verdiell filed a motion to dismiss the second amended complaint.  This Court entered an order on March 25, 2003, granting in part and denying in part Defendants' motion to dismiss.  Among the dismissed claims was a claim under California state law for unjust enrichment.  The Court dismissed this claim on the basis that it was duplicative

5

United States District Court

For the Northern District of California

1  of the causes of action for fraud.

2  On April 27, 2004, the Court issued an order as to the

3  third amended complaint denying Defendants' summary judgment

4  motions, recognizing that all of Shum's state law causes of

5  action were primarily based on the unresolved allegation that

6  Verdiell was not the sole true inventor of the patented

7  technology.  After a hearing on the matter, the Court decided

8  to bifurcate the inventorship issues from the other claims of

9  the complaint, and ordered that the § 256 inventorship trial

10  should proceed first.

11  In addition, the Court interpreted two provisions of the

12  POL.  First, the Court interpreted the section entitled

13  "Business Activities of Officers and Directors."  This

14  provision states:

15  Shum and Verdiell acknowledge and agree that, after
   the approval of this Plan, each of them shall be
16  entitled, without any liability or duty to account
   to [Radiance] or to the other, to pursue any and
17  all such other business activities as they shall
   desire, even if such activities are in competition
18  with the business of [Radiance] and even if they
   take, or attempt to take, a business opportunity
19  that [Radiance] could have itself pursued.

20  The Court interpreted this provision to eliminate any liability

21  between Shum and Verdiell based upon the conduct of "business

22  activities" by Shum or Verdiell in any commercial exploitation

23  of the Radiance technologies, and to allow them to compete with

24  each other without notice to each other or any accounting as to

25  profits.  The Court also interpreted this provision to

26  eliminate any liability between Shum and Verdiell based solely

27  on either party obtaining a lawful patent related to the

28  6

**United States District Court**
For the Northern District of California

1  intellectual property developed at Radiance.

2      Second, the Court interpreted the section of the POL

3  entitled "Distribution of Property."  Subsection (iii) of that

4  section provides, in pertinent part:

5          Verdiell and Shum shall have equal rights to
          independently exploit the intellectual property
6          developed by [Radiance].

7  The Court interpreted this provision to mean that Shum and

8  Verdiell were entitled to lawfully patent any of their own

9  inventions contained in the intellectual property which had

10  previously been the property of Radiance.

11      From January 10, 2005 to January 24, 2005, the Court

12  conducted a § 256 bench trial, at which Shum contended that

13  there should be a correction of inventorship as to multiple

14  claims of each of the seven patents.  An order setting forth

15  the Court's findings of fact and conclusions of law was issued

16  on June 21, 2005.  The Court concluded that Shum did not meet

17  his burden to show that he was the inventor or co-inventor of

18  any of the patent claims at issue and denied any correction of

19  inventorship.

20      On January 12, 2006, the Court issued an order as to a

21  fourth amended complaint granting Defendants' summary judgment

22  motions, concluding inter alia that, in light of the Court's

23  findings that Shum was not an inventor of any of the claims of

24  the patents at issue, a jury could not reasonably find for Shum

25  on any of the state law causes of action.

26      Shum appealed, and on November 19, 2007, the United States

27  Court of Appeals for the Federal Circuit reversed the

28                                  7

**United States District Court**

For the Northern District of California

inventorship ruling of June 21, 2005 as well as the January 12, 2006, summary judgment ruling.  The Federal Circuit held that, because the issue of inventorship was integral to, and "inextricably intertwined" with, the factual basis of the state law claims, it had to be first presented to and decided by a jury pursuant to the Seventh Amendment.  The Court of Appeals additionally reversed the Court's March 25, 2003, dismissal of Shum's unjust enrichment claim, holding that under California law the unjust enrichment claim constituted a separate cause of action, not duplicative of the other causes of action.  The relevant previous orders were vacated and the case was remanded to this Court.

On September 26, 2008, the Court issued a second order as to Shum's fourth amended complaint, this time granting Defendants' motion for summary judgment in part and denying it in part.  The Court ruled, among other things, that Verdiell did not owe any fiduciary duty to Shum, and as a result, that no liability could arise in this case based on the fact that Verdiell did not disclose something to Shum.

On November 13, 2008, pursuant to the mandate of the Federal Circuit, the Court empaneled a jury to hear Shum's claims for correction of inventorship, intentional misrepresentation, breach of contract, and unjust enrichment. The case was tried to the jury.

By the close of evidence, several new developments had altered the landscape of the case.  First, Shum withdrew his claim for correction of inventorship as to the '2726 patent.

8

Second, Shum abandoned any claim to sole inventorship of any of the six remaining patents, conceding, in effect, that Verdiell was at least a co-inventor of every patent-in-suit.  Third, Shum disclaimed any basis for liability against Intel other than its status as LightLogic's successor-in-interest.  Fourth, Shum specified which alleged misrepresentations were the basis of his intentional misrepresentation claim.  According to Shum, Verdiell's alleged fraud arose solely out of Verdiell's and Alboszta's representations that the original step patent application was invalid and had to be withdrawn.

On December 22, 2008, the jury returned verdicts on some of Shum's claims and reported that it could not reach a verdict on the others.  The jury was unable to reach a verdict on any of the state law claims.  The Court declared a mistrial as to each of these claims.

The jury returned the following verdicts on inventorship claims:

- • U.S. Patent No. 5,977,567: Shum is a co-inventor of six claims of the patent.
- • U.S. Patent No. 6,376,268: Shum is a co-inventor of five claims of the patent.
- • U.S. Patent No. 6,207,950: Shum is a co-inventor of four claims of the patent.
- • U.S. Patent No. 6,586,726: Shum is a co-inventor of four claims of the patent.
- • U.S. Patent No. 6,227,724: Shum is a co-inventor of four claims of the patent.  The jury was deadlocked

9

**United States District Court**
For the Northern District of California

as to claim five of the patent and the Court declared a mistrial as to this claim.

