1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3

4
     FRANK T. SHUM,                )      No. C02-3262-DLJ
5                                  )
                   Plaintiff,      )
6                                  )
           v.                      )      ORDER RE: TAXATION OF COSTS
7                                  )
     INTEL CORPORATION, JEAN-MARC, )
8    VERDIELL, and LIGHTLOGIC, INC )
                   DefendantS.     )
9    _____ )

10

11        On September 25, 2009, the Court heard arguments on

12   Plaintiff's Motion Challenging Clerk's Taxation of the Parties'

13   Bills of Costs.  Paul Kirsch appeared on behalf of the

14   plaintiff; Steve Taylor appeared for the defendants.  Having

15   considered the arguments of counsel, the papers submitted as

16   well as any supplements thereto, the applicable law, and the

17   record in this case, the Court grants the motion in part as

18   outlined below.

19   **Procedural background**

20        Plaintiff Frank Shum (Shum) and defendant Jean-Marc

21   Verdiell (Verdiell) are optoelectric engineers who worked in

22   the field of fiberoptic telecommunications.  In April 1997 they

23   formed a corporation called Radiance Design.  Pursuant to a

24   Plan of Liquidation, that company ceased to exist in January

25   1998.  Thereafter Verdiell filed and obtained seven different

26   patents, related to optoelectronic technology, which were owned

27   by a company he had formed called LightLogic.  In June 2001

28                              1

Verdiell sold LightLogic and its patents to Intel Corporation. In May 2002 Shum filed this lawsuit in which Shum claimed that he was defrauded by Verdiell and the other defendants; that there was a breach of contract committed; and that the defendants have been unjustly enriched under California law. Several months later Shum amended his complaint to add a federal claim contending that he was the sole inventor, or at least a joint inventor, on each of the seven patents, and that the patents should be amended to show his inventorship.

The Court decided that the federal inventorship claims and state law claims should be bifurcated, and a bench trial as to the inventorship claims only was held in January 2005.  At the conclusion of the trial this Court found that Shum had failed to meet his burden of proof on the inventorship claims and entered judgment in defendants' favor. In 2006, the Court granted summary judgment on Shum's remaining state law claims. See Docket Item Nos. 453, 663.

On Shum's appeal, the Federal Circuit found that the issue of inventorship was integral to the factual basis of the state law claims such that it had to be decided by a jury pursuant to the seventh amendment.  The Federal Circuit reversed and remanded the inventorship and state law claims to this Court. The case was set for re-trial.

In November and December 2008 the case was retried before a jury.  In the second trial Shum presented two sets of claims, one as to the fraud and fraud related claims under state law, and the other as to his inventorship status as the sole

2

inventor or as the co-inventor of each patent under federal law.  On the state law claims he sought verdicts for liability and for damages in the approximate amount of 400 million dollars.  On the inventorship claims he sought verdicts establishing him as either the sole inventor or co-inventor of the seven patents.

Just before the second trial began, Shum withdrew all claims of inventorship as to the "dual enclosure" patent (U.S. Patent No. 6,252,726).  In the course of trial Shum changed his claims with respect to the remaining patents to one of co-inventorship only.  The consequence of this decision is that Shum has implicitly conceded that defendant Jean-Marc Verdiell was at least a co-inventor of each of the six remaining patents-in-suit. See, e.g., 2008 Trial Tr. 732:6-20 (Shum); 734:24-735:5 (Shum); 736:19-737:1 (Shum).

The jury returned verdicts finding that plaintiff had established his co-inventor status with respect to one or more patent claims in five of the six patents still at issue. A mistrial was declared as to all other claims as the jury was unable to reach a decision on Shum's remaining claims for inventorship, and as to any of the state law claims for intentional misrepresentation, breach of contract, and unjust enrichment. Subsequently, after post-trial motions, the Court granted judgment for Shum as a co-inventor on five of the patents, and for defendant on the remaining claims, holding that Shum had failed to introduce sufficient evidence to permit a finding of co-inventorship on the sixth patent, or for

3

1  liability or damages on any of the state law claims. See Docket

2  Item Nos. 978, 979 & 980.

3      On May 13, 2009, both defendants and Shum submitted bills

4  of costs to the Clerk of the Court.  On June 29, 2009, the

5  Clerk taxed costs in defendants' favor in the amount of

6  $507,644.82, and in Shum's favor in the amount of $195,523.27.