- U.S. Patent No. 6,585,427: Shum was not a co-inventor of three claims of the patent.  The jury deadlocked as to claim one of the patent and the Court declared a mistrial as to this claim.

Following trial, Defendants filed the instant renewed motions for JMOL regarding Shum's state law and inventorship claims.

A more detailed description of the history of this case is contained in the previous orders of this Court.

## C.    Legal Standards

### 1.    Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Rule 50(b), which provides for renewing a motion for judgment as a matter of law, states:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  . . .  In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new

10

United States District Court

For the Northern District of California

trial; or (3) direct the entry of judgment as a matter of law.

Where the jury has reached a verdict, the court must ask whether, construing the evidence in the light most favorable to the nonmoving party, the jury's verdict was supported by "substantial evidence." Fisher v. City of San Jose, 558 F.3d 1069, 1074 (9th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

Where the jury has not reached a verdict, the failure to reach a verdict "does not necessarily preclude a judgment as a matter of law." Headwaters Forest Def. v. County of Humboldt, 240 F.3d 1185, 1197 (9th Cir. 2000) (vacated on other grounds by County of Humboldt v. Headwaters Forest Def., 534 U.S. 801 (2001). "The test is whether the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion." White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002) (quotation omitted).

In evaluating the evidence presented at trial, the court must not substitute its own view of the evidence for that of the jury. Fisher, 558 F.3d at 1074. Nor may the court make credibility determinations or weigh the evidence. Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001).

## 2. Intentional Misrepresentation

Under California law, the elements of intentional misrepresentation are as follows: (1) the defendant represented

11

United States District Court

For the Northern District of California

to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff. Manderville v. PCG & S Group, Inc., 146 Cal. App. 4th 1486, 1498 (2007).

### 3.   Breach of Contract

In California, the elements of breach of contract are: (1) the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to plaintiff therefrom.  Wall Street Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (2008).

### 4.   Unjust Enrichment

Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another.  Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (2008).  The mere fact that a person obtains a benefit from another is not of itself sufficient to require that person to make restitution therefor.  Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc., 94 Cal. App. 4th 151, 171 n.23 (2001).  Thus, even when a party has received a benefit from another, it is

12

United States District Court

For the Northern District of California

required to make restitution only if the circumstances of its receipt or retention are such that, as between the two parties, the retention of the benefit is unjust.  Id.  This requires wrongful conduct on the part of the party receiving the benefit.  See County of San Bernardino v. Walsh, 158 Cal. App. 4th 533, 542-43 (2007).  As a matter of law, an action for unjust enrichment does not lie where an express binding agreement exists and defines the parties' rights.  Cal. Med. Ass'n, 94 Cal. App. 4th at 172.

### 5.   Correction of Patent Inventorship

A patent is invalid if more or less than the true inventors are named.  Jamesbury Corp. v. United States, 518 F.2d 1384, 1395 (Ct. Cl. 1975).  Because a patent is presumed to be valid, there is a parallel presumption that the named inventors on a patent are the true and only inventors.  Univ. of Colo. Found., Inc. v. Am. Cyanamid Co., 342 F.3d 1298, 1308 (Fed. Cir. 2003).  As a result, a party seeking to change the existing inventorship has a burden to prove by clear and convincing evidence the existence of an inventorship contribution to any of the patent claims.  Bd. of Educ. v. Am. Bioscience, Inc., 333 F.3d 1330, 1337 (Fed. Cir. 2003).

Conception is the "touchstone" of inventorship.  Am. Cyanamid, 342 F.3d at 1308.  To be a joint inventor, one must "(1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured

13

**United States District Court**
For the Northern District of California

1    against the dimension of the full invention, and (3) do more

2    than merely explain to the real inventors well-known concepts

3    and/or the current state of the art." Pannu v. Iolab Corp.,

4    155 F.3d 1344, 1351 (Fed. Cir. 1998).  A purported co-inventor

5    does not satisfy this standard by contributing an element

6    which is obvious or exists in the prior art.  Nartron Corp. v.

7    Schukra U.S.A., Inc., 558 F.3d 1352, 1356-58 (Fed. Cir. 2009).

8        To meet the clear and convincing burden of proof, alleged

9    co-inventors must prove their contribution to the conception

10   with more than their own testimony respecting the facts

11   surrounding a claim of inventorship.  Price v. Symsek, 988

12   F.2d 1187, 1194 (Fed. Cir. 1993).  Relevant corroborating

13   evidence generally takes the form of physical evidence, or

14   oral testimony of someone other than the alleged inventor.

15   Trovan, Ltd. v. Sokymat SA, Irori, 299 F.3d 1292, 1302-03

16   (Fed. Cir. 2002).

17       The inventorship of a patent or patent application may be

18   corrected to name another actual inventor if the omission of

19   that unnamed inventor occurred without deceptive intent on the

20   part of the unnamed inventor.  See 35 U.S.C. §§ 256, 116.  A

21   patent is unenforceable and is invalid and uncorrectable if it

22   was obtained with deceptive intent on the part of the

23   applicant.  See PerSeptive Biosystems, Inc. v. Pharmacia

24   Biotech, Inc., 225 F.3d 1315, 1322-23 (Fed. Cir. 2000).

25

26

27

28

United States District Court

For the Northern District of California

**II. DISCUSSION**

**A.   Intentional Misrepresentation**

For the following reasons, Shum has failed as a matter of law to prove that Defendants committed the tort of intentional misrepresentation.

**1.   False Statement**

First, Shum has not presented sufficient evidence to support a factual conclusion that Defendants made a false statement.  Under the evidence presented in this case and the law of patent inventorship, Verdiell's and Alboszta's statements that the original step patent application was invalid and had to be withdrawn, are not shown to be false.  When a patent application omits an actual co-inventor with deceptive intent on the part of the unnamed inventor, that application is invalid and must be withdrawn.  <u>See</u> 35 U.S.C. § 116.