7  Defendants have not objected to the costs which the clerk

8  assessed against them.  When the costs are offset against each

9  other, Shum would be responsible to defendants for $312,121.55.

10 Shum filed the instant motion challenging the Clerk's taxation

11 of the parties' costs both on the overall issue of who was the

12 prevailing party and also on the appropriateness of particular

13 costs.

14 **Discussion.**

15     I.   Who is the Prevailing Party?

16     Shum and defendants each assert that they are the

17 prevailing party and that they therefore are entitled to an

18 award of costs. Shum uses this argument to ask the Court to

19 award costs only to Shum.  While defendants argue in rebuttal

20 that they have prevailed, they did not separately file a motion

21 seeking to deny Shum the costs awarded to him.

22     Federal Rule of Civil Procedure 54(d) provides that

23 "[u]nless a federal statute, these rules, or a court order

24 provides otherwise, costs--other than attorney's fees--should

25 be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).

26 In a patent case, Federal Circuit law governs the determination

27 of which party has prevailed. Manildra Milling Corp. v. Ogilvie

28

4

1    Mills, Inc., 76 F.3d 1178, 1182 (Fed. Cir. 1996). See also

2   Inland Steel Co. v. LTV Steel Co., 364 F.3d 1318, 1320 (Fed.

3   Cir. 2004) (stating that the Federal Circuit has "made it

4   clear" that its own law, rather than that of the regional

5   circuits, defines the meaning of prevailing party in patent

6   litigation).

7        Shum relies on the Manildra case to support his

8   argument that, although he won no monetary damages in his

9   lawsuit, he was still the prevailing party.

10       The plaintiff in Manildra filed suit seeking a declaration

11  that the defendant's patents were invalid and, additionally,

12  sought monetary damages for the defendant's alleged violation

13  of the Lanham Act, Kansas common law, and federal antitrust

14  laws. Id. at 1180. The Manildra plaintiff obtained a judgment

15  that defendant's patent was invalid.  On appeal the court

16  upheld the invalidity decision but reversed the remaining

17  causes of action, which had been the source of a monetary

18  judgment.  Nonetheless, the Federal Circuit concluded that the

19  plaintiff was the prevailing party.  The basis for the court's

20  determination was that a "plaintiff 'prevails' when actual

21  relief on the merits of his claim materially alters the legal

22  relationship between the parties by modifying the defendants'

23  behavior in a way that directly benefits the plaintiff." Id.

24  (quoting Farrar v. Hobby, 506 U.S. 103, 113 S. Ct. 566, 573

25  (1992)).

26       The Manildra court went on to find that winning a

27  declaration of invalidity permitted the plaintiff to use its

28

production process free from risk of an infringement suit and without the necessity of obtaining a license.

> As a result, although Manildra's suit ultimately produced no money judgment, it . . . stripped [defendant] of a competitive edge vis-à-vis Manildra." Since "a patentee receives the right to exclude all others from making, using and selling the patented invention, . . . a judicial declaration that one is free from another's right to exclude alters the legal relationship between the parties.

Id. See also Kemin Foods, L.C. v. Catholic University of America, 464 F.3d 1339, 1347 (Fed. Cir. 2006).

Shum asserts that when the reasoning of Manildra is applied to his situation, he is the prevailing party. Shum did obtain a judgment that he is a co-inventor of five patents. However, the Court looks at the case as a whole to determine the effect of that jury finding.

In the first action, Shum asserted that he was the sole inventor or a co-inventor of the patents. He did not prevail on either claim. The Federal Circuit sent the case back to this Court on procedural grounds holding that the matter of fraud had to go the jury. In the second action Shum again asserted that he was either the sole inventor or a co-inventor. During cross-examination by defendant during the trial, plaintiff abandoned his claim of sole-inventorship. Therefore he did not prevail on that part of his claim. He did prevail in part on the remaining aspect of the inventorship claim, namely that he was a co-inventor of the patents. He now looks to this, at best, partial victory to allege that he is the prevailing party, ignoring that defendant clearly prevailed on the sole

inventorship aspect of this claim.  Nonetheless, giving
plaintiff the benefit of the doubt, the Court will analyze the
effect of his partial victory to determine if it fits the
"prevailing party" analysis set out in <u>Manildra Mining</u>.