At the trial, Verdiell testified that his name was left off the original patent application because his work on the invention was done at Radiance while he was still employed by SDL, and that fact might cause problems as to ownership of the patent.  There was no evidence at the trial to show that this state of mind did not exist.

Verdiell also testified at the trial that before the LightLogic patent application was filed following the dissolution of Radiance, he had gone over the original patent application and removed anything in the abandoned application that was based on Shum's work at Radiance.  In this case, Shum

15

United States District Court

For the Northern District of California

does not dispute that Verdiell is an actual co-inventor of every patent-in-suit, which would include the subject matter of the '567 patent which had originally been part of the abandoned patent application.  Once Verdiell notified Shum that he was a co-inventor, the patent application listing Shum as the sole inventor could not have remained in the hands of the PTO without deceptive intent on the part of Verdiell. Such deceptive intent on the part of the unnamed inventor, Verdiell, would have rendered the application invalid and uncorrectable under § 116.  Accordingly, when Verdiell and Alboszta informed Shum that the patent application was invalid and had to be withdrawn, they were correct -- the statements were not false.[1]

## 2.   Reliance

Even assuming that Verdiell made a false statement, Shum has failed to present any evidence from which a reasonable juror could conclude that he relied on any such statement. Shum's only evidence of reliance is his testimony that, had he known Verdiell was preparing a sole inventor application, he would never have agreed to enter into the POL.  See Trial Tr.

---

[1] In his opposition brief, Shum asserts, for the first time, that there was an additional allegedly false statement by Verdiell: that Verdiell promised Shum he would re-file a patent application that listed both of them as inventors after the first application was withdrawn.  There is a significant question as to whether there is evidence to support this assertion, but it is not necessary to review the evidence, as this statement cannot support a finding of intentional misrepresentation because it was not submitted to the jury and there was no request by Shum to do so.  See Trial Tr. vol. 19, 4021:16-21, Dec. 17, 2008.

16

**United States District Court**
For the Northern District of California

1   vol. 3, 593:25-594:20, Nov. 18, 2008.

2       This testimony fails to establish reliance.  A duty to

3   disclose only arises between two parties if a fiduciary or

4   confidential relationship exists between them, or if there are

5   other special circumstances which would require a disclosure.

6   See Warner Constr. Corp. v. Los Angeles, 2 Cal. 3d 285, 294

7   (1970).  This Court has already ruled that Verdiell owed no

8   such duty to Shum.  See Sept. 26, 2008 Order at 14:23-20:11.

9   Consistent with this ruling, the Court instructed the jury

10  that liability for intentional misrepresentation could not be

11  based on a non-disclosure by Verdiell.  See Trial Tr. vol. 19,

12  4022:13-16, Dec. 17, 2008.  Because Shum's purported reliance

13  in this case is premised solely on the fact that Verdiell

14  omitted to tell him about the sole inventor application, no

15  reasonable juror could have concluded that Shum relied on such

16  a failure to disclose.

17      Shum also contends that Verdiell's trial testimony

18  establishes that his reliance was induced.  Specifically, Shum

19  concludes from Verdiell's testimony that Verdiell believed the

20  abandonment of the original patent application was "not just a

21  substantial factor in, but a necessary predicate to, entry

22  into the POL."  Shum's Opp. at 6:22-23.  Shum appears to

23  contend that if Verdiell held this belief, then Verdiell's

24  statement that the application had to be withdrawn must have

25  induced Shum to enter into the POL.

26      This argument misconstrues the nature of causation.  The

27  relevant causation inquiry in this case pertains to Shum's

28                              17

**United States District Court**
For the Northern District of California

motivations for entering into the POL.  The inference Shum draws from Verdiell's testimony relates to Verdiell's state of mind, not Shum's.  Absent any evidence establishing a causal connection between Verdiell's alleged misrepresentations and Shum's motivations for executing the POL, no reasonable juror could conclude that Verdiell fraudulently induced Shum to enter into the POL.

**3.  Harm**

Finally, Shum has failed to present any evidence that he suffered legally cognizable harm as a result of Verdiell's alleged misrepresentation.  Shum's theory of intentional misrepresentation damages is that after the POL was executed, Verdiell used the agreement to deprive Shum of his rights to the Radiance technology.  Shum's damages expert, Paul Regan, valued Shum's loss attributable to this alleged fraud at $29.2 million, or one-half the value of the Intel shares Verdiell acquired as a result of the Intel-LightLogic merger.  See Trial Tr. vol. 12, 2529:7-2530:6, Dec. 4, 2008.

Under California law, Shum must have incurred actual monetary loss as a result of Defendants' alleged fraud. See Cal. Civ. Code § 3333; Strebel v. Brenlar Invs., Inc., 135 Cal. App. 4th 740, 749 (2006).  Shum has failed to present evidence of any such loss.  Shum's theory of fraud damages rests on the conclusory assertion that, had he not been fraudulently induced into entering into the POL, he would now possess $29.2 million.  This assertion is based on several unfounded assumptions regarding what would have happened to

18

**United States District Court**
For the Northern District of California

Shum, Verdiell and Radiance, had the POL never been executed.
Such assumptions include, for example, that Shum would have
(1) been a co-participant in Radiance or LightLogic along with
Verdiell; (2) obtained patents on the Radiance technologies;
and (3) been an equal owner of the Intel shares distributed to
Verdiell at the time of the sale.  All of the evidence
presented at trial, however, suggests the opposite.  <u>See</u>,
<u>e.g.</u>, Trial Tr. vol. 3, 607:7-25, Nov. 18, 2008 (Shum
abandoned his own efforts to develop the Radiance intellectual
property after Radiance dissolved); <u>id.</u> vol. 4, 810:10-814:24,
Nov. 19, 2008 (the relationship between Verdiell and Shum had
irrevocably deteriorated); <u>id.</u>, 826:17-831:19 (same).