The Court begins by noting that the jury's finding of co-
inventorship status for Shum did not materially alter the legal
relationship of plaintiff Shum and defendant Verdiell in any
way.  First, unlike in <u>Manildra</u>, Shum did not win a judgment
which excluded Verdiell from the market – Shum was only found
to be a co-inventor of the patents, not the sole inventor.
This finding then did not give Shum a competitive edge over
Verdiell in the marketplace.  Moreover, under the Plan of
Liquidation, Shum had always had the rights to exploit the
technology underlying the patents without having to financially
account to Verdiell. So Shum's co-inventorship status, while
perhaps conferring some additional benefits to Shum, does not
at all change Shum's market posture vis-a-vis Verdiell.   In
<u>Manildra</u> terms, Shum's favorable verdict did not materially
alter the legal relationship between Shum and Verdiell.
Moreover, even if it can be argued that there was some change
in the relationship, any such change clearly did not cause the
benefit Shum obtained at trial of a declaration of the PTO that
he was a co-inventor.

Shum argues in the alternative that he prevailed on the
"central issue" of the case.  To bolster this claim he points
to the language in the Federal Circuit's decision that "the
factual issue of inventorship is a central issue in the

determination of fraud," and that "Shum's inventorship claim is 'inextricably intertwined' with" his state law claims. <u>Shum v. Intel</u>, 499 F.3d 1272, 1278 (Fed. Cir. 2007) (citing District Court's bifurcation order). This Court does not find the language of the Federal Court order to be dispositive of who prevailed in the action, as the Federal Circuit's opinion regarded the proper procedure for resolving the claims, and was not an opinion on the merits of the action. As a matter of fact, Shum lost his fraud claim, and his favorable inventorship verdict can stand only because it is wholly independent of the fraud claim.

The Court does not believe that the law holds that there can only be one "prevailing" party per case. <u>See</u>, e.g. <u>K-S-H Plastics, Inc. V. Carolite, Inc.</u>, 408 F.2d 54, 60 (9th Cir.) cert. denied, 90 S.Ct. 69 (1969)(court did not abuse its discretion in awarding partial costs to prevailing party who was only partially successful); <u>Bell v. Board of County Com'rs of Jefferson County</u>, 2007 WL 1411613 (D.Kan.,2007)([I]n cases in which the prevailing party has been only partially successful, some courts have chosen to apportion costs among the parties or to reduce the size of the prevailing party's award to reflect the partial success).

If the Court were required to choose only one "prevailing party", the Court does not believe that the decision would be a close one —Verdiell would be the "prevailing" party. Rather than being ordered to pay $400 million to Shum, Verdiell owes nothing to Shum.  Rather than losing seven patents, Verdiell

8

retains his inventorship rights and his ability to commercially
exploit the technology.  Shum gains the legal title of being a
co-inventor of certain patents but no right to commercially
exploit the technology that he did not already have.
Nevertheless, the Court will find that each party prevailed on
some aspects of the action, a finding which is consistent with
the costs methodology adopted by the Clerk's office in taxing
costs and one which has already been implicitly accepted by
Defendant.  The Court therefore turns to the issue of the
specific costs contested by Shum.

II.  <u>Should Specific Costs Be Reduced or Disallowed</u>?

Shum argues that the Court can reduce Shum's award or
require the party's to pay their own costs.  A district court
may reduce costs which are unreasonably large or which are not
supported by adequate documentation.  <u>See</u> <u>White & White v.</u>
<u>American Hosp. Supply Corp</u>. 786 F.2d 728, 730 (6th Cir. 1986);
<u>In re Butcher</u>, 200 B.R. 675, 681 (C.D. CA 1996); N.D. Cal.
Local Rule 54-1.  The Court also has discretion to award
partial costs or to require the parties to pay their own costs.
<u>See</u>, <u>K-S-H Plastics, Inc. V. Carolite, Inc.</u>, 408 F.2d 54, 60
(9th Cir.) cert. denied, 90 S.Ct. 69 (1969); <u>Johnson v.</u>
<u>Nordstrom-Larpenteur Agcy, Inc</u>., 623 F.2d 1279, 1282 (8th Cir.
1980).