Absent any evidence of actual loss, Shum's theory of
fraud damages amounts to little more than an unjust enrichment
claim.  Unjust enrichment cannot serve as a basis for fraud
damages.  <u>See</u>, <u>e.g.</u>, <u>Ward v. Taggart</u>, 51 Cal. 2d 736, 741-42
(1959).  Shum has failed as a matter of law to demonstrate
that he suffered direct harm as a result of Verdiell's alleged
intentional misrepresentation.

**B.    Breach of Contract**

Shum has also failed as a matter of law to prove the
elements of breach of contract.

**1.    Breach**

First, Shum has presented no evidence that Verdiell
breached the POL.  Under the Court's interpretation of the
POL, Verdiell is only liable to Shum for breach of contract if
he obtained a patent for the Radiance technology which is not

19

**United States District Court**

For the Northern District of California

lawful. <u>See</u> Trial Tr. vol. 19, 4025:9-4026:2, Dec. 17, 2008.

Shum contends that Verdiell engaged in unlawful conduct by acquiring patents which omitted Shum as a co-inventor. As noted, the omission of a co-inventor only amounts to unlawful conduct if the patent is obtained by deceptively concealing the existence of the omitted co-inventor. <u>See</u> <u>PerSeptive</u>, 225 F.3d at 1322-23. As already noted, Shum has conceded that Verdiell is in fact an inventor of each of the seven patents at issue in this case. As a result, the fact that Verdiell has obtained these patents in his own name is not unlawful conduct in and of itself. If, however, Shum was a co-inventor of each of these patents and the conduct of Verdiell in naming himself as the <u>sole</u> inventor of the patent was accomplished by deceptive intent on his part, the patents would be unlawful. In order to prove unlawfulness in such circumstances, Shum would have to prove inequitable conduct before the PTO by proof that (1) Shum was an actual co-inventor of the patent; (2) Verdiell knew that Shum was a co-inventor; and (3) Verdiell omitted Shum's name as a co-inventor because he intended to mislead the PTO as to the true inventorship of the patent. On five of the patents the jury found that Shum was a co-inventor, but no evidence was introduced that would provide evidentiary support for factual findings that Verdiell knew that Shum was a co-inventor and that he omitted Shum's name from the patents with the intent to mislead the PTO.

Lacking any such evidence, Shum raises three legal arguments in support of his breach of contract claim. First,

20

1    Shum contends that the Court may not consider the question of

2    deceptive intent because any such consideration erroneously

3    introduces a deceptive intent element into Shum's breach of

4    contract cause of action.   This argument is frivolous.

5    Although it is true that a contract may be breached without

6    any proof of deceptive intent, in this particular context, the

7    conduct itself which is asserted to be a breach, can be a

8    breach only if it is accompanied by deceptive intent.   The

9    Court instructed the jury that Shum must prove the four

10   elements of breach of contract described above.   See Trial Tr.

11   vol. 19, 4024:16-24, Dec. 17, 2008.   The Court does not

12   believe that adding to or altering these instructions would

13   have been appropriate.

14       Second, Shum argues that the question of intent is a

15   factual question which must be decided by the jury rather than

16   the Court.   This argument also lacks merit.   In ruling on the

17   instant motion, the Court must determine whether Shum has

18   presented sufficient evidence for a reasonable jury to find in

19   his favor.   See White, 312 F.3d at 1010.   Determination of

20   this question does not invade the province of the jury.

21       Third, Shum argues that the Court should prohibit

22   Defendants from raising the issue of deceptive intent in the

23   instant motion because they did not raise the issue in their

24   original motion for JMOL.   This argument misconstrues

25   Defendants' Rule 50(a) motion.   See Def. Mot. for JMOL at 7:2-

26   7.

27       Accordingly, Shum has failed to present sufficient

28                                   21

United States District Court

For the Northern District of California

1    evidence from which a reasonable juror could conclude that

2    Verdiell breached the POL.

3        **2.    Harm**

4        Second, Shum has failed to present any evidence from

5    which a reasonable jury could conclude that Shum suffered harm

6    as a result of Verdiell's alleged breach.  Shum's theory of

7    contract damages is that Verdiell failed to buy out Shum's

8    rights to the Radiance intellectual property before Verdiell

9    obtained his patents, secured venture capital for LightLogic,

10   and sold LightLogic to Intel.

11       Under California law, a "breach of contract is not

12   actionable without damage." Bramalea Cal., Inc. v. Reliable

13   Interiors, Inc., 119 Cal. App. 4th 468, 473 (2004).  The

14   "breaching party is only liable to place the non-breaching

15   party in the same position as if the specific breach had not

16   occurred." St. Paul Fire and Marine Ins. Co. v. Am. Dynasty

17   Surplus Lines Ins. Co., 101 Cal. App. 4th 1038, 1061 (2002).

18       Shum has made no showing that Verdiell's failure to buy

19   out his rights amounts to a pecuniary loss on the part of

20   Shum.  Verdiell had no duty to buy out Shum, and the only

21   theoretical damage Shum could have incurred as a result of

22   Verdiell's alleged unlawful patenting would have occurred if

23   Verdiell's conduct frustrated some lawful effort on the part

24   of Shum to acquire patents covering the same subject matter.

25   Under such circumstances, Verdiell's conduct could have

26   interfered with Shum's co-equal right under the POL to

27   commercially exploit his patented Radiance intellectual

28                                22

United States District Court

For the Northern District of California

1   property, and as a result, Shum could have lost profits from

2   the interference with his ability to exploit this property.

3   Lost profits are a recognized measure of damages for breach of

4   contract.  <u>See</u>, <u>e.g.</u>, <u>St. Paul Fire and Marine</u>, 101 Cal. App.

5   4th at 1061.