A.  <u>Costs Awarded at the First Trial</u>

Following the inventorship bench trial the Court awarded
Defendants $154,400 in costs, then stayed execution on that
costs award while the appeal was pending. (See Defendants' Bill

of Costs Exhibit D, p. 1.)

As already described, the Federal Circuit reversed the judgments of this Court as to the inventorship trial and remanded the matter for further proceedings. Shum v. Intel, 499 F.3d 1272, 1278 (Fed. Cir. 2007). Shum argues that the Federal Circuit's reversal of the earlier judgment in this case vacates the award of costs to Defendants. Shum looks to Furman v. Cirrito, 782 F.2d 353, 355 (2d Cir. 1986) for support.  The Furman case holds that reversal or substantial modification on appeal vacates an award of costs to the prevailing party at the district court level. In Furman, the district court dismissed plaintiff's civil RICO action and awarded costs to defendants. The Court of Appeal affirmed, and ordered costs be awarded to defendants-appellees. The Supreme Court reversed (Joel v. Cirrito, 473 U.S. 922 (1985)) and vacated the appellate decision.  On remand, the appellate court stated that when a district court judgment is reversed or substantially modified on appeal, any costs awarded to the previously prevailing party are automatically vacated. Id., citing 10 Wright, Miller & Kane, Federal Practice and Procedure, § 2668 at 213-14

Shum argues that this language means defendants are not entitled to any costs from the first trial.  However, the Furman court goes on to state that "[i]t is often sound policy, of course, to wait until a controversy is finally decided on the merits before awarding costs, and to then determine who is the 'prevailing party', instead of judging that issue piecemeal at each stage of the litigation." Id.

10

1    Defendants argue that they are entitled to these costs

2   since they were awarded to defendants for defeating Shum's

3   claims for sole inventorship at the bench trial and prevailing

4   on his remaining claims on a motion for summary judgment.

5   Defendants assert that this is the same result they obtained in

6   the 2009 jury trial, and therefore the 2006 award of costs was

7   attributable to an earlier phase of the successful defense of

8   claims on which defendants wholly prevailed, so that it was

9   properly taxed. <u>See</u> 10 Charles A. Wright, et al., <u>Federal</u>

10  <u>Practice and Procedure</u> § 2667 ("Further, the prevailing party

11  at a second trial is usually awarded the costs of both

12  trials").  But this ignores the fact that co-inventorship was

13  also an issue at the bench trial and that this issue was

14  decided in Shum's favor at the jury trial.  After the bench

15  trial the verdict against Shum was reversed on appeal.

16    The effect of the Federal Circuit decision was to return

17  the parties to the beginning of the case.  As a result of the

18  second trial, the plaintiff prevailed substantively on one of

19  the inventorship issues presented to the jury – the co-

20  inventorship claim.  The defendant prevailed on the other

21  inventorship issue presented to the jury --the sole

22  inventorship claim.

23    In the Court's view the defendant is entitled to costs of

24  the bench trial attributable to the sole inventorship issue,

25  but he is not entitled to costs attributable to the co-

26  inventorship issue.  The record currently before the Court is

27  insufficient for the Court to make a precise allocation of the

28
                                11

exact amounts expended at the first trial attributable to
defending sole versus co-inventorship, were such a division
even possible.  The Court exercises its discretion to award to
defendants half of the fees they seek to be reimbursed for from
the first trial, as they prevailed on only one of the two
inventorship claims in the second trial.

      B.  <u>Costs on Appeal</u>

    Defendants have now withdrawn their claim under Rule 54(d)
to recover $1,239.40 in transcript, printing and binding costs
incurred in opposing Shum's appeal in 2006.