6       Shum has presented no evidence of any such detriment.  To

7   the contrary, Shum admitted at trial that he abandoned

8   Luminance, his own post-Radiance startup company, in order to

9   obtain the security of working for an established

10  telecommunications company.  <u>See</u>, <u>e.g.</u>, Trial Tr. vol. 3,

11  607:8-608:5, Nov. 18, 2008.  As a result, Shum has failed to

12  provide any basis for the jury to conclude that he is not

13  already in the same financial position he would have been in

14  had the alleged breach never occurred.  <u>See St. Paul Fire and

15  Marine</u>, 101 Cal. App. 4th at 1061.

16  **C.   Unjust Enrichment**

17      Shum has also failed as a matter of law to prove the

18  elements of unjust enrichment.

19      **1.   Preclusion by Express Contract**

20      As a threshold matter, Defendants contend that Shum's

21  unjust enrichment claim is precluded by the POL agreed to by

22  the parties.  This Court has already ruled that the POL and

23  Shum's unjust enrichment claim cover different conduct.  <u>See</u>

24  Sept. 26, 2008 Order at 23:24-24:21.  As a result, the POL

25  does not preclude Shum's unjust enrichment claim.

26      **2.   Court or Jury as Fact Finder**

27      Defendants next contend that unjust enrichment is an

28                                      23

**United States District Court**
For the Northern District of California

equitable claim, and as such, the Court should find the facts on this claim instead of the jury. Shum disputes that unjust enrichment is an equitable claim. Under the Seventh Amendment, a party has a right to a jury trial on any equitable claim that shares common issues of fact with a legal claim asserted by the party. <u>Shum v. Intel Corp.</u>, 499 F.3d 1272, 1279 (Fed. Cir. 2007).

There is little doubt that unjust enrichment is an equitable claim. <u>See</u> <u>Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry</u>, 494 U.S. 558, 570 (1990). To be sure, in his Second Amended Complaint, Shum himself pled unjust enrichment "in equity." <u>See</u> Sec. Amend. Compl. ¶ 69. Shum may not retreat from that position now.

Nevertheless, Shum's unjust enrichment claim shares at least one common issue of fact with his breach of contract claim: whether or not Verdiell in fact believed that Shum was a co-inventor of the patented technology. As already discussed, in order to prove breach of contract, Shum must prove that Verdiell's patenting activities were unlawful. In order to do this, Shum must establish that Verdiell engaged in inequitable conduct before the PTO by deliberately omitting Shum even though he knew Shum was a co-inventor. Similarly, in order to prove unjust enrichment, Shum must demonstrate wrongful conduct on the part of Verdiell. <u>See</u> <u>County of San Bernardino</u>, 158 Cal. App. 4th at 542-43. In order to do this, Shum contends that Verdiell claimed false exclusivity as to his Radiance technology patents not only because he knew of

United States District Court

For the Northern District of California

1  Shum's rights under the POL but because he knew Shum was a co-

2  inventor.

3      Accordingly, because Verdiell's state of mind regarding

4  Shum's inventorship is a factual question common to both

5  unjust enrichment and breach of contract, the unjust

6  enrichment claim was properly tried to the jury.

7      **3.   Federal Preemption**

8      In addition, Defendants contend that Shum's unjust

9  enrichment claim is preempted by federal patent law.  In a

10 patent case, preemption occurs "whenever the state law

11 provides patent-like protection to subject matter addressed by

12 federal law."  See Dow Chem. Co. v. Exxon Corp., 139 F.3d

13 1470, 1473 (Fed. Cir. 1998) (quotation omitted).

14     35 U.S.C. § 262 provides, "In the absence of any

15 agreement to the contrary, each of the joint owners of a

16 patent may make, use, offer to sell, or sell the patented

17 invention within the United States, or import the patented

18 invention into the United States, without the consent of and

19 without accounting to the other owners."  Every co-inventor of

20 a patent is presumptively a co-owner of an undivided pro-rata

21 interest in the entire patent, regardless of his respective

22 contribution to the development of the patented technology.

23 Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1465

24 (Fed. Cir. 1998).  These ownership interests are separate and

25 distinct.  Willingham v. Star Cutter Co., 555 F.2d 1340, 1344

26 (6th Cir. 1977).

27     When one patent co-owner transfers his own interest in a

28                              25

**United States District Court**
For the Northern District of California

1  patent to a third party, § 262 preempts any unjust enrichment

2  claim brought by another co-owner seeking to disgorge a

3  portion of the proceeds resulting from that transfer.  <u>See</u>,

4  <u>e.g.</u>, <u>Tavory v. NTP, Inc.</u>, 2008 U.S. App. Lexis 24505, *19

5  (Fed. Cir. 2008).  Such unjust enrichment claims are preempted

6  because they conflict with the purpose of § 262, which

7  provides that a patent co-owner may transfer his own interest

8  in a patent without the consent of, and without any accounting

9  to, the other co-owners.  <u>Id.</u>

10  Our case is distinguishable from <u>Tavory</u>.  In this case,

11  Shum does not seek compensation on the basis that Verdiell did

12  in fact transfer Shum's own interests in the Radiance

13  technology.  Rather, the central premise of Shum's "false

14  exclusivity" theory is that Intel bought LightLogic in

15  reliance on Verdiell's misrepresentation that he was the sole

16  owner of the rights to the patents involved in the sale.

17  Section 262 does not speak to this alleged conduct.  As

18  noted above, patent co-owners' interests are separate and

19  distinct.  <u>Willingham</u>, 555 F.2d at 1344.  As a result, the

20  language in § 262 which empowers a patent co-owner to "make,

21  use, offer to sell, or sell the patented invention . . .

22  without the consent of and without accounting to the other

23  owners" refers only to the interests of the transferring co-

24  owner, not the interests of any other co-owner.  Accordingly,

25  Shum's unjust enrichment claim falls outside the scope of §

26  262, and there is no conflict with federal patent law.

27

28

**United States District Court**
For the Northern District of California

### 4. "Unjust" Retention of a Benefit

Shum has failed, however, to present any evidence from which a reasonable jury could conclude that Defendants' retention of any benefit was unjust.