      C.  Claims for "Other Costs" For Demonstratives Regarding
      <u>the Inventorship Claims</u>

    Defendants obtained reimbursement for over $130,000 in
costs from four different companies (Focal Point, Verdict
Media, Gemmiti Model Art and FTI Consulting) for "demonstrative
exhibits," "graphics" and "models" used at trial.  Shum argues
that Defendants have failed to meet their burden of showing why
each of their presentation and exemplification costs were
necessary, reasonable, and proper recoverable costs under the
circumstances of this case.  Shum makes several arguments in
this regard.  First, he asserts that Defendants' invoices do
not provide sufficient detail to determine that all of these
"exhibits, graphics and models" were actually used at trial
rather than in preparation for trial. Shum also claims that
there is insufficient documentation for him to determine
whether the work was duplicative. Shum then argues that

1    defendants' claimed costs are too high as they would still have

2    had their demonstratives and graphics from the initial

3    inventorship bench trial. (See e.g., invoice dated 9/9/2008 on

4    Defendants' Bill of Costs Exhibit D).  Finally, Shum claims

5    that defendants may not be reimbursed for these costs because

6    they did not prevail on the inventorship claims which are the

7    subject of all or virtually all of these exhibits, graphics and

8    models.

9         To the extent that Shum argues that the demonstratives

10   were related to issues on which Shum ultimately prevailed, the

11   Court finds that defendants could not have anticipated that

12   Shum would change his position on inventorship issues right

13   before and during trial; and that understanding the history and

14   creation of the patents was integrally related to the claims on

15   which defendant did prevail.

16        Local Rule 54-3(d) provides that reimbursement for "[t]he

17   costs of preparing charts, diagrams, videotapes and other

18   visual aids to be used as exhibits is allowable *if such*

19   *exhibits are reasonably necessary to assist the jury or the*

20   *Court* in understanding the issues at the trial." Local Rule 54-

21   3(d)(emphasis added).

22        Shum's further objection that there should be no recovery

23   for demonstratives that are not proven to have been used at

24   trial is incorrect as a matter of law. The Local Rule allows

25   recovery for materials "to be used" at trial. It does not

26   require actual use of each item so prepared. See also Haagen-

27   Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc., 920 F.2d

28
                                    13

587, 588 (9th Cir. 1990) (costs of exemplification made in anticipation of trial, but not used at trial, are recoverable). The Court concurs with defendants that the case presented complex technical issues and that the jury benefitted at trial from the use of demonstrative evidence.

The Court rejects defendants' argument that Shum should be required to pay for the time defense counsel spent in "close collaboration" with their consultants, especially as it related to strategic planning for the trial as opposed to costs for production of the demonstratives. Review of the invoices submitted indicate that there are charges for work well beyond the preparation of the demonstratives themselves. The Court finds that the invoices from Verdict Media are replete with references to trial preparation including meeting with attorneys to go over openings and closings statements; to preparation for a mock trial; and to organizing documents. See Verdict Media Invoices dated 9/15/08; 12/9/08 and 1/10/09. The Court has reviewed each of the submitted invoices and will not tax costs for work done beyond what appears to be related to the creation or presentation of demonstrative exhibits.

The Court will disallow in its entirety the Verdict Media invoice of 9/15/2008 in the amount of $3,350. As to the invoice of 12/09/08, the Court acknowledges that the demonstratives could not have been presented without the appropriate technical resources. The in-court technician time and the equipment costs associated therewith are therefore permitted. This amount totals $10,605. (Thus the total bill

14

1   is to be reduced by $19,571.96). Similarly, the Verdict Media

2   invoice of 1/10/09 is reduced to cover only in-court technical

3   personnel and equipment for a total of $13,359.50.  (This bill

4   is reduced by $14,265).

5        The Focal Point invoices also contain charges for services

6   referred to as "strategy" and "case management".  The Court

7   disallows these amounts.  The 9/30/08 invoice of Focal Point

8   therefore is reduced to $9,250 (thus the total bill is reduced

9   by $11,367.69).  The Focal Point bill of 10/31/08 is reduced to

10  $7,810.50 (this bill is reduced by $13,062.73).

11       The FTI invoice of November 10, 2008 is more difficult to

12  parse.  Much of the work involved appears to be in preparation

13  for a mock trial, which cost would not be taxed.  The

14  Declaration from counsel Stephen Taylor states that while "some

15  of the 2008 demonstrative exhibits were prepared in advance and

16  used at a mock trial, those same demonstratives were expressly

17  prepared with the jury in mind and were later used or modified

18  for use with the jury."  Taylor Declaration filed 8/21/09 at

19  ¶ 6.