### a. Wrongful Conduct

First, Shum has failed as a matter of law to prove that Verdiell or LightLogic engaged in wrongful conduct. Shum contends that Defendants engaged in wrongful conduct by falsely claiming exclusive ownership of the Radiance technology. Shum's thesis is that Intel would not buy the patents unless it believed that Verdiell had exclusive rights to the patents. According to Shum, Verdiell also believed that there would be no sale unless he could transfer the entire rights in the patents to Intel, so Verdiell falsely claimed that he owned the entire rights to the patents in order to induce the sale. Shum argues that he presented a variety of evidentiary circumstances in support of this thesis at trial. Shum's evidence may be loosely grouped into three categories.

The first category consists of evidence which tends to prove that after executing the POL, Verdiell believed that he would have to have exclusive rights to the Radiance technology in order to obtain investment in LightLogic. See, e.g., Trial Tr. vol. 5, 1000:19-1001:4, Nov. 20, 2008. The second category consists of evidence which tends to prove that Intel seeks to obtain "unique" and "proprietary" intellectual property in purchases such as that of LightLogic. See, e.g.,

27

**United States District Court**
For the Northern District of California

1   Trial. Ex. Nos. 740, 772, 2728.

2       The third category consists of three patent assignments

3   which purported to transfer, from Verdiell to LightLogic,

4   "exclusive right, title, and interest" to three patent

5   applications.  <u>See</u> Trial Ex. Nos. 15-17.  The first

6   assignment, filed with the PTO on May 12, 1998, transferred

7   the rights to patent application number 09/003,114, the

8   application which became the '567 patent.  Trial Ex. No. 15.

9   The second assignment, filed with the PTO on March 4, 1989,

10  transferred the rights to patent application number

11  09/229,489, which became the '724 patent.  Trial Ex. No. 16.

12  The third assignment, filed with the PTO on April 28, 1989,

13  transferred the rights to patent application number

14  09/229,395, which became the '950 patent.  Trial Ex. No. 17.

15      The evidence contained in the first and second categories

16  does not provide evidentiary support to Shum's thesis that

17  Verdiell claimed false exclusivity.  In order to prove false

18  exclusivity, Shum must establish that Verdiell actually

19  claimed exclusive rights to the technology at issue, and that

20  Intel relied on that claim.  At most, this evidence provides a

21  motivational background for conduct by Verdiell or Intel, but

22  it does not prove the conduct itself.

23      The patent assignments also fail to establish wrongful

24  conduct.  Since we know that both Shum and Verdiell have

25  rights to the Radiance technology derived from the POL, Shum

26  is correct that, on its face, the language "exclusive right,

27  title, and interest" could suggest that Verdiell was

28                              28

United States District Court

For the Northern District of California

attempting to transfer Shum's rights to the Radiance

technology.  But that is a complete abstraction from the legal

language used in the assignments.  In the evidence actually

introduced at trial, there is nothing to show that Verdiell

intended to conceal Shum's POL-based rights in the Radiance

technology, or that he attempted in any way to conceal those

rights.  To the contrary, all of the evidence at trial

establishes that Verdiell and LightLogic fully disclosed

Shum's rights under the POL to both Intel and LightLogic's

venture capital investors.  <u>See</u>, <u>e.g.</u>, Trial Tr. vol. 11,

2377:3-9, Dec. 3, 2008; <u>id.</u> vol. 14, 3047:20-3048:6, 3140:11-

3141:21, 3192:17-3193:15, Dec. 9, 2008; <u>id.</u> vol. 15, 3346:5-

14, Dec. 10, 2008.  Lacking any evidence to the contrary, no

reasonable juror could conclude that defendants Verdiell and

LightLogic claimed "false exclusivity" as to the property

rights to the Radiance technology.

          **b.   Causation**

     Even if Defendants had made a claim of false exclusivity,

however, their enrichment in this case could not have been

unjust unless the alleged claim of false exclusivity actually

caused them to obtain a benefit.

     Shum has presented no such evidence.  At trial,

Defendants presented numerous percipient witnesses from Intel

and the LightLogic investors who possessed first-hand

knowledge regarding their motivations for purchasing or

investing in LightLogic.  None of these witnesses testified

that they believed Verdiell had exclusive rights in the

29

United States District Court

For the Northern District of California

1  Radiance technology, or that it made any difference to their

2  decisions to invest in LightLogic.  To the contrary, every

3  percipient witness testified that they believed Verdiell had

4  the right to use the Radiance technology under the POL, and

5  that they also believed that exclusivity did not matter and

6  that it was of no concern to them that Shum had co-equal

7  rights under the POL.  See, e.g., Trial Tr. vol. 10, 2160:17-

8  2161:13, Dec. 2, 2008; id. vol. 11, 2377:3-9, Dec. 3, 2008;

9  id. vol. 15, 3252:10-3253:14, Dec. 10, 2008.  There was no

10  testimonial or documentary evidence offered at trial that

11  contradicts this testimony.  There was an observation in

12  Shum's papers that this testimony could be said to be "biased

13  witness testimony."  If this is an argument that the Intel or

14  investor testimony in this case was false, the mildest

15  response is that such an argument is incredulous.  Shum has

16  failed to establish that if Verdiell and LightLogic received a

17  benefit, that it was caused by a claim of false exclusivity.

18      **5.    Amount of Unjust Enrichment**

19      Finally, Shum has failed to prove the amount of

20  Defendants' alleged unjust enrichment.  In an unjust

21  enrichment action, the plaintiff must introduce evidence

22  substantiating the amount by which the defendants were

23  allegedly unjustly enriched.  See Storage Techs. Corp. v.