20       This declaration does not give the Court much guidance as

21  to what percentage of the exhibits constitute "some."  Given

22  the overall cost and variety of exhibits created, and that the

23  burden is on defendants to demonstrate that the taxation of

24  costs is appropriate, the Court will allow only half of the

25  total cost and only permit $20,490 of the requested $40,979.90.

26

27       D.  <u>Copying Charges</u>

28                                15

1    Shum argues that the $77,322.40 taxed in costs for
2  photocopying covered copies beyond what was necessary for
3  discovery and for trial presentation.  Specifically, § 1920(4)
4  provides that a judge or clerk may tax fees paid for the
5  "exemplification and copies of papers necessarily obtained for
6  the use in the case."  The party seeking to recover these costs
7  must show that the copies were necessary and provided either to
8  the court or the opposing party. Grady v. Bunzl Packaging
9  Supply Co., 161 F.R.D. 477, 479 (N.D. Ga. 1995).

10    Shum further argues that Defendants have not offered an
11 apportionment of which copies were made in support of the state
12 law claims and which in support of the inventorship claims, on
13 which they did not prevail.  Shum therefore contends that at
14 least half of these costs, or $33,392.43, should not have been
15 taxed as costs.

16    Defendants counter that their copying costs are reasonable
17 and taxable and that they are entitled to recover costs for
18 reasonably necessary duplication of documents, regardless of
19 whether the copied documents were all offered into evidence. 28
20 U.S.C. § 1920(4); L.R. 54-3(d)(2); Haagen-Dazs Co., 920 F.2d at
21 588.  Counsel for defendants claims that oversized and color
22 copies were necessary to demonstrate the technology and that in
23 part the large number of copies were needed to be exchanged
24 with counsel as part of the discovery process.  Taylor Decl.,
25 ¶¶ 8-10. The Court finds that although the copying charge seems
26 high, given the number of documents in the case, the Court will
27 reduce the amount by 20% in light of the co-inventorship

28
                              16

1   verdicts and allow the remainder to stand.   The result is an

2   allowance to defendants of $61,857.92.

3

4       E. Witness Fees

5       According to Shum, the clerk erroneously taxed all of the

6   witness fees submitted by Defendants in the amount of

7   $12,301.63 when the clerk should have only taxed $1,730.14

8   ($12,301.63 - $10,571.49).

9       The prevailing party is entitled to recover fees and

10  disbursements for witnesses. See 28 U.S.C. § 1920(3); see also

11  L.R. 54-3(e). Local Rule 54-3(e) provides that per diem,

12  subsistence and mileage payments for witnesses are allowable to

13  the extent reasonably necessary and provided for by 28 U.S.C.

14  § 1821. No other witness expenses, including fees for expert

15  witnesses, are allowable.

16      Shum makes several different arguments about certain of

17  the witness fees.   First, Shum wants to strike witness fees

18  totaling $585.52 apportioned to witnesses the Defendants

19  subpoenaed but did not call at trial. However, the physical

20  presence of a witness at trial is not necessary to recover a

21  subpoenaed witness's costs "when it was reasonably expected

22  that [the witness'] attendance would be necessary and he had

23  held himself in readiness to attend." Spanish Action Committee

24  v. Chicago, 811 F.2d 1129, 1138 (7th Cir. 1986); see also

25  Hurtado v. United States, 410 U.S. 578, 584-87 (1973) (finding

26  that 28 U.S.C. § 1821 compensates for availability to testify).

27  Defendants contend, and the Court concurs, that the testimony

28
                                17

1   of each of the three witnesses was reasonably expected to be

2   necessary given the scope of the issues Shum potentially could

3   have raised in his case-in-chief. Taylor Decl., ¶ 11.

4   Therefore the Court finds that the $585.52 cost is appropriate.

5       Shum next seeks to disallow witness fees totaling

6   $3,484.23 related to defendants' witness, Ramamurthy Sivakumar

7   ("Sivakumar") because according to Shum, Sivakumar was

8   traveling to the United States from India on a business trip,

9   not for trial.