24  Cisco Sys., Inc., 395 F.3d 921, 928-29 (8th Cir. 2005).

25      Shum seeks to recover to "all or half" of the $58.4

26  million that Verdiell obtained from the LightLogic-Intel

27  merger, and to additionally recover approximately $175 million

28                          30

**United States District Court**
For the Northern District of California

from LightLogic.  <u>See</u> Trial. Tr. vol. 19, 3878:10-14, Dec. 17, 2008.  In the aggregate, Shum asserts that he is entitled to roughly half of the $409 million LightLogic purchase price. Shum calculated Verdiell's alleged unjust enrichment based on the conclusory opinions of his experts that he is entitled to at least half of anything Verdiell acquired as a result of the Intel merger.  Shum calculated LightLogic's alleged unjust enrichment by subtracting an assumed value of LightLogic's tangible assets and human resources, as well as the value of Verdiell's alleged unjust enrichment, from the $409 million Intel purchase price.  Shum concludes that the remainder of the purchase price represents the value to Intel of Verdiell's patents on the Radiance technology.

Shum does not dispute that Verdiell spent approximately three and a half years building LightLogic, acquiring venture capital, assembling a management and engineering team, and overseeing the development and manufacture of LightLogic's transponder, as well as the contracts for the sale of these transponders to such Silicon Valley heavyweights as Cisco. All of these assets -- human resources and the tangible and intangible property involved -- were acquired by Intel when it purchased LightLogic.  These assets were of obvious and significant value to Intel, and there is no question that this acquisition was a significant reason for the decision by Intel to purchase LightLogic.  It should also be noted that the value of these assets is wholly independent of the value of the Verdiell patents which were purchased by Intel at the same

31

United States District Court

For the Northern District of California

1   time.  From an unjust enrichment analysis standpoint, this

2   also means that Intel paid Verdiell and LightLogic for both

3   Radiance and non-Radiance assets, and that an unjust

4   enrichment claim cannot be based on the value on the non-

5   Radiance assets, as that is clearly not a benefit bestowed on

6   Verdiell and LightLogic at the expense of Shum.  Neither the

7   sum of money paid by Intel to LightLogic or to Verdiell

8   personally can be considered as an unjust enrichment benefit

9   unless the total amount is apportioned between the value of

10  the Radiance and non-Radiance assets.  Shum's burden of proof

11  on his unjust enrichment claim includes a burden to produce

12  evidence in support of an appropriate apportionment.  But Shum

13  did not do so.  There was no evidence offered as to the

14  valuation of either the Radiance or the non-Radiance assets

15  which could support a factual determination by the jury or

16  provide a foundation for an expert opinion.  The only

17  apportionment numbers offered at the trial were from

18  conclusory statements of the experts -- they were not derived

19  from or founded upon any evidence of the respective value of

20  the assets.

21      Accordingly, Shum has failed to meet his burden of proof

22  as to the amount of any claimed unjust enrichment.[2]

23  **D.    Correction of Patent Inventorship**

24      Last, the Court turns to Shum's claim for correction of

25  _____

26      [2] Because the Court finds that Shum has failed to prove
    that any defendant was unjustly enriched, the Court need not
27  reach Defendants' contention that LightLogic did not obtain a
    benefit as a result of the Intel acquisition.

28                                  32

**United States District Court**
For the Northern District of California

patent inventorship.  As noted, the jury returned verdicts on some patent claims but not on others.

### 1.    Claims for Which the Jury Returned a Verdict

In order for the jury's verdicts to survive the instant motion, the verdicts need only be supported by "substantial evidence" -- that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Fisher</u>, 558 F.3d at 1074.  This standard requires considerable deference on the part of the Court, and the Court is prohibited from substituting its own view of the evidence for that of the jury.  <u>Id.</u>

At trial, Shum presented evidence which established that he and Verdiell worked together in developing the Radiance technologies.  Drawings, writings, and models related to both the DBC and the flexure patents, done by both Verdiell and Shum during their work at Radiance, were introduced as evidence to be considered by the jury.  Shum was more skilled at producing computer aided (CAD) drawings, and most of those produced were done by him.  Of course, the fact that a person produces a drawing or model of a DBC or flexure related device does not establish that that person is the inventor of that device -- that is a separate issue of fact.  The jury was fully instructed on the patent law requirements for defining whether or not a person is an inventor and was told to look for the conception of the component elements of the patented invention as the touchstone of inventorship.  The jury was not required to return detailed specific verdicts, but it was

33

**United States District Court**
For the Northern District of California

obvious that it fully considered all the evidence offered on the issue of conception in its verdicts which decided that Shum was a co-inventor of some claims of the patented inventions and not a co-inventor of others.

The jury returned verdicts that Shum was a co-inventor on five of the patents and that he was not the co-inventor of one of the patents.  The Court finds no basis to usurp the fact finding function of the jury.  The Court will deny Defendants' motion with respect to all claims on which the jury returned a verdict.

**2.   Claims for Which the Jury Failed to Return a Verdict**

There are two remaining patent claims which stand in a much different procedural posture.  Where there is a mistrial because the jury has failed to reach a verdict, the Court does not apply the deferential "substantial evidence" standard. Rather, the Court must independently assess whether Shum's evidence permits only one reasonable conclusion.  <u>White</u>, 312 F.3d at 1010.

As to the '724 patent, the jury reached verdicts regarding claims 1, 7, 14, and 16, finding that Shum was a co-inventor of these claims.  The jury did not reach a verdict as to claim 5.

Claim 1 of the '724 patent states:

> A process for manufacturing an optoelectronic package comprising:
> providing a substrate having a first optical element attached thereto;
> applying pressure to a flexure causing legs on the flexure to spread further apart so that an optical axis of an optical fiber is in

34

United States District Court

For the Northern District of California

> optical alignment with the first optical
> element; and then
> coupling the flexure and the optical
> fiber to the substrate by attaching legs of
> the flexure to the substrate.

Claim 5 of the '724 patent is identical to claim 1 except as to the last clause, which describes "coupling the flexure . . . to the substrate." Claim 5 differs by stating:

> coupling the flexure . . . to the substrate .
> . . wherein coupling the flexure comprises
> coupling a first pair of legs of the flexure
> to the substrate . . . and coupling a second
> pair of legs of the flexure to the substrate.