10      The record on this issue is not completely clear.  Shum

11  contends that this witness was called when he was to

12  accommodate his travel schedule.  However, counsel for

13  defendants states that Sivakumar did not have plans to be in

14  the United States and that counsel is "informed and believes

15  that [Sivakumar's] business schedule was rearranged" so that he

16  could travel to California to testify.  There is no evidence

17  before the Court that Sivakumar came to the United States for

18  any reason other than to testify at trial.  Therefore the Court

19  will not disallow his witness fee.  While the Court is

20  sympathetic to the toll this travel may have taken on

21  Sivakumar, it does not believe that plaintiff should have to

22  reimburse Sivakumar for the costs of a first-class ticket,

23  especially when counsel for defendants states that it is

24  Intel's general rule that its employees are to fly coach.

25  Moreover, 28 U.S.C. § 1821(c)(1) states that a witness "shall

26  use a common carrier at the most economical rate reasonably

27  available."  Shum argues that this entry should at least be

28
                                18

disallowed because it constitutes unnecessary flight charges for a first class ticket. There is, however, no evidence in the record as to the actual cost of a coach versus a first-class ticket, thus the Court will reduce reimbursement for this cost by half.

Shum also argues that witness fees totaling $6,501.74 should not be allowed because they constitute charges for Defendants' technical experts on inventorship – and Defendants did not prevail on the majority of those claims. Shum contends that the certain costs of travel and lodging for expert witnesses Dr. Thomas L. Koch, Randy Heyler, Jim Timmins and Dr. Yung-Cheng Lee during the 2008 trial are not taxable because they related to technical issues upon which Shum prevailed. Motion, pp. 12:22-13:12.

Defendants contend that these witness fees should still be reimbursed because the "anticipated testimony of Dr. Koch, Dr. Lee and Mr. Heyler" caused Shum to abandon all of his claims of sole inventorship, as well as any claim of inventorship status with respect to the "dual enclosure" patent.

Dr. Koch, Dr. Lee and Mr. Heyler's testimony may have been part of what caused Shum to abandon his claim of sole inventorship and without Shum having changed his position they might well have been called as witnesses.  Moreover, their testimony contributed to defendants' success in maintaining sole inventorship status with respect to the '427 Patent. Taylor Decl., ¶ 14. Finally, Jim Timmins did not testify on inventorship issues. Instead, he gave expert testimony relating

to Shum's state law claims, as to which the Court entered judgment in favor of all defendants. Taylor Decl., ¶ 15. Accordingly the travel expenses for each of these witnesses were reasonably necessary and properly taxed by the Clerk in defendants' favor.

III.  Conclusion

The Court GRANTS IN PART AND DENIES IN PART plaintiff's Motion Challenging the Clerk's Taxation of Costs reducing the costs taxed against Shum by $177,753.27 as set out in detail below.  As the initial amount of costs taxed against Shum was $507,644.82 the new amount owed would be $329.891.55.

| Category | Amount permitted in Clerks Taxation of Costs | Amount Now Permitted by Court Order |
|---|---|---|
| Costs from First Trial | $154,400 | $77,200 |
| Costs on Appeal | $1,239.40 | $0 |
| **Costs for Demonstratives and Graphics by Company** | | |
| Verdict Media invoice of 9/15/2008 | $3,350 | $0 |
| Verdict Media invoice of 12/09/08 | $30,176.96 | $10,605 |
| Verdict Media invoice of 1/10/09 | $27,624.50 | $13,359.50 |
| The Focal Point invoice of 9/30/08 | $20,617.69 | $9,250 |
| The Focal Point bill of 10/31/08 | $20,873.23 | $7,810.50 |

**United States District Court**
For the Northern District of California

| | | |
|---|---|---|
| FTI Consulting | $40,979.90 | $20,490 |
| Copying Charges | $77,322.40 | $61,857.92 |
| Witness Fees (subpoenaed but uncalled witnesses) | $585.52 | $585.52 |
| Witness Fees:  Mr. Sivakumar | $3,484.23 | $1,742.12 |
| Witness Fees: Defendants' technical experts on inventorship | $6,501.74 | $6,501.74 |
| TOTALS | $387.155.57 | $209,402.30 |

IT IS SO ORDERED.

Date: October 23, 2009

D. Lowell Jensen
United States District Judge

21