The difference in these claim terms is that claim 1 would permit the use of a single pair of legs for the flexure, but claim 5 is limited to a device using two pairs of legs. The jury reached a verdict on claim 1, finding that Shum was a co-inventor, but not on claim 5, which demonstrates that they were concerned with the question of whether or not Shum made the contribution of the second pair of legs in claim 5.

The Court has reviewed the evidence at trial on this issue. At trial, Shum's testimony referred to the '724 patent by showing the jury Trial Exhibit 122, which was his March 17, 1997 Record of Invention (ROI) of a "Lever Arm Pivot." Whether or not this exhibit has anything to do with legs of a flexure is a matter of significant debate, but there is no debate that it does not have any reference at all to a second pair of legs for a flexure. Shum also referred to Exhibit 163.008, a CAD drawing made by him on June 1, 1997. This drawing includes a depiction of a flexure device with two pair of legs. The problem, however, is that this drawing is

35

United States District Court

For the Northern District of California

clearly not part of the moment of conception related to the inventive contribution of pairs of legs to be used on a flexure. It is clear that this invention had already taken place. The Exhibit is described as a drawing for the fabrication of a device which had already been conceived. There is nothing about this evidence that established anything more than a drawing by Shum of the pre-existing prior art -- it does not establish any contribution of an inventive conception in claim 5 of the '724 patent. See Nartron, 558 F.3d at 1356-58. Shum's expert, Dr. Wayne Knox, also testified about the '724 patent, but his testimony did not add anything to Shum's testimony on the subject of a second pair of legs for the flexure.

On cross-examination, Shum was asked about a previous statement he had made about the '724 patent, when he had answered the question "Are you the sole inventor of the claims in this patent?" by stating, "I am." He explained that he was not trying to establish sole inventorship by this answer, but rather that he was explaining that as a sole inventor or as a co-inventor he had equal ownership rights to the technology.

In sum, Shum's evidence does not support any thesis that Shum had contributed the idea of a second pair of legs to the flexure described in claim 5 of the '724 patent. Shum has not met his burden of showing an inventive contribution to that claim.

As to the '427 patent, the jury reached verdicts as to claims 20, 22, and 23, finding that Shum was not a co-inventor

of these claims.  As to claim 1, the jury did not reach a

verdict.   Claim one states:

> A package comprising:
> a substrate having a floor;
> a first optical element coupled to the
> substrate;
> a second optical element; and
> a flexure coupled to the second optical
> element and the substrate to maintain the
> second optical element in optical alignment
> with the first optical element, the flexure
> including a body and a pair of front legs, the
> flexure also including a pair of rear legs that
> are attached to the substrate after the
> attachment of the front legs to the substrate,
> the attachment of the rear legs causing the
> flexure to move from a first flexure position
> to a second flexure position, the distance
> between the first flexure position and the
> second flexure position equaling an offset
> distance, the body of the flexure having a
> specified length chosen such that the offset
> distance causes a second offset distance of the
> second optical component held by the flexure
> which is within a specified range, the second
> offset distance equal to the distance between
> a primary second optical component position and
> a secondary second optical component position.

Here again, the Court finds no evidence of any contribution by

Shum on the issue of the use of a second pair of legs in a

more complex patent describing the use of a flexure to align

optical components.  Here again, Shum has failed to identify

any evidence which would be sufficient to meet his burden of

showing by clear and convincing evidence that he made an

inventive contribution to claim 1 of the '427 patent.

Accordingly, the Court grants Defendants' motion with

respect to both of the patent claims as to which the jury did

not return a verdict.

37

**United States District Court**

For the Northern District of California

### III. CONCLUSION

For the foregoing reasons, the Court finds:

**Intentional Misrepresentation**

The defendants' motion for Judgment as a Matter of Law (JMOL) as to plaintiff's Intentional Misrepresentation claim is GRANTED and Judgment for the defendants is entered on this cause of action.

**Breach of Contract**

The defendants' motion for JMOL as to plaintiff's Breach of Contract claim is GRANTED and Judgment for the defendants is entered on this cause of action.

**Unjust Enrichment**

The defendants' motion for JMOL as to plaintiff's Unjust Enrichment claim is GRANTED and Judgment for the defendants is entered on this cause of action.

**Inventorship**

**U.S. Patent No. 5,977,567**

Pursuant to the verdict of the Jury, Judgment is entered that plaintiff Frank Shum is a co-inventor of claims 1, 6, 7, 8, 11 and 18.

**U.S. Patent No. 6,376,268**

Pursuant to the verdict of the Jury, Judgment is entered that plaintiff Frank Shum is a co-inventor of claims 1,4, 12, 13 and 26.

**U.S. Patent No. 6,207,950**

Pursuant to the verdict of the Jury, Judgment is entered that plaintiff Frank Shum is a co-inventor of claims 1, 2, 14

38

and 29.

**U.S. Patent No. 6,586,726**

Pursuant to the verdict of the Jury, Judgment is entered that plaintiff Frank Shum is a co-inventor of claims 1, 2, 5 and 8.

**U.S. Patent No. 6,227,724**

Pursuant to the verdict of the Jury, Judgment is entered that plaintiff Frank Shum is a co-inventor of claims 1, 7, 14 and 16; and

Defendants' motion for JMOL as to claim 5 of the '724 patent is GRANTED and Judgment is entered that plaintiff Frank Shum is not a co-inventor of claim 5.

**U.S. Patent No. 6,585,427**

Pursuant to the verdict of the Jury, Judgment is entered that plaintiff Frank Shum is not a co-inventor of claims 20, 22 and 23; and

Defendants' motion for JMOL as to claim 1 of the '427 patent is GRANTED and Judgment is entered that plaintiff Frank Shum is not a co-inventor of claim 1.

**U.S. Patent No. 6,252,726**

Plaintiff Frank Shum withdrew any claim based on this patent at the close of evidence.


IT IS SO ORDERED.


Dated: April 29, 2009

D. Lowell Jensen
United States District Judge

39

**United States District Court**
For the Northern District of